# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **SUHAIL NAJIM ABDULLAH AL-SHIMARI,** | : | Case No. 2:08-cv-637 |
| **Plaintiff,** | : | Judge Frost |
| v. | : | Magistrate Judge Kemp |
| **TIMOTHY DUGAN, et al.,** | : | |
| **Defendants.** | : | |

## UNOPPOSED MOTION OF DEFENDANTS CACI INTERNATIONAL INC AND CACI PREMIER TECHNOLOGY, INC., TO TRANSFER VENUE

Defendants CACI International Inc and CACI Premier Technology, Inc. (collectively, the "CACI Defendants"), with the concurrence of all other parties, respectfully request that the Court transfer this action to the United States District Court for the Eastern District of Virginia, Alexandria Division, pursuant to 28 U.S.C. § 1404(a). Transfer of this action is appropriate because the action could have been brought in the proposed transferee forum and the proposed transferee forum is a much more convenient forum for the litigation of this action. The bases for the CACI Defendants' motion are set forth in greater detail in the accompanying Memorandum.

Wherefore, the CACI Defendants respectfully request that the Court grant its unopposed motion to transfer this action to the United States District Court for the Eastern District of Virginia, Alexandria Division. A proposed order is attached.

Respectfully submitted,

  */s/ Stephen C. Gray*
Stephen C. Gray (0067877)
BRICKER & ECKLER LLP
100 South Third Street
Columbus, Ohio 43215-4291
Telephone: (614) 227-2329
Facsimile: (614) 227-2390
sgray@bricker.com

J. William Koegel, Jr. (admitted pro hac vice)
John F. O'Connor (admitted pro hac vice)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
wkoegel@steptoe.com
joconnor@steptoe.com

Attorneys for Defendant
CACI International Inc. and
CACI Premier Technology, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SUHAIL NAJIM ABDULLAH AL-SHIMARI | : | Case No. 2:08-cv-637 |
| Plaintiff, | : | Judge Frost |
| v. | : | Magistrate Judge Kemp |
| TIMOTHY DUGAN, et al. | : | |
| Defendants. | : | |

MEMORANDUM IN SUPPORT OF THE UNOPPOSED
MOTION OF DEFENDANTS CACI INTERNATIONAL INC
AND CACI PREMIER TECHNOLOGY, INC., TO TRANSFER VENUE

I. INTRODUCTION

This action asserts claims by an Iraqi alleging abuse while he was incarcerated at Abu Ghraib prison in Iraq. It is one of four different single-plaintiff suits filed by Plaintiff's counsel against Defendants CACI International Inc and CACI Premier Technology, Inc. (collectively, the "CACI Defendants") in four different federal districts during May and June 2008. The CACI Defendants have reached an agreement with Plaintiff's counsel whereby the Plaintiffs in this action and the related action filed in the Western District of Washington agree not to oppose the transfer of these actions to the Eastern District of Virginia.

Indeed, in a related case brought by the same Plaintiff's counsel in the Southern District of California, the court, in a thorough decision by Judge Rhoades, found that Virginia was the indisputable center of gravity for the plaintiffs' claims against the CACI Defendants relating to allegations of detainee abuse in Iraq. *See Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152 (S.D. Cal. 2005). Therefore, because the Eastern District of Virginia is a much more convenient forum for

this action, and transfer will allow consolidation of this case with the related cases filed by the same Plaintiff's counsel, and because there is no opposition to transfer, this Court should transfer this case to the U.S. District Court for the Eastern District of Virginia, Alexandria Division.

## II.     FACTS RELEVANT TO TRANSFER MOTION

### A.     The History and Status of the Related Actions

In 2004, Plaintiff Al Shimari's lead counsel filed a suit, similar to this action, in the U.S. District Court for the Southern District of California, on behalf of a putative class of plaintiffs detained and allegedly abused at Abu Ghraib prison. *See Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152 (S.D. Cal. 2005). As with the present action, the plaintiffs in *Saleh* asserted that L-3 Services and the CACI Defendants engaged in a conspiracy with dozens of Government personnel to abuse detainees in Iraq. The *Saleh* plaintiffs identified as supposed "torture conspirators" the CACI Defendants and Titan, high-ranking government officials, and more than eighty military personnel, from several generals to low-ranking soldiers. O'Connor Decl., Ex. 1 at 4-5.

In *Saleh*, the CACI Defendants moved to transfer the action to the Eastern District of Virginia. Judge Rhoades made detailed findings that the relevant witnesses and evidence were centered in northern Virginia, and that the Virginia forum was more convenient for the parties and best served the interests of justice. O'Connor Decl., Ex. 2.[1]

More recently, the Plaintiff's counsel in this action filed the present action and four other single-plaintiff suits in five different federal district courts – this Court, the Central District of

---

[1] After the *Saleh* case's transfer to Virginia, the plaintiffs' counsel successfully moved to re-transfer that case to the District of Columbia, arguing that it should be consolidated with a related action pending there. However, none of the new suits filed against the CACI Defendants can be transferred to the District of Columbia because each case includes a single individual defendant who successfully asserted a lack of personal jurisdiction defense once the *Saleh* case reached the District of Columbia. *See Saleh v. Titan Corp.*, 436 F. Supp. 2d 55 (D.D.C. 2006). The District of Columbia cases are currently on appeal to the D.C. Circuit.

California, the Western District of Washington, the District of Maryland, and the Eastern District of Michigan.[2] O'Connor Decl., ¶ 2. The CACI Defendants have moved to transfer the California and Washington actions to the Eastern District of Virginia, and will do so in Maryland if not dismissed.[3] On August 4, 2008, the parties finalized an agreement whereby Plaintiff's counsel in this case and the case pending in the Western District of Washington would not oppose transfer to the Eastern District of Virginia. *Id.* ¶ 3. Thus, the Plaintiffs in this case and the Washington case are consenting to transfer of those cases so that they can be consolidated together in the Eastern District of Virginia.

### B. Parties And Non-Party Witnesses and Documents

Plaintiff is an Iraqi national, who does not reside in this District and has no connection to this District. Compl. ¶ 4. The Defendants are government contractors that performed services for the U.S. military in Iraq. Defendant L-3 Services is headquartered in Alexandria, Virginia. Compl. ¶ 9. The CACI Defendants are headquartered in Arlington, Virginia. Compl. ¶ 7. Mr. Dugan is the only individual Defendant in this case. The Complaint alleges no contacts between Mr. Dugan and Plaintiff. Rather, Plaintiff theorizes that "reasonable discovery" will establish that Mr. Dugan engaged in a conspiracy with military officials against him. Compl. ¶ 46.

As for non-party witnesses, the witnesses with knowledge of the facts concerning Plaintiff's claimed "torture conspiracy" are located in or near the Eastern District of Virginia. *See* O'Connor Decl., Exs. 3-6. These are the same witnesses identified by Judge Rhoades in finding the Eastern District of Virginia a much more convenient forum for the relevant

---

[2] The Michigan action is brought solely against L-3 Services and does not involve the CACI Defendants.

[3] Plaintiff's counsel is contemplating dismissing the CACI Defendants in Michigan.

2673800v1

witnesses. *Saleh* 361 F. Supp. 2d at 1161-62. None of these witnesses is currently employed by any CACI entity, and therefore are non-parties in every sense of the word. Morse Decl. ¶ 4 (attached as Exhibit 7 to the O'Connor Declaration). In addition, Plaintiff's counsel has identified in *Saleh* a list of alleged members of the supposed "Torture Conspiracy." This list includes dozens of military personnel. O'Connor Decl., Ex. 1 at 4-5. Pursuant to the military's *Touhy* regulations, any attempt by the parties to interview, depose, or obtain declarations from these personnel must be pursued through the Army Civil Litigation Division in Arlington, Virginia. Indeed, the Deputy Director of that Division personally attended the depositions of current and former Army personnel that took place in the *Saleh* case. O'Connor Decl. ¶ 4.

Moreover, documents containing facts critical to the Plaintiff's claims and Defendants' defenses are likely to be concentrated in northern Virginia. The CACI Defendants do not have *any* records concerning what Iraqi detainees were interrogated by CACI PT personnel in Iraq. *See* Morse Decl. ¶ 6. All of the relevant documents – from interrogation plans to interrogation reports, to memoranda approving interrogation techniques for particular detainees – were at all times in the possession of the United States military in Iraq. Presumably, these and other key documents – to the extent that they are located in the United States – will be held by custodians in the Pentagon and offices of other government agencies located within 100 miles of the Alexandria courthouse in the Eastern District of Virginia. *See Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 526 (1947). In addition, several federal agencies mentioned by name in the *Saleh* complaints, and which appear to be implicitly referenced in the Complaint in this action (including the CIA, the NSA, and the Department of the Interior) are also located in the Eastern District of Virginia or within 100 miles of the Alexandria courthouse.

Access to documentary proof is further complicated by the fact that many, if not most, of the documents relevant to the claims and defenses in this action will be classified. Any litigation of the merits of this action will entail a significant amount of information protected by the nation's highest secrecy classification, known as "sensitive compartmentized information," or "SCI." SCI is defined as:

> classified information concerning or derived from intelligence sources, methods or analytical process, which is required to be handled exclusively within formal control systems established by the Director of Central Intelligence.

*See* Director of Central Intelligence, Directive No. 6/9, Nov. 18, 2002, available at http://www.fas.org/irp/offdocs/dcid6-9.htm. SCI materials must be maintained, and can be reviewed, only in a SCI facility (a "SCIF"), or with an express waiver of the published security requirements. *Id*. While it is possible to establish new SCIFs, the required security measures and clearances involve substantial cost and time if they are not already in place. *See id.* The Alexandria courthouse already has an established SCIF, maintained by the United States Department of Justice, and there are several other SCIFs in the general vicinity.

### C. Conduct

The Complaint does not allege any conduct in this District. The conduct and injuries of which Plaintiff complains are alleged to have taken place at detention facilities in Iraq. Compl. ¶¶ 11-45, 48, 93-176. Plaintiff alleges that he suffered injuries as the result of supposed conspiratorial agreements between Defendants and U.S. government officials. Compl. ¶¶ 23-25. Plaintiffs have not alleged any facts placing the formation of the supposed conspiracy they allege in this District. Nor did any of the complained of injurious conduct occur here. Indeed, the only contact this District has with the issues in this case is that defendant Mr. Dugan resides in this District.

## III.   ARGUMENT

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  The factors to be considered in a transfer motion are similar to those considered in *forum non conveniens* motions. *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002); *see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947).  A transfer under § 1404(a), however, is to be granted "upon a lesser showing of inconvenience" than a *forum non conveniens* motion. *Norwood v. Kirkpatrick,* 349 U.S. 29, 32 (1955); *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 265 (1981); *Sky Tech. Partners, LLC v. Midwest Research Inst.*, 125 F. Supp. 2d 286, 291 (S.D. Ohio 2000).  In deciding a motion to transfer, courts are to consider both the private interests of the litigants and the public's interest in the administration of justice. *Jamhour*, 211 F. Supp. 2d at 945; *Sky Tech. Partners*, 125 F. Supp. 2d at 291.  Private factors include "[t]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of the case easy, expeditious, and inexpensive." *Jamhour*, 211 F. Supp. 2d at 945.

Public interests include "[d]ocket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law." *Id.*  Courts also consider "the nature of the suit; the place of the events involved; . . . and the residences of the parties." *Id.* at 946 (citing *Sky Tech. Partners*, 125 F. Supp. 2d at 290-91; *Midwest Motor Supply Co. v. Kimball*, 761 F. Supp. 1316, 1318 (S.D. Ohio 1991); and *Shapiro v. Merrill Lynch & Co.*, 634 F. Supp. 587, 589 (S.D. Ohio 1986)).

### A. The Action Could Have Been Brought in the Eastern District Of Virginia

To prevail on a motion to transfer venue under § 1404(a), a party must first establish that the proposed transferee district is one where the action could have been brought. *Jamhour*, 211 F. Supp. 2d at 945. This action indisputably could have been brought in the Eastern District of Virginia. All three of the corporate defendants are headquartered there, and the administration of the contracts by which the corporate defendants supplied interrogators and linguists to the United States Army occurred in the Eastern District of Virginia. Morse Decl. ¶¶ 2-3 ; Inghram Decl. ¶¶ 14-20 (attached at O'Connor Decl., Ex. 8).

The individual defendant, Mr. Dugan, is also subject to personal jurisdiction in the Eastern District of Virginia. Virginia's long-arm statute allows personal jurisdiction over a person with respect to a cause of action "arising from the person's . . . [t]ransacting any business in this Commonwealth; [or] [c]ontracting to supply services or things in this Commonwealth." Va. Code Ann. § 8.01-328.1; *see also Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 512 S.E.2d 560, 564 (Va. 1999). Every meaningful contact Mr. Dugan had with the United States in connection with his service in Iraq took place in the Eastern District of Virginia. He applied for employment by a Virginia company and all of his administrative interaction with CACI personnel in the United States occurred with CACI personnel in Virginia. These contacts are more than sufficient to confer personal jurisdiction over Mr. Dugan with respect to Plaintiff's claims. *See Production Group Int'l, Inc. v. Goldman*, 337 F. Supp. 2d 788, 796 (E.D. Va. 2004) (personal jurisdiction existed over out-of-state employee of Virginia company for claims arising out of employment where employee had regular communications with colleagues located in Virginia and employee made three visits to employer's Virginia headquarters). Indeed, while not required, Mr. Dugan, through counsel, has represented that he will not assert that the Eastern District of Virginia lacks personal jurisdiction over him with respect to this action.

### B. The Private Interests Of The Litigants Warrant A Transfer Of This Action

"The convenience of witnesses is said to be a primary, if not the most important, factor in passing on a motion to transfer under § 1404(a)." *Boyajyan v. Columbus Financial Group, Inc.*, 2007 WL 4410242, at *3 (S.D. Ohio Dec. 13, 2007); *Midwest Motor Supply Co.*, 761 F. Supp. at 1318. "In weighing the convenience of the witnesses, more important than the raw numbers of witnesses living in a particular jurisdiction is the residence of the key witness or witnesses." *Greenfield Prods., Inc. v. Batesville Tool & Die, Inc.*, 2008 WL 924524, at *5 (S.D. Ohio April 2, 2008). Here, the sources of proof, to the extent located in the United States, are concentrated within the reach of the subpoena power of the U.S. District Court for the Eastern District of Virginia. These include the relevant military and civilian witnesses, as well as the essential documentary evidence under the control of the Pentagon.

The *only* connection between this litigation and the Southern District of Ohio is that Mr. Dugan resides here. While this fact *may* suffice for venue in a technical sense, it does not make this a convenient forum for trying the action, when all of the operative facts, most of the parties, and the vast majority of witnesses and documents are located elsewhere. *See generally Saleh*, 361 F. Supp. 2d. 1152. This is particularly true where, as here, Mr. Dugan consents to transfer of this action to the Eastern District of Virginia and Plaintiff has now agreed to this relief.

### C. The Public Interest Weighs In Favor Of A Transfer

The public interest, including things such as court congestion and judicial economy, is also to be weighed in a venue transfer motion. *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988); *Jamhour*, 211 F. Supp. 2d at 945; *see also Gulf Oil,* 330 U.S. 508-09. As the *Saleh* court found, here too the balance of the public interest factors strongly favors a transfer to the Eastern District of Virginia. *See* 361 F. Supp. 2d at 1167 ("[T]he Eastern District of Virginia

is able to bring a civil case to completion in significantly shorter amount of time than the Southern District of California. Therefore, this factor weighs heavily in favor of transfer.").

The Southern District of Ohio has a more congested calendar than the Eastern District of Virginia. Because of the docket congestion that the Southern District of Ohio experiences, the Eastern District of Virginia is able to bring a civil case to completion in a significantly shorter amount of time than the Southern District of Ohio.[4] Therefore, this factor weighs in favor of transfer. *See Blake*, 2007 WL 1795936 at *3 (finding persuasive that the case load of the Southern District of Ohio was nearly double that of the transferee district); *Boyajyan*, 2007 WL 4410242 at *3 (transferring action to the Eastern District of Virginia in part because that district had a shorter median time from filing to trial).

Finally, transfer of this case to the Eastern District of Virginia would permit the Eastern District of Virginia to consolidate the newly-filed actions and treat them as one. "The United States Supreme Court has 'made quite clear that [t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.'" *Blake*, 2007 WL 1795936 at *3 (internal citations omitted) (quoting *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990)). It is therefore well-settled that the possibility of consolidation with a case in the transferee forum is a factor that favors transfer. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Sage Prods., Inc. v. Devon Indus., Inc.*, 148 F.R.D. 213,

---

[4] *See* Administrative Office of the United States Courts, 2007 Fed. Court Management Statistics, at 70, available online at www.uscourts.gov/cgi-bin/cmsd2007.pl. In 2007, the median time from filing to trial for a civil trial in the Eastern District of Virginia was 9 months; it was more than three times as long in the Southern District of Ohio at 28.4 months. *See id.* A copy of the relevant statistics for each District are attached as O'Connor Decl., Ex. 9.

217 (N.D. Ill. 1993) ("The synergy created by the reassignment of the two cases for treatment as related cases and their consolidation tips the balance in favor of a transfer.").

Here, Plaintiff's counsel has agreed to the transfer not only of this action, but of the Washington action as well. Therefore, consolidation is possible in the Eastern District of Virginia for this suit and the Washington suit, as well as the California suit (provided the CACI Defendants prevail on their motion to transfer the California action).

## IV. CONCLUSION

For these reasons, this action should be transferred to the Eastern District of Virginia.

Dated: August 6, 2008

Respectfully submitted,

*/s/ Stephen C. Gray*
Stephen C. Gray (0067877)
BRICKER & ECKLER LLP
100 South Third Street
Columbus, Ohio 43215-4291
Telephone: (614) 227-2329
Facsimile: (614) 227-2390
sgray@bricker.com

J. William Koegel, Jr. (admitted pro hac vice)
John F. O'Connor (admitted pro hac vice)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
wkoegel@steptoe.com
joconnor@steptoe.com

Attorneys for Defendants
CACI International Inc. and
CACI Premier Technology, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 6, 2008, a true copy of the foregoing UNOPPOSED MOTION OF DEFENDANTS CACI INTERNATIONAL INC AND CACI PREMIER TECHNOLOGY, INC., TO TRANSFER VENUE was electronically filed. Notice of this filing will be sent to all registered parties via the Court's CM/ECF system including via electronic mail upon the following:

> Jennifer M. Kinsley
> Sirkin, Pinales & Schwartz
> jkinsley@sirkinpinales.com
> Attorney for Plaintiff
>
> Matthew L. Fornshell
> Schottenstein Zox & Dunn Co., LPA
> mfornshell@szd.com
> Attorneys for Defendant, L-3 Services, Inc.

A true and accurate copy of this filing was also sent this day, via Regular U.S. Mail, to defendant Timothy Dugan, 75 S. Township Road, Pataskala, Ohio 43062.

August 6, 2008                           /s/ Stephen C. Gray
                                         Stephen C. Gray