| | | |
|---|---|---|
| SUHAIL NAJIM | ) | CIVIL ACTION |
| ABDULLAH AL SHIMARI | ) | |
| | ) | NO. 08-cv-0827 GBL-JFA |
| TAHA YASEEN | ) | |
| ARRAQ RASHID | ) | |
| | ) | CIVIL COMPLAINT |
| SA'AD HAMZA HANTOOSH | ) | JURY DEMAND |
| AL-ZUBA'E | ) | |
| | ) | |
| SALAH HASAN NUSAIF | ) | |
| JASIM AL-EJAILI | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CACI INTERNATIONAL, INC. | ) | |
| 1100 North Glebe Road, | ) | |
| Arlington, Virginia 22201 | ) | |
| | ) | |
| CACI PREMIER | ) | |
| TECHNOLOGY, INC. | ) | |
| 1100 North Glebe Road, | ) | |
| Arlington, Virginia 22201 | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

# AMENDED COMPLAINT

1.      Plaintiffs are four Iraqi victims of the Abu Ghraib prison abuse scandal.  As was

well-publicized in the spring of 2004, detainees at the "hard site" within Abu Ghraib prison were

brutally tortured and abused by persons conspiring together.  Included among the conspirators

inflicting severe pain on Plaintiffs were numerous employees of a defense contractor called

"CACI."  Indeed, according to post-conviction testimony and statements by military co-

conspirators (now serving time in military prison in Fort Leavenworth, Kansas), CACI

employees Steven Stefanowicz ("Big Steve") and Daniel Johnson ("DJ") directed and caused some of the most egregious torture and abuse at Abu Ghraib.

## JURISDICTION AND VENUE

2.       This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332 (diversity jurisdiction); 28 U.S.C. § 1350 (Alien Tort Statute); and 28 U.S.C. § 1367 (supplemental jurisdiction).

3.       Venue is proper pursuant to U.S.C. § l391(a)(3) and § 1391(b)(2).

## PARTIES

4.       Plaintiff Suhail Najim Abdullah Al Shimari resides in Baghdad, Iraq. He is an innocent Iraqi who was badly tortured by Defendants CACI International Inc. and its wholly-owned subsidiary CACI Premier Technology (hereinafter collectively "CACI") and their co-conspirators.  He suffered and continues to suffer from physical and mental injuries caused by the torture.

5.       Plaintiff Taha Yaseen Arraq Rashid resides in Baghdad, Iraq.  He is an innocent Iraqi who was badly tortured by CACI and its co-conspirators.  He suffered and continues to suffer from physical and mental injuries caused by the torture.

6.       Plaintiff Sa'ad Hamza Hantoosh Al-Zuba'e resides in Baghdad, Iraq.  He is an innocent Iraqi who was badly tortured by CACI and its co-conspirators.  He suffered and continues to suffer from physical and mental injuries caused by the torture.

7.       Plaintiff Salah Hasan Nusaif Jasim Al-Ejaili resides in Qatar. He is an innocent Iraqi who was badly tortured by CACI and its co-conspirators.   He suffered and continues to suffer from physical and mental injuries caused by the torture.

8.      Defendant CACI International Inc. is a publicly-traded Delaware corporation with headquarters located at 1100 North Glebe Road, Arlington, Virginia 22201.

9.      Defendant CACI Premier Technology, Inc. is a wholly-owned subsidiary and alter ego of CACI International Inc., and is also located at 1100 North Glebe Road, Arlington, Virginia 22201.

10.     CACI received hundreds of millions of dollars from the United States in exchange for providing the United States Army with services, including interrogation services.

### THE TORTURE OF SUHAIL NAJIM ABDULLAH AL SHIMARI

11.     Mr. Al Shimari was imprisoned at the Abu Ghraib hard site for approximately two months after being arrested on or about November 7, 2003.

12.     Mr. Al Shimari was subjected to electric shocks.

13.     Mr. Al Shimari was struck with a baton-like instrument.

14.     Mr. Al Shimari was beaten.

15.     Mr. Al Shimari was deprived of food.

16.     Mr. Al Shimari was deprived of sleep for extended periods of time.

17.     Mr. Al Shimari was threatened with dogs.

18.     Mr. Al Shimari was subjected to sensory deprivation and to extreme temperatures.

19.     Mr. Al Shimari was stripped naked and kept naked in his cell.

20.     Mr. Al Shimari was threatened with death.

21.     Mr. Al Shimari was kept naked and forced to engage in physical activities to the point of exhaustion.

22.     Mr. Al Shimari was forcibly shaved.

23.     Mr. Al Shimari was kept in a cage.

24.     Mr. Al Shimari was forced to watch as CACI and its co-conspirators choked another prisoner.

25.     Mr. Al Shimari was released on or about March 27, 2008, without ever being charged with any crime.

## THE TORTURE OF TAHA YASEEN ARRAQ RASHID

26.     Mr. Rashid was imprisoned at the Abu Ghraib hard site for approximately three months after being arrested on or about September 22, 2003.

27.     Mr. Rashid was stripped and kept naked.

28.     Mr. Rashid was deprived of oxygen.

29.     Mr. Rashid was subjected to sensory deprivation.

30.     Mr. Rashid was placed in stress positions for extended periods of time.

31.     Mr. Rashid was deprived of food and water.

32.     Mr. Rashid was forcibly subjected to sexual acts by a female as he was cuffed and shackled to cell bars.

33.     Mr. Rashid was beaten with wooden sticks.

34.     Mr. Rashid was repeatedly shot in the head with a taser gun.

35.     Mr. Rashid was subjected to electric shocks.

36.     Mr. Rashid suffered from a broken arm, broken leg, inability to walk and loss of vision as a result of the beatings.

37.     Mr. Rashid was dragged by a rope where part of it was tied tightly to his penis.

38.     Mr. Rashid was hung from the ceiling by a rope tied around his chest.

39.     Mr. Rashid was subjected to mock execution.

40.     Mr. Rashid was subjected to having woman's underwear placed over his head while handcuffed.

41.     Mr. Rashid was subjected to being detained naked in the same cell as a female detainee.

42.     Mr. Rashid was forced to watch as the conspirators raped a female prisoner.

43.     Mr. Rashid was removed from his cell by stretcher and hidden from the International Committee of the Red Cross ("ICRC"), who visited Abu Ghraib shortly after Mr. Rashid had been brutally and repeatedly beaten.

44.     Mr. Rashid was released on or about May 6, 2005 without ever being charged with any crime.

## THE TORTURE OF SA'AD HAMZA HANTOOSH AL ZUBA'E

45.     Mr. Al-Zuba'e was imprisoned at the Abu Ghraib hard site for approximately one year after being arrested on or about November 1, 2003.

46.     Mr. Al-Zuba'e was repeatedly beaten.

47.     Mr. Al-Zuba'e was stripped and kept naked.

48.     Mr Al-Zuba'e was subjected to extremes of temperature and to having cold water poured over his naked body.

49.     Mr. Al-Zuba'e was hooded and chained to the bars of his cell.

50.     Mr. Al-Zuba'e was threatened with unleashed dogs.

51.     Mr. Al-Zuba'e was beaten on his genitals with a stick.

52.     Mr. Al-Zuba'e was imprisoned in a solitary cell in conditions of sensory deprivation for almost a full year.

53.     Mr. Al-Zuba'e was released from Abu Ghraib on or about October 24, 2004, without ever being charged with a crime.

## THE TORTURE OF SALAH HASAN NUSAIF JASIM AL-EJAILI

54.     Mr. Al-Ejaili was imprisoned in the Abu Ghraib hard site after being arrested on or about November 3, 2003.

55.     Mr. Al-Ejaili was subjected to repeated beatings.

56.     Mr. Al-Ejaili was stripped and kept naked.

57.     Mr. Al-Ejaili was imprisoned in a solitary cell in conditions of sensory deprivation.

58.     Mr. Al-Ejaili was subjected to extremes of temperature, with both hot and cold water thrown on his naked body.

59.     Mr. Al-Ejaili was placed in stress positions for extended periods of time.

60.     Mr. Al-Ejaili was threatened with unleashed dogs.

61.  Mr. Al-Ejaili was deprived of food.

62.  Mr. Al-Ejaili was deprived of sleep.

63.  Mr. Al-Ejaili was released from Abu Ghraib on or about February 1, 2004, without ever being charged with a crime.

## THE TORTURE CONSPIRACY

64.  All of these harms were inflicted on Plaintiffs by groups of persons conspiring together to torture detainees kept at the Abu Ghraib hard site.

65.  Among the conspirators were CACI employees Big Steve, DJ, Timothy Dugan. Reasonable discovery likely will establish that other CACI employees also participated in the ongoing conspiracy to torture Plaintiffs and other prisoners.

66. Sworn and unsworn testimony from military co-conspirators describe CACI employees Steven Stefanowicz and Daniel Johnson as among those interrogators who most frequently directed that detainees be tortured.

67. Big Steve, DJ and other corporate employees instigated, directed, participated in, aided and abetted conduct towards detainees that clearly violated the Geneva Conventions, the Army Field Manual, and the laws of the United States.

68. Reasonable discovery will establish that Big Steve, DJ, and other CACI employees and their co-conspirators attempted to avoid detection by treating certain detainees as "ghost detainees." That term was the conspiracy's code word for those prisoners who were never recorded as having been detained.

69. The conspiracy intentionally failed to record persons as detained at Abu Ghraib in order to try to prevent the Red Cross from visiting with them and learning of the torture.

70. Reasonable discovery will establish that CACI employees repeatedly conspired with military personnel to give Plaintiffs the "special treatment," which was code for torture of the type endured by Plaintiffs in the hard site.

71. CACI employees repeatedly conspired with military personnel to harm Plaintiffs in the various manners and methods referred to above.

72. The acts of CACI employees constitute acts of CACI. CACI conveyed its intent to join the conspiracy, and ratified its employees' participation in the conspiracy, by making a series of verbal statements and by engaging in a series of criminal acts of torture alongside and in conjunction with several co-conspirators.

73.     CACI's motivation was wholly financial -- it made millions of dollars as a result of keeping quiet about and participating in the conspiracy to torture and mistreat plaintiffs.

## CACI COULD HAVE PREVENTED AND STOPPED
## THEIR EMPLOYEES FROM TORTURING PLAINTIFFS

74.     CACI Premier Technology is an alter ego of CACI International Inc., not a separate fully capitalized business governed and controlled by independent executives with full autonomy.

75.     CACI International Inc. wholly owns and controls CACI Premier Technology, and operates CACI Premier Technology as one of its corporate divisions.  CACI International Inc. executives controlled how and whether CACI Premier Technology did business in Iraq.

76.     CACI admitted in litigation pending in the District of Columbia that it had the ability to control, direct and influence the actions performed by employees.

77.     CACI had the ability to prevent employees from torturing plaintiffs.

78.     CACI at all times were obliged by the terms of its contract to supervise their employees.

79.     CACI at all times retained the ability to stop employees from torturing plaintiffs.

80.     CACI is responsible for the actions taken by their employees towards plaintiffs.

## CACI AND ITS CO-CONSPIRATORS TOOK STEPS TO
## COVER UP THE SCOPE AND EXTENT OF TORTURE

79.  Reasonable discovery will establish that, in addition to participating in the actual physical and mental abuse of the plaintiffs, CACI participated in other conspiratorial misconduct, including, but not limited to:

(a) destroying documents, videos, and photographs,

(b) preventing the reporting of the torture and abuse to nonconspiring authorities, the ICRC, and the media,

(c) hiding plaintiff and other prisoners from the ICRC, and

(d) misleading non-conspiring military and government officials about the state of affairs at the prisons.

## CACI IS ENGAGED IN ONGOING EFFORTS
## TO COVER UP THE TORTURE

81.     CACI has been an ongoing part of this conspiratorial campaign to prevent the truth about the torture, and CACI's participation, from ever being known to the public.

82.     CACI embarked upon a campaign of intimidation to suppress any coverage or investigation of their role in the conspiracy. CACI repeatedly had its lawyers send letters threatening legal action to reporters who were considering reporting on CACI's role in the torture and mistreatment of prisoners.

83.     As part of this campaign of intimidation, CACI brought a frivolous lawsuit against a radio station. CACI lost the lawsuit.

84.     Reasonable discovery will establish that CACI did not anticipate being able to prevail in the lawsuit, but rather brought it in order to intimidate media members who otherwise would have reported more fully on CACI's role in the torture.

85.     CACI has repeatedly made, and continues to make, knowingly false statements to the effect that none of its employees was involved in torturing prisoners. In fact, co-conspirators have admitted that CACI corporate employees were involved in the torture.

*86.*     CACI's former Chief Executive Officer has written a book called *Our Good Name,* claiming that CACI has conducted a thorough investigation, and found none of its employees at fault. Based on the description of the investigation found in this book,  CACI's

87.     Nor does CACI's "thorough investigation" include interviews with the CACI employee Torin Nelson, who blew the whistle on the misconduct of his colleagues.

88.     The book falsely claims that the publicly-released photographs of torture at Abu Ghraib do not show any CACI employees. In fact, there is a photograph of Daniel Johnson interrogating a prisoner in a dangerous and harmful stress position not authorized by the relevant military regulations governing interrogation nor by any military personnel.

89.     Reasonable discovery will establish that CACI consulted with one or more of its co-conspirators during the preparation of this book.

## CACI KNEW THAT THEIR TORTURE OF PRISONERS VIOLATED THE LAWS OF THE UNITED STATES

90.     CACI intentionally and knowingly agreed to and did work in concert with the co-conspirators. To the extent that any particular act was perpetrated by a co-conspirator, CACI confirmed and ratified the same.

91.     CACI knew that the conspiracy to torture would harm Plaintiffs.

92.     CACI earned millions of dollars in revenues as a result of participating in the ongoing conspiracy.

93.     CACI invested the financial fruits of the conspiracy in its ongoing operations.

94.     CACI knew that military officials were prohibited from torturing prisoners by the Army Field Manual and other controlling law, and that any military officials who were doing so were violating the law.

95.     CACI knew that the United States government has denounced the use of torture and other cruel, inhuman, or degrading treatment at all times. CACI knew that it was illegal for them to participate in, instigate, direct, or aid and abet the torture of plaintiff and other prisoners.

96.     For example, in its Initial Report to the United Nations Committee Against Torture, the United States Department of State noted that, "[t]orture is prohibited by law throughout the United States. It is categorically denounced as a matter of policy and as a tool of state authority .... No official of the government, federal, state or local, civilian or military is authorized to commit or to instruct anyone else to commit torture. Nor may any official condone or tolerate torture in any form." *U.S. Department of State: Initial Report of the United States of America to the U.N. Committee Against Torture, Introduction* (1999). The State Department's Report on Human Rights Practices characterized the following as prohibited forms of torture: mock executions, sensory deprivation, repeated slapping, exposure to cold, stripping and blindfolding, food and sleep deprivation, threats to detainees or family members, dripping water on the head, squeezing of the testicles, rape, and sexual humiliation.

97.     CACI knew that the ban on torture is absolute and no exigent circumstances permit the use of torture.

98.     CACI knew that the United States intended and required that any person acting under the contract to the United States would conduct themselves in accordance with the relevant domestic and international laws.

99.     CACI knew and understood that the United States does not condone torture of prisoners.

100.     CACI cannot credibly claim that the wrongful and criminal conduct of certain military and government personnel misled them into thinking that the torture of prisoners was lawful and permissible.

## CACI ACTED NEGLIGENTLY

101.     CACI acted negligently and wrongfully by failing to prevent employees from engaging in foreseeable and predictable wrongful acts.

102.     CACI acted negligently and wrongfully by failing to discipline those who engaged in wrongful acts in Iraq.

103.     CACI acted negligently and wrongfully by failing to take due care in hiring employees being deployed to Iraq.

104.     CACI acted negligently and wrongfully by failing to train their employees.

105.     CACI acted negligently and wrongfully by failing to supervise adequately their employees. CACI admitted on its web site that CACI employees in Iraq work under "minimal supervision."

106.     CACI acted negligently and wrongfully by failing to investigate and report accusations of wrongdoing committed and witnessed by their employees and agents.

107.     CACI profited financially from their negligent misconduct.  The United States paid CACI millions of dollars in exchange for its contractual promises to provide services in a lawful manner.

108.     Instead of providing those services in a lawful manner, CACI failed to ensure that its employees and agents abided by the contract terms and with the Geneva Conventions.

109.     CACI injured Plaintiffs and harmed the reputation of the United States throughout the world.

110.    Plaintiffs suffered, and continue to suffer, extensive physical and mental harm from being tortured and abused by CACI employees and their co-conspirators.

111.    Plaintiffs seek compensatory and punitive damages in an amount far in excess of the jurisdictional amount set forth in 28 U.S.C. § 1332 ($75,000).

112.    Plaintiffs seek any and all additional remedies (such as attorneys' fees) available under law.

**COUNT ONE**
**TORTURE**

113.    All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

114.    Defendants' acts and omissions were deliberate and intentional. Defendants acted purposefully to punish, intimidate, discriminate, and to obtain information from Plaintiffs, who were in their physical custody and control.

115.    The acts committed by Defendants and their agents constitute torture in violation of the law of nations. The acts of torture committed against Plaintiffs include, among other things, beatings, placing plaintiffs in stress positions, forced nudity, sexual assault, death threats, withholding of food, water and necessary medical care, sensory depravation, and intentional exposure to extremes of heat and cold. The acts, done by Defendants working under contract with the United States, directly contradicted the contract terms, domestic law and the United States' express policy against torture.

116.    Defendants' misconduct caused grave and foreseeable injuries to Plaintiffs.

## COUNT TWO
## CIVIL CONSPIRACY TO TORTURE

117.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

118.     Defendants agreed with each other and others to participate in a series of unlawful acts.

119.     Each Defendant performed one or more overt acts pursuant to and in furtherance of the common scheme.

120.     Defendants are liable for torture because they set the conditions, directly and indirectly facilitated, ordered, acquiesced, confirmed, ratified, and conspired with others to torture Plaintiffs.

121.     Defendants' knowing participation in the conspiracy caused grave and foreseeable damages to Plaintiffs.

## COUNT THREE
## AIDING AND ABETTING TORTURE

122.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

123.     Defendants knowingly and substantially assisted others in torturing Plaintiffs.

124.     Defendants are liable for the torture because they aided and abetted others who were torturing Plaintiffs.

125.     Defendants' substantial assistance caused grave and foreseeable damages to Plaintiffs.

## COUNT FOUR
## CRUEL, INHUMAN OR DEGRADING TREATMENT

126.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

127.     The acts described herein had the intent and the effect of causing serious mental and physical pain and suffering to Plaintiffs, grossly humiliating and debasing the Plaintiffs, and forcing them to act against their will and conscience, inciting fear and anguish and breaking their physical or moral resistance.

128.     Defendants set the conditions, directly and indirectly facilitated, ordered, acquiesced, confirmed, ratified, and conspired with others to subject Plaintiffs to cruel, inhuman or degrading treatment.

129.     Defendants are liable for their conduct that led to the cruel, inhuman and degrading treatment of Plaintiffs.

130.     Defendants' misconduct caused grave and foreseeable injuries to Plaintiffs.

## COUNT FIVE
## CIVIL CONSPIRACY TO TREAT PLAINTIFF IN
## A CRUEL, INHUMAN OR DEGRADING MANNER

131.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

132.     Defendants agreed with each other and others to participate in a series of unlawful acts.

133.     Each Defendant performed one or more overt acts pursuant to and in furtherance of the common scheme.

134. Defendants are liable for the cruel, inhuman, and degrading treatment of Plaintiffs because they set the conditions, directly and indirectly facilitated, ordered, acquiesced, confirmed, ratified, and conspired with others to so treat Plaintiffs.

135. Defendants' knowing participation in the conspiracy caused grave and foreseeable damages to Plaintiffs.

## COUNT SIX
## AIDING AND ABETTING
## CRUEL, INHUMAN AND DEGRADING TREATMENT

136. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

137. Defendants knowingly and substantially assisted others in treating Plaintiff in a cruel, inhuman, and degrading manner.

138. Defendants are liable for the injuries caused by the cruel, inhuman, and degrading treatment because they substantially aided and abetted others in so treating Plaintiffs.

139. Defendants' knowing and substantial assistance to others caused grave and foreseeable damages to Plaintiffs.

## COUNT SEVEN
## WAR CRIMES

140. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

141. Defendants' acts were deliberate, willful, intentional, wanton, malicious, and oppressive and constitute grave breaches of the Geneva Conventions and war crimes. These acts

included torture, cruel, inhuman and degrading treatment, and willfully causing great suffering and serious bodily injury to Plaintiffs.

142.     Defendants' acts took place during a period of armed conflict, in connection with hostilities.

143.     Defendants set the conditions, directly and indirectly facilitated, ordered, acquiesced, confirmed, ratified, and conspired with others to commit war crimes against Plaintiffs.

144.     Defendants are liable for their conduct that constitutes war crimes.

145.     Defendants' misconduct caused grave and foreseeable injuries to Plaintiffs.

**COUNT EIGHT**
**CIVIL CONSPIRACY TO COMMIT WAR CRIMES**

146.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

147.     Defendants agreed with each other and others to participate in a series of unlawful acts.

148.     Each Defendant performed one or more overt acts pursuant to and in furtherance of the common scheme.

149.     Defendants are liable for war crimes against Plaintiff because they set the conditions, directly and indirectly facilitated, ordered, acquiesced, confirmed, ratified, and conspired with others to commit war crimes against Plaintiffs.

150.     Defendants' knowing participation in the conspiracy caused grave and foreseeable damages to Plaintiffs.

## COUNT NINE
## AIDING AND ABETTING COMMISSION OF WAR CRIMES

151.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

152.     Defendants knowingly and substantially assisted others in committing war crimes against Plaintiffs.

153.     Defendants are liable for the injuries caused by the war crimes because they substantially aided and abetted others in committing war crimes against Plaintiffs.

154.     Defendants' knowing and substantial assistance to others in the commission of war crimes caused grave and foreseeable damages to Plaintiffs.

## COUNT TEN
## ASSAULT AND BATTERY

155.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

156.     Defendants unlawfully intended to and did inflict immediate injury upon Plaintiffs.

157.     Defendants intentionally assaulted, battered, and made other offensive contacts' and aided and abetted the assaulting and battering and offensively contacting, of the Plaintiffs.

158.     Plaintiffs did not consent to the offensive contacts. Plaintiffs feared for their personal safety and felt threatened by Defendants' actions.

159.      Defendants set the conditions, directly and indirectly facilitated, ordered, acquiesced, confirmed, ratified, and conspired with others to commit the assaults and batteries.

160.     Defendants' acts caused grave and foreseeable damages to Plaintiffs.

## COUNT ELEVEN
## CIVIL CONSPIRACY TO ASSAULT AND BATTER

161.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

162.     Defendants agreed with each other and others to participate in a series of unlawful acts.

163.     Each Defendant performed one or more overt acts pursuant to and in furtherance of the common scheme.

164.     Defendants are liable for the assaults and batteries against Plaintiffs because they because they set the conditions, directly and indirectly facilitated, ordered, acquiesced, confirmed, ratified, and conspired with others to commit the assaults and batteries.

165.     Defendants' knowing participation in the conspiracy to assault and batter caused grave and foreseeable damages to Plaintiffs.

## COUNT TWELVE
## AIDING AND ABETTING
## ASSAULTS AND BATTERIES

166.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

167.     Defendants knowingly and substantially assisted others in assaulting and battering Plaintiffs.

168.     Defendants are liable for the injuries caused because they aided and abetted others in assaulting and battering Plaintiffs.

169.     Defendants' knowing and substantial assistance to others caused grave and foreseeable damages to Plaintiffs.

## COUNT THIRTEEN
## SEXUAL ASSAULT AND BATTERY

170.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

171.     Plaintiffs were sexually assaulted and battered by Defendants and their co-conspirators.

172.     Defendants intended to, and did, cause offensive sexual contacts with intimate parts of Plaintiffs. Defendants acted to cause Plaintiffs imminent apprehension of harmful and offensive contact with his intimate parts.

173.     Plaintiffs did not consent to the contacts. Plaintiff feared for his personal safety and felt threatened by Defendants' actions.

174.     Defendants set the conditions, directly and indirectly facilitated, ordered, acquiesced, confirmed, ratified, and conspired with others to sexually assault and batter Plaintiffs.

175.     Defendants' acts caused grave and foreseeable damages to Plaintiffs.

## COUNT FOURTEEN
## CIVIL CONSPIRACY TO SEXUALLY ASSAULT AND BATTER

176.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

177.     Defendants agreed with each other and others to participate in a series of unlawful acts.

178.     Each Defendant performed one or more overt acts pursuant to and in furtherance of the common scheme.

179.     Defendants are liable for the sexual assaults and batteries against Plaintiffs because they set the conditions, directly and indirectly facilitated, ordered, acquiesced, confirmed, ratified, and conspired with others to sexually assault and batter Plaintiffs.

180.     Defendants' knowing participation in the conspiracy caused grave and foreseeable damages to Plaintiffs.

## COUNT FIFTEEN
## AIDING AND ABETTING
## SEXUAL ASSAULTS AND BATTERIES

181.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

182.     Defendants knowingly and substantially assisted others in sexually assaulting Plaintiffs.

183.     Defendants are liable for the injuries caused by the crimes because they substantially aided and abetted others in sexually assaulting and battering Plaintiffs.

184.     Defendants' knowing and substantial assistance to others caused grave and foreseeable damages to Plaintiffs.

## COUNT SIXTEEN
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

185.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

186.     Defendants intentionally inflicted severe emotional distress by way of extreme and outrageous conduct on Plaintiffs.  Defendants intended or recklessly disregarded the probability of Plaintiffs suffering emotional distress when directing offensive conduct toward Plaintiffs or carrying out offensive conduct while aware of Plaintiffs' presence.

187.    Defendants set the conditions, directly and indirectly facilitated, ordered, acquiesced, confirmed, ratified, and conspired with others to inflict emotional distress on Plaintiffs.

188.    Defendants' acts caused grave and foreseeable injuries to Plaintiffs.

## COUNT SEVENTEEN
## CIVIL CONSPIRACY TO INFLICT EMOTIONAL DISTRESS

189.    All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

190.    Defendants agreed with each other and others to participate in a series of unlawful acts.

191.    Each Defendant performed one or more overt acts pursuant to and in furtherance of the common scheme.

192.    Defendants are liable for intentional infliction of emotional distress on Plaintiffs because they because they set the conditions, directly and indirectly facilitated, ordered, acquiesced, confirmed, ratified, and conspired with others to inflict emotional distress on Plaintiffs.

193.    Defendants' knowing participation in the conspiracy to inflict intentionally emotional distress caused grave and foreseeable damages to Plaintiffs.

## COUNT EIGHTEEN
## AIDING AND ABETTING
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

194.    All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

195.    Defendants knowingly and substantially assisted others in intentionally inflicting emotional distress upon Plaintiffs.

196.     Defendants are liable for the injuries caused by the intentional infliction of emotional distress because they substantially aided and abetted others in causing the emotional distress to Plaintiffs.

197.     Defendants' knowing and substantial assistance to others caused grave and foreseeable damages to Plaintiffs.

**COUNT NINETEEN –**
**NEGLIGENT HIRING AND SUPERVISION**

198.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

199.     Defendants acted negligently and directly harmed Plaintiffs by taking or failing to take one or more of the following steps:

(a) failing to take the appropriate steps in hiring proper personnel to perform services;

(b) failing to screen properly personnel before their hiring;

(c) failing to train personnel or subsidiary personnel properly to perform

services in a legal fashion;

(d) failing to investigate allegations of torture and abuse carried out by their

subsidiaries or their employees;

(e) failing to report to the government allegations of torture and abuse

carried out and witnessed by their agents;

 (f) failing to adequately supervise and discipline their employees; and

(g) negligently setting the conditions that facilitated the abuse.

200.     The negligence of CACI directly and foreseeably harmed Plaintiffs.

## COUNT TWENTY -
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

201.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

202.     Defendants negligently inflicted severe emotional distress on Plaintiffs.

203.     Defendants had a duty to Plaintiffs, which they breached.

204.     The negligence of CACI directly and foreseeably harmed Plaintiffs.

## JURY DEMAND AND PRAYER FOR DAMAGES

205.     Plaintiffs seek a jury trial. Plaintiffs were all seriously physically and mentally injured, and are entitled to any and all remedies available as a result of the conduct alleged herein, including, but not limited to:

(a) compensatory damages for physical, mental, and economic

injuries;

 (b) punitive damages in an amount sufficient to punish Defendants

for engaging in human rights abuses and deter similar behavior; and

(c) any attorneys' fees and costs permitted by law.


_____/s/ Susan L. Burke_____
Susan L. Burke (VA Bar #27769)
William T. O'Neil
William F. Gould
BURKE O'NEIL LLC
4112 Station Street
Philadelphia, PA 19127
(215) 971-5058
sburke@burkeoneil.com

Katherine Gallagher
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

Shereef Hadi Akeel
AKEEL & VALENTINE, P.C.
888 West Big Beaver Road
Troy, Michigan 48084-4736

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of September, 2008, I caused the foregoing Amended Complaint to be filed via ECF upon:


J. William Koegel, Jr.
Virginia Bar No. 38243
John F. O'Connor (*pro hac vice* application pending)
Attorneys for Defendants CACI Premier Technology, Inc. and CACI International Inc
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 - telephone
(202) 429-3902 – facsimile
wkoegel@steptoe.com
joconnor@steptoe.com


                                      _____/s/ Susan L. Burke_____
                                      Susan L. Burke (VA Bar #27769)
                                      William T. O'Neil
                                      William F. Gould
                                      BURKE O'NEIL LLC
                                      4112 Station Street
                                      Philadelphia, PA 19127
                                      (215) 487-6596
                                      Fax (215) 482.0874
                                      sburke@burkeoneil.com