UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI, et al., | ) ) ) ) |
| Plaintiffs, | ) Case No. 1:08-CV-00827-GBL-JFA |
| v. | ) ) ) |
| CACI INTERNATIONAL INC, et al., | ) ) |
| Defendants. | ) ) |

**REPLY IN SUPPORT OF CACI DEFENDANTS'
MOTION TO STAY DISCOVERY**

**I.      INTRODUCTION**

Most of Plaintiffs' opposition is devoted to a misleading recitation of the procedural history of this and related cases in an effort to preemptively avoid the judge-shopping label that Plaintiffs so richly deserve. That issue, which the CACI Defendants have addressed in other pleadings before the Court, is not dispositive of the question before the Court on ***this motion*** – whether the CACI Defendants are entitled to a stay of discovery until such time as the Court resolves the immunity defenses asserted in the CACI Defendants' motion to dismiss. On ***that issue***, Plaintiffs offer two responses, both of which are unavailing.

First, Plaintiffs make the incredible argument that "no decisional law supports CACI's claim to a stay" (Pl. Opp. at 6), a proposition rejected by the Fourth Circuit and the district courts within this Circuit. Second, Plaintiffs argue that the fact that essentially ***all*** of the relevant information is in the hands of the United States government requires that discovery go forward.

This argument, however, misses the point completely. The threshold discovery required of the United States government – including, at a minimum, the Defense Department and the Central Intelligence Agency – will consist of classified data concerning detainee interrogation plans and reports, as well as the CIA "ghost detainee" program that Plaintiffs have featured in their Amended Complaint. Even if the Fourth Circuit did not require a stay of discovery, it would make little sense to implicate potential state secrets discovery prior to determining whether the CACI Defendants are entitled to dismissal based on their immunity from suit. Therefore, the Court should follow the Fourth Circuit's decision in *Lescs v. Martinsburg Police Dep't*, 138 Fed. Appx. 562, 564 (4th Cir. 2005), and stay discovery pending resolution of the CACI Defendants' motion to dismiss.

## II. ANALYSIS

### A. Fourth Circuit Precedent Requires a Stay of Discovery

Plaintiffs' claim that "no decisional law supports CACI's claim to a stay on immunity grounds" is patently incorrect. Pl. Opp. at 6. In *Lescs*, the Fourth Circuit expressly held that "[t]he district court was ***required*** to rule on Defendants' dispositive motion to dismiss or for summary judgment raising sovereign and qualified immunity issues prior to allowing any discovery." *Lescs*, 138 Fed. Appx. at 564 (emphasis added). Plaintiffs' attempt to wave off *Lescs* as an "unpublished disposition" the citation of which is "disfavored" under the Fourth Circuit's local rules (Pl. Opp. at 6) is unavailing on multiple levels. First, Plaintiffs' attempt to weaken *Lescs*' precedential value is based on a misleading quotation of snippets from Fourth Circuit Local Rule 32.1. While the Fourth Circuit's local rules state that citation of pre-2007 unpublished disposition is "disfavored," the Fourth Circuit, unlike several other circuit courts, does not purport to render such decisions "non-precedential" and (contrary to Plaintiffs'

intimation) expressly permits citation to such decisions as precedent. The entire rule provides as follows:

> Citation of this Court's unpublished dispositions issued prior to January 1, 2007, in briefs and oral arguments in this Court and in the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case.
>
> ***If a party believes, nevertheless, that an unpublished disposition of this Court issued prior to January 1, 2007, has precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well, such disposition may be cited if the requirements of FRAP 32.1(b) are met.***

Fourth Cir. Local R. 32.1 (emphasis added).[1]

Indeed, if the Fourth Circuit's command is something to be ignored by the district courts, that would be news to the district judges in this Circuit who have cited to and recognized the precedential value of the decision in *Lescs*. *See Graham v. Standberry*, No. 07-CT-3015, 2008 WL 391689, at *5 (E.D.N.C. Aug. 20, 2008) (Flanagan, C.J.) (characterizing *Lescs* as "finding that the district court was required to rule on defendants' dispositive motion raising qualified immunity prior to allowing discovery"); *Eaker v. Overturf*, No. 07-CV-608, 2008 WL 294454, at *3 (M.D.N.C. July 25, 2008) (Tilley, J.) ("It is well settled that where defendants have raised the defense of qualified immunity, they are entitled to reasonable protection from a plaintiffs' discovery until the court has addressed the immunity issues."); *McKee v. Keyser*, No. 06-CT-3069, 2007 WL 2592941, at *3 (E.D.N.C. Sept. 5, 2007) (Flanagan, C.J.) (same quote as in *Graham*). In *Turner v. Kinder*, No. 07-CV-419, 2008 WL 648982, at *3 (E.D.N.C. Mar. 10, 2008), the court recognized that *Lescs* required a stay of discovery, but that when immunity is

---

[1] FRAP 32.1(b) requires that a copy of the unpublished decision be filed with the Court unless – as is the case here – the decision is available on a publicly available database. Here, *Lescs* is available on Westlaw and is published in the Federal Appendix.

raised *on summary judgment*, the plaintiff could be permitted the narrow discovery necessary to respond to the summary judgment motion. Here, of course, the CACI Defendants have asserted their immunity defense under Rule 12(b)(6) which, because it accepts the Plaintiffs' well-pleaded allegations as true, does not carry with it an entitlement to discovery. Fed. R. Civ. P. 12(b)(6).

Plaintiffs' other effort to avoid the clear implication of *Lescs* is to argue that the Fourth Circuit's decision in *Lescs*, without actually saying so, created a narrow rule that required a stay of discovery prior to resolving immunity motions *only if they are brought by government officials*, with Plaintiffs arguing that immunity should be available only to government officials in any event. Pl. Opp. at 6-7. However, the premise on which *Lescs* lies is that immunity carries with it "an entitlement not to stand trial or face the burdens of litigation," *Saucier v. Katz*, 533 U.S. 194, 200 (2001), and that this right that is defeated when a party asserting an immunity defense is nevertheless required to participate in discovery while its motion is pending. Moreover, Plaintiffs' intimation that the CACI Defendants are not entitled to a stay of discovery because immunity supposedly is a defense available only to government officials flies directly in the face of the Fourth Circuit's decision in *Mangold v. Analytic Services, Inc.*, 77 F.3d 1442, 1447-48 (4th Cir. 1996), where the Court explicitly held to the contrary.

Finally, Plaintiffs contend that discovery should go forward, *Lescs* notwithstanding, because this Court has a well-earned reputation for expeditious resolution of cases and that the CACI Defendants, by seeking transfer here, cannot now complain about that process. But that argument would hold water only if this Court were somehow removed from the Fourth Circuit. When the CACI Defendants moved to transfer this action to the Eastern District of Virginia, the *Lescs* decision was already on the books, and Plaintiffs cannot credibly argue that, by seeking

transfer, the CACI Defendants availed themselves of the Eastern District's rules and procedures but not the rules and precedent of the Fourth Circuit. Therefore, this Court should follow the Fourth Circuit's binding precedent in *Lescs* that requires a stay of discovery pending resolution of the CACI Defendants' motion to dismiss.

> **B.      The Threshold Merits Discovery Needed in this Action is Highly Sensitive, Likely Classified, and Largely in the Control of the United States**

As the CACI Defendants explained in moving to stay discovery, the documentation regarding Plaintiffs' detention, if they were in fact detained by United States forces, will be largely, if not exclusively, in the hands of the United States. This documentation will include any interrogation plans and interrogation reports relating to these detainees. Interrogation reports were (and presumably are) classified, and the same is true of interrogation plans. In addition, the United States might have medical records or other reports and documentation relating to the Plaintiffs, but again this information is likely to be classified. The CACI Defendants, despite Plaintiffs' attempt to cloud the record,[2] have no detainee-specific documents from which they could determine: whether these Plaintiffs were detained; if so whether they were interrogated by

---

[2] The assertions in Plaintiffs' opposition notwithstanding, Plaintiffs' counsel knows that the CACI Defendants have no documents regarding the detention, interrogation, or treatment of specific detainees. The CACI Defendants produced in a defamation action they filed in this Court (the "*Rhodes* action") copies of the documents they possessed going to the substance of CACI PT's interrogation-related work in Iraq. In the *Saleh* case, while Judge Robertson did not allow full-blown merits discovery, Plaintiffs' counsel nonetheless sought production of every document produced in the *Rhodes* action. After the CACI Defendants agreed, on Judge Robertson's urging, to allow Plaintiffs' counsel to review the entire production from the *Rhodes* action in order to identify documents they believed were relevant to the supervision issues involved in the summary judgment briefing, the CACI Defendants concluded that Plaintiffs' counsel were not proceeding in good faith. Rather than subjecting themselves to Plaintiffs' counsel's delay tactics, and the cost of litigating disputes over the documents that had been produced in the *Rhodes* action, the CACI Defendants decided to produce to Plaintiffs' counsel (the same Plaintiffs' counsel here) the entire *Rhodes* production. Thus, their mischaracterizations aside, Plaintiffs' counsel know well that the CACI Defendants possess none of the records documenting particular detainees' apprehension, detention, and (where applicable) interrogation.

anyone; if they were interrogated, whether the assigned interrogator was a CACI PT employee; if Plaintiffs were interrogated, what interrogation techniques were approved; and whether the interrogation reports of any such interrogations would include information to suggest or refute an allegation of abuse.[3]

Plaintiffs argue that the CACI Defendants' lack of such information regarding the Plaintiffs and any detention of these Plaintiffs is a reason why merits discovery should be permitted to go forward prior to resolution of the CACI Defendants' motion to dismiss. Plaintiffs' argument, however, is exactly backwards. The fact that all of this supporting (or refuting) documentation is in the hands of the United States government, and classified, argues *against* permitting merits discovery prior to determining whether Plaintiffs' Amended Complaint states a cause of action. It makes no sense whatsoever to engage the parties, the Court, and the United States in expensive, time consuming, and sensitive litigation of the discoverability of classified materials the CACI Defendants will need in order to refute the far-ranging grand conspiracy claims asserted in the Amended Complaint before determining whether any of Plaintiffs' claims can even survive a motion to dismiss.

This was precisely the tack Judge Robertson took in the related *Ibrahim* and *Saleh* cases in prohibiting full-blown discovery even after the court had denied a motion to dismiss a few of the plaintiffs' claims. In creating a special summary judgment procedure for the *Ibrahim* and *Saleh* cases, Judge Robertson recognized that the defendants' preemption defenses should be evaluated on summary judgment before allowing "full discovery" that had the "potential for

---

[3] Plaintiffs, though counsel, make the odd assertion that they are entitled to play "I've Got a Secret" and intentionally avoid identifying in the Amended Complaint the CACI PT employees, and other non-CACI personnel, with whom Plaintiffs supposedly had meaningful contact, and to instead hold that information back for discovery, as if that form of gamesmanship satisfies the "fair notice" requirements of federal pleading. Pl. Opp. at 7 n.8. This issue is addressed in detail in the CACI Defendants' motion to dismiss.

time-consuming disputes concerning state secrets." *Ibrahim*, 391 F. Supp. 2d at 19; *Saleh v. Titan Corp.*, 436 F. Supp. 2d 55, 59 (D.D.C. 2006) (adopting court's summary judgment procedure announced in *Ibrahim*).

In an analogous context, the Fourth Circuit recognized the tendency of claims such as Plaintiffs' to raise difficult questions regarding state secrets and related doctrines. In *El-Masri v. United States*, 479 F.3d 296, 309 (4th Cir. 2007), the plaintiff alleged that he had been the subject of the CIA's extraordinary rendition program, whereby government officials and private corporations worked together to capture the plaintiff and deliver him to foreign governments where he was subjected to torture and other abuses. In addressing El-Masri's claim that his case could proceed based on the publicly-available and otherwise non-secret evidence available regarding the CIA's rendition program, the Fourth Circuit observed:

> Furthermore, if El-Masri were somehow able to make out a prima facie case despite the unavailability of state secrets, the defendants could not properly defend themselves without using privileged evidence. The main avenues of defense available in this matter are to show that El-Masri was not subject to the treatment that he alleges; that, if he was subject to such treatment, the defendants were not involved in it; or that, if they were involved, the nature of their involvement does not give rise to liability. Any of those three showings would require disclosure of information regarding the means and methods by which the CIA gathers intelligence. If, for example, the truth is that El-Masri was detained by the CIA, but his description of his treatment is inaccurate, that fact could be established only by disclosure of the actual circumstances of his detention, and its proof would require testimony by the personnel involved. Or, if El-Masri was in fact detained as he describes, but the operation was conducted by some governmental entity other than the CIA, or some other government entirely, that information would be privileged. Alternatively, if the CIA detained El-Masri, but did so without Director Tenet's active involvement, effective proof thereof would require a detailed explanation of how CIA operations are supervised. Similarly, although an individual CIA officer might demonstrate his lack of involvement in a given operation by disclosing that he was actually performing some other

> function at the time in question, establishing his alibi would likely
> require him to reveal privileged information.

*Id.* The Fourth Circuit went on to hold that "the 'central facts' or 'very subject matter' of a civil proceeding for purposes of dismissal analysis, are those facts necessary to litigate it – not merely to discuss it in general terms. *Id.* Because the detailed facts concerning El-Masri's alleged apprehension, interrogation, and treatment would tread on state secrets, the court affirmed the district court's dismissal of the case. *Id.*

In the present action, the Plaintiffs seek to hold the CACI Defendants liable for injuries they allegedly suffered while detained by the United States at Abu Ghraib prison. In order to litigate the case, the parties will need access to the Government's information concerning the alleged apprehension, detention, interrogation, and treatment of these Plaintiffs. But that is not all that the CACI Defendants will need to defend themselves. Plaintiffs' Amended Complaint alleges that a central part of this alleged "torture conspiracy" was a "ghost detainee" program whereby certain detainees were not recorded as having been detained at all, so that they could remain hidden from the Red Cross. Am. Compl. ¶¶ 68-69. Indeed, Plaintiff Rashid claims to be a "ghost detainee." *Id.* ¶ 43.

According to published Army reports, the "ghost detainee program" was an official program of the CIA whereby certain detainees viewed as high-value detainees were not recorded as having been captured by the United States.[4] Therefore, in addition to obtaining documentation concerning every aspect of Plaintiffs' alleged detention, the CACI Defendants will need to have discovery regarding the CIA's ghost detainee program in order to refute

---

[4] MG Antonio M. Taguba, AR 15-6 Investigation of the 800th Military Police Brigade, at 26-27, *available at* http://www.npr.org/iraq/2004/prison_abuse_report.pdf; MG George Fay, AR 15-6 Investigation of the Abu Ghraib Detention Facility and 205th Military Intelligence Brigade, at 53, *available at* http://fl1.findlaw.com/news.findlaw.com/hdocs/docs/dod/fay82504rpt.pdf.

Plaintiffs' allegations that the CACI Defendants had a role in developing and implementing this CIA official program. The same is true with respect to the military's records, given the conspiracy allegations involving the military. These required documents will include, but are certainly not limited to:

- Interrogation plans, interrogation reports, medical records, and records relating to the apprehension, detention, and release, of each of the Plaintiffs

- Interrogation rules of engagement in effect at any time from 2003-2005 at Abu Ghraib prison in Iraq

- Documents identifying who in the United States government approved what types of interrogation techniques or treatment for detainees at Abu Ghraib prison, whether the techniques were approved generally or for particular detainees

- Documents setting forth the scope of the CIA's ghost detainee program, the identity of all persons involved in planning and implementing such a program, the identity of persons designated for inclusion in that program, and any documentation concerning the inclusion or exclusion of Plaintiffs from that program

- Documents identifying the names and contact information of Department of Defense, CIA, and other government personnel who were present at Abu Ghraib prison from 2003-2005

- Reports to and from the International Committee of the Red Cross to confirm of refute Plaintiff Rashid's claim that he was not reported as a detainee to the Red Cross and to evaluate the extent of the "ghost detainee" program in which Plaintiffs recklessly allege the CACI Defendants participated

In FOIA litigation, the United States successfully withheld requests for reports to and from the Red Cross on the grounds that such materials were sensitive and statutorily protected from disclosure. *ACLU v. Dep't of Defense*, 389 F. Supp. 2d 547, 552 (S.D.N.Y. 2005). The United States similarly succeeded in upholding the CIA's refusal to admit or deny the existence of documents relating to approved interrogation methods for certain Al-Qaeda members. *Id.* at 564-65. The United States also asserted that documents relating to the decision not to record so-

called "ghost detainees" as having been detained by the United States government were classified and need not be produced. *Id.* at 566. Indeed, in another FOIA case, the CIA has refused to produce any documents relating to its "ghost detainee" program on the grounds that these documents are subject to a statutory protection for "intelligence sources and methods," *see* Supp. O'Connor Decl., Ex. A at 10-16, and are classified in the interests of national defense, *id.* at 16-20. As the CIA explained in its submission to the court, these materials "remain highly classified, and have been placed in a Top Secret, Sensitive Compartmented Information special access program to enhance their protection from unauthorized disclosure." *Id.* at 2. Plaintiffs' suggestion that the Defense Department and CIA will now willingly produce these same categories of highly sensitive documents ignores reality.[5]

In response, Plaintiffs claim that the CACI Defendants "exaggerate" the amount of classified material necessary to litigate this action and that the military has produced "reams of non-classified materials" relating to abuses at Abu Ghraib prison. Pl. Opp. at 1-2, 8. This was precisely the plaintiff's argument in *El-Masri*, an argument the Fourth Circuit rejected. 479 F.3d at 308 ("The heart of El-Masri's appeal is his assertion that the facts essential to his Complaint have largely been made public . . . "). No amount of prevarication can change the fact that the United States has not, to the CACI Defendants' knowledge, made publicly available, or produced in litigation, a single interrogation plan for an Abu Ghraib detainee, a single interrogation report for an Abu Ghraib detainee, a single request for higher authority approval of detainee specific interrogation techniques, or a single document regarding the details of the CIA's ghost detainee program. As *El-Masri* explains, this is precisely the type of information that will be necessary

---

[5]The Plaintiffs' counsel knows this. One of the Plaintiffs in the *Amnesty International* FOIA litigation, where the CIA has laid out the classified nature of all documents relating to ghost detainees, is the Center for Constitutional Rights, which represents the Plaintiffs in this action.

for a fair defense of Plaintiffs' outlandish allegations. There is no reasonable prospect that the United States will willingly produce this material in third-party discovery. Therefore, it makes little sense for the parties, and the Court to expend the resources and funds necessary for what undoubtedly would be protracted litigation over the discoverability of these materials before determining whether this case can proceed beyond the motion to dismiss stage.

For these reasons, even if the Fourth Circuit had never decided *Lescs*, there is good reason to stay discovery until resolution of the CACI Defendants' motion to dismiss.

### C. Plaintiffs' Opposition is Replete With Mischaracterizations of the Procedural History of this Action and Related Lawsuits

In attempting to avoid the clear implication of *Lescs*, 138 Fed. Appx. at 564, and the dictates of common sense and efficiency, Plaintiffs offer a misleading recitation of the procedural history of this action and the related action filed more than four years ago by the same Plaintiffs' counsel. Plaintiffs misleadingly describe the motion to dismiss ruling in *Saleh v. Titan Corp.*, 436 F. Supp. 2d 55, 59 (D.D.C. 2006),[6] to suggest that the court addressed the immunity defenses asserted in this action. In *Saleh*, neither the CACI Defendants nor any other defendant asserted an immunity defense in the motions to dismiss that were actually ruled upon by the court. Rather, as Plaintiffs' counsel well knows, the district court's decision in *Saleh* concerned the defendants' assertion of a *preemption* defense, not an immunity defense. Indeed, the district court in *Saleh* recognized as much, noting that preemption and immunity are two completely distinct concepts. *Ibrahim*, 391 F. Supp. 2d at 17-18 (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500, 505 n.1 (1988)).

---

[6] The district court's decision on the defendants' motions to dismiss largely incorporated by reference its earlier decision on motions to dismiss filed by the defendants in the related case of *Ibrahim*, 391 F. Supp. 2d at 15-16. Therefore, much of the analysis in the motion to dismiss decision in *Ibrahim* applies both to that case and to *Saleh*.

Thus, Judge Robertson's observation that "I will not extend [federal immunity to non-government officials] here" took place in the context where no defendant had briefed the immunity issue or asked for a finding of immunity.[7]  Indeed, and perhaps most crucially, the Fourth Circuit *has* done exactly what Judge Robertson did not do in *Saleh* and *Ibrahim*, holding that absolute official immunity is available as a defense, in appropriate circumstances, to government contractors performing the government's work.  *Mangold*, 77 F.3d at 1447-48. Judge Robertson never addressed the question of absolute official immunity in his motion to dismiss decisions *because the issue was never raised by the parties*.  Therefore, to the extent that Plaintiffs seek to argue that the *Saleh* case more or less disposed of the CACI Defendants' immunity defense, such a characterization is blatantly misleading, both in its description of the *Saleh* court's motion to dismiss ruling and in ignoring the existence of *Mangold* as binding precedent in this Circuit.

Plaintiffs also describe the course of discovery in the *Saleh* case to create the misleading impression that *Saleh* involved extensive merits discovery and that the United States was more than happy to open its vaults to such discovery.  In fact, the opposite is true.  Contrary to Plaintiffs' intimations, the CACI Defendants' discovery on their summary judgment motion in *Saleh* and *Ibrahim* consisted of a single deposition of Colonel (former Brigadier General) Janis Karpinski.  The CACI Defendants took that deposition, over plaintiffs' objection, in order to refute a highly misleading Karpinski declaration submitted by plaintiffs' counsel (the same Plaintiffs' counsel as in this action) that suggested Colonel Karpinski had actual knowledge of the manner in which CACI PT interrogators were supervised in Iraq.  In her deposition, Colonel

---

[7] The CACI Defendants *have* asserted an immunity defense to the Fourth Amended Complaint in *Saleh*, but the briefing on that motion is stayed pending the resolution of the CACI Defendants' interlocutory appeals on the issue of preemption.

Karpinski admitted that she had no such knowledge, her carefully crafted, plaintiffs' counsel-drafted declaration notwithstanding. In addition to this formal discovery, the CACI Defendants obtained permission from the United States Army to interview and obtain declarations from two Army contracting officer representatives on issues of supervision and control of CACI PT interrogators. In obtaining such permission, however, the CACI Defendants agreed that they would ask no questions concerning interrogation techniques or allegations of abuse, two of the threshold issues in this action.

With respect to the handful of depositions the *Saleh* plaintiffs took on the issue of supervision and control, the deputy of the U.S. Army Litigation Division attended those depositions in order to prevent any questions going to the merits of the plaintiffs' detainee abuse claims. Finally, the defendants in *Saleh* obtained records relating to Plaintiff Saleh's administrative claim against the government, an administrative claim which, though submitted by Plaintiffs' counsel, was found to be false in virtually all important respects. But the defendants in *Saleh* obtained those documents through a FOIA request and not through compulsory discovery. Supp. O'Connor Decl. ¶ 2. While an administrative claim might not be classified, the interrogation plans and reports for detainees in Iraq certainly are and, as discussed above, have not been made available in litigation or otherwise.

Plaintiffs' mischaracterizations extend to this second round of lawsuits as well. As described in the CACI Defendants' memorandum of law in support of their motion to stay discovery, this action is one of four single-plaintiff actions Plaintiffs' counsel filed in four different federal district courts in May and June 2008. Plaintiffs' opposition states, without explanation, that Plaintiffs' counsel changed strategy and decided to proceed solely against the CACI Defendants in this Court "after learning that they were losing this [transfer] battle in

California." Pl. Opp. at 3.[8] This representation makes no apparent sense. Plaintiffs' counsel, as Plaintiffs admit in their opposition, agreed to the transfer of this action and the suit originally filed in Washington to this Court *before* the court in California ruled on the CACI Defendants' motion to transfer venue. Indeed, even after Plaintiffs' counsel agreed to the transfer of this action and the Washington action, Plaintiffs' counsel continued to oppose transfer of the California action, and that case reached this Court only after the assigned judge in California granted the CACI Defendants' transfer motion over the plaintiff's objection.

Plaintiffs' counsel also mischaracterizes the CACI Defendants' position once the three transferred cases reached this Court. The CACI Defendants did not "object" to having the three cases consolidated before the judge assigned to the lower-numbered action (Pl. Opp. at 3 n.4). Rather, the CACI Defendants believed (and believe) it inappropriate for the parties to purport to select the assigned judge. Instead, it is the exclusive province of the Court to determine the judge to whom a case is assigned. If the Court's own internal procedures would have consolidated the three cases before Judge Lee, that was just fine with the CACI Defendants.

---

[8] Of the Plaintiffs in this action, only Plaintiff Al Shimari has had his case transferred to this Court. The other Plaintiffs in this action did not join this case until after it was transferred to this Court. They joined this action by amendment after Plaintiffs' counsel voluntarily dismissed the claims of two other of her clients who cases had been transferred to this Court and assigned to judges other than the judge before whom Plaintiffs' counsel wanted to consolidate all transferred cases. This facts makes it difficult to understand how Plaintiffs can assert that "they" did not select this forum for these claims (Pl. Opp. at 2), as three of the Plaintiffs assuredly did, and the fourth one consented to transfer.

## IV. CONCLUSION

For the foregoing reasons, the CACI Defendants respectfully request that the Court grant their motion to stay discovery.

Respectfully submitted,

*/s/ J. William Koegel, Jr.*
J. William Koegel, Jr.
Virginia Bar No. 38243
John F. O'Connor (admitted *pro hac vice*)
Attorneys for Defendants CACI Premier
Technology, Inc. and CACI International Inc
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, Dc  20036
(202) 429-3000 – Telephone
(202) 429-3902 – Facsimile
wkoegel@steptoe.com
joconnor@steptoe.com

October 14, 2008

# CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of October, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Susan L. Burke
>William Gould
>Attorneys for Plaintiff
>Burke O'Neil LLC
>4112 Station Street
>Philadelphia, PA 19127
>(215) 487-6596 – telephone
>sburke@burkeoneil.com
>wgould@burkeoneil.com

>*/s/ J. William Koegel, Jr.*
>J. William Koegel, Jr.
>Virginia Bar No. 38243
>John F. O'Connor (admitted *pro hac vice*)
>Attorneys for Defendants CACI Premier Technology, Inc. and CACI International Inc
>STEPTOE & JOHNSON LLP
>1330 Connecticut Avenue, N.W.
>Washington, Dc  20036
>(202) 429-3000 – Telephone
>(202) 429-3902 – Facsimile
>wkoegel@steptoe.com
>joconnor@steptoe.com