## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

|  |  |
|---|---|
| SUHAIL NAJIM | ) |
| ABDULLAH AL SHIMARI *et al.*, | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) C.A. No. 08-cv-0827 GBL-JFA |
|  | ) |
| CACI INTERNATIONAL, INC., *et. al.*, | ) |
|  | ) |
| Defendants | ) |
|  | ) |
|  | ) |

## PLAINTIFFS' OPPOSITION TO CACI'S MOTION TO DISMISS

Susan L. Burke (Virginia Bar No. 27769)
William T. O'Neil
William F. Gould
BURKE O'NEIL LLC
4112 Station Street
Philadelphia, PA 19127
(215) 487-6596 (telephone)
(215) 482-0874 (facsimile)
sburke@burkeoneil.com

Katherine Gallagher
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

Shereef Hadi Akeel
AKEEL & VALENTINE, P.C.
888 West Big Beaver Road
Troy, Michigan 48084-4736
*Counsel for Plaintiffs*

Date: October 16, 2008

Dockets.Justia.com

# **TABLE OF CONTENTS**

STATEMENT OF PROCEDURAL FACTS……………………………………………………..1

ARGUMENT……………………………………………………..……...………...……...…2

I.    THE POLITICAL QUESTION DOCTRINE DOES NOT INSULATE CACI's CORPORATE MISCONDUCT FROM JUDICIAL SCRUTINY……………………………… 2

   A.    The Political Question Doctrine Applies Only in Rare Cases…………………………… 3

   B.    The Political Question Doctrine Does Not Apply Here Because the Victims Are Not Challenging Any Action by the United States………………………………………….... 4

   C.    The Political Question Doctrine Does Not Bar Suits Relating to Wrongful Wartime Conduct…………………………………………………………………………………... 5

   D.    Plaintiffs' Action Is Easily Litigated and Does Not Pose Any Manageability Issues…… 7

II.    CACI IS NOT IMMUNE FROM SUIT................................................................................. 9

   A.    The Common Law *Westfall* Doctrine Does Not Protect Those Who Cross the Line  from Official Duty Into Illicit Brutality……………………………………………………….. 9

   B.    Choice-of-Law Doctrines and the Bremer Order Do Not Bar this Action…………… ... 12

     1. Federal courts are not compelled to apply substantive foreign law that harms the United States' interests…………………………………………………………………… 12

     2. The Bremer Order does not prohibit this Court from applying Iraqi law…………….. 14

   C.    Plaintiffs Are Entitled To Discovery Before Any Dismissal Based on Political Question or Absolute Immunity Grounds……………………………………………………… 15

III.    CACI CANNOT RELY ON THE GOVERNMENT CONTRACTOR DEFENSE AS GROUNDS TO DISMISS PLAINTIFFS' CLAIMS……………………………………… ... 17

   A.    Insulating CACI From Claims Arising From Its Illicit Brutality Harms the Federal Interest……………………………………………………………………………... 18

   B.    Holding CACI Liable for Illicit Brutality Does Not "Fetter" Any Military Commander……………………………………………………………………... 20

IV.    PLAINTIFFS' COMPLAINT STATES VALID CLAIMS…………………………… 22

A.  The Violations Plaintiffs Allege fall Squarely within the *Sosa* Test and Do Not Require this Court to Recognize any New Claims……………………………………………..23

B.  Private Parties Like CACI Are Not Insulated From ATS Liability…………………..... 24

C.  Plaintiffs Have No Remedy Against CACI Other than this Litigation………………… .26

D.  Federal Common Law Derived from Other Legally-Controlling Federal Sources Also Prohibits the Conduct At Issue………………………………………………………..27

V.  PLAINTIFFS HAVE PLED PROPERLY…………………………………………………28

CONCLUSION………………………………………………………………………………….30

**TABLE OF AUTHORITIES**

**Federal Cases**

*Abiola v. Abuakar*, 435 F.Supp.2d 830 (N.D.Ill. 2006) ...................................................... 26

*Alperin v. Vatican Bank*, 242 F. Supp. 2d 686 (N.D. Cal. 2003) ...................................................... 7

*Alperin v. Vatican Bank*, 410 F.3d 532 (9th Cir. 2005) ...................................................... 8

*Alvarez-Machain v. United State*s, 331 F.3d 604, (9th Cir. 2003) ...................................................... 25

*American Civil Liberties Union v. Dep't. of Defense*, 2008 WL 4287823 (2d Cir. 2008) .............. 8

*Amirmokri v. Abraham*, 437 F. Supp. 2d 414 (D. Md 2006) ...................................................... 15

*Anderman v. Federal Republic of Austri*a, 256 F. Supp. 2d 1098 (C.D. Cal. 2003) ...................... 7

*Arellano v. Weinberger*, 745 F.2d 1500 (D.D.C. 1984) ...................................................... 9

*Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794 (5th Cir. 1993) ...................................................... 18

*Baker v. Carr*, 369 U.S. 186 (1962) ...................................................... 3, 4, 5, 15, 16

*Barron  v. Martin-Marietta Corp.*, 868 F. Supp. 1203 (N.D.Cal. 1994) ...................................................... 17

*Baum v. United States*, 986 F.2d 716 (4th Cir. 1993) ...................................................... 10

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) ...................................................... 29

*Bentzlin v. Hughes Aircraft Co.*, 833 F.Supp 1486 (C.D.Cal. 1993) ...................................................... 22

*Bolchos v. Darrel*, 3 F.Cas. 810 (D.S.C. 1795) ...................................................... 25

*Boumediene v. Bush*, 128 S. Ct. 2229 (2008) ...................................................... 4

*Bowoto v. Chevron*, 557 F.Supp.2d 1080 (N.D.Cal. 2008) ...................................................... 26

*Boykin v. KeyCorp*, 521 F.3d 202 (2d Cir. 2008) ...................................................... 30

*Boyle v United Technologies Corp.*, 487 U.S. 500 (1988) ...................................................... 17, 18, 19, 21, 22

*Burger-Fischer v. DeGussa AG*, 65 F. Supp. 2d 248 (D.N.J. 1999) ...................................................... 24

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86 (D.D.C. 2003) ...................................................... 24

*CACI Premier Technology, Inc. v. Rhodes*, 536 F.3d 280 (4th Cir. 2008) ...................................................... 11, 12

*Carmichael v. Kellogg, Brown and Root Servs., Inc.*, 450 F. Supp. 2d 1373 (N.D.Ga. 2006) ..... 21

*Coleman v. Tennessee*, 97 U.S 509 (1878) ................................................................................ 14

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) .................................................................. 20

*Dames & Moore v. Regan*, 453 U.S. 654 (1981) ......................................................................... 3

*Densberger v. United Technologies Corp.*, 297 F.3d 66 (2d Cir. 2002) ...................................... 18

*Deutsch v. Turner Corp.*, 324 F.3d 692 (9th Cir. 2003) ............................................................ 6, 7

*Doe v. Exxon Mobil Corp.*, No. Civ.A.01-1357, 2006 WL 516744 (D.D.C. Mar. 2, 2006) ........ 14

*Doe v. Islamic Salvation Front*, 993 F. Supp. 3 (D.D.C. 1998) ............................................ 25, 26

*Dostal v. Haig*, 652 F.2d 173 (D.C. Cir. 1981) ......................................................................... 14

*Filártiga v. Peña-Irala*, 630 F.2d 876 (2d Cir. 1980) ................................................................ 23

*Fisher v. Halliburton*, 390 F.Supp.2d 610 (S.D.Tex. 2005) ...................................................... 21

*Flynn v. Shultz*, 748 F.2d 1186 (7th Cir. 1984) .......................................................................... 3

*Ford v. Surget*, 97 U.S. 594 (1878) ............................................................................................ 6

*Frumkin v. JA Jones, Inc.*, 129 F. Supp. 2d 370 (D.N.J. 2001) ............................................. 7, 24

*Griggs v. WMATA*, 232 F.3d 917 (D.C. Cir. 2000) ..................................................................... 9

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) .................................................................................... 3

*Heckenlaible v. Virginia Peninsula Regional Jail Authority*,
    491 F.Supp.2d 544 (E.D.Va. 2007) ..................................................................................... 28

*Ibrahim v. Titan Corp.*, 391 F.Supp.2d 10 (D.D.C. 2005) ................................... 5, 9, 17, 20, 26

*Ibrahim v. Titan Corp.*, 556 F. Supp. 2d 1 (D.D.C. 2007) .................................................. 18, 20

*In re Agent Orange Product Liability Litigation*, 373 F. Supp. 2d 7 (E.D.N.Y. 2005) ............... 20

*In re Estate of Ferdinand Marcos, Human Rights Litigation*, 25 F.3d 1467 (9th Cir. 1994) ....... 23

*In re Joint E. & S. Dist. New York Asbestos Litig.*, 897 F.2d 626 (2d Cir. 1990) ...................... 17

*In Re Peanut Crop Ins. Litigation*, 524 F.3d 458 (4th Cir. 2008) .............................................. 27

*Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424 (D.N.J. 1999) ........................................ 7, 24, 26

*Jama v. INS*, 334 F.Supp.2d 662 (D.N.J. 2004) ................................................................... 19, 26

*Japan Whaling Ass'n. v. Am. Cetacean Soc'y*, 478 U.S. 221 (1986) ............................................ 6

*Johnson v Eisentrager*, 339 U.S. 763 (1950) ............................................................. 20

*Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004) ................................................... 30

*Jones v. Tyson Foods, Inc.*, 378 F.Supp.2d 705 (E.D.Va. 2004) ................................ 28

*Kadić v. Karadžić*, 70 F.3d 232 (2d Cir. 1995) ...................................... 6, 15, 23, 24, 25

*Khulumani v. Barclay National Bank*, Ltd., 504 F.3d 254 (2nd Cir. 2007) ................................ 26

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione*, 937 F.2d 44 (2d Cir. 1991) ...................... 2

*Koohi v. United States*, 976 F.2d 1328 (9th Cir. 1992) ................................ 3, 6, 8, 21

*Lessin v. Kellogg Brown & Root Servs. Inc.*, 2006 WL 3940556 (S.D.Tex. June 12, 2006) ....... 21

*Linder v. Portocarrero*, 963 F.2d 332 (11th Cir. 1992) ............................................. 6

*Little v. Barreme*, 6 U.S. (2 Cranch) 170 (1804) ................................................... 5

*Long Island Sav. Bank*, *FSB v. United States*, 503 F.3d 1234 (Fed.Cir. 2007) ............................ 27

*Malesko v. Corr. Servs. Corp.*, 229 F.3d 374 (2d Cir. 2000) ...................................... 20

*Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343 (4th Cir. 1995) .................................... 28

*McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331 (11th Cir. 2007) ............................ 17, 21

*McMahon v. Presidential Airways, Inc.*, 460 F.Supp.2d 1315 (M.D.Fla. 2006) ........................ 21

*Medina v. United States*, 259 F.3d 220 (4th Cir. 2001) ............................................ 10

*Mitchell v. Harmony*, 54 U.S. (13 HOW) 115 (1851) .................................................. 6

*Murray v. The Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64 (1804) .................................... 19

*New Orleans v. The Steamship Co.*, 87 U.S. 387 (1874) ............................................. 14

*Nicaragua v. Reagan*, 859 F.2d 929 (D.C. Cir. 1988) ................................................ 6

*Nixon v. United States*, 506 U.S. 224 (1993) ...................................................... 16

*Paquete Habana*, 175 U.S. 677 (1900) ............................................................ 6, 19

*Perkins v. United States*, 55 F.3d 910 (4th Cir. 1995) ............................................ 10

*Perrin v. United States*, 4 Ct. Cl. 543 (1868) ................................................... 23

*Renne v. Geary*, 111 S. Ct. 2331 (1991) .......................................................... 16

*Republican Party of N.C. v. Martin*, 980 F.2d 943 (4th Cir. 1992) ............................................. 16

*Saucedo-Gonzales v. United States*, 2007 WL 2319854 (W.D.Va. 2007) ................................... 10

*Smith v Reagan*, 844 F.2d 195  (4th Cir. 1988) ........................................................................ 4, 5

*Sterling v.Constantin*, 287 U.S. 378  (1932) .............................................................................  8

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) ............................................................. 22, 23, 25

*Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774 (D.C. Cir. 1984) ........................................ 23

*Terry v. June*, 420 F.Supp.2d 493 (W.D.Va. 2006) ................................................................... 12

*Thigpen v. United States*, 800 F.2d 393 (4th Cir. 1986) ......................................................... 16

*Tiffany v. United States*, 931 F.2d 271 (4th Cir. 1991) .............................................................. 4

*United States v. Gaubert*, 499 U.S. 315 (1991) ...................................................................... 10

*United States v. Lindh*, 212 F. Supp. 2d 541 (E.D. Va 2002) ................................................. 3, 4

*United States v. Smith*, 18 U.S. (5 Wheat.) 153 ....................................................................... 25

*Westfall v. Erwin*, 484 U.S. 292 (1988) ................................................................................... 10

*Whitaker v. Kellogg, Brown and Root Servs.*, Inc., 444 F.Supp.2d 1277 (M.D. Ga. 2006) ......... 21

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) ................................................... 3

*Zirkovich v. Vatican Bank*, 242 F. Supp. 2d 659 (N.D.Cal. 2002) ............................................. 7

**State Cases**

*Commercial Business Systems v. BellSouth*, 453 S.E.2d 261 (Va. 1995) ..................................... 28

*Dreher v. Budget Rent-A-Car System*, Inc., 634 S.E.2d 324 (Va. 2006) ..................................... 12

*Gina Chin & Assocs., Inc. v. First Union Bank*, 537 S.E.2d 573 (Va. 2000) .............................. 28

*Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286 (Ohio 1984) .............................................................. 13

*Plummer v. Center Psychiatrists*, 476 S.E.2d 172 (Va. 1996) .................................................... 28

*Williard v. Aetna Cas. & Sur. Co.*, 193 S.E.2d 776 (Va. 1973) .................................................. 13

## Federal Statutes

10 U.S.C. § 948a(1)(A) .................................................................................. 19

10 U.S.C. § 881 ................................................................................... 11, 20

10 U.S.C. § 892 ........................................................................................ 20

10 U.S.C. § 893 ........................................................................................ 20

10 U.S.C. § 928 ........................................................................................ 20

18 U.S.C. § 2340A ..................................................................................... 19

18 U.S.C. § 2441 ................................................................................. 19, 26

28 U.S.C. § 1350 ....................................................................................... 22

28 U.S.C. § 1343 ....................................................................................... 15

## Federal Rules and Regulatory Materials

48 C.F.R. §§203.7000-203.7001 (2008) ..................................................... 27

Defense Federal Acquisition Regulation Supplement; Contractor Personnel Authorized To Accompany U.S. Armed Forces, 73 Fed. Reg. 16764, 16768 (Mar. 31, 2008) ........................ 22

United State Army Field Manual 3-100.21, Contractors on the Battlefield (Jan. 2003) ............. 27

United State Army Regulation 715-9, Contractors Accompanying the Force (Oct. 29, 1999) .... 27

## International Authorities

*Attorney General v. Eichmann*, (Sup. Ct. Israel 1962) *reprinted in* 36 I.L.R. 277, 314 (1968) ... 20

Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 46, at 197, U.N. GAOR, 39th Sess., Supp. No. 51, U.N. Doc. A/39/51 ................ 19

Geneva Convention Relative to the Treatment of Civilian Persons In Time of War, Aug. 12, 1949 ............................................................................................ 10, 11, 20

*In re Tesch (Zyklon B Case)*, 13 Int'l L. Rep. 250 (Br. Mil. Ct. 1946) .................................. 21, 25

International Covenant on Civil and Political Rights, S. Exec. Doc. No. 95, 999 U.N.T.S. 171 (Dec. 16, 1966) .................................................................. 19

*United States v. Ohlendorf* (Einsatzgruppen Case), IV Trials of War Criminals ........................ 19

**Books and Articles**

Federal Jurisdiction, Erwin Chemerinsky (5th ed. 2003) ...................................................... 3

Our Good Name: A Company's Fight to Defend Its Honor and Get the Truth Told
   About Abu Ghraib, J. Phillip London (2008) ................................................................... 16

*Restatement (Second), Conflict of Laws* (1971) ........................................................... 13

CACI, after obtaining Court permission to file an extra-long brief, strings together a series of weak arguments to try to persuade this Court to dismiss the torture victims' claims. All arguments, no matter how contradictory to each other, are thrown into the mix. For example, CACI simultaneously argues that (1) the United States' interest in this dispute is so great that for-profit defense contractors such as CACI must be wholly immunized (CACI Memorandum of Law in Support of Motion to Dismiss ("Mem.") at 13-23); and (2) only Iraq, not the United States, has a legally-cognizable interest in this dispute, and therefore CACI must be dismissed because it cannot be subjected to Iraqi jurisdiction. Mem. at 18-23. As explained below, all of CACI's arguments fall woefully short of compelling dismissal of Plaintiffs' claims.

## STATEMENT OF PROCEDURAL FACTS

The Amended Complaint filed on September 15, 2008 ("Am. Compl." or "Complaint")[1] alleges that a conspiracy to torture at the Abu Ghraib hard site is known to exist because the military soldiers convicted for the abuse have admitted they conspired with CACI employees Daniel Johnson and Steven Stefanowicz. Indeed, the soldiers identify these two CACI employees as the ones who directed and caused some of the most egregious torture and abuse at Abu Ghraib. Am. Compl. ¶ 1. The Complaint alleges that Plaintiffs were tortured and subjected to severe pain by these two CACI employees as well as by CACI another employee, Timothy Dugan. Am. Compl. ¶¶ 1, 4-7, 64-65. The Complaint alleges various details of not only the conspiracy but its cover-up, such as the fact that CACI blatantly lies about the fact Daniel

---

[1] CACI devotes three pages to describing the pending *Saleh et al. v. Titan et al.*, No. 05-1165 (D.D.C.) litigation in the District of Columbia. CACI then concludes "Plaintiffs' claims are hardly distinguishable from those asserted in *Saleh*." Mem. at 4. The *Saleh* litigation does include victims like Plaintiffs here who were tortured during detention in the Abu Ghraib hard site, and thus have similar claims. But the *Saleh* litigation has 256 victims, many of whom were tortured in locations other than the Abu Ghraib prison.

Johnson was photographed abusing a detainee. Am. Compl. ¶ 88; *see also* Am. Compl. ¶¶ 81-89 for additional details.

The Complaint further alleges that CACI admitted in the litigation pending in the District of Columbia that it could have stopped their employees from torturing the detainees, Am. Compl. ¶ 76; that CACI knew the military strictly prohibited torture, and could not have been misled into thinking torture was permissible merely because some military personnel were willing to break the law, Am. Compl. ¶¶ 95-100; and that CACI was motivated to and did ratify its employees' egregious misconduct because CACI wanted millions of dollars from the United States government. Am. Compl. ¶¶ 71-73, 90-93.

## ARGUMENT

The victims respectfully request that the Court deny CACI's motion to dismiss, and order CACI to begin to participate in discovery. Section I explains why this tort action does not raise a political question. Section II explains why CACI, having violated federal law and policy, is not entitled to absolute sovereign immunity. Section III explains that CACI has raised the affirmative "government contractor defense" prematurely, but in any event should be held ineligible for the defense as a matter of law. Section IV rebuts CACI's argument that Counts I-IX fail to state actionable claims. Section V explains why the Complaint properly pleads both conspiratorial and *respondeat superior* liability.

**I.      THE POLITICAL QUESTION DOCTRINE DOES NOT INSULATE CACI'S CORPORATE MISCONDUCT FROM JUDICIAL SCRUTINY.**

Claims such as Plaintiffs' seeking the vindication of individual rights rarely trigger the political question doctrine. Adjudication of this tort action is well within the subject matter jurisdiction of this Court. *See, e.g., Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione*, 937 F.2d 44, 49 (2d Cir. 1991) (tort issues "constitutionally committed" to the judiciary). Such claims

are not subject to dismissal as presenting non-justiciable political questions simply because they may have foreign policy implications. *See, e.g.*, *Flynn v. Shultz*, 748 F.2d 1186, 1191 (7th Cir. 1984), *cert. denied*, 474 U.S. 830 (1985) ("[a]n area concerning foreign affairs that has been uniformly found appropriate for judicial review is the protection of individual or constitutional rights from government action."); *Koohi v. United States*, 976 F.2d 1328, 1332 (9th Cir. 1992) ("damage actions are particularly judicially manageable" and "are particularly nonintrusive.")

### A.     The Political Question Doctrine Applies Only in Rare Cases.

Because this is not an action demanding redress or restitution from the United States, concerns regarding the separation of powers are not implicated. *Baker v. Carr,* 369 U.S. 186, 210 (1962)("The nonjusticiability of a political question is primarily a function of the separation of powers."). To date, only four narrow areas have been identified as warranting dismissal under the political question doctrine because of their foreign affairs implications: (1) determination of when a war begins or ends; (2) recognition of foreign governments; (3) issues relating to ratification and interpretation of treaties; and (4) challenges to a president's war powers. ERWIN CHEMERINSKY, FEDERAL JURISDICTION 162–63, § 2.6.4. (5th ed. 2003). Even in these contexts, the Supreme Court has ruled that the political question doctrine must be applied sparingly. The Court reversed a presidential directive ordering the seizure of steel mills to protect the production of armaments for the Korean War, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) and  reviewed on the merits a presidential order resolving the Iranian hostage crisis, *Dames & Moore v. Regan*, 453 U.S. 654 (1981). *See also Hamdi v. Rumsfeld,* 542 U.S. 507 (2004). This Court rejected the application of the political question doctrine to the question of whether a U.S. citizen may be held as an "unlawful enemy combatant." *United States v. Lindh*, 212 F. Supp. 2d 541 (E.D. Va. 2002). Indeed, the Court warned "[b]ecause the consequence of

accepting a political question argument is so significant--judicial review is completely foreclosed--courts must subject such arguments to searching scrutiny." *Id*. at 555–56. It found that while "some of the triggering circumstances" of *Baker* were present, others were "plainly not." *Id*. at 556.

If courts can adjudicate claims that the President, acting pursuant to a congressionally authorized military conflict, violated enemy combatants' constitutional rights, as the Supreme Court recently recognized in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008), surely this Court may adjudicate Plaintiffs' claims that CACI, a private corporation, violated United States policies and tortured them. Both political branches have uniformly condemned torture by anyone, anywhere, under any circumstances. Thus, adjudicating Plaintiffs' claims simply *reinforces*, not challenges, federal policy, and creates no conflict with the political branches.

### B. The Political Question Doctrine Does Not Apply Here Because the Victims Are Not Challenging Any Action by the United States.

CACI makes a convoluted argument that would require this Court to first convert Plaintiffs' claims against CACI, a for-profit publicly-traded corporation, into a claim against the United States, and then replace Plaintiffs' claims that CACI acted *outside* the scope of United States law and policy by  torturing Plaintiffs into a claim challenging United States "policies and rules" regarding detention. Mem. at 7.   As the Complaint makes clear, Plaintiffs are not challenging United States' battlefield policies and tactics; Plaintiffs are challenging CACI's blatant violations of those policies. Am. Compl. ¶¶ 94-100.   Had CACI followed U.S. policies, CACI employees would not have tortured Plaintiffs. Am. Compl. ¶¶  95-100. CACI simply cannot rely on decisional law that found actions to review official and lawful actions of the United States non-justiciable because they implicated the separation of powers. *See, e.g.,* Mem. at 8- 10, citing *Tiffany v. United States*, 931 F.2d 271 (4th Cir. 1991); *Smith v Reagan*, , 844 F.2d

195 (4th Cir. 1988). The mere fact that the action involves criminal misconduct that occurred

during the United States military activities in Iraq clearly does not bar adjudication in this Court.

As the Supreme Court warned in *Baker v. Carr,* "it is error to suppose that every case or

controversy which touches foreign relations lies beyond judicial cognizance," 369 U.S. 186, 211

(1962). CACI advances no cogent reasons to disregard that warning now.[2]

### C. The Political Question Doctrine Does Not Bar Suits Relating to Wrongful Wartime Conduct.

CACI also misleads the Court by claiming that federal courts play no role in

compensating individuals for injuries "suffered as a result of the manner in which the United

States wages war." Mem. at 10. In fact, United States courts have a long history of deciding

damage claims for wrongful conduct committed by soldiers, commanders or private persons

during war. In *Little v. Barreme*, 6 U.S. 170 (1804), Chief Justice Marshall spoke for a

unanimous court in holding a captain in the U.S. Navy liable for damages to a ship owner for the

illegal seizure of his vessel during wartime. The Court held that the President's orders

authorizing seizure of the ship did not immunize the captain from a lawsuit for civil damages

where the President's instructions *went beyond his statutory authority*, and rejected the argument

that the owner's claim should be resolved by "negotiation" with the government and not through

a damage action. *Id.* at 179.

The Supreme Court has repeatedly permitted damage actions to be brought against

individual soldiers and officers for wrongful or otherwise tortious conduct taken in the course of

---

[2] When faced with the same question, the District Court for the District of Columbia rightly found that personal injury claims by torture victims against CACI and another for-profit corporation simply do not involve non-justiciable political questions. *Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10, 15-16 (D.D.C 2005) ("*Ibrahim I*"). CACI tries to suggest that the decisional law in this Circuit compels a different result. Mem. at 9, n. 6. This is not the case, as Supreme Court jurisprudence clearly controls the analysis.

warfare.  *See, e.g.*, *Mitchell v. Harmony*, 54 U.S. 115 (1851)(U.S. soldier sued for trespass for wrongfully seizing a citizen's goods while in Mexico during the Mexican War); *Ford v. Surget*, 97 U.S. 594 (1878) (soldier was not exempt from civil liability for trespass and destruction of cattle if his act not done in accordance with the usages of civilized warfare); *The Paquete Habana*, 175 U.S. 677 (1900) (Court imposed damages for seizure of fishing vessels during a military operation).  Even the "government contractor defense" decision heavily relied on by CACI, *Koohi v. United States*, contains an unequivocal rejection of CACI's argument:

> Nor is the lawsuit rendered judicially unmanageable because the challenged conduct took place as part of an authorized military operation.  The Supreme Court has made clear that the federal courts are capable of reviewing military decisions, particularly when those decisions cause injury to civilians.

976 F.2d at 1331.

Here, of course, Plaintiffs are asking the Court to review decisions and actions taken by American corporations, not review any decisions made by the military.  *See also Linder v. Portocarrero*, 963 F.2d 332, 337 (11th Cir. 1992)(political question doctrine did not apply when there is no challenge to the legitimacy of United States foreign policy concerning contras and when court not required to say which side was "right" in Nicaraguan civil war); *Committee of United States Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 935 (D.C. Cir. 1988)(refusing to dismiss as non-justiciable political question a Fifth Amendment claim by American citizens against U.S. officials for funding the Nicaraguan contras);  *Japan Whaling Ass'n. v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986); *Kadić v. Karadžić*, 70 F.3d 232, 249-50 (2d Cir. 1995)(rejecting political question argument in class action for damages brought by citizens of Bosnia-Herzegovina who were victims of atrocities, including brutal acts of rape and torture, carried out by Bosnian-Serb military forces in the course of the Bosnian genocide), *Deutsch v. Turner Corp.*, 324 F.3d 692, 713 n. 11 (9th Cir. 2003)(rejecting political question

doctrine in wartime reparations case, holding that "no political question, however, is raised by the simple application of the requirements of a treaty to which the United States is a party").

### D. Plaintiffs' Action Is Easily Litigated and Does Not Pose Any Manageability Issues.

CACI, relying heavily on a series of World War II reparation cases, argues this litigation presents an "unmanageable" political question. Mem. at 10-12, 34-35. *See, e.g.*, *Zirkovich v. Vatican Bank*, 242 F. Supp. 2d 659, 666-67 (N.D.Cal. 2002); *Frumkin v. JA Jones, Inc.*, 129 F. Supp. 2d 370 (D.N.J. 2001), *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424 (D.N.J. 1999); *Anderman v. Federal Republic of Austria*, 256 F. Supp. 2d 1098 (C.D. Cal. 2003).

Those reparation cases are fundamentally different from the issues presented here. *First*, each of those courts relied on a lengthy and specific diplomatic history in which the United States government made a commitment to resolve reparations claims arising out of World War II through numerous treaties and agreements. *Anderman*, 256 F. Supp. 2d at 1113; *Alperin v. Vatican Bank*, 242 F. Supp. 2d 686, 691 (N.D. Cal. 2003)(citing *Iwanowa*, 67 F. Supp. 2d at 486) (firmly-established policy that claims arising out of World War II "be resolved through government-to-government negotiations"). No such explicit and long-established policy of the U.S. government exists here, and not a single treaty with Iraq has been negotiated for the payment of claims for torture by U.S. corporations against Iraqi citizens. *Second*, those courts were confronting a host of judicial management concerns not present here. *See Alperin*, 242 F. Supp. 2d at 693 (discussing difficulties in adjudicating "some two hundred thousand claims for multifarious damages inflicted twenty to thirty years ago in a European area by a government then in power").

This action, by contrast, is relatively straightforward. As set forth in the Plaintiffs' submission filed on October 15, 2008, discovery in this action can be completed by January 9,

2009. There are many eyewitnesses to the conduct, most of whom are now in the United States and able to testify. The identity of additional eyewitnesses may be ascertained through review of government records that the military has already collected and compiled as part of the court marital proceedings that culminated in the conviction of several of CACI's co-conspirators. Such a straightforward tort action is clearly judicially discoverable and manageable. Indeed, courts have even found judicially discoverable and manageable standards to adjudicate *direct* challenges to *United States* military actions. *See Koohi*, 976 F.2d at 1331; *Sterling v.Constantin*, 287 U.S. 378, 401 (1932). The Court is "capable of granting relief in a reasoned fashion." *Alperin v. Vatican Bank*, 410 F.3d 532, 553 (9th Cir. 2005).

CACI grasps at straws by arguing that the need for confidential documents and wartime chaos in Iraq compel dismissal. Mem. at 13-14. CACI, having been involved in collecting and producing documents for the *Saleh* litigation, well knows that this litigation will not require soldiers to "assemble[] evidence" from the "battlefield." Mem. at 12. The military already collected much of what is needed, and used that material in order to court martial and convict CACI's co-conspirators. The military has not sought to classify the relevant evidence. *See American Civil Liberties Union v. Dep't. of Defense*, 2008 U.S. App. LEXIS 20074 at *32 n.7 (2d Cir. September 22, 2008). Documents reflecting the torture are already available in redacted form to the general public, and the military is able to provide the litigants with unredacted documents without too much additional effort. Further, much of the egregious activity by CACI and other conspirators simply was not contemporaneously memorialized (as is to be expected),

but the misconduct was observed first-hand by Americans and Iraqis fully competent to testify to what they saw.[3]

## II. CACI IS NOT IMMUNE FROM SUIT.

CACI claims that: "If Plaintiffs' allegation is that the CACI PT interrogators were permitted to exercise discretion in performing interrogation services, *Westfall* absolute immunity requires dismissal of Plaintiffs' complaint….if Plaintiffs' allegation is that CACI PT interrogators exercised no discretion, then any analysis of combatant activities preemption would require dismissal of Plaintiffs' Complaint. There is no middle ground." Mem. at 17. CACI is simply wrong.

The Complaint does not allege the United States military required CACI to torture prisoners at Abu Ghraib, nor does it allege that the United States military gave CACI the discretion to torture prisoners at Abu Ghraib. What the Complaint alleges is that United States forbade CACI from torturing prisoners, as reflected in statute, treaty, contract, and regulation. *See* Am. Compl. ¶¶ 94-100, 107-108.

### A. The Common Law *Westfall* Doctrine Does Not Protect Those Who Cross the Line from Official Duty Into Illicit Brutality.

It does not benefit the United States to grant absolute immunity to defense contractors such as CACI who "*crossed the line from official duty into illicit brutality*." *Griggs v. WMATA,* 232 F.3d 917, 921 (D.C. Cir. 2000)(affirming district court's holding that a transit police officer who ordered a police dog to attack a suspect was not entitled to absolute immunity) (emphasis

---

[3]CACI knows this argument is wholly specious. But in any event, it is, at best, premature. *See Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1513 (D.D.C. 1984) ("It is premature to conclude that essential evidence is undiscoverable merely on the basis of the complaint and related declarations"); *Ibrahim I*, 391 F. Supp. 2d at 16 (dismissing such "[m]anageability problems" as premature).

added). The common law test for immunity established in *Westfall v. Erwin*, 484 U.S. 292

(1988), requires that the Courts confer absolute immunity from suit only for conduct that is both

within the scope of their official duties and…*discretionary in nature*. 484 U.S. at 296-98.

If there are laws and regulations that prohibit the misconduct at issue in the civil action,

then – by definition – the misconduct cannot qualify as discretionary. Or as stated by the

Supreme Court, a federal employee's actions are not discretionary "if a 'federal statute,

regulation, or policy specifically prescribes a course of action for an employee to follow,'

because 'the employee has no rightful option but to adhere to the directive.'" *United States v.*

*Gaubert*, 499 U.S. 315, 322 (1991)(quoting *Berkovitz v. United States*, 486 U.S. 531, 536

(1988)). *See also Medina v. United States*, 259 F.3d 220, 225 (4th Cir. 2001)("[f]ederal officials

do not possess discretion to violate constitutional rights or federal statutes."); *Perkins v. United*

*States*, 55 F.3d 910, 914 (4th Cir. 1995)("Obviously, failure to perform a *mandatory* function is

not a *discretionary* function"); *Baum v. United States*, 986 F.2d 716, 720 (4th Cir. 1993)(if

federal "statute, regulation or policy applies, then the conduct involves no legitimate element of

judgment or choice….if the plaintiff can show that the actor in fact failed to so adhere to a

mandatory standard then the claim does not fall within the discretionary function exception");

*Saucedo-Gonzales v. United States*, 2007 WL 2319854 (W.D.Va. 2007)(if correctional officers

"utilized a constitutionally excessive amount of force," their actions are not protected

discretionary functions").

CACI's torture of prisoners indisputably violated United States and international law,

military policies and procedures, and the terms of CACI's contract. *See* Am. Compl. at ¶¶ 67, 94,

108. *See also* U.S. Army Field Manual 34-52, Intelligence Interrogation (Sept. 1992), at p. 1-8;

U.S. Army Regulation 190-8 § 1-5 (a)-(c); Geneva Convention Relative to the Treatment of

Civilian Persons In Time of War, Aug. 12, 1949 ("Fourth Geneva Convention"), 6 U.S.T. 3516, 75 U.N.T.S. 287, art. 3, 27, 31, 32, 37, 100, 147; 10 U.S.C. §§881, 892, 893, 928 (2008) (Uniform Code of Military Justice articles defining the criminal offenses of conspiracy, cruelty and maltreatment, dereliction of duty, and assault).

CACI cannot receive absolute immunity for its gross misconduct. As the Court of Appeals for the Fourth Circuit recognized in *Mangold v. Analytics Svcs., Inc*., absolute immunity "tends to undermine the basic tenet of our legal system that individuals be held accountable for their wrongful conduct….For these reasons, the common law immunity recognized in *Barr* and *Westfall* is afforded only to the extent that the public benefits obtained by granting immunity outweigh its costs." 77 F.3d 1442, 1446-47 (4th Cir. 1996) (internal citation omitted). Immunizing CACI from claims based on CACI's criminal misconduct in torturing defenseless detainees fails this test. The *Mangold* Court decided it needed to protect contractors cooperating with government investigations in order to further the goal of investigating into "suspected fraud, waste, and mismanagement in the administration of government contracts." *Id.* at 1447. Here, what public interest would immunizing CACI serve? There is no public interest in torturing detainees. There is no public interest in letting defense contractors such as CACI simply ignore and violate the express terms of their contracts with the United States military. There is no public interest in encouraging criminal actors within the government to evade accountability by conspiring with contractors (rather than government employees).

As the Court of Appeals for the Fourth Circuit recently found, the prison abuse at Abu Ghraib "stunned the U.S. military, public officials in general, and the public at large." *CACI Premier Technology, Inc. v. Rhodes*, 536 F.3d 280, 285 (4th Cir. 2008). Two official military investigations have described the torture of prisoners at the hard site as "sadistic, blatant, and

wanton criminal abuses," *id.* (quoting investigative report by Major General Antonio Taguba); and as "shameful events" perpetrated by "a small group of morally corrupt soldiers and civilians" that "violated U.S. criminal law" or were "inhumane or coercive without lawful justification," *id.* at 286(quoting investigative report by Major General George Fay). There is no public benefit to immunizing CACI from tort liability for such acts.

### B. Choice-of-Law Doctrines and the Bremer Order Do Not Bar this Action.

CACI makes a self-serving, contradictory argument that this Court should dismiss Plaintiffs' claims on choice-of-law grounds. CACI argues that the Court is both required to apply, and forbidden from, applying Iraqi tort law to the plaintiffs' claims—and therefore, no law governs CACI's conduct in Iraq. Both claims are false. *First,* this Court is not required to apply Iraqi law. If application of Iraqi law is viewed as detrimental to the United States, this Court has the right (and the obligation) under both Virginia and Ohio choice-of-law principles to refrain from applying Iraqi law. *Second*, if the Court decided applying Iraqi law was consistent with the United States' interests, the Court would not be barred by the Bremer Order from doing so. That Order only protected CACI from being haled into court in Iraq; it did not protect CACI from being held liable under Iraqi substantive law.

### 1. Federal courts are not compelled to apply substantive foreign law that harms the United States' interests.

Virginia's choice of law rules generally provide for the application of *lex loci delicti*, the law of the place of the wrong, in tort cases. Virginia courts do *not* apply the *lex loci*, however, if it is contrary to the forum's public policy. *See Dreher v. Budget Rent-A-Car System, Inc.*, 634 S.E.2d 324, 300 (Va. 2006) (recognizing public policy exception to *lex loci* doctrine); *Terry v. June*, 420 F.Supp.2d 493, 506 (W.D.Va. 2006) ("It is well established that although Virginia courts will frequently apply foreign substantive law as a matter of comity, they will not do so if

this would contravene fundamental policy interests of the forum"); *Williard v. Aetna Cas. & Sur. Co.*, 193 S.E.2d 776, 778 (Va. 1973) ("Comity does not require the application of another state's substantive law if it is contrary to the public policy of the forum state"). If CACI is correct that the application of Iraqi law to this case would harm the United States' interests, or if Iraqi law does not apply at all to the conduct of CACI contractors, this Court is free to decline to apply that law under the public policy exception.

Under Ohio choice of law rules, courts do not apply the *lex loci delicti* if "another jurisdiction has a more significant relationship to the lawsuit." *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 289 (Ohio 1984). To assess which jurisdiction has the most significant relationship to the lawsuit, Ohio courts consider: (1) the place of injury; (2) the place of the conduct causing the injury; (3) the domicile, residence, and nationality of the parties; (4) the place where the parties' relationship is located; and (5) any factors under Section 6 of the *Restatement (Second), Conflict of Laws* which the court may deem relevant to the litigation. *Id.*[4] The District Court clearly has the discretion under Ohio choice-of-law principles to apply either Iraq or United States law. Iraq is the place of injury. CACI, however, is an American corporation working for the United States. To the extent CACI is accurate that Iraqi law disserves the United States' interests, then the Restatement Section 6 factors weigh in favor of domestic law. If, as CACI contends, it was in no way bound by Iraqi law, Iraq does not have any significant relationship with this litigation. Clearly, foreign states "have no interest in applying their law to damages issues if it would result in less protection to their nationals in a suit against a United States

---

[4] The Section 6 factors are: (1) the needs of the interstate and international systems,(2) the relevant policies of the forum, (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (4) the protection of justified expectations, (5) the basic policies underlying the particular field of law, (6) certainty, predictability and uniformity of result, and (7) ease in the determination and application of law to be applied." *Restatement (Second), Conflict of Laws* § 6 (1971).

corporation." *Doe v. Exxon Mobil Corp.*, No. Civ.A.01-1357, 2006 WL 516744 at *2 (D.D.C. Mar. 2, 2006)(quoting *Friends for All Children, Inc. v. Lockheed Aircraft Corp.,* 587 F. Supp. 180, 191 (D.D.C. 1984)).

> **2. The Bremer Order does not prohibit this Court from applying Iraqi law.**

CACI is wrong in claiming that the Bremer Order (CPA Order 17, June 2003) forbids this Court from applying Iraqi law. The Bremer Order does exempt independent contractors such as CACI from legal proceedings in Iraqi courts, and from Iraqi contract law, but not from Iraqi substantive tort law. CACI interrogators are *not* "Coalition Personnel," as defined in Section 1(1) of Order 17, as they are not "forces employed by a Coalition State" or "assigned to, or under the direction or control of the Administrator of the CPA." O'Connor Decl., Ex. D, Sec. 1(1).[5] Rather, they are "Coalition Contractors," who are "supplying goods and/or services to or on behalf of Coalition Forces or the CPA under contractual arrangements." *Id.*, Sec. 1(5). Accordingly, the Order's statement that "occupying powers, including their….personnel" are not subject to Iraqi law does not apply to CACI employees. *Id.* at p. 1.[6] The current version of CPA Order 17 confirms that contractors are required to "respect relevant Iraqi laws," and that the Order is "without prejudice to the exercise of jurisdiction by the Sending State and the State of nationality of a Contractor in accordance with applicable laws." CPA Order 17 (Revised), Sec. 4(4), 4(7) (June 27, 2004).

---

[5] Section 1(1)'s inclusion of "civilians" in the definition of "Coalition Personnel" refers to civilian employees of the U.S. Government, not to independent contractors.
[6] The cases that CACI cites are similarly inapposite, as they refer to occupying military forces', diplomats', and government employees' immunity from local law, not independent contractors'. *See Dostal v. Haig*, 652 F.2d 173, 176 (D.C. Cir. 1981); *Coleman v. Tennessee*, 97 U.S 509, 519 (1878) *New Orleans v. The Steamship Co.*, 87 U.S. 387, 394 (1874).

### C. Plaintiffs Are Entitled To Discovery Before Any Dismissal Based on Political Question or Absolute Immunity Grounds.

For all the reasons set forth above, the victims believe that this Court should deny CACI's motion to dismiss on either political question or immunity grounds. But, if the Court were to entertain seriously CACI's specious political question and absolute immunity arguments, the Court should not issue a premature ruling at this juncture. That is, the District Court cannot look outside the pleadings on a Rule 12(b)(6) motion unless it converts the motion to a Rule 56 motion and provides all parties with time for discovery. *See, e.g., Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 418-19 (D. Md 2006), *aff'd* 266 Fed. Appx. 274 (4th Cir. 2008). To the extent that CACI's arguments about facts outside the four corners of the Complaint are credited by the Court, and the Plaintiffs' allegations are not simply deferred to as if they were proven, Plaintiffs are entitled to engage in discovery before having to rebut what it essentially a motion for summary judgment. After Plaintiffs complete discovery and file supplemental evidentiary responses to CACI's motions, a Rule 12(i) would be held to resolve these jurisdictional issues before proceeding to trial.

Note, CACI errs in seeking a ruling now by characterizing the political question doctrine as a Rule 12(b)(1) jurisdictional issue. In fact, the political question doctrine is a prudential doctrine that the Court applies only *after* the Court takes subject matter jurisdiction over the dispute: "the matter is cognizable and facts are alleged which establish infringement of appellants' rights…, [but] the court will not proceed because the matter is considered unsuited to judicial inquiry or adjustment." *Baker,* 369 U.S. at 196; *see also Kadić* 70 F.3d at 249 (political question doctrine is a "nonjurisdictional, prudential doctrine[]").The Court in *Baker* clearly held that it had subject matter jurisdiction under Article III, §2 of the Constitution and under 28 U.S.C. §1343, a jurisdictional statute, *id.,* before it proceeded to address the political question

justiciability doctrine. *Baker,* 369 U.S. at 203-04. "The political question doctrine is …

derive[d] in large part from prudential concerns about the respect we owe the political

departments." *Nixon v. United States*, 506 U.S. 224, 253 (1993)(Souter, J., concurring)(internal

citations omitted). As a prudential doctrine, the political question doctrine is not properly

addressed as a jurisdictional issue under Rule 12(b)(1), but under Rule 12(b)(6).[7]

Although the Court could limit discovery to the issues raised by the CACI defenses, the

better course would be to permit discovery to proceed on all fronts. The parties' experience in

the District Court in the District of Columbia shows that it is difficult to draw the fine lines

between merits and defenses discovery. There, the parties ended up having to litigate before the

Court on whether certain deposition questions went to only merits, only defenses, or both. Given

the speed of discovery in this District, it would make more sense simply to let all discovery

proceed. CACI cannot be heard to complain as to prejudice because CACI, a publicly-traded

company regulated by the Securities Exchange Commission, has voluntarily published a book

stating that CACI has already collected the evidence to ascertain CACI's role at Abu Ghraib.

*See* J. PHILLIP LONDON, OUR GOOD NAME: A COMPANY'S FIGHT TO DEFEND ITS HONOR AND GET

THE TRUTH TOLD ABOUT ABU GHRAIB (Regnery Publishing 2008) (2008). Thus, even merits

discovery requires CACI to do no more than it claims to have already done.

---

[7] The authority cited by CACI is not to the contrary. *Republican Party of N.C. v. Martin* is silent
on whether the doctrine is jurisdiction or prudential, stating simply that in addition to Rule
12(b)(6), both Rules 12(b)(1) and 12 (h) provide "additional authority" for the District Court's
decision. 980 F.2d 943, 949 n. 13 (4th Cir. 1992). Indeed, *Martin* cited Supreme Court
precedent that implicates both the jurisdictional and prudential aspects of justiciability. *Id.* at
950, quoting *Renne v. Geary,* 111 S. Ct. 2331, 2336 (1991) ("Justiciability concerns "the power
of the federal courts to entertain disputes, and . . . the wisdom of their doing so.""). *Thigpen v.
United States*, 800 F.2d 393, 396 (4th Cir. 1986) was properly considered under Rule 12(b)(1) –
and thus the court could make its own factual findings –because it examined the applicability and
scope of the Federal Tort Claims Act, i.e., whether jurisdiction existed pursuant to a statute, not
the political question doctrine.

## III. CACI CANNOT RELY ON THE GOVERNMENT CONTRACTOR DEFENSE AS GROUNDS TO DISMISS PLAINTIFFS' CLAIMS.

Discovery is also clearly needed before this Court can consider CACI's argument that the judicially-created "government contractor defense" constitutes a complete defense to the Plaintiffs' claims. This defense was created by the Supreme Court in *Boyle v United Technologies Corp.*, 487 U.S. 500 (1988). The Supreme Court reasoned that a corporate contractor should not be liable under state law for acting at the United States' behest if the United States itself would not be subject to suit under the discretionary function exception to the Federal Tort Claims Act ("FTCA"). The Court set narrow parameters, holding that the defense only applies if the contractor cannot possibly comply with its contractual duties and the state-law imposed duties. *Boyle*, 487 U.S. at 508. The defense does not apply even in "an intermediate situation, in which the duty sought to be imposed on the contractor is not identical to one assumed under the contract, but is also not contrary to any assumed." *Id.* at 509. As long as "[t]he contractor could comply with both its contractual obligations and the state prescribed duty of care," state law will not generally be pre-empted. *Id. See also In re Joint E. & S. Dist. New York Asbestos Litig.*, 897 F.2d 626, 632 (2d Cir. 1990)("Stripped to its essentials, the military contractor's defense under *Boyle* is to claim, 'The Government made me do it.'"); *Barron v. Martin-Marietta Corp.*, 868 F. Supp. 1203, 1207 (N.D. Cal. 1994)(holding that the "requisite conflict exists only where a contractor cannot at the same time comply with duties under state law and duties under a federal contract.").

Although CACI fails to alert this Court, it is beyond any dispute that this defense is an affirmative defense, with the burden of proof on the defendants. *Ibrahim I,* 391 F. Supp. 2d at 17-18; *Boyle,* 487 U.S. at 514 ("whether the facts establish the conditions for the defense is a question for the jury"); *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1354 (11th Cir.

2007) (stating that the *Boyle* court created "an affirmative defense"); *Densberger v. United Technologies Corp.,* 297 F.3d 66, 69 (2d Cir. 2002) (upholding jury's finding that defendant "had not made out the elements of its various affirmative defenses, one of which was the government contractor defense"); *Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 802 (5th Cir. 1993) ("Because the government contractor defense is an affirmative one, [defendant] bore the burden of proof to establish it.").

CACI cannot carry this burden merely by legal argument on a motion to dismiss; CACI must introduce compelling and admissible evidence proving entitlement to the defense. Further, Plaintiffs are clearly entitled to discovery to challenge the veracity of CACI's submission. Indeed, discovery in the *Saleh* action resulted in the Plaintiffs being able to refute and rebut (with deposition testimony from CACI's own corporate witnesses) all of the extravagant claims CACI had made in its legal pleadings. Discovery there established that CACI, not the United States, controlled its corporate employees, and had the ability to stop them from torturing the detainees. Not a single military or government witness testified that the United States had ordered CACI employees to torture the victims. As a result, the district court denied CACI's motion for summary judgment on the defense, and ordered the matter to proceed to trial. *Ibrahim v. Titan Corp.*, 556 F. Supp. 2d 1, 11 (D.D.C. 2007)("*Ibrahim II*"). (CACI persuaded the district court to support interlocutory appeal, and the matter is now pending before the District of Columbia Court of Appeals.)

### A. Insulating CACI From Claims Arising From Its Illicit Brutality Harms the Federal Interest.

The Court, however, is certainly free to rule as a matter of law that CACI cannot possibly be entitled to invoke this defense to insulate CACI torture from review. The judicially-created affirmative defense applies only when a "uniquely federal interest" is at stake. *Boyle*, 487 U.S.

at 504. There is no such interest here. Contrary to CACI's self-aggrandizing effort to declare itself essential to the war effort,[8] this case does not require the Court to review "the unique federal role in the prosecution of war." Mem. at 27. *See also* Section I, *supra*. Dismissing the litigation against CACI is contrary to federal interests. The United States has enacted domestic laws that prohibit torture[9] and ratified international instruments that prohibit torture under all circumstances.[10] In such circumstances, the *Boyle* doctrine cannot apply.[11]

Courts applying the *Boyle* doctrine have been careful to ensure that the doctrine does not insulate contractors acting against the United States' interests.[12] For example, in *Jama v. INS*, 334 F.Supp.2d 662 (D.N.J. 2004), the district court found the government contractor defense inapplicable to a contractor who ran a detention facility for asylum applicants because the alleged tortious conduct violated certain contract terms and the duty to keep the detainees safe. The district court held "[i]t would defy logic to suggest that the INS could have 'approved'

---

[8] CACI has not – and cannot – produce any military or government witnesses willing to testify that subjecting CACI to tort litigation under federal common law interrupts or interferes with the prosecution of the war.

[9] *See, e.g.,* War Crimes Act, 18 U.S.C. § 2441 (1996); Military Commission Act, 10 U.S.C. § 948a(1)(A) (2006); Anti-Torture Act, 18 U.S.C. § 2340A.

[10] Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 46, at 197, U.N. GAOR, 39th Sess., Supp. No. 51, U.N. Doc. A/39/51 (Dec. 10, 1984) ("CAT"); International Covenant on Civil and Political Rights, S. Exec. Doc. No. 95-E, art. 7, 999 U.N.T.S. 171 (Dec. 16, 1966) ("ICCPR").

[11] Permitting the litigation to go forward serves the United States' interests because the threat of tort liability creates incentives for defense contractors to comply with their contractual obligations to screen, train and manage their employees.

[12] Further, the government contractor defense is a creature of judge-made federal law, *Boyle*, 487 U.S. at 504, which is informed by principles of international law, including international human rights law. *See The Paquete Habana*, 175 U.S. 677, 700 (1900)("International law is part of our law, and must be ascertained and administered by the courts of appropriate jurisdiction as often as questions of right depending upon it are duly presented for their determination."). As such, it should be applied so as to conform with the United States' international obligations and commitments. *Murray v. The Schooner Charming Betsy*, 2 Cranch 64, 118 (1804) ("an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains.").

practices that breached this larger duty." *Id*. at 689. See also *Malesko v. Corr. Servs. Corp.*, 229 F.3d 374 (2d. Cir. 2000), *rev'd on other ground*, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 n.6, (2001)(government contractor defense "may [be] assert[ed]" where government "directed a contractor to do the very thing that is the subject of the claim"); s*ee also In re Agent Orange Product Liability Litigation*, 373 F. Supp. 2d 7, 91-98 (E.D.N.Y. 2005)(noting that for-profit contractors are not coerced to do anything; they are free to walk away rather than violate human rights).

> ### B.      Holding CACI Liable for Illicit Brutality Does Not "Fetter" Any Military Commander.

While war is "an inherently ugly business," *Ibrahim I*, 391 F. Supp 2d at 18, it is not an unregulated one.  *See*, *e.g.,* Fourth Geneva Convention, art. 3, 27, 31, 32, 37, 100, 147 (treaty provisions prohibiting torture of prisoners); 10 U.S.C. §§881, 892, 893, 928 (2008) (Uniform Code of Military Justice articles defining offenses of conspiracy, cruelty and maltreatment, dereliction of duty, and assault).  CACI cites *Johnson v Eisentrager* and argues letting the litigation to proceed would cause the "fettering of a field commander." 339 U.S. 763, 779 (1950). Nowhere does *Johnson* suggest that a field commander would be permitted to order or sanction the illicit brutality at issue here – acts of torture and horrific abuse against civilian detainees.  Because commanders cannot authorize torture, permitting adjudication of the victims' claims does not limit any military officials any further than he or she is already limited by the letter of the law.  *Ibrahim II,* 556 F. Supp. 2d at 5.[13]   There is no federal interest in permitting military officials to engage in unlawful conduct, which appears to be CACI's argument.

---

[13] The "superior orders" defense is unavailable where the "superior orders" are manifestly unlawful. *United States v. Ohlendorf* (the Einsatzgruppen Case), IV Trials of War Criminals 1, 470-73, 483-86; *Attorney General v. Eichmann*, (Sup. Ct. Israel 1962) *reprinted in*  36 I.L.R.

The *Boyle* defense does not apply merely because the contractor provided services in support of the war effort. *See, e.g., McMahon*, 502 F.3d at 1366 (declining to review or reverse District Court's holding (460 F.Supp.2d 1315, 1330 (M.D.Fla. 2006)) that declines to extend *Boyle* "defense for private contractors based solely on the fact that [d]efendants were operating in a combat zone."); *Lessin v. Kellogg Brown & Root Servs., Inc.* 2006 WL 3940556 at *5 (S.D.Tex. June 12, 2006)(declining to preempt claims against military logistics contractor in Iraq); *Whitaker v. Kellogg, Brown and Root Servs., Inc.*, 444 F.Supp.2d 1277 (M.D. Ga. 2006)(no protection from liability when the alleged negligent act was performed by contractor, not government); *Fisher v. Halliburton*, 390 F.Supp.2d 610, 615-16 (S.D. Tex. 2005)(cannot apply defense to service contractors because designed to protect against state product liability claims only).

*Koohi v. United States*, 976 F.2d 1328 (9th Cir. 1992), relied upon by CACI as a basis for extension of the government contractor defense to unlawful acts, *see* Mem. at 28-32, is easily distinguishable. *Koohi*, a products-liability case like *Boyle*, dealt with a combat activity by the *United States military* during the "tanker war." 976 F.2d at 1329-1330. The Court of Appeals for the Ninth Circuit held that a manufacturer of a weapons detection system, manufactured to *military's* specifications, could not be held liable when the *military* mistakenly and negligently used that system to shoot down a civilian plane. *Koohi*, 976 F.2d at 1337.[14]

CACI's self-serving effort to further extend *Koohi* is opposed by the Department of Defense. The Department, in official comments to recently-issued regulations, reasoned that the

---

277, 314 (1968); *The Zyklon B Case (Trial of Bruno Tesh and Two Others)*, *reported in* 1 U.N. War Crimes Commission, Law Reports of the Trials of War Criminals 93 (1947).

[14] The *Koohi* court's extension of the contractor defense through the combatant activities exception of the FTCA has been criticized by other courts. *See, e.g., Carmichael v. Kellogg, Brown and Root Servs., Inc.*, 450 F. Supp. 2d 1373, 1379 (N.D. Ga. 2006) (referring to the discussion of *Boyle* preemption in *Koohi* as "conclusory, not analytical").

*Boyle* doctrine should not be applied to insulate service contractors (like CACI), because the military does not actually control the services being provided: "[t]he public policy rationale behind *Boyle* does not apply when a performance-based statement of work is used in a services contract, because the Government does not, in fact, exercise specific control over the actions and decisions of the contractor or its employees or subcontractors." Defense Federal Acquisition Regulation Supplement; Contractor Personnel Authorized To Accompany U.S. Armed Forces, 73 Fed. Reg. 16764, 16768 (Mar. 31, 2008).[15] The Department's view clearly permits this Court to rule as a matter of law that CACI is not entitled to invoke the defense. *Compare Bentzlin v. Hughes Aircraft Co.*, 833 F.Supp. 1486, 1491 n.8 (C.D.Cal. 1993)(barring plaintiffs' claims in part because "the government has intervened and taken the position that a case cannot be brought without undermining federal interests.") In light of the United States' opposition, there is simply no legally-cognizable reason to insulate a for-profit corporation who tortured detainees from tort liability

## IV.    PLAINTIFFS' COMPLAINT STATES VALID CLAIMS.

CACI next seeks to dismiss certain of Plaintiffs' claims (Counts I-IX) on the grounds that they are not cognizable under the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS"). Plaintiffs' claims are cognizable claims under the Supreme Court's *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) decision and federal common law.

---

[15] The military explained that "[c]ontractors will still be able to defend themselves when injuries to third parties are caused by the actions or decisions of the Government." 73 Fed. Reg. 16764, 16768. The military cautioned: "[h]owever, to the extent that contractors are currently seeking to avoid accountability to third parties for their own actions by raising defenses based on the sovereignty of the United States, this rule should not send a signal that would invite courts to shift the risk of loss to innocent third parties." *Id.*

**A.    The Violations Plaintiffs Allege fall Squarely within the *Sosa* Test and Do Not Require this Court to Recognize any New Claims**

In *Sosa*, the Supreme Court confirmed that federal common law should be read to include prohibitions on certain types of misconduct penalized by international law. 542 U.S. at 724. Recognizing that international law is part of federal common law, *see Filártiga v. Peña-Irala*, 630 F.2d 876, 887 (2d Cir. 1980), the Court held that federal district courts may hear claims that rest on international norms "with a specificity comparable to the features of the 18th-century paradigms." 542 U.S at 725. The *Sosa* Supreme Court, by citing with approval the analysis and conclusions put forth in *Filártiga*, 630 F.2d at 887, *In re Estate of Ferdinand Marcos, Human Rights Litigation* 25 F.3d 1467, 1475 (9th Cir. 1994), and *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 781 (D.C. Cir. 1984)(Edwards, J., concurring), confirmed that war crimes, torture and cruel, inhuman and degrading treatment are precisely the "specific, universal, and obligatory" violations that are actionable under the ATS. 542 U.S. at 732.[16]

CACI cites decisional law, none of which persuades that the *Sosa* mandate excludes Plaintiffs' claims. *Ware v. Hylton*, 3.U.S. (3 Dall.) 199 (1796) decided in 1796, involved British subjects whose property was sequestered during the Revolutionary War pursuant to a statute passed by the Virginia legislature. *Id*. at 199-200. One can hardly claim that the torture suffered by Plaintiffs in this case was authorized by any Congressional directive. *Perrin v. United States*, 4 Ct. Cl. 543 (1868) involved a claim by a French subject for compensation for property lost after a United States Navy commander, acting on orders from the President, and with subsequent

---

[16] In *Sosa*, the Court specifically chose not to adopt "a policy of case-specific deference to the political branches," *Sosa*, 542 U.S. at 733, n. 21, which is precisely what CACI suggests here. Mem. at 33. Instead, the Court unequivocally recognized federal courts can hear claims related to "a narrow class of international norms," which includes the norms violated by CACI. *Sosa*, 542 U.S. at 729. That the claims arose in the context of a war does not set them outside that class; rather that fact places them squarely within the norms already recognized by the Supreme Court. The claims cited with approval in *Sosa* arose from armed conflict. *See, e.g., Marcos*, 25 F.3d at 1469 (state of martial law); *Kadić*, 70 F.3d at 241-44 (civil war in Bosnia).

Congressional approval, destroyed the town of San Juan with firepower from a war ship. *Id*. The Court held that petitioner's claim rested on his assertion that the destruction of San Juan was a "violation of international law." *Id.* at 544. The Court found that this presented "international political questions, which no court of this country in a case of this kind is authorized or empowered to decide." *Id*. at 545. Plaintiffs are not seeking a declaration that the United States violated international law by occupying Iraq; they are seeking damages from CACI for brutally torturing them – without permission or direction from the military to do so -- while they were detained in military prisons. [17]

## B. Private Parties Like CACI Are Not Insulated From ATS Liability.

CACI, having argued that it should be granted the absolute immunity flowing to the sovereign, does an about-face and argues that Plaintiffs cannot state claims because CACI is a private party, and the ATS claims reach only state conduct. Mem. at 35. Besides being internally inconsistent, this is simply wrong. It is well-recognized that certain violations, including war crimes, are so reprehensible that anyone who commits such a violation must be held individually responsible. *Kadić,* 70 F. 3d at 239 ("certain forms of conduct violate the law of nations whether undertaken by those acting under the auspices of a state or only as private individuals.") *See also Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 100 (D.D.C. 2003) (finding the ATS "may be applied to certain actions of private, non-state actors").[18] The

---

[17] The other decisions cited by CACI -- *Frumkin v. JA Jones, Inc.*, 129 F. Supp. 2d 370, 375 (D.N.J 2001), *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 461 (D.N.J. 1999); *Burger-Fischer v. DeGussa AG*, 65 F. Supp. 2d 248, 282 (D.N.J. 1999) – were not dismissed for failure to state cognizable claims. Rather, those are all war reparations cases in which the federal courts applied the prudential doctrine of political question because there was already "post-war claims settlement regime [that] had been exclusively constructed by the political branches," *Frumpkin*, 129 F. Supp. 2d at 377. No such "regime" is in place today.

[18] Indeed, the defendant in *Sosa*, Jose Francisco Sosa, was a non-state actor – a fact that did not preclude the Court from assessing whether the specific claims brought against him were

Court in *Sosa* expressly noted that the international norms governed not only state relationships but also "a second, more pedestrian element [that fell within the judicial sphere] regulating the conduct of individuals situated outside domestic boundaries and consequently carrying an international savor." *Sosa,* 542 U.S. at 715. The Court discussed and cited cases involving acts of private individuals acting without color of law. *See, e.g.,* discussion of Longchamps, a French adventurer (*id.* at 716-717); discussion regarding cases arising out of piracy and prize captures (*id.* at 720); cases against privateers (*id.*, citing *Bolchos v. Darrel*, 3 F.Cas. 810 (No.1, 607) (D.S.C. 1795); and the 1795 Opinion of Attorney General Bradford, discussing a civil suit that could be brought against Americans who had taken part in the French plunder of a British slave colony in Sierra Leone. (*id.* at 721). Notably, the definition of piracy included that one was a *private actor*, as explained by *United States v. Smith*, 18 U.S. (5 Wheat.) 153, 163-180, 5 L.Ed. 57 (1820). *Sosa,* 542 U.S. at 732.

Further and importantly, the Supreme Court cited with approval the *Kadić,* decision, in which the Second Circuit Court of Appeals held actionable "acts of murder, rape, torture, and arbitrary detention of civilians, committed in the course of hostilities" committed by a private party. 70 F. 3d at 242. The Court of Appeals held that the "[t]he liability of private individuals for committing war crimes has been recognized since World War I and was confirmed at Nuremberg after World War II."[19] *Id.* at 243. Numerous courts have followed the *Kadić* precedent, and have held that non-state actors can be held liable in federal courts. *See Bao Ge* v. *Li Peng*, 201 F. Supp. 2d 14, 22, n.5 (D.D.C. 2000); *Doe v. Islamic Salvation Front*, 993 F.

---

actionable. *See Alvarez-Machain v. United States*, 331 F.3d 604, 609 (9th Cir. 2003), *rev'd Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) (identifying Sosa as a *former* policeman at the time of the alleged violations).

[19] See *U.S. v. Flick,* 6 Trial of War Criminals Before the Nuremberg Military Tribunals under Control Council Law No. 10, 1, 1216-1223 (1949); *In re Tesch (Zyklon B Case),* 13 Int'l L. Rep. 250 (Br. Mil. Ct. 1946).

Supp. 3, 14 (D.D.C. 1998); *Khulumani v. Barclay National Bank, Ltd.*, 504 F.3d 254, 282 (2nd Cir. 2007) (Katzman, J., concurring); *Iwanowa v. Ford Motor Co.,* 67 F. Supp. 2d 424, 445 (D.N.J. 1999); *Jama v. Esmor*, 343 F. Supp. 2d 338, 360–61 (D.N.J 2004).[20]

    **C.**    **Plaintiffs Have No Remedy Against CACI Other Than This Litigation**

CACI, having argued that CACI is wholly immune from redress under Iraq law, again does an about-face, cites *Sosa* footnote 21 as window-dressing, and argues that Plaintiffs' claims against CACI should be dismissed because Plaintiffs failed to exhaust their domestic legal remedies. Mem. at 35-36. This argument lacks any merit. The ATS contains no exhaustion requirement, and neither the Supreme Court nor any Circuit has ever held that victims' claims must be dismissed with prejudice unless they have exhausted local remedies. This is particularly true when those local remedies would be wholly futile. *See e.g., Bowoto v. Chevron*, 557 F.Supp.2d 1080, 1096-97 (N.D.Cal. 2008); *Abiola v. Abuakar*, 435 F.Supp.2d 830, 836-38 (N.D.Ill. 2006) (vacated on condition of settlement by *Abiola v. Abubakar*, 2008 U.S. Dist. LEXIS 2937 (Jan. 14, 2008)); *Jean v. Dorelien*, 431 F.3d 776,781 (11th Cir. 2005). Yet that is what CACI seeks here.

CACI itself has admitted that the Bremer Order protects it from being haled into Iraqi courts. Mem. at 22. *See also Ibrahim I.*, 391 F. Supp. 2d at 16 n.4 . How then are Plaintiffs supposed to have sued CACI in Iraq? What CACI argues is that the torture victims should be forced to seek a remedy from the U.S. military, and leave CACI alone. This argument carries no

---

[20] Congress has provided for criminal jurisdiction over non-state actors who violate the laws against war crimes and torture. In 1996, Congress enacted the War Crimes Act, 18 U.S.C. § 2441. The 1996 Act's definition of the term "war crime" included all "grave breaches", and all violations of Common Article 3, of the four Geneva Conventions. 18 U.S.C. § 2441 (1996).

weight.  The torture victims are entitled to sue the corporate conspirator who made hundreds of millions of dollars off its wrongful acts.[21]

> **D.    Federal Common Law Derived from Other Legally-Controlling Federal Sources Also Prohibits the Conduct At Issue.**

CACI is a federal contractor who willingly agrees to subjects itself to the United States federal laws and regulations governing the military's conduct (as well as federal procurement laws) in order to do business with the United States.  *See* 48 C.F.R. §§203.7000-203.7001 (2008) (procurement regulations requiring contractors to prevent and report ethical and legal violations); U.S. Army Regulation 715-9, Contractors Accompanying the Force (Oct. 29, 1999) §3-2(c), §3-2(f) (military contractors must supervise and manage their employees); U.S. Army Field Manual 3-100.21, Contractors on the Battlefield (Jan. 2003) §1-25, §4-45 (military contractors are responsible for disciplining their employees and ensuring their compliance with the law).  These contracts create duties to the United States, which cannot be violated with impunity.  Yet CACI has done exactly that, and now claims that this Court lacks any legal path to reach its misconduct.  In fact, this Court has the power to look to these sources as the wellspring of a duty that protects the victims from torture by CACI employees.  *See In Re Peanut Crop Ins. Litigation*, 524 F.3d 458, 470 (4th Cir. 2008); *Long Island Sav. Bank, FSB v. United States,* 503 F.3d 1234, 1245 (Fed.Cir.2007) (federal courts may apply federal common law to the construction of government contracts).   CACI has not – and cannot – explain why this Court lacks the authority to find that the victims are the intended beneficiaries of the United States' contractual insistence that CACI refrain from using violence against prisoners.

---

[21] In the related *Saleh* action, the U.S. Army Claims Service confirmed to Plaintiff's counsel that filing a civil suit against Titan Corporation and CACI in federal court was independent from any administrative remedy against the military.  *See E-mail From Charlotte Herring to Shereef Akeel* (June 30, 2004), attached as Exhibit A.

## V.    PLAINTIFFS HAVE PLED PROPERLY.

CACI argues that Plaintiffs failed to plead properly either respondeat superior or conspiratorial liability. This is simply wrong. *First*, CACI's *respondeat superior* pleading argument fails. The Complaint alleges that CACI employees Steven Stefanowicz, Daniel Johnson, and Timothy Dugan tortured, and instructed soldiers to torture, the Plaintiffs. Am.Compl. ¶¶ 1, 64-68. The Complaint alleges that CACI employed Stefanowicz, Johnson, and Dugan and knowingly ratified their illegal actions. Am. Compl. ¶¶ 72,76-80, 90-91. The Complaint alleges that CACI took and is taking steps to cover up the activities of CACI employees involved in the torture at Abu Ghraib, Am. Compl. ¶¶ 79, 81-88. The Complaint also alleges that CACI negligently breached its legal duties to properly train and supervise its employees, to prevent them from torturing prisoners, and to report acts of torture which they committed or witnessed. Am. Compl. ¶¶ 101-108. The Complaint alleges that CACI made millions of dollars as a result of its wrongful behavior. Am. Compl. ¶¶ 73, 92-93. These allegations suffice to state a claim for *respondeat superior* liability. *See Plummer v. Center Psychiatrists, Ltd.*, 476 S.E.2d 172, 174 (Va. 1996)(citing *Kensington Associates v. West*, 362 S.E.2d 900, 901 (Va. 1997) *McNeill v. Spindler,* 62 S.E.2d 13, 17 (Va. 1950)); *Heckenlaible v. Virginia Peninsula Regional Jail Authority*, 491 F. Supp. 2d 544, 549 (E.D.Va. 2007); *Gina Chin & Assocs., Inc. v. First Union Bank,* 537 S.E.2d 573, 577-578 (Va. 2000); *see also Jones v. Tyson Foods, Inc.,* 378 F. Supp. 2d 705, 713 (E.D.Va.2004); *Commercial Business Systems v. BellSouth,*453 S.E.2d 261 (Va. 1995).[22]

---

[22] The fact that CACI employees' actions were clearly illegal does not relieve CACI of liability; "[a] 'forbidden' or even 'consciously criminal or tortious act' may still be within the scope of employment." *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1351 (4th Cir. 1995) (citing Restatement (2d) of Agency, §§ 230, 231, 235-36). "[A]n employer may be liable for its employee's unauthorized use of force if such use was *foreseeable* in view of the employee's duties"); *Heckenlaible,* 491 F.Supp.2d at 549 (holding that whether a correctional officer's

*Second*, CACI's conspiratorial liability pleading argument (Mem. at 23-26*)* also fails. The very first paragraph of the Amended Complaint puts CACI on notice that the victims have sworn testimony from co-conspirators admitting that CACI employees conspired with them to torture Plaintiffs, and indeed directed them to engage in the torture. Am. Compl. ¶ 1. Paragraphs 11 - 63 describe the specific forms of torture done by CACI and its co-conspirators. Paragraphs 65 - 71 names the three CACI employees known to have engaged in the torture. Paragraph 66 actually describes testimony from the co-conspirators who identify Johnson and Stefanowicz as two of the ringleaders of the torture at the Abu Ghraib hard site. Paragraph 72 - 89 allege that CACI knew about and ratified the torture, and were willing to let the torture continue in order to keep making money. Paragraphs 74 - 89 describe how CACI covered up, and continues to try to cover up, its role in the Abu Ghraib torture.

As explained by the Supreme Court in the decision relied upon by CACI, *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007), Rule 8(a)(2) is designed to "give defendant fair notice of what the…claim is and the ground upon which it rests." The Court stated that a "complaint attacked by a Rule 12(b)(6) motion to dismiss ***does not need detailed factual allegations***," but "a formulaic recitation of the elements of a cause of action will not do…. ***Factual allegations must be enough to raise a right to relief above the speculative level***." *Id.* at 1964-65 (emphasis added) (internal citations omitted). CACI claims that none of the Plaintiffs' factual allegations are sufficient because the victims did not identify by name the CACI employees who physically harmed them, and did not provide an exhaustive list of participants in the conspiracy. Mem. at 23-26. In fact, three CACI employees who physically harmed Plaintiffs

_____

sexual assault on an inmate was within the scope of his employment was a jury question); *Plummer*, 476 S.E.2d at 174-75 (lower court erred in holding that psychologist who engaged in sexual intercourse with a patient acted outside the scope of his employment as a matter of law).

are named.  As to the other involved CACI employees, the victims were not given the names of their torturers, although they can certainly describe their physical characteristics with ease. CACI employees intentionally withheld their identities, and thus most of the names are information exclusively in CACI's possession. *See Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008) (finding that district court had "improperly faulted" plaintiff for failure to plead facts that were "particularly within [defendant's] knowledge and control."); *Johnson v. Johnson*, 385 F.3d 503, 531 n. 19 (5th Cir. 2004).  As to the exhaustive list of conspiratorial participants, although it need not be included in the Complaint, the victims stand ready to provide a list of known co-conspirators in accordance with Rule 26, which compels such disclosures.  CACI, however, is stonewalling on discovery, and trying to stop it from going forward at all.  *See CACI's Mot. To Stay Discovery; Parties' Proposed Discovery Plans.*  CACI cannot credibly claims it lacks notice of what the victims' claim.

## CONCLUSION

For the foregoing reasons, the Court should deny CACI's Motion to Dismiss.

Respectfully submitted,

_____/s/ Susan L. Burke_____

Susan L. Burke (Virginia Bar No. 27769)
William T. O'Neil
William F. Gould
Counsel for Plaintiffs
BURKE O'NEIL LLC
4112 Station Street
Philadelphia, PA 19127
(215) 487-6596 (telephone)
(215) 482-0874 (facsimile)
sburke@burkeoneil.com

Date: October 16, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of October, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following


J. William Koegel, Jr.
Virginia Bar No. 38243
John F. O'Connor (*pro hac vice* application pending)
Attorneys for Defendants CACI Premier Technology, Inc. and CACI International Inc
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 - telephone
(202) 429-3902 – facsimile
wkoegel@steptoe.com
joconnor@steptoe.com


      /s/ Susan L. Burke      
Susan L. Burke (Virginia Bar No. 27769)
Counsel for Plaintiffs
BURKE O'NEIL LLC
4112 Station Street
Philadelphia, PA 19127
(215) 487-6596 (telephone)
(215) 482-0874 (facsimile)
sburke@burkeoneil.com