# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:08-CV-827-GBL-JFA |
| v. | ) ) | |
| CACI INTERNATIONAL INC, et ano., | ) ) | |
| Defendants. | ) ) ) | |

# REPLY IN SUPPORT OF DEFENDANTS CACI INTERNATIONAL INC AND CACI PREMIER TECHNOLOGY, INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

J. William Koegel, Jr. (Va. Bar No. 38243)
John F. O'Connor (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington,  D.C. 20036
Telephone:   (202) 429-3000
Facsimile:    (202) 429-3902

*Counsel for Defendants CACI International Inc and CACI Premier Technology, Inc.*

October 22, 2008

# TABLE OF CONTENTS

                                                                                    **Page**

I.     INTRODUCTION ...................................................................................................1

II.    ANALYSIS..........................................................................................................1

       A.     Plaintiffs Cannot Avoid Application of the Political Question Doctrine ................1

              1.     The Political Question Doctrine Applies Without Regard to
                     Whether Claims Involve "Individual Rights" or the United States
                     is a Party...........................................................................................1

              2.     The Political Question Doctrine Applies Without Regard to
                     Whether Plaintiffs Claim that Defendants Acted Unlawfully ....................4

              3.     Plaintiffs' Assertion That This Case "Is Easily Litigated and Does
                     Not Pose Any Manageability Issues" Is Not Credible................................6

       B.     Plaintiffs Have Not Sufficiently Pleaded Their Conspiracy Claims........................7

       C.     The CACI Defendants Are Immune from Suit ....................................................8

              1.     *Mangold* Compels a Finding of Derivative Absolute Official
                     Immunity..........................................................................................8

              2.     Plaintiffs' Attempt to Avoid the CACI Defendants' Immunity
                     From Iraqi Law Is Unavailing................................................................11

       D.     Plaintiffs' Claims Are Preempted .........................................................................13

              1.     The CACI Defendants Have Properly Raised Combatant Activities
                     Preemption In Their Motion To Dismiss ..................................................14

       E.     The CACI Defendants Have Not Relied On The "Government Contractor
              Defense".............................................................................................................15

       F.     Combatant Activities Preemption Applies To Claims Based On The
              Combatant Activities Of Contractors....................................................................16

       G.     Plaintiffs' Alien Tort Statute ("ATS") Claims Are Fatally Flawed......................17

III.   CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Abagninin v. AMVAC Chem. Corp.,
___ F.3d ___, 2008 WL 4330544 (9th Cir. Sept. 24, 2008) ..................................................19

ACLU v. Dep't of Defense,
389 F. Supp. 2d 547 (S.D.N.Y. 2005) ...................................................................................6, 7

Baker v. Carr,
369 U.S. 186, 217 (1962) ........................................................................................................3

Bancoult v. McNamara,
445 F.3d 427 (D.C. Cir. 2006) ...........................................................................................2, 5, 6

Bell Atl. Corp. v. Twombly,
127 S. Ct. 1955 (2007) ............................................................................................................8

Boyle v. United Technologies Corp.,
487 U.S. 500 (1988) ..........................................................................................................15, 16

Carmichael v. Kellogg, Brown & Root Servs., Inc.,
564 F. Supp. 2d 1363 (N.D. Ga. 2008) ...................................................................................3

Coleman v. Tennessee,
97 U.S. 509 (1878) ................................................................................................................13

Corrie v. Caterpillar, Inc.,
403 F. Supp. 2d 1019 (W.D. Wash. 2005) ..............................................................................3

Dostal v. Haig,
652 F.2d 173 (D.C. Cir. 1981) ..............................................................................................13

Dreher v. Budget-Rent-a-Car System, Inc.,
634 S.E.2d 324 (Va. 2006) ....................................................................................................12

El-Masri v. United States,
479 F.3d 296 (4th Cir. 2007) ..................................................................................................7

Ex parte Quirin,
317 U.S. 1 (1942) .................................................................................................................10

Goldstar (Panama) S.A. v. United States,
967 F.2d 965 (4th Cir. 1992) ................................................................................................20

*Gonzalez-Vera v. Kissinger*,
  449 F.3d 1260 (D.C. Cir. 2006) ...................................................6

*Hamdi v. Rumsfeld*,
  542 U.S. 507 (2004) .....................................................................10

*Ibrahim v. Titan Corp.*,
  391 F. Supp. 2d 10 (D.D.C. 2005) ..............................................16

*Ibrahim v. Titan Corp.*,
  556 F. Supp. 2d 1 (D.D.C. 2007) ................................................10

*In Re "Agent Orange" Prod. Liab. Litig.*,
  373 F. Supp. 2d 7 (E.D.N.Y. 2005) .............................................17

*In re Estate of Ferdinand Marcos, Human Rights Litig.*,
  25 F.3d 1467 (9th Cir. 1994) ......................................................18

*Johnson v. Eisentrager*,
  339 U.S. 763 (1950) .....................................................................14

*Kadic v. Karadzic*,
  70 F.3d 232 (2d Cir. 2005) ...............................................18, 19, 20

*Koohi v. United States*,
  976 F.2d at 1337 ...............................................................16, 17, 18

*Leitensdorfer v. Webb*,
  61 U.S. 176 (1857) .......................................................................13

*Madsen v. Kinsella*,
  343 U.S. 341 (1952) .....................................................................13

*Malesko v. Corr. Servs. Corp.*,
  229 F.3d 374 (2d Cir. 2000) ........................................................16

*Mangold v. Analytic Services, Inc.*,
  77 F.3d 1442 (4th Cir. 1996) .............................................8, 9, 10, 11

*Medina v. United States*,
  259 F.3d 220 (4th Cir. 2001) ......................................................10

*New Orleans v. The Steamship Co.*,
  87 U.S. 387 (1874) .......................................................................13

*Perkins v. United States*,
  55 F.3d 910 (4th Cir. 1995) ........................................................10

*Ruttenberg v. Jones*,
  No. 07-1037, 2008 WL 2436157 (4th Cir. June 17, 2008) ....................................7, 8

*Sanchez-Espinosa v. Reagan*,
  770 F.2d 202 (D.C. Cir. 1985) ...............................................................................19

*Saucier v. Katz*,
  533 U.S. 194 (2001) ...............................................................................................10

*Smith v. Halliburton Co.*,
  No. H-06-0462, 2006 WL 2521326 (S.D. Tex. Aug. 30, 2006) ...............................3

*Smith v. Reagan*,
  844 F.2d 195 (4th Cir. 1988) ...................................................................................6

*Tiffany v. United States*,
  931 F.2d 271 (4th Cir. 1991) ...........................................................................1, 3, 4

*United States ex rel. Godfrey v. Kellogg, Brown & Root, Inc.*,
  No. 1:05-CV-1418(GBL), 2008 U.S. Dist. Lexis 21957 (E.D. Va. Mar. 13, 2008)..................7

*United States v. Varig Airlines*,
  467 U.S. 797 (1984).................................................................................................16

*Whitaker v. Kellogg Brown & Root, Inc.*,
  444 F. Supp. 2d 1277 (M.D. Ga. 2006) ...................................................................3

*Whiteman v. Dorotheum*,
  431 F.3d 57 (2d Cir. 2005).......................................................................................2

*Williams v. United States*,
  50 F.3d 299 (4th Cir. 1995) .....................................................................................2


**STATUTES**

28 U.S.C. § 2680(j) ...........................................................................................10, 13


**RULES**

Fed. R. Civ. P. 12(b)(6)............................................................................................1

**REGULATIONS**

48 C.F.R. 252.225-7040.............................................................................................................17

73 Fed. Reg. 16764, 16768 (Mar. 31, 2008)...............................................................................17

# I. INTRODUCTION

Plaintiffs' opposition is largely a rote repetition of the opposition Plaintiffs' counsel filed in response to a motion to dismiss the Fourth Amended Complaint in *Saleh*, a motion on which the court has not ruled because of pending appeals.[1]  As a result, most of Plaintiffs' arguments offer no more than a simplistic analysis of Fourth Circuit precedent tacked on to the arguments asserted in *Saleh*.  Most of Plaintiffs' arguments boil down to a single premise: that if Plaintiffs allege "torture," all defenses otherwise available to the CACI Defendants, such as political question, immunity, and preemption, disappear.  While the CACI Defendants vehemently deny Plaintiffs' allegations, they recognize that a Rule 12(b)(6) motion requires that Plaintiffs' well-pleaded allegations be treated as true.  Nevertheless, the fact remains that *every* complaint alleges wrongdoing by the defendants, and Plaintiffs' invocation of the specter of "torture," dishonest or not, cannot obscure the multiple grounds on which Plaintiffs' Amended Complaint is subject to dismissal.  There is no exception in the law for allegations of physical abuse.

# II. ANALYSIS

## A. Plaintiffs Cannot Avoid Application of the Political Question Doctrine

### 1. The Political Question Doctrine Applies Without Regard to Whether Claims Involve "Individual Rights" or the United States is a Party

Plaintiffs argue, without citation, that claims "seeking the vindication of individual rights rarely trigger the political question doctrine."  Pl. Opp. at 2.  Nothing could be further from the truth.  The key Fourth Circuit authority the CACI Defendants rely on (and which Plaintiffs studiously avoid addressing) involved a negligence action filed by an individual plaintiff.  *See Tiffany v. United States*, 931 F.2d 271, 278 (4th Cir. 1991) (holding that the plaintiff's claims

---

[1] As a result of their cut-and-paste exercise, Plaintiffs incorrectly claim that the CACI Defendants are relying on cases that are not even cited in their papers.  Pl. Opp. at 7, 24.

presented political questions because they would "reshape the national response to threats of hostile air attack through the mechanism of tort law").  The Fourth Circuit is not alone in holding that claims may present nonjusticiable political questions even where there are allegations involving "individual rights."  *See, e.g., Bancoult v. McNamara*, 445 F.3d 427, 430 (D.C. Cir. 2006) (individual plaintiffs' claims for "forced relocation; torture; racial discrimination; cruel, inhuman, or degrading treatment [and] genocide" presented nonjusticiable political questions); *Whiteman v. Dorotheum*, 431 F.3d 57, 60 (2d Cir. 2005) (individual plaintiffs' claims for property lost under Nazi persecution in Austria presented nonjusticiable political questions).

Plaintiffs next argue that their suit does not require review of detention and interrogation policies because they have not sued the United States directly.  Pl. Opp. at 3.  This argument fails on two levels.  First, Plaintiffs allege that CACI was part of a "torture conspiracy" with "military and government personnel."  Am. Compl. ¶ 100.  While Plaintiffs are purposefully vague in describing this alleged conspiracy, the Court may consider how Plaintiffs' counsel has described the conspiracy in related litigation because the political question doctrine implicates the Court's subject-matter jurisdiction.  *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).

In the *Saleh* action, Plaintiffs' counsel described the "torture conspiracy" as including Secretary of Defense Rumsfeld, two Undersecretaries of Defense, and Army personnel of virtually every rank.  Supp. O'Connor Decl., Ex. A at 4-5. The *Saleh* action alleges that torture was official United States policy, conceived by the Department of Defense and implemented by military and civilian contractor personnel.  Thus, Plaintiffs seek to hold CACI liable for acts of detainee abuse by military personnel and for injuries caused as a result of implementation of Department of Defense policies by allegedly co-conspiring government officials.  Plaintiffs' alleged "torture conspiracy" supposedly extends to the designation and treatment of "ghost

detainees," which references a CIA program by which certain high-value detainees were not recorded as having been captured.[2] Plaintiffs' efforts to make their conspiracy allegations incomprehensibly vague cannot change the fact that any litigation of Plaintiffs' claims will require the Court to pass judgment on the adoption and implementation of the United States' detainee and interrogation procedures, which is a clear-cut political question. This is true regardless of whether the United States is a party to the litigation.

Second, when claims asserted solely against a non-government defendant are intertwined with one of the six enumerated *Baker v. Carr* factors (*see Tiffany*, 931 F.2d at 276 (citing *Baker*, 369 U.S. 186, 217 (1962))), it is irrelevant whether the United States is a defendant – courts still must find a nonjusticiable political question. *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 564 F. Supp. 2d 1363, 1370 (N.D. Ga. 2008) (political question doctrine barred claims against two contractors for injuries resulting from a convoy accident allegedly caused by the contractors' employee); *Whitaker v. Kellogg Brown & Root, Inc.*, 444 F. Supp. 2d 1277, 1281 (M.D. Ga. 2006) ("The Court recognizes that the claims [are not] against the United States [but] a government contractor. The Court nonetheless finds that the same principles apply in this case and that the same indicia of a political question exist here."); *Smith v. Halliburton Co.*, No. H-06-0462, 2006 WL 2521326, at *5 (S.D. Tex. Aug. 30, 2006) (negligence claims against contractor stemming from suicide bomb attack on an Iraqi base presented nonjusticiable political questions); *Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019, 1032 (W.D. Wash. 2005). There is no seventh *Baker* factor limiting the application of the political question doctrine to suits against the United States, and the Court should decline Plaintiffs' invitation to create one.

---

[2] MG Antonio M. Taguba, AR 15-6 Investigation of the 800th Military Police Brigade, at 26-27, *available at* http://www.npr.org/iraq/2004/prison_abuse_report.pdf; MG George Fay, AR 15-6 Investigation of the Abu Ghraib Detention Facility and 205th Military Intelligence Brigade, at 53, *available at* http://fl1.findlaw.com/news.findlaw.com/hdocs/docs/dod/fay82504rpt.pdf.

### 2. The Political Question Doctrine Applies Without Regard to Whether Plaintiffs Claim that Defendants Acted Unlawfully

Plaintiffs argue that their claims do not implicate U.S. foreign policy and national security decisions because they have alleged that Defendants engaged in unlawful conduct. Pl. Opp. at 4. This is the only effort Plaintiffs make at distinguishing the Fourth Circuit's decision in *Tiffany*. But the Fourth Circuit rejected this very argument in *Tiffany*:

> In [plaintiff's] view, the protected decisions with which we should not interfere have already been made in the form of NORAD and USAF regulations, manuals, and procedures. Thus, [plaintiff] contends, the court can inquire into whether government agents followed those regulations without exercising authority to which it is not entitled. . . . [However,] to say that because internal regulations exist, the barriers to judicial involvement are removed is too simple a proposition. . . . Even if we were to agree that the regulations provided standards against which NORAD's conduct could be measured, that conclusion would hardly compel that the courts do so if other prudential considerations counseled against it. Here, we conclude that precisely such other powerful factors foreclose judicial entertainment of [plaintiff's] assertions. . . . Simply put, NORAD must have some freedom to design and to conduct missions with regard to hostile aircraft without fear that courts will afterwards assess damages in the belief that the mission might have been accomplished better. *The presence of regulations does not change the reality that legislative and executive oversight of these particular military missions is to be preferred to that of the judiciary.*

931 F.2d at 279 (internal citation and quotations omitted). The Fourth Circuit refused to consider whether government agents followed regulations *even though the district court had conducted a bench trial and found that the government was negligent*. 931 F.2d at 275. Thus, under *Tiffany even if* the CACI Defendants violated federal law, the issue before the Court is only whether "legislative and executive oversight" over the United States' interrogation procedures and methods during wartime "is to be preferred to that of the judiciary." *Id.*

Other courts of appeals have similarly held that an allegation that the defendant's conduct was in violation of United States law or policy will not render nonjusticiable claims justiciable.

For example, in *Bancoult* the D.C. Circuit considered the claims of former residents of the Chagos Archipelago who alleged that they had suffered severe injuries as a result of the United States forcibly relocated them during the construction of the Diego Garcia air base. 445 F.3d at 427. Despite the gravity of the plaintiffs' allegations, which included torture and genocide, the D.C. Circuit held that it did not have jurisdiction because *both* the decision to establish a military base on Diego Garcia and "the specific tactical measures allegedly taken to depopulate the Chagos Archipelago" were nonjusticiable political questions. 445 F.3d at 436. Therefore, the *Bancoult* court could not establish a standard by which to judge the exercise of force or even conclude that the United States owed a duty of care to the plaintiffs:

> In this respect, the specific steps taken to establish the base did not merely touch on foreign policy, but rather constituted foreign policy decisions themselves. If we were to hold that the executive owed a duty of care toward the Chagossians, or that the executive's actions in depopulating the islands and constructing the base had to comport with some minimum level of protections, we would be meddling in foreign affairs beyond our institutional competence. The courts may not bind the executive's hands on matters such as these, whether directly-by restricting what may be done – or indirectly – by restricting how the executive may do it.

*Id.* at 437. Importantly, the D.C. Circuit held that the political question doctrine divested it of jurisdiction over the plaintiffs' claims against the United States as well as the claims asserted against the individual defendants. *Id.* The court rejected the plaintiffs' argument that the political question doctrine did not apply because the individual defendants had not acted in conformance with presidential orders to depopulate the island. *Id.*

Because the individual defendants were authorized to depopulate the islands and establish a military base "[a]ll the acts alleged to have harmed the [plaintiffs] directly furthered, or at least were incidental to, this authorized goal" and "the use of harsh measures in the course of completing the tasks cannot be unexpected." *Id.* at 438. Consequently, the actions of the

individuals alleged to have caused the harm to plaintiffs was not, for political question purposes, outside the scope of their employment even though they might not have strictly adhered to presidential orders. *Id.*; *see also Smith v. Reagan*, 844 F.2d 195, 198 (4th Cir. 1988) (finding a political question even though the plaintiffs' alleged that the President had failed to comply with federal law); *Gonzalez-Vera v. Kissinger*, 449 F.3d 1260, 1264 (D.C. Cir. 2006) (holding that claims against former Secretary of State Henry Kissinger for torture and kidnapping presented nonjusticiable political questions even though the plaintiffs' claimed that Kissinger "purposefully act[ed] outside the proper channels of Congressional oversight").[3]

### 3. Plaintiffs' Assertion That This Case "Is Easily Litigated and Does Not Pose Any Manageability Issues" Is Not Credible

Plaintiffs assert that this action is "relatively straightforward," and that "[t]he military has not sought to classify the relevant evidence." Pl. Opp. at 7-8. These contentions are both misleading and untrue. Plaintiffs' arguments are misleading because they limit their representation about classified documents to "the military." But Plaintiffs' claims allege that a part of the conspiracy in which the CACI Defendants supposedly engaged was the establishment and operation a "ghost detainee program," and that Plaintiff Rashid was in fact a "ghost detainee." Am. Compl. ¶¶ 43, 68-69. The "ghost detainee program" was a CIA program whereby certain high-value detainees were not recorded as having been detained by the United States. *See* note 2, *supra*. The CIA *has* classified all documents relating to the ghost detainee program in the interest of national defense. *See* Supp. O'Connor Decl., Ex. B at 10-20; *see also ACLU v. Dep't of Defense*, 389 F. Supp. 2d 547, 566 (S.D.N.Y. 2005).

---

[3] Indeed, Plaintiffs specifically argue that the CACI PT interrogators were acting *within* the scope of their employment. Pl. Opp. at 28 n.22.

Plaintiffs' argument is also wrong with respect to the military. The military has asserted that documents relating to specific interrogations are protected from disclosure. *ACLU*, 389 F. Supp. 2d at 552. The Defense Department also recently promulgated a directive that classifies significant categories of information relating to the interrogations, including information relating to the identity of their interrogators. *See* DoD Directive 3115.09, ¶ 3(d)(11)(a)-(c) (Oct. 9, 2008) (attached as Exhibit C to Supp. O'Connor Decl.). Thus, the litigation of this action would pose severe manageability problems simply in terms of obtaining any information required to litigate this case from the United States, to say nothing of necessary information that may be available only in Iraq. *See El-Masri v. United States*, 479 F.3d 296, 309 (4th Cir. 2007).

**B.     Plaintiffs Have Not Sufficiently Pleaded Their Conspiracy Claims**

The CACI Defendants argued in their Motion to Dismiss that Plaintiffs' allegations failed to state a claim under the Fourth Circuit's decision in *Ruttenberg v. Jones*, No. 07-1037, 2008 WL 2436157, at *8 (4th Cir. June 17, 2008) and this Court's recent decision in *United States ex rel. Godfrey v. Kellogg, Brown & Root, Inc.*, No. 1:05-CV-1418(GBL), 2008 U.S. Dist. Lexis 21957, at *16-17 (E.D. Va. Mar. 13, 2008). These cases require that Plaintiffs have pled facts that "reasonably lead to the inference" that the CACI Defendants and its alleged co-conspirators "positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan," *Ruttenberg*, 2008 WL 2436157, at *8, especially where the parties "by definition have agreed to work together on a single contract," as they did here. *Godfrey*, 2008 U.S. Dist. Lexis 21957, at *17-18. Yet in responding to the CACI Defendants, Plaintiffs did not even bother to address *Ruttenberg* or *Godfrey*, and instead simply regurgitated the allegations in the Amended Complaint. Pl. Opp. at 29. Plaintiffs' efforts do not cure the fundamental problem with the conspiracy allegations: "[n]o common purpose is alleged and nothing beyond

conclusory allegations of conspiracy are made." *Ruttenberg*, 2008 WL 2436157, at *8. Because all of Plaintiffs' claims depend on co-conspirator liability, this flaw is fatal.

Plaintiffs do allege that the CACI Defendants had a purpose in joining the alleged conspiracy: "CACI's motivation was wholly financial – it made millions of dollars as a result of keeping quiet about and participating in the conspiracy to torture and mistreat plaintiffs." Compl. ¶ 73. The Amended Complaint does not allege any payment to the CACI Defendants other than the ordinary contract payment for providing interrogation services, and does not allege a payment made for joining some make-believe conspiracy. Plaintiffs' conspiracy allegations are precisely the type of implausible, conclusory allegations that do not rise past the minimum pleading requirements announced in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

### C.    The CACI Defendants Are Immune from Suit

As the CACI Defendants explained in moving to dismiss, they are immune from suit for two independent reasons. First, the CACI Defendants are entitled to derivative absolute official immunity under the Fourth Circuit's decision in *Mangold v. Analytic Services, Inc.*, 77 F.3d 1442, 1447-48 (4th Cir. 1996). Second, the CACI Defendants are immune from suit based on their immunity from Iraqi law. Plaintiffs' cursory discussion of the precedent that binds this Court does nothing to undermine the immunity to which the CACI Defendants are entitled.

### 1.    *Mangold* Compels a Finding of Derivative Absolute Official Immunity

In their cursory treatment of derivative absolute official immunity, Plaintiffs offer two arguments why *Mangold* does not compel dismissal: (1) because the conduct alleged supposedly is not a discretionary function; and (2) because acts of physical abuse – if Plaintiffs' allegations were true – is not the type of conduct that can be shielded by immunity. The first of these propositions is both incorrect and irrelevant, and reflects a fundamental misunderstanding of *Mangold*; the second of these propositions is plainly incorrect under Fourth Circuit law.

In *Mangold*, the Fourth Circuit observed that "[i]f absolute immunity protects a particular governmental function, no matter how many times or to what level that function is delegated, it is a small step to protect that function when delegated to private contractors, particularly in light of the government's unquestioned need to delegate governmental functions."  77 F.3d at 1448. As a result, when a plaintiff seeks to hold a government contractor liable for conduct for which the United States would be immune if it performed the conduct itself, that immunity extends to the government contractor when "the public benefits obtained by granting immunity outweighs its costs."  *Id.* at 1447.  Because the conduct in *Mangold* involved an allegedly discretionary function, the Fourth Circuit considered whether the conduct would fall within the discretionary function exception.  *Id.* at 1448.  Having concluded that, while the contractor's activities – providing information to government investigators – was not, strictly speaking, a discretionary function, the government nevertheless had a sufficient interest in investigating allegations of contracting fraud as to justify derivative absolute official immunity.  *Id.* at 1449-50.

Thus, Plaintiffs' contention that the CACI Defendants must prove that their employees' work in Iraq qualified as a discretionary function is wrong on two levels.  First, even in *Mangold* the court held the contractor immune when the function it performed – responding to a government investigation – was not itself a discretionary function.  *Id.*  Second, and perhaps more important, the Fourth Circuit considered the discretionary function exception to the Federal Tort Claims Act because **that** was the exception applying in that case, and did not hold that derivative absolute immunity *only* applied in the context of discretionary functions.

While the functions assigned to CACI PT interrogators qualify as discretionary functions, CACI Mem. at 16-17, these delegated functions – interrogating detainees in a military combat-zone detention facility – constitute combatant activities for which the United States is itself

immune. 28 U.S.C. § 2680(j); *Hamdi v. Rumsfeld*, 542 U.S. 507, 518 (2004) (arrest and detention activities "by 'universal agreement and practice,' are 'important incident[s] of war'" (citing *Ex parte Quirin*, 317 U.S. 1 (1942))); *Ibrahim v. Titan Corp.*, 556 F. Supp. 2d 1, 10 (D.D.C. 2007) (interrogation of detainees by CACI PT employees constituted a combatant activity). As *Mangold* instructs, the United States' inarguable immunity for combatant activities makes derivative absolute immunity available to the CACI Defendants if the public benefits of immunity outweigh its costs. Here, too, Plaintiffs misconstrue the relevant case law.

Plaintiffs posit that once they allege serious physical abuse, no matter how vaguely, immunity becomes unavailable as a defense. Thus, Plaintiffs argue that immunity is available only once a defendant establishes that it does not need the immunity. But immunity carries with it "an entitlement not to stand trial or face the burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Indeed, immunity is available for "illegal and even offensive conduct," including intentional torts. *Mangold*, 77 F.3d at 1447; *see also Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001) (immunity barred plaintiff's claims for assault and battery, false arrest, malicious prosecution, and intentional infliction of emotional distress); *Perkins v. United States*, 55 F.3d 910, 913-14 (4th Cir. 1995) ("First, [plaintiff] argues that, because IRS agents are not authorized to commit torts or to violate regulations, any torts or violations committed by [an IRS agent] during an assessment or collection effort cannot be considered to be within the scope of his official duties. . . . Her argument lacks merit."). Plaintiffs cannot rely on the "torture exception" that they assert, without authority, defeats a claim of immunity.

Plaintiffs also argue that *Mangold* can be distinguished because the immunity conferred in that case flowed from the government's interest in "investigating into 'suspected fraud, waste, and mismanagement in the administration of government contracts.'" Pl. Opp. at 11 (quoting

*Mangold*, 77 F.3d at 1447). Plaintiffs then turn to their allegations against the CACI Defendants and argue that "[t]here is no public interest in torturing detainees." Pl. Opp. at 11. But Plaintiffs' analogy is a false one. As the Fourth Circuit explained in *Mangold*, "the scope of derivative absolute official] immunity is defined by the nature of the *function* being performed," which in *Mangold* was the investigation of alleged contracting fraud. *Mangold*, 77 F.3d at 1447. As a result, the *Mangold* court did not assess whether there was a public interest in allowing interviewees to make intentional and maliciously false allegations of contracting fraud, which was the misconduct that allegedly occurred in that case. Plaintiffs' observation that "[t]here is no public interest in torturing detainees," Pl. Opp. at 11, answers an irrelevant question, just as whether there is a public interest in making false statements to investigators was irrelevant in *Mangold*. Under *Mangold* the proper question here is whether there is a public interest in allowing battlefield interrogations without the tort liability from which the United States has immunized itself, a paramount public interest that supports the "small step" of extending the government's immunity to the contractors employed to perform the government's work. *Mangold*, 77 F.3d at 1448.[4] Plaintiffs' opposition does not rebut the CACI Defendants' analysis of *that question*, where the public interest served by immunity is clear. CACI Mem. at 16-17.

## 2. Plaintiffs' Attempt to Avoid the CACI Defendants' Immunity From Iraqi Law Is Unavailing

Plaintiffs' opposition seeks to avoid a ruling that the CACI Defendants are immune from Iraqi law by arguing that some unstated jurisdiction other than Iraq would supply the substantive law for Plaintiffs' claims. Plaintiffs then fall back and argue that, in any event, the CACI Defendants are not immune from Iraqi tort law. Both arguments are wrong as a matter of law.

---

[4] Plaintiffs' opposition also fails to distinguish the cases cited by the CACI Defendants where courts have followed *Mangold* to find contractors derivatively immune from claims involving a panoply of alleged misconduct. *See* CACI Mem. at 15.

As for Virginia's choice of law rules, which apply to Plaintiffs Rashid, Al-Zuba'e, and Al-Ejaili, Plaintiffs simply assert that Virginia courts may disregard the doctrine of *lex loci delicti* if applying the law of the place of the tortious conduct would violate Virginia's public policy. Pl. Opp. at 12-13. But Plaintiffs do not develop any argument as to why applying the centuries-old immunity relating to occupied territories would violate Virginia's public policy. Beyond failing to develop any credible public policy argument, none of the Virginia cases cited by Plaintiffs involved a court *actually* refusing application of *lex loci delicti* to a tort claim on public policy grounds. Pl. Opp. at 12-13. Indeed, in *Dreher v. Budget-Rent-a-Car System, Inc.*, 634 S.E.2d 324, 328 (Va. 2006), one of the cases relied on by Plaintiffs, the court noted that Virginia "steadfastly adheres to the doctrine of *lex loci delicti*." *Id.*

With respect to Ohio's choice of law rules, which might govern Al Shimari's claims (CACI Mem. at 18-19), Plaintiffs note that Ohio considers a number of factors and then simply argue that this gives the Court "discretion" to apply Iraq or United States law, as if the Court could just choose rather than apply the relevant factors. Pl. Opp. at 13. Every Ohio choice of law factor, other than the parties' domiciles, favors applying Iraqi law, and the parties' domiciles is a neutral factor between Virginia and Iraq. Thus, a straightforward application of Ohio choice of law rules requires that Plaintiffs' claims, if recognized, must be a product of Iraqi law.[5]

Finally, Plaintiffs' argument that CPA Order 17 fails to render the CACI Defendants immune under Iraqi law misses at least half of the CACI Defendants' argument. As the CACI Defendants explained, CACI Mem. at 20-22, they would be immune from Iraqi law even if CPA Order 17 never issued, as it has long been the case that the laws of an occupied territory apply

---

[5] Plaintiffs' argument that "Iraq" has no interest in having immunity apply against tort claims by Iraqis, Pl. Opp. at 13-14, misses the point. At the relevant time, the governing authority of occupied Iraq was the Coalition Provisional Authority, which had a clear interest in continuing the longstanding rule that occupying personnel are immune from local law.

only to internal relations between residents, and then only to the extent permitted by the occupying authority. *Id.* Indeed, Plaintiffs are plainly wrong in arguing that this common-law immunity applies only to soldiers and government employees, as the case law makes clear that this immunity applies to *anyone* located in an occupied territory other than local residents. *Madsen v. Kinsella*, 343 U.S. 341, 345 n.6 (1952); *Coleman v. Tennessee*, 97 U.S. 509, 517 (1878); *New Orleans v. The Steamship Co.*, 87 U.S. 387, 394 (1874); *Leitensdorfer v. Webb*, 61 U.S. 176, 177 (1857); *Dostal v. Haig*, 652 F.2d 173, 176-77 (D.C. Cir. 1981).

Moreover, while the CACI Defendants do not need it to establish their immunity from Iraqi law, Plaintiffs misread the version of CPA Order 17 in effect at the relevant time in arguing that this order does not provide an independent source of immunity to the CACI Defendants. CPA Order 17 not only recognizes the common-law immunity involved in a military operation, but it also expressly provides that coalition contractors "shall not be subject to Iraqi laws or regulations in matters relating to the terms and conditions of their contracts." CPA Order 17 at 2 (6/27/03). The Amended Complaint alleges that the CACI PT interrogators in Iraq were serving pursuant to contract, and Plaintiffs' claims necessarily arise out of the terms and conditions of these contracts. Am. Compl. ¶ 10. Thus, even if there were no applicable common-law immunity applicable to military occupations, CPA Order 17 would render the CACI Defendants immune from Plaintiffs' claims in any event. At its core, Plaintiffs' fallback position is that the CACI Defendants, in providing combat-zone interrogation services, are subject to the tort law of Saddam Hussein. This absurd result is barred by common-law immunity and CPA Order 17.

### D. Plaintiffs' Claims Are Preempted

In trying to avoid preemption of their claims under the combatant activities exception to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(j), Plaintiffs simply recast the CACI

Defendants' defense as one based on the discretionary function exception, or as they call it "the government contractor defense." However, the federal interests in eliminating tort duties from the battlefield are broader than those supporting the discretionary function exception. Moreover, combatant activities preemption is not precluded when the claimant asserts the contractor caused his or her injuries, nor does it require a showing that the military specifically directed the commission of a tort, or that the application of tort law conflicts with contractual obligations. Rather, the only showing required is that application of tort law would conflict with the federal interests embodied in the combatant activities exception, which is evident here.

### 1. The CACI Defendants Have Properly Raised Combatant Activities Preemption In Their Motion To Dismiss

Plaintiffs first argue that the CACI Defendants cannot succeed on a combatant activities preemption defense on a motion to dismiss because "CACI must introduce compelling and admissible evidence proving entitlement to the defense." Pl. Opp. at 18. Under the proper test for combatant activities preemption, however, the only issue before the Court is whether CACI PT interrogators were engaged in combatant activities of the military, which is evident from the Amended Complaint. That interest is just as frustrated when a contractor performs *some* degree of supervision or control as when the contractor provides none. Worse yet, it fetters the discretion of battlefield commanders by creating tort duties on the battlefield if the military determines to vest some degree of control or responsibility in the hands of a contractor. That is precisely, however, what the combatant activities exception is intended to prevent. As the Supreme Court has explained, "[i]t would be difficult to devise a more effective fettering of a field commander than to allow the very enemies he is ordered to reduce to submission to call him to account in his own civil courts and divert his efforts and attention from the military offensive abroad to the legal defensive at home." *Johnson v. Eisentrager*, 339 U.S. 763, 779 (1950).

Plaintiffs have not challenged that CACI PT's employees, who were interrogating Iraqis detained by the U.S. military in a combat zone detention facility, were performing "combatant activities." Therefore, if the Court finds, as it should, that the correct test for combatant activities preemption is whether the CACI Defendants were engaged in combatant activities of the military at the time of the alleged injuries, the Court must dismiss Plaintiffs' claims as a matter of law.

E.  **The CACI Defendants Have Not Relied On The "Government Contractor Defense"**

Plaintiffs characterize this appeal as involving a rote application of *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). While *Boyle* provides the general framework for evaluating preemption defenses based on FTCA exceptions, the specific preemption test applied in *Boyle* applies only where preemption is based on the discretionary function exception. In conflating the discretionary function exception at issue in *Boyle* with the combatant activities exception at issue here, Plaintiffs avoid addressing the central issue in this case – whether Plaintiffs' claims conflict with the federal interests served by the *combatant activities exception*.

Plaintiffs argue that "[t]he defense does not apply even in 'an intermediate situation, in which the duty sought to be imposed on the contractor is not identical to one assumed under the contract, but is also not contrary to any assumed.'" Pl. Opp. at 17 (quoting *Boyle*, 487 U.S. at 509). But in *Boyle*, the Court found that discretionary function preemption applied when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." 487 U.S. at 512. There is no added condition that a tort duty must conflict with the supplier's *contractual obligation*.

Moreover, even if Plaintiffs' proposed discretionary function preemption test were correct, that test is premised on the discretionary function exception's purpose in protecting the

policymaking independence of the political branches. *United States v. Varig Airlines,* 467 U.S. 797, 814 (1984). While those concerns exist here, the federal interests in eliminating tort duties from the battlefield are broader than those supporting the discretionary function exception. The combatant activities exception ensures that states cannot impair the federal government's warfighting prerogatives by imposing their own statutory or tort norms on the prosecution of war. *Koohi*, 976 F.2d at 1337. It ensures that military leaders will not have to be concerned with answering for battlefield judgments in a civil court or distracted by a civil action brought by those against whom military force has been directed. *Id.* It ensures equal treatment of persons injured through military conflict. *Id.* at 1334-35. And it represents an acknowledgement that tort law is incompatible with combatant activities, as "war is an inherently ugly business" that necessarily involves the projection of force, including lethal force, on others. *Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10, 18 (D.D.C. 2005). The combatant activities exception requires preemption when there is a significant conflict between a tort duty *and the federal interests served by the combatant activities exception*. *Boyle*, 487 U.S. at 507; *Koohi*, 976 F.2d at 1337. By focusing on the discretionary function exception, Plaintiffs never address this jugular issue.

### F. Combatant Activities Preemption Applies To Claims Based On The Combatant Activities Of Contractors

Plaintiffs seek to export the *Boyle* test for discretionary function preemption to the completely separate analysis of combatant activities preemption, arguing that preemption is unavailable because "a field commander would [not] be permitted to order or sanction the illicit brutality at issue here . . ." Pl. Opp. at 20. Plaintiffs' argument, however, *again* focuses on the federal interests underlying the discretionary function exception, with no consideration of the federal interests embodied in the combatant activities exception. *See id.* (citing *Malesko v. Corr.*

16

*Servs. Corp.*, 229 F.3d 374 (2d Cir. 2000) and *In Re "Agent Orange" Prod. Liab. Litig.*, 373 F. Supp. 2d 7, 99 (E.D.N.Y. 2005), two cases that do not concern combatant activities preemption).

Moreover, Plaintiffs fail to distinguish the Ninth Circuit's decision in *Koohi*. Pl. Opp. at 21. In *Koohi*, the plaintiffs "essentially . . . contend[ed] that the [United States and the weapons manufacturer] were, for differing reasons and to differing degrees, *each responsible for the misidentification of the civilian Airbus as an F-14 and the consequent decision to shoot it down*." 976 F.2d at 1330-31 (emphasis added). Nevertheless, the Ninth Circuit held the claims preempted, without any analysis of contract specifications or the allocation of decision-making authority between the United States and the government contractor. *Id.* at 1336-37. The existence of combatant activities, by itself, was sufficient to require preemption.

Finally, Plaintiffs rely on non-authoritative Department of Defense ("DoD") staff responses to comments on a proposed acquisition regulation rule that has no application to this case. Pl. Opp. at 22. The DoD staff responses clearly state that the proposed rule "retains the current rule of law" and "is consistent with existing laws and rules." *See* 73 Fed. Reg. 16764, 16768 (Mar. 31, 2008) (codified at 48 C.F.R. 252.225-7040). Indeed, the staff comments on which Plaintiffs rely concern the *government contractor defense*, which is not the preemption defense at issue here, and the comments relate solely to *performance-based statements of work*, which are not the types of statements of work at issue here. Moreover, these staff comments were made long after the events at issue in this action. Plaintiffs' heavy reliance on the DoD comments is yet another strategy to avoid addressing whether their claims conflict with the federal interest in conducting a war free from state or foreign tort regulation.

### G.    Plaintiffs' Alien Tort Statute ("ATS") Claims Are Fatally Flawed

The main argument offered by the CACI Defendants regarding Plaintiffs' ATS claims is that ATS claims are not available for claims arising out of an external war. CACI Mem. at 33-

35.  In support of that premise, the CACI Defendants identified both Congress's intent to eliminate tort duties from the battlefield through the combatant activities exception to the FTCA and the longstanding practice that claims for wartime compensation are matters reserved for diplomatic resolution and not for court-ordered compensation.  *Id.*  Having little to say in rebuttal, Plaintiffs respond to this central point in a footnote, but that footnote proves the CACI Defendants' point.  According to Plaintiffs, "that the claims arose in the context of war does not set them outside that class [of cognizable ATS claims]; rather that fact places them squarely within the norms already recognized by the Supreme Court."  Pl. Opp. at 23 n.16.  In support of this dubious proposition, Plaintiffs cite two cases, but *neither* of those cases involved claims arising out of an external war.  Both cases involved tort claims arising out of *internal oppression* by government or quasi-government officials against their own people.  *See In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1469 (9th Cir. 1994) (state of internal martial law); *Kadic v. Karadzic*, 70 F.3d 232, 241-44 (2d Cir. 2005) (Bosnian civil war).  As the Ninth Circuit observed in *Koohi*, the very nature of war involves the infliction of damage on those perceived as enemies, as well as the frequent infliction of injury on those not perceived as enemies, and Congress sought to prevent tort recovery by such victims of war.  976 F.2d at 1335.  It is telling that Plaintiffs contend that ATS claims are available for injuries arising out of an external war, but fail to identify a single instance where such claims have been permitted.

Plaintiffs' opposition is intellectually dishonest in addressing the availability of an administrative remedy.  Plaintiffs assert that there is no administrative remedy *from the CACI Defendants* for their claimed injuries (Pl. Opp. at 26), but ignore that an administrative remedy *for their injuries* is assuredly available.  It is the official position of the United States that it *will* provide compensation under the Foreign Claims Act for bona fide claims of detainee abuse.

CACI Mem. at 11.  Indeed, when Plaintiffs' counsel wrote to the U.S. Army claims Service and urged it to deny such an available remedy *for her own clients*, the Army responded and confirmed that it would provide an administrative remedy if the claimant's allegations of detainee abuse were true.  *Id.*  Plaintiffs assert that they are not required to pursue an administrative remedy if it is futile, but the only apparent reason why seeking an administrative remedy would be futile is if Plaintiffs' claims of abuse are untrue, which is hardly a reason to ignore the requirement for exhaustion.  In addition, Plaintiffs assert that "the U.S. Army Claims Service confirmed to Plaintiff's [sic] counsel that filing a civil suit against Titan Corporation and CACI in federal court was independent from any administrative remedy against the military." Pl. Opp. at 27.  This is flatly untrue.  What the officer from the Army claims service *actually said* was that the filing of a lawsuit "will not affect any recommendation made on the FCA claim of Mr. Saleh."  Pl. Ex. A.  Because pursuit of an administrative claims is the preferred – indeed, only – course for seeking recompense for wartime injuries, it would make no sense whatsoever that a claimant's administrative claim would be reduced or negatively affected if he incorrectly pursued relief in the courts.  Notably, the claims officer said that Mr. Saleh's filing of a lawsuit would not affect his pursuit of an administrative remedy; she did not say that Mr. Saleh's failure to pursue an administrative remedy would have no effect on his lawsuit.

Finally, Plaintiffs, relying on *Kadic*, 70 F.3d at 239, argue that their ATS claims (torture, degrading treatment, and war crimes) are cognizable against private parties.  The D.C. Circuit disagrees that the ATS permits claims of torture against non-state actors.  *See Sanchez-Espinosa v. Reagan*, 770 F.2d 202, 208 (D.C. Cir. 1985).  Moreover, the Ninth Circuit recently rejected the same extension of *Kadic* that Plaintiffs urge here.  In *Abagninin v. AMVAC Chem. Corp.*, ___ F.3d ___, 2008 WL 4330544, at *6 (9th Cir. Sept. 24, 2008), the court rejected an argument that

*Kadic* renders the ATS claim of "crimes against humanity" cognizable against private actors. The court explained that claims of that type are available only against a "State or State-like organization" that exercised "de facto control . . . over the territory." *Id.* at **6-7.[6] Plaintiffs do not allege that the CACI Defendants acted as a "State or State-like organization," nor could they. And if Plaintiffs allege that the CACI Defendants are part of a State-like entity by virtue of their status as agents of the United States, the CACI Defendants would be immune with respect to such a claim. *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 968 (4th Cir. 1992).

### III. CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint.

Respectfully submitted,

*/s/  J. William Koegel, Jr.*

J. William Koegel, Jr.
Virginia Bar No. 38243
John F. O'Connor (admitted *pro hac vice*)
Attorneys for Defendants CACI Premier
    Technology, Inc. and CACI International Inc
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 - telephone
(202) 429-3902 – facsimile
wkoegel@steptoe.com
joconnor@steptoe.com

October 22, 2008

---

[6] Plaintiffs also argue that the ATS is not limited to state actors because piracy historically has been viewed as an international crime committed by private actors. Pl. Opp. at 25. But this analysis is limited to the specific tort of piracy, which is not at issue here.

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 22nd day of October, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Susan L. Burke
> William Gould
> Attorneys for Plaintiff
> Burke O'Neil LLC
> 4112 Station Street
> Philadelphia, PA 19127
> (215) 487-6596 – telephone
> sburke@burkeoneil.com
> wgould@burkeoneil.com


> */s/  J. William Koegel, Jr.*
> _____
> J. William Koegel, Jr.
> Virginia Bar No. 38243
> Attorney for Defendant CACI-Athena, Inc.
> STEPTOE & JOHNSON LLP
> 1330 Connecticut Avenue, N.W.
> Washington, D.C. 20036
> (202) 429-3000 - telephone
> (202) 429-3902 – facsimile
> wkoegel@steptoe.com