# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 08-cv-0827 GBL-JFA ) |
| CACI INTERNATIONAL, INC., *et. al.*, | ) ) |
| Defendants | ) ) ) |

## PLAINTIFFS' MEMORANDUM CONSENTING AND RESPONDING TO CACI'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL MEMORANDUM ABOUT THE SENATE REPORT

Victims do not oppose CACI's motion seeking to file a supplemental memorandum.[1] CACI submitted a 15-page memorandum describing the December 11, 2008 findings of the Senate Armed Services Committee ("Senate Report"). The Senate Report wholly corroborates the victims' allegations, making it clear that there was a conspiracy to torture detainees whose members included high-level military and Executive Branch officials. CACI claims "[t]he Report provides direct and compelling support for the political question argument presented in CACI's motion to dismiss." *Mem.* at 1. CACI reasons that the Report proves the United States adopted torture as a military policy, and therefore the policy cannot be challenged in this Court. This is nonsense.

---

[1] CACI never asked the victims' counsel if they would consent to the supplemental pleading. Instead, CACI apprised counsel via email of its intent to file on the day of filing, and refused counsel's request (also made via email) that CACI delay the filing for a few days to permit victims' response to be due on a date after January 2. CACI refused to extend this professional courtesy, responding via email that it was "important" to file its paper.

Torture is indisputably illegal, both by statute and regulation. *See* 10 U.S.C. § 801 ("the Constitution, laws, and treaties of the United States and the applicable guidance and regulations of the United States Government prohibit the torture or cruel, inhuman, or degrading treatment of foreign prisoners held in custody by the United States"); 18 U.S.C. §§ 2441, 2340A; 22 U.S.C. § 2152; 22 U.S.C. § 2656; 28 U.S.C. § 1350; 42 U.S.C. § 2000dd; 10 U.S.C. § 801; 10 U.S.C. § 950v; 32 C.F.R. § 116; 28 C.F.R. § 0.72. No official in the Executive Branch stands above the rule of law holding a pen that has the power to change existing law simply by adopting policies or writing directives. As the Court of Appeals for the Fourth Circuit expressly cautioned in *Tiffany v. United States*, 931 F.2d 271 (4th Cir. 1991), lawsuits alleging illegal acts by the government are not the same as lawsuits alleging the negligent implementation of lawful military policies.[2] Here, the lawsuit alleges illegal acts by CACI, a for-profit corporation. CACI cannot invoke the political question doctrine merely because its co-conspirators were high-level Executive Branch officials. This Court should deny CACI's motion to dismiss.

## I. THIS LAWSUIT DOES NOT RAISE A POLITICAL QUESTION.

CACI fundamentally misunderstands the political question doctrine. The doctrine does not apply to greater or lesser degree with the level of Executive Branch officials involved.[3] Rather, the doctrine is a separation-of-powers doctrine that turns on whether the conduct at issue in the litigation is permitted to be adjudicated by the judiciary or not.

---

[2] *Accord Gilligan v. Morgan*, 413 U.S. 1, 11-12 (1973)( "we neither hold nor imply that the conduct of the National Guard is always beyond judicial review or that there may not be accountability in a judicial forum for violations of law or for specific unlawful conduct by military personnel, whether by way of damages or injunctive relief").

[3] CACI has been on notice of the complicity of high-level Executive Branch officials since June 2004, when torture victims filed a lawsuit and RICO statement that named Donald Rumsfeld and others mentioned in the Senate Report as co-conspirators. The Senate Report corroborates the victims' allegations.

The political question doctrine prevents judicial overreaching into exclusive Executive Branch functions. *See Marbury v. Madison,* 1 Cranch 137, 164-166, 2 L.Ed. 60 (1803); *Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum Laden Aboard Tanker,* 577 F.2d 1196, 1203 (5th Cir. 1978) ("[T]he genesis of the political question is the constitutional separation and disbursement of powers among the branches of government."); *Baker v. Carr,* 369 U.S. 186, 217 (1962) (separation-of-powers principles require courts to avoid decision "of 'political questions,' not . . . political cases'").

The Supreme Court has repeatedly ruled that not all disputes that touch on the President's war powers and combat raise political questions. For example, the Supreme Court reversed a presidential directive ordering the seizure of steel mills to protect the production of armaments for the Korean War, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) and reviewed on the merits a presidential order resolving the Iranian hostage crisis, *Dames & Moore v. Regan*, 453 U.S. 654 (1981). The Supreme Court ruled in *Hamdi v. Rumsfeld,* 542 U.S. 507 (2004), and again in *Boumediene v. Bush*, 128 S.Ct. 2229, 2277 (2008), that the federal courts are obliged to hear claims arising from the military's operation of detention facilities. Although detaining persons clearly constitutes an "important incident[] of war," *Hamdi,* 542 U.S. at 518 (2004), claims arising from such military detentions are well within the traditional competencies of the judiciary, and are not textually committed to the Executive or Legislative branches.

The Senate Report compellingly spells out in some detail how high-level Executive Branch and military officials conspired to encourage the torture of detainees. CACI argues that the Senate Report therefore serves as further evidence that this litigation intrudes on the exercise of professional military judgment, which was the subject of the Fourth Circuit's *Tiffany v. United States*, 931 F.2d 271 (4th Cir. 1991) decision. CACI argues that because former Secretary of

Defense Rumsfeld and certain members of the military leadership are complicit in the Abu Ghraib torture, the torture of the victims bringing this lawsuit must be considered a non-justiciable challenge to the exercise of military judgments and policies. CACI concludes the Senate Report compels this Court to dismiss this lawsuit for the same reasons the Fourth Circuit dismissed the *Tiffany* lawsuit challenging the negligent implementation of the military's homeland air defense policies.

Although *Tiffany* stands for the proposition that judiciary should not hear cases alleging negligence during the lawful exercise of professional military judgments, CACI errs by failing to recognize that the Executive Branch does not have the power to change the law. The Executive Branch is not free to promulgate and implement policies that contravene the black-and-white text of federal statutes and the Constitution. If the Executive Branch tries to do so, that effort may be adjudicated by the federal courts. *See, e.g., Hamdan v. Rumsfeld,* 548 U.S. 557 (2006) (declaring President's military tribunal order invalid); *Al-Marri v. Pucciarelli*, 534 F.3d 213 (4th Cir. 2008) (*en banc*) (reviewing military detention of enemy combatant) *petition for cert granted* 2008 U.S. LEXIS 8886 (U.S., Dec. 5 2008); *Iqbal v. Hasty,* 490 F.3d 143 (2d Cir. 2007) (reviewing allegations of abuse in post-9/11 detentions); *Padilla v. Rumsfeld,* 352 F.3d 695 (2d Cir. 2003) (reviewing military detention of enemy combatant), *rev'd on other grounds*, *Rumsfeld v. Padilla*, 542 U.S. 426 (2004).

The Fourth Circuit expressly cautioned in *Tiffany* against accepting the very argument now being made by CACI. The Court stated that its political question analysis would be wholly different if the plaintiffs were arguing, as the plaintiffs did in *Berkovitz v. United States,* 486 U.S. 531 (1988), "that the government violated any ***federal laws contained either in statutes or in formal published regulations such as those in the Code of Federal Regulations***." The Court

went on to state "[t]here can be no doubt that the mandate of a federal statute is *a far stronger foundation for the creation of an action duty . . .than [an] administrative directive*." *Tiffany*, 931 F.2d at 280 (citations omitted).

The torture victims allege CACI employees, together with certain military and governmental officials, subjected them to electric shocks, tasering in the head, forcing them to watch the rape of a female prisoner, mock execution, suffocation, sensory deprivation for a full year, and being dragged on the floor by ropes tied to their genitalia.

Congress outlawed such conduct. *See* 18 U.S.C. § 2340A, which defines "torture" as "the act of a person who commits, or conspires or attempts to commit, an act specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control *for the purpose of obtaining information* or a confession, punishment, intimidation, coercion, or any reason based on discrimination of any kind." (emphasis added.); *see also* 18 U.S.C. § 2441 (d) and (e). Anyone engaging in torture may be sentenced to 20 years imprisonment. 18 U.S.C. § 2340A(a).

That CACI and its co-conspirators were supposed to be obtaining information by lawful means from the detainees when they engaged in this egregious conduct does not transform the lawsuit into a political question. The very text of the torture statute assumes as an element of the crime that the misconduct occurred as part of what would otherwise be a lawful effort to obtain information. The law draws a clear line between conduct that may be the subject of military discretion and policy making on the one side, and conduct that had already been deemed illegal. In *Tiffany*, the Fourth Circuit was asked to rule on legal conduct that may have been negligent. Here, the Court is being asked to rule on the amount of damages caused by indisputably illegal

conduct. It matters not at all that some Executive Branch officials thought this nation should be torturing detainees in order to prevent terrorism. Their various ill-advised administrative memoranda and directives did not change the statutory law and regulations prohibiting torture with a mere stroke of the pen.

II. **CACI'S EXECUTIVE BRANCH CO-CONSPIRATORS ARE ABLE TO BE SUED FOR CIVIL DAMAGES.**

CACI has tried to persuade this Court that it must be immunized from the victims' lawsuit because its Executive Branch and military co-conspirators may be able to escape liability. CACI cannot invoke its co-conspirators' immunities. *Richardson v. McKnight,* 521 U.S. 399, 412 (1997).

Further, it is becoming increasingly clear that the military and governmental co-conspirators are not going to be able to evade judicial accountability. On December 15, 2008, the Supreme Court granted *certiorari* and vacated the D.C. Court of Appeals' decision in *Rasul v. Myers,* 512 F.3d 644, 654 (D.C. Cir. 2008). In that lawsuit, detainees released from Guantanamo Bay sued former Secretary of Defense Donald Rumsfeld, General Myers and others, seeking damages for being tortured while detained. The Court of Appeals rejected those claims, reasoning that the Westfall Act precluded the lawsuit from going forward in relation to the ATS claims, and that qualified immunity applied. (Note, CACI, as a private party, cannot rely on the Westfall Act.) The Court of Appeals reasoned, as does CACI, that torture should be considered within the scope of employment for these governmental officials because torture arose from the "function" of interrogation.

The Supreme Court directed the D.C. Court of Appeals to re-consider its holding in light of *Boumediene v. Bush,* 128 S. Ct. 2229 (2008). *Rasul v. Myers,* 77 U.S.L.W. 3106, 3356, 3358 (U.S. Dec. 15, 2008) *vacating and remanding* 512 F.3d 644 (D.C. Cir. 2008). In *Boumediene,*

the Supreme Court held that the federal judiciary was empowered to adjudicate habeas claims brought by prisoners held at Guantanamo Bay. The Supreme Court reasoned that the Constitution protects persons as well as citizens, and permits aliens litigating in our courts to invoke separation-of-powers principles and obtain judicial review of illegal Executive Branch activity. *Boumediene* 128 S. Ct. at 2246.

In short, it may well be that CACI's co-conspirators have to stand trial for torturing prisoners. But regardless of what happens to CACI's co-conspirators, nothing in our jurisprudence permits CACI to evade accountability for its own willful participation in the torture conspiracy. As admitted in a book written by the CACI counsel Bill Koegel and CACI chief executive officer Jack London, at least one CACI employee was bold enough to advise CACI to stop letting CACI employees over in Iraq participate in the ongoing torture conspiracy: "Management has to make an important and painful decision – to cancel the [interrogation] contract, due to the fact that directly or indirectly employees are expected to act in an illegal and morally repulsive manner." *London and the CACI Team, OUR GOOD NAME, Regency (2008), at 108 (quoting an email by an unnamed employee).* Another CACI employee stated it would quit the company rather than "be associated with the immoral animals that commit these types of war crimes and perversions." *Id. (quoting an email by an unnamed employee).* CACI as a company, however, did not walk away from the lucrative torture conspiracy, instead permitting its employees to combine with others to beat, taser, suffocate and otherwise torture defenseless detainees. The Senate Report helps shed light on the scope and breadth of the conspiracy, and may well become an exhibit at trial. But it does not serve as a reason to dismiss the torture victims' lawsuit against CACI. This nation's judiciary is fully competent and able to adjudicate

the proper consequences for those who participated in the torture conspiracy. This Court should deny CACI's motion to dismiss.

    /s/ Susan L. Burke_____
Susan L. Burke (VA Bar #27769)
William T. O'Neil
Counsel for Plaintiffs
BURKE O'NEIL LLC
4112 Station Street
Philadelphia, PA 19127
(215) 487-6596
(215) 482-0874 (facsimile)
sburke@burkeoneil.com

Katherine Gallagher
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

Shereef Hadi Akeel
AKEEL & VALENTINE, P.C.
888 West Big Beaver Road
Troy, Michigan 48084-4736

*Attorneys for Plaintiffs*

January 2, 2009