UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:08-CV-00827-GBL-JFA |
| v. | ) ) ) | |
| CACI INTERNATIONAL INC, et ano., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM**

Denominating themselves not as plaintiffs but as "victims," Plaintiffs' memorandum presumes the Defendants' guilt and concludes that therefore CACI should be denied the ability to assert any defenses. Never mind that the amended compliant fails to connect any allegation of abuse of any Plaintiff to anyone affiliated with CACI. No matter that the Senate Armed Services Committee Executive Summary ("Report") makes no mention of CACI. Irrespective of the fact that the lynchpin of the amended complaint – the so-called "torture conspiracy" – fails to state a claim plausible on its face. These issues aside, Plaintiffs agree that the Report is relevant to the political question doctrine before the Court. Plaintiffs, however, spin the Report, asserting that it shows that government and military "co-conspirators" authorized torture. Since torture is illegal, the story continues, Plaintiffs claim they may challenge government interrogation policies and practices in this action. They are demonstrably wrong.

## I. THE SENATE ARMED SERVICES COMMITTEE REPORT CONFIRMS THE NON-JUSTICIABILITY OF THIS ACTION

Plaintiffs' response to CACI's supplemental memorandum confirms the non-justiciability of this action based upon the political question doctrine. Tellingly, Plaintiffs – Iraqis detained as hostile enemy forces by the U.S. military – acknowledge that they are in fact challenging the interrogation policies formulated and implemented by executive branch and military officials. Plaintiffs' memorandum repeatedly characterizes these government officials as "co-conspirators," asserts that their interrogation policies and practices were unlawful, and verifies that the Plaintiffs intend to assert that the policies and the military's conduct of interrogations were illegal: "The Senate Report . . . mak[es] it clear that there was a conspiracy to torture detainees whose members included high-level military and Executive Branch officials." Pl. Mem. at 1 "The Executive Branch is not free to promulgate and implement policies that contravene the black-and-white text of federal statutes in the Constitution." *Id*. at 4. "Their [executive branch officials] various ill-advised administrative memoranda and directives" regarding interrogation policies "did not change the statutory law . . . " *Id.* at 6. "The Senate Report helps shed light on the scope and breath of the conspiracy, and may well become an exhibit at trial." *Id.* at 7. These statements only confirm that issues of official complicity in the actions of which Plaintiffs complain not just permeate, but dominate, this action.

It is indisputable that Plaintiffs have every intention of contesting the wisdom, propriety and legality of the interrogation policies adopted by the United States for use in the war in Iraq and challenging the actions of the military in conducting interrogations. It is difficult to imagine a scenario more appropriate for the jurisdictional bar of the political question doctrine.

Plaintiffs attempt to evade the doctrine by simply *assuming* that the interrogation policies of which they complain – policies admittedly crafted by executive branch and military personnel

– contravene federal statutes and the constitution. That is not, however, an assumption in which the Court can indulge. Indeed, the wisdom of those policies and the propriety of the actions of the military in conducting interrogations is precisely what this Court would have to adjudicate and it is because of this that the political question doctrine bars this action. Quite simply, ***Plaintiffs want to obtain judicial review, through tort law, of the strategy and tactics adopted by the United States to interrogate individuals detained as enemies in the war in Iraq.*** Worse yet, Plaintiffs seek to have the Court engage in this exercise even though they do not assert any claims based on alleged violations of federal statutes or constitutional rights (rights Plaintiffs do not possess). This is surely precluded by the political question doctrine.

Plaintiffs offer a new argument regarding the application of *Tiffany v. United States,* 931 F.2d 271 (4th Cir. 1991). Specifically, Plaintiffs now assert that *Tiffany* does not control where plaintiffs assert that the government violated federal statutes. This misrepresentation of *Tiffany* is flawed in numerous respects.

First, there is no claim in the amended complaint that the government violated any federal laws. And even if there were, and even if it were not barred by the political question doctrine, the Court cannot adjudicate that claim in the absence of the United States as a party.

Second, there is no claim against the CACI Defendants based on the violation of any federal statute. Accordingly, the Plaintiffs' suggestion that the political question analysis would be different if Plaintiffs asserted that the government had violated federal statutes or formal regulations is quite beside the point.

Third, and most important, the Fourth Circuit held in *Tiffany* that, even if regulations provided a standard against which a defendant's conduct could be measured, that conclusion would not avoid the prohibitions of the political question doctrine. 271 F.2d at 279. In fact, the

court of appeals emphasized that the many factors underlying the prosecution of war, including military judgments, decisions and actions, still foreclosed the plaintiffs' claims: "The presence of regulations does not change the reality that legislative and executive oversight of this particular military mission is to be preferred to that of the judiciary." *Id.* at 279. Nothing in *Tiffany* suggests the result is different if a statute is invoked.

Plaintiffs, however, suggest that there is a statute against which their claims of torture can be measured. Plaintiffs assert that Congress has outlawed torture, citing 18 U.S.C. § 2340A, which criminalizes torture committed outside the United States. Significantly, Plaintiffs fail to tell the Court about § 2340B, which provides: "Nothing in this chapter shall be . . . construed as creating any substantive or procedural rights enforceable by law by any party in any civil proceeding." Clearly, there is no right of action to recover for acts encompassed by § 2340A in a civil proceeding and that statute provides no standard against which Plaintiffs' claims may be measured. *See Doe v. Broderick,* 225 F.3d 440, 44748 (4th Cir. 2000) (violation of a federal criminal statute does not create a private right of action).[1]

## II. THE REMAND OF *RASUL V. MYERS* IS IRRELEVANT TO CACI'S IMMUNITY ARGUMENT

While CACI's supplemental memorandum addressed only the political question doctrine, Plaintiffs' response challenges CACI's assertion of immunity. Specifically, Plaintiffs argue that the alleged executive branch and military co-conspirators may not themselves have universal immunity, and that somehow dilutes CACI's defense.

---

[1] Plaintiffs cite to emails referenced in a book authored by CACI's chairman and former CEO, *Our Good Name,* asserting that those emails advised the company that its employees were participating in a torture conspiracy. Mem. at 7. Not true. The passage makes clear that these emails were sent in response to the Abu Ghraib prison scandal becoming public and that the senders had "mistakenly concluded that the company was, in fact, complicit in abuses at Abu Ghraib." *Our Good Name* at 108. (And contrary to Plaintiffs' assertion, undersigned counsel was not an author of *Our Good Name*).

4

While Plaintiffs' amended complaint alleges a hopelessly vague conspiracy between CACI personnel and executive branch and military officials, Plaintiffs have not sued any of those government officials. The reason is obvious: they are immune from Plaintiffs' tort claims. Relying on *Mangold v. Analytic Services, Inc.*, 77 F.3d 1442 (4th Cir. 1996), the CACI Defendants have demonstrated their entitlement to similar immunity from Plaintiffs' tort claims.

Plaintiffs do not challenge the viability or force of *Mangold*. Rather, they now argue that the purported government co-conspirators might lose immunity in the D.C. Circuit for damage claims brought by Guantanamo detainees. This is, so the theory goes, because the Supreme Court recently vacated and remanded *Rasul v. Myers,* 512 F.3d 644 (D.C. Cir. 2008), for reconsideration in light of *Boumediene v. Bush,* 128 S. Ct. 2229 (2008). Plaintiffs assert that *Rasul* rejected constitutional claims brought by Guantanamo detainees based upon Westfall Act immunity, and that the D.C. Circuit was told to reconsider that holding in light of *Boumediene*. This misstates both the holding in *Rasul* and the Supreme Court's remand. *Boumediene* provides no basis for challenging the immunity ruling in *Rasul* or for the D.C. Circuit to change the law of that circuit on immunity. And in any event, the law of the D.C. Circuit does not control here.

In *Rasul,* the D.C. Circuit rejected actions brought by four former Guantanamo detainees against the then Secretary of Defense and senior military officers. The complaint asserted violations of the Alien Tort Statute (ATS), the Geneva Conventions, the Fifth and Eighth Amendments of the United States Constitution, as well as the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000(bb) et seq.[2] The plaintiffs sought damages for their alleged illegal detention and torture at Guantanamo, where they had been in prison. The suit charged that the

---

[2] One of the plaintiffs, Shafiq Rasul, was the lead plaintiff in *Rasul v. Bush,* 542 U.S. 507 (2004), in which the Supreme Court held that U.S. courts have jurisdiction under the federal habeas corpus statute to hear lawsuits filed by aliens detained at Guantanamo.

5

Secretary of Defense and the military chain of command approved interrogation practices they knew to be in violation of U.S. and international law.

The district court held that the Federal Tort Claims Act provided the exclusive remedy for the defendants' allegedly tortious conduct and granted the defendants' motion to dismiss the ATS and Geneva Convention claims. The district court also dismissed the constitutional claims, holding that the defendants were entitled to immunity from suit. It denied, however, the motion to dismiss the RFRA claim.

On appeal, the Court of Appeals for the D.C. Circuit affirmed the district court's dismissal of the ATS, Geneva Convention and constitutional claims, and reversed the denial of the motion to dismiss the RFRA claim, holding that the RFRA did not apply to Guantanamo detainees. In affirming the dismissal of the constitutional claims, the court of appeals referred to its then-recent decision in *Boumediene v. Bush,* 476 F.3d 981, 984 (D.C. Cir. 2007), that "the Constitution does not confer rights on aliens without property or presence within the United States." But, the Court said, "[e]ven assuming *arguendo* the detainees can assert their Fifth and Eighth Amendment claims, those claims are nonetheless subject to the defendants' assertion of qualified immunity." 512 F.3d at 665.[3]

---

[3] The Court of Appeals confirmed the immunity ruling of the district court that the defendants, all of them federal officials, were acting within the scope of their employment at the time of the incident out of which the claim arose. The court held that the underlying conduct – the detention and interrogation of suspected enemy combatants – was the type of conduct the defendants were employed to engage in:

> [T]he detention and interrogation of suspected enemy combatants is a central part of the defendants' duties as military officers charged with winning the war on terror. . . . While the plaintiffs challenged the methods the defendants used to perform their duties, the plaintiffs do not allege that the defendants acted as rogue officials or employees who implemented a policy of torture for reasons unrelated to the gathering of intelligence. Therefore, the alleged tortious conduct was incidental to the defendants' legitimate employment duties.

6

Subsequent to the D.C. Circuit's decision in *Rasul,* the Supreme Court decided *Boumediene.* In *Boumediene,* the Supreme Court held only that Guantanamo detainees have a procedural right under the Suspension Clause of Article I of the Constitution to file a habeas petition and receive judicial review of "both the cause for detention and the Executive power to detain." 128 S. Ct. at 2269. The Court in *Boumediene* expressly emphasized that it did not address any "claims of unlawful conditions of treatment or confinement." *Id.* at 2274. In fact, the Court noted that "[i]t bears repeating that our opinion does not address the content of the law that governs petitioner's detention." *Id.* at 2277. Rather, "[t]hat is a matter yet to be determined," because the Court "[h]eld" only "that petitioners may invoke the fundamental procedural protections of habeas corpus." *Id.*

The Court's ruling was predicated upon its conclusion that, although the United States had no "sovereignty" over Guantanamo, the base was nevertheless leased and under the complete and total control of the United States. *Id.* at 2261-62. This was critical because the location of a non-resident alien and the alien's contacts with the United States are determinative of constitutional rights. *See Johnson v. Eisentrager,* 339 U.S. 763, 778 (1950) (holding that non-resident aliens detained at military prison in Germany had no Fifth Amendment rights.)

*Boumediene* did not address immunity in any way, shape or form. Notably, when Plaintiffs opposed CACI's motion to dismiss on immunity grounds, they never cited *Boumediene* – confirming that it has no relevance to the immunity issue. Rather, *Boumediene's* only possible relevance is to whether aliens once held at Guantanamo have any constitutional rights under the Fifth or Eighth Amendments. Plaintiffs here assert no such rights; their reference to the remand in *Rasul* is of no moment.

---

*Rasul,* 512 F.3d at 658-59 (citations omitted).

7

On December 15, 2008, the Supreme Court vacated the ruling in *Rasul* and sent it back "for further consideration in light of *Boumediene v. Bush*." On December 22, 2008, the D.C. Circuit ordered the parties in *Rasul* to file supplemental briefs "addressing the effect, if any, of the holding in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008), on this Court's opinion in *Rasul v. Myers,* 512 F.3d 644 (D.C. Cir. 2008), in light of Circuit precedent." That supplemental briefing is scheduled to conclude on February 9, 2009.

Under conventional procedure for adjudicating immunity claims, the D.C. Circuit will first need to decide whether the plaintiffs in *Rasul* have any constitutional rights under the Fifth or Eighth Amendments. *Saucier v. Katz,* 533 U.S. 194 (2001).[4] If the answer is in the affirmative, the court will then address whether they were recognized at the time of the alleged activities. To overcome immunity, the rights the violation of which is claimed must have been clearly established at the time of the alleged violations. *Rasul,* 512 F.3d at 28 (*quoting Harlow v. Fitzgerald,* 457 U.S. 800 (1982) and *Mitchell v. Forsyth,* 472 U.S. 511 (1985)).

Whatever the outcome of the remand in *Rasul* in the D.C. Circuit, the immunity defense in this action – where Plaintiffs do not even assert constitutional claims – is governed by *Mangold*. The straightforward application of that precedent requires dismissal of this action.

---

[4] In *Pearson v. Callahan,* 494 F.3d 891 (10th Cir. 2007), *cert. granted*, Oct. 6, 2008, No. 07-751, the Supreme Court *sua sponte* directed the parties to brief and argue "[w]hether the court's decision in *Saucier v. Katz,* 533 U.S. 194 (2001), should be overruled." *Saucier* has been widely criticized because it has resulted in judges being required to adjudicate difficult constitutional questions, even in cases where immunity clearly applied.

8

Respectfully submitted,

*/s/   J. William Koegel, Jr.*

---

J. William Koegel, Jr.
Virginia Bar No. 38243
John F. O'Connor (admitted *pro hac vice*)
*Attorneys for Defendants CACI Premier
    Technology, Inc. and CACI International Inc*
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 - telephone
(202) 429-3902 – facsimile
wkoegel@steptoe.com
joconnor@steptoe.com

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 8th day of January, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

        Susan L. Burke
        William Gould
        Attorneys for Plaintiff
        Burke O'Neil LLC
        4112 Station Street
        Philadelphia, PA 19127
        (215) 487-6596 – telephone
        sburke@burkeoneil.com
        wgould@burkeoneil.com


        */s/ J. William Koegel, Jr.*

        J. William Koegel, Jr.
        Virginia Bar No. 38243
        *Attorneys for Defendants CACI Premier Technology, Inc. and CACI International Inc*
        STEPTOE & JOHNSON LLP
        1330 Connecticut Avenue, N.W.
        Washington, D.C. 20036
        (202) 429-3000 - telephone
        (202) 429-3902 – facsimile
        wkoegel@steptoe.com