IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) C.A. No. 08-cv-0827 GBL-JFA<br>) |
| CACI INTERNATIONAL, INC., *et. al.*, | )<br>) |
| Defendants | )<br>)<br>) |

**PLAINTIFFS' MEMORANDUM REBUTTING CACI'S FACTUAL
MISREPRESENATIONS MADE DURING ORAL ARGUMENT**

CACI, a for-profit corporation, seeks to shield itself from liability for torturing innocent and mistakenly detained civilians by invoking two legal doctrines (political question and immunity) designed to protect the United States' interests. Slamming shut the courthouse doors to victims of corporate torturers – at this early juncture without the benefit of discovery[1] -- would be a radical and improper result not supported by the existing decisional law of the Supreme Court or this Circuit. Indeed, as the Supreme Court noted in *Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 (2004), "for purposes of civil liability, the torturer has become -- like the pirate and slave trader before him -- *hostis humani generis*, an enemy of all mankind." (quoting *Filartiga v. Pena-Irala*, 630 F.2d 876, 890 (2d Cir.1980)

      CACI constructs a legal argument resting on the foundation of five factual falsehoods that are odds with the allegations in the Amended Complaint.

---

[1] *McMahon v. Presidential Airways, Inc.,* 502 F.3d 1331, 1359-62 (11th Cir. 2007) (inappropriate to dismiss a case before discovery on the mere chance that a political question may eventually present itself).

- 1 -

***First***, CACI challenges the innocence of Plaintiffs and claims the conduct at issue can be deemed to have occurred on a battlefield or in support of combat. That is simply not true. The four victims were not prisoners of war detained from the battlefield. They were innocents who were mistakenly swept up by military raids, and detained not as prisoners of war but as civilian security detainees. At the time of detention, none of the four plaintiffs was engaged in an armed conflict with United States forces. They were not "enemy combatants" fighting United States troops. None was armed or engaged in insurgent or military activities. Rather, each was an Iraqi civilian at home or going about his ordinary daily activities, who was detained for questioning.[2] All four victims ultimately were released by the military without any charges whatsoever being filed.

They are not unique. As the Honorable James R. Schlesinger found and published in the *Independent Panel To Review DoD Detention Operations*, (August 24, 2004), at p. 29, the military, lacking sufficient interpreters, "reverted to rounding up any and all suspicious-looking persons – all too often including women and children. The flood of incoming detainees contrasted sharply with the trickle of released individuals." The military estimates that the vast majority of those detained were such innocents. Plaintiffs allege their innocence in the Amended Complaint, which must be taken as true at this early stage in the proceedings.

Nor was Abu Ghraib prison part of the battlefield. As noted in the oral argument, the Geneva Conventions require that war-time prisons be established outside of combat, outside the

---

[2] Messrs. Al-Shimari and Al-Zubae were taken from their homes. Mr. Rashid was leaving a local store on his way home from the market when a roadside bomb exploded. Mr. Rashid and others who were near the explosion were rounded up and detained. Mr. Al-Ejaili was a reporter covering a story for an international news organization at the time of his arrest. After learning that there had been an explosion, Mr. Al-Ejaili headed to the scene and began videotaping the area and those who had been injured. He was detained despite showing his press credentials.

battlefield. *See* Fourth Geneva Convention relative to the Protection of Civilian Persons in Time of War, Geneva, 12 August 1949 Art 83 ("[t]he Detaining Power shall not set up places of internment in areas particularly exposed to the dangers of war") and Arts. 84-88; Third Geneva Convention relative to the Treatment of Prisoners of War. Geneva, 12 August 1949, Art. 23. The Plaintiffs here were not harmed by an activity that arose out of actual or perceived immediate hostility with enemy forces. *Compare Minns v. United States*, 974 F. Supp. 500 (D. Md. 1997); *Clark v. United States*, 974 F. Supp. 895 (E.D. Tex.); *Rotko v. Brams*, 338 F. Supp. 46 (D. Conn. 1971). Plaintiffs were never part of the war. They are all innocent bystanders who were mistakenly rounded up by the military, and ended up being taken to the Abu Ghraib prison and tortured by CACI corporate employees.

*Second*, CACI claims this action is an "unmanageable" challenge to the military's conduct of the "interrogation function." That is simply not true. In a cynical effort to evade liability, CACI tries to conflate torture and interrogation. But by CACI's own admission, there is a critical difference between the two: "The definition of these terms [interrogation and torture] may simply be semantics to some, but there is a crucial difference. Interrogation is a process of questioning to obtain useful and reliable information, in a ***lawful*** manner. Torture is a means whereby extreme suffering is intentionally inflicted." London and the CACI Team, OUR GOOD NAME, Regency (2008), at 66 (emphasis added). CACI cites, among other sources, Army Field Manual 34.52, September 1992, which defined "interrogation" as "the process of questioning a source to obtain the maximum amount of usable information. The goal of any interrogation is to obtain useable and reliable information, in a ***lawful*** manner and in a minimum amount of time, and to satisfy intelligence requirements of any echelon of command." (Emphasis added.)

There are obvious reasons why the United States always and expressly defines the interrogation function to exclude torture. Such definitions recognize that humans placed in control of prisoners, in confrontational situations, have a tendency towards violence. *See, e.g.,* the Schlesinger Report at 29, which noted that "[s]ome individuals seized the opportunity provided by this environment to give vent to latent sadistic urges." *See also* the landmark Stanford study (quoted by the Schlesinger Report at Appendix G) by Haney, Banks and Zimbardo, entitled "Interpersonal Dynamics in a Simulated Prison." The United States military needs the judicial system to respect its intent to exclude torture from the range of permissible military interrogation techniques. Indeed, this same American value is enshrined in the Fifth Amendment, the original anti-torture legislation.

CACI cannot try to categorize its misconduct as within the "interrogation function" when the conduct alleged cannot reasonably be viewed as intended to obtain useful and reliable information. Nothing written or ordered by the military permits CACI to conflate the acts alleged in the Amended Complaint with the interrogation function for which CACI was hired. *See, e.g.*, the military's interrogation rules of engagement at Abu Ghraib, which are not classified and are appended as Exhibit A to Plaintiffs' Opposition to a Stay of Discovery. Rather, the conduct, if proven, clearly is an unlawful means whereby extreme suffering is intentionally inflicted. The instructions to the jury here are straightforward: Did CACI subject the victims to electric shocks, tasering in the head, being forced to watch the rape of a female prisoner, mock execution, suffocation, sensory deprivation for a full year, and being dragged on the floor by ropes tied to their genitalia? A simple yes or no as to whether CACI caused this conduct to

occur is all the jury must decide.³  There is no law of any state or nation that permits such

conduct. ⁴

    This dramatic difference between torture and interrogation is what precludes CACI from relying on the Fourth Circuit's *Tiffany v. United States*, 931 F.2d 271 (4th Cir. 1991) decision. There, the United States military was being sued.  (Here, the United States military, well aware of the ongoing proceedings, has not sought to intervene.)  As a result, the Court was appropriately concerned about the judiciary inserting itself into, and potentially circumscribing, the military's ability to defend this nation by reviewing the actions of government employees (not corporate employees) engaged in operating the national air defense system known as NORAD.⁵  *Tiffany* and its progeny stand for the proposition that judiciary should not intrude on

---

³ There are various defenses, of course, as there are to any acts.  Here, CACI is free to defend itself at trial by claiming it engaged in these horrific acts as part of its contract with the United States military, and therefore is able to invoke the affirmative *Boyle* defense.  This defense is conditional, and does not protect all contractors operating in Iraq, only those who are being sued for actions done at the government's behest. *See e.g. McMahon v. Presidential, 502 F.3d 1331 (11th Cir. 2007);Lessin v. Kellogg Brown & Root*, 2006 WL 3940556 at *5 (S.D.Tex. June 12, 2006); *Whitaker v. Kellogg, Brown and Root*, 444 F. Supp. 2d 1277 (M.D. Ga. 2006); *Fisher v. Halliburton*, 390 F.Supp.2d 610, 615-16 (S.D. Tex. 2005). But CACI is unlikely to prevail in its effort to hide behind the military because the military clearly and repeatedly told CACI not to torture detainees.  Further, as discussed below, even if ordered to torture by the military, absolutely nothing prevented CACI from leaving Iraq rather than being complicit in the torture conspiracy.

⁴ For example, United States statutory law (18 U.S.C. § 2340A) defines "torture" as "the act of a person who commits, or conspires or attempts to commit, an act specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control for the purpose of obtaining information or a confession, punishment, intimidation, coercion, or any reason based on discrimination of any kind."  Federal common law definitions (derived from international laws and used by the military) are to same effect.

⁵ Indeed, even there, the Court of Appeals for the Fourth Circuit cautioned against an overexpansion of the immunity even when invoked not by a private party, but by the military itself:  "We do not hold, of course, that any time a branch of the military asserts a national defense interest to justify its acts, the court must avert its eyes. The military does not enjoy a

the exercise of professional military judgments. *See also Minns v. United States*, 155 F.3d 445, 451 (4th Cir. 2005) (disallowance of claims under the Military Claims act by military courts not reviewable); *Hawes v. United States*, 409 F.3d 213 (4th Cir. 2005) (Marine's discretion in maintaining military training equipment).

But this *Tiffany* doctrine provides no support whatsoever for corporate acts that are prohibited by the military. How does CACI torturing detainees constitute an exercise of military discretion? The military told them not to torture detainees, yet they did so anyway. This action seeks to hold a for-profit corporation, not the United States' government, accountable because its employees, rather than engaging in the interrogation function for which they had been hired, brutally tortured defenseless detainees. As a result, the action does not challenge any decisions made by the Executive. *See, e.g., Lane v. Halliburton*, 529 F.2d 548, 558-560 (11th Cir. 2008) (denying motion to dismiss on political question grounds because fact that acts are "set against the backdrop of United State military action in Iraq" does not necessarily implicate decision textually committed to the Executive, such as employing use of force or deploying troops in foreign land, or constitute a "direct challenge[] to actions taken by a coordinate branch of government") Unlike the provisions for the nation's security and defense at issue in *Tiffany*, torturing innocent civilian detainees is not a governmental endeavor entitled to judicial deference.

---

blanket exemption from the need to proceed in a non-negligent manner. When conducting training exercises, for example, or acting in a civilian arena, national defense interests may be more remote and the military faces different restrictions. *See, e.g., Peterson v. United States, 673 F.2d 237 (8th Cir. 1982)* (B-52 plane on training mission liable for flying too low in altitude); *Ward v. United States, 471 F.2d 667 (3d Cir. 1973)* (Air Force might be liable for negligently causing sonic booms)."

Given that the military has defined torture as ***never*** furthering, and indeed harming, the governmental interrogation function, why should CACI get the benefit of its self-serving and wholly unproven claim that CACI employees' egregious misconduct was done to further the interrogation function? CACI in essence argues that since CACI employees were deployed to Iraq to conduct war-time interrogations, any challenge to its corporate conduct in Iraq constitutes a challenge to the military's interrogation function. CACI's legal analysis, if credited, would permit CACI employees to repeatedly rape detainees, call that interrogation, and enjoy immunity from suit. CACI has no evidentiary support for its factual claim that CACI employees were torturing detainees as a means of furthering the military's interrogation function.

The sad fact that some members of the military tortured detainees along with CACI corporate employees does not override or undercut this fundamental point that CACI lacks even a shred of evidence to support its claim that CACI torture furthered the United States' military interrogation needs or other interests. As noted in the oral argument, it is black-letter law that the immunities flowing to government employees are not accorded to private actors who conspire with them. *See Richardson v. McKnight*, 521 U.S. 399, 412 (1997); *Wyatt v. Cole*, 504 U.S. 158, 168-69 (1992). Insulating CACI from liability here harms (rather than benefits or further) the United States' interrogation function. Permitting the action to go forward does not run the risk of judicial intrusion on the military's war-making prerogatives. The Court is not being asked to consider the *bona fides* or implementation of any military policy. Rather, the Court is being asked to decide (or more precisely, preside as an American jury decides) whether an American corporation subjected four men to electric shocks, tasering in the head, being forced to watch the rape of a female prisoner, mock execution, suffocation, sensory deprivation for a full year, and being dragged on the floor by ropes tied to their genitalia.

***Third***, CACI claims the military is going to keep confidential all the relevant documents, which somehow CACI thinks exist and will prove that the military told CACI to taser, suffocate, shock with electricity, rape, beat and otherwise harm these four men.  Plaintiffs do not believe any such directives exist, but even more importantly, directly dispute CACI's allegation that the military intends to throw the cloak of secrecy over the events at Abu Ghraib.  As the Court of Appeals for the Fourth Circuit recognized in CACI v. Rhodes, *CACI Premier Technology, Inc. v. Rhodes*, __ F.Supp.3d___, No. 06-2140, 2008 WL 2971803 *1 (4th Cir. Aug. 5, 2008), the military itself views these events as "shameful events" perpetrated by "a small group of morally corrupt soldiers and civilians" that "violated U.S. criminal law" or were "inhumane and coercive without lawful justification," *id.* at * 4 (quoting investigative report by Major General George Fay).  As set forth in the Declaration provided to the Court during oral argument, the military has made clear that, contrary to CACI's implications, it is not trying to cover up what happened at Abu Ghraib prison.

***Fourth***, CACI claims the gravamen of the victims' claim is a challenge to the Central Intelligence Agency's ("CIA") "ghost detainee" program for 'high-value" prisoners.  Plaintiffs dispute that fact.  There are no CIA "ghost detainees" at issue here.  All four of the victims have prisoner identification numbers assigned by the military.  One man, Mr. Rashid, was hidden from the Red Cross but not by the CIA.  After CACI and the co-conspirators beat him to a pulp, they hid him from the Red Cross to prevent that entity from discovering how badly he had been beaten.  The fact that CACI and the co-conspiring soldiers used the term "ghost detainee" (which has been coined by commentators to describe the CIA program) when they talked to each other

about their own misconduct in hiding prisoners from the Red Cross does not somehow convert their own wrongful actions into CIA actions.[6]

***Fifth***, CACI claims that no civil claims can be brought against CACI's court-martialed and convicted co-conspirators such as Charles Graner and Ivan Frederick. Plaintiffs dispute that fact. It has been the law of this land since 1900 that civilians harmed by military members may bring tort actions. *The Paquete Habana*, 175 U.S. 677 (1900). For example, Vietnamese survivors of the My Lai massacre brought suit against the culpable soldiers and officers, albeit thirty-two years after the fact. *Hoan Van Tu et al. v. Major General Koster et al.,* 364 F.3rd 1196 (10th Cir. 2004). Neither the District Court nor the Court of Appeals for the Tenth Circuit barred the suit from proceeding merely because the defendants were military. Rather, the Courts held that the statute of limitations barred the suit. In such suits, the United States may well be able to substitute itself as the party and obtain a dismissal if it deemed doing so necessary to preserve the important exclusive military control over military discipline and chain of command,[7] that result is not automatic. Indeed, the United States may well decide that the nation's interest in stopping torture (which is enshrined in legislation such as the Torture Victim Protection Act)

---

[6] CACI also claims its employees' improper actions were done to persons other than these victims, but Plaintiffs dispute that fact.

[7] Military discipline has no civilian counterpart, and does not apply to CACI employees. *See, e.g., Orloff v. Willoughby*, 345 U.S. 83, 94 (1953)(judicial deference only applies to those "lawfully inducted" into the Army); *United States v. Brown*, 348 U.S. 110, 112 (1954); *Parker v. Levy*, 417 U.S. 733, 743 (1974); *Schlesinger v. Councilman*, 420 U.S. 738, 757 (1975)("the military must insist upon a respect for duty and a discipline without counterpart in civilian life."); *Chappell v. Wallace*, 462 U.S. 296, 300 (1983)("no military organization can function without strict discipline and regulation that would be unacceptable in a civilian setting.").

argues in favor of letting the case proceed. Here, importantly, the United States military has ***not*** sought to intervene in either this action or the *Saleh* action, which was filed in June 2004.[8]

And here, even more importantly, unlike soldiers who cannot leave Iraq without formal discharge from the military, CACI employees are free to quit and leave Iraq at any time. Indeed, one CACI employee did exactly that -- he observed torture by some of the military conspirators, and immediately quit, telling CACI management that he was unwilling to participate in the egregious mistreatment of detainees.[9] Civil tort liability is designed to ensure that CACI does not turn a deaf ear to such law-abiding employees (as CACI did here). As Judge Weinstein put it so eloquently in the Agent Orange case,

> We are a nation of free men and women habituated to standing up to government when it exceeds its authority….Under the circumstances of the present case, necessity is no defense. ***If defendants were ordered to do an act illegal under international law they could have refused to do so, if necessary by abandoning their businesses.***

*In Re "Agent Orange" Product Liability Action*, 373 F.Supp.2d 7, 99 (E.D.N.Y. 2005).

Civil tort liability is designed to ensure there are financial disincentives that will cause CACI and other corporations to stop employees like DJ Johnson and "Big Steve" Stefanowicz from giving

---

[8] Moreover, even if CACI's military co-conspirators were immune from suit, it would not follow that civilian contractors were also immune. Absolute immunity for federal employees is governed by the Westfall Act, 28 U.S.C. §2679 (1988), a federal statute that CACI acknowledges does not apply to independent contractors. *CACI Mem. In Support of Motion to Dismiss at 14*; *see also Mangold v. Analytic Services, Inc.*, 77 F.3d 1442, 1447 n.4 (4th Cir. 1996). The Westfall Act immunizes a federal employee from state tort suits "for acts committed within the scope of the employee's office or employment, regardless of whether the employee's discretion was involved," but "[a]t federal common law, absolute official immunity remains limited to discretionary functions." *Mangold*, 77 F.3d at 1447 n.4. Unlawful torture by definition is not a discretionary function, and as such cannot be a basis for a contractor's absolute immunity. *See Plaintiffs' Opp. to CACI's Motion to Dismiss at 9-12*.

[9] The name of this CACI employee is not on the public record as a result of the protective order in the *Saleh* action.

vent to latent sadism and tasering, beating, electrocuting, raping, suffocating and otherwise torturing innocent Iraqis who were mistakenly detained.

To insulate CACI from tort liability harms, not benefits, the United States and its military. Such a result cannot be squared with any existing legal doctrine. It should give this Court pause that the Department of Defense, the entity CACI claims to be benefitting, spoke directly and clearly against such a result. That is, when the Department adopted a new regulation regarding defense contractors, the Department voiced unequivocal support for "the current rule of law, holding contractors accountable for the negligent or willful actions of their employees, officers, and subcontractors."[10] The Department explained that even the conditional *Boyle* immunity (which must be proven as an affirmative defense at trial) should *not* be available to service contractors such as CACI. The Department explained [t]he public policy rationale behind *Boyle* does not apply when "the Government does not, in fact, exercise specific control over the actions and decisions of the contractor or its employees or subcontractors*.*" The Department cautioned: "***to the extent that contractors are currently seeking to avoid accountability to third parties for their own actions by raising defenses based on the sovereignty of the United States, this rule should not send a signal that would invite courts to shift the risk of loss to innocent third parties***." *Id.* [11]

---

[10] Defense Federal Acquisition Regulation Supplement; Contractor Personnel Authorized To Accompany U.S. Armed Forces, 73 Fed. Reg. 16764, 16768 (Mar. 31, 2008).
[11] Judge Robertson's ruling predated, but conformed to, the Department's analysis. In *Saleh*, Judge Robertson held that conditional *Boyle* immunity was not available to CACI because CACI could have stopped its employees from torturing Plaintiffs. CACI's employees were not under the exclusive control of the military.

## CONCLUSION

CACI is asking this Court to find demonstrable corporate misconduct is unable to be cabined in by the rule of law. To achieve that staggering objective, CACI simply concocts – without any supporting evidence -- five foundational facts, and then argues those facts compel this Court to immunize CACI, a for-profit corporation. None of the existing and controlling jurisprudence requires this Court to accept without skepticism CACI's self-serving characterizations, and shift the risk of loss to innocent third parties. This action can be tried to a jury in the Eastern District of Virginia without any review or analysis of the legitimacy of the military's interrogation policies at Abu Ghraib or the Central Intelligence Agency's extraordinary rendition program.[12] This is an action about corporate, not governmental, misconduct. Slamming the courthouse doors in the torture victims' faces here, at this very early juncture, would not be following precedents set by the higher courts. Rather, it would be letting CACI's self-serving characterization of key facts prevail on a Rule 12(b)(6) motion. Such self-interested and unsupported testimony would not even be able to support a motion for summary judgment, let alone a Rule 12(b)(6) motion to dismiss. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000) (summary judgment cannot be based on testimony from interested parties); s*ee also Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 418-19 (D. Md 2006),

---

[12] In its Reply, CACI suggests Plaintiffs' briefing was a sloppy "cut and paste" job that responded to cases not cited by CACI. *See CACI Reply at fn. 1*. In fact, CACI, not Plaintiffs, are failing to read CACI's briefing. The cases that Plaintiffs identify are indeed cited in the CACI brief at the jump cites provided by Plaintiffs. CACI simply overlooked them, and failed to identify them in the table of authorities. Although Plaintiffs would not normally view such minor oversight as something to bring to the Court's attention, Plaintiffs are compelled to respond to counter CACI's attempt to portray Plaintiffs' counsel as sloppy lawyers and CACI counsel as the credible source on factual issues. CACI plays fast and loose with the pivotal facts in an effort to obtain legally-unmerited immunity from suit.

*aff'd* 266 Fed. Appx. 274 (4th Cir. 2008) (must permit discovery before accepting factual representations outside the four corners of the complaint). At the very least, this Court should allow discovery to permit a record to be established on the facts underlying the legal doctrines. The Court is always free to dismiss the action at a later juncture. Plaintiffs, all innocents mistakenly detained and then let go by the military, are confident that the CACI employees who tortured them were not engaging in any interrogation function intended to benefit the war effort, but rather were simply acting sadistically and reprehensibly, as was found to be the case during the court martial of their co-conspirators.

        /s/ Susan L. Burke_____
Susan L. Burke (VA Bar #27769)
Rosemary B. Healy (*pro hace* application pending)
Counsel for Plaintiffs
BURKE O'NEIL LLC
4112 Station Street
Philadelphia, PA 19127
(215) 487-6596
(215) 482-0874 (facsimile)
sburke@burkeoneil.com

Katherine Gallagher
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

Shereef Hadi Akeel
AKEEL & VALENTINE, P.C.
888 West Big Beaver Road
Troy, Michigan 48084-4736

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of October, 2008, I caused the foregoing Plaintiffs' Memorandum Rebutting CACI's Factual Misrepresentations During Oral Argument to be emailed via the ECF system to the following:

J. William Koegel, Jr.
Virginia Bar No. 38243
John F. O'Connor
Attorneys for Defendants CACI Premier Technology, Inc. and CACI International Inc
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 - telephone
(202) 429-3902 – facsimile
wkoegel@steptoe.com
joconnor@steptoe.com

               ____/s/ Susan L. Burke_____
               Susan L. Burke (VA Bar #27769)
               Counsel for Plaintiffs
               BURKE O'NEIL LLC
               4112 Station Street
               Philadelphia, PA 19127
               (215) 487-6596
               (215) 482.0874 – facsimile
               sburke@burkeoneil.com