UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| _____ | ) | |
| SUHAIL NAJIM ABDULLAH | ) | |
| AL SHIMARI, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:08-CV-00827-GBL-JFA |
| | ) | |
| v. | ) | |
| | ) | |
| CACI INTERNATIONAL INC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR 28 U.S.C. § 1292(B) CERTIFICATION OF THE
COURT'S ORDER ON DEFENDANTS' MOTION TO DISMISS**

## I.     INTRODUCTION

Defendants CACI International Inc and CACI Premier Technology, Inc. (collectively, "CACI") respectfully request that the Court certify for interlocutory appeal the Court's March 19, 2009 Memorandum Order (the "Memorandum Order") denying in part the CACI Defendants' motion to dismiss Plaintiffs' amended complaint. *See* 28 U.S.C. § 1292(b). As we explain below, certification is warranted to aid the Court of Appeals' *en banc* consideration of CACI's appeal by removing a potential jurisdictional impediment.

CACI's motion comes to this Court in a somewhat unique (though not unprecedented) procedural posture. Pursuant to the collateral order doctrine, CACI appealed this Court's Memorandum Order. Two and one-half years later, on September 21, 2011, the Fourth Circuit reversed this Court, holding 2-1 that the state law claims were preempted and, accordingly,

directing dismissal of the action.   On November 8, 2011, the Fourth Circuit granted the Plaintiffs' petition for *en banc* rehearing.

In the initial panel decision, now superseded by the Court of Appeals' decision to rehear the appeal *en banc*, the majority concluded that CACI's defenses were immediately appealable under the collateral order doctrine.  The dissenting judge, however, expressed the view that while jurisdiction might exist for the law of war immunity defense ruling, jurisdiction was lacking for the other defenses, including preemption.  The dissent therefore concluded that the Court of Appeals was without jurisdiction over the appeal.

To remove any doubt regarding appellate jurisdiction and give the Court of Appeals the maximum discretion in deciding the *en banc* appeal, CACI requests § 1292(b) certification.  This Court's issuance of certification under § 1292(b) would avoid tying the hands of the *en banc* Fourth Circuit to the extent it desires to reach the merits of issues on appeal if some segment of the Court concludes that collateral order jurisdiction does not exist.  By issuing the requested certification, this Court would allow the Fourth Circuit the flexibility to grant permission to appeal any of the legal issues the Court of Appeals desires to decide, while leaving the Fourth Circuit free not to address any defenses it might determine are not subject to the collateral order doctrine.  District courts have issued such post-appeal certifications in the past, and courts of appeals have endorsed the practice.  Indeed, the Fourth Circuit endorsed the practice with respect to a Rule 54(b) certification by analogizing it to 28 U.S.C. § 1292(b) where the Court's power to issue a post-appeal certification is well established.

CACI did not move for § 1292(b) certification when the Court issued the Memorandum Order because CACI believed, and continues to believe, that it has an appeal of right under the collateral order doctrine.  The expressions of doubt as to appellate jurisdiction by one judge on

the initial Fourth Circuit panel, however, counsels in favor of seeking § 1292(b) certification in order to eliminate any jurisdictional obstacle to resolution of the legal issues addressed in CACI's appeal.   Moreover, in the intervening two-and-a-half years, several decisions have issued, including the initial panel decision in this case, that punctuate the substantial grounds for disagreement with some of this Court's legal conclusions in the Memorandum Order.   Moreover, the dissenting judge in the initial panel decision specifically identified § 1292(b) certification as a potential cure for what he viewed as an absence of appellate jurisdiction under the collateral order doctrine.   This motion, therefore, seeks to implement the process that the sole judge dissenting from the initial panel decision suggested as an appropriate mechanism for achieving interlocutory appeal.   *See* Section III.B.3, *infra*.

This Court clearly retains jurisdiction to issue the requested certification, and the Memorandum Order unquestionably meets the standard for certification under § 1292(b). Certification would provide the Court of Appeals with the flexibility – if it chooses to exercise it[1] – to reach the merits of CACI's appeal as an *en banc* court without having to first consider the scope of the collateral order doctrine.   By contrast, declining to certify the Memorandum Order for interlocutory appeal would in effect tie the Court of Appeals' hands and limit its options in proceeding with *en banc* rehearing.   It also would enhance the risk that the parties will have spent more than two-and-a-half years on appeal without gaining clarity as to the difficult legal issues presented by this case.   For these reasons, the Court should issue an order amending the Memorandum Opinion to certify it for interlocutory appeal under § 1292(b).

---

[1] If this Court certifies its Memorandum Order under § 1292(b), CACI must then seek § 1292(b) certification from the Court of Appeals.  The Fourth Circuit has discretion to grant or deny § 1292(b) certification.

## II.      BACKGROUND

On March 18, 2009, this Court issued the Memorandum Order dismissing Plaintiffs'
Alien Tort Statute claims but denying CACI's motion to dismiss Plaintiffs' common-law claims.
*Al Shimari v. CACI Premier Tech.*, 657 F. Supp. 2d 700 (E.D. Va. 2009).   In particular, this
Court declined to dismiss Plaintiffs' common-law tort claims based on defenses sounding in
immunity, preemption, the political question doctrine, and failure to state a claim. *Id.* at 704-05.
On March 23, 2009, CACI noticed an appeal from the Court's Memorandum Order pursuant to
the collateral order doctrine.   Dkt. #96.   Plaintiffs moved in this Court to dismiss CACI's appeal;
that motion was denied.   Dkt. #109.   Plaintiffs then moved, on April 28, 2009, to dismiss the
appeal in the Fourth Circuit for lack of jurisdiction.   Plaintiffs argued that this Court's ruling on
immunity did not qualify for immediate appeal.   The Fourth Circuit did not address Plaintiffs'
motion for seven months, and then referred the issue to the merits panel.   *See* Dkt. #25, *Al
Shimari v. CACI Int'l Inc*, No. 09-1335 (4th Cir.)  Oral argument was held on October 26, 2010.

On September 21, 2011, a Fourth Circuit panel issued an opinion reversing this Court's
denial of CACI's motion to dismiss, holding that the Court had jurisdiction over CACI's appeal
and that Plaintiffs' claims were preempted by the federal interests underlying the combatant
activities exception to the Federal Tort Claims Act. *Al Shimari v. CACI Int'l Inc*, ___ F.3d ___,
2011 WL 4382081 (4th Cir.), *vacated* (Nov. 8, 2011).   The majority adopted the reasoning for
the holding on jurisdiction from *Al Quraishi v. L-3 Services, Inc.,* 657 F.3d 201 (4th Cir. 2011),
*vacated* (Nov. 8, 2011), decided the same day as CACI's appeal in this action.   The majority held
then that "[t]he uniquely federal interest in conducting and controlling the conduct of war,
including intelligence-gathering activities within military prisons, . . . is simply incompatible
with state tort liability in that context."   In reaching this result, the majority adopted the
reasoning of *Saleh v. Titan Corp.*, 580 F.3d 1, 9 (D.C. Cir. 2009), *cert. denied*, 131 S. Ct. 3055

(2011), in which the D.C. Circuit similarly held that federal law preempted common-law tort claims arising out of CACI's support for military operations at Abu Ghraib prison in Iraq. Having resolved the case on combatant activities preemption grounds, the majority opinion in *Al Shimari* did not address any of CACI's other defenses asserted on appeal.[2]

Judge King dissented from the panel decisions in *Al Shimari* and *Al Quraishi*. He stated his view that the Fourth Circuit might have jurisdiction to consider on interlocutory appeal of the law of war immunity defense (a defense that neither the majority nor dissent reached), but concluded that it lacked jurisdiction to address CACI's preemption defense because, in his view, preemption was not inextricably intertwined with immunity. Notwithstanding the position that appellate jurisdiction was lacking, the dissent addressed the merits of preemption, concluding that preemption was not appropriate at this stage of the case.

On November 8, 2011, the Fourth Circuit issued an order granting Plaintiffs' petition for rehearing *en banc*, and set the appeal for oral argument during the January 24-27 argument session. The Court of Appeals also granted rehearing *en banc* in *Al Quraishi*.

## III.   ANALYSIS

### A.   This Court Has Jurisdiction to Make a 28 U.S.C. § 1292(b) Certification

It is well established that a district court has the power to certify an order for appeal even after a notice of appeal has been filed with respect to the court's order. In the related context of Rule 54(b), the Fourth Circuit has held that a district court has the power to issue a Rule 54(b) certification for immediate appeal *after* the order in question has already been appealed. *Harrison v. Edison Bros. Apparel Stores, Inc.*, 924 F.2d 530, 532 (4th Cir. 1991). In so holding,

---

[2] Judge Niemeyer filed a concurring opinion in which he stated his view that CACI's immunity and political question defenses also would bar Plaintiffs' claims. *Al Shimari*, 2011 WL 4382081, at *6-13.

the Court noted that post-appeal certifications were permitted "in an analogous context – interlocutory appeals under 28 U.S.C. § 1292(b)," and that there was no reason for a different rule in the Rule 54(b) context. *Id.* (citing *Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373 (1985)).

Indeed, in a case with an identical procedural posture, the 10th Circuit endorsed the district court's post-appeal issuance of § 1292(b) certification in *Pelt v. Utah*, 539 F.3d 1271 (10th Cir. 2008).  In *Pelt*, the defendant appealed the denial of its motion to dismiss pursuant to the collateral order doctrine.  *Id.* at 1273.  After the plaintiffs had moved to dismiss the appeal for lack of jurisdiction, the district court issued an order certifying its decision for interlocutory appeal under § 1292(b).  *Id.* at 1274.  The Tenth Circuit found that the district court's post-appeal certification of its decision was effective and proceeded to decide the appeal under § 1292(b) jurisdiction.  As in *Pelt*, certification of this Court's Memorandum Order would give the Court of Appeals the *option*, but not the obligation, to consider each of the substantive issues on appeal pursuant to § 1292(b) without having to determine whether an appeal of right lies pursuant to the collateral order doctrine for each such defense.

Similarly, in *In re Jartran, Inc.*, 886 F.2d 859, 861-64 (7th Cir. 1989), a Seventh Circuit panel expressed doubt at oral argument that the appeal before it resulted from a final judgment. *Id.* at 861.  While the appeal remained pending before the Seventh Circuit, the district court amended its order to certify it for interlocutory appeal under 28 U.S.C. § 1292(b).  *Id.*  The Seventh Circuit held that the district court's post-appeal certification was proper and created interlocutory appellate jurisdiction in the court of appeals.  *Id.* at 862.

Thus, certification here is in *aid of the appeal* in that it removes a potential jurisdictional obstacle to the Fourth Circuit's *en banc* consideration of the merits.  A district court always

retains jurisdiction to issue orders in aid of a pending appeal.  *In re Grand Jury Proceedings Under Seal*, 947 F.2d 1188, 1190 (4th Cir. 1991) ("[A] district court does not lose jurisdiction to proceed as to matters in aid of the appeal."); *see also* 16 Wright & Miller, *Federal Practice & Procedure* § 3929.1, at 415 (2d ed. 1996) ("District courts retain many powers to act in support of a pending appeal, and the power of §1292(b) certification should be one of them.").

> **B.     This Court's Memorandum Order Easily Meets the Standard for 28 U.S.C. § 1292(b) Certification**

District courts have "first line discretion to allow interlocutory appeals."  *Swint v. Chambers County Comm'n*, 514 U.S. 35, 47 (1995).  The Court may certify an order for interlocutory appeal when it "'involves a controlling question of law as to which there is substantial ground for difference of opinion' and immediate appeal . . . may materially advance the ultimate termination of the litigation.'"  *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 195 (4th Cir. 2011) (quoting 28 U.S.C. § 1292(b)).  Because the Memorandum Order satisfies all three of these requirements, the Court should certify the Memorandum Order for interlocutory appeal.

> **1.      Controlling Questions of Law**

The Fourth Circuit recently observed that an order involves a "controlling question of law" if the order contains a question of law and the court of appeals' "resolution of it could "terminate[] the case."  *Kennedy*, 657 F.3d at 195; *see also Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1989 WL 42583, at *5 (4th Cir. 1989) (interlocutory appeal appropriate for questions of law "whose resolution will be completely dispositive of the litigation").  "[I]t is clear that a question of law is controlling if reversal of the district court's order would terminate the action."  *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990).

In this case, the Court's preemption ruling in the Memorandum Order presents a clear, controlling question of law:

> Whether the federal interests in the conduct of war, embodied in the Constitution and the combatant activities exception to the FTCA, preempt common-law tort claims against contractors by persons detained by the U.S. military in combat-zone detention facilities, where the plaintiffs allege that the allegedly tortious conduct "took place during a period of armed conflict, in connection with hostilities." (*See* Am. Compl. ¶ 142).

Given that Plaintiffs' well-pleaded factual allegations were accepted as true in connection with CACI's Rule 12(b)(6) motion to dismiss,  there are no fact questions to be resolved with respect to CACI's argument on preemption.  The sole question is one of law – whether Plaintiffs' well-pleaded factual allegations compel preemption of their common-law tort claims.

The preemption question is not only one of law, but is a *controlling* question of law.  As such, whether Plaintiffs' common-law tort claims are preempted by federal law is a controlling question of law because "resolution of it [in CACI's favor] terminates the case."  *Kennedy*, 657 F.3d at 195.  Because a decision in favor of preemption typically eliminates all common-law tort claims in a case, district courts regularly certify preemption decisions for interlocutory appeal,[3] and courts of appeals regularly authorize interlocutory appeal of certified preemption questions.[4]

---

[3] *See, e.g.*, *Drake v. Lab. Corp. of Am. Holdings*, 290 F. Supp. 2d 352, 376 (E.D.N.Y. 2003) (holding that whether federal drug testing laws and regulations preempted state common law tort claims is a controlling question of law and certifying the order for appeal); *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 153 F. Supp. 2d 935, 938 (S.D. Ind. 2001) (holding that whether the Motor Vehicle Safety Act preempted a claim for state injunctive relief is a controlling question of law and *sua sponte* certifying the order for interlocutory appeal); *Trotter v. Perdue Farms, Inc.*, 168 F. Supp. 2d 277, 281 (D. Del. 2001) (holding that whether plaintiffs' state wage and hour law claims were preempted by ERISA is a controlling question of law); *Garrelts v. SmithKline Beecham Corp.*, 943 F. Supp. 1023, 1071 (N.D. Iowa 1996) (holding that whether plaintiffs' state law claims were preempted by USDA regulations is a controlling question of law and *sua sponte* certifying the order for interlocutory appeal).

[4] *See, e.g.*, *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 382 (5th Cir. 2004) (accepting interlocutory appeal after the district court certified an order holding that plaintiff's state law

Indeed, there is no clearer demonstration of the controlling nature of the preemption issue embodied in the Memorandum Order than the panel decision *in this case*. The panel majority decided the preemption issue *as a matter of law* in CACI's favor and, as a result, issued an order directing the dismissal of all claims in the case. *Al Shimari*, 2011 WL 4382081, at *6. While the panel's decision has been vacated to allow for *en banc* rehearing, that action does not change the self-evident fact that a resolution of the preemption question in CACI's favor, whether by a panel or the *en banc* court of appeals, would end this case.

CACI's immunity and political question defenses similarly present controlling questions of law—whether Plaintiffs' well-pleaded allegations compel dismissal of their claims because CACI is immune from suit and/or because the allegations implicate nonjusticiable political questions. If either of these questions is resolved in CACI's favor, Plaintiffs' remaining claims would be dismissed and this action would terminate. Indeed, all three Fourth Circuit judges who participated in the panel decision in this appeal appear to acknowledge that CACI's law of war immunity defense is immediately appealable under the collateral order doctrine. *Compare Al-Quraishi v. L-3 Servs., Inc.*, 657 F.3d 201, 206 (4th Cir. 2011) (denial of battlefield immunity "must be immediately appealable"), *vacated* (Nov. 8, 2011), *with id.* at 214 (King, J. dissenting)

---

claims were not preempted by the Airline Deregulation Act); *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000) (citing *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605 (7th Cir. 2000)) as a suitable case for interlocutory appeal because "whether federal law preempts state business-tort law in suits between air carriers over routes and rates of service. . . . [is] indeed a controlling issue [that will] head off protracted, costly litigation."); *Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 61 (1st Cir. 1997) (accepting interlocutory appeal after the district court certified an order holding that plaintiff's state law claims were not preempted by the Smokeless Tobacco Act and the Federal Cigarette Labeling and Advertising Act); *Hatfield v. Burlington N. R.R. Co.*, 64 F.3d 559, 559 (10th Cir. 1995) (accepting interlocutory appeal after the district court certified an order holding that plaintiff's state law claims were preempted by the Federal Railroad Safety Act); *Stephen v. Am. Brands, Inc.*, 825 F.2d 312, 313 (11th Cir. 1987) (accepting interlocutory appeal after the district court certified an order holding that plaintiff's state law tort claims were preempted by the Cigarette Labeling and Advertising Act).

("Of the remaining grounds for dismissal before the district court, only the denial of immunity under the laws of war could afford a basis for . . . appeal.").[5]  Given that the collateral order doctrine permits immediate appeal of immunity orders resting on a question of law, *Iqbal v. Twombly*, 129 S. Ct. 1937, 1946 (2009), all three judges on the original Fourth Circuit panel necessarily recognized that CACI's assertion of immunity involves a pure question of law.

### 2.     Substantial Ground for Difference of Opinion

"An issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling question of law."  *Cooke-Bates v. Bayer Corp.*, No. 3:10-CV-261, 2010 WL 4789838, at *2 (E.D. Va. Nov. 16, 2010); *see also McDaniel v. Mehfoud*, 708 F. Supp. 754, 756 (E.D. Va. 1989).  Similarly, a substantial ground for difference of opinion exists where "the dispute raises a novel and difficult issue of first impression."  *Cooke-Bates*, 2010 WL 4789838, at *2.  A substantial ground for difference of opinion exists with respect to several components of this Court's Memorandum Order.

With respect to this Court's preemption analysis, the best proof of a substantial ground for difference of opinion is that two of the three Fourth Circuit judges who participated in the panel argument on CACI's appeal concluded that this Court's preemption analysis was erroneous.  *See Al Shimari*, 2011 WL 4382081, at *6.  The fact that two of the three judges sitting on the panel disagreed with this Court's analysis certainly indicates that reasonable minds may differ on the appropriate result.  Moreover, this Court's preemption analysis is directly at odds with the D.C. Circuit's decision in *Saleh*, 580 F.3d at 11, where the court held that virtually identical claims brought by plaintiffs detained by the United States at the very same battlefield

---

[5] The Fourth Circuit directed that *Al Shimari* and *Al-Quraishi* would be heard on the same day by the same panel.  The majority and dissent in both cases discussed the merits issues common to both cases in *Al Shimari* and the appellate jurisdiction issues in *Al-Quraishi*.

detention facility were preempted by federal law.  Indeed, this Court's preemption analysis concludes that preemption is not appropriate on the grounds that Plaintiffs' injuries did not arise out of a "combatant activity."  *Al Shimari*, 657 F. Supp. 2d at 721.  In reaching this conclusion, this Court acknowledged that it was adopting what it viewed as the "more limited definition" of combatant activities from a 1947 district court case, and rejecting case law holding that the term encompassed "not only physical violence, but activities both necessary to and in direct connection with actual hostility."  *See, e.g.*, *Johnson v. United States*, 170 F.2d 767, 770 (9th Cir. 1948).

Since this Court issued its Memorandum Order, the D.C. Circuit acknowledged in *Saleh*, 580 F.3d at 6-7, that essentially identical detainee abuse claims arose out of combatant activities, and a judge of this Court expressly disagreed with the Memorandum Order's "narrow reading[]" of the term "combatant activities."  *Taylor v. Kellogg Brown & Root Svs., Inc.*, No. 2:09-cv-341, 2010 WL 1707530, at *10 (E.D. Va. Apr. 19, 2010), *aff'd in part and vacated in part*, 658 F.3d 402 (4th Cir. 2011).[6]  Questions where the district court's analysis is at odds with decisions from courts in other circuits, or with judges within the circuit, are classic cases where there exists substantial grounds for difference of opinion for which § 1292(b) certification is appropriate. *See, e.g.*, *Hanley v. Hand 'n Heart, LLC*, No. 4:06-cv-71, 2007 WL 201088, at *13 (E.D. Va. Jan. 22, 2007); *Dew v. Nabisco, Inc.*, No. 3:99-cv-353, 1999 WL 33228565, at *9 (E.D. Va. Oct. 4, 1999).  It is, of course, beside the point whether this Court's analysis of combatant activities preemption ultimately is determined to be correct.  The mere fact that two of three Fourth Circuit

---

[6] The Fourth Circuit vacated the preemption analysis in *Taylor* not because it disagreed with that analysis, but because the Court agreed with the district court that the case presented nonjusticiable political questions.  Because the political question doctrine deprived the federal courts of jurisdiction, the Court followed its customary practice of vacating all other aspects of the district court's opinion.  *Taylor*, 658 F.3d at 403.

judges, the D.C. Circuit, and another judge of this Court have analyzed the issue in a manner incompatible with this Court's preemption analysis is sufficient to show a substantial ground for difference of opinion for which interlocutory appeal is appropriate.

With respect to CACI's immunity defenses, there also exists substantial grounds for difference of opinion.  In the initial panel appeal, the only judge to address CACI's derivative absolute official immunity defense, *see Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1446 (4th Cir. 1996), disagreed with this Court's resolution of the question and stated his view that this defense would bar Plaintiffs' claims.  *See Al Shimari*, 2011 WL 4382081, at *11-12 (Niemeyer, J., concurring).  With respect to CACI's law of war immunity defense,[7] this is a novel issue not addressed much since the nineteenth century, and arising now because of the increased use of contractors on the battlefield.  Such novel issues are also the types of questions for which a § 1292(b) interlocutory appeal is appropriate.  *See Cooke-Bates*, 2010 WL 4789838, at *2.

Finally, a substantial ground for difference of opinion exists with respect to CACI's political question defense.  As with derivative absolute official immunity, the only judge from the initial Fourth Circuit panel in this case to consider the political question doctrine disagreed with this Court's resolution of that issue.  *Al Shimari*, 2011 WL 4382081, at *10-11 (Niemeyer, J., concurring).  Moreover, the Fourth Circuit recently held in *Taylor,* in an opinion authored by Judge King, that tort claims arising out of a contractor's servicing of a generator at a tank maintenance facility in Iraq raised nonjusticiable political questions.  *Taylor*, 658 F.3d at 403. The tort claims asserted against CACI have a much closer nexus to the conduct of war, given that Plaintiffs' claims arise out of battlefield intelligence operations at a combat-zone detention facility under regular threat of mortar attack.  *See Hamdi v. Rumsfeld*, 542 U.S. 507, 518 (2004)

---

[7] *See, e.g.*, *Freeland v. Williams*, 131 U.S. 405, 417 (1889); *Dow v. Johnson*, 100 U.S. 158, 166 (1879); *Ford v. Surget*, 97 U.S. 594, 606-07 (1878).

(arrest and detention activities "by 'universal agreement and practice,' are 'important incident[s] of war'" (citing *Ex parte Quirin*, 317 U.S. 1 (1942))).  This is particularly true given Plaintiffs' express allegations that the alleged conduct "took place during a period of armed conflict, in connection with hostilities."  Am. Compl. ¶ 142.  Thus, Judge Niemeyer's assessment of the political question doctrine on appeal, whether it ultimately prevails or not, is a reasonable one, as is the Fourth Circuit's resolution of *Taylor*.  As a result, there are substantial grounds for difference of opinion with respect to this Court's political question analysis.

### 3.  Material Advancement of the Disposition of the Litigation

An interlocutory appeal of the Court's Memorandum Order would "conserve judicial resources and spare the parties from possibly needless expense if it should turn out that this Court's rulings are reversed."  *APCC Services, Inc. v. AT&T Corp.*, 297 F. Supp. 2d 101, 104 (D.D.C. 2003) (citing *Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720, 728 (S.D. Tex. 2002)).  That is, if the *en banc* Fourth Circuit reverses this Court, the case ends and the Court and parties are saved the time and expense associated with discovery and potential trial.  Moreover, given that the claims arise out of the United States military's detention operations at a combat-zone detention facility in Iraq, a decision in CACI's favor on appeal would spare the Court and the parties the difficult and expensive discovery issues associated with taking discovery from the U.S. military and the CIA concerning classified intelligence operations.

Indeed, even if the *en banc* Fourth Circuit affirms the Memorandum Order on the merits, that decision likely would provide clarity as to the legal standards applicable to Plaintiffs' claims and CACI's defenses.  For example, this Court's Memorandum Order acknowledged that judicial opinions varied on the proper scope of the term "combatant activities."  *Al Shimari*, 657 F. Supp. 2d at 721.  A binding appellate decision on the scope of this term, and on the framework for combatant activities preemption generally, even if adverse to CACI's position, would advance

this litigation by ensuring that this Court and the parties are applying the proper legal standards on any remand.  CACI's appeal has been pending for more than two-and-a-half years, with none of that delay attributable to CACI,[8] and it makes little sense to have waited that long for the appeal and still leave the Court and parties with no clarity as to the appropriate legal standards to be applied.  *See Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399-400 (5th Cir. 2010) ("After so much time and effort has been expended by both the parties and the court as a whole, the discretionary decision *now* becomes much different, and the majority of the court agree[s] it should be resolved in favor of hearing the merits.").

The unique procedural posture of this case punctuates how a § 1292(b) certification would materially advance the disposition of the litigation.  CACI believes that it is entitled to a collateral order appeal with respect to all issues it has raised in the Fourth Circuit. Two Fourth Circuit judges see it that way, and it appears that all three judges  on the initial Fourth Circuit panel agree that CACI has an appeal of right with respect to its law of war immunity defense.[9] In dissent, however, Judge King disagreed that the other issues raised in CACI's appeal – including preemption, derivative absolute official immunity, and political question – were subject to appeal under the collateral order doctrine.  *Al-Quraishi*, 657 F.3d at 214 (King, J., dissenting).  In ordering rehearing *en banc*, the Fourth Circuit apparently concluded that the substantive issues involved in this appeal are sufficiently important to merit hearing before the

---

[8] The principal delays in the progress of the appeal were the seven-month delay associated with Plaintiffs' motion to dismiss the appeal, and the Fourth Circuit's stay of the appeal for six months pending the Supreme Court's resolution of the petition for *certiorari* in *Saleh*, 580 F.3d at 1.

[9] *Compare Al-Quraishi*, 657 F.3d at 206 (denial of battlefield immunity "must be immediately appealable") *with id.* at 214 (King, J. dissenting) ("Of the remaining grounds for dismissal before the district court, only the denial of immunity under the laws of war could afford a basis for . . . appeal.").

full Court.  While CACI believes that the panel majority's finding of appellate jurisdiction is correct, Judge King's dissent on jurisdiction illustrates the possibility that the Fourth Circuit could not address some of the merits issues it views as of substantial importance if a majority of the Court were to conclude that it lacks appellate jurisdiction under the collateral order doctrine for some of CACI's defenses.

In a case concerning the applicability of immunity and preemption defenses in the context of war, the Fifth Circuit specifically identified § 1292(b) certification as an appropriate course of action for district courts presiding over such cases:

> We recognize that many of the immunity and preemption defenses asserted by the Defendants facially satisfy the terms for certification under § 1292(b) . . . .  Because the basis for many of these defenses is a respect for the interests of the Government in military matters, district courts should take care to develop and resolve such defenses at an early stage while avoiding, to the extent possible, any interference with military prerogatives. . . .  Consideration should also be given to freely certifying orders denying such defenses where the law is unsettled but, after refinement on appeal, might warrant dismissing plaintiffs' claims—provided of course that the record has been developed adequately so that an informed decision can be made about the contours of these defenses.

*Martin v. Halliburton*, 618 F.3d 476, 488 (5th Cir. 2010) (citations omitted).  Indeed, Judge King, in dissenting on the exercise of appellate jurisdiction under the collateral order doctrine, cited to this passage from *Martin* and noted that "a district court possesses a variety of tools by which it can prevent undue intrusion: limiting discovery to the preemption defense; resolving the defense as early as possible; and, where appropriate, certifying appeal of an order denying the preemption defense for appellate review pursuant to 28 U.S.C. § 1292(b)."  *Al Quraishi*, 657 F.3d at 213 (King, J., dissenting).  Thus, the present motion is seeking a course expressly identified and endorsed by the single Fourth Circuit judge dissenting on jurisdiction.

The present motion, therefore, materially advances the litigation by ensuring that the Fourth Circuit has the option—though not the obligation—to decide the merits issues it deems important *even if* some portion of the Court concludes that some of the issues on appeal are not subject to the collateral order doctrine.   Absent § 1292(b) certification, if the Fourth Circuit concludes that some issues  are not immediately appealable under the collateral order doctrine, the court of appeals is *precluded* from deciding those issues unless this Court certifies the Memorandum Order.   *Swint*, 514 U.S. at 47.   Thus, if the Court certifies the Memorandum Order, it ensures that the Fourth Circuit has full flexibility in deciding the appeal.   If the Fourth Circuit determines that some issues on appeal are not subject to the collateral order doctrine, it nevertheless can decide the issues pursuant to § 1292(b), or it can deny permission to appeal those issues and remand them as appropriate.   If the Court were to deny certification, it would effectively tie the Fourth Circuit's hands as to any issues for which the Court of Appeals concludes that no collateral order appeal is available.

CACI did not seek 28 U.S.C. § 1292(b) certification when the Court issued the Memorandum Order because it believed, and continues to believe, that it has a right of immediate appeal under the collateral order doctrine.   The Fourth Circuit's decision to hear CACI's appeal *en banc*, along with Judge King's dissent on jurisdiction and his endorsement of appropriate § 1292(b) certifications, suggests the propriety of seeking § 1292(b) certification so that the Court of Appeals is not impeded in reaching any merits issues it would like to decide. Moreover, since the Court issued its Memorandum Order, several judicial decisions have issued that highlight the substantial grounds for difference of opinion with respect to some of this Court's rulings in the Memorandum Order.   The D.C. Circuit found essentially identical tort claims preempted in *Saleh*, 580 F.3d at 11.   Two of the three judges sitting on the initial Fourth

Circuit panel found the Court's preemption analysis to be erroneous. *Al Shimari*, 2011 WL 4382081, at \*6. Judge Doumar expressly disagreed with this Court's preemption analysis in *Taylor*, 2010 WL 1707530, at \*10. The Fourth Circuit held the claims in *Taylor*—claims with a more attenuated nexus to combat than Plaintiffs' claims in this case—were barred by the political question doctrine. *Taylor*, 658 F.3d at 403. Thus, however this Court's rulings in the Memorandum Order might be resolved by the *en banc* Fourth Circuit, developments since the Court issued the Memorandum Order show substantial grounds for difference of opinion as to the Court's legal analysis, making an unrestricted interlocutory appeal the best way to materially advance the disposition of this litigation.

As noted above, this Court has jurisdiction to issue the requested § 1292(b) certification, and courts have done so while a case is on appeal to give the court of appeals the full range of decisional options. *Pelt*, 539 F.3d at 1274; *In re Jartran, Inc.*, 886 F.2d at 861-64; *see also Harrison*, 924 F.2d at 532 (approving of trial court's post-appeal issuance of a Rule 54(b) certification by analogizing it to a post-appeal § 1292(b) certification). Indeed, it is quite common for courts to issue § 1292(b) certifications as "insurance" to ensure that interlocutory appellate review is available even though the Court and/or the parties  believe that the collateral order doctrine makes certification unnecessary.[10] Therefore, the Court's issuance of § 1292(b) certification will materially advance the litigation by ensuring that the *en banc* Fourth Circuit has the power, if it so chooses, to reach the merits issues pending before it, without regard to the collateral order doctrine.

---

[10] *See, e.g.*, *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan*, 313 F.3d 70, 80-81 & n.11 (2d Cir. 2002); *Mackey v. Milam*, 154 F.3d 648, 650 n.1 (6th Cir. 1998); *TEC Cogeneration Inc. v. Fla. Power & Light Co.*, 76 F.3d 1560, 1563 n.1 (11th Cir. 1996); *Tennenbaum v. Deloitte & Touche*, 77 F.3d 37, 339 n.2 (9th Cir. 1996).

## IV.  CONCLUSION

For the foregoing reasons, the CACI Defendants respectfully request that the Court certify for interlocutory appeal the March 18, 2009 Memorandum Order.

Respectfully submitted,


*/s/ J. William Koegel, Jr.*
J. William Koegel, Jr.
Virginia Bar No. 38243
John F. O'Connor (admitted *pro hac vice*)
Attorneys for Defendants CACI Premier
Technology, Inc. and CACI International Inc
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 429-3000 – Telephone
(202) 429-3902 – Facsimile
wkoegel@steptoe.com
joconnor@steptoe.com

November 11, 2011

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of November, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Susan L. Burke
> Attorneys for Plaintiff
> Burke PLLC
> 1000 Potomac Street, N.W.
> Suite 150
> Washington, D.C. 20007
> sburke@burkeoneil.com
> wgould@burkeoneil.com

> */s/ J. William Koegel, Jr.*
> J. William Koegel, Jr.
> Virginia Bar No. 38243
> John F. O'Connor (admitted *pro hac vice*)
> Attorneys for Defendants CACI Premier
> Technology, Inc. and CACI International Inc
> STEPTOE & JOHNSON LLP
> 1330 Connecticut Avenue, N.W.
> Washington, D.C.  20036
> (202) 429-3000 – Telephone
> (202) 429-3902 – Facsimile
> wkoegel@steptoe.com
> joconnor@steptoe.com