**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 08-cv-0827 GBL-JFA |
| | ) | |
| vs. | ) | |
| | ) | |
| CACI INTERNATIONAL, INC., *et al.,* | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPPOSITION BY THE UNITED STATES TO DEFENDANT'S MOTION TO COMPEL**
**UNREDACTED COPIES OF GOVERNMENT REPORTS**
**CONCERNING DETAINEE ABUSE AT ABU GHRAIB**

**I.    INTRODUCTION**

Defendant CACI Premier Technology ("CACI") has moved to enforce a subpoena against the Department of Defense ("DoD") for "complete and unredacted cop[ies]" of three government reports. Pursuant to its regulations, DoD denied in part CACI's *Touhy* request to obtain this material on two independent grounds: that it sought classified information; and that a further response to the request would be unduly burdensome and would divert resources from DoD's military missions. This Court reviews DoD's decision pursuant to the Administrative Procedure Act ("APA") and may only overturn it if the Court finds the decision to be arbitrary and capricious. Remarkably, CACI's motion completely fails to address DoD's separate, independent ground for denial of its request on the basis of undue burden, which also adequately justifies DoD's denial of CACI's *Touhy* request.

DoD acted appropriately in denying CACI's *Touhy* requests.  CACI seeks to obtain documents and portions of documents previously identified by the government as privileged, classified, highly burdensome to review, or duplicative of already publicly-available information. CACI has no right to the classified information in these materials, nor to impose a highly significant burden on DoD to produce or protect a substantial volume of materials.  Moreover, CACI is simply wrong that the Government must either present a formal assertion of the state secrets privilege or produce the requested materials in unredacted form.  There is no question that review of the denial of a *Touhy* request arises under the APA's deferential standard of review, and DoD need only show that its decision to protect classified information, and to prevent the imposition of an undue burden, was reasonable.  As other courts have found under similar circumstances, the government may show that a *Touhy* decision to protect classified information is reasonable through the declarations provided herewith, without further burdening DoD by requiring agency heads to formally assert a privilege, and the government urges the Court to do the same here.[1]

## II.    BACKGROUND

**The Subpoena**

CACI issued the subpoena underlying this motion on January 16, 2013, and the United States objected on numerous grounds, in particular to its vast over-breadth and the immense burden to DoD of responding.  The subpoena contained 28 document requests, which in turn had over 80 associated subparts.  The only parts of the subpoena that are at issue in this motion to

---

[1] Because DoD did not act arbitrarily and capriciously, DoD's decision should be affirmed.  In the event the Court finds otherwise, the Court should remand to DoD for further consideration.  To the extent the Court concludes that the government should decide whether to assert the state secrets privilege, the government seeks a reasonable time to consider whether to invoke the privilege and requests the Court structure the litigation to minimize the scope of relevant information over which the government must consider privilege.

compel are three of the subparts of Request 4, which sought a complete and unredacted copy, including any appendices, exhibits, or other attachments, of Major General ("MG") Antonio M. Taguba's Army Regulation ("AR") 15-6 Investigation of the 800th Military Police Brigade ("Taguba Report"); the AR 15-6 Investigation of the Abu Ghraib Prison and 205th Military Intelligence Brigade by Lieutenant General Jones and the AR 15-6 Investigation of the Abu Ghraib Detention Facility and 205th Military Intelligence Brigade by MG Fay ("Jones-Fay Report"); and the report of Vice Admiral Albert T. Church, III, Director of the Navy Staff, relating to Review of Department of Defense Detention Operations and Detainee Interrogation Techniques ("Church Report").

**The Reports**

Each of these three reports (Taguba, Jones-Fay, and Church) has been publicly disclosed with redactions to protect classified information or information that is otherwise privileged from disclosure to the public.

**Taguba Report**

The Taguba Report, comprising a five-page Executive Summary and a 53-page main body, was declassified by CENTCOM in October 2004 and released publicly at http://www.dod.mil/pubs/foi/operation_and_plans/Detainee/taguba/. The only materials redacted from the Taguba Report in the publicly available version are individuals' names, including those of investigators who assisted MG Taguba's investigation, Army Criminal Investigation Division ("CID") personnel who investigated events at Abu Ghraib, and individuals personally involved in the abuses at Abu Ghraib. The United States has offered to review the redactions and provide CACI with a version of the report in which all of the unclassified names are unredacted (which DoD believes to be all of the names in the Taguba Report that are not simultaneously the subject

3

of CACI's Motion to Compel Interrogator Identities). CACI rejected this offer. The Taguba Report also has 106 associated annexes, numbering 3,700 pages, portions of which are declassified and publicly-available at the same website. In response to plaintiffs' focused request for review of selected pages of these annexes, approximately 470 pages have been produced to the parties. CACI has not made a similar request.

**Jones-Fay Report**

The entirety of the main body 178-page Jones-Fay Report has been produced publicly with the exception of fewer than two dozen pages from which classified information has been redacted.[2] As explained in DoD's *Touhy* response letter, this Report is ordinarily available through DoD's electronic FOIA reading room, and also is available at: http://www.au.af.mil/au/awc/awcgate/army/abu ghraib fay.pdf. In addition, there are 16 annexes to the Jones-Fay Report, consisting of 626 documents totaling more than 9,000 pages. Only a portion of this vast array of material has ever been reviewed for public release, and the materials released are available at: http://www.aclu.org/torturefoiareleased/030905/. Several of the unreleased annexes are labeled as classified; however, extensive swaths of the unclassified annexes duplicate other documents previously provided to CACI or are otherwise already publicly available. In response to plaintiffs' focused request in this litigation, a portion of one annex was reviewed and unredacted documents were produced to the parties. CACI has not made a similarly focused request.

---

[2] The Jones-Fay Report uses pseudonyms instead of names to refer to some, but not all, of the individuals described therein. These pseudonyms identify each individual as a "soldier," "civilian," or "detainee."

**Church Report**

The main body of the Church Report is 378 pages long. CACI's motion to compel excludes the 142 pages in the sections titled "Guantanamo Bay, Cuba" and "Operation Enduring Freedom, Afghanistan." In addition, the first 51 pages of the report are unredacted, as are the ten pages of the section entitled "The Role of Contractors in DoD Interrogation Operations." Classified information in the remaining sections, substantial portions of which pertain to Iraq and Abu Ghraib, was redacted during previous public releases. The Church Report's only annex, which was provided separately from the Report itself, consisted of information related to the International Committee of the Red Cross ("ICRC"), which is protected from release by statute. *See* 10 U.S.C. § 130c.

**DoD's *Touhy* Denial**

On March 7, 2013, DoD provided its initial response to CACI's subpoena. With regard to Request 4, which is the only request pertinent to this motion, DoD referred CACI to the publicly released versions of these reports, along with publicly released annexes, attachments, and enclosures. DoD denied CACI's request for unredacted versions of these reports because "it would be unduly burdensome and unnecessarily cumulative for DoD to conduct new privilege and declassification reviews of these voluminous reports." *See* Ex. 1 at 2 (*Touhy* Letter of Robert E. Easton (Mar. 7, 2013)). Notwithstanding this denial, DoD indicated that it would be willing to consider requests to re-review for public disclosure a reasonable number of documents containing classified information if CACI articulated a particularized need for such specific information. *Id.*

On April 4, 2013, DoD provided CACI with a further response to its subpoena. Since DOD's initial denial, CACI had prioritized certain reports (including those at issue here) over its

5

other requests.  Treating this as a request to reconsider its prior denial, DOD again reviewed the requests for the Taguba, Jones-Fay, and Church reports and their associated annexes.  *See* Ex. 2 (*Touhy* Letter of Robert E. Easton (Apr. 4, 2013)).  DoD denied the request on two grounds.  First, DoD denied the request "[t]o the extent that materials in these reports are classified." *Id.* at 1. Second, as an alternative and independent ground for the denial, DoD concluded that the request would impose "an undue and heavy burden." *Id.*  Specifically, DoD reasoned that:

> given the nature of the materials withheld in the public releases [of the reports], including classified information and information protected from public disclosure by specific statutes . . . , it is likely that little additional information eventually would be disclosed even if additional reviews were directed.  I have weighed the burden of conducting an additional review of the materials you are seeking with the likely yield of minimal additional relevant information and concluded that further action on your request would be an undue and heavy burden.

*Id.* at 2.[3]

### III.   STANDARD OF REVIEW

#### A.  Judicial review of DoD's denial of CACI's third-party subpoena must be undertaken pursuant to the APA and on consideration of DoD's *Touhy* regulations.

In its motion, CACI acknowledges (but does not apply) the controlling legal standard: that "[w]hen the government is not a party, the Administrative Procedure Act ("APA") provides the sole avenue of review" for an agency's decision to reject a *Touhy* request for compliance with a subpoena.  *COMSAT Corp. v. Nat'l Science Found.*, 190 F.3d 269, 274 (4th Cir. 1999); *see also* 5 U.S.C. §§ 702, 704, 706; *Puerto Rico v. United States*, 490 F.3d 50, 61 (1st Cir. 2007) ("[S]ubpoenas are in effect a request for information from an executive department, and, consequently . . . are treated as an administrative demand[.]") (internal quotations omitted).

---

[3] Although DoD denied CACI's requests for the unredacted versions of these three reports and their annexes and attachments, DoD produced to CACI the only pages from these reports that relate directly to the named plaintiffs. DoD also produced over 500 pages from annexes to the Taguba and Jones-Fay reports.

**B. The standard of review under the APA is whether DoD's decision is arbitrary and capricious.**

Under the APA, DoD's decision to limit its responses to CACI's subpoenas must be upheld as reasonable unless "the government has refused production in an arbitrary, capricious, or otherwise unlawful manner." *COMSAT*, 190 F.3d at 277. In other words, DoD's decision should be affirmed as long as "the record reveals that a rational basis existed for [the] decision." *Fishermen's Dock Coop., Inc. v. Brown*, 75 F.3d 164, 168 (4th Cir.1996). In evaluating the agency's decision, the Court may consider any reason stated by the agency at the time, and may in addition consider declarations and affidavits that "expand significantly upon [the agency's] initial explanation of [its] decision." *Spence v. NCI Information Sys., Inc.*, 530 F. Supp. 2d 739, 742, 744 (D. Md. 2008).

**C. The *Touhy* regulations issued by DoD and Army set forth the parameters within which the agencies may reasonably decline to provide information.**

DoD issued its *Touhy* denial in accordance with the relevant provisions of its regulations setting forth the criteria the Department uses "[i]n response to a litigation request or demand for official DoD information." 32 C.F.R. § 97.6(a). In deciding whether to release information, the responding official must, *inter alia*, base his decision on "[w]hether the request or demand is unduly burdensome," and whether it would be "otherwise inappropriate under the applicable court rules." 32 C.F.R. § 97.6(b)(1). In addition, before releasing information, DoD must determine "[w]hether the disclosure would violate a statute, executive order, regulation, or directive," and "[w]hether the disclosure, except when in camera and necessary to assert a claim of privilege, would reveal information properly classified." 32 C.F.R. § 97.6(b)(3); 32 C.F.R. § 97.6(b)(5).

## IV.    ARGUMENT

### A. On application of the APA, DoD did not act arbitrarily or capriciously by denying the part of CACI's *Touhy* request that sought classified information.

DoD explained in its *Touhy* denial that "[t]o the extent that materials in these reports are classified, your request is denied for that reason."  Ex. 2, at 1.  DoD later repeated that "Requests 4 and 5" . . . are again denied because of . . . the classified material sought therein." *Id*. at 2 (*citing* 32 C.F.R. § 97.6(b)(3), (b)(5)).  Because DoD's "legitimate interest [in secrecy] is self-evident," there is "nothing arbitrary or capricious" about withholding such information under governing regulations.[4] *Puerto Rico*, 490 F.3d at 73 (Boudin, C.J., concurring).

CACI's motion to compel does not directly contend that DoD's *Touhy* denial is arbitrary or capricious.  Rather, to the extent that it challenges DoD's *Touhy* denial at all, CACI's argument appears to be that a *Touhy* denial on the basis that materials sought are classified must be paired with an assertion of the state secrets privilege.  CACI's demand that the United States assert the state secrets privilege is not supported by the precedent it cites to the Court, however.  CACI's motion does not cite a single case holding that an assertion of the state secrets privilege is necessary for an agency to issue a *Touhy* denial on the basis that the material is classified.  *See* CACI Memorandum in Support of Motion to Compel ("MTC Memo.") at 9-10 (and cases cited therein).  Nor has CACI cited a single case which holds that the government must assert the state secrets privilege when a *Touhy* denial on classification grounds is challenged.  *See id*.  The precedents on which CACI relies simply are not applicable to this case, because a government agency may deny third-party discovery of classified material through the *Touhy* process and the

---

[4] DoD's legitimate interest in protecting classified information is plain and demonstrated in numerous provisions of law, including Executive Order 13526 governing the protection of classified information, Exemption 1 of the Freedom of Information Act, which categorically exempts from the government's disclosure obligations information that is "properly classified," and DoD's *Touhy* regulation itself.  *See* Exec. Order 13526; 5 U.S.C. § 552(b)(1); 32 C.F.R. § 97.6(b)(3).

8

Court may affirm the agency's decision as reasonable without the United States invoking the state secrets privilege.

Indeed, it is worth noting that review of a *Touhy* decision, under Title 5 of the U.S. Code in which the APA resides, is more akin to consideration of an agency action under the Freedom of Information Act (which also resides in Title 5). *See* 5 U.S.C. § 552 *et seq.*[5] In both instances, a government agency may support its decision to protect classified information with a declaration explaining that the information is properly marked as classified, which indicates that its disclosure may be expected to harm national security. *Cf. Judicial Watch v. Dep't of Defense*, 857 F. Supp. 2d 44, 57-58 (D.D.C. 2012) (FOIA declarations may properly rely on classification markings); *Jurewicz v. U.S. Dept. of Agriculture*, 891 F. Supp. 2d 147, 151 (D.D.C. 2012) ("Decisions to disclose information pursuant to FOIA 'are in the nature of informal adjudications, and as such are reviewable under the generally applicable standards of [the APA].'"); *Feinman v. FBI*, 713 F. Supp. 2d 70, 77 (D.D.C. 2010) (noting that the "the statutory and equitable remedies available . . . under FOIA would provide the same relief . . . as would the APA"). In neither circumstance is intervention by a cabinet-level agency head needed or required to make that showing.

Under similar circumstances, other district courts have confirmed that agencies may deny third-party discovery requests for classified information when such denials are authorized by their *Touhy* regulations. For example, in the litigation brought by victims of the September 11, 2001 terrorist attacks against airlines and others in the Southern District of New York, that court affirmed a similar *Touhy* denial. *In re: September 11 Litigation*, 621 F. Supp. 2d 131, 143-47

---

[5] Indeed, when originally enacted, the Freedom of Information Act adopted the definition of "Agency" set forth in the APA at 5 U.S.C. § 551(1). *See Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971).

(S.D.N.Y. 2009).   In that case, several of the defendants sought to depose six FBI agents who had "knowledge of the September 11 plot through their investigations of suspected terrorists." *Id.* at 142-43.   The United States was not a party in that case, so discovery could proceed only through proper *Touhy* requests under the Department of Justice's *Touhy* regulations, which prohibited disclosure of "classified information, unless appropriately declassified."  *Id.* at 144. The government denied the discovery requests, and, as the government has done here, provided the Court with declarations supporting its decision without asserting the state secrets privilege. *See id.*  Citing the applicable *Touhy* regulation, the court concluded that "[t]he government's decision that the depositions requested are likely to . . . compromise national security is reasonable and appropriate, not arbitrary and capricious."  *Id.* at 145.

This Court should proceed in like fashion.  Not only is it correct as a matter of law, but it avoids the personal involvement of senior government officials in a third-party discovery matter where it is not necessary.  As CACI acknowledges, a decision to assert the state secrets privilege over the documents sought by CACI's subpoena would require the Secretary of Defense (as well as Attorney General Holder) to personally consider this matter.  Not only is this not required or needed for APA review of a *Touhy* decision, but as explained in sections IV.C. and D., *infra*, this would significantly disrupt the orderly and expeditious conduct of this litigation and would be disproportionate to the marginal relevance of the unredacted versions of the reports to this litigation.  CACI's position would permit any litigant seeking classified information to pull the Attorney General and other cabinet officials away from their public duties protecting national security merely by submitting a *Touhy* letter to an agency (or counsel-issued subpoena from a court) and filing a motion to compel challenging the denial of classified information.  This incongruous result is not required by any law or precedent.  Indeed, the district court in *In re:*

*September 11 Litigation* noted that the need to involve "senior agency members[] would unduly prolong the proceedings," and ultimately concluded that "the cost, delay, and threats to national security . . . [would] far outweigh any marginal relevance." *In re: September 11 Litigation*, 621 F. Supp. 2d at 145.

In this instance, the classified information contained in the Taguba, Jones-Fay, and Church Reports bears only marginal relevance to the issues in this litigation; namely, whether CACI employees interrogated the four plaintiffs; which CACI employees, if any, abused these four plaintiffs; and whether CACI employees instructed others to abuse the four plaintiffs. None of this information is to be found in the Taguba, Jones-Fay, and Church Reports or their annexes, which simply do not contain information specific to the treatment of the four plaintiffs.[6]

Indeed, CACI does not contend that the withheld portions of these reports are directly relevant to those key issues. Rather, CACI suggests that it requires the classified portions of the reports in order "to test the trustworthiness of the findings" contained in the reports. MTC Memo. at 12. Notably, this is the identical rationale that this Court previously rejected in denying CACI's motion to compel deposition testimony from the United States. Yet the cases cited by CACI amply demonstrate that CACI has numerous avenues to challenge the trustworthiness of the reports without resort to the classified portions. For example, in *Anderson v. Westinghouse Savannah River Co.*, the Fourth Circuit affirmed a district court's exclusion of a report because it "suffered from multiple levels of hearsay," was untrustworthy because of methodological flaws, and posed a "risk of unfair prejudice based on inclusion of allegations of events that may have nothing to do with a given Plaintiff or Defendant." *See* MTC Memo. at 12

---

[6] As DoD explained in its *Touhy* denial, "only two pages [in the reports] relate directly to any of the plaintiffs here." Those pages have been produced to CACI.

(*citing* 406 F.3d 248, 263-64 (4th Cir. 2005)).  This Court, in *Abusamhadaneh v. Taylor,* likewise excluded investigative reports because they were "full of third-party statements" and did not result from the investigator's "own observations or personal knowledge." 873 F. Supp. 2d 682, 714 (E.D. Va. 2012); *see* MTC Memo. at 13.  As the United States explained in its response to CACI's prior motion to compel, the publicly available versions of these reports describe the investigators' methodology, their reliance on layers of hearsay, and the lack of personal knowledge by their authors about the treatment of the plaintiffs.[7]  *See* Memorandum in Opposition to Motion to Compel Deposition Discovery, dkt. No. 285, at 10.  The publicly available reports are replete with the information CACI needs to challenge their admissibility.[8]

Here, where CACI challenges DoD's *Touhy* denial based only on its desire to test the trustworthiness of government reports, which are documents that do not contain firsthand information directly relevant to the claims and defenses in this case, the proper course for the Court is to follow the approach of the District Court for the Southern District of New York and affirm DoD's *Touhy* denial.

### B. On application of the APA, DoD did not act arbitrarily and capriciously by denying CACI's *Touhy* request as unduly burdensome.

DoD independently denied CACI's *Touhy* request on the grounds that responding further would be unduly burdensome.  And although CACI's motion (prepared after the agency's decision to deny CACI's *Touhy* request) seeks to narrow the set of materials from those it

---

[7] To the extent CACI seeks to challenge conclusions from the reports because of "[k]nown inconsistencies among [them], *see* MTC Memo. at 13, or because of identifiable errors in the unclassified factual statements therein, *see id.* at 14, CACI's motion to compel makes clear that they have ample ability to do so based on the public versions of these reports.

[8] To be sure, it is possible that there is some information in the classified portions of the reports that CACI could use to challenge their trustworthiness. Yet this is the inevitable consequence of the Supreme Court's decision in *Touhy* and the promulgation of *Touhy* regulations by agencies of the United States: when an agency denies such a request, the requester is denied one of the possible tools it could use to support its position in litigation.

previously sought, DoD's decision that the request would impose an undue burden plainly stands

and was in no way arbitrary and capricious.[9] *See Rural Cellular Ass'n v. FCC*, 588 F.3d 1095,

1107 (D.C. Cir. 2009) ("reasonableness of an agency's decision" is to be judged "on the basis of

the record before the agency at the time it made its decision").

### 1. CACI has waived any challenge to DoD's decision to deny its *Touhy* request on the basis of burden or statutory privileges.

As with any other APA review, this Court's examination of whether DOD acted

arbitrarily or capriciously by denying CACI's *Touhy* request on grounds of undue burden begins

with the decision itself.  DoD clearly explained its rationale:

> it would be unduly burdensome and unnecessarily cumulative for DoD to conduct
> new privilege and declassification reviews . . . even the review of a limited
> number of pages requires CENTCOM to divert manpower and other resources for
> significant periods of time from their primary warfighting mission . . . . I have
> weighed the burden of conducting an additional review of the materials you are
> seeking with the likely yield of minimal additional relevant information and
> concluded that further action on your request would be an undue and heavy
> burden.

Ex. 2, at 1-2.  With respect to the Church Report, in particular, DoD's denial stated that "new

declassification and privilege reviews . . . would be unduly burdensome, particularly on the

combatant commands.  Such reviews would result in a loss of productivity and detract from their

primary, warfighting mission." *Id.* at 3.   Notwithstanding DoD's detailed explanation of this

burden, CACI's motion to compel ignores entirely the denial of its *Touhy* request on this basis.

CACI's failure to challenge this independent basis for denial of its *Touhy* request should be

dispositive of its motion.  DoD's regulations enshrine "unduly burdensome" as an appropriate

basis on which to deny a *Touhy* request for information.  *See* 32 C.F.R. § 97.6(b)(1).  And there

---

[9] As the Richards Declaration explains, *infra*, the burden of reviewing the information sought by CACI is extensive
even for the lesser number of pages sought by CACI's motion.

can be no doubt that CACI's requested discovery in this matter would impose such a burden on DoD. The declassification reviews described in DoD's *Touhy* denial would be the prudent next step for DoD to respond to CACI's *Touhy* request, and, as more fully explained by Doug Richards, Chief of Declassification for the Joint Chiefs of Staff ("JCS") ("Richards Decl."), these reviews would impose a severe and undue burden on DoD and its warfighting components. *See generally* Ex. 3 *("*Richards Decl.") at ¶ 24; *see also* Ex. 4, Declaration of Acting General Counsel Robert S. Taylor ("Taylor Decl.") at ¶¶ 7-9.

CACI likewise has failed to challenge DoD's decision to withhold redacted materials "protected from public disclosure by specific statutes, *e.g.* 10 U.S.C. §§ 130b and 130c." Ex. 2, at 2. 10 U.S.C. § 130b authorizes, *inter alia*, protection from disclosure of "personally identifying information regarding . . . any member of the armed forces assigned to an overseas unit, a sensitive unit, or a routinely deployable unit." 10 U.S.C. § 130b(a)(1). CACI has waived any challenge to DoD's *Touhy* decision to withhold names in the reports protected by this statute. Likewise, 10 U.S.C. § 130c authorizes withholding certain information provided by foreign governments or international organizations. *See* 10 U.S.C. § 130c(b). To the extent that the annexes to the Church Report or other portions of the reports contain information protected by this statute, CACI has also waived any challenge to DoD's *Touhy* denial on those grounds.

### 2. DoD's conclusion that a further response to CACI's *Touhy* request would be unduly burdensome is reasonable, not arbitrary and capricious.

DoD also reasonably found that responding to CACI's *Touhy* request would have been unduly burdensome. To produce the requested materials without classified information, DoD obviously would have to review them first and identify and remove classified information. DoD has attested that the materials are currently marked as classified, which is an indication that

14

disclosure could be expected to cause damage to national security, *see* Exec. Order 13526 at §§ 1.2, 1.6, and thus in response to a *Touhy* request would have to carefully review the materials, and identify and remove such information. *See* Richards Decl. at ¶¶ 8, 11, 20. As DoD explains, review is a laborious process, *see id.*, and its decision to decline to undertake it in order to assist private litigants in a civil action is certainly not arbitrary and capricious. In the circumstances presented by CACI's broad request in this litigation, moreover, it would be prudent for a similar review to precede any consideration by the Secretary of Defense of the state secrets privilege to ensure that his consideration is based on current and accurate information about the harms to national security posed by release of the information.

As explained by Mr. Richards, these reviews are assigned to combatant commands for processing, and the most relevant combatant command for the material sought by CACI is CENTCOM. Richards Decl. at ¶¶ 9-10. For both CENTCOM and the JCS, a declassification review is "extremely burdensome, time consuming and resource intensive." *Id.* at ¶ 12. The declassification review "requires assignment of multiple personnel . . . within the intelligence, operations, communications, legal and strategy, plans and policy staffs," and many of these individuals are "physically located in Afghanistan or Guantanamo Bay," where the security and logistics resources of the United States military are constantly engaged in executing their assigned and primary missions, of which conducting a declassification review is not one. *Id.* at ¶¶ 12, 14.

A declassification review is necessarily painstaking: "every single word must be reviewed carefully." *Id.* at ¶ 13. As a result, it takes each individual reviewer "approximately 15-45 minutes per page" to conduct the review, and because "multiple individuals and organizations may be required to review the same document," this burden can be repeated

15

several times over. *Id.* at ¶¶ 13-14. Moreover, documents may require "review by the Department of State ('DOS') [,] the Central Intelligence Agency ('CIA')," or other U.S. government agencies, further heightening the burden. *Id.* at ¶ 16. As a result, "the amount of time that a declassification review takes . . . is extremely difficult to predict, [and] a 'simple 5-page' document might require review and action by multiple individuals across the globe . . . and [] take months to complete." *Id.* at ¶ 18.

The Richards Declaration summarizes this burden accordingly: responding to CACI's request would "result in loss of productivity and detraction from the primary missions of a combatant command, which for CENTCOM is currently a war-fighting mission." Richards Decl. at ¶ 19. Because 32 C.F.R. § 97.6(b)(1) permits DoD to reject requests such as this one as "unduly burdensome," DoD's reasonable conclusion that this standard is met should be affirmed as neither arbitrary nor capricious.

Further, far from acting in an arbitrary manner, DoD and the Army have provided authorizations for numerous military personnel with firsthand factual knowledge to appear for depositions. DoD, the Army, and other agencies of the United States have reviewed and produced thousands of pages of responsive, unclassified documents. And the United States has suggested creative options for the parties to obtain the most relevant facts to the claims in this litigation without revealing classified information. Because DoD has provided substantial assistance in discovery in this litigation, its decision to deny further discovery that would be unduly burdensome is not arbitrary and capricious.

**C. Even if the Court finds DoD's APA decision to be arbitrary and capricious, it should not compel an assertion of the state secrets privilege.**

16

Even if the Court were to find that DoD did not have a reasonable basis to deny CACI's *Touhy* request, it should not require an assertion of the state secrets privilege. For the reasons set forth above, DoD should not be required to make such an assertion to demonstrate that its agency action subject to APA review is reasonable, particularly where declarations attesting to the need to protect classified information serve the same purpose. Moreover, as in any matter subject to APA review, if the Court finds an agency has not supported its decision adequately, it should identify its concerns and remand the matter to the agency for reconsideration and a further response. *See Tafas v. Dudas*, 530 F. Supp. 2d 786, 793 (E.D. Va. 2008) (Cacheris, J.) (*citing Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) ("[I]f the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.")).

In addition, the Court should first exhaust other avenues that may resolve the relevance of the classified information sought by CACI before requiring the United States to undertake consideration of a state secrets privilege assertion. This is so for several reasons. First, the Supreme Court has made clear that the state secrets privilege "is not to be lightly invoked." *United States v. Reynolds*, 345 U.S. 1, 7, (1953). For this reason, litigants and the Court are under an obligation to ensure that its "necessity [is] greatly minimized," by pursuing the available alternatives to avoid "forcing a showdown on the claim of privilege." 345 U.S. at 11. *See, e.g., General Dynamics Corp. v. U.S.*, 131 S. Ct. 1900, 1910 (2011) (in government contracts cases, declaring a "contract unenforceable because of state secrets" should be "the option of last resort.").

17

It is well-established that matters of privilege should "appropriately be deferred" instead of being resolved unnecessarily. *Freeman v. Seligson*, 405 F.2d 1326, 1338 (D.C. Cir. 1968). As the Court of Appeals for the District of Columbia Circuit explained, deferral is particularly appropriate as to matters of privilege because privilege assertions involve "frequently, and in this case almost certain[ly], [a] laborious page-by-page examination" of the pertinent documents by "the agency, and perhaps also [by] the court," if a privilege assertion is to be made. *Id.* As the court in *Freeman* noted, "it cannot be known exactly which of the documents in certain categories are proper subjects of a claim of privilege until they have been reviewed in detail." *Id.* at 1338 n.62. Here, where an immense burden would be required of the government to decide whether to assert a privilege over information of tangential relevance to this action, the necessity should be "avoided or curtailed." *Id.* at 1339.

Second, this Court's "discretion with respect to discovery matters is broad." *Vodrey v. Golden*, 864 F.2d 28, 32 (4th Cir. 1988), and thus it may structure and order proceedings to resolve other threshold issues to avoid placing a privilege assertion inevitably at issue. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir.1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion."); *Ardrey v. United Parcel Service*, 798 F.2d 679, 682 (4th Cir. 1986) ("[A] district court has wide latitude in controlling discovery and [] its rulings will not be overturned absent a showing of clear abuse of discretion."). In part, this authority flows from the Court's "inherent equitable powers" and "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Tabron v. Grace*, 6 F.3d 147, 159 (3d Cir. 1993); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). In addition, the Federal Rules of Civil

Procedure provide the Court ample discretion to appropriately structure discovery. *See, e.g.*, Fed. R. Civ. P. 26(b)(2); (c)(1); (c)(3); (c)(4) (authorizing Courts to direct that "discovery not be had," be limited to "certain matters," or controlled to prevent "undue burden or expense").  The Supreme Court has stressed that "district courts should not neglect [to exercise] their power to restrict discovery when justice requires" it.  *Herbert v. Lando*, 441 U.S. 153, 177 (1979).

Indeed, in this very case, the Fourth Circuit noted that "[w]here discovery would hamper the military's mission, district courts can and must delay it."  *Al Shimari v. CACI Int'l*, 679 F.3d 205, 219 (4th Cir. 2012) (internal quotations omitted).  The Court of Appeals also observed that discovery in this case should require "little intrusion," *id.*, into the interests of the United States, consistent with the position taken by the United States in its amicus brief that district courts "have the authority to manage and properly limit discovery and other proceedings to prevent any adverse effect on military and other government operations." *See* Brief for the United States as Amicus Curiae at 6, *Al Shimari v. CACI Int'l*, No. 09-1335 (4th Cir. Jan. 14, 2012) ("Amicus Br."); *see also* Amicus Br. at 3 ("discovery should be carefully limited . . . [a]nd any factual inquiry into the conduct of military and contractor personnel in a war zone must . . . avoid intruding into the military command decision-making process.").  Granting CACI's  motion as to the requested reports and requiring a formal assertion of privilege would plainly hamper DoD's mission.

Third, by exhausting other avenues that would vitiate the relevance of the classified information sought by CACI, the Court may be able to avoid implicating the state secrets privilege in this case altogether, thereby sparing the military from the burdens of asserting the privilege and any need for the Court to rule on such an assertion.  CACI's motions to strike certain claims from the Third Amended Complaint could minimize or eliminate entirely the

purported need for unredacted versions of the reports. *See* dkt. no. 300, dkt. no. 312. Similarly, if three of the four plaintiffs cannot appear for their depositions within the district, this may, depending on the appropriate remedy the Court chooses to impose, eliminate any relevance of the classified information sought by CACI. *See* dkt. no. 309. Indeed, any future motions that may affect the relevance or scope of the requested classified information—such as a successful motion to exclude the reports as inadmissible—could limit or preclude the ultimate need for a state secrets determination. Because this would permit the parties to avoid "a showdown on the claim of privilege" altogether, the Court should structure the litigation accordingly. *Reynolds*, 345 U.S. at 10; *see Alexander v. FBI,* 186 F.R.D. 188, 192 n.1 (D.D.C. 1999) (bifurcating a decision on the presidential communications privilege).

Relatedly, CACI has rejected litigation alternatives that would have allowed it access to the greater part of the information it has requested, an approach at variance with the obligations identified in *Reynolds* itself, where the Supreme Court chided the party seeking state secrets for not pursuing reasonable alternatives and instead "forcing a showdown on the claim of privilege." *Reynolds*, 345 U.S. at 10. For example, CACI declined an offer by the United States to produce a version of the Taguba report with almost all of the names unredacted, *see infra* 3-4, which would have satisfied their asserted need to identify the individuals whose statements might be untrustworthy because they "were prosecuted by the United States." *See* MTC Memo at 13. Likewise, CACI asserts that it needs to "review the Reports in their entirety" to challenge the trustworthiness of specific conclusions and factual statements which it believes to be incorrect. *See, e.g.*, MTC Memo. at 14 (noting that the "Taguba Report mixes up the employer of each of the civilians named" and complaining about the lack of foundation for the naming of one particular CACI employee). To minimize any need for a showdown on privilege on this issue,

the United States also offered to authorize the depositions of the three report authors. From briefing on CACI's APA challenge to the denial of these depositions, the Court is aware of the burdens on the United States of providing this deposition testimony. *See* Dkt. 309 (Order denying CACI's Motion to Compel Deposition Discovery). Nevertheless, the United States made this good faith offer to avoid involving the Court in this issue unnecessarily.[10] *See* Local Rule 37(E). Rather than reward CACI's lack of diligence and failure to pursue the available means of discovery, if the Court finds that the record is inadequate to satisfy CACI's needs, it should conclude that discovery of unclassified information using one of these alternatives is the appropriate means of further discovery. *See* Fed. R. Civ. P. 26(c)(1)(c) (authorizing courts to "prescrib[e] a discovery method other than the one selected by the party seeking discovery").

Finally, by postponing any consideration of privilege until no alternatives remain, this Court can avoid unnecessarily and prematurely imposing a significant burden on cabinet officials at this stage of litigation when CACI may have satisfied, at most, the broad standard of "relevance" under Fed. R. Civ. P. 26. As both CACI and the government recognize, "a formal claim of [the state secrets] privilege [must be] lodged by the head of the department . . . after actual personal consideration by that officer." *Reynolds*, 345 U.S. at 7-8. In his September 23, 2009 Memorandum Governing Invocation of the State Secrets Privilege ("SSP Memo"), Attorney General Eric Holder established his commitment to ensuring that the process of invoking the state secrets privilege is a careful and serious one. *See* Ex. 5 (SSP Memo). As the

---

[10] At CACI's request, the United States also obtained permission from the Navy to extend this offer to the Church Report; before the United States could do so, however, CACI informed counsel that it would prefer to file this motion. Similarly, although the United States has authorized depositions of every requested government witness with possible first-hand knowledge of the events at issue in this litigation, CACI has yet to take a single deposition of a witness authorized by the government. Likewise, as explained in the United States' opposition to CACI's motion to compel interrogator identities, the government offered to authorize depositions of the individuals known to have interrogated plaintiffs; with the filing of that motion, the United States learned that CACI had refused that offer as well.

Attorney General explained, the purpose of the SSP Memo is "to strengthen public confidence that the U.S. Government will invoke the privilege in court only when genuine and significant harm to national defense or foreign relations is at stake and only to the extent necessary to safeguard those interests." *Id.* at 1. The SSP Memo identifies significant procedural and substantive requirements that must be followed prior to the invocation of the state secrets privilege. *Id.* at 2-3. DoD has established its own procedures also to ensure that due consideration be given by high level officials to the weighty issues involved in invoking the privilege. *See* Taylor Decl. at ¶¶ 4, 8-11. The end result is that invocation of the state secrets privilege here would involve senior executive officials, including all three of the highest-ranking officials in the Department of Justice and the highest-ranking official in the Department of Defense. *See Reynolds*, 345 U.S. at 7-8; Taylor Decl. at ¶¶ 3, 8-10; SSP Memo. at 2-3 & n.2.

The Attorney General's and the Secretary of Defense's time and energy should not be diverted from their critical law enforcement and national security duties to personally consider the issues involved in invoking the state secrets privilege here unless and until it becomes unavoidably necessary for purposes of this litigation. *See* Taylor Decl. at ¶¶ 8-10; Ex. 5, SSP Memo. at 3-4. As courts have recognized in other contexts, "[h]igh ranking government officials have greater duties and time constraints" than other government employees. *In re: FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995). "[P]ublic policy requires that the time and energies of public officials be conserved for the public's business to as great an extent as may be consistent with the ends of justice in particular cases." *Community Fed. Savings & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 96 F.R.D. 619, 621 (D.D.C. 1983). For these reasons, this Court should not require an assertion of the state secrets privilege.

22

**D. If the Court finds that the state secrets privilege must be asserted at this stage, it should provide the United States with the appropriate opportunity for the Secretary of Defense and the Attorney General to personally decide how to proceed.**

For the reasons set forth above, the government submits that a formal assertion of the state secrets privilege should not be required to uphold DoD's *Touhy* decision as reasonable. But if the Court were to conclude otherwise, the government would at least request an adequate opportunity to do so. As explained above, the Secretary of Defense must personally consider whether DoD should invoke the state secrets privilege to protect any of the information CACI has sought, and the Attorney General must personally approve the defense of a privilege assertion by the Secretary. And, as also explained above, under the circumstances of this case, DoD must first identify the classified information that it seeks to protect – a laborious process that will require review of a substantial volume of material. *See* Taylor Decl. ¶ 8; Richards Decl., ¶¶ 11-21. Such a review, as described above in Section IV.B.2, would enable DoD to confirm: 1) that the requested material cannot be released publicly; and 2) the reasons that disclosure of certain information reasonably could be expected to cause harms to national security. *See* Richards Decl. at ¶¶ 8, 11, 20; *Freeman*, 405 F.2d at 1338 n.62 (recognizing that "it cannot be known exactly which [sets of information] are proper subjects of a claim of privilege until they have been reviewed in detail"). Thereafter, the Secretary of Defense must take time out of his duties to personally consider the matter and decide whether to assert privilege.

With regard to the process within the Department of Justice, the SSP Memorandum requires, *inter alia*, that the Assistant Attorney General "personal[ly] evaluat[e] the evidence submitted by the department or agency"; that the Assistant Attorney General provide his or her

23

recommendation to a review committee composed of senior DoJ officials; that this committee make a recommendation to the Deputy Attorney General through the Associate Attorney General; and that the ultimate invocation of the SSP require "the personal approval of the Attorney General." SSP Memo. at 2, 3.

Based on the high-level process required for personal consideration by two cabinet-level officials, the United States therefore requests that, in the event that the Court finds DoD acted arbitrarily and capriciously *and* that the Court finds the government must assert the state secret privilege now, the United States respectfully requests that the Court allow at least 90 days from the date of any such decision for the United States to determine whether it will assert the state secrets privilege over the information at issue in this motion.

## V.    CONCLUSION

For the foregoing reasons, CACI's Motion to Compel should be denied.

Dated: April 17, 2013              Respectfully submitted,

                                   STUART F. DELERY
                                   Acting Assistant Attorney General

                                   NEIL H. MacBRIDE
                                   United States Attorney

                                   /s/_____
                                   R. JOSEPH SHER
                                   Assistant United States Attorney
                                   Deputy Chief, Civil Division
                                   Office of the United States Attorney
                                   Justin W. Williams U.S. Attorney's Building
                                   2100 Jamieson AVE
                                   Alexandria VA 22314
                                   Telephone: (703) 299-3747
                                   Facsimile: (703) 299-3983

                                   JOSEPH H. HUNT

24

Branch Director
ARTHUR R. GOLDBERG
Assistant Branch Director
ERIC J. SOSKIN (PA Bar 200663)
SCOTT LEVIN
RODNEY PATTON
SEAN O'DONNELL
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Tel: (202) 353-0533
Fax: (202) 305-2685
Email: Eric.Soskin@usdoj.gov
Attorneys for the United States

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of April, 2013, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification

of such filing (NEF) to the following:

George Brent Mickum IV
Law Firm of George Brent Mickum IV
5800 Wiltshire Drive
Bethesda, Maryland 20816
gbmickum@gmail.com

J. William Koegel, Jr.
Virginia Bar No. 38243
John F. O'Connor
Attorneys for Defendant
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
wkoegel@steptoe.com
joconnor@steptoe.com

Dated:  April 17, 2013

_____/s/_____
R. JOSEPH SHER
Assistant United States Attorney
Deputy Chief, Civil Division
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson AVE
Alexandria VA 22314
Telephone: (703) 299-3747
Facsimile: (703) 299-3983
Attorney for the Defendants