# Exhibit 3

I, Douglas G. Richards, pursuant to 28 U.S.C. section 1746, hereby declare as follows:

1. I currently serve as the Chief of Declassification for the Joint Chiefs of Staff (JCS), Joint Staff, and manager for the nine United States Combatant Commands' Automatic Declassification review program. I possess over 17 years of experience in program and policy administration in the classification analysis, national security and information security fields and am frequently requested to provide advice to other federal agencies, congressional boards and national-level organizations on declassification policies, procedures and best practices concerning innovative technologies and solutions.

2. Prior to joining the Joint Staff, I was a subject matter expert in national security classification with the National Nuclear Security Administration, Department of Energy, Office of the Secretary of Defense and the United States Air Force. I hold an MA in Security Policy Studies, with a focus on United States National Security and Transnational Security, from the George Washington University's Elliot School of International Affairs, and BA degrees in Economics and Russian Studies from George Mason University.

3. As Chief of Declassification for the JCS and Joint Staff I manage workflow, priorities and production metrics of a team of fourteen federal civilian and contract employees to ensure an acceptable level of quality for seven types of JCS declassification processes: Freedom of Information Act, Mandatory Declassification Review, Security Review, congressional budget reviews, Department of State Foreign Relations of the United States review requests, automatic declassification requirements mandated by Executive Order 13526 and high-level special reviews requested by congressional members, the Office of the Undersecretary of Defense for Intelligence and the Department of Defense (DOD) Office of General Counsel (OGC).

4. I ensure consistent application of JCS, combatant command and DOD policy and classification guidance to accurately identify and protect classified information concerning strategic nuclear war planning, conventional military operations, military utilization of nuclear weapons, special warfare operations, detainee affairs and intelligence.

5. I represent the Joint Staff at interagency meetings, public forums, symposiums, conferences and interagency working groups.

6. I develop, revise and promulgate JCS and Joint Staff policy documents, directives, instructions, manuals and declassification guidance to ensure compliance with applicable federal statutes, executive orders and DOD policy.

7. I submit this declaration in support of the United States' Oppositions to Defendant's Motions to Compel in the *Al Shimari v CACI, et al.* federal lawsuit in order to protect classified information from improper disclosure in order to prevent harm to national security. I also submit this declaration in order to describe the burden of compliance with CACI's subpoena, particularly as it relates to declassification review. The statements in

this declaration are based upon my personal knowledge and upon information made available to me in the performance of my official duties. My conclusions are based on my years of service and evaluations of the declassification review process.

8. I am aware that CACI's Motion to Compel seeks unredacted versions of the Taguba, Jones-Fay, and Church reports and their annexes. I am also aware that these unredacted reports contain materials that are currently marked as classified. As such, disclosure of this information would be deemed to cause harm to national security unless and until that information is properly reviewed and declassified.

9. I am aware that the above referenced case is currently in the "discovery" phase. As a result, I am aware of the potential for a requirement for U.S. Central Command (CENTCOM) and U.S. Southern Command (SOUTHCOM) to be requested to conduct "declassification reviews" of a substantial number of documents and pages.

10. My office, at the request of DOD OGC, would initiate any tasking of this nature to either CENTCOM or SOUTHCOM. My office would therefore be responsible for tasking the combatant command to conduct the declassification review and would ultimately also be the office delivering the "final" documents to DOD OGC. In other words, I would be involved throughout the entire review process.

### 1) Declassification Review Process

11. A declassification review is not a generalized "pass/fail" review. Instead, a declassification review is a word-by-word analysis of information to determine whether the information must remain classified in accordance with applicable classification guidance and, consequently, withheld from disclosure to personnel without appropriate security clearances. A declassification review requires comprehensive and consistent analysis of the sensitivities of the information, accurate application of classification guidance, and the precise use of redactions to protect all currently classified information. This is a complex, time-consuming process because each redaction applied to classified information must correspond to the applicable classification guide based on the topic and context of the information.

12. The process to conduct a declassification review of documents is extremely burdensome, time consuming and resource intensive. The work to conduct reviews requires assignment of multiple personnel, at both the Joint Staff and combatant command level, within the intelligence, operations, communications, legal and strategy, plans and policy staffs.

13. Because every single word must be reviewed carefully these reviews take, on average, each individual approximately 15-45 minutes per page to read, analyze, take notes (if applicable) and cross-reference. That means, as an example, the declassification review of a single 400-page document can equate up to 300 man-hours to complete.

14. Additionally, multiple individuals and organizations may be required to review the same document due to multiple areas of content within the document. Each office within an organization with programmatic purview over the information must conduct a declassification review to insure the proper subject-matter-expert identifies and withholds their classified equities. In addition, declassification reviews require multiple levels of quality assurance review to ensure consistency with the withholding of information and overall accuracy of the review determination. Declassification review requests are typically not considered a tasking priority within the combatant commands due to more critical ongoing military operations and limited personnel assets available to focus exclusively on conducting comprehensive declassification reviews. This necessity makes reviews conducted by CENTCOM and SOUTHCOM particularly time-consuming because many of the personnel required to participate in the reviews are physically located in Afghanistan or Guantanamo Bay, respectively.

15. Once the combatant command "action officers" have completed their review the documents must then be delivered to the leadership of the combatant commands for their review and approval, which ultimately concludes with approval and endorsement by the combatant command Chief of Staff (a two-star Flag officer). Once endorsed by the Chief of Staff, the combatant command then delivers the action to my office at the Joint Staff where it subsequently requires an additional review.

16. An additional factor that can lead to substantial delay in a declassification review, and one that cannot often be anticipated is if the documents require review by another agency. For example, although a combatant command can address classification concerns specific to their organization, it often happens that the documents also require review by the Department of State ("DOS") or the Central Intelligence Agency ("CIA"), for example. It is not until a combatant command completes their review of the documents in their entirety that a determination can be made if another organization or agency must also review prior to completing the declassification review process. It is only at this point then, that my office would deliver the documents to the DOS or CIA for their declassification review.

17. It is only after all combatant command and interagency interests are addressed, that my office completes the review. Upon completion by my office, the declassification review is then delivered to the Vice Director of the Joint Staff (a three-star Flag officer) for her review and approval. If upon her endorsement the documents are declassified, they are delivered to the DOJ or DOD OGC for production in litigation.

18. Therefore, pursuant to the above, the amount of time that a declassification review takes even for a modest number of pages is extensive and is extremely difficult to predict. Just a "simple 5-page" document might require review and action by multiple individuals across the globe and across the interagency and can take months to complete. In the most recent declassification review request for this case tasked to CENTCOM, *Request for Declassification review of Additional Documents Provided by CENTCOM in Al-Shimari et al. v. CACI Int. et al*, it required 17 work-days for CENTCOM to complete the declassification review and deliver the action to my office for the quality assurance

review and final administrative processing. The documents in this action contained only 135 pages of classified material and were not considered complex in content. It is not until the process runs its course that a determination can be made as to how difficult a review actually is.

19. Finally, these types of reviews result in loss of productivity and detraction from the primary missions of a combatant command, which for CENTCOM is currently a war-fighting mission. As a result, it is not feasible or appropriate to ask a combatant command to shift assets and personnel away from their primary tasks and mission to focus on actions such as declassifications reviews.

20. Even if the declassification review process results in declassification of portions of the material in the Taguba, Jones-Fay, and Church reports, any classified information that remains could not be disclosed without harm to national security. Thus, the court should not grant CACI's demand for fully unredacted versions because of DoD's need to protect currently classified information that likely would remain in these materials. In any event, as presently marked, these materials must continue to be treated as classified and protected.

21. Although it is impossible to predict and provide a definitive explanation as to "how long" a declassification review can or will take, the declassification review described in paragraph 18 above (i.e. the 135 pages of classified material) provides some guidance. Based upon the amount to of manpower it took to conduct this limited review, a full declassification review of the reports and their annexes would significantly tax DoD declassification resources and take several months to complete.

22. I declare under penalty of perjury that the foregoing is true, accurate and correct. Dated this 16th day of April 2013.