# Exhibit 4

Declaration of Robert S. Taylor

Acting General Counsel, Department of Defense

Pursuant to 28 U.S.C. § 1746, I, Robert S. Taylor, declare:

1. I am the Principal Deputy General Counsel for the Department of Defense ("DoD") and, since January 1, 2013, have also served as DoD's Acting General Counsel.

2. By statute, the Department of Defense General Counsel is designated "the chief legal officer of the Department of Defense" to "perform such functions as the Secretary of Defense may prescribe." *See* 10 U.S.C. § 140(b). Many of the specific functions and duties directed by the Secretary of Defense are contained in DoD Directive 5145.01, "General Counsel of the Department of Defense," dated May 2, 2001 and incorporating Change 2, June 26, 2009. Among other things, the General Counsel is responsible for providing advice to the Secretary of Defense on all legal matters involving the DoD and coordinating significant legal issues before the Department of Justice, including litigation involving DoD or in which DoD has an interest. *Id.* at ¶¶3.1 and 3.9.

3. In exercising these authorities, the DoD General Counsel advises the Secretary of Defense on recommendations that the Secretary prevent the disclosure of information in litigation that could endanger national security by invoking the state secrets privilege ("the state secrets privilege" or "the privilege").

4. Under controlling case law and Administration policy, a decision to invoke the state secrets privilege is a step that is not taken lightly. The Attorney General has stated that the United States Government will only invoke the privilege when "genuine and significant harm to national defense or foreign relations is at stake and only to the extent necessary to safeguard those interests." Memorandum for Heads of Executive Departments and Agencies, Subject: State Secrets Privilege, September 23, 2009 (Exhibit 1, "Attorney General's Memorandum"). Further, the Attorney General has advised that any agency seeking invocation of the state secrets privilege in litigation initially must provide for the Attorney General's consideration a signed declaration from the head of the department or agency, based on personal knowledge, that details: (1) the nature of the information that must be protected from disclosure; (2) the significant harm to national security that would occur if the information were disclosed; (3) the reason why unauthorized disclosure would cause such harm, and (4) other information relevant to the decision whether the privilege should be invoked in litigation. *Id.*

1

5. I am aware that on April 9, 2013, CACI Premier Technology, Inc. ("CACI") filed a motion to compel the United States to produce "complete and unredacted" copies of three reports[1] authored by senior military officials in connection with a suit to which the United States is not a party, *Al Shimari v. CACI*. These three reports – and nine other reports prepared by DoD officials – were the subject of a *Touhy* letter and Rule 45 subpoena directed to me and received by my office in late January 2013. *See* Exhibit 3 to Declaration of J. William Koegel, Jr., Docket Entry #281-1. I am also aware that CACI filed a separate motion to compel the United States to produce the names of certain interrogators whose identities are classified pursuant to DoD Directive 3115.09, to the extent such information is in redacted portions of material produced in response to CACI's *Touhy* letter and Rule 45 subpoena, or such information is within the knowledge of former Army personnel who are being deposed by the parties.

6. On behalf of DoD, counsel from the Department of Justice interposed a number of objections to CACI's Rule 45 subpoena (Exhibit 2). DoD specifically objected to the production of documents that included classified information or information that must be protected from release in the interest of national security and the safety of military personnel. *Id.* at ¶4. Subsequently, in letters of March 7, 2013 (Exhibit 3) and April 4, 2013 (Exhibit 4), the Director of DoD's Office of Litigation Counsel denied CACI's *Touhy* requests to the extent they sought classified information.

7. Although large portions of the Taguba, Jones-Fay, and Church reports and their associated annexes and appendices have been publicly released after, in some cases, appropriate declassification reviews, portions of all three reports or their annexes and appendices remain classified. In addition, information identifying interrogation personnel in connection with the intelligence interrogation of specific detainees in material that has been sought by the parties is also classified. Consistent with governing law, rule, regulation, and policy, such information must be safeguarded and protected from public disclosure unless and until it has been declassified by proper authority. *See, e.g.*, EO 13526, Part IV; DoD Instruction 5200.01, "DoD Information Security Program and Protection of Sensitive Compartmented Information," dated October 9, 2008, and incorporating Change 1, June 13, 2011, ¶4.a; DoD Directive 3115.09, "DoD Intelligence Interrogations, Detainee Debriefings, and Tactical Questioning," dated October 11, 2012,

---

[1] These three reports are the: (1) Army Regulation ("AR")15-6 investigation of the 800th Military Police Brigade, conducted by Major General Antonio Taguba in 2004 ("Taguba Report"); (2) AR 15-6 investigation of intelligence activities at Abu Ghraib detention facility and the 205th Military Intelligence Brigade, conducted by Lieutenant General Anthony Jones and Major General George Fay in 2004 ("Jones-Fay Report"); and (3) the review of DoD detention operations and detainee interrogation techniques, conducted by Vice Admiral Albert Church and completed in 2005 ("Church Report").

2

Enclosure 4, paragraph 13. The process for declassification within DoD is outlined in DoD Manual 5200.01, "DoD Information Security Program: Overview, Classification, and Declassification," dated February 24, 2012, Volume 1, Enclosure 5. Normally, a declassification (or downgrading) determination is made by the Original Classification Authority (OCA) for the organization with jurisdiction over the information or, in the case of an organization that no longer exists, like Combined Joint Task Force -7, its successor or parent organization. *Id.* at ¶¶3a and 3d.

8. An invocation of the state secrets privilege requires the agency head to attest that an unauthorized disclosure currently can reasonably be expected to cause significant harm to national security. Particularly in the circumstances of CACI's broad request for information in this case, involving information originally classified up to a decade ago, review for possible declassification would be prudent prior to the evaluation by the Secretary of Defense of whether the strict criteria for invoking the state secrets privilege can be met. Of course, that declassification review would occur prior to consideration by the Secretary of Defense regardless of whether or not the Secretary of Defense ultimately decides to invoke the privilege.

9. If, after a declassification review of the material requested by CACI in this case, the DoD Component with jurisdiction over the information determines that the material cannot be disclosed, the Component head would prepare a detailed recommendation, setting forth all of the evidentiary support the Secretary of Defense should consider under the Attorney General's Memorandum. That recommendation would be forwarded to the General Counsel. If, after internal legal review, the General Counsel determines that the strict criteria for invocation of the privilege have been satisfied, the recommendation would then be coordinated with organizations within the Office of the Secretary of Defense with equities. In light of CACI's request for information in this case, at a minimum, this would include the Undersecretary of Defense for Intelligence and the Undersecretary of Defense for Policy. In the case of information sought by CACI relating to detainee treatment, the General Counsel would also coordinate with the Deputy Assistant Secretary of Defense for Rule of Law and Detainee Policy.

10. Following coordination, a recommendation that the Secretary of Defense invoke the state secrets privilege would then be presented by the General Counsel to the Secretary for personal review and consideration. This would include review and execution of the draft declaration the Secretary of Defense is required to provide to the Attorney General.

11. In other cases that DoD has processed under the Attorney General's Memorandum, it has taken more than 30 days to review, coordinate, and obtain the Secretary of Defense's

3

personal consideration and approval for a state secrets invocation following receipt of a DoD Component's recommendation that the privilege be invoked.

I declare under penalty of perjury that the foregoing is true and correct based on information known personally by me and on information provided to me within the course and scope of my duties as Acting General Counsel for the Department of Defense.

Executed on _April 17, 2013_ in Arlington, Virginia.

Robert S. Taylor