**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| SUHAIL NAJIM<br>ABDULLAH AL SHIMARI et, al.,       ) | |
| ) | |
| Plaintiffs,     ) | C.A. No. 08-cv-0827 GBL-JFA |
| ) | |
| vs.     ) | |
| ) | |
| CACI INTERNATIONAL, INC., et al.     ) | |
| ) | |
| ) | |
| Defendants.     ) | |
| _____) | |

**OPPOSITION BY THE UNITED STATES TO DEFENDANT'S MOTION TO COMPEL THE UNITED STATES TO PRODUCE DOCUMENTS AND PERMIT TESTIMONY IDENTIFYING INTERROGATION PERSONNEL HAVING CONTACT WITH PLAINTIFFS**

## I.     INTRODUCTION

Defendant CACI Premier Technology (hereinafter "CACI") moves to compel the government to produce the identities of the individuals who interrogated the named plaintiffs, information which is properly classified pursuant to DoD Directive 3115.09.  Defendant's Mot. to Compel ("MTC"), dkt. no. 275; Mem. in Support of Defendant's Mot., dkt. no. 276 ("MTC Memo.").  CACI contends that this information is "the single most important fact in this case," MTC Memo. at 1, even though to date it has not noticed *any* deposition of *any* individual who served as a former interrogator at Abu Ghraib, including the CACI interrogators known to the parties by name, and, at best, CACI  has only now expressed a "desire" to depose these individuals should their identities be disclosed.  *Id.* at 12.  CACI's motion is nothing more than a blatant attempt to force the government to make a state secrets assertion, and in its rush to do so

CACI has ignored the local rules by failing to meet and confer.  It has also rejected (and apparently misconstrued) a government proposal that would have allowed depositions of these interrogators to proceed in a manner that would protect their identities while allowing the parties to obtain discovery that on its face is likely more pertinent to their claims and defenses than simply these interrogators' names.

Moreover, CACI is simply wrong that the government must either present a formal assertion of the state secrets privilege or produce the requested information.  The Fourth Circuit has clearly held that review of the denial of a *Touhy* request arises under the APA's deferential standard of review, and agency making the *Touhy* determination need only show that its decision to protect classified information was reasonable.   DoD and the Army have rightly concluded that an interrogator's identity is appropriately classified under DoD Directive 3115.09, which classifies at the SECRET level the names and visual identities of interrogators and their support personnel to the extent they are linked to any detainee they interrogated for military intelligence purposes.  Koegel Decl. at Ex. 3.  Pursuant to their *Touhy* regulations, such information is appropriately withheld.  DoD and the Army's *Touhy* decisions are therefore not arbitrary and capricious, and the Court should affirm these decisions by denying CACI's motion.

In the event that the Court finds DoD and the Army's decisions to be arbitrary and capricious, which they are not, due to the damage to national security that could reasonably be expected to result from disclosing these individuals' identities, the Court should use its inherent equitable powers and its discretion to appropriately structure discovery in a manner that protects their identities. The government submits that its proposal to provide deposition testimony of the interrogators pseudonymously and telephonically would protect their names and visual identities while allowing the parties to inquire into pertinent facts, including but not limited to whether

2

these interrogators were Army personnel or CACI contractors, along with their interactions with and treatment of the named plaintiffs, and their knowledge of mistreatment or abuse, if any, the named plaintiffs suffered.

The assertion of the state secrets privilege is a significant undertaking, one which involves the personal attention of the Attorney General and Secretary of Defense.  It should only be used as an option of last resort, and only after CACI has established that all other options of reasonably tailored discovery have been exhausted and failed.  Because CACI has not done so here, the Court should not compel an assertion of the privilege.

For these reasons, CACI's motion should be denied and DoD's and the Army's *Touhy* determinations affirmed.  In the alternative, pursuant to its authority, the Court should protect the interrogators' identities and implement the government's proposal.

## II.   BACKGROUND

### A.  DoD Directive 3115.09

Sponsored by the Under Secretary of Defense for Intelligence (USD(I)), and signed by the Deputy Secretary of Defense, DoD Directive 3115.09 (hereinafter "DoDD" or "Directive") governs conduct of DoD's intelligence interrogations, detainee debriefings, and tactical questioning.  The Directive applies to "DoD military personnel, DoD civilian employees, and DoD contractor personnel to the extent incorporated in their contracts, who conduct or support intelligence interrogations, detainee debriefings, or tactical questioning." *Id.* at ¶2(b).  Among other things, it addresses the classification level of certain material related to interrogations conducted for military intelligence purposes.  Paragraph 13(a) of Enclosure 4 to the Directive provides:

3

> The names and visual representation of DoD interrogators, debriefers, contract interrogators, support personnel, and foreign government interrogators shall be classified, at a minimum, "SECRET//RELEASABLE TO" or "SECRET//NOFORN," as appropriate, when their identities are associated with the interrogation, debriefing, or other intelligence questioning of a specific detainee, pursuant to section 1.4.(c) of [Executive Order 13526, "Classified National Security Information," December 29, 2009]. This classified information shall be handled and protected in accordance with [Executive Order 13526, "Classified National Security Information," December 29, 2009] and [DoD Manual 5200.01, "DoD Information Security Program," Volumes 1-3, February 24, 2012] and paragraph 12.c. of this enclosure.

DoDD 3115.09, October 11, 2012. These provisions were first added to the Directive on October 9, 2008, Ex. 1 at ¶ 11(a), and they remain in effect in the most recent version of the Directive issued on October 11, 2012. Koegel Decl. at Ex. 3.

### B. CACI's *Touhy* requests for named plaintiffs' files.

On January 16, 2013, CACI issued a subpoena to DoD, Ex. 2, containing 28 document requests, which in turn have over eighty associated subparts. Request Number 1 asks DoD to provide at least fifteen sub-categories of information "relat[ed] to the arrest, detention, imprisonment or interrogation of any Named Plaintiff." *Id.* The DoD subpoena was issued by the U.S. District Court of the District of Columbia and seeks production of responsive material to CACI's attorneys' offices in Washington, DC. *Id.*

Under DoDD 3115.09, any government information that links the names or visual representations of DoD interrogators, support personnel and the like to any detainee at Abu Ghraib who was questioned for intelligence purposes, including, if applicable, the named plaintiffs, is classified. As a result, and pursuant to the DoD's applicable *Touhy* regulations, to the extent that any such information is contained in material requested by the parties, and which the government has agreed to produce, it has been redacted.

4

On March 12, the government produced 378 pages of material in response to Request 1; some of the pages of which, in whole or in part, contained redactions. Ex. 3. In the accompanying production letter, DoD provided the following *Touhy* response to the requested material:

> Please note that the Original Classification Authority has determined that portions of these documents remain classified and cannot be released. Thus, to the extent your request seeks unredacted copies of documents containing classified information, your request is denied. *See* 32 C.F.R. § 97.4."

*Id.* To date, the government has not made any representations as to whether these pages contain identifying information for the individuals who interrogated the named plaintiffs. Nevertheless, CACI now moves to have those redactions lifted to the extent they contain any such information.

## C. CACI's *Touhy* requests for deposition testimony regarding interrogator identities.

On February 25, 2013, CACI sent a letter to DoJ counsel "request[ing] deposition testimony from [15] current or former DoD personnel." Ex. 4. In recent weeks, the deposition schedules for both parties have been in a state of flux. Suffice it to say, as of the date of this filing, the parties have taken the depositions of only two individuals, Private ("PVT") Ivan Frederick and Sergeant ("SGT") Hydrue Joyner. Apparently, the parties intend to depose approximately seven additional individuals before the close of discovery on April 26.

Most of these individuals are current or former Army personnel; thus it has been the Army's responsibility to authorize their depositions pursuant to its applicable *Touhy* regulations. *See, e.g.*, Ex. 5. To the extent the Army has authorized current or former personnel to be deposed, such authorization strictly prohibits them from providing official information that is classified by law from public disclosure, including that classified by the Directive. *Id.* at 2 (citing DoD Directive 3115.09, October 11, 2012).

Thus, in accordance with those regulations, the Army's authorization allowing current or former personnel to testify has been limited to the following:

> Approved Army personnel may only provide factual information regarding official information and may not provide opinions, answer hypothetical questions, or act as an expert witness. This limitation is based on Army policy generally prohibiting government employees from appearing as expert witnesses in private litigation. *See* 32 C.F.R. 516.42; *see also id.*§§ 97.6, 516.49. Additionally, approved Army personnel may not provide official information that is classified, privileged, or otherwise protected by law from public disclosure; this includes, but is not limited to, any information about the identity of DoD interrogators, debriefers, contract interrogators, support personnel, and foreign government interrogators when their identities are associated with the interrogation, debriefing, or other intelligence questioning of a specific detainee. *See* DoD Directive 3115.09, October 11, 2012.

*Id.* The practical effect of this authorization is that current and former Army personnel are not allowed to testify as to information that would identify or link the identity of any military intelligence interrogator or support personnel with the interrogation of a specific detainee.[1] So, for example, at his deposition, PVT Frederick was directed not to disclose information that would tend to link the identity of an interrogator with an interrogation for intelligence purposes of a detainee, whether or not the detainee in question was a named plaintiff. *See* Koegel Decl. at Ex. 4. (excerpts of PVT Frederick's Deposition) at 161:9-15.

**D. The government's proposal to conduct interrogator depositions in a manner that conceals their identity.**

The government has determined the identities of five individuals who interrogated three of the named plaintiffs. Because the Directive classifies the names and visual representations of these five individuals, the government is unable to disclose their identities to the parties.

---

[1] To the extent that Army personnel testified and provided information covered by DoDD 3115.09 (13(a)) at a court martial or other judicial proceeding before the October 2008 version of the Directive was issued, that person is allowed to review and confirm his or her prior testimony and verify that the testimony was and still remains true. But because DoDD 3115.09 is now in effect, such person is not authorized to otherwise confirm or provide that information.

Recognizing the impediments DoDD 3115.09 imposes, including at depositions, the government approached both parties on March 20, 2013, with a plan to conduct the depositions in a manner that would conceal the interrogators' identities, but still provide as much latitude as possible for the parties to inquire about the interrogators' interactions and treatment of the named plaintiffs. The government memorialized and sent its written proposal to the parties on March 22. *See* Ex. 6 (letter to CACI's counsel); Ex. 7 (letter to Plaintiffs' counsel).

The government's proposal would have authorized the depositions of the five individuals identified by the government and any additional interrogators the parties wished to depose that they identified by name. The linchpin of the government's proposal is that the individuals would be assigned a case-specific pseudonym, *e.g.*, "Interrogator A," "Interrogator B," and so on. *See id.* To protect the individuals' visual identities, the depositions would be held telephonically. *See id.* At the commencement of this process, the parties would have to identify all the individuals they wish to depose, to ensure that no additional requests could be immediately connected to a newly assigned pseudonym. The government would at no time confirm the identity of an individual deposed pseudonymously, and the parties would likewise have to agree to make no attempt in their filings or appearances before the Court to link any of the pseudonyms to the real name or identity of any interrogation personnel.

If this proposal were accepted by both parties, the government would disclose to the parties which, if any, named plaintiffs the pseudonymous individuals interrogated. To the extent that a named plaintiff was not interrogated or the government is unable to identify the interrogation personnel associated with a named plaintiff, the government would also disclose that information to the parties.

As with other depositions approved in this case, the government would authorize the individuals testifying pseudonymously to provide only factual information within their own personal knowledge; they would not be authorized to testify as experts, offer opinions, or answer hypothetical questions, or to provide official information that is classified, privileged, or otherwise protected by law from public disclosure, other than of information that may be disclosed pursuant to the protective order issued in this case. The individuals testifying pseudonymously would be authorized to disclose whether they were Army personnel or a CACI contractor during the time they worked at Abu Ghraib. And they would be authorized to discuss their interaction with and treatment of the named plaintiffs.[2]

Plaintiffs informed the government on March 26 that they had chosen not to avail themselves of the government's proposal, although they would reserve their right to reconsider that position if CACI elected to conduct the pseudonymous depositions.

### E.  CACI's failure to meet and confer.

On March 29, CACI's counsel informed the government that while they had some reservations with the proposal, they were still considering it. On April 3 and 4, 2013, CACI met and conferred with the government as to two motions to compel that they planned to file:  1) CACI's Motion to Compel Deposition Discovery from the United States ("Discovery Motion"), dkt. no. 261, and 2) CACI's Motion to Compel the United States to Produce Unredacted Copies of Government Reports Concerning Detainee Abuse at Abu Ghraib Prison ("Reports Motion"), dkt. no. 279.  However, on April 3 and 4, CACI did not inform the government that it intended to

---

[2] Contrary to CACI's assertion in its motion, the parties would not have to agree in advance not to call deponents testifying pseudonymously as witnesses at trial. The government's proposal is silent on that matter, but the government reserves its right to oppose these pseudonymous individuals from testifying at trial.

file a third, separate motion to compel the identities of individuals who interrogated detainees at Abu Ghraib. CACI also did not inform the government that it had made a final decision regarding the pseudonymous depositions, but rather indicated during those discussions, as well as in an earlier conversation on March 29, that while CACI had reservations about the government's proposal, it was still being considered.

The government first learned that CACI had moved to compel the identity of individuals who served as interrogators at Abu Ghraib upon seeing the docket entry for this motion on April 9. Upon reading the motion, the government learned for the first time that CACI had decided to reject its pseudonymous deposition proposal.

## III. STANDARD OF REVIEW

### A. Judicial review of DoD's and the Army's denial of CACI's third-party subpoenas must be undertaken pursuant to the APA and on consideration of their *Touhy* regulations.

In its motion, CACI acknowledges (but does not apply) the controlling legal standard: that "[w]hen the government is not a party, the Administrative Procedure Act ("APA") provides the sole avenue of review" for an agency's decision to reject a *Touhy* request for compliance with a subpoena. *COMSAT Corp. v. Nat'l Science Found.*, 190 F.3d 269, 274 (4th Cir. 1999); *see also* 5 U.S.C. §§ 702, 704, 706; *Puerto Rico v. United States*, 490 F.3d 50, 61 (1st Cir. 2007) ("subpoenas are in effect a request for information from an executive department, and, consequently . . . are treated as an administrative demand") (internal quotations omitted).

### B. The standard of review under the APA is whether DoD and the Army's decisions were arbitrary and capricious based on the record before them.

Under the APA, DoD and the Army's decisions to limit their responses to CACI's subpoenas must be upheld as reasonable unless "the government has refused production in an

arbitrary, capricious, or otherwise unlawful manner." *COMSAT*, 190 F.3d at 278.  In other words, their decisions should be affirmed as long as "the record reveals that a rational basis existed for [those] decision[s]." *Fishermen's Dock Coop., Inc. v. Brown*, 75 F.3d 164, 168 (4th Cir.1996).  In evaluating an agency's decision, the Court may consider any reason stated by the agency at the time, and may in addition consider declarations and affidavits that "expand significantly upon [the agency's] initial explanation of [its] decision." *Spence v. NCI Information Systems, Inc.*, 530 F. Supp. 2d 739, 742, 744 (D. Md. 2008).

**C.** **The *Touhy* regulations issued by DoD and the Army set forth the parameters within which the agencies may reasonably decide requests for testimony.**

DoD and the Army have promulgated regulations of the sort affirmed in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), setting forth the criteria for determining whether an individual will be permitted to testify in private litigation.  In relevant part, DoD's regulations state that "DoD officials should consider the following types of factors," including "[w]hether the disclosure would violate a statute, executive order, regulation, or directive,' and "[w]hether the disclosure . . . would reveal information *properly classified* pursuant to DoD 5200.1-R, 'Information Security Program Regulation,' August 1982." 32 C.F.R. § 97.6(b) (emphasis added).  Department of the Army regulations require the responding official to "make official information reasonably available for use in Federal and state courts and by other governmental bodies unless the information *is classified*, privileged, or otherwise protected from public disclosure." 32 C.F.R. § 516.44 (emphasis added).   In deciding whether to release information, the responding official must consider whether disclosure would "reveal information properly classified pursuant to the DOD Information Security Program under AR 380–5." *Id.*

10

IV.    **ARGUMENT**

   A. **CACI's motion should be denied for failing to meet and confer pursuant to local rule.**

Pursuant to Local Rule 7(E), a moving party must "meet and confer in person or by telephone with his or her opposing counsel in a good-faith effort to narrow the area of disagreement." CACI did not do so here. Government counsel has had several conversations with CACI's counsel in recent weeks, including a meet and confer on April 3 and 4 as to the Discovery Motion, dkt. no. 261, and the Reports Motion, dkt. no. 279. At no time did CACI's counsel raise the prospect of also filing a motion seeking the identity of the individuals who served as interrogators at Abu Ghraib or requiring the government to assert the state secrets privilege with respect to this issue.

CACI represents that it "conferred with counsel for the United States on numerous occasions by telephone and in writing regarding the relief sought in this motion." MTC at 1, n.1. This is misleading at best. Certainly the government has discussed with CACI in the past weeks many issues related to the scope of discovery, including the government's pseudonymous deposition proposal (which also was provided to CACI in writing). And at one point CACI did indicate that its Reports Motion might also include the government's production of the plaintiffs' files, but in that instance CACI stated it was seeking information in the plaintiffs' files that went to reasons for plaintiffs being detained or assessments as to the plaintiffs' credibility, not the identity of the individuals who interrogated them. And in any case, CACI's representations did not comply with the local rules, which require a moving party to "meet and confer" with opposing counsel "in a good-faith effort to narrow the area of disagreement" in relation to a motion. Local Civil Rule 7(E); *see also* Fed. R. Civ. P. 37 (a party moving to compel discovery

11

must include with its motion "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."). CACI did not comply with these requirements. And the government learned for the first time that CACI had rejected its pseudonymous deposition proposal when the instant motion was filed, despite the fact that CACI had previously communicated to the government that it was still being considered.

As a result of the failure to meet and confer, CACI made no attempt to narrow the areas of disagreement with the government. Under Local Rule 7(H), where a "party or attorney . . . fail[s] or refuse[s] to meet and confer in good faith in an effort to narrow the areas of disagreement concerning discovery, sanctions provided by Fed. R. Civ. P. 37 may be imposed." The appropriate sanctions here for failing to meet and confer is to deny CACI's motion to compel.

**B. On application of the APA, DoD and the Army did not act arbitrarily and capriciously by denying CACI's *Touhy* requests as to classified information linking the identity of an interrogator with interrogation of the named plaintiffs.**

CACI challenges DoD and the Army's *Touhy* decisions denying the release of information that would identify the individuals who interrogated the named plaintiffs.[3] To the

---

[3] To the extent CACI moves to compel compliance with its documents and depositions subpoenas, it is jurisdictionally barred from seeking relief in this court. Federal Rules of Civil Procedure 37 and 45 require a serving party to seek to compel production or testimony related to a subpoena from either "the issuing court" of said subpoena or the district court sitting in the jurisdiction where discovery is to take place. Here, CACI is moving to compel discovery sought in a January 16, 2013, subpoena issued by the U.S. District Court for the District of Columbia, which requests production of that discovery in the District of Columbia. As to the depositions, the two that have occurred thus far were held in Maryland. Of the remaining depositions noticed by the parties, all but one is scheduled to take place outside of the Eastern District of Virginia, and the one that is scheduled to occur in this district was noticed by Plaintiffs. Thus, under the

12

extent such information exists in the files of the named plaintiffs, it is classified pursuant to DoDD 3115.09 and DoD has redacted that information from its production to CACI.  Likewise, the Army has determined that to the extent interrogator identities are classified pursuant to DoDD 3115.09, such information is outside the scope of authorization for deposed Army personnel and may not be provided.

As the Fourth Circuit has explained, "[w]hen the government is not a party, the [APA] provides the sole avenue of review of an agency's refusal to permit its employees to comply with subpoenas." *COMSAT Corp. v. Nat'l Science Found.*, 190 F.3d 269, 274 (4th Cir. 1999); *see* 5 U.S.C. §§ 701-706.  Under the APA, the DoD and Army's decisions must be upheld as reasonable unless "the government has refused production in an arbitrary, capricious, or otherwise unlawful manner." *Id.* at 277; *see also Fishermen's Dock Coop., Inc. v. Brown*, 75 F.3d 164, 168 (4th Cir. 1996) (an agency's decision must be affirmed as long as "the record reveals that a rational basis exists for [the] decision.").

In deciding whether to authorize the release of official DoD information, DoD officials may deny disclosure where it would "violate a statute, executive order, regulation, or directive," or would "reveal information *properly classified* pursuant to DoD 5200.1-R, 'Information Security Program Regulation,' August 1982." 32 C.F.R. § 97.6(b) (emphasis added).  Likewise, the Army's *Touhy* regulations provide that the Army's policy is "to make official information reasonably available for use in Federal and state courts and by other governmental bodies unless the information *is classified*, privileged, or otherwise protected from public disclosure." 32 C.F.R. § 516.44(a) (emphasis added).  Among the deciding official's considerations is whether

---

Federal Rules of Civil Procedure, jurisdiction to hear CACI's motion to compel compliance with its document and deposition subpoenas lies elsewhere.

"the disclosure [would] reveal information properly classified pursuant to the DOD Information Security Program under AR 380–5."  32 C.F.R. § 516.44(b)(6).

DoD Directive 3115.09 explicitly provides that "[t]he names and visual representation of DoD interrogators . . . shall be classified . . . when their identities are associated with the interrogation, debriefing, or other intelligence questioning of a specific detainee."  The identities of the individuals who interrogated the named plaintiffs fall squarely within the Directive, and thus are properly classified.  Likewise, any information or testimony that links the identity of an interrogator to any detainee who was at Abu Ghraib for intelligence purposes also is properly classified under the Directive, whether such information is sought in documents or from deposition testimony.  Thus, DoD's and the Army's decisions to deny CACI's requests for the interrogators' identities pursuant to their *Touhy* regulations are decisions that rationally relate to the facts, involve no errors of judgment, and are not arbitrary, capricious, an abuse of discretion, or otherwise unlawful.  5 U.S.C. § 706(2)(A).  Their decisions should be affirmed in accordance with the standards of APA review.  5 U.S.C. §§ 701-706.

CACI's motion to compel does not directly contend that DoD and the Army's *Touhy* denials are arbitrary or capricious.  Citing the Fourth Circuit's seminal decision in *COMSAT*, CACI argues that the only consideration here is whether DoD and the Army's decisions are a policy judgment "about the best use of [their] resources."  MTC Memo. at 11 (citing 190 F.3d at 278).  CACI extrapolates from the *COMSAT* language that DoD and the Army can only justify their *Touhy* decisions upon a showing of substantial burden, and since CACI presumes it is far easier to disclose classified information than expending efforts to redact it from documents or take steps to instruct witnesses not to disclose such information at a deposition, their decisions are unreasonable.  *Id.* at 11-12 ("it is clear that providing the information sought by CACI PT

14

would impose no cognizable burden on the United States."). But *COMSAT* did not concern

classified information, and in reaching its decision the Fourth Circuit was not contemplating

provisions such as 32 C.F.R. § 97.6(b) and 32 C.F.R. § 516.44, which provide the basis for

denial of production of classified information. Moreover, if CACI's burden arguments were

correct, then these provisions would have no significance, because, setting aside the threat to

national security from disclosing classified information, from a practical standpoint it certainly is

simpler to disclose information rather than to invest the time, energy, and manpower necessary to

redact it from requested material or to instruct witnesses not to disclose it at depositions. CACI's

argument simply does not hold water.

CACI's argument that even upon consideration of applicable *Touhy* regulations, the

government's only recourse to protect classified information is to "invoke the state secrets

privilege and refuse production" also is erroneous. MTC Memo. at 3-4. As explained in section

D, *infra*, a decision to assert the state secrets privilege over the documents and information

sought by CACI's subpoena would require the personal consideration of the Secretary of

Defense in this matter (as well as the Attorney General of the United States). Not only is this not

required or needed for APA review of a *Touhy* decision, but it would significantly disrupt the

orderly and expeditious conduct of this litigation, and would be disproportionate to the marginal

relevance of this information to this litigation, particularly in light of the government's proposal

to authorize depositions of the these interrogators pseudonymously. CACI's position would

permit any litigant seeking classified information to pull the Attorney General and other cabinet

officials away from their public duties protecting national security merely by submitting a *Touhy*

letter to an agency (or counsel-issued subpoena from a court) and then filing a motion to compel

challenging the denial of classified information. This incongruous result is not required by any law or precedent.

Rather, under similar circumstances, other district courts have confirmed that agencies may deny third-party discovery requests for classified information when such denials are authorized by their *Touhy* regulations. For example, the district court *In re: September 11 Litigation*, 621 F. Supp. 2d 131, 143-147 (S.D.N.Y. 2009), concluded that because the United States was not a party, discovery could proceed only through proper *Touhy* requests under the Department of Justice's *Touhy* regulations, which prohibited disclosure of "classified information, unless appropriately declassified." *Id.* at 144. The government denied the discovery requests, and the district court, citing the applicable *Touhy* regulations, affirmed that "[t]he government's decision that the depositions requested are likely to . . . compromise national security is reasonable and appropriate, not arbitrary and capricious." *Id.* at 145. The court noted that the need to involve "senior agency members[] would unduly prolong the proceedings," and ultimately concluded that "the cost, delay, and threats to national security . . . [would] far outweigh any marginal relevance." *Id.* This Court should proceed in like fashion.

The DoD and Army's decisions here are relatively straight-forward. The interrogators' identities are classified pursuant to DoDD 3115.09, and DoD and the Army's *Touhy* regulations provide a basis for withholding classified information from the public. As such, DoD and the Army's decisions were not arbitrary and capricious and CACI's motion should be denied.

### C. Should the Court reject the Army's *Touhy* decision, the Court should exercise its authority to protect the interrogators' identities.

Setting aside that interrogators' identities are classified, there is another significant interest in keeping their identities concealed from the parties: the risk of harm to these men and

women.  If the Court rejects the Army's *Touhy* decision – which it should not – the Court should instead take measures to protect these individuals' identities pursuant to its inherent authority. *See* 11 U.S.C. § 105(a).

This Court's "discretion with respect to discovery matters is broad." *Vodrey v. Golden*, 864 F.2d 28, 32 (4th Cir. 1988); *see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir.1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion.").  The Court's authority to supervise and regulate discovery flows from two sources.  First, the Court has "inherent equitable powers . . .  in supervising discovery." *Tabron v. Grace*, 6 F.3d 147, 159 (3d Cir. 1993). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). In addition, the Federal Rules provide the Court ample discretion to appropriately structure discovery. *See, e.g.*, Fed. R. Civ. P. 26(b)(2) and (c)(1) (authorizing Courts to "specify conditions for the discovery," and directing that they may issue protective orders "forbidding [] disclosure or discovery").  The Supreme Court has stressed that "the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'"  *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (citing Rule 26(c)).

Here, the individuals in question are interrogators who questioned the named plaintiffs and other detainees, including enemy combatants likely associated with the insurgency in Iraq or global terrorist organizations such as Al Qaeda, for intelligence purposes.  As the parties have

17

acknowledged, interrogators at Abu Ghraib had an expectation that their identities would be kept secret. Interrogators routinely covered their names, did not wear uniforms, or otherwise did not disclose their true identities during the interrogation process. *See, e.g.*, Third Am. Complaint, dkt. no. 254, at ¶¶ 92-93. Although the named plaintiffs profess innocence in their Complaint, and the government is not intending here to comment on the sufficiency of their claims, the record before the Court makes clear that their innocence remains a matter of dispute. Thus, the interrogation personnel in question certainly would have a reasonable concern that any exposure of their identities would place them or members of their family at substantial risk of harm or unlawful injury.

The most obvious way to protect their identities is to assign pseudonyms or alternative names to conceal their true identities. In *James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993), the Fourth Circuit overruled and remanded the district court's denial of the appellants' request to proceed anonymously in the trial of their medical malpractice/fraud action. Recognizing "[t]he decision whether to permit parties to proceed anonymously . . . [is] committed in the first instance to trial court['s] discretion," the Fourth Circuit concluded that "under appropriate circumstances anonymity may, as a matter of discretion, be permitted." *Id.* at 238. The *Jacobson* Court laid out non-exhaustive guidelines to consider when deciding whether to permit parties to proceed pseudonymously, including "whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties." *Id.* The Fourth Circuit also has recognized that in civil and criminal contexts the assignment of pseudonyms to witnesses is proper. *See, e.g.*, *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 271 n.1 (4th Cir. 2002) ("plaintiffs . . . sought and received permission to file their complaint and proceed in the action under pseudonyms."); *U.S. v. Ramos-Cruz*, 667 F.3d 487, 500 (4th Cir.

18

2012) (allowing experts to testify using pseudonyms where "the government makes a showing of an actual threat" of harm).

In analogous situations, where the identity of the witness in question is classified, the Fourth Circuit also has deemed steps to conceal witnesses' identities appropriate.  *See, e.g.*, *United States v. Moussaoui*, 382 F.3d 453, 480 n. 37 (4th Cir. 2004) (noting that the names of enemy combatants defendant sought to subpoena were classified and that, to protect national security interests, the district court could use non-substantive changes, including "alternate names for people or places" in creating substitutions for those witnesses' proposed testimony); *United States v. Marzook*, 435 F. Supp. 2d 708, 715 n. 7 (N.D.Ill. 2006) (court allowed use of pseudonyms at a suppression hearing to protect the classified identities of secret agents of the Israel Security Agency).  In the event the Court finds the government's *Touhy* decisions fail the APA standard of review, it should apply this precedent and take steps to conceal these interrogators' identities.

1. **The Court should look to the government's pseudonymous deposition proposal as an appropriate mechanism to protect interrogators' identities.**

Should the Court seek to protect these individuals' identities pursuant to its inherent authority, the government's pseudonymous deposition proposal is the most effective way to allow the parties to pursue discovery while protecting these individuals' classified identities. Indeed, under the government's proposal, the parties would be able to obtain the following information about these individuals:

- whether they were U.S. Army personnel or CACI contractors;

- whether they remember the named plaintiffs;

- any special conditions they set for their interrogations with the named plaintiffs;

- any instructions or orders they gave to military police or other personnel regarding the named plaintiffs' treatment;

- any interrogation techniques they utilized during their interrogations of the named plaintiffs;

- whether they were aware of applicable standard operating procedures (to the extent such procedures are not classified);

- whether they abided by standard operating procedures during their interrogations of the named plaintiffs;

- whether they ever mistreated, abused, or tortured the named plaintiffs and, if so, details of that treatment;

- details of any interactions they had with the named plaintiffs outside of their interrogations; and

- whether they knew if any other interrogators interrogated the named plaintiffs.

In return, the deposed individuals would testify pseudonymously and telephonically to conceal their names and visual representations. While these restrictions are obviously more stringent than for an ordinary deposition, the government submits that authorizing these depositions to proceed is a more than adequate tradeoff for a procedural process to protect these interrogators' identities.

### 2. The Court should reject CACI's criticisms of the government's pseudonymous deposition proposal.

Even setting aside CACI's failure to meet and confer on this issue, CACI's criticisms of the government's pseudonymous deposition proposal are fundamentally flawed.[4] CACI, for

---

[4] CACI appears to conflate the government's "pseudonymous" deposition proposal with "anonymous" depositions. *See, e.g.*, MTC Memo. at 12, n.4. This distinction is significant because pseudonymous depositions provide a level of flexibility that anonymous depositions do not. For example, a list of assigned pseudonyms could be provided to the deposed interrogators,

instance, argues that obtaining the interrogators' identities is essential because it claims that these individual's names are "the single most important fact in this case," MTC Memo. at 1, without which it would be "impossible" for CACI to defend itself. Yet, an interrogator's identity has no value in the abstract. *Cf. Moussaoui*, 382 F.3d at 480 n. 37 (Fourth Circuit describes the designation of "alternate names for people or places [] in order to accommodate national security concerns" a "non-substantive change[]"). For example, disclosing that an interrogator's name is "Bob Smith," without any context or link to the facts in this litigation, renders that identity in and of itself irrelevant.

CACI recognizes as much when explaining that the interrogator names are necessary for it "to confront and cross-examine adverse witnesses," MTC Memo. at 11 (quoting *McNeill v. Butz*, 480 F.2d 314, 321 (4th Cir. 1973), and to "explore any [witnesses'] potential biases." *Id.* at 7. But to date, CACI has not noticed *any* depositions of *any* individual who served as an interrogator at Abu Ghraib, let alone one who interrogated the named plaintiffs. *See, e.g.*, Ex. 4. And while Plaintiffs' Second and Third Amended Complaints identify by name three CACI employees, Steven Stefanowicz, Daniel Johnson, and Timothy Dugan, who served as interrogators and allegedly were part of the conspiracy against the plaintiffs, *see* Second Am. Compl., dkt. no. 177, at 1-2; Third Am. Compl., dkt. no. 254, at 1, neither party has noticed the depositions of any of these individuals. Moreover, despite being informed in the government's March 22 letter that the government has identified five of the individuals who interrogated three

---

so that they could reference and answer questions related to other interrogators without violating DoDD 3115.09. Likewise, upon a showing of necessity, the government could reproduce plaintiffs' files with the appropriate interrogator pseudonyms. Both these options, which provide additional discovery to the parties, would be extremely difficult to carry out if the depositions were conducted anonymously.

of the named plaintiffs, CACI has not noticed any intention to depose these individuals either, even though discovery is set to close next week.[5]

CACI counters that the government's proposal is "unworkable," because it would be unable to "to impeach an anonymous witness" or test "the accuracy of [their] testimony," by, for example, comparing it to public statements the witness may have made. MTC Memo. at 6. But CACI's argument is contingent on there actually being a need for CACI to probe into the credibility of these interrogators, which is speculative at this juncture. If, for example, CACI deposes these interrogators pseudonymously and the interrogators claim they never mistreated or abused the named plaintiffs, it is likely that CACI would not seek to impeach their testimony.[6]

The Court should also consider that by conducting pseudonymous depositions, the parties would be establishing a record that the Court could use to evaluate more thoroughly any claimed need for classified information, including interrogator identities. Such a record would also allow

_____

[5] As the parties are well aware due to their correspondence on *Touhy* requests, Army regulations require that the Army be given fourteen (14) days advance notice regarding all requests for official information, including for the scheduling of depositions. *See* Army Regulation 27-40 ¶ 7-2(d). To the parties' credit, they have abided by that notice requirement. At this point in time, however, fourteen days notice would place any newly noticed deposition past the April 26 discovery deadline, rendering it unlikely that CACI will be noticing further depositions unless it moves for a deadline extension.

[6] A recent example highlights the speculative nature of CACI's argument. PVT Ivan Frederick's deposition testimony was undoubtedly helpful to CACI on at least two points: he testified that 1) he did not recognize the named plaintiffs in photographs shown to him, Ex. 8, Frederick Dep. at 161:20-163:21, 185:14-186:6, and 2) CACI personnel were not involved in certain episodes of mistreatment or abuse of detainees at Abu Ghraib. *See, e.g., id.,* Frederick Dep. at 217:19-221:19 (Frederick testified on cross that CACI personnel were not involved in an incident of abuse with a detainee nicknamed "Gilligan"). PVT Frederick provided this testimony without implicating information covered by the Directive. Not surprisingly, while CACI cites in its motion to moments in the deposition where PVT Frederick's was instructed by the government not to answer certain questions that called for information covered by DoDD 3115.09, it never points to any testimony about which it intended to impeach PVT Frederick but was unable to because of the need to rely on classified information. *See* MTC Memo. at 7-8.

the Court to narrow any state secrets considerations to the most necessary information.  For instance, if CACI claims after conducting a pseudonymous deposition of "Interrogator A" that it needs that interrogator's identity to mount a suitable defense, the Court can consider, among other things, whether that interrogator provided any information that CACI would seek to impeach.  The Court may also find it relevant whether the individuals who interrogated the named plaintiffs were Army personnel or CACI contractors, or whether there is already information in the record which would call into doubt their credibility without disclosing their identity.  In either case, the Court would at least have a record to weigh against the important equities of protecting these interrogators' identities.

> **D. Even if the Court finds DoD's and the Army's APA *Touhy* decisions to be arbitrary and capricious, it should not compel an assertion of the state secrets privilege.**
>
>> **1. A determination as to whether to assert the state secrets privilege requires the personal involvement of high-ranking officials, in this case the Attorney General and Secretary of Defense.**

The state secrets privilege "must be formally asserted by the head of the Executive Branch agency with control over the state secrets at issue, and then only after that person has personally considered the matter." *El-Masri v. Tenet*, 437 F. Supp. 2d 530, 535-36 (E.D.Va. 2006) (referencing *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953)).  In his September 23, 2009 Memorandum Governing Invocation of the State Secrets Privilege ("SSP Memo"), Attorney General Eric Holder adopted policies and procedures to ensure "that the U.S. Government will invoke the [state secrets] privilege in court only when genuine and significant harm to national defense or foreign relations is at stake and only to the extent necessary to safeguard those interests." Ex. 9.  As the Attorney General explained, the standards for invoking

the privilege include whether the unauthorized disclosure of the classified information at issue "could be expected to cause significant harm to the national security of the United States," and further requires narrow tailoring, limiting the invocation of the privilege "only to the extent necessary." *Id.*

The SSP Memorandum identifies significant procedural and substantive requirements that must be followed prior to the invocation of the state secrets privilege. *Id.* DoD has established its own procedures also to ensure that due consideration be given by high level officials to the weighty issues involved in invoking the privilege. *See* Ex. 9, Taylor Decl. at ¶¶ 8-11. The end result is that invocation of the state secrets privilege here would involve senior executive officials, including all three of the highest-ranking officials in the Department of Justice and the highest-ranking official in the Department of Defense. *See id.*; Ex. 9.

The Attorney General's and the Secretary of Defense's time and energy should not be diverted from their critical law enforcement and national security duties to personally consider the issues involved in invoking the state secrets privilege here unless and until it becomes unavoidably necessary for purposes of this litigation. *See id.* As courts have recognized in other contexts, "[h]igh ranking government officials have greater duties and time constraints" than other government employees. *In re: FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995). "[P]ublic policy requires that the time and energies of public officials be conserved for the public's business to as great an extent as may be consistent with the ends of justice in particular cases." *Community Fed. Savings & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 96 F.R.D. 619, 621 (D.D.C. 1983).

24

**2.  The United States and the parties are obligated to search for alternatives to assertion of the state secrets privilege; CACI has failed to do so here.**

CACI's position that the government must either produce the classified information sought or assert the state secrets privilege is meritless.  The state secrets privilege "is not to be lightly invoked." *Reynolds*, 345 U.S. at 7.  Invocation of the state secrets privilege must be "the option of last resort," and used only in "a very narrow set of circumstances." *Gen. Dynamics Corp. v. U.S.*, 131 S. Ct. 1900, 1910 (2011).  Accordingly, litigants and the Court are under an obligation to ensure that its "necessity [is] greatly minimized," by pursuing the available alternatives to avoid "forcing a showdown on the claim of privilege." 345 U.S. at 10.

The Supreme Court in *Reynolds* criticized the prospect of a party not pursuing reasonable alternatives to seeking a state secrets assertion and instead "forcing a showdown on the claim of privilege." *Reynolds*, 345 U.S. at 10.  CACI, nevertheless, has rejected a proposal that might allow it access to information more relevant to its defense than an interrogator's name.  Instead, CACI filed this motion seeking to immediately involve the Attorney General and the Secretary of Defense personally in a determination as to whether the classified identities of specific individuals could be revealed.

As *Reynolds* makes clear, however, the parties should make every effort to "greatly minimize[] the necessity" of a fight over the state secrets privilege, by first exhausting all other options to gather sufficient discovery to support their claims or defenses.  Only after all available alternatives, including the government's pseudonymous deposition proposal, are tried and found insufficient should a determination as to the invocation of the state secrets privilege be broached.  In other words, the assertion of a state secrets privilege should be a matter of last, not first, resort. *See General Dynamics Corp.*, 131 S. Ct. at 1910.

25

The relief CACI seeks should be contingent on its exhausting every available alternative to get the discovery it needs to support its defense.  To date, CACI has done nothing of the sort. CACI has not noticed the depositions of any individuals who served as interrogators at Abu Ghraib, and in its motion, it makes only a lukewarm commitment to depose those individuals. *See* MTC Memo. at 12 ("It is also true that CACI . . . *will desire* to take the deposition of any interrogation personnel disclosed as having interacted with Plaintiffs") (emphasis added). Moreover, not only has CACI rejected the government's reasonable pseudonymous deposition proposal, which would have allowed it to obtain information likely more pertinent and relevant to its defense than the interrogators' names, but it also has failed to comply with the Court's meet and confer requirements, which at the very least might have provided an opportunity to narrow the scope of this dispute.  CACI should not be rewarded for this lack of diligence and failure to pursue the available means of discovery, especially when it would obligate the Attorney General and the Secretary of Defense to divert their attention from law enforcement and national security duties to consideration of invoking the state secrets privilege.

As with any matter subject to APA review, if the Court finds an agency has not supported its decision adequately, it should identify its concerns and remand the matter to the agency for reconsideration and a further response, as opposed to forcing a state secrets assertion.  *See Tafas v. Dudas*, 530 F. Supp. 2d 786, 793 (E.D. Va. 2008) (Cacheris, J.) (*citing Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) ("[I]f the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.")).

**E. If the Court finds that DoD acted arbitrarily and capriciously and that the United States should decide whether to assert the state secrets privilege, it should provide the United States with the appropriate opportunity for the Secretary of Defense and the Attorney General to personally decide how to proceed.**

For the reasons set forth above, the government submits that a formal assertion of the state secrets privilege should not be required to uphold DoD's decision as reasonable. But if the Court were to conclude that DoD's decision was arbitrary and capricious and that the United States should decide now whether to assert the state secrets privilege, the government would at least request an adequate opportunity to do so. As explained above, Secretary of Defense must personally consider whether DoD should invoke the state secrets privilege to protect any of the information CACI has sought, and the Attorney General must personally approve defense of a privilege assertion by the Secretary.

Based on the high-level process required for two cabinet level officials, the United States therefore requests that, in the event the Court finds the government must assert the states secret privilege now, it provide 45 days from the date of any such decision for the United States to determine whether it will assert the state secrets privilege.

## V.    CONCLUSION

For the foregoing reasons, CACI's Motion to Compel should be denied.


.
Dated: *April 17, 2013*                    Respectfully submitted,

                                           STUART F. DELERY
                                           Acting Assistant Attorney General

                                           NEIL H. MacBRIDE
                                           United States Attorney

_/s/_ _____
R. JOSEPH SHER
Assistant United States Attorney
Deputy Chief, Civil Division
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson AVE
Alexandria VA 22314
Telephone: (703) 299-3747
Facsimile: (703) 299-3983

JOSEPH H. HUNT
Branch Director
ARTHUR R. GOLDBERG
Assistant Branch Director
ERIC J. SOSKIN (PA Bar 200663)
SCOTT D. LEVIN (NY Bar 4285946)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Tel: (202) 305-0568
Fax: (202) 305-2685
Email: Scott.Levin2@usdoj.gov

Attorneys for the United States

28

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing with the Clerk of Court using the CM/ECF

system, which will then send a notification of such filing (NEF) to the following:


George Brent Mickum IV
Law Firm of George Brent Mickum IV
5800 Wiltshire Drive
Bethesda, Maryland 20816
gbmickum@gmail.com

J. William Koegel, Jr.
Virginia Bar No. 38243
John F. O'Connor
Attorneys for Defendant
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
wkoegel@steptoe.com
joconnor@steptoe.com


Dated April 17, 2013


_____/s/_____
R. JOSEPH SHER
Assistant United States Attorney
Deputy Chief, Civil Division
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson AVE
Alexandria VA 22314
Telephone: (703) 299-3747
Facsimile: (703) 299-3983