# Exhibit 1



# Department of Defense
# DIRECTIVE

**NUMBER** 3115.09
October 9, 2008

USD(I)

SUBJECT:  DoD Intelligence Interrogations, Detainee Debriefings, and Tactical Questioning

References:   See Enclosure 1

1.  PURPOSE.  By the authority vested in the Secretary of Defense under titles 10 and 50 of the United States Code (U.S.C.) (References (a) and (b)) and Executive Order 12333 (Reference (c)), this Directive:

   a.  Reissues DoD Directive 3115.09 (Reference (d)).

   b.  Consolidates and codifies existing DoD policies, including the requirement for humane treatment during all intelligence interrogations, detainee debriefings, or tactical questioning to gain intelligence from captured or detained personnel.

   c.  Incorporates and cancels Under Secretary of Defense for Intelligence (USD(I)) Memorandums (References (e) and (f)) and Deputy Under Secretary of Defense for Counterintelligence and Security Memorandum (Reference (g)).

   d.  Provides classification guidance to protect intelligence sources and methods, including the identities of interrogators, detainee debriefers, interpreters, other interrogation support personnel, and detainees who are subject to interrogations and debriefings.

   e.  Assigns responsibilities for intelligence interrogations, detainee debriefings, tactical questioning, and supporting activities.  (See Enclosure 2.)

   f.  Establishes the requirement to report violations of applicable law or policy relating to intelligence interrogations, detainee debriefings, or tactical questioning for which there is credible information.  (See Enclosure 3.)

*DoDD 3115.09, October 9, 2008*

2.  <u>APPLICABILITY</u>.  This Directive applies to:

   a.  OSD, the Military Departments, the Chairman of the Joint Chiefs of Staff and the Joint Staff, the Combatant Commands, the Office of the Inspector General of the Department of Defense (DoD IG), the Defense Agencies, the DoD Field Activities, and all other organizational entities within the Department of Defense (hereafter referred to collectively as the "DoD Components").

   b.  DoD military personnel, DoD civilian employees, and DoD contractor personnel, to the extent incorporated in their contracts, who conduct or support intelligence interrogations, detainee debriefings, or tactical questioning.

   c.  Non-DoD personnel who agree, as a condition of permitting them access to conduct intelligence interrogations, debriefings, or other questioning of persons detained by the Department of Defense, to comply with its terms.

   d.  Law enforcement and counterintelligence personnel who conduct interrogations or other forms of questioning of persons in DoD custody primarily for foreign intelligence collection purposes.  Law enforcement and counterintelligence personnel who conduct interrogations or other forms of questioning of persons in DoD custody primarily for authorized purposes other than foreign intelligence collection shall comply with paragraphs 3.a. and 3.b. of this Directive and any other laws and policies that apply to law enforcement or counterintelligence interrogations, respectively.

3.  <u>POLICY</u>.  It is DoD policy that:

   a.  No person in the custody or physical control of the Department of Defense or detained in a DoD facility shall be subject to cruel, inhuman, or degrading treatment or punishment as defined in title XIV of Public Law 109-163, also known as "The Detainee Treatment Act of 2005" (Reference (h)).  Acts of physical or mental torture are prohibited.  All intelligence interrogations, debriefings, or tactical questioning to gain intelligence from captured or detained personnel shall be conducted humanely, in accordance with applicable law and policy.  Applicable law and policy may include the law of war, relevant international law, U.S. law, and applicable directives, including Reference (h), the U.S. Army Field Manual 2-22.3 (Reference (i)), or other authorities.

   b.  All reportable incidents allegedly committed by any DoD personnel or DoD contractor personnel shall be:

      (1)  Promptly reported as outlined in Enclosure 3;

      (2)  Promptly and thoroughly investigated by proper authorities; and

(3)  Remedied by disciplinary or administrative action, when appropriate.  On-scene commanders and supervisors will ensure measures are taken to preserve evidence pertaining to any reportable incident.

    c.  Reportable incidents allegedly committed by non-DoD U.S. personnel or by coalition, allied, host-nation, or any other persons shall be reported as outlined in this Directive and referred to proper authorities (e.g., other U.S. Government, allied, coalition, or host-nation authorities) for appropriate action.  Any additional DoD investigation of such incidents will be conducted only at the direction of the appropriate Combatant Commander, the DoD IG, the USD(I), or higher authority.

    d.  Intelligence interrogations, detainee debriefings, and tactical questioning shall be conducted in accordance with applicable law, this Directive, and implementing plans, policies, orders, directives, and doctrine developed by the DoD Components and approved by the USD(I), including the following requirements:

        (1)  Training and Certification.  DoD intelligence interrogations shall be conducted only by personnel properly trained and certified to DoD standards.  Detainee debriefings shall be conducted only by properly trained and certified DoD personnel or properly trained and certified DoD contractor personnel.  At a minimum, personnel who conduct, support, or participate in tactical questioning shall be trained in the law of war and humane treatment standards.

        (2)  Approved Interrogation Techniques.  No person in the custody or effective control of the Department of Defense, detained in a DoD facility, or otherwise interrogated by DoD military personnel, civilian employees, and DoD contractor personnel will be subject to any interrogation treatment or technique that is not authorized by and listed in Reference (i).

        (3)  Interrogation of Segregated Detainees.  Detainees may be segregated from other detainees for purposes unrelated to interrogation, including administrative, health, safety, or security reasons.  Although segregation may not be requested or conducted for the purpose of facilitating interrogation, interrogators may interrogate detainees who have been properly segregated.

        (4)  Restricted Interrogation Technique of Separation.  Interrogators may employ separation as a restricted interrogation technique during the interrogation of unlawful enemy combatants in accordance with Appendix M of Reference (i) and as specified in Enclosure 4 of this Directive.

        (5)  Survival, Evasion, Resistance, and Escape (SERE) Techniques.  Use of SERE techniques against a person in the custody or effective control of the Department of Defense or detained in a DoD facility is prohibited.

        (6)  Credibility Assessment Support.  All credibility assessment examinations (e.g., polygraphs) used to support intelligence interrogations shall be conducted in accordance with the provisions of DoD Directive 5210.48 (Reference (j)).

(7)  Non-DoD Interrogations.  As a condition of having access to conduct intelligence interrogations, detainee debriefings, or tactical questioning of persons in the custody or effective control of the Department of Defense, individuals representing other U.S. Government agencies, foreign governments, or any other non-DoD entity must comply with applicable DoD interrogation policies and procedures when conducting intelligence interrogations, debriefings, or other questioning of persons detained by the Department of Defense.  Individuals overseeing the conduct of non-DoD interrogations shall follow the requirements specified in Enclosure 5.

(8)  U.S. Law Enforcement and Counterintelligence Interrogations.  Credentialed non-DoD U.S. Government law enforcement personnel, DoD law enforcement personnel, DoD counterintelligence special agents, or federally certified polygraph examiners conducting interrogations, interviews, and other questioning primarily for law enforcement or counterintelligence purposes shall comply with paragraphs 3.a. and 3.b. of this Directive and any other laws and policies that apply to law enforcement or counterintelligence interrogations, respectively.  DoD intelligence personnel are not required to monitor law enforcement or counterintelligence interrogations that are conducted primarily for authorized purposes other than foreign intelligence collection.

(9)  DoD Contractor Personnel

(a)  No DoD contractor personnel may conduct or support intelligence interrogations, detainee debriefings, or tactical questioning unless the contract specifies such support or activity and requires that such support or activity be conducted in accordance with this Directive, applicable law, and policy.

(b)  All contracts for the conduct or support of intelligence interrogations, detainee debriefings, or tactical questioning will be drafted in accordance with this Directive, Appendix K of Reference (i), the Federal Acquisition Regulation (Reference (k)), and the Defense Federal Acquisition Regulation Supplement (Reference (l)).

(c)  All DoD contract interrogators and debriefers shall be trained and certified by the Department of Defense as interrogators and debriefers in accordance with this Directive.  Contract interrogators and debriefers will also receive in-theater training on the supported unit's mission and interrogation policies before performing intelligence interrogations or detainee debriefings.

(d)  DoD contractor personnel who are trained and certified as interrogators in accordance with this Directive, and who are tasked to perform intelligence interrogations pursuant to their contract, must be properly supervised and closely monitored in real time throughout the interrogation process by sufficient numbers of properly trained DoD military or civilian personnel to ensure that they do not deviate from their approved interrogation plans or otherwise perform inherently governmental functions, in accordance with DoD Instruction 1100.22 (Reference (m)).

(e)  Contract interrogators will submit an interrogation plan and receive approval from an appropriate DoD official (e.g., the commander, officer-in-charge, or DoD civilian employee responsible for supervising interrogations) before implementation.

(f)  DoD contractor personnel will not be placed in charge of interrogation operations or interrogation facilities.  No DoD contractor personnel will order, oversee, or be charged with monitoring any intelligence interrogation, debriefing, or tactical questioning.

(g)  Contract interrogators and contract debriefers will operate only in areas where adequate security is available and is expected to continue, pursuant to Reference (m).

(h)  Contract interrogators serving with or accompanying U.S. Armed Forces in the field in times of declared war or a contingency operation are subject to the Uniform Code of Military Justice (UCMJ), pursuant to chapter 47 of Reference (a) and Secretary of Defense Memorandum (Reference (n)).  Contract interrogators employed by or accompanying the U.S. Armed Forces overseas who commit felony offenses are also subject to U.S. District Court jurisdiction, pursuant to chapter 212 of title 18, U.S.C. (Reference (o)) (also known as the Military Extraterritorial Jurisdiction Act (MEJA)), and, if the contract interrogator is a national of the United States, section 2441 of Reference (o).

(10)  <u>Recordings of Intelligence Interrogations and Detainee Debriefings</u>

(a)  The video or audio recording of interrogations of detainees for intelligence purposes is an acceptable method of documenting an interrogation session, but it is not required. When the capability is available, intelligence interrogations may be recorded for the training of new interrogators, the periodic assessment of interrogator performance, reviewing interrogation reports for completeness, re-assessing the veracity of sources during questioning, monitoring compliance with policy and procedures, documenting the interrogation environment, and other authorized purposes as needed and as stipulated in the local unit's interrogation policy.  The decision to record will be made on a case-by-case basis by a commander in the interrogators' chain of command or as stipulated in the local unit's written interrogation policy.

(b)  All recordings of intelligence interrogations, detainee debriefings, and other intelligence questioning shall be classified "SECRET//RELEASABLE TO" or "SECRET//NOFORN," as appropriate, to protect the association of specific DoD interrogators, partner-nation interrogators, DoD debriefers, interpreters, and interrogation support personnel with the interrogation or debriefing of a specific detainee; to protect the identity of detainees who have cooperated with U.S. Intelligence, pursuant to section 1.4.(c) of Executive Order 12958 (Reference (p)); and to safeguard intelligence collection methodologies.  These classified recordings shall be handled and protected in accordance with Reference (p) and DoD 5200.1-R (Reference (q)).  Only the USD(I) or his designee is authorized to declassify recordings of intelligence interrogations, debriefings, or other intelligence questioning.

(c)  Once the purposes for which a recording was made have been accomplished, the recording shall be disposed of only in accordance with a disposition schedule developed by the USD(I) and approved by the Archivist of the United States, pursuant to chapters 29 and 33 of

5

title 44, U.S.C. (Reference (r)) as implemented by section 1228 of title 36, Code of Federal Regulations (Reference (s)). If a recording contains any credible evidence of a suspected or alleged violation of applicable law or policy, it shall be retained as evidence to support any investigation and disciplinary or corrective action. Retained recordings shall be accounted for, controlled, and marked as required by Reference (p) for a finished document with declassification after 25 years. Information will be marked: "DERIVED FROM: DoDD 3115.09; DECLASSIFY ON: Date 25 YEARS FROM ORIGINATION (E.G., 20330615)".

(d) A video or audio-recorded interrogation or debriefing may only be disclosed or released to representatives of a foreign government, either visually, audibly, or in hardcopy, in accordance with National Disclosure Policy No. 1 (Reference (t)) and DoD Directive 5230.11 (Reference (u)). A disclosure decision may not be further delegated below the level of a Combatant Command or Defense Agency headquarters' Foreign Disclosure Office. Before disclosure to a foreign government, proper consideration shall be given to the possible risk to the detainee and his or her family of disclosing that the detainee has cooperated with U.S. Intelligence. If a recording is released to another organization or to a foreign government, the original shall be retained.

(e) Before a video recording is disclosed or released to any person or entity outside the Department of Defense or the U.S. Intelligence Community, the identities of the U.S. and any foreign interrogators, debriefers, interpreters, and other interrogation support personnel shall be concealed. Only the USD(I) may authorize an exception to this policy.

(f) If a recording is released to a non-DoD or non-Intelligence Community entity or to a foreign government, the original will be retained. The contents of a released recording shall be originator-controlled and shall not be further disseminated by the recipient.

(11) <u>Protection of Interrogation-Related Information</u>

(a) The names and visual representation of DoD interrogators, debriefers, contract interrogators, support personnel, and foreign government interrogators shall be classified "SECRET//RELEASABLE TO" or "SECRET//NOFORN," as appropriate, when their identities are associated with the interrogation or debriefing of a specific detainee, pursuant to section 1.4.(c) of Reference (p). This classified information shall be handled and protected in accordance with Reference (p) and Reference (q) and marked for declassification after 25 years. Exceptions to this policy may be granted only by the USD(I) or designee. Information will be marked: "DERIVED FROM: DoDD 3115.09; DECLASSIFY ON: Date 25 YEARS FROM ORIGINATION (E.G., 20330615)". Only the USD(I) or designee is authorized to declassify or otherwise disclose this information to personnel without the appropriate security clearance or to make exceptions to this policy.

(b) All transcribed interrogator notes, memorandums for record, summary interrogation reports, intelligence information reports, and all other related records of intelligence interrogations or detainee debriefings shall be marked, handled, and protected in accordance with the relevant security classification guide(s) and References (p) and (q). Once the purposes for which these written records were prepared have been accomplished, the records

6

shall be disposed of only in accordance with a disposition schedule developed by the USD(I) and approved by the Archivist of the United States, pursuant to Reference (r), as implemented by Reference (s). If a written record contains any evidence of a suspected or alleged violation of applicable law or policy, it shall be retained as evidence to support any investigation and disciplinary or corrective action.

(c) Requests or demands for the release of official information in litigation or testimony by DoD personnel as witnesses shall be handled in accordance with DoD Directive 5405.2 (Reference (v)). DoD personnel shall not, in response to a litigation request or demand, produce, disclose, release, comment upon, or testify concerning any official information without the prior written approval of the appropriate DoD official designated in paragraph 6.1. of Reference (v). Oral approval may be granted, but a record of such approval shall be made and retained in accordance with the applicable implementing regulations.

(d) Official information requested by congressional committees shall be handled in accordance with DoD Directive 5400.4 (Reference (w)). Requests from Members of Congress not seeking records on behalf of a congressional committee, subcommittee, or either house sitting as a whole, or made on behalf of their constituents, shall be processed as a Freedom of Information Act request, pursuant to DoD 5400.7-R (Reference (x)).

(e) As a general rule, DoD intelligence interrogators, debriefers, and associated support personnel will not be made available to testify as witnesses in any civil or criminal proceeding or to appear in person before any other entity in response to a request for official information unless (in the case of litigation) the appropriate DoD official designated in paragraph 6.1. of Reference (v) or (in all other cases) the USD(I) first determines that all of the following conditions are met:

1. The testimony or official information is relevant and material to the civil or criminal proceedings or to any other matter within the jurisdiction of a department, agency, or branch of the U.S. Government.

2. There is no reasonable alternative to the testimony or personal appearance of the DoD intelligence interrogator, debriefer, or associated support person.

3. Adequate security precautions will be instituted to protect the identity of the interrogator, debriefer, or associated support person.

(12) <u>Behavioral Science Consultants</u>. Behavioral science consultants are authorized to make psychological assessments of the character, personality, social interactions, and other behavioral characteristics of interrogation subjects and to advise authorized personnel performing lawful interrogations regarding such assessments in accordance with section 5 of Enclosure 2. During assignments in which a health care provider delivers behavioral science consultant services, the provider may not supply medical care for detainees except in an emergency when no other health care providers can respond adequately. Behavioral science consultants may not be used to determine detainee phobias for the purpose of exploitation during the interrogation process.

(13)  <u>Canines</u>.  No dog shall be used as part of an interrogation approach or to harass, intimidate, threaten, or coerce a detainee for interrogation purposes.

(14)  <u>Medical Issues</u>.  Decisions regarding appropriate medical treatment of detainees and the sequence and timing of that treatment are the responsibility of medical personnel.  Medical program support for detainee operations is governed by policies set forth by the Assistant Secretary of Defense for Health Affairs (ASD(HA)), including DoD Instruction 2310.08E (Reference (y)).  Detainees determined by medical personnel to be medically unfit to undergo interrogation will not be interrogated.

(a)  <u>Reporting</u>.  Medical personnel will promptly report suspected abuse to the proper authorities, as outlined in medical policies issued by the ASD(HA) and as specified in Enclosure 3.

(b)  <u>Medical Information</u>.  Generally, information pertaining to medical conditions and care provided to patients, including medical care for detainees, is handled with respect for patient privacy.  Under U.S. and international law, there is no absolute confidentiality of medical information for any person, including detainees.  Release of medical information for purposes other than treatment is governed by standards and procedures set forth by the ASD(HA).  Medical information may be released for all lawful purposes, in accordance with such standards and procedures, including release for any lawful intelligence or national security-related purpose.

(15)  <u>Detention Operations Issues</u>.  The detention facility commander is always responsible for the health and welfare of detainees assigned, attached, or in temporary custody within his or her detention facility.  DoD personnel responsible for detention operations, including Military Police, Security Forces, Master at Arms, and other individuals providing security for detainees, are responsible for ensuring the safety and well-being of detainees in their custody in accordance with applicable law and policy.  They will not directly participate in the conduct of intelligence interrogations.

(a)  The detention facility commander, in accordance with applicable law and policy, may cooperate in responding to requests to facilitate interrogation operations.  Applicable law and policy includes U.S. law, the law of war, relevant international law, and applicable directives, instructions, or other issuances.  Disagreements concerning such requests will be resolved by the joint task force commander, the Combatant Commander, or other designated authority, after consultation with the servicing Staff Judge Advocate.  Any remaining disagreements will be resolved by the Under Secretary of Defense for Policy (USD(P)) after consultation with the USD(I) and the DoD General Counsel.

(b)  Detention personnel shall report information and observations relevant to interrogation operations, such as detainee behavior, attitudes, and relationships, in accordance with procedures established by the detention facility commander or higher authority.

*DoDD 3115.09, October 9, 2008*

4.  <u>INFORMATION REQUIREMENTS</u>.  The reporting requirements in this Directive are exempt from licensing according to subparagraphs C4.4.7. and C4.4.8. of DoD 8910.1-M (Reference (z)).

5.  <u>RELEASABILITY</u>.  UNLIMITED.  This Directive is approved for public release.  Copies may be obtained through the Internet from the DoD Issuances Web Site at http://www.dtic.mil/whs/directives.

6.  <u>EFFECTIVE DATE</u>

    a.  This Directive is effective immediately.

    b.  The policy in this Directive shall be disseminated at all levels of command and to all DoD Components that conduct intelligence interrogations, detainee debriefings, or tactical questioning to gain intelligence from captured or detained personnel.

Gordon England
Deputy Secretary of Defense

Enclosures
1.  References
2.  Responsibilities
3.  Reportable Incident Requirements
4.  Use of the Restricted Technique of Separation
5.  Non-DoD Interrogations, Debriefings, and Questioning of Detainees
Glossary

9

ENCLOSURE 1

REFERENCES

(a)  Title 10, United States Code
(b)  Title 50, United States Code
(c)  Executive Order 12333, "United States Intelligence Activities," December 4, 1981, as amended
(d)  DoD Directive 3115.09, "DoD Intelligence Interrogations, Detainee Debriefings, and Tactical Questioning," November 3, 2005 (hereby canceled)
(e)  USD(I) Memorandum, "Clarification of Intelligence Interrogation Policy—Detainee Status Determinations and the Conduct of Interrogations during Segregation and Separation," September 20, 2007 (hereby canceled)
(f)  USD(I) Memorandum, "Clarification of Intelligence Interrogation Policy—Monitoring of Non-DoD Interrogations, Debriefings, and Questioning of Detainees," April 4, 2007 (hereby canceled)
(g)  Deputy Under Secretary of Defense for Counterintelligence and Security Memorandum, "Clarification of Interrogation Policy," April 5, 2006 (hereby canceled)
(h)  Title XIV of Public Law 109-163, "National Defense Authorization Act for Fiscal Year 2006," January 6, 2006 (The Detainee Treatment Act of 2005)
(i)  U.S. Army Field Manual 2-22.3, "Human Intelligence Collector Operations," September 6, 2006
(j)  DoD Directive 5210.48, "Polygraph and Credibility Assessment Program," January 25, 2007
(k)  Federal Acquisition Regulation (FAR)
(l)  Defense Federal Acquisition Regulation Supplement (DFARS)
(m) DoD Instruction 1100.22, "Guidance for Determining Workforce Mix," September 7, 2006
(n)  Secretary of Defense Memorandum, "UCMJ Jurisdiction Over DoD Civilian Employees, DoD Contractor Personnel, and Other Persons Serving With or Accompanying the Armed Forces Overseas During Declared War and in Contingency Operations," March 10, 2008
(o)  Chapter 212 and section 2441 of title 18, United States Code (The Military Extraterritorial Jurisdiction Act)
(p)  Executive Order 12958, "Classified National Security Information," April 20, 1995, as amended by Executive Order 13292, March 28, 2003
(q)  DoD 5200.1-R, "Information Security Program," January 14, 1997
(r)  Chapters 29 and 33 of title 44, United States Code
(s)  Section 1228 of title 36, Code of Federal Regulations
(t)  National Disclosure Policy No. 1, "National Policy and Procedures for the Disclosure of Classified Military Information to Foreign Governments and International Organizations," October 2, 2000[1]
(u)  DoD Directive 5230.11, "Disclosure of Classified Military Information to Foreign Governments and International Organizations," June 16, 1992
(v)  DoD Directive 5405.2, "Release of Official Information in Litigation and Testimony by DoD Personnel as Witnesses," July 23, 1985

---

[1] Controlled document; available at the Component's Foreign Disclosure Office to authorized persons.

*DoDD 3115.09, October 9, 2008*

(w)  DoD Directive 5400.4, "Provision of Information to Congress," January 30, 1978

(x)  DoD 5400.7-R, "DoD Freedom of Information Act Program," September 4, 1998

(y)  DoD Instruction 2310.08E, "Medical Program Support for Detainee Operations," June 6, 2006

(z)  DoD 8910.1-M, "Department of Defense Procedures for Management of Information Requirements," June 30, 1998

(aa) DoD Directive 5143.01, "Under Secretary of Defense for Intelligence (USD(I))," November 23, 2005

(ab) Under Secretary of Defense for Intelligence Memorandum, "Guidance for the Conduct and Oversight of Defense Human Intelligence (HUMINT)," December 14, 2004[2]

(ac) DoD Directive 1100.4, "Guidance for Manpower Management," February 12, 2005

(ad) DoD Directive 2311.01E, "DoD Law of War Program," May 9, 2006

(ae) DoD 5240.1-R, "Procedures Governing the Activities of DoD Intelligence Components That Affect United States Persons," December 7, 1982

(af) Geneva Convention Article 3, Relative to the Treatment of Prisoners of War, October 21, 1950

(ag) DoD Directive 2310.01E, "The Department of Defense Detainee Program," September 5, 2006

(ah) Deputy Secretary of Defense Memorandum, "Global Screening Criteria for Detainees," February 20, 2004[2]

(ai) Deputy Secretary of Defense Memorandum, "Enemy Combatant Status Determinations," January 19, 2007[2]

---

[2] Copies may be obtained from the Internet at http://usdi.dia.smil.mil/usdi_st/usdi_docs/keyref/usdi_keyref.cfm

ENCLOSURE 2

RESPONSIBILITIES

1.  <u>USD(I)</u>.  The USD(I), pursuant to DoD Directive 5143.01 (Reference (aa)), shall:

    a.  Exercise primary staff responsibility for DoD intelligence interrogations, detainee debriefings, and tactical questioning and serve as the principal advisor to the Secretary and Deputy Secretary of Defense regarding DoD intelligence interrogations policy.

    b.  Serve as primary DoD liaison between the Department and the Intelligence Community on matters related to intelligence interrogations, detainee debriefings, and tactical questioning.

    c.  Provide oversight of operations concerning intelligence interrogations, detainee debriefings, and tactical questioning, and ensure overall development, coordination, approval, and publication of DoD policies and implementation plans related to intelligence interrogations, detainee debriefings, and tactical questioning, including coordination of such proposed policies and plans with other Federal departments and agencies as necessary.

    d.  Review, approve, and ensure coordination of all DoD Component implementation plans, policies, orders, directives, and doctrine related to intelligence interrogation operations.  DoD Components will forward copies of implementing documents to the USD(I) for review and approval, and to the Director of the Defense Intelligence Agency (DIA), as the Defense Human Intelligence (HUMINT) Manager.

    e.  Refer reportable incidents not involving DoD personnel to applicable Federal agencies, foreign governments, or other authorities.  Coordinate with appropriate OSD entities and other Federal agencies, as appropriate, prior to referral.

    f.  Review proposed funding by the Military Departments according to paragraph 7.b. of this enclosure and in coordination with the Military Departments, the Under Secretary of Defense for Personnel and Readiness (USD(P&R)), the Under Secretary of Defense (Comptroller), and the DoD General Counsel.

    g.  Develop policies and procedures, in coordination with the Under Secretary of Defense for Acquisition, Technology, and Logistics, the DoD General Counsel, and the appropriate DoD Components, to ensure that all contracts in support of intelligence interrogation operations, detainee debriefings, or tactical questioning include the obligation to comply by the standards in this Directive; that they exclude performance of functions that are inherently governmental or exempt from private sector performance consistent with guidance in Reference (m); and that all DoD contractor personnel are properly trained and certified.

2. <u>DIRECTOR, DIA</u>.  The Director, DIA, under the authority, direction, and control of the USD(I), shall:

    a.  Plan, execute, and oversee DIA intelligence interrogation operations that are not under a Combatant Commander's authority.

    b.  Issue appropriate intelligence interrogation implementing guidance and forward it for review and approval in accordance with paragraph 1.d. of this enclosure.

    c.  Institute programs within DIA to:

        (1)  Comply with this Directive and References (h), (i), and (y).

        (2)  Ensure all plans, policies, orders, directives, training, doctrine, and tactics, techniques, and procedures issued by DIA or its subordinate elements comply with this Directive and References (h), (i), and (y) and are periodically reviewed and evaluated.

    d.  As Defense HUMINT Manager, in accordance with USD(I) Memorandum (Reference (ab)):

        (1)  Include DoD intelligence interrogations and detainee debriefings in the periodic assessment of DoD HUMINT enterprise activities, including an assessment of the effectiveness of intelligence interrogations.

        (2)  Establish standards for interrogation training and certification, in coordination with applicable DoD Components, so that all personnel who conduct DoD intelligence interrogations are properly trained and certified, including appropriate training in applicable law and policies in accordance with paragraph 3.a. of the front matter of this Directive.

3. <u>USD(P)</u>.  The USD(P) shall coordinate with the USD(I) on all detainee-related policies, publications, and actions that affect intelligence interrogations, detainee debriefings, and tactical questioning.  The USD(P) retains primary staff responsibility for DoD policy oversight of the DoD detainee program.

4. <u>USD(P&R)</u>.  The USD(P&R) shall:

    a.  Coordinate with the USD(I) and the Secretaries of the Military Departments to ensure that interrogators have appropriate language skills and training to support interrogation operations and that trained and professional interpreters and other personnel are available to augment and support interrogation operations.

    b.  Provide overall guidance in accordance with DoD Directive 1100.4 (Reference (ac)), including on the performance of inherently governmental functions.

5. <u>ASD(HA)</u>.  The ASD(HA), under the authority, direction, and control of the USD(P&R), shall develop policies, procedures, and standards for medical program activities affecting intelligence interrogation activities in accordance with this Directive and in coordination with USD(I).

6. <u>HEADS OF THE DoD COMPONENTS</u>.  The Heads of the DoD Components shall ensure compliance with the requirements of section 3 of the front matter of this Directive regarding the conduct of intelligence interrogations, detainee debriefings, and tactical questioning.

7.  <u>SECRETARIES OF THE MILITARY DEPARTMENTS</u>.  In addition to the responsibilities in section 6, to the extent that the Military Departments conduct or support intelligence interrogations, detainee debriefings, or tactical questioning, the Secretaries of the Military Departments shall:

   a.  Implement policies and procedures in accordance with this Directive.  Forward copies of implementing documents to the USD(I) for review and approval and to the Director of DIA, as the Defense HUMINT Manager, in accordance with paragraph 1.d. of this enclosure.

   b.  Plan, program, and budget for adequate resources so that sufficient numbers of trained interrogators, interpreters, and other personnel are available to conduct intelligence interrogation operations.

   c.  Ensure that intelligence interrogators and debriefers, including DoD contractor personnel, are properly trained and certified in accordance with the standards established by the Defense HUMINT manager.

   d.  Provide training on the conduct of tactical questioning for appropriate personnel.

   e.  Coordinate with the Commanders of the Combatant Commands or other appropriate authorities to ensure prompt reporting and investigation of reportable incidents committed by members of their respective Military Departments, or persons accompanying them, in accordance with the requirements of Enclosure 3.  Provide the results of such investigations to appropriate authorities for possible disciplinary or administrative action as appropriate.

8.  <u>CHAIRMAN OF THE JOINT CHIEFS OF STAFF</u>.  The Chairman of the Joint Chiefs of Staff shall provide appropriate oversight to the Commanders of the Combatant Commands to ensure their policies and procedures for conducting intelligence interrogation operations, detainee debriefings, and tactical questioning are consistent with this Directive.

9.  <u>COMMANDERS OF THE COMBATANT COMMANDS</u>.  The Commanders of the Combatant Commands, through the Chairman of the Joint Chiefs of Staff, shall:

a.  Develop and submit Combatant Command level guidance, orders, and policies (to include policies governing third-party interrogations) implementing this Directive to USD(I) for review and approval and to the Director of DIA, as the Defense HUMINT Manager, in accordance with paragraph 1.d. of this enclosure.

b.  Plan, execute, and oversee Combatant Command intelligence interrogation operations, detainee debriefings, and tactical questioning in accordance with this Directive.

c.  Ensure that all intelligence interrogation and detainee debriefing plans, policies, orders, directives, training, doctrine, and tactics, techniques, and procedures issued by subordinate commands and components are consistent with this Directive and USD(I) approved policies, and that they are periodically reviewed and evaluated.

d.  Ensure personnel, including DoD contractor personnel, who are involved in intelligence interrogations are trained and certified consistent with the standards established pursuant to paragraph 2.d.(2) of this enclosure.

e.  Ensure personnel, including DoD contractor personnel, who are involved in detainee debriefings and tactical questioning are appropriately trained.

f.  Ensure non-DoD intelligence interrogations are conducted in accordance with paragraph 3.d.(7) of the front matter of this Directive and with Enclosure 5.

g.  Exercise authority under the UCMJ over contract interrogators, contract debriefers, and other contractor personnel supporting interrogations in accordance with Reference (n).

h.  Ensure that contracts for interrogators and interrogation support personnel being executed within their area of responsibility comply with the Combatant Command's interrogation guidance, Appendix K of Reference (i), and this Directive.

i.  In coordination with the Secretaries of the Military Departments:

(1)  Establish procedures and promptly report reportable incidents to appropriate authorities in accordance with Enclosure 3.

(2)  Ensure alleged violations by DoD military personnel, DoD civilian employees, or DoD contractor personnel are properly and thoroughly investigated.

(3)  Provide the results of such investigations to appropriate authorities for possible disciplinary or administrative action.

j.  Coordinate with USD(I) and DoD General Counsel, through the Chairman of the Joint Chiefs of Staff, regarding whether a DoD investigation is required for reportable incidents involving non-DoD personnel.

*DoDD 3115.09, October 9, 2008*

ENCLOSURE 3

REPORTABLE INCIDENT REQUIREMENTS

1. REPORTABLE INCIDENTS INVOLVING DOD PERSONNEL

    a. All military personnel, civilian employees, and DoD contractor personnel (to the extent incorporated in their contracts) who obtain information about a reportable incident allegedly committed by DoD personnel shall immediately report the incident through their chain of command or supervision. Interrogation support contracts will require contractor personnel to report reportable incidents to the commander of the unit they are accompanying, the commander of the installation to which they are assigned, or to the Combatant Commander. Reports also may be made through other channels, such as the military police, a judge advocate, a chaplain, or an inspector general, who will then forward a report through the appropriate chain of command or supervision. Reports made to officials other than those specified in this paragraph will be accepted and immediately forwarded through the recipient's chain of command or supervision, with an information copy to the appropriate Combatant Commander.

    b. Any commander or supervisor who obtains credible information about a reportable incident shall immediately report the incident through command or supervisory channels to the responsible Combatant Commander, or to other appropriate authority for allegations involving personnel who are not assigned to a Combatant Commander. In the latter instance, an information report shall also be sent to the Combatant Commander with responsibility for the geographic area where the alleged incident occurred.

    c. The Combatant Commanders and the Secretaries of the Military Departments shall report, by the most expeditious means available, all reportable incidents to the Chairman of the Joint Chiefs of Staff, the USD(I), the DoD General Counsel, the Director, DIA, and the DoD IG. Reports shall specify any actions already taken and identify the investigating authority, or explain why an inquiry or investigation is not possible, practicable, or necessary.

    d. The Combatant Commander or other appropriate authority shall ensure an appropriate inquiry or investigation is conducted. Final reports will be forwarded consistent with the procedures established in paragraph 1.c. of this enclosure.

    e. When appropriate, submit a report in accordance with DoD Directive 2311.01E (Reference (ad)) concerning any reportable incidents. When intelligence component personnel are involved in any questionable activity, submit a report to the appropriate intelligence component General Counsel or Inspector General or to the Assistant to the Secretary of Defense for Intelligence Oversight under Procedure 15 of DoD 5240.1-R (Reference (ae)) for the identification, investigation, and reporting of questionable intelligence activities. Multiple reporting may be required for a single credible allegation. The commanders or supervisors shall coordinate with legal counsel to determine whether a single inquiry or investigation is appropriate.

*DoDD 3115.09, October 9, 2008*

2.  <u>REPORTABLE INCIDENTS INVOLVING NON-DOD PERSONNEL</u>.  Reportable incidents allegedly committed by non-DoD U.S. personnel or by coalition, allied, host-nation, or any other persons shall be reported as outlined in section 1 of this enclosure and referred to proper authorities (e.g., other U.S. Government, allied, coalition, or host-nation authorities) for appropriate action.  Any additional DoD investigation of such incidents will be conducted only at the direction of the appropriate Combatant Commander, the DoD IG, the USD(I), or higher authority.

*DoDD 3115.09, October 9, 2008*

ENCLOSURE 4

USE OF THE RESTRICTED TECHNIQUE OF SEPARATION


1.  The restricted interrogation technique of separation involves removing the detainee from other detainees and their environment, while still complying with all applicable standards of humane treatment and prohibitions against torture or cruel, inhumane, or degrading treatment or punishment as defined in Reference (h).  Separation is not an authorized interrogation technique for use on detainees covered by the Geneva Convention Relative to the Treatment of Prisoners of War (Reference (af)).


2.  Prior to any use of the separation technique, the Combatant Commander must authorize use of separation in his or her area of responsibility, and the first flag officer in the interrogators' chain of command must approve each specific use of separation and the interrogation plan that implements separation.  Before a flag officer approves the use of the separation technique, a competent authority designated by the Combatant Commander must determine that the detainee is an unlawful enemy combatant.

    a.  In making an unlawful enemy combatant status determination in the ongoing armed conflict with members of the Taliban, al Qaeda, and associated terrorist organizations, the competent authority will follow the guidance and definitions contained in DoD Directive 2310.01E (Reference (ag)) and Deputy Secretary of Defense Memorandums (References (ah) and (ai)).

    b.  In making an unlawful enemy combatant status determination in circumstances other than the ongoing armed conflict with members of the Taliban, al Qaeda, and associated terrorist organizations, such as with insurgents operating in Iraq who target U.S. forces, the competent authority will apply the definition of the term "unlawful enemy combatant" contained in the Glossary.


3.  Trained and certified interrogators will submit requests to employ separation in accordance with applicable law and policy, including Appendix M of Reference (i), and applicable Combatant Command interrogation policies.  The officer in charge of interrogations must maintain accurate records regarding requests for use of separation, regardless of whether the requests are approved.


4.  In all cases, the status determination that a detainee is an unlawful enemy combatant must occur prior to employing the separation interrogation technique.  If the detainee is already being segregated for legitimate administrative, health, safety, or security reasons unrelated to interrogation, the detainee may be interrogated in accordance with Reference (i) and paragraph 3.d.(3) of the front matter of this Directive without a special request for use of the separation technique.

ENCLOSURE 5

NON-DoD INTERROGATIONS, DEBRIEFINGS,
AND QUESTIONING OF DETAINEES

1.  All individuals representing other U.S. Government agencies, foreign governments, or any other non-DoD entity must comply with applicable DoD interrogation policies and procedures when conducting intelligence interrogations, debriefings, or other questioning of persons detained by the Department of Defense.  These individuals shall sign a written agreement to abide by DoD interrogation policies and procedures before being allowed access to any detainee in the custody or effective control of the Department of Defense.

2.  A trained and certified DoD interrogator shall monitor all interrogations, debriefings, and other questioning conducted by non-DoD or non-U.S. Government agencies or personnel of detainees in the custody or effective control of the Department of Defense, except as provided in paragraph 3.d.(8) of the front matter of this Directive.  If a DoD interrogator is not available, a DoD intelligence professional -- either a uniformed Service member in the grade of E-6 or above or a DoD civilian in the 0132 specialty -- shall monitor the interrogation, debriefing, or other questioning.  Such non-interrogator monitor must be trained in the law of war and theater standards for interrogation operations, and he or she must be certified as having received such training and approved as a monitor by the senior intelligence officer having oversight responsibilities for the facility where the monitor will be employed.

3.  Contractor personnel are not authorized to serve as monitors.

4.  Although physical presence is preferred, monitoring may be accomplished by remote observation if necessary.  In the case of both physical and remote monitoring, the monitor must be able to hear and understand everything that is spoken.  If a translator is used, the translator must translate everything that is spoken during interrogations, debriefings, or other questioning.  Monitors must maintain the interrogators and the detainee in full view and under constant observation.

5.  If the monitored party does not adhere to DoD policies and procedures, the monitor shall immediately terminate the interrogation and report the noncompliance in accordance with Enclosure 3.  The officer in charge of the interrogation facility must ensure quick reaction procedures are in place to enforce compliance with interrogation law and policy.

*DoDD 3115.09, October 9, 2008*

GLOSSARY

DEFINITIONS

Unless otherwise noted, the following terms and their definitions are for the purposes of this Directive.

<u>captured or detained personnel/detainee</u>.  Any person captured, detained, held, or otherwise under the control of DoD personnel (military or civilian).  This does not include DoD personnel or DoD contractor personnel being held for law enforcement purposes.

<u>counterintelligence</u>.  Information gathered and activities conducted to protect against espionage, other intelligence activities, sabotage, or assassinations conducted for or on behalf of foreign powers, organizations, or persons, or international terrorist activities, but not including personnel, physical, document, or communications security programs.

<u>debriefing</u>.  The process of using direct questions to elicit intelligence information from a cooperative detainee to satisfy intelligence requirements.

<u>disclosure of intelligence</u>.  Showing or revealing classified intelligence, whether orally, in writing, or by any other medium, without providing the recipient with a copy of such information for retention.

<u>foreign intelligence</u>.  Information relating to the capabilities, intentions, and activities of foreign powers, organizations, or persons, but not including counterintelligence except for information on international terrorist activities.

<u>humane treatment</u>.  The treatment standard as described in Enclosure 4 of Reference (ag) and Reference (af), as construed and applied by U.S. law.

<u>intelligence interrogation</u>.  The systematic process of using interrogation approaches to question a captured or detained person to obtain reliable information to satisfy foreign intelligence collection requirements.

<u>law of war</u>.  The part of international law that regulates the conduct of armed hostilities and occupation.  It is often called the "law of armed conflict" and encompasses all international law applicable to the conduct of hostilities that is binding on the United States or its individual citizens, including treaties and international agreements to which the United States is a party, and applicable customary international law.

<u>release of intelligence</u>.  Providing the recipient of classified information with a copy, whether in writing or any other medium, of such information for retention.

*DoDD 3115.09, October 9, 2008*

reportable incident.  Any suspected or alleged violation of DoD policy, procedures, or applicable law relating to intelligence interrogations, detainee debriefings, or tactical questioning for which there is credible information.

segregation.  Physically removing a detainee from other detainees and his or her environment for legitimate purposes unrelated to interrogation, such as when necessary for the movement, health, safety, or security of the detainee, or for the security of the detention facility or its personnel.

separation.  The restricted interrogation technique for use only with unlawful enemy combatants that involves physically removing the detainee from other detainees and his or her environment, while still complying with the basic standards of humane treatment and prohibitions against torture or cruel, inhumane, or degrading treatment or punishment as described in Enclosure 4 of Reference (ag) and Reference (af), as construed and applied by U.S. law.

SERE techniques.  Those techniques used by SERE school instructors that are not authorized in Reference (i) for use as intelligence interrogation techniques.

tactical questioning.  Direct questioning by any DoD personnel of a captured or detained person to obtain time-sensitive tactical intelligence, at or near the point of capture or detention.

unlawful enemy combatant.  Persons not entitled to combatant immunity, who engage in acts against the United States or its coalition partners in violation of the laws and customs of war during an armed conflict.  For purposes of the war on terrorism, "unlawful enemy combatant" includes, but is not limited to, an individual who is or was part of or supporting Taliban or al Qaeda forces or associated forces that are engaged in hostilities against the United States or its coalition partners.