**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI, et al., | ) ) ) ) |
| Plaintiffs, | ) )  Case No. 1:08-CV-00827-GBL-JFA |
| v. | ) ) ) |
| CACI PREMIER TECHNOLOGY, INC., | ) ) ) |
| Defendant. | ) ) ) |

**DEFENDANTS' REPLY TO PLAINTIFFS'**
**OPPOSITION TO THE BILL OF COSTS**

**I.     INTRODUCTION**

An award of costs is an unremarkable event at the conclusion of litigation in federal district court, and the result should be no different here. The costs recoverable in a bill of costs, of course, are just a small fraction of the overall expense the CACI Defendants incurred in this case. Plaintiffs' main argument that they should be exempt from the presumptive award of costs is that they claim (but have not proven) that they are victims of abuse at Abu Ghraib prison. Notably, however, while these Plaintiffs claim to have been injured while in United States custody, none of them has asserted an administrative claim against the United States, the one entity best situated to assess whether Plaintiffs' allegations are true. Instead, Plaintiffs sued (and imposed considerable litigation costs on) the CACI Defendants when Plaintiffs do not even allege that they had any meaningful interaction *at all* with the CACI Defendants' employees. Plaintiffs proceeded solely on an amorphous theory of co-conspirator liability, a theory that

Plaintiffs constantly changed whenever the facts or the law made their conspiracy theory of the day untenable. Three of the Plaintiffs even repeatedly put off the day that they would appear for depositions, imposing massive litigation costs on the CACI Defendants in the interim, when Plaintiffs should have known their likelihood of appearing in this country for deposition was unlikely at best. Indeed, the United States, in its considered judgment, apparently views three of the Plaintiffs as sufficiently threatening to the security of the United States that it would not allow them into this country even long enough to sit for a deposition. Plaintiffs' opposition to the Bill of Costs is just the latest example of Plaintiffs arguing that they are entitled to an exemption from the rules applicable to every other federal court litigant. Plaintiffs are not so entitled, and the Court should grant the Bill of Costs in full.

## II.     ANALYSIS

### A.     The CACI Defendants Timely Filed the Bill of Costs

The Court dismissed all pending claims in a 30-page opinion on June 25, 2013. *See* Memorandum Opinion and Order (June 25, 2013) [Dkt. #460]. As the prevailing parties, the CACI Defendants are presumptively entitled to recovery of their litigation costs. Fed. R. Civ. P. 54(d)(1) ("costs—other than attorney's fees—should be allowed to the prevailing party"). Plaintiffs assert that the Bill of Costs is "far out of time," but that argument is flat wrong. *See* Plaintiffs' Opp. to Defendants' Bill of Costs ("Opp.") at 1.

By Local Rule, the deadline for filing a bill of costs is triggered by entry of judgment. Local R. 54(D)(1). Here, however, the Court did not direct the clerk to enter judgment, nor did the clerk or the Court enter judgment. Under the Federal Rules, the Court's 30-page opinion dismissing Plaintiffs' remaining claims is not, by itself, an entry of judgment, as Federal Rule 58 is quite clear on what is required for entry of judgment. Thus, the CACI Defendants are entitled

to seek costs as the prevailing party, but the 11-day deadline associated with cases where final judgment is entered is inapplicable.

Plaintiffs argue that the Court's Memorandum Opinion and Order suffices for entry of judgment. Opp. at 3-6. But the Court's opinion does not state that judgment is entered, and certainly does not meet Rule 58's requirement that "every judgment shall be set forth on a separate document." Fed. R. Civ. P. 58(a).

Plaintiffs urge that because the Memorandum Opinion and Order contains "the 'essentials of the judgment'" and shows "other factors demonstrating finality," binding case law makes clear that Rule 58's separate document requirement can be ignored. Opp. at 4. But Rule 58 "sets up a strict standard" that must be "'mechanically applied,' without regard to the equities of the case." *Hughes v. Halifax County School Bd.*, 823 F.2d 832, 834 (4th Cir. 1987) (quoting *United States v. Indrelunas*, 411 U.S. 216, 221-22 (1973)). The Fourth Circuit has held that an "entry" occurs "only when the essentials of a judgment or order are set forth in a written document *separate from the court's opinion or memorandum . . . ." See Caperton v. Beatrice Pocahontas Coal Co.*, 585 F.2d 683, 688 (4th Cir. 1978); *see also* J. Moore, J. Lucas & G. Grotheer, Jr. 6A Moore's Federal Practice para. 58.02.1, at 58-20 (2d ed. 1986). No such separate order has issued in this case; therefore, judgment was not entered.

Plaintiffs contend in a footnote that, if judgment has not yet been entered, the Bill of Costs is premature. Opp. at 4 n.3. Plaintiffs misread the local rules. Local Rule 54 does not, by its terms, require entry of judgment before a party may file a bill of costs. Local R. 54(D)(1). Rather, the rule simply provides that the entry of judgment starts the clock running to file the bill of costs within eleven days. Indeed, Federal Rule 54(d)(1) provides for an award of costs to any "prevailing party," and is not predicated on that party holding a judgment that is separate from an

order or opinion dismissing the plaintiff's claims. Hence, the CACI Defendants' Bill of Costs is neither early nor late.

### B. The Court Should Tax Defendants' Costs As Requested

"[W]hen a statute or federal rule of civil procedure does not shift costs to the prevailing party, a court may not do so except in rare circumstances including: 'misconduct by the prevailing party worthy of a penalty'; 'the losing party's inability to pay'; the 'excessiveness [of the costs] in a particular case'; the 'limited value of the prevailing party's victory'; or 'the closeness and difficulty of the issues decided.'" *Keeshan v. Eau Claire Coop. Health Ctrs., Inc.*, 394 Fed. Appx. 987, 997-98 (4th Cir. 2010) (quoting *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999)). In support of their request, Plaintiffs raise three arguments—Plaintiffs' inability to pay, the closeness of a dispositive issue, and the comparative economic power of the parties—none succeed.

Plaintiffs first assert that three of them are of modest means and unable to pay the costs the CACI Defendants are entitled to receive and, consequently, costs should not be awarded. Opp. at 6-7 (making no mention of Plaintiff Al Ejaili's financial condition). But "[t]he pertinent question is not whether the non-prevailing party suffered an economic hardship as a consequence of the outcome of the litigation,"—here, a lack of recovery after Plaintiffs' anemic efforts to prosecute their claims—"but whether the non-prevailing party was 'of such modest means that it would be unjust or inequitable to enforce Rule 54(d)(1).'" *Schwarz & Schwarz of Va., LLC v. Certain Underwriters at Lloyd's, London*, 2010 U.S. Dist. LEXIS 10753, 6-7 (W.D. Va. 2010) (citing *Cherry*, 186 F.3d at 447).

The standard is high. Even *in forma pauperis* plaintiffs—which Plaintiffs are not—are liable for paying the prevailing party's costs. *See* 28 U.S.C. § 1915(f)(1). In *Flint v. Haynes*, 651 F.2d 970 (4th Cir. 1981), the Fourth Circuit held that "a district court is empowered to award

4

costs even when it has previously granted a litigant the benefits" of *in forma pauperis* status. *Id.* at 972. The Court of Appeals explained:

> When costs are assessed only in extreme or exceptional cases, those persons granted leave to proceed *in forma pauperis* have virtually nothing to lose and everything to gain, and the purpose of § 1915—equal access for the poor and the rich—is distorted. Non-indigents who contemplate litigation are routinely forced to decide whether their claim is worth it. We see no reason to treat indigents differently in this respect.

*Id.* at 973 (internal quotations and citations omitted); *Cherry*, 186 F.3d at 447-48 ("nothing in Rule 54(d) supporting the counterintuitive notion that litigants with 'modest means' should be treated more leniently than *in forma pauperis* litigants regarding assessments of costs")

Plaintiffs likewise have not made the case that they deserve to be treated more leniently than *in forma pauperis* litigants. Plaintiffs do not address Al Ejaili's financial condition, but we know that he is employed by Al Jazeera. By Plaintiffs' own description, Al-Shimari earns an income that is higher than the average Iraqi's income by half. Opp. at 6-7. And, while Plaintiffs say that Al-Zuba'e and Rashid have more modest means, there is no proof to substantiate their claims.

Plaintiffs next contend that costs should not be taxed because the issue of extraterritorial application of the ATS "w[as] close and difficult." *Id.* at 7 (quoting *Ellis v. Grant Thornton LLP*, 434 Fed. Appx. 232, 235 (4th Cir. 2011)). The recent dismissal of the ATS claims was, of course, the *second* time the Court dismissed those claims. And as this Court recognized, the Supreme Court made utterly clear that the ATS does not apply extraterritorially. *See* Memorandum Opinion and Order 13-19; *see also Ellis*, 434 Fed. Appx. at 235 ("[A]lthough the unsuccessful party's 'good faith in pursuing an action is a virtual prerequisite to receiving relief from the normal operation of Rule 54(d)(1), that party's good faith, standing alone, is an

insufficient basis for refusing to assess costs against that party.") (quoting *Cherry*, 186 F.3d at 446)).

Finally, comparative economic power is not a valid basis on which to deny costs. *Cherry*, 186 F.3d at 447-48. "[T]he plain language of Rule 54(d) does not contemplate a court basing awards on a comparison of the parties' financial strengths." *Id.* "To do so would not only undermine the presumption that Rule 54(d)(1) creates in prevailing parties' favor, but it would also undermine the foundation of the legal system that justice is administered to all equally, regardless of wealth or status." *Id.* (citing *Flint*, 651 F.2d at 973).

### C.     Defendants Seek Only Taxable Costs

Plaintiffs' efforts to chip away at the individual costs for which they are responsible are equally unavailing. As an initial matter, the CACI Defendants' counsel attempted, several times, to confer with Plaintiffs' counsel on this issue prior to filing the Bill of Costs. Putting aside Plaintiffs' position that they should be granted a full exemption from paying any costs at all, CACI Defendants' counsel asked whether there were individual entries in the Bill of Costs that Plaintiffs viewed as not taxable costs. Plaintiffs' counsel declined to respond to those inquiries, yet now try to flyspeck the Bill of Costs before the Court. However, the types of costs that may be recouped are set forth under 28 U.S.C. § 1920. The CACI Defendants have confined their requests for costs to the statute's enumerated categories and, therefore, are entitled to reimbursement.

#### 1.     Fees for *pro hac vice* admissions

Plaintiffs claim that fees for *pro hac vice* admissions are not recoverable. Opp. at 10. But this Court's local civil rules require *pro hac vice* applicants to "pay the required fee to the Clerk." Local Rule 83.1(D)(2). Thus, *pro hac vice* fees are considered "fees of the Clerk" under 28 U.S.C. § 1920(1). *See Synergistic Int'l, L.L.C. v. Korman*, 2007 U.S. Dist. LEXIS 9798, *5-

\*6 (E.D. Va. Feb. 8, 2007); *see also Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 2013 U.S. Dist. LEXIS 42300, \*3-\*8 (E.D. Va. Mar. 21, 2013). Accordingly, these fees are taxable. *Id.*

Plaintiffs next criticize the CACI Defendants for moving the admission of two attorneys in addition to lead counsel. Opp. at 10. But Plaintiffs moved to admit a virtual brigade of attorneys. *See* Motions to Admit K. Gallagher [Dkt. #57], R. Healy [Dkt. #71], W. O'Neil [Dkt. #112], S. Sajadi [Dkt. #147], B. Azmy [Dkt. #152], P. Nelson [Dkt. # 164], S. Lorr [Dkt. #165], R. LoBue [Dkt. #166], M. Cohen [Dkt. #167], S. Akeel [Dkt. #178], and J. Dixon [Dkt. #323].[1] By comparison, the defense was leanly staffed.

Hypocrisy aside, Plaintiffs' contention that *pro hac vice* fees can only be taxed for lead counsel is wrong. The case Plaintiffs cite for this spurious proposition, *Nobel Biocare USA, LLC v. Technique D'Usinage Sinlab, Inc.*, 2013 U.S. Dist. LEXIS 30851 (E.D. Va. 2013), demonstrates that there is no such limitation and that *pro hac vice* fees are recoverable as long as they are not exorbitant. *Id.* at \*4-\*5. In *Nobel*, this Court permitted recovery for four *pro hac vice* admissions and denied recovery for three admissions on the grounds that the prevailing party did not demonstrate a need for seven admissions in addition to two local counsel. *Id.* Here, the CACI Defendants had less than half the number of counsel working on this case than Plaintiffs found necessary to their own litigation of the case.

At any rate, even if appearance in court or taking depositions were the standard—which it is not—both Linda C. Bailey and David M. Crane meet that standard. Ms. Bailey took depositions for Major Carolyn Holmes and Sabrina Harman. *See* O'Connor Decl. ¶ 2. Mr. Crane was scheduled to take the deposition of John Neal during the last week of discovery (when

---

[1] The applications of Ms. Healy and Ms. Lorr were denied because they did not meet the requirements for admission *pro hac vice*. Nevertheless, Ms. Lorr worked on the case, including liaison with the CACI Defendants and counsel for the United States.

7

the parties were double- and triple-tracking depositions), until Plaintiffs cancelled the deposition nine days before it was scheduled to proceed.  *Id.* at ¶ 3.  Under Local Rule 83.1(D), foreign attorneys must file for *pro hac vice* admission prior to practicing before this Court.  As such, Ms. Bailey and Mr. Crane's admissions were reasonable and necessary to the defense.

### 2. Costs Incident to Depositions Necessary for Trial

Plaintiffs first argue that none of the depositions reflected on the Bill of Costs were necessary.  But *Plaintiffs noticed seven of the nine depositions* itemized in Exhibit B.  *See* Koegel Decl., Exhibit B at B1-B7.  Plaintiffs claim that the depositions were not "necessary" because the Court decided the case on the pleadings.  Opp. at 11.  But a "district court should award costs when the taking of a deposition is reasonably necessary *at the time of its taking*." *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 528 (4th Cir. 1987).

Presumably, Plaintiffs concede that they viewed the *seven* depositions they noticed as "reasonably necessary" at the time they took them.  The other two depositions were of Plaintiff Al Ejaili (whose deposition was court-ordered and the necessity of which is self-evident), and Major Carolyn Holmes (formerly, Captain Carolyn Wood), who was the Officer in Charge of the interrogation effort at Abu Ghraib prison.  It is difficult to understand how Plaintiffs could challenge the necessity of Major Holmes' deposition when counsel for Plaintiffs questioned the witness for more than *twice* as long as defense counsel.  *See* O'Connor Decl., Exhibit A.  Given that Plaintiffs' theory was based on a conspiracy between CACI employees and soldiers performing at Abu Ghraib prison, deposing the officer in charge of interrogations is clearly appropriate.  Indeed, if Major Holmes' deposition were not reasonably necessary, the United States presumably would have denied the CACI Defendants' *Touhy* request for her deposition.

Plaintiffs next quibble with the CACI Defendants' request for reimbursement of the cost for service of process executed on Major Holmes.  Plaintiffs rely on this District's Taxation of

Costs Guidelines and pretend there is a presumption that the cost of a private process server is not recoverable. Opp. at 11. What Plaintiffs fail to acknowledge is that the guidelines do "not purport to be a unanimous practice of this court" and specifically indicate that "[i]t is for the judge who rendered the judgment to decide whether the costs were 'necessarily incurred in the case.'" E.D. Va. Guidelines at 1. Indeed, with good reason, courts in this district have departed from the guidelines as to private process servers.

This Court has acknowledged that, while the Fourth Circuit has not yet addressed the issue, "a clear majority of circuit courts recognize private process server fees [as] taxable against the non-prevailing party." See *Mann v. Heckler & Koch Def., Inc.*, 2011 U.S. Dist. LEXIS 46045, 6-7 (E.D. Va. Apr. 28, 2011) (citing *Schwarz & Schwarz of Va., LLC v. Certain Underwriters at Lloyd's*, No. 6:07-cv-42, 2010 U.S. Dist. LEXIS 10753, 2010 WL 452743, at *3 (W.D. Va. Feb. 8, 2010) (comparing cases from the Sixth, Eleventh, Seventh, Second, Ninth circuits with the Eighth Circuit)). Thus, this Court has permitted such fees where appropriate. *See, e.g.*, *id.* (decided after the guidelines were last revised in 2011); *O'Bryhim v. Reliance Std. Life Ins. Co.*, 997 F. Supp. 728, 738 (E.D. Va. 1998). As explained above, Major Holmes' deposition—and, therefore, subpoena—were "reasonably necessary" to the defense of this case.

Plaintiffs assert that incidental costs associated with transcription, for example costs related to rough drafts and exhibits, are not recoverable. Opp. at 11 (citing cases from the Western District of Virginia and the Northern District of West Virginia). But in this District, ancillary costs associated with depositions are recoverable. *See, e.g.*, *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 2013 U.S. Dist. LEXIS 42300, *14-*15 (E.D. Va. Mar. 21, 2013) (permitting recovery for items "properly considered part of the record" of a deposition, including exhibits, reporter processing fees, reporter appearance fees, and shipping and handling fees).

9

The cost of a deposition video is the only charge associated with a deposition that this District has specifically concluded is not taxable, and the CACI Defendants have not sought recovery of those fees. *See* Koegel Decl. ¶ 5.[2]

Finally, Plaintiffs challenge the expedited deliveries of the Frederick and Al Ejaili deposition transcripts. Opp. at 12-13.[3] But, "where reasonably justified, rush fees are indeed taxable." *Mann v. Heckler & Koch Def., Inc.*, 2011 U.S. Dist. LEXIS 46045, at *12 (citing *Ferris v. AAF-McQuay, Inc.*, 5:06-cv-82, 2008 WL 495656, at *1 (W.D. Va. Feb. 21, 2008) ("[A]ncillary costs such as extra copies and *expedited production* are not allowed absent a showing of necessity.")).

With respect to Frederick, the CACI Defendants cited to his deposition in a motion filed twelve days after the date of the deposition. *See* Mem. in Support of Mot. to Stay Discovery Relating to Plaintiffs' Conspiracy Allegations (Mar. 15, 2013) [Dkt. #217]; *see also* Dkt. #222 (corrected memorandum). Thus, for purposes of litigating critical discovery issues, Frederick's transcript was needed as quickly as possible.[4] Similarly, the CACI Defendants cited to Plaintiff Al Ejaili's deposition in a motion filed nine days after his deposition was taken. *See* Dkt. #217. As with the Frederick deposition, Plaintiff Al Ejaili's deposition similarly demonstrated the total

---

[2] Plaintiffs' calculation is incorrect. Setting aside the charges for exhibits ($1,293.00)—which are undeniably part of the deposition record and therefore recoverable—the incidental costs for ASCII files and rough transcripts amount to $1,586.50.

[3] Plaintiffs have misstated the amount associated with expediting the transcript. Plaintiffs mistakenly reference the cost of the transcript, $892.70, as the cost for the three business-day delivery. Opp. at 13. The invoice reflects a delivery charge of $626.02. *See* Koegel Decl., Exhibit B at B8. Thus, any reduction related to expedited delivery would be limited to that amount.

[4] Plaintiffs overstate the cost associated with expedited delivery, attempting to write off the entire cost of the transcript. *See* Koegel Decl., Exhibit B at B1. At a minimum, the CACI Defendants should recover $954.95 for the Frederick transcript, which reflects Plaintiffs' court reporter's standard rate of $3.55 per page of transcript. *See, e.g., id.* at B2-B4.

lack of accessible evidence regarding the identities of the personnel who were alleged to have interrogated Plaintiffs. Thus, for purposes of litigating critical discovery issues and pinning down the basis for Plaintiffs' conspiracy claims, rush delivery of Al Ejaili's transcript was reasonably justified.

### 3. Fees Incurred in Obtaining Pretrial Transcripts

Plaintiffs challenge the recoverability of costs incurred to obtain transcripts of this Court's pretrial hearings. Opp. at 13. Plaintiffs assert that the transcripts were not prepared pursuant to stipulation of the parties and that the CACI Defendants have not shown that they were used on appeal. *Id.* Plaintiffs claim these are the only two situations in which this Court permits recovery. *Id.* Once again, Plaintiffs are wrong.

Three of the transcripts for which the CACI Defendants seek reimbursement are costs that the Court's guidelines indicate are likely to be reimbursed: the October 24, 2008, April 19, 2013, and May 10, 2013 transcripts. *See* Koegel Decl., Exhibit C at C1, C7, and C8. Each of these transcripts was obtained to be "used on appeal." E.D. Va. Guidelines at 2. Contrary to Plaintiffs' claims, the CACI Defendants have already provided documentation that the October 24, 2008 transcript was "used on appeal." *See* Koegel Decl., Exhibit C at C1 (Transcript Order from the United States Court of Appeal for the Fourth Circuit). The November 17, 2011 transcript deals with certifying an order for interlocutory appeal before the en banc Court of Appeals for the Fourth Circuit. *See* H'ring Tr. 2-3 (Nov. 17, 2011) [Dkt. #136]. Further, Plaintiffs themselves have admitted to noticing an appeal on the basis of the decision related to the April 19, 2013, and May 10, 2013 hearings. *See* Opp. at 1 (Plaintiffs noticed an appeal of the Court's June 25, 2013 Order). Thus, the necessity of these transcripts cannot be in question.

The remaining four transcripts are also taxable. To determine whether pretrial transcripts are reasonable and necessary, "the Court must consider both the length and complexity of the

11

whole case." *Sperry Rand Corp. v. A-T-O, Inc.*, 58 F.R.D. 132, 138 (E.D. Va. 1973). "If the [pretrial] proceedings were devoted to limiting and clarifying the issues which were to be heard at a lengthy trial and if such proceedings were of a magnitude that a transcript was needed to determine how the trial would proceed, then a transcript would of course be justified." *Id.* (citing *Bank of America v. Loew's International Corp.*, 163 F. Supp. 924, 931-32 (S.D.N.Y.1958)).

Here there can be no question that "the pretrial proceedings were of substantial importance to both parties." *Principe v. McDonald's Corp.*, 95 F.R.D. 34, 36-37 (E.D. Va. 1982). At the February 14, 2013 hearing, the Court considered and granted a motion to compel Plaintiffs' depositions. [Dkt. #s 204, 205, and 210]. The Court did not reduce its decision to a memorandum opinion, but rather issued an order "for the reasons stated in open court." [Dkt. #205]. At the March 8, 2013 hearing, the Court dismissed Plaintiffs conspiracy claims, again "for the reasons stated in open court." [Dkt. #215].

At the March 29, 2013 hearing, the Court considered and denied a motion to stay conspiracy-related discovery. [Dkt. #s 252, 253, and 269]. The decision dramatically "affected the course of future discovery," *Board of Directors, Water's Edge v. Anden Group*, 135 F.R.D. 129, 136 (E.D. Va. 1991), and the accompanying order relied entirely on "the reasons stated in open court," [Dkt. # 253]. At the April 12, 2013 hearing, the Court considered and denied motions to compel discovery from the U.S. government and to sanction Plaintiffs for their ongoing failure to appear for depositions. [Dkt. #s 307, 309, and 350]. Again, the Court did not reduce its decision to a memorandum opinion, but rather issued an order "for the reasons stated in open court." [Dkt. #309].

### 4. Fees for Interpreters

With respect to interpreter costs, Plaintiffs play fast and loose with persuasive precedent. Plaintiffs cite *Dahn World Co. v. Chung*, 2009 U.S. Dist. LEXIS 9802 (D. Md. Feb. 5, 2009), for

the proposition that interpreter fees—despite being specifically designated as recoverable under 28 U.S.C. § 1920(6)—are not recoverable. Opp. at 13. That is not what *Dahn* says.

Plaintiffs cherry pick the quote that "[w]hen a party requests an interpreter for a deposition, the cost for the service is borne by the party seeking the deposition." *Id.* (quoting *Dahn World Co.*, 2009 U.S. Dist. LEXIS 9802 at *7). Of course, this is true. The party who notices a deposition is responsible for providing an interpreter upon request, but if the noticing party prevails, the cost is recoverable under 28 U.S.C. § 1920(6). *See, e.g.*, *Dahn World Co.*, 2009 U.S. Dist. LEXIS 9802 at *7-*8. Had Plaintiffs finished reading the paragraph from which they quoted, they would have seen that the court *granted* recovery for the cost of the interpreter in *Dahn*. *Id.*; *see also East Boston Ecumenical Community Council, Inc. v. Mastrorillo*, 124 F.R.D. 14, 15 (D. Mass. 1989) ("If the defendants prevail on the merits, the costs incurred for the interpreters may be taxed in defendants' favor against the plaintiffs.") (cited at *Dahn World Co.*, 2009 U.S. Dist. LEXIS 9802 at *7).

Plaintiffs finally urge that because medical examinations are not recoverable, interpreter fees related to medical examinations likewise cannot be recovered. Opp. at 14. But no such limitation exists in the statutory language, 28 U.S.C. § 1920(6), or in Rule 54, and neither this Circuit nor this Court has ever limited recovery in that manner. Accordingly, the CACI Defendants' costs related to interpreters should be granted.

## III. CONCLUSION

For the foregoing reasons, the CACI Defendants' Bill of Costs should be approved and taxed as requested.

Respectfully submitted,

*/s/   J. William Koegel, Jr.*
J. William Koegel, Jr.
Virginia Bar No. 38243
John F. O'Connor (admitted *pro hac vice*)
Linda C. Bailey (admitted *pro hac vice*)
Counsel for Defendants CACI Premier Technology,
    Inc. and CACI International Inc
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
(202) 429-3902 – facsimile
wkoegel@steptoe.com
joconnor@steptoe.com
lbailey@steptoe.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of August, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>George Brent Mickum IV
>Law Firm of George Brent Mickum IV
>5800 Wiltshire Drive
>Bethesda, Maryland 20816
>gbmickum@gmail.com


>*/s/   J. William Koegel, Jr.*
>J. William Koegel, Jr.
>Virginia Bar No. 38243
>Attorney for Defendants CACI Premier
>    Technology, Inc. and CACI International Inc.
>STEPTOE & JOHNSON LLP
>1330 Connecticut Avenue, N.W.
>Washington, D.C. 20036
>(202) 429-3000 – telephone
>(202) 429-3902 – facsimile
>wkoegel@steptoe.com