# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CACI PREMIER TECHNOLOGY, INC.,<br><br>Defendant.<br><br>CACI PREMIER TECHNOLOGY, INC.,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>and JOHN DOES 1–60,<br><br>Third-Party Defendants. | No. 1:08–cv–827 (LMB/JFA) |

## DECLARATION AND ASSERTION OF STATE SECRETS PRIVILEGE BY

## JAMES N. MATTIS, SECRETARY OF DEFENSE

I, James N. Mattis, do hereby state and declare as follows:

1. I am the Secretary of Defense and have served in this capacity since January 20, 2017. I am the head of the Department of Defense ("DoD") and principal assistant to the President in all matters relating to DoD. The Secretary of Defense has authority, direction, and control over DoD and of its components, activities, and information. *See* 10 U.S.C. § 113(b). Prior to serving as the Secretary of Defense, I served more than four decades in uniform, commanding Marines at

all levels, from infantry rifle platoon to Marine Expeditionary Force. I led an infantry battalion in Iraq in 1991, an expeditionary brigade in Afghanistan after the 9/11 terror attacks in 2001, a Marine Division in the initial attack and subsequent stability operations in Iraq in 2003, and all U.S. Marine Forces in the Middle East as Commander, I Marine Expeditionary Force and U.S. Marine Forces Central Command. As a joint force commander, I commanded U.S. Joint Forces Command, NATO's Supreme Allied Command for Transformation, and U.S. Central Command. Following my retirement from the U.S. Marine Corps in 2013, I served as the Davies Family Distinguished Visiting Fellow at the Hoover Institution at Stanford University.

2. Through the exercise of my official duties, I have been advised of this litigation. I make the following statements based upon my personal knowledge and on information made available to me in my official capacity. The purpose of this declaration is to formally assert the state secrets privilege in order to protect classified information of DoD. As summarized in this declaration, public disclosure of the information covered by my privilege assertion reasonably could be expected to cause serious damage to the national security of the United States. As the Secretary of Defense and pursuant to Executive Order 13526, "Classified National Security Information," I hold original classification authority up to the TOP SECRET level. This means I have been authorized by the President to make original classification decisions.

## I.    ASSERTION OF THE STATE SECRETS PRIVILEGE

3. As described in the following paragraphs, and after personal consideration of the matter, I am asserting the state secrets privilege over the names and visual representations of all individuals who interrogated the plaintiffs. DoD classifies as "SECRET" the names and visual representations of DoD interrogators, debriefers, contract interrogators, support personnel, and

foreign government interrogators when their identities are associated with the interrogation, debriefing, or other intelligence questioning of a specific detainee, pursuant to section 1.4(c) of Executive Order 13526. This is reflected in DoD Directive 3115.09, "DoD Intelligence Interrogations, Detainee Debriefings, and Tactical Questioning." In my judgment, unauthorized disclosure of this information reasonably could be expected to cause serious damage to the national security of the United States.

## II.    HARM TO NATIONAL SECURITY THAT REASONABLY COULD RESULT FROM DISCLOSURE OF PRIVILGED INFORMATION

4. DoD human intelligence (HUMINT) collection activities, including intelligence interrogations, provide the President, the National Security Council, Congress, the Secretary of Defense, commanders at every echelon, and other U.S. Government departments and agencies the intelligence they need to protect the national security. The identities of intelligence interrogators, when associated with the interrogation of specific detainees, could expose the interrogators and their families to an unacceptable risk of harm through possible retribution by the detainees, groups to which the detainees belong, or other sympathizers. Failure to protect the interrogators' identities in connection with the interrogations of specific detainees would also have a chilling effect on DoD's ability to recruit and retain interrogators and to collect intelligence on these dangerous groups and individuals. DoD asks its intelligence interrogators to collect information from persons who belong to or are associated with some of the most dangerous enemies of the United States, including individuals who belong to or are associated with al Qaeda or its affiliates or with the Islamic State of Iraq and the Levant (ISIS), organizations whose stated purpose is to kill Americans, military or civilian, wherever they are found. Interrogators who conduct interrogation operations do so with the expectation that their

3

identities and involvement with interrogations of particular detainees will be protected from public disclosure.

5.   The risk of harm to U.S. national security interests from the disclosure of the interrogator information at issue is not merely theoretical.  Terrorist groups and their affiliates have targeted U.S. military personnel and contractors supporting U.S. military operations for attacks for many years, sometimes with devastating consequences.  For the past few years, ISIS sympathizers and hackers have periodically published "kill lists" online, which include personally identifiable information, such as the names and home addresses of DoD personnel.  As recently as December 2017, a "kill list" that included the names and contact information of DoD military and civilian personnel was posted to the Internet by ISIS supporters who encouraged "lone wolves" to use the information for targeting purposes.  In addition, there have been actual attacks against DoD interrogators by detainees.  Within the past year, one DoD interrogator was attacked by a detainee with scissors, and another DoD interrogator was stabbed in the face by a detainee with thumb tacks.  The public disclosure of the identities of these interrogators, along with their associations with the plaintiffs, all of whom were detainees at Abu Ghraib during the well-publicized period of abuse, will likely put them and their families at risk.

6.   Despite the passage of time since the events at Abu Ghraib that are the subject of this lawsuit, violent extremist organizations continue to look to capitalize on existing, lingering resentment towards the United States from these events.  Indeed, pursuant to the Protected National Security Documents Act of 2009, Section 565 of the Department of Homeland Security Appropriations Act of 2010 (Public law 111-83), three of my predecessors, former Secretaries of

Defense Gates, Panetta, and Carter, have all certified that the public release of photos of detainee mistreatment at Abu Ghraib would continue to endanger U.S. citizens, including members of the Armed Forces and employees of the U.S. government abroad. Secretary Carter's November 7, 2015, certification remains in effect today. *See* Section 565(d)(2) (certifications expire three years after issued). It is my assessment that these violent extremist groups would similarly exploit the disclosure of the identities of the Abu Ghraib interrogators who were confirmed to have interrogated the plaintiffs in order to inspire and recruit individuals in support of their causes and encourage attacks on identified individuals. I am confident that they will try to kill them. In my view, if any of these groups or their allies or sympathizers were successful in targeting an interrogator or his or her family and could claim successful retribution for Abu Ghraib, it would be a significant propaganda event. Indeed, it would strengthen our adversaries in their recruiting and ability to propagandize effectively, which in turn would be to the significant detriment of our national security. Thus, I am asserting the state secrets privilege to protect the safety of interrogators and their families both now and in their future. In addition, I make this assertion to prevent the damage to national security that actions by violent extremist groups based on a disclosure could cause to the important missions of DoD.

7. DoD treats the identities of interrogators differently than the identities of other service members because of the close, face-to-face relationships that interrogators have with those they interrogate. Intelligence operations are particularly sensitive because DoD interrogators seek to rely on the development of a perceived close bond between interrogators and detainees in order to foster the disclosure of valuable information. Most service members, by contrast, do not directly interact in the same fashion with the enemy. Protecting the identity of interrogators who

5

interacted with specific detainees thus not only serves in part to protect interrogators and their families from reprisals, but to protect DoD's ability to develop the kind of relationships needed to gain valuable intelligence.

8. Since the issuance of DoD Directive 3115.09, DoD has, to my knowledge, never declassified the identity of an intelligence interrogator in association with the interrogation of a particular detainee or otherwise officially acknowledged such an identity. Although DoD has officially acknowledged that a specific person was an interrogator at Abu Ghraib, it has not acknowledged that a specific person carried out intelligence interrogations of a particular detainee. In addition, public speculation about the identity of an interrogator for a particular detainee—whether through allegations in a lawsuit, media reporting, or conjecture based on a partial picture of the facts—does not constitute an official declassification or acknowledgment. The disclosure of national security information only through official acknowledgment or confirmation is vital to the protection of intelligence information and personnel. The absence of official confirmation leaves an important element of doubt about the veracity of speculation and reports, and thus provides an essential additional layer of protection and confidentiality. That protection would be lost, however, if the Government were forced to confirm or deny the accuracy of speculation or unofficial disclosures. DoD has reviewed information about each of the interrogators and detainees and has verified that there is no official confirmation in the public record establishing that any individual interrogator whose identity I am protecting through this state secrets privilege assertion conducted an intelligence interrogation of any of the plaintiffs in this action.

6

9.   In addition, DoD does not know if the plaintiffs can identify their interrogators by name or image.  It has been approximately 15 years since the interrogators questioned the plaintiffs, and the plaintiffs' ability to identify their interrogators visually or otherwise may have faded with the passage of time.  Thus, disclosure of this information at this time to the plaintiffs risks harm to the interrogators.  In addition, regardless of whether plaintiffs could identity the interrogators visually, others who may wish to target the interrogators or their families would gain valuable information for targeting these persons.  For example, this could occur if disclosure of the interrogators' identities is required by the Court and if the interrogators' names or identities can be linked to their images through information disclosed in this litigation, available in the public domain via social media, or otherwise.  In my judgment, if the plaintiffs, the groups to which they belong, or other sympathizers learn the identities of these interrogators through this litigation, I believe there is a significant risk that the interrogators and their families may become targets of reprisal.

10. I do not make this assertion of the state secrets privilege lightly, and I have also attempted to narrowly limit the scope of the privilege asserted, consistent with both my responsibility to protect DoD personnel and their supporting contractors and the Attorney General's guidance.  *See* Attorney General's September 23, 2009 Memorandum on Policies and Procedures Governing Invocation of State Secrets Privilege.  DoD has offered to permit the individuals who interrogated the plaintiffs to testify in a manner that protects their identities (e.g., by using pseudonyms), but I am advised that the defendant-contractor declined our offer.  I believe this proposal would provide an opportunity to question these individuals for purposes of this litigation while still protecting the national security interests of the United States.  Absent

7

this approach, and faced with a demand by the defendant-contractor that the Court compel disclosure of the interrogators who interacted with specific detainees, I have determined, after careful and personal consideration, that it is necessary to assert the state secrets privilege to protect the identity of the nine interrogators who potentially conducted intelligence interrogations of the plaintiffs in order to protect the national security interests of the United States.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 25ᵀᴴ day of April 2018

James N. Mattis
Secretary of Defense

8