# Exhibit 2



# Department of Defense
# DIRECTIVE

**NUMBER** 3115.09
October 11, 2012

USD(I)

SUBJECT:  DoD Intelligence Interrogations, Detainee Debriefings, and Tactical Questioning

References:   See Enclosure 1

1.  <u>PURPOSE</u>.  In accordance with the authority vested in the Secretary of Defense (SecDef) under titles 10 and 50 of the United States Code (U.S.C.) (References (a) and (b)) and Executive Order 12333 (Reference (c)), this Directive:

 a.  Reissues DoD Directive (DoDD) 3115.09 (Reference (d)) to reflect changes in the law and DoD policy concerning the electronic recording of strategic intelligence interrogations, the use of contract interrogators, and the reading of Miranda warnings to foreign nationals who are captured or detained outside the United States as enemy belligerents.

 b.  Incorporates and cancels Directive-Type Memorandum (DTM) 09-031 (Reference (e)).

2.  <u>APPLICABILITY</u>.  This Directive applies to:

 a.  OSD, the Military Departments, the Office of the Chairman of the Joint Chiefs of Staff (CJCS) and the Joint Staff, the Combatant Commands, the Office of the Inspector General of the Department of Defense (DoD IG), the Defense Agencies, the DoD Field Activities, and all other organizational entities within the DoD (hereinafter referred to collectively as the "DoD Components").

 b.  DoD military personnel, DoD civilian employees, and DoD contractor personnel to the extent incorporated in their contracts, who conduct or support intelligence interrogations, detainee debriefings, or tactical questioning.

 c.  Non-DoD personnel who agree, as a condition of permitting them access to conduct intelligence interrogations, debriefings, or other questioning of persons detained by the DoD, to comply with its terms.

 d.  Law enforcement, counterintelligence, and credibility assessment personnel who conduct interrogations or other forms of questioning of persons in DoD custody primarily for foreign intelligence collection purposes.  Law enforcement, counterintelligence, and credibility

assessment personnel who conduct interrogations or other forms of questioning of persons in DoD custody primarily for authorized purposes other than foreign intelligence collection shall comply with section 4 of this Directive and any other laws and policies that apply to law enforcement or counterintelligence interrogations, respectively.

3.  <u>DEFINITIONS</u>.  See Glossary.

4.  <u>POLICY</u>.  It is DoD policy that:

   a.  DoD military personnel, DoD civilian employees, and DoD contractor personnel shall conduct intelligence interrogations, detainee debriefings, and tactical questioning of individuals in U.S. or foreign custody in accordance with applicable law, the requirements in this Directive, and implementing plans, policies, orders, directives, and doctrine developed by the DoD Components and approved by the Under Secretary of Defense for Intelligence (USD(I)).

   b.  No person in DoD custody or physical control, detained in a DoD facility, or otherwise interrogated, debriefed, or questioned by DoD military personnel, civilian employees, or DoD contractor personnel shall be subject to cruel, inhuman, or degrading treatment or punishment as defined in title XIV of Public Law 109-163, also known as "The Detainee Treatment Act of 2005" (Reference (f)).  Acts of torture, as defined by section 2340(1) of title 18, U.S.C. (Reference (g)) are prohibited.  All intelligence interrogations, detainee debriefings, or tactical questioning by DoD military personnel, civilian employees, or DoD contractor personnel to gain intelligence from individuals in U.S. or foreign custody shall be conducted humanely in accordance with applicable law and policy.  Applicable law and policy may include relevant international law, including the law of war, U.S. law, including Reference (f), Executive orders, including Executive Order 13491 (Reference (h)), applicable DoD issuances, and U.S. Army Field Manual 2-22.3 (Reference (i)).

   c.  Only DoD interrogators who are trained and certified in accordance with the standards established pursuant to subparagraph 3.d.(2) of Enclosure 2 of this Directive may conduct DoD intelligence interrogations.  Only DoD debriefers who are trained and certified to conduct detainee debriefings in accordance with the standards established pursuant to subparagraph 3.d.(2) of Enclosure 2 of this Directive may conduct DoD detainee debriefings.

   d.  All reportable incidents allegedly committed by any DoD personnel, DoD contractor personnel, or non-DoD U.S. or foreign personnel shall be reported and investigated in accordance with the procedures outlined in Enclosure 3.

5.  <u>RESPONSIBILITIES</u>.  See Enclosure 2.

*DoDD 3115.09, October 11, 2012*

6. <u>INFORMATION COLLECTION REQUIREMENTS</u>

　　a.  Reportable incident reports referred to in paragraph 1.c. of Enclosure 3 of this issuance are exempt from licensing requirements in accordance with paragraphs C3.8.2.2.2. and C4.4.7. of DoD 8910.1-M (Reference (j)).

　　b.  Equipment failure reports referred to in paragraph 2.b. of Enclosure 7 of this issuance are exempt from licensing requirements in accordance with paragraphs C3.8.2.2.2. and C4.4.7. of Reference (j).

7. <u>RELEASABILITY</u>.  UNLIMITED.  This Directive is approved for public release and is available on the Internet from the DoD Issuances Website at http://www.dtic.mil/whs/directives.

8. <u>EFFECTIVE DATE</u>.  This Directive:

　　a.  Is effective October 11, 2012.

　　b.  Must be reissued, cancelled, or certified current within 5 years of its publication in accordance with DoD Instruction (DoDI) 5025.01 (Reference (k)).  If not it will expire effective October 11, 2022 and be removed from the DoD Issuances Website.

Ashton Carter
Deputy Secretary of Defense

Enclosures
　　1.  References
　　2.  Responsibilities
　　3.  Reportable Incident Requirements
　　4.  Requirements for Intelligence Interrogations, Detainee Debriefings, and Tactical Questioning
　　5.  Use of the Restricted Technique of Separation
　　6.  Non-DoD Interrogations, Debriefings, and Questioning of Detainees
　　7.  Requirements for Videotaping or Electronically Recording Strategic Intelligence Interrogations
Glossary

3

TABLE OF CONTENTS

ENCLOSURE 1:  REFERENCES ...............................................................................................6

ENCLOSURE 2:  RESPONSIBILITIES ...................................................................................8

   USD(I) .........................................................................................................................8
   DIRECTOR, DEFENSE INTELLIGENCE AGENCY (DIA) ....................................9
   DIRECTOR, DCHC ...................................................................................................9
   UNDER SECRETARY OF DEFENSE FOR POLICY (USD(P)) ..........................10
   USD(P&R) ...............................................................................................................10
   ASSISTANT SECRETARY OF DEFENSE FOR HEALTH AFFAIRS (ASD(HA)) ...........10
   GC, DoD ..................................................................................................................10
   HEADS OF THE DoD COMPONENTS ..................................................................11
   SECRETARIES OF THE MILITARY DEPARTMENTS ........................................11
   SECRETARY OF THE ARMY .................................................................................12
   CJCS ........................................................................................................................12
   COMMANDERS OF THE COMBATANT COMMANDS ......................................12

ENCLOSURE 3:  REPORTABLE INCIDENT REQUIREMENTS ...........................................14

   REPORTABLE INCIDENTS INVOLVING DoD PERSONNEL .........................14
   REPORTABLE INCIDENTS INVOLVING NON-DoD PERSONNEL .................15

ENCLOSURE 4:  REQUIREMENTS FOR INTELLIGENCE INTERROGATIONS,
   DETAINEE DEBRIEFINGS, AND TACTICAL QUESTIONING ......................................16

   TRAINING AND CERTIFICATION .......................................................................16
   APPROVED INTERROGATION TECHNIQUES ....................................................16
   INTERROGATION OF SEGREGATED DETAINEES .............................................16
   RESTRICTED INTERROGATION TECHNIQUE OF SEPARATION .....................16
   SURVIVAL, EVASION, RESISTANCE, AND ESCAPE (SERE) TECHNIQUES .............16
   DETAINEE DEBRIEFINGS .....................................................................................16
   LAW ENFORCEMENT AND COUNTERINTELLIGENCE QUESTIONING ....................17
   CREDIBILITY ASSESSMENT SUPPORT ..............................................................17
   ANALYTIC AND INTERPRETER SUPPORT .........................................................17
   NON-DoD INTERROGATIONS ..............................................................................18
   DoD CONTRACTOR PERSONNEL .........................................................................18
   RECORDINGS OF INTELLIGENCE INTERROGATIONS, DETAINEE
   DEBRIEFINGS, AND OTHER INTELLIGENCE QUESTIONING .............................19
      Recordings of Strategic Intelligence Interrogations ............................................19
      Recordings of Non-Strategic Intelligence Interrogations, Detainee Debriefings, and
      Other Intelligence Questioning ..............................................................................20
      Classification of Recordings ..................................................................................20

*DoDD 3115.09, October 11, 2012*

Disposition of Recordings...................................................................................21
Disclosure of Recordings ..................................................................................21
Ownership and Control of Recordings ..............................................................22

PROTECTION OF INTERROGATION-RELATED INFORMATION ................................22
BEHAVIORAL SCIENCE CONSULTANTS ................................................................23
CANINES ............................................................................................................23
MEDICAL ISSUES ...............................................................................................23
Reporting...........................................................................................................23
Medical Information ..........................................................................................23

DETENTION OPERATIONS ISSUES.........................................................................24
MIRANDA WARNINGS .........................................................................................24

ENCLOSURE 5:  USE OF THE RESTRICTED TECHNIQUE OF SEPARATION ..................25

ENCLOSURE 6:  NON-DoD INTERROGATIONS, DEBRIEFINGS, AND
QUESTIONING OF DETAINEES ...........................................................................26

ENCLOSURE 7:  REQUIREMENTS FOR VIDEOTAPING OR ELECTRONICALLY
RECORDING STRATEGIC INTELLIGENCE INTERROGATIONS................................27
Use of Standardized Procedures ......................................................................27
Equipment Failures ..........................................................................................27
Data Loss or Corruption....................................................................................28
Information to Be Included with Each Recording .............................................28
Waivers .............................................................................................................28
Suspensions.......................................................................................................28
Training..............................................................................................................29

GLOSSARY ..........................................................................................................30

PART I:  ABBREVIATIONS AND ACRONYMS ..............................................................30
PART II:  DEFINITIONS...........................................................................................30

*DoDD 3115.09, October 11, 2012*

ENCLOSURE 1

REFERENCES

(a)   Title 10, United States Code
(b)   Title 50, United States Code
(c)   Executive Order 12333, "United States Intelligence Activities," December 4, 1981, as
        amended
(d)   DoD Directive 3115.09, "DoD Intelligence Interrogations, Detainee Debriefings, and
        Tactical Questioning," October 9, 2008 (hereby cancelled)
(e)   Directive-Type Memorandum 09-031, "Videotaping or Otherwise Electronically Recording
        Strategic Intelligence Interrogations of Persons in the Custody of the Department of
        Defense," May 10, 2010 (hereby cancelled)
(f)   Title XIV of Public Law 109-163, "National Defense Authorization Act for Fiscal Year
        2006," January 6, 2006 (also known as "The Detainee Treatment Act of 2005")
(g)   Section 2340(1), chapter 212[1] and section 2441[2] of title 18, United States Code
(h)   Executive Order 13491, "Ensuring Lawful Interrogations," January 22, 2009
(i)   U.S. Army Field Manual 2-22.3, "Human Intelligence Collector Operations,"
        September 6, 2006
(j)   DoD 8910.1-M, "Department of Defense Procedures for Management of Information
        Requirements," June 30, 1998
(k)   DoD Instruction 5025.01, "DoD Directives Program," September 26, 2012
(l)   DoD Directive 5143.01, "Under Secretary of Defense for Intelligence (USD(I)),"
        November 23, 2005
(m)   DoD Instruction 1100.22, "Policy and Procedures for Determining Workforce Mix,"
        April 12, 2010
(n)   Chapter 12 and section 1228 of title 36, Code of Federal Regulations
(o)   Public Law 111-84, "The National Defense Authorization Act for Fiscal Year 2010,"
        October 28, 2009
(p)   DoD Directive S-5200.37, "Management and Execution of Defense Human Intelligence
        (HUMINT) (U)," February 9, 2009
(q)   DoD Instruction O-5100.93, "Defense Counterintelligence (CI) and Human Intelligence
        (HUMINT) Center (DCHC)," August 13, 2010
(r)   DoD Instruction 2310.08E, "Medical Program Support for Detainee Operations,"
        June 6, 2006
(s)   DoD Directive 1100.4, "Guidance for Manpower Management," February 12, 2005
(t)   DoD Directive 5015.2, "DoD Records Management Program," March 6, 2000
(u)   NARA Job Number N1-330-09-8, "Intelligence Interrogation and Detainee Debriefing
        Records," March 21, 2011
(v)   Secretary of Defense Memorandum, "UCMJ Jurisdiction Over DoD Civilian Employees,
        DoD Contractor Personnel, and Other Persons Serving With or Accompanying the Armed
        Forces Overseas During Declared War and in Contingency Operations," March 10, 2008
(w)   DoD Directive 2311.01E, "DoD Law of War Program," May 9, 2006

---

[1] Chapter 212 is also known as "The Military Extraterritorial Jurisdiction Act."
[2] Section 2441 is also known as "The War Crimes Act."

(x)     Directive-Type Memorandum 08-052, "DoD Guidance for Reporting Questionable Intelligence Activities and Significant or Highly Sensitive Matters," June 17, 2009

(y)     DoD 5240.1-R, "Procedures Governing the Activities of DoD Intelligence Components That Affect United States Persons," December 7, 1982

(z)     Geneva Convention Relative to the Treatment of Prisoners of War, August 12, 1949

(aa)   DoD Directive 5210.48, "Polygraph and Credibility Assessment Program," January 25, 2007

(ab)   Federal Acquisition Regulation (FAR), current edition

(ac)   Defense Federal Acquisition Regulation Supplement (DFARS), current edition

(ad)   Section 552a of title 5, United States Code[3]

(ae)   DoD 5400.11-R, "Department of Defense Privacy Program," May 14, 2007

(af)   Executive Order 13526, "Classified National Security Information," December 29, 2009

(ag)   DoD Manual 5200.01, "DoD Information Security Program," Volumes 1-3, February 24, 2012

(ah)   Chapters 29 and 33 of title 44, United States Code

(ai)   National Disclosure Policy No. 1, "National Policy and Procedures for the Disclosure of Classified Military Information to Foreign Governments and International Organizations," October 2, 2000[4]

(aj)   DoD Directive 5230.11, "Disclosure of Classified Military Information to Foreign Governments and International Organizations," June 16, 1992

(ak)   DoD Directive 5405.2, "Release of Official Information in Litigation and Testimony by DoD Personnel as Witnesses," July 23, 1985

(al)   DoD Instruction 5400.04, "Provision of Information to Congress," March 17, 2009

(am)  DoD 5400.7-R, "DoD Freedom of Information Act Program," September 4, 1998

(an)   Miranda v. Arizona, 384 U.S. 436 (1966)

(ao)   Department of the Army, DCS, G-2 Memorandum, "Procedures for Videotaping or Otherwise Recording Strategic Intelligence Interrogations of Persons in the Custody of the Department of Defense," November 16, 2010[5]

(ap)   DoD Directive 2310.01E, "The Department of Defense Detainee Program," September 5, 2006

(aq)   Protocol Additional to the Geneva Conventions of August 12, 1949, and relating to the Protection of Victims of International Armed Conflicts (Protocol I), June 8, 1977

---

[3] Section 552a is also known as "The Privacy Act of 1974, as amended."

[4] Controlled document; available at the Component's Foreign Disclosure Office to authorized persons.

[5] Document available at http://www.dami.army.pentagon.mil/site/HUMINT/referenceslist.aspx#aregs.

ENCLOSURE 2

RESPONSIBILITIES

1.  <u>USD(I)</u>.  The USD(I), pursuant to DoDD 5143.01 (Reference (l)), shall:

a.  Exercise primary staff responsibility for DoD intelligence interrogations, detainee debriefings, and tactical questioning, and serve as the principal advisor to the Secretary and Deputy Secretary of Defense (DepSecDef) regarding DoD intelligence interrogation policy.

b.  Serve as the primary DoD liaison between the DoD and the Intelligence Community (IC) regarding matters related to intelligence interrogations, detainee debriefings, and tactical questioning.

c.  Develop, coordinate, and oversee the implementation of DoD policy regarding intelligence interrogations, detainee debriefings, and tactical questioning.

d.  Review, approve, and ensure coordination of all DoD Component policies, directives, and doctrine related to intelligence interrogations.

e.  Refer reportable incidents not involving DoD personnel to the appropriate Federal agencies, foreign governments, or other authorities.  Coordinate with appropriate OSD Components and other Federal agencies, as appropriate, prior to referral.

f.  Review funding proposed by the Military Departments according to paragraph 9.a. of this enclosure in coordination with the Military Departments; the Under Secretary of Defense for Personnel and Readiness (USD(P&R)); the Under Secretary of Defense (Comptroller)/Chief Financial Officer, DoD; and the General Counsel of the DoD (GC, DoD).

g.  Develop policies and procedures, in coordination with the Under Secretary of Defense for Acquisition, Technology, and Logistics, the GC, DoD, and the Heads of the appropriate DoD Components, to ensure that all contracts in support of intelligence interrogations, detainee debriefings, or tactical questioning include the obligation to comply with this Directive; that they exclude performance of functions that are inherently governmental or exempt from private sector performance consistent with guidance in DoDI 1100.22 (Reference (m)); and that all DoD contractor personnel are properly trained and certified to perform these services under the contract.

h.  Develop a DoD disposition schedule for all DoD interrogation records; submit the disposition schedule through the Director, Administration and Management, to the National Archives and Records Administration (NARA) for review and approval in accordance with chapter 12 of title 36, Code of Federal Regulations (Reference (n)).

i.  If the SecDef waives the prohibition against using contractor personnel to interrogate detainees, notify Congress of the waiver within 5 days as required by section 1038 of Public Law 111-84 (Reference (o)).

2.  <u>DIRECTOR, DEFENSE INTELLIGENCE AGENCY (DIA)</u>.  The Director, DIA, under the authority, direction, and control of the USD(I), and in addition to the responsibilities in section 8 of this enclosure shall, as the Defense Human Intelligence (HUMINT) Manager in accordance with DoDD S-5200.37 (Reference (p)), provide oversight and supervision of the Director, Defense Counterintelligence and Human Intelligence Center (DCHC) in carrying out his or her responsibilities under this Directive.

3.  <u>DIRECTOR, DCHC</u>.  The Director, DCHC, under the authority, direction, and control of the Director, DIA, in accordance with DoDI O-5100.93 (Reference (q)) shall:

   a.  Plan, execute, and oversee DIA intelligence interrogations, detainee debriefings, and tactical questioning.

   b.  Issue appropriate intelligence interrogation implementing guidance and forward it to the USD(I) for review and approval in accordance with paragraph 1.d. of this enclosure.

   c.  Institute programs within the Defense HUMINT Enterprise to:

      (1)  Comply with this Directive, References (f) and (i), and DoDI 2310.08E (Reference (r)).

      (2)  Ensure that all DoD interrogation policies are periodically reviewed, updated, and submitted to the USD(I) for approval.

   d.  In coordination with the Defense HUMINT Manager and in accordance with Reference (o):

      (1)  Include DoD intelligence interrogations and detainee debriefings in the periodic assessment of DoD HUMINT enterprise activities, including an assessment of the effectiveness of intelligence interrogations.

      (2)  Establish training and certification standards for intelligence interrogations and detainee debriefings, in coordination with applicable DoD Components, so that all personnel who conduct DoD intelligence interrogations or detainee debriefings are properly trained and certified, including appropriate training in applicable law and policies, in accordance with paragraph 4.c. above the signature of this Directive.

      (3)  Ensure that each interrogator or debriefer who conducts an intelligence interrogation or debriefing is assigned a unique field reporting number and that the field reporting number

system captures each interrogator's or debriefer's true name, unit, Military Service or agency, and contact information.

(4)  Establish and manage a unique identifying number system and database for interpreters and other personnel who support strategic intelligence interrogations.  The database will be centrally maintained and searchable for data identifying these personnel and their employing U.S. Government agency or contractor.

4.  UNDER SECRETARY OF DEFENSE FOR POLICY (USD(P)).  The USD(P) shall coordinate with the USD(I) on all detainee-related policies, publications, and actions that affect intelligence interrogations, detainee debriefings, and tactical questioning.  The USD(P) retains primary staff responsibility for DoD policy oversight of the DoD detainee program.

5.  USD(P&R).  The USD(P&R) shall:

a.  Coordinate with the USD(I) and the Secretaries of the Military Departments to ensure that interrogators, interpreters, and other personnel have appropriate language skills and training and are available to augment and support interrogation operations.

b.  Provide overall manpower management guidance in accordance with DoDD 1100.4 (Reference (s)), including the performance of inherently governmental functions.

6.  ASSISTANT SECRETARY OF DEFENSE FOR HEALTH AFFAIRS (ASD(HA)).  The ASD(HA), under the authority, direction, and control of the USD(P&R), shall develop policies, procedures, and standards for medical program activities affecting intelligence interrogation activities in accordance with this Directive and in coordination with the USD(I).

7.  GC, DoD.  The GC, DoD, shall:

a.  Provide legal advice to the SecDef and DepSecDef, the OSD Components, and, as appropriate, the other DoD Components regarding intelligence interrogations, detainee debriefings, and tactical questioning.

b.  Establish DoD policy on general legal issues concerning DoD intelligence interrogations, detainee debriefings, and tactical questioning, determine the DoD position on specific legal issues, and resolve disagreements within the DoD on such matters.

c.  Review all DoD policies, directives, and doctrine related to intelligence interrogations, detainee debriefings, and tactical questioning to ensure compliance with applicable domestic and international law.

*DoDD 3115.09, October 11, 2012*

d.  Coordinate DoD legal guidance with the General Counsels of the Military Departments and the Defense Agencies, the Judge Advocates General, the Staff Judge Advocate to the Commandant of the Marine Corps, and the Legal Advisor to the CJCS and resolve any disagreements on questions of law.

8.  <u>HEADS OF THE DoD COMPONENTS</u>.  The Heads of the DoD Components shall:

a.  Ensure compliance with this Directive.

b.  Develop and submit policies and doctrine implementing this Directive to USD(I) for review and approval and to the Director, DCHC, in accordance with paragraphs 1.d. and 3.c.(2) of this enclosure.

c.  Serve as the final release authority on requests to view or receive copies of recordings of strategic intelligence interrogations originated by their respective component, subject to the restrictions set forth in section 12 of Enclosure 4.

d.  Create, maintain, preserve, and dispose of records (video, audio, and written) related to the interrogation or debriefing of detainees for foreign intelligence collection purposes in accordance with DoDD 5015.2 (Reference (t)), the disposition schedule (Reference (u)) developed by the USD(I) pursuant to paragraph 1.h. of this enclosure, and any other pertinent NARA-approved disposition schedules.

9.  <u>SECRETARIES OF THE MILITARY DEPARTMENTS</u>.  In addition to the responsibilities in section 8 of this enclosure, to the extent that the Military Departments conduct or support intelligence interrogations, detainee debriefings, or tactical questioning, the Secretaries of the Military Departments shall:

a.  Plan, program, and budget for adequate resources so that sufficient numbers of trained interrogators, interpreters, and other personnel are available to conduct intelligence interrogations and detainee debriefings.

b.  Ensure that intelligence interrogators and detainee debriefers, including DoD contractor personnel, are properly trained and certified in accordance with the standards established by the Director, DCHC.

c.  Provide training on the conduct of tactical questioning for appropriate personnel consistent with section 1 of Enclosure 4.

d.  Coordinate with the Commanders of the Combatant Commands or other appropriate authorities to ensure prompt reporting and investigation of reportable incidents committed by members of their respective Military Departments, or persons accompanying them, in accordance with the requirements of Enclosure 3.  Provide the results of such investigations to appropriate authorities for possible disciplinary or administrative action as appropriate.

*DoDD 3115.09, October 11, 2012*

10. <u>SECRETARY OF THE ARMY</u>.  The Secretary of the Army, in addition to the responsibilities in sections 8 and 9 of this enclosure, shall develop standard operating procedures to ensure that the requirement to make an audio-video recording of each strategic intelligence interrogation of any person who is in the custody or under the effective control of the DoD or under detention in a DoD facility, conducted at a theater-level detention facility or at any other location to the extent required by law or DoD policy, is uniformly implemented throughout the DoD.  This includes:

   a.  Selecting, purchasing, installing, and maintaining audio-video recording equipment and archiving hardware and software.

   b.  Developing and implementing archiving conventions and procedures.

   c.  Establishing training standards and managing a training program for equipment operators, archivists, and records managers.

   d.  Planning, programming, and budgeting as necessary to carry out the responsibilities in paragraphs 10.a. through 10.c. of this enclosure.

11. <u>CJCS</u>.  The CJCS, in addition to the responsibilities in section 8 of this enclosure, shall provide appropriate oversight of the Commanders of the Combatant Commands to ensure their policies and procedures for conducting intelligence interrogations, detainee debriefings, and tactical questioning are consistent with this Directive.

12. <u>COMMANDERS OF THE COMBATANT COMMANDS</u>.  The Commanders of the Combatant Commands, in addition to the responsibilities in section 8 of this enclosure and, as appropriate, through the CJCS, shall:

   a.  Plan, execute, and oversee Combatant Command intelligence interrogations, detainee debriefings, and tactical questioning in accordance with this Directive.

   b.  Ensure that all intelligence interrogation and detainee debriefing plans, policies, orders, directives, training, doctrine, and tactics, techniques, and procedures issued by subordinate commands and components are consistent with this Directive and USD(I)-approved policies, and that they are periodically reviewed and evaluated.

   c.  Ensure personnel, including DoD contractor personnel, who are involved in intelligence interrogations are trained and certified consistent with the standards established pursuant to subparagraph 3.d.(2) of this enclosure.

   d.  Ensure personnel, including DoD contractor personnel, who are involved in detainee debriefings and tactical questioning are appropriately trained and certified consistent with the

standards established pursuant to subparagraph 3.d.(2) of this enclosure and section 1 of Enclosure 4.

e.  Ensure non-DoD intelligence interrogations are conducted in accordance with paragraph 4.d. above the signature of this Directive and with Enclosure 6.

f.  Exercise authority pursuant to chapter 7 of Reference (a) (also known and hereinafter referred to as "The Uniform Code of Military Justice (UCMJ)") over contract interrogators, contract debriefers, and other contractor personnel supporting interrogations in accordance with SecDef Memorandum (Reference (v)).

g.  Ensure that contracts for interrogators and interrogation support personnel being executed within their area of responsibility comply with the Combatant Command's interrogation guidance, Appendix K of Reference (i), and this Directive.

h.  In coordination with the Secretaries of the Military Departments:

(1)  Establish procedures and promptly report reportable incidents to appropriate authorities in accordance with Enclosure 3.

(2)  Ensure alleged violations by DoD military personnel, DoD civilian employees, or DoD contractor personnel are properly and thoroughly investigated.

(3)  Provide the results of such investigations to appropriate authorities for possible disciplinary or administrative action.

i.  Report reportable incidents allegedly committed by non-DoD U.S. personnel or by coalition, allied, host-nation, or any other persons as outlined in section 2 of Enclosure 3 and refer them to proper authorities (e.g., other U.S. Government, allied, coalition, or host-nation authorities) for appropriate action.  Coordinate with USD(I) and GC, DoD regarding whether a DoD investigation is required for reportable incidents involving non-DoD personnel.

j.  Submit requests for waivers of the prohibition against using contractor personnel to interrogate detainees to the USD(I) for approval by the SecDef.

ENCLOSURE 3

REPORTABLE INCIDENT REQUIREMENTS

1.  <u>REPORTABLE INCIDENTS INVOLVING DoD PERSONNEL</u>

    a.  All military personnel, civilian employees, and DoD contractor personnel (to the extent incorporated in their contracts) who obtain information about a reportable incident allegedly committed by DoD personnel shall immediately report the incident through their chain of command or supervision.  Interrogation support contracts will require contractor personnel to report reportable incidents to the commander of the unit they are accompanying, the commander of the installation to which they are assigned, or to the Combatant Commander.  Reports also may be made through other channels, such as an appropriate law enforcement organization, a judge advocate, a chaplain, or an inspector general, who will then forward a report through the appropriate chain of command or supervision.  Reports made to officials other than those specified in this paragraph will be accepted and immediately forwarded through the recipient's chain of command or supervision, with an information copy to the appropriate Combatant Commander.

    b.  Any commander or supervisor who obtains credible information about a reportable incident shall immediately report the incident through command or supervisory channels to the responsible Combatant Commander, or to other appropriate authority for allegations involving personnel who are not assigned to a Combatant Commander.  In the latter instance, an information report shall also be sent to the Combatant Commander with responsibility for the geographic area where the alleged incident occurred.

    c.  The Combatant Commanders and the Secretaries of the Military Departments shall report, by the most expeditious means available, all reportable incidents to the CJCS, the USD(I), the GC, DoD, the Director, DIA, the DoD IG, and the Assistant to the Secretary of Defense for Intelligence Oversight (ATSD(IO)).  Reports shall specify any actions already taken and identify the investigating authority, or explain why an inquiry or investigation is not possible, practicable, or necessary.

    d.  The Combatant Commander or other appropriate authority shall ensure an appropriate inquiry or investigation is conducted.  Final reports will be forwarded consistent with the procedures established in paragraph 1.c. of this enclosure.

    e.  When appropriate, submit a report in accordance with DoDD 2311.01E (Reference (w)) concerning any reportable incidents.  When intelligence component personnel are involved in any questionable activity, significant or highly sensitive matter, or certain Federal crimes as described in DTM 08-052 (Reference (x)), submit a report to the ATSD(IO) and appropriate intelligence component General Counsel or DoD IG under Procedure 15 of DoD 5240.1-R (Reference (y)) and Reference (x).  Multiple reports may be required for a single credible allegation.  The commanders or supervisors shall coordinate with legal counsel to determine whether a single inquiry or investigation is appropriate.

2.  <u>REPORTABLE INCIDENTS INVOLVING NON-DoD PERSONNEL</u>.  Reportable incidents allegedly committed by non-DoD U.S. or foreign personnel shall be reported as outlined in section 1 of this enclosure and referred to proper authorities (e.g., other U.S. Government, allied, coalition, or host-nation authorities) for appropriate action.  Any additional DoD investigation of such incidents will be conducted only at the direction of the appropriate Combatant Commander, the DoD IG, the USD(I), or higher authority.

ENCLOSURE 4

REQUIREMENTS FOR INTELLIGENCE INTERROGATIONS,
DETAINEE DEBRIEFINGS, AND TACTICAL QUESTIONING

1.  TRAINING AND CERTIFICATION.  DoD intelligence interrogations and detainee
debriefings shall be conducted only by DoD personnel properly trained and certified in
accordance with the standards established pursuant to subparagraph 3.d.(2) of Enclosure 2 of this
Directive.  DoD personnel who conduct, support, or participate in tactical questioning shall be
trained, at a minimum, in the law of war and humane treatment standards.

2.  APPROVED INTERROGATION TECHNIQUES.  No person in the custody or effective
control of the DoD, detained in a DoD facility, or otherwise interrogated by DoD military
personnel, civilian employees, or DoD contractor personnel will be subject to any interrogation
treatment or technique that is not authorized by and listed in Reference (i).

3.  INTERROGATION OF SEGREGATED DETAINEES.  Detainees may be segregated from
other detainees for purposes unrelated to interrogation, including administrative, health, safety,
or security reasons or law enforcement questioning.  Although segregation may not be requested
or conducted for the purpose of facilitating interrogation, interrogators may interrogate detainees
who have been properly segregated.

4.  RESTRICTED INTERROGATION TECHNIQUE OF SEPARATION.  Interrogators may
employ separation as a restricted interrogation technique in accordance with Appendix M of
Reference (i) and as specified in Enclosure 5 of this Directive.  Separation is not an authorized
interrogation technique for use on detainees covered by Article 4 of the Geneva Convention
Relative to the Treatment of Prisoners of War (Reference (z)).

5.  SURVIVAL, EVASION, RESISTANCE, AND ESCAPE (SERE) TECHNIQUES.  Use of
SERE techniques against a person in the custody or effective control of the DoD or detained in a
DoD facility is prohibited.

6.  DETAINEE DEBRIEFINGS.  In most cases, detainees in DoD custody are interrogated.  A
detainee may be debriefed only if both of the following conditions are met:  the senior
intelligence officer in charge at the detention facility where the detainee is being held, or his or
her designee, determines, in writing, that the detainee is "cooperative" as that term is defined in
this Directive, and the questioning is limited to direct questions.

    a.  A detainee is cooperative if the detainee has established a pattern of answering all
questions truthfully and unconditionally and, in fact, answers all questions truthfully and

unconditionally.  A detainee is not cooperative if the detainee refuses to answer, avoids answering, or falsely answers questions, or if the detainee is intentionally deceptive.  A detainee who fluctuates between cooperation and resistance is not cooperative.  The questioning of a detainee will not be segmented into debriefings and interrogations based on the intermittent cooperation of the detainee.  An uncooperative detainee must be interrogated, not debriefed.

b.  The use of any interrogation approach other than the direct approach (i.e., asking direct questions) constitutes an interrogation and not a debriefing regardless of whether the detainee is cooperative.  Direct questions normally begin with an interrogative such as who, what, when, where, why, or how.  They are brief, precise, and simply worded to avoid confusion.

c.  Whether the questioning of a detainee will be treated as a debriefing or an interrogation will be decided prior to the beginning of the questioning session.  A questioning session that begins as an interrogation will remain an interrogation for the duration of the session.  A questioning session that begins as a debriefing will remain a debriefing for the duration of the session unless the detainee becomes uncooperative, at which point the debriefing will be terminated immediately.  Future questioning of the detainee will be treated as an interrogation until such time as the detainee clearly and unambiguously expresses a desire to answer all questions truthfully and unconditionally.  If there are any doubts about the detainee's sincere desire to cooperate fully and unconditionally, the questioning will be treated as an interrogation.

d.  Either a trained debriefer or a trained interrogator may debrief a detainee.  A credentialed law enforcement officer may not debrief or interrogate a detainee for foreign intelligence collection purposes unless the law enforcement officer complies with those portions of this Directive that apply to debriefers and intelligence interrogators, as appropriate.

7.  <u>U.S. LAW ENFORCEMENT AND COUNTERINTELLIGENCE QUESTIONING</u>.  U.S. Government law enforcement and counterintelligence personnel conducting interrogations, debriefings, interviews, or other questioning primarily for law enforcement or counterintelligence purposes shall comply with section 4 above the signature of this Directive and any other laws and policies that apply to law enforcement or counterintelligence questioning, respectively.

8.  <u>CREDIBILITY ASSESSMENT SUPPORT</u>.  All credibility assessment examinations, such as polygraphs, used to support intelligence interrogations (e.g., to validate information acquired during an interrogation) shall be conducted in accordance with the provisions of DoDD 5210.48 (Reference (aa)).  Credibility assessment examiners are subject to section 4 above the signature of this Directive.

9.  <u>ANALYTIC AND INTERPRETER SUPPORT</u>.  Analysts, interpreters, and other personnel who directly support interrogations, detainee debriefings, or tactical questioning shall comply with section 4 above the signature of this Directive and shall be under the direct control of the DoD interrogator, debriefer, or tactical questioner.

10. NON-DoD INTERROGATIONS. As a condition of having access to conduct intelligence interrogations, detainee debriefings, or tactical questioning of persons in the custody or effective control of the DoD, individuals representing other U.S. Government agencies, foreign governments, or any other non-DoD entity must comply with applicable DoD policies and procedures when conducting intelligence interrogations, detainee debriefings, or other questioning of persons detained by the DoD. These non-DoD personnel shall, at a minimum, be briefed on the applicable DoD standards and sign a statement that they understand and will comply with those standards. Individuals overseeing the conduct of non-DoD interrogations shall follow the requirements specified in Enclosure 6.

11. DoD CONTRACTOR PERSONNEL

a. Pursuant to section 1038 of Reference (o), no enemy prisoner of war, civilian internee, retained personnel, other detainee, or any other individual who is in the custody or under the effective control of the DoD or otherwise under detention in a DoD facility in connection with hostilities may be interrogated by contractor personnel unless the SecDef determines that the use of contract interrogators is vital to U.S. national security interests and waives the prohibition against their use for a period not to exceed 60 days. The SecDef may renew such a waiver for an additional period not to exceed 30 days if he determines that such a renewal is vital to U.S. national security interests.

b. If the SecDef determines that the use of contract interrogators is vital to U.S. national security and waives the prohibition on their use for a period of up to 60 days or renews the waiver for an additional 30 days, contract interrogators may be used to conduct intelligence interrogations only if the following conditions are met:

(1) The contract specifies that such support will be provided in accordance with this Directive, applicable law, and policy.

(2) All contracts for the conduct or support of intelligence interrogations comply with this Directive, Appendix K of Reference (i), the Federal Acquisition Regulation (Reference (ab)), and the Defense Federal Acquisition Regulation Supplement (Reference (ac)).

(3) All DoD contract interrogators shall be trained and certified by the DoD as interrogators in accordance with this Directive. Contract interrogators will also receive in-theater training on the supported unit's mission and interrogation policies before performing intelligence interrogations or detainee debriefings.

(4) DoD contractor personnel who are trained and certified as interrogators in accordance with this Directive, and who are tasked to perform intelligence interrogations pursuant to their contract, must be closely monitored in real time throughout the interrogation process by sufficient numbers of properly trained DoD military or civilian personnel to ensure

that they do not deviate from their approved interrogation plans or otherwise perform inherently governmental functions, in accordance with Reference (m).

(5)  Contract interrogators will submit an interrogation plan and receive approval from an appropriate DoD official (e.g., the commander, officer-in-charge, or DoD civilian employee responsible for supervising interrogations) before implementation.

(6)  DoD contractor personnel will not be placed in charge of interrogation operations or interrogation facilities.  No DoD contractor personnel will order, oversee, or be charged with monitoring any intelligence interrogation, detainee debriefing, or tactical questioning.

(7)  Contract interrogators will operate only in areas where adequate security is available and is expected to continue, pursuant to Reference (m).

(8)  Contract interrogators serving with or accompanying Military Services in the field in times of declared war or a contingency operation are subject to the UCMJ pursuant to Reference (v).  Contract interrogators employed by or accompanying the Military Services overseas who commit felony offenses are also subject to U.S. District Court jurisdiction, pursuant to chapter 212 of Reference (g)) (also known as "The Military Extraterritorial Jurisdiction Act"), and section 2441 of Reference (g) (also known as "The War Crimes Act").

   c.  Contractor personnel with proper training and security clearances may support interrogations as linguists, interpreters, analysts, report writers, information technology technicians, and other employees filling ancillary positions, including as trainers of and advisors to interrogators, if:

(1)  Their contract specifies that they will comply with the same rules, procedures, policies, and laws pertaining to detainee operations and interrogations as apply to Government personnel in such positions.

(2)  Appropriately qualified and trained military or civilian personnel of the DoD are available to oversee the contractors' performance and to ensure that contractor personnel do not perform interrogations, unless the SecDef waives this prohibition, and that contractor personnel do not perform any inherently governmental functions as defined in Reference (m).

   d.  Contractor personnel with proper training and security clearances may serve as detainee debriefers and tactical questioners, subject to the restrictions listed in subparagraphs 11.c.(1) and 11.c.(2) of this enclosure.


12.  <u>RECORDINGS OF INTELLIGENCE INTERROGATIONS, DETAINEE DEBRIEFINGS, AND OTHER INTELLIGENCE QUESTIONING</u>

   a.  <u>Recording of Strategic Intelligence Interrogations</u>.  As required by subsection 1080(a) of Reference (o) and subject to the waiver and suspension provisions in Enclosure 7 of this Directive, an audio-video recording shall be made of each strategic intelligence interrogation of

any person who is in the custody or under the effective control of the DoD or under detention in a DoD facility, conducted at a theater-level detention facility. This requirement applies only to strategic intelligence interrogations. Reference (n) specifically excludes from this requirement service members engaged in direct combat operations and DoD personnel conducting tactical questioning.

(1) Subject to the waiver and suspension provisions in Enclosure 7, an audio-video recording shall be made of each strategic intelligence interrogation of any person who is interned in a theater-level detention facility but who is temporarily transferred to another location, such as to a medical treatment facility.

(2) As a condition of having access to conduct strategic intelligence interrogations, individuals representing other U.S. Government agencies, interagency mobile interrogation teams, and foreign governments must comply with this Directive.

(3) The requirement to record strategic intelligence interrogations detailed in subparagraphs 12.a.(1) and 12.a.(2) of this enclosure shall be implemented in accordance with this Directive, including Enclosure 7; the standard operating procedures developed by the Department of the Army pursuant to section 10 of Enclosure 2 of this Directive; References (o) and (i); and the implementing plans, policies, orders, directives, and doctrine developed by the DoD Components.

(4) If a questioning session is a strategic intelligence interrogation, the entire session must be recorded; any gaps in the recording will be documented by the interrogation unit commander.

(5) Information that identifies a U.S. person shall be collected, retained, and disseminated in accordance with Reference (y) and section 552a of title 5, U.S.C. (also known as "The Privacy Act of 1974, as amended" (Reference (ad))), as implemented in the DoD by DoD 5400.11-R (Reference (ae)).

b. Recording of Non-Strategic Intelligence Interrogations, Detainee Debriefings, and Other Intelligence Questioning. Video and audio recordings may be used to document non-strategic intelligence interrogations, detainee debriefings, and other intelligence questioning, but are not required. When the capability is available, non-strategic intelligence interrogations, detainee debriefings, and other intelligence questioning may be recorded for the following purposes: training and assessment of interrogators, debriefers, or other intelligence collectors; reviewing intelligence reports for accuracy and completeness; source validation; compliance with applicable law, policy, and procedure; and any other authorized purposes. The decision to record will be made by a commander or supervisor in the interrogator's, debriefer's, or intelligence collector's chain of command or supervision. If the interrogator, debriefer, or intelligence collector is from a non-DoD organization, then the decision to record will be made by the commander of the DoD facility.

c. Classification of Recordings. All recordings of intelligence interrogations, detainee debriefings, and other intelligence questioning shall be classified, at a minimum, as

*DoDD 3115.09, October 11, 2012*

"SECRET//RELEASABLE TO" or "SECRET//NOFORN," as appropriate, to protect the association of specific DoD interrogators, partner-nation interrogators, DoD debriefers, interpreters, and interrogation support personnel with the interrogation, debriefing, or other intelligence questioning of a specific detainee; to protect the identity of detainees who have cooperated with the IC, pursuant to section 1.4.(c) of Executive Order 13526 (Reference (af)); and to safeguard intelligence collection methodologies. These classified recordings shall be handled and protected in accordance with Reference (af), DoD Manual 5200.01, Volumes 1-3 (Reference (ag)), and applicable security classification guides. Access to these classified recordings shall be on a strict need-to-know basis. Such media shall display the following declassification instructions: "DERIVED FROM: DoDD 3115.09; DECLASSIFY ON: 50X1-HUM." If the contents include information classified at a higher classification level by another original classification authority, then the overall classification shall reflect the higher classification. In such cases, videos or other electronic recordings shall display the following declassification instructions: "DERIVED FROM: Multiple Sources; DECLASSIFY ON: 50X1-HUM." A list of the source documents from which the classification is derived shall accompany each record file copy of the recordings. Only the USD(I) or his or her designee is authorized to declassify recordings of intelligence interrogations, detainee debriefings, or other intelligence questioning.

d. Disposition of Recordings. Once the purposes for which a recording was made have been accomplished, the recording shall be disposed of only in accordance with the records disposition schedule (Reference (u)) developed by the USD(I) and approved by the Archivist of the United States, pursuant to chapters 29 and 33 of title 44, U.S.C. (Reference (ah)), as implemented by section 1228 of Reference (n). If a recording contains any credible evidence of a suspected or alleged violation of applicable law or policy, it shall be retained as evidence to support any investigation and disciplinary or corrective action. Retained recordings shall be accounted for, controlled, and marked as required by References (af) and (ag) and paragraph 12.c of this enclosure.

e. Disclosure of Recordings. Video or audio recordings of intelligence interrogations, detainee debriefings, or other intelligence questioning may only be disclosed or released to representatives of a foreign government, either visually, audibly, or in hardcopy, in accordance with National Disclosure Policy No. 1 (Reference (ai)) and DoDD 5230.11 (Reference (aj)). A disclosure decision may not be further delegated below the level of a Combatant Command or Defense Agency headquarters' Foreign Disclosure Office. Before disclosure to a foreign government, proper consideration shall be given to the possible risk to the detainee and his or her family of disclosing that the detainee has cooperated with U.S. intelligence officials. If a recording is released to another organization or to a foreign government, the original shall be retained.

(1) Before a video recording is disclosed or released to any person or entity outside the DoD or the IC, the identities of any U.S. and foreign interrogators, debriefers, interpreters, and other interrogation support personnel shall be concealed. Only the USD(I) may authorize an exception to this policy.

(2)  If a recording is released to a non-DoD or non-IC entity or to a foreign government, the original will be retained.  The contents of a released recording shall be clearly marked as "ORCON" and shall not be further disseminated by the recipient.

f.  Ownership and Control of Recordings.  All video, audio, or other electronic recordings of intelligence interrogations, detainee debriefings, or other intelligence questioning are the property of the DoD Component that originated them until they are transferred to the control of the Archivist of the United States.

13.  PROTECTION OF INTERROGATION-RELATED INFORMATION

a.  The names and visual representation of DoD interrogators, debriefers, contract interrogators, support personnel, and foreign government interrogators shall be classified, at a minimum, "SECRET//RELEASABLE TO" or "SECRET//NOFORN," as appropriate, when their identities are associated with the interrogation, debriefing, or other intelligence questioning of a specific detainee, pursuant to section 1.4.(c) of Reference (af).  This classified information shall be handled and protected in accordance with References (af) and (ag) and paragraph 12.c. of this enclosure.  Only the USD(I) or his or her designee is authorized to declassify this information or to grant exceptions to this requirement.

b.  All transcribed interrogator notes, memorandums for the record, summary interrogation reports, and all other related records of intelligence interrogations, detainee debriefings, or intelligence questioning shall be marked, handled, and protected in accordance with the relevant security classification guide(s) and References (af) and (ag).  Once the purposes for which these records were prepared have been accomplished, the records shall be disposed of only in accordance with References (t), (ah), and section 1228 of Reference (n).  If a record contains any evidence of a suspected or alleged violation of applicable law or policy, it shall be retained as evidence to support any investigation and disciplinary or corrective action.

c.  Requests or demands for the release of official information in litigation or testimony by DoD personnel as witnesses shall be handled in accordance with DoDD 5405.2 (Reference (ak)).  DoD personnel shall not, in response to a litigation request or demand, produce, disclose, release, comment upon, or testify concerning any official information without the prior written approval of the appropriate DoD official designated in paragraph 6.1. of Reference (ak).  Oral approval may be granted, but a record of such approval shall be made and retained in accordance with the applicable implementing regulations.

d.  Official information requested by congressional committees shall be handled in accordance with DoDD 5400.04 (Reference (al)).  Requests from Members of Congress not seeking records on behalf of a congressional committee, subcommittee, or either house sitting as a whole, or made on behalf of their constituents, shall be processed as a Freedom of Information Act request, pursuant to DoD 5400.7-R (Reference (am)).

e.  As a general rule, DoD intelligence interrogators, debriefers, and associated support personnel will not be made available to testify as witnesses in any civil or criminal proceeding or

to appear in person before any other entity in response to a request for official information unless (in the case of litigation) the appropriate DoD official designated in paragraph 6.1. of Reference (ak) or (in all other cases) the USD(I) first determines that all of the following conditions are met:

(1)  The testimony or official information is relevant and material to the civil or criminal proceedings or to any other matter within the jurisdiction of a department, agency, or branch of the U.S. Government.

(2)  There is no reasonable alternative to the testimony or personal appearance of the DoD intelligence interrogator, debriefer, or associated support person.

(3)  Adequate security precautions will be instituted to protect the identity of the interrogator, debriefer, or associated support person.

14.  <u>BEHAVIORAL SCIENCE CONSULTANTS</u>.  Behavioral science consultants are authorized to make psychological assessments of the character, personality, social interactions, and other behavioral characteristics of interrogation subjects and to advise authorized personnel performing lawful interrogations regarding such assessments in accordance with Reference (r). During assignments in which a health care provider delivers behavioral science consultant services, the provider may not supply medical care for detainees except in an emergency when no other health care providers can respond adequately.  Behavioral science consultants may not be used to determine detainee phobias for the purpose of exploitation during the interrogation process.

15.  <u>CANINES</u>.  No dog shall be used as part of an interrogation approach or to harass, intimidate, threaten, or coerce a detainee for interrogation purposes.

16.  <u>MEDICAL ISSUES</u>.  Decisions regarding appropriate medical treatment of detainees and the sequence and timing of that treatment are the responsibility of medical personnel.  Medical program support for detainee operations is governed by DoD policies and procedures, including Reference (r).  Detainees determined by medical personnel to be medically unfit to undergo interrogation will not be interrogated.

a.  <u>Reporting</u>.  Medical personnel will promptly report suspected abuse to the proper authorities, as outlined in medical procedures issued by the ASD(HA) and as specified in Enclosure 3.

b.  <u>Medical Information</u>.  Generally, information pertaining to medical conditions and care provided to patients, including medical care for detainees, is handled with respect for patient privacy.  Under U.S. and international law, there is no absolute confidentiality of medical information for any person, including detainees.  Release of medical information for purposes other than treatment is governed by standards and procedures established by the ASD(HA).

*DoDD 3115.09, October 11, 2012*

Medical information may be released for all lawful purposes, in accordance with such standards and procedures, including release for any lawful intelligence or national security-related purpose.

17.  <u>DETENTION OPERATIONS ISSUES</u>.  The detention facility commander is responsible for the health and welfare of detainees within his or her detention facility.  DoD personnel responsible for detention operations, including military police, security forces, masters at arms, and other individuals providing security for detainees, are responsible for ensuring the safety and well-being of detainees in their custody in accordance with applicable law and policy.  They will not directly participate in the conduct of intelligence interrogations.

    a.  The detention facility commander, in accordance with applicable law and policy, may cooperate in responding to requests to facilitate interrogation operations.  Applicable law and policy includes U.S. law, relevant international law, including the law of war, and applicable directives, instructions, or other issuances.  Disagreements concerning such requests will be resolved by the joint task force commander, the combatant commander, or other designated authority, after consultation with the servicing staff judge advocate.  Any remaining disagreements will be resolved by the USD(P) after consultation with the USD(I) and the GC, DoD.

    b.  Detention personnel shall report information and observations relevant to interrogation operations, such as detainee behavior, attitudes, and relationships, in accordance with procedures established by the detention facility commander or higher authority.

18.  <u>MIRANDA WARNINGS</u>.  As required by subsection 1040 of Reference (o), absent a court order requiring the reading of such statements, no service member, DoD official or employee, or a component of the IC (other than the Department of Justice) may read to a foreign national, who is captured or detained outside the United States as an enemy belligerent and is in the custody or under the effective control of the DoD or otherwise under detention in a DoD facility, the statement required by Miranda v. Arizona (Reference (an)), or otherwise inform such an individual of any rights that the individual may or may not have to counsel or to remain silent consistent with Reference (an).

ENCLOSURE 5

USE OF THE RESTRICTED TECHNIQUE OF SEPARATION


1.  The restricted interrogation technique of separation involves removing the detainee from other detainees and their environment, while still complying with all applicable standards of humane treatment and prohibitions against torture or cruel, inhuman, or degrading treatment or punishment as defined in Reference (f).  Pursuant to Reference (i), separation is not an authorized interrogation technique for use on detainees covered by Reference (z).

2.  Prior to any use of the separation technique, the Combatant Commander must authorize use of separation in his or her area of responsibility, and the first general or flag officer in the interrogator's chain of command must approve each specific use of separation and the interrogation plan that implements separation.  Before a general or flag officer approves the use of the separation technique, a competent authority must determine that the detainee is not a detainee covered by Reference (z).

3.  Trained and certified interrogators will submit requests to employ separation in accordance with applicable law and policy, including Appendix M of Reference (i), and applicable Combatant Command interrogation policies.  The officer in charge of interrogations must maintain accurate records regarding requests for use of separation, regardless of whether the requests are approved.

4.  In all cases, the status determination that a detainee is not entitled to prisoner of war status must occur prior to employing the separation technique.  If the detainee is already being segregated for legitimate administrative, health, safety, or security reasons unrelated to interrogation, the detainee may be interrogated in accordance with Reference (i) and section 3 of Enclosure 4 of this Directive without a special request for use of the separation technique.

*DoDD 3115.09, October 11, 2012*

ENCLOSURE 6

NON-DoD INTERROGATIONS, DEBRIEFINGS,
AND QUESTIONING OF DETAINEES

1. All individuals representing other U.S. Government agencies, foreign governments, or any other non-DoD entity must comply with applicable DoD policies and procedures when conducting intelligence interrogations, detainee debriefings, or other questioning of persons detained by the DoD for intelligence purposes. These individuals shall sign a written agreement to abide by DoD policies and procedures before being allowed access to any detainee in the custody or effective control of the DoD.

2. A trained and certified DoD interrogator shall monitor all intelligence interrogations, detainee debriefings, and other questioning for intelligence purposes conducted by non-DoD or non-U.S. Government personnel of detainees in the custody or effective control of the DoD. If a DoD interrogator is not available, a DoD intelligence professional—either a uniformed Service member in the grade of E-6 or above or a DoD civilian in the 0132 specialty—shall monitor the intelligence interrogation, detainee debriefing, or other questioning for intelligence purposes. Such non-interrogator monitor must be trained in the law of war and theater standards for interrogation operations, and he or she must be certified as having received such training and approved as a monitor by the senior intelligence officer having oversight responsibilities for the facility where the monitor will be employed. This monitoring requirement does not apply to U.S law enforcement, U.S. counterintelligence, or U.S. credibility assessment interrogations or questioning conducted primarily for authorized purposes other than foreign intelligence collection.

3. Contractor personnel are not authorized to serve as monitors.

4. Although physical presence is preferred, monitoring may be accomplished by remote observation if necessary. In both physical and remote monitoring, the monitor must be able to hear and understand everything that is spoken. If a translator is used, the translator must translate everything that is spoken during interrogations, debriefings, or other questioning. Monitors must keep the interrogators and the detainee in full view and under constant observation.

5. If the monitored party does not adhere to DoD policies and procedures, the monitor shall immediately terminate the interrogation and report the noncompliance in accordance with Enclosure 3. The officer in charge of the interrogation facility must ensure procedures are in place to enforce compliance with interrogation law and policy.

ENCLOSURE 7

REQUIREMENTS FOR VIDEOTAPING OR ELECTRONICALLY RECORDING
STRATEGIC INTELLIGENCE INTERROGATIONS

1.  The requirements set forth in this enclosure pertain only to strategic intelligence interrogations conducted at a theater-level detention facility.  DoD Components that elect to record intelligence interrogations, detainee debriefings, or other questioning not subject to the requirements of this enclosure are responsible for marking, protecting, storing, and disposing of these electronic recordings in accordance with the requirements of section 12 of Enclosure 4.

2.  The requirement to videotape or otherwise electronically record strategic intelligence interrogations shall be implemented in accordance with the standard operating procedures outlined in Army Memorandum (Reference (ao)) that were developed pursuant to section 10 of Enclosure 2 of this Directive; the implementing plans, policies, orders, directives, and doctrine developed by the DoD Components; the material above the signature of this Directive; and the requirements in this enclosure.

    a.  Use of Standardized Procedures.  Disparate standard operating procedures could create interoperability issues and data storage and retrieval problems.  Therefore, each theater-level detention facility will use the standard file-naming convention and standard archiving procedures specified in Reference (ap) to ensure consistency.

    b.  Equipment Failures.  Recording technicians will inspect the recording equipment prior to each interrogation session to ensure that it is functioning properly.  If the recording equipment fails for any reason (e.g., mechanical malfunction, power outage), backup equipment (e.g., a battery-powered camcorder) will be used.  If the backup equipment fails, the interrogation center commander may authorize the unrecorded interrogation of individual detainees on a case-by-case basis when the information expected to be collected from the detainee is necessary to support ongoing or imminent military operations or to save human life.  A trained and certified DoD interrogator who can hear, understand, and see the participants must monitor all such interrogations.  The primary interrogator will prepare a report immediately after each interrogation session.  The report will include the date and time of the equipment failure; the reason for the failure, if known; steps taken to repair or replace the equipment before proceeding with the interrogation, if any; and whether or not the interrogation session was conducted in accordance with applicable law, policy, and the interrogation plan.  The report will be annotated and archived so that it is available whenever the records of the detainee being interrogated are accessed.  If the equipment failure is discovered after the completion of an interrogation session, the interrogation center commander will record and archive the circumstances in the same manner.  The recording equipment must be repaired or replaced as soon as possible, but not later than 72 hours after its failure.  If the recording equipment cannot be repaired or replaced within 72 hours, all interrogations will stop until the recording equipment is repaired or replaced or the SecDef or his designee suspends the recording requirement at the theater-level detention facility in question in accordance with paragraph 2.f. of this enclosure.

*DoDD 3115.09, October 11, 2012*

c. <u>Data Loss or Corruption</u>.  The interrogation unit commander will document instances of data loss or corruption.  The documentation will be annotated and archived so that it is available whenever the records of the detainee being interrogated are accessed.

d. <u>Information to Be Included with Each Recording</u>.  Whenever a video or other electronic recording is made, the following information shall be made part of the archived record or otherwise be electronically linked to the recording and easily accessible:

(1)  Internment serial number of the detainee being interrogated.

(2)  Field reporting number of the interrogator.

(3)  Unique identifying number for interpreters and any other third parties present in the interrogation booth during the interrogation session.

(4)  Date, place, and length of the interrogation session.

e. <u>Waivers</u>.  In accordance with Reference (o), the SecDef:

(1)  May, as an exceptional measure and as part of a specific interrogation plan for a specific detainee, waive the requirement in paragraph 12.a. of Enclosure 4 of this Directive on a case-by-case basis for a period not to exceed 30 days, if the Secretary:

(a)  Makes a written determination that such a waiver is necessary to U.S. national security interests.

(b)  By not later than 5 days after the date on which such a determination is made, submits to the Committees on Armed Services of the Senate and House of Representatives, the House Permanent Select Committee on Intelligence, and the Senate Select Committee on Intelligence notice of that determination, including a justification for that determination.

(2)  May delegate this authority no lower than the level of the Combatant Commander of the theater in which the detention facility holding the person is located.

(3)  May extend such a waiver for one additional 30-day period if the SecDef makes a written determination that such an extension is necessary to U.S. national security interests.  Not later than 5 days after the date on which such a determination is made, the SecDef must submit to the Committees on Armed Services of the Senate and House of Representatives, the House Permanent Select Committee on Intelligence, and the Senate Select Committee on Intelligence notice of that determination, including a justification for that determination.

f. <u>Suspensions</u>.  In accordance with Reference (o), the SecDef:

(1)  May temporarily suspend the requirement in paragraph 12.a. of Enclosure 4 of this Directive at a specific theater-level detention facility for a period not to exceed 30 days, if the SecDef:

*DoDD 3115.09, October 11, 2012*

(a)  Makes a written determination that such a suspension is vital to U.S. national security interests.

(b)  By not later than 5 days after the date on which such a determination is made, submits to the Committees on Armed Services of the Senate and House of Representatives, the House Permanent Select Committee on Intelligence, and the Senate Select Committee on Intelligence notice of that determination, including a justification for that determination.

(2)  May not delegate this authority below the level of the DepSecDef.

(3)  May extend such a suspension for one additional 30-day period if the SecDef determines in writing that such an extension is vital to U.S. national security interests.  Not later than 5 days after the date on which such a determination is made, the SecDef must submit to the Committees on Armed Services of the Senate and House of Representatives, the House Permanent Select Committee on Intelligence, and the Senate Select Committee on Intelligence notice of that determination, including a justification for that determination.

g.  Training.  Equipment operators, archivists, and records managers will receive standardized, comprehensive training in accordance with the procedures specified in Reference (ao).

GLOSSARY

PART I.  ABBREVIATIONS AND ACRONYMS

| | |
|---|---|
| ASD(HA) | Assistant Secretary of Defense for Health Affairs |
| ATSD(IO) | Assistant to the Secretary of Defense for Intelligence Oversight |
| | |
| CJCS | Chairman of the Joint Chiefs of Staff |
| | |
| DCHC | Defense Counterintelligence and Human Intelligence Center |
| DepSecDef | Deputy Secretary of Defense |
| DIA | Defense Intelligence Agency |
| DoDD | DoD Directive |
| DoDI | DoD Instruction |
| DoD IG | Inspector General of the Department of Defense |
| DTM | directive-type memorandum |
| | |
| GC, DoD | General Counsel, Department of Defense |
| | |
| HUMINT | human intelligence |
| | |
| IC | Intelligence Community |
| | |
| NARA | National Archives and Records Administration |
| | |
| SecDef | Secretary of Defense |
| SERE | survival, evasion, resistance, and escape |
| | |
| UCMJ | Uniform Code of Military Justice |
| U.S.C. | United States Code |
| USD(I) | Under Secretary of Defense for Intelligence |
| USD(P) | Under Secretary of Defense for Policy |
| USD(P&R) | Under Secretary of Defense for Personnel and Readiness |

PART II.  DEFINITIONS

Unless otherwise noted, these terms and their definitions are for the purposes of this Directive.

captured or detained personnel.  Any person captured, detained, held, or otherwise under the control of DoD personnel (military or civilian).  This does not include DoD personnel or DoD contractor personnel being held for law enforcement purposes.

counterintelligence.  Information gathered and activities conducted to identify, deceive, exploit, disrupt, or protect against espionage, other intelligence activities, sabotage, or assassinations

*DoDD 3115.09, October 11, 2012*

conducted for or on behalf of foreign powers, organizations, or persons, or their agents, or international terrorist organizations or activities.

cooperative detainee.  A detainee who has established a pattern of answering all questions truthfully and unconditionally and, in fact, answers all questions truthfully and unconditionally. A detainee is not cooperative if the detainee refuses to answer, avoids answering, or falsely answers questions, or if the detainee is intentionally deceptive.  A detainee who fluctuates between cooperation and resistance is not cooperative.

debriefing.  The process of using direct questions to elicit intelligence information from a cooperative detainee to satisfy intelligence requirements.

disclosure of intelligence.  Showing, revealing, communicating, or transferring intelligence information by any means of communication (such as oral, written, electronic, mechanical, or actual review) to any person, private entity, U.S. Government agency or foreign entity, other than the subject of the record, the subject's designated agent, or the subject's legal guardian.

foreign intelligence.  Information relating to the capabilities, intentions, or activities of foreign governments or elements thereof, foreign organizations, foreign persons, or international terrorists.

humane treatment.  The treatment standards and principles in Enclosure 4 of DoDD 2310.01E (Reference (ap)), Article 3 of Reference (z) during non-international armed conflict, and the principles set forth in Article 75 of Protocol Additional to the Geneva Conventions of August 12, 1949, and relating to the Protection of Victims of International Armed Conflicts (Protocol I), June 8, 1977 (Reference (aq)) during international armed conflict, as construed and supported under U.S. policy and law.

interrogation approach.  An interrogation technique as identified in Reference (i) that is used by trained and certified interrogators to establish and maintain control over and rapport with a detainee in order to gain the detainee's cooperation to answer the interrogator's questions.

intelligence interrogation.  The systematic process of using interrogation approaches to question a captured or detained person to obtain reliable information to satisfy foreign intelligence collection requirements.

law of war.  In accordance with Reference (w), that part of international law that regulates the conduct of armed hostilities.  It is often called the "law of armed conflict."  The law of war encompasses all international law for the conduct of hostilities binding on the United States or its individual citizens, including treaties and international agreements to which the United States is a party, and applicable customary international law.

need-to-know.  A determination made by an authorized holder of classified information that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function.

questionable intelligence activity.  Any conduct that constitutes , or is related to, an intelligence activity that may violate the law, any Executive order or Presidential directive, including Reference (c), or applicable DoD policy.

release of intelligence.  The physical transfer of a tangible intelligence product to an authorized recipient who then assumes responsibility for the appropriate physical security of, and access to, the intelligence product.

reportable incident.  Any suspected or alleged violation of DoD policy, procedures, or applicable law relating to intelligence interrogations, detainee debriefings, or tactical questioning for which there is credible information.

segregation.  Physically removing a detainee from other detainees for legitimate purposes unrelated to interrogation, such as when necessary for the movement, health, safety, or security of the detainee, or for the security of the detention facility or its personnel.

separation.  The interrogation technique of physically removing a detainee from other detainees for intelligence interrogation purposes.

SERE techniques.  Those techniques used by SERE school instructors that are not authorized in Reference (i) for use as intelligence interrogation techniques.

significant or highly sensitive matter.  A development or circumstance involving an intelligence activity or intelligence personnel that may or may not be unlawful or contrary to an Executive order or Presidential directive, but could impugn the reputation or integrity of a DoD intelligence components or otherwise call into question the propriety of an intelligence activity.  Such matters might be manifested in or by an activity that involves congressional inquiries or investigations; may result in adverse media coverage; may impact on foreign relations or foreign partners; or is related to the unauthorized disclosure of classified or protected information, such as information identifying a sensitive source and method, but not including routine security violations.

strategic intelligence interrogation.  An intelligence interrogation of any person who is in the custody or under the effective control of the DoD or under detention in a DoD facility, conducted at a theater-level detention facility.

tactical questioning.  The field-expedient initial questioning for information of immediate tactical value of a captured or detained person at or near the point of capture and before the individual is placed in a detention facility.  Tactical questioning is generally performed by members of patrols, but can be done by any appropriately trained DoD personnel.  Tactical questioning is limited to direct questioning.

theater-level detention facility.  Any theater- or higher-level internment facility under the control of the DoD, including the Detention Facility in Parwan, Afghanistan; the DoD Detention Facility at the U.S. Naval Base, Guantanamo Bay, Cuba; and any successor internment facilities.

torture.  An act committed by a person acting under the color of law specifically intended to

*DoDD 3115.09, October 11, 2012*

inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control.  See section 2340(1) of Reference (g).

U.S. person.  A U.S. citizen; an alien known by the DoD intelligence component concerned to be a permanent resident alien; an unincorporated association substantially composed of U.S. citizens or permanent resident aliens; a corporation incorporated in the United States, except for a corporation directed and controlled by a foreign government or governments.  A corporation or corporate subsidiary incorporated abroad, even if partially or wholly owned by a corporation incorporated in the United States, is not a U.S. person.  A person or organization outside the United States shall be presumed not to be a U.S. person unless specific information to the contrary is obtained.  An alien in the United States shall be presumed not to be a U.S. person unless specific information to the contrary is obtained.  A permanent resident alien is a foreign national lawfully admitted into the United States for permanent residence.