# Exhibit 6

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

SUHAIL NAJIM ABDULLAH AL
SHIMARI, *et al.*,

      Plaintiffs,

v.

CACI PREMIER TECHNOLOGY, INC.,

      Defendant.

No. 1:08–cv–827 (LMB/JFA)

CACI PREMIER TECHNOLOGY, INC.,

      Third-Party Plaintiff,

v.

UNITED STATES OF AMERICA,
and JOHN DOES 1–60,

      Third-Party Defendants.

**THE UNITED STATES' RESPONSES TO INTERROGATORIES NO. 1 AND NO. 2 OF
DEFENDANT CACI PREMIER TECHNOLOGY INC.'S FIRST SET OF
<u>INTERROGATORIES TO THE UNITED STATES</u>**

Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Rules of the United

States District Court for the Eastern District of Virginia, third-party Defendant, the United States

of America, hereby submits through undersigned counsel the following objections and responses

to Interrogatories Nos. 1 and 2 of the first set of Interrogatories from CACI Premier Technology ("CACI PT").[1]

## INTRODUCTION

The United States' responses are provided in accordance with Federal Rule 26(b)(1), which permits the discovery of any information, not privileged, that is both (1) relevant to any party's claim or defense, and (2) proportional to the needs of the case.  The United States does not, by providing such information, waive any objection to its admissibility on the grounds of relevance, proportionality, accessibility, materiality, or other appropriate ground.  The inadvertent disclosure by the United States of information protected by any privilege or other protection shall not constitute a waiver of the applicable privilege or protection as to any information disclosed. The United States reserves the right to supplement or amend its responses should additional or different information become available.

In responding to the Interrogatories, the United States responds based upon information in the U.S. Department of Defense's and U.S. Department of the Army's possession, custody, or control.  To the extent that CACI PT seeks information beyond the possession of the U.S. Department of Defense and/or U.S. Department of the Army, the United States objects that such information is not proportional to the needs of the case and that the burden in responding outweighs any likely benefit.

---

[1]  Pursuant to the Court's Orders of February 23, 2018, and March 14, 2018, the United States' response to CACI PT First Set of Interrogatories and First Requests for Production of Documents Requests on the United States on February 23, 2018, are currently stayed except for the United States' responses to Interrogatories Number 1 and Number 2.  *See* Docket Nos. 687, 695. Accordingly, the United States' response herein is limited to those two interrogatories.  Nothing in this response should be construed as waiving any objection to the remaining set of interrogatories or to any of the requests for production of documents.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

**Interrogatory No. 1:**  *Identify any interrogator who interrogated any Plaintiff at Abu Ghraib Prison.*

**Objections**:  The United States objects to this interrogatory on grounds that the phrase "interrogated" is vague and ambiguous in this context and potentially seeks information that is not proportional to the needs of this case.  The term "interrogation" is defined by CACI PT as including "any process of interviewing or questioning of a detainee for the purpose of obtaining information." That definition is overly broad to the extent it encompasses, for example, mere intake of the detainee's personal information.  Moreover, the disclosure of an intake officer's identity, or of the identity of any individual who posed a casual question to a detainee, would unduly invade that individual's privacy and would be unrelated to the allegations in this action.  For purposes of responding to this interrogatory, the United States is limiting its responses to "intelligence interrogations," which is defined in Department of Defense Directive ("DoDD") 3115.09 as "[t]he systematic process of using interrogation approaches to question a captured or detained person to obtain reliable information to satisfy foreign intelligence collection requirements."  DoDD 3115.09, *Glossary*, p. 31.

The United States also objects that disclosure of identifying information concerning anyone who "interrogated" any of the Plaintiffs would be an unwarranted invasion of the individual's personal privacy and constitutes information the disclosure of which is routinely protected by the Department of Defense for security reasons.  Further, this information is considered classified under DoD Directive 3115.09, and therefore this interrogatory seeks information subject to the state secrets privilege.

The United States further objects to the extent that CACI PT does not first avail itself of alternative methods for obtaining relevant information before implicating classified information or the state secrets privilege. *United States v. Reynolds*, 345 U.S. 1, 11 (1953) (counseling against "forcing a showdown on the claim of [the state secrets] privilege"); September 23, 2009 Attorney General Memorandum Governing Invocation of the State Secrets Privilege (Exhibit 1) (requiring that the state secrets privilege "should be invoked only to the extent necessary to protect against the risk of significant harm to national security"). The United States renews a proposal laid out in a March 22, 2013, letter authorizing pseudonymous depositions of individual interrogators. *See* March 22, 2013, Department of Justice Letter to Counsel for CACI PT (Exhibit 2) (authorizing "depositions of Abu Ghraib interrogation personnel, including the authorization of questions about specific detainees, subject to conditions to protect their names, identities, and visual representations from disclosure"). To the extent that CACI PT seeks information beyond what is authorized in the March 22, 2013, letter, the United States objects that such a request for information is not proportional to the needs of the case and the burdens of invoking the state secrets privilege outweighs any benefit of deciding that issue at this time.

**Response**: Subject to and without waiving these objections, the United States identifies the following information:

On December 15, 2003, Plaintiff Suhail Najim Abdulla Al Shimari ("Plaintiff Al Shimari") was interrogated by a CACI interrogator assigned Field Reporter Number (FRN)

██████ ("CACI Interrogator A") and an Army interrogator assigned FRN ██████ ("Army Interrogator B").[2]

On November 7, 2003, Plaintiff Asa'ad Hamza Hanfoosh Al-Zuba'e ("Plaintiff Al-Zuba'e") was interrogated by an Army interrogator assigned FRN ██████ ("Army Interrogator C") and an interrogator assigned FRN ██████ ("Unidentified Interrogator F"). On November 18, 2003, Plaintiff Al-Zuba'e was interrogated by Army interrogators assigned FRN's ██████ ("Army Interrogator D"), and ██████ ("Army Interrogator E"). On December 23, 2003, Plaintiff Al-Zuba'e was interrogated by an interrogator assigned FRN ██████ ("Unidentified Interrogator G") and Army Interrogator B. The Department of Defense has been unable to ascertain the identity or affiliation (military or contractor) of Unidentified Interrogator F or Unidentified Interrogator G.

The Department of Defense has not located any record that would formally document any intelligence interrogation of Plaintiff Salah Hasan Nsaif Jasim Al-Ejaili ("Plaintiff Al-Ejaili"), such as an interrogation plan, an interrogation report, or interrogator notes. However, as described below in response to Interrogatory #2, the Department of Defense has located and produced other information suggesting that Plaintiff Al-Ejaili may have been interrogated by an Army interrogator and a CACI interrogator during his detention at Abu Ghraib.

The United States is continuing to exercise its due diligence to determine if there is any additional information it can provide. Should it come across additional responsive information,

---

[2] On November 28, 2003, prior to his transfer to Abu Ghraib, Plaintiff Al Shimari was interrogated at a Coalition Forward Operating Base near where he was detained. Although outside the scope of this interrogatory, recently declassified information regarding that interrogation is being produced to the parties as DoD – 01204 thru DoD – 01207. The identity and affiliation of the interrogator who conducted this pre-Abu Ghraib interrogation is not known; however, an interrogator assigned FRN ██████ developed the questions for and prepared a summary report of that interrogation.

the United States will supplement its responses consistent with Rule 26(e) of the Federal Rules of Civil Procedure.

**Interrogatory No. 2:**  *For each interrogator identified in response to Interrogatory #1, describe the facts relating to such interrogator's interactions with Plaintiff(s), including the specific conduct to which such interrogator's subjected any Plaintiff and the source of any direction under which the acts took place.*

**Objections**:  The United States objects to this request to the extent it seeks the same information requested in Interrogatory #1 to which the United States objected.  In particular, the United States renews its proposal of March 22, 2013, of pseudonymous depositions, subject to certain conditions, which would address the matters requested in this interrogatory.  For purposes of responding to this interrogatory, the United States is again limiting its responses to "intelligence interrogations," which is defined in DoDD 3115.09 as "The systematic process of using interrogation approaches to question a captured or detained person to obtain reliable information to satisfy foreign intelligence collection requirements."  DoDD 3115.09, *Glossary*, p. 31.  For the reasons articulated in response to Interrogatory #1, the United States objects to this request to the extent it seeks information beyond what is defined in DoDD 3115.09.

The United States also objects to the term "facts" as vague and ambiguous in this context and potentially seeks information that is not proportional to the needs of this case, including information that is not relevant to the subject matter of the interrogatory.  The United States further objects to providing this additional information to the extent that such material would be protected by the state secrets privilege.

**Response:** Subject to and without waiving these objections, the United States identifies the following information:

A.  Plaintiff Al Shimari

On December 15, 2003, CACI Interrogator A served as the lead interrogator and Army Interrogator B served as the assistant interrogator/analyst in the intelligence interrogation of Plaintiff Al Shimari.  According to the interrogators' report and notes, the interrogation lasted two hours and fifty-five minutes.

The interrogators reported using the [REDACTED] approaches in this interrogation. [REDACTED]

In connection with the December 15, 2003 interrogation, CACI Interrogator A and Army Interrogator B were subject to the direction of the military chain of command, beginning with their military section leader, an Army non-commissioned officer, who was to be briefed both prior to and following the interrogation to ensure that the interrogators were focused on answering CJTF-7's priority intelligence requirements, human intelligence (HUMINT) requirements, and source directed requirements. Their military section leader was also responsible for strictly enforcing the interrogation rules of engagement (IROE). From their military section leader, the interrogators' chain of command flowed through the military non-commissioned officer in charge (NCOIC) and officer in charge (OIC) of the Interrogation and Control Element (ICE), to the military chain of command at the Joint Interrogation and Detention Center (JIDC).

No CACI personnel were in this chain of command. While the CACI site manager at Abu Ghraib, Daniel Porvaznik, managed CACI personnel issues and the ICE OIC relied on him as one source of information regarding the abilities and qualifications of CACI interrogators, the military chain of command controlled the interrogation facility, set the structure for interrogation operations, and was responsible for how interrogations were to occur during both the planning and execution phases.

The reported approaches used in this interrogation were authorized by the IROE (*see* DoD – 00027), the CJTF-7 Interrogation and Counter-Resistance Policy memorandum, dated October 12, 2003 (*see* DoD – 00062 thru DoD – 00066), and Army Field Manual 34-52, September 28, 1992 ("1992 FM 34-52), which is publicly available at https://www.loc.gov/rr/frd/Military_Law/pdf/intel_interrrogation_sept-1992.pdf. A summarized description of the approaches used in this interrogation follows.



█████████████████████████ Oversight in the use of these approaches is provided by the interrogators' military section and ICE leaders.

### B. Plaintiff Al-Zuba'e

On November 7, 2003, Army Interrogator C served as the lead interrogator in the initial intelligence interrogation of Plaintiff Al-Zuba'e. Unidentified Interrogator F, an individual who the Department of Defense has been unable to identify by name or affiliation, assisted in this interrogation. According to the interrogators' report and notes, the interrogation lasted one hour and thirty minutes.

Two days prior to this interrogation, November 5, 2003, the Military Police log for the Abu Ghraib "hard site" contains an entry at 1850 hours (6:50 p.m.) referencing military intelligence instructions to the military police: "New MI [Military Intelligence hold] #152529 placed in isolation per MI [Military Intelligence] instructions. *See* Army 20141202-00001. Following the shift change at 6:00 a.m. on November 6, 2003, the Military Police log contains an entry: "Note – MI instructed night shift to keep new prisoner #152529 in the hole overnight. Removed prisoner from hole at 0645 [6:45 a.m.] and placed in cell #20." *See* Army 20141202-00002.





The reported and recommended interrogation approaches, ████████████ ████, are authorized techniques. *See* IROE (*see* DoD – 00027), the CJTF-7 Interrogation and Counter-Resistance Policy memorandum, dated October 12, 2003 (*see* DoD – 00062 thru DoD – 00066), and Army Field Manual 34-52. Oversight in the use of these approaches was provided by the section and ICE military leaders.



███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███

The Military Police log for November 12-13, 2003, contains entries relating to instructions from unidentified military intelligence personnel: "2145 [9:45 p.m.] – Stripped civilian property from #152529 cell #1A20; placed in property room (done@0230)." The log continues with an entry at "0230 [2:30 a.m., November 13, 2003] – Civilian property/Government property removed from #152529 in cell 1A20.  MI handlers will be turning on heat to this one.  Sleep management program was requested but paperwork has not been approved yet.  Property placed in storage and CI [Civilian Internee] only has his jump suit."[3]

On November 18, 2003, Army Interrogator D and Army Interrogator E served as lead and assistant interrogators, respectively, in the second intelligence interrogation of Plaintiff Al-Zuba'e.  According to the interrogators' notes, the interrogation lasted one hour and twenty eight minutes.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[3] Use of Sleep Management for more than 72 hours would have required approval of the CJTF-7 Commanding General.  The Department of Defense was unable to locate records that might confirm the Military Police log entry that approval for Sleep Management for Plaintiff Al-Zuba'e had been requested or whether it had been approved or disapproved.

████████████████████████████████████████████████████████

███████

The approaches used in this interrogation included ████████████████████████ ████████████████████████ These interrogation approaches are all authorized by then-applicable authorities and have been described previously.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

Suggested approaches for future interrogations were ████████████████████ ████████████ These recommended approaches have been previously described and are authorized.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

On December 23, 2003, Unidentified Interrogator G, an individual whom the Department of Defense has been unable to identify by name or affiliation, served as the lead interrogator and Army Interrogator B served as the assistant interrogator/analyst in the third intelligence interrogation of Plaintiff Al-Zuba'e. According to the interrogators' report and notes, the interrogation lasted two hours and forty minutes.



In connection with the three intelligence interrogations of Plaintiff Al-Zuba'e, all interrogators were subject to the direction of their military chain of command, beginning with their military section leader, an Army non-commissioned officer, who was to be briefed both prior to and following the interrogation to ensure that the interrogators were focused on answering CJTF-7's priority intelligence requirements, HUMINT requirements, and source directed requirements. The section leader was also responsible for strictly enforcing the IROE during each interrogation. From their military section leader, the interrogators' chain of

command flowed through the ICE military NCOIC and OIC to the military leadership at the JIDC.

### C.  Plaintiff Al-Ejaili

Although, as noted in response to Interrogatory 1, the Department of Defense has found no formal record of an intelligence interrogation of Plaintiff Al-Ejaili, other records in its possession reference military intelligence activity during Plaintiff Al-Ejaili's detention at Abu Ghraib, including suggestions that Plaintiff Al-Ejaili may have been interrogated by a CACI interrogator and a military interrogator.

In the Military Police log for the Abu Ghraib hard site, there is a reference on November 9, 2003:  "2015 [8:15 p.m.] - New Civilian Internee #152735 works for Al Jezera [sic]; say he is a reporter; moved to 1A-28."  On the following day, November 10, 2003, after the opening of the log at 1600 [4:00 p.m.] there is this entry:  "Note: per the Chief [not further identified, but presumably a military Chief Warrant Officer], #152735 is to have contact with no one except his team [there is a parenthetical that includes the first names of two individuals who are not further identified and the last names of two known Army interrogators]; if anyone attempts to speak with this person and gives a problem notify the Chief @ [provides apparent phone number].  Log everyone who trys to or speaks with this person. – [Military Policeman] Graner."  (*See* Army 20141202-0003).

In this same time period, emails were exchanged between intelligence officials at CJTF-7 and the Abu Ghraib ICE.  The CJTF-7 official forwarded a Draft Intelligence Information Report (DIIR) regarding another Al-Jazeera employee who had been detained by the Coalition and remarked that the DIIR was "Something of interest/possible assistance in dealing with our Al Jazeera TV guy."  The ICE military official responded:  "Will put this in Al Jazeera dude's file.

My last marching orders for this guy was not to talk to him.  He's currently in ISO."  The CJTF-7 official replied:  "Be advised.  The subject in the DIIR is not, again not the same as the guy at Abu Gharayb.  The material may still be helpful for background, but please do not confuse the two. ████████████████████████████████████████████████ (*See* DoD – 01173).

In addition, in 2013, the Department of the Army approved the deposition of Army Interrogator James Lee Joseph Beachner.  During the April 25, 2013 deposition of Sergeant Beachner, the United States permitted Beachner to affirm that statements he made to military investigators in a June 4, 2004 sworn statement were true.  According to Beachner's 2004 statement, Beachner had been assigned to interrogate "the AL JAZEER reporter" and that on one occasion he found out that CACI Interrogator Steve Stefanowicz "was questioning him."  According to Beachner's statement, "[W]hen I found this out, I told him to stop because this was my detainee.  He stopped.  There was nothing violating the IROE in that particular Interrogation."

The United States is continuing to exercise its due diligence to determine if there is any additional information it can provide.  Should it come across additional responsive information, the United States will supplement its responses consistent with Rule 26(e) of the Federal Rules of Civil Procedure.

Dated: *March 26, 2018*                    Signature for Objections:

   */s/ Eric J. Soskin*

ANTHONY J. COPPOLINO
Deputy Branch Director
JACQUELINE COLEMAN SNEAD
Assistant Branch Director

ADAM G. KIRSCHNER
ERIC J. SOSKIN
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Tel: (202) 353-9265
Fax: (202) 616-8470
Email: Eric.Soskin@usdoj.gov

Attorneys for the United States

Dated: *March 26, 2018*

Signature for Responses:

 */s/ Richard O. Hatch*
RICHARD O. HATCH
Assistant Deputy General Counsel
Department of Defense
Richard.O.Hatch.civ@mail.mil
(703) 571-0801

## CERTIFICATE OF SERVICE

I certify that on March 26, 2018, I electronically served the foregoing to the following

counsel of record:

John F. O'Connor
Conor P. Brady
Steptoe & Johnson LLP
1330 Connecticut Ave., N.W.
Washington, DC  20036
JOconnor@steptoe.com
cbrady@steptoe.com


_____/s/_____
[Signature of Server]