# Exhibit 7

Case 1:08-cv-00827-LMB-JFA     Document 775-7     Filed 04/27/18     Page 1 of 13 PageID# 15001

*SUHAIL NAJIM ABDULLAH AL SHIMARI, et al. VS.*
*CACI INTERNATIONAL INC., et al.*

*IVAN LOWELL FREDERICK, II*
*March 3, 2013*



**Ellen Grauer**
**COURT REPORTING** Co. LLC

126 East 56th Street, Fifth Floor New York, New York 10022
PHONE: (212) 750-6434   FAX: (212) 750-1097
www.ELLENGRAUER.com

*Original File 102854.TXT*
*Min-U-Script® with Word Index*

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION
-------------------------------------x
SUHAIL NAJIM ABDULLAH AL SHIMARI,
et al.

          Plaintiffs,

v.

CACI INTERNATIONAL INC., et al.,

        Defendants.

C.A. No. 08-cv-0827 GBL JFA
-------------------------------------x

                          565 Glendale Road
                          Oakland, Maryland

                          March 3, 2013
                          10:09 a.m.


        Videotaped Deposition of IVAN LOWELL FREDERICK,

II, held before Samara J. Zink, Notary Public, in and

for the State of Maryland.

           ELLEN GRAUER COURT REPORTING CO. LLC
             126 East 56th Street, Fifth Floor
                New York, New York 10022
                     212-750-6434
                      Ref:  102854

FREDERICK

BY MR. AKEEL:

Q    Okay.  Mr. Frederick, I wanted to ask you some questions about -- about possible information you learned talking with detainees.

Did you ever come to learn that there was any specific detainee that was a reporter?

A    I think I remember something about that.

Q    Okay.  Do you remember if there was any interactions between that specific detainee and any of the CACI personnel --

MAJOR McDONALD:  Okay.  I'm sorry.  Sir, that's --

MR. AKEEL:  Okay.  Yeah.  Yeah.  Okay. Okay.

BY MR. AKEEL:

Q    Do you remember any events regarding a specific person where he was throwing up a lot?

A    No, I don't.

Q    Okay.  All right.  Okay.  I'm going to -- I'm going to show you some pictures of our clients and see if you recognize them or not.  Okay?

A    Yes, sir.

Q    And if you need to take a break or whatever, just let me know.  All right?

FREDERICK

A     Okay.

Q     Here you go.

MR. AKEEL:  Okay.  I'm going to mark this as Exhibit 27.

MR. O'CONNOR:  28.

MR. AKEEL:  28.

(Thereupon, Exhibit No. 28 was marked for identification.)

BY MR. AKEEL:

Q     I know it's been eight years.  Do you recall seeing this guy?

A     No, sir.

Q     Okay.  So you don't recall him at all, correct?

A     No, sir, I don't.

Q     Okay.

MR. AKEEL:  Okay.  I'd like to go to the next one.  This is 29?

MS. DIXON:  29.

(Thereupon, Exhibit No. 29 was marked for identification.)

BY MR. AKEEL:

Q     Do you recall seeing this detainee -- or this specific person?

                          FREDERICK

          A    No, sir.

          Q    Okay.

               (Thereupon, Exhibit No. 30 was marked for

               identification.)


          BY MR. AKEEL:

          Q    Do you recall seeing this person?

          A    No, sir.

          Q    If I told you that he was a reporter,

would that refresh your recollection?

          A    No, sir.

               MR. AKEEL:  The last one was Exhibit 30.

Now I'm going to -- now I'm going to introduce

Exhibit 31.

               (Thereupon, Exhibit No. 31 was marked for

               identification.)

          BY MR. AKEEL:

          Q    Do you recognize this individual in

Exhibit 31?

          A    No, sir.

          Q    Okay.  If I told you that he was bit by a

dog, would that refresh your recollection?

               MR. O'CONNOR:  Objection to form.  It

assumes facts not in evidence.

FREDERICK

you is -- you're doing a good job with the lawyers and you aren't talking over each other.  There may be times when I am going through my questions here that Major McDonald is going to want to tell you not to answer that, and so I would just -- I would avoid blurting, because you at least want to give him a chance to either wave his hand and say "don't answer that" or tell you not to answer it, because I don't want -- I don't want you in the position that you're answering stuff that United States lawyers, who are here, don't want you to answer.

A     Yes, sir.

Q     Okay.  I'm going to start with the four pictures, which are Frederick 28 through 31, that -- I can just -- I can hand you my copies.  That's fine -- that Mr. Akeel gave you.  They're pictures of his clients.

And you don't recognize any of those people; is that right?

A     No, sir, I don't.

Q     And do you have any reason to believe that they were even at Abu Ghraib prison?

A     No, sir.

Q     Do you have any reason to believe that

FREDERICK

they were ever assigned an interrogator?

    A    Correct, sir.

    Q    So you don't -- you don't know anything about these four people?

    A    No, sir, I don't.

    Q    Okay.  And are any of those four individuals the detainee that was referred to as "al-Qaeda"?

    MAJOR McDONALD:  You can't answer that question.

    I'm sorry, sir, but because of the information that's been given before about who "al-Qaeda's" interrogator would have been, his answering that question right now would connect -- would connect that interrogator with that specific detainee.

    MR. O'CONNOR:  Okay.

    MAJOR McDONALD:  So that --

    MR. O'CONNOR:  So -- so Mr. Akeel's question basically takes away my question?

    MAJOR McDONALD:  If I could reiterate, what -- what happened earlier was Mr. Akeel asked Mr. Frederick to reaffirm his prior testimony that was given prior to the DoD directive's implementation.

FREDERICK

A    Yes, sir.

Q    Were those wires hooked up to anything other than his body?

MAJOR McDONALD:  If we can take a quick pause, sir.

MR. O'CONNOR:  Sure.

MR. SOSKIN:  If he doesn't have a problem with it, I don't have a problem with it.

MAJOR McDONALD:  We need to go off the record, please.

THE VIDEOGRAPHER:  Going off the record. The time is 17:35.

(Thereupon, a discussion was held off the record.)

THE VIDEOGRAPHER:  Back on the record. The time is 17:37.

BY MR. O'CONNOR:

Q    Mr. Frederick, you pleaded guilty at your court-martial to the mistreatment of a detainee known as "Gilligan"; is that right?

A    Yes, sir.

Q    And is "Gilligan" the detainee who was put on an MRE box with wires attached to his body?

A    Yes, sir.

FREDERICK

Q    Were you present for that entire episode where "Gilligan" had wires attached to his body?

A    Yes, sir.

Q    Were those wires attached to any electrical source?

A    No, sir.

Q    They were just attached to his body and then off into air?

A    Correct.

Q    Did the mistreatment of "Gilligan" on 4 November 2003 with the electrical wires and standing on the box, was -- were any CACI personnel involved in any way, shape or form with those events?

A    No, sir.

Q    Are you aware of any other mistreatment of "Gilligan" during the time that he was at Abu Ghraib prison?

A    No, sir.

MR. AKEEL:  Objection.

THE REPORTER:  I'm sorry.  Who said that?

                          FREDERICK

          MR. AKEEL:  I objected to form.

     BY MR. O'CONNOR:

     Q     You should take a long pause before you
answer this question because I suspect Major McDonald
may object.

          But "Gilligan's" interrogator was a CID
special agent; is that right?

          MAJOR McDONALD:  Don't answer that
question.

          MR. O'CONNOR:  Is that on the basis of --

          MAJOR McDONALD:  It's on the basis that I
need to go talk to him and confirm his answer before I
let --

          MR. O'CONNOR:  Okay.

          MAJOR McDONALD:  -- him answer.  Because
if it goes one way, then it may be okay; if it goes
the other way --

          MR. O'CONNOR:  Okay.

          MAJOR McDONALD:  -- it won't be, so --

          MR. O'CONNOR:  Okay.

          MAJOR McDONALD:  We need to go off the
record again.

          THE VIDEOGRAPHER:  Going off the record.
The time is 17:39.

FREDERICK

(Thereupon, a discussion was held off the record.)

THE VIDEOGRAPHER:  Back on the record. The time is 17:40.

MAJOR McDONALD:  Mr. Frederick, you may answer that question.

THE WITNESS:  Could you repeat the question, please?

BY MR. O'CONNOR:

Q     Sure.

"Gilligan's" assigned interrogator was a CID special agent; is that correct?

A     Yes, sir.

Q     Are you aware of any employee of CACI participating in any interrogation of "Gilligan"?

MAJOR McDONALD:  You may not answer that question.

That's -- because the contract employees are a covered class within that directive --

MR. O'CONNOR:  And CID agents are not, is that --

MAJOR McDONALD:  CID agents are military police-equivalent criminal investigators, not intelligence investigators.  The directive only

FREDERICK

applies to intelligence.

MR. O'CONNOR:  Okay.  Understood.

Okay.  Can I -- let me try this one.

MAJOR McDONALD:  Okay.

BY MR. O'CONNOR:

Q     Are you aware of anyone other than an Army CID agent participating in an interrogation of "Gilligan"?

MAJOR McDONALD:  Don't answer that question.

Sir, that -- by -- by the exclusion of a non-protected, he would thereby be implying a protected class.

MR. O'CONNOR:  Okay.  Let me try -- let me try this.

MAJOR McDONALD:  Okay.

BY MR. O'CONNOR:

Q     Are you aware of anyone other than Special Agent Romero interrogating "Gilligan"?

A     No, sir.

Q     Mr. Frederick, you pleaded guilty to a conspiracy charge for events relating to -- the events that occurred on 8 November 2003 that involved seven detainees who had been brought over from Camp Ganci.