# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CACI PREMIER TECHNOLOGY, INC., <br><br> Defendant, <br><br><br> CACI PREMIER TECHNOLOGY, INC., <br><br> Third-Party Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, and JOHN DOES 1-60, <br><br> Third-Party Defendants. | No.   1:08-cv-0827 LMB-JFA |

### DEFENDANT/THIRD-PARTY PLAINTIFF CACI PREMIER TECHNOLOGY, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF UNREDACTED DETAINEE FILES AND UNREDACTED ANNEXES TO GOVERNMENT REPORTS

John F. O'Connor
Virginia Bar No. 93004
Linda C. Bailey (admitted pro hac vice)
Molly Bruder Fox (admitted pro hac vice)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
(202) 429-3902 – facsimile
joconnor@steptoe.com
lbailey@steptoe.com
mbfox@steptoe.com

William D. Dolan, III
Virginia Bar No. 12455
LAW OFFICES OF WILLIAM D. DOLAN, III, PC
8270 Greensboro Drive, Suite 700
Tysons Corner, Virginia 22102
(703) 584-8377 – telephone
wdolan@dolanlaw.net

*Counsel for Defendant CACI Premier Technology, Inc.*

## I. INTRODUCTION

If the Court sustains the United States' assertion of the state secrets privilege, it must dismiss this case because it cannot be "fairly litigated without resort to the privileged information." *El-Masri v. United States*, 479 F.3d 296, 306 (4th Cir. 2007). Dismissal is required based solely on the documents being withheld by the United States, though the documents tell only part of the story. The Court previously sustained an assertion of the state secrets privilege with respect to the identities of interrogation personnel and invited CACI PT to seek relief, including dismissal if, after taking pseudonymous depositions, CACI PT "is hamstrung by limitations that have been placed by the government." 5/4/18 Tr. at 34-35; *see also* Dkt. #791 at 1-2.[1] CACI PT cannot fairly litigate this case without the materials withheld as state secrets. Whether the Court dismisses the case now based on the United States' privilege assertion for documents, or makes a decision regarding dismissal later that takes both documents and pseudonymous depositions into account, dismissal is the required result.[2]

In its opposition, the United States acknowledges that it is withholding from production documents that bear directly on how Plaintiffs were treated while in U.S. custody. In addition to documents identifying interrogation personnel, the United States is also withholding:

> - Interrogation plans, which identify the interrogation approaches approved for a particular interrogation (Mattis Decl. ¶ 6)
>
> - Summary interrogation notes for Plaintiffs' interrogations to the extent they contain analyst and interrogator focus comments (*Id.*);
>
> - Interrogation collector comments from these Plaintiffs' interrogations (*Id.*);

---

[1] One pseudonymous deposition of an interrogator remains to be scheduled.

[2] Because CACI PT's motion to compel has been referred to Magistrate Judge Anderson for decision, any decision dismissing Plaintiffs' claims at this time likely would require issuance of a Report and Recommendation. Fed. R. Civ. P. 72(b)(1).

- ➢ Documents showing approaches used during interrogations of these Plaintiffs (*Id.*);

- ➢ Observations related to the mood/attitude of these Plaintiffs during their interrogations (*Id.*);

- ➢ Interrogator assessments regarding a Plaintiff's truthfulness (*Id.*);

- ➢ Interrogator recommendations and/or suggested future approaches that may work with a Plaintiff (*Id.*);

- ➢ Suggestions for when future interrogations of a Plaintiff should occur (*Id.*);

- ➢ The alphanumeric code that describes, separately for each Plaintiff, the identity of the nation that captured them and the military allegiance of each Plaintiff (*Id.* at ¶ 5); and

- ➢ Witness statements and Materials addressing detainee and interrogation policies that are part of government reports Plaintiffs have placed on their exhibit list (*Id.* at ¶¶ 23-24).

With respect to its state secrets assertion, the United States appears to have complied with the procedural requirements for asserting the privilege, and CACI PT lacks access to the classified information that would allow it to challenge Secretary Mattis's conclusion that disclosing the materials sought could harm national security. It is clear, however, that the case cannot be fairly litigated without access to the documents being withheld on the basis of privilege.

The United States has identified and located eleven participants in Plaintiffs' interrogations and CACI PT has conducted pseudonymous depositions of ten of them with one remaining to be scheduled. Only one of the ten pseudonymous deponents testified to remembering his interrogation of a Plaintiff. Thus, while the other nine witnesses could testify that the abuses that Plaintiffs allege never occurred in any interrogation they conducted, they could not testify as to what actually happened during Plaintiffs' interrogations. Accordingly, with one exception where the interrogator remembered the interrogation, documents are the *only*

source of information as to what approaches were approved for interrogations of these Plaintiffs and what actually occurred during their interrogations. As the Fourth Circuit has ruled, the most crucial facts in a detainee abuse case are how the plaintiffs were treated while in custody and the defendant's role, if any, in such treatment. Moreover, the Fourth Circuit specifically directed this Court to develop the record regarding "the specific conduct to which the plaintiffs were subjected and the source of any direction under which the acts took place." *Al Shimari v. CACI Premier Tech., Inc.*, 840 F.3d 147, 160-61 (4th Cir. 2016) ("*Al Shimari IV*"). If the state secrets privilege prevents discovery of these fundamental facts, and compliance with the Fourth Circuit's remand instructions, dismissal is the only permissible result.

## II. ANALYSIS

### A. The Documents Withheld By the United States Are Indisputably Relevant to the Claims and Defenses in this Case

The United States' opposition does not assert relevance or proportionality as arguments against CACI PT's motion to compel. Nor could it. The documents subject to CACI PT's motion to compel bear on these Plaintiffs' actual treatment while in United States custody as well as the U.S. military policies and procedures regarding detainee treatment and interrogation operations that were in effect while Plaintiffs were held at Abu Ghraib prison. For their part, Plaintiffs do not oppose an order compelling production, but principally appear to argue that the Court can deny production on state secrets grounds without having to dismiss the case. Pl. Resp. at 2-6. While Plaintiffs mostly appear to concede relevance, they make the bare assertion that the documents that CACI PT seeks are of "vanishing relevance." Pl. Opp. at 2. To the extent Plaintiffs are challenging relevance, their position does not withstand even minimal scrutiny.[3]

---

[3] There is considerable overlap in arguments relating to relevance and arguments concerning whether sustaining the state secrets privilege requires dismissal of this case. Because the United States does not appear to argue relevance, and Plaintiffs' relevance argument is at best

3

CACI PT explained at great length in moving to compel that the documents it seeks are not only relevant to the case, but are the most relevant documents in this case. CACI PT Mem. at 14-20. As the Fourth Circuit has held, the most relevant facts in a detainee abuse case are how the plaintiffs were treated and by whom, under whose direction the treatment occurred, and whether the facts concerning such treatment render the defendant personally liable to the plaintiffs. *El-Masri*, 479 F.3d at 308. Moreover, the Fourth Circuit ruled that determining justiciability in this case requires development of a record "regarding the specific conduct to which the plaintiffs were subjected and the source of any direction under which the acts took place." *Al Shimari IV*, 840 F.3d at 160-61.

Each of Plaintiffs' claims and CACI PT's defenses and third-party claims requires factual development as to what actually happened to Plaintiffs while in U.S. military custody and who was involved. Plaintiffs' aiding and abetting claims require proof that CACI PT "provide[d] practical assistance" to a principal who mistreated Plaintiffs, and did so "with the purpose of facilitating the commission of that crime." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 398 (4th Cir. 2011) (quoting *Presbyterian Church of Sudan v. Talisman*, 582 F.3d 244, 258 (2d Cir. 2009)). Plaintiffs' conspiracy claims require proof of an unlawful agreement one object of which was the mistreatment of these Plaintiffs in a way actionable under the ATS. *See, e.g.*, *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016). CACI PT's derivative sovereign immunity defense requires determining the extent to which the United States authorized Plaintiffs' treatment. *See, e.g.*, *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 643 (4th Cir. 2018). CACI PT's third-party claims against the United States require determining whether any liability CACI PT might have is secondary to that of the United States. *United*

---

made in passing, most of CACI PT's arguments regarding the essential nature of the withheld documents are set forth in Section III.C, *infra*. Such arguments also bear on relevance.

*States v. Savage Truck Line, Inc.*, 209 F.2d 442, 447 (4th Cir. 1953). Secretary Mattis's declaration makes clear that information concerning Plaintiffs' specific treatment is being withheld based on the United States' assertion of the state secrets privilege. Mattis Decl. ¶¶ 4-6. Thus, the documents relating to Plaintiffs' actual treatment are clearly relevant.

Similarly, Plaintiffs rely on the Taguba and Jones/Fay reports to somehow support their conspiracy and aiding and abetting claims. Indeed, at least twenty of Plaintiffs' proposed trial exhibits are excerpts from the Taguba and Jones/Fay reports or annexes from those reports. *See* Dkt. #972 (Pl. Proposed Trial Exhibits 23-31, 39-41, 73-77, 178-80). Any attempt to introduce government reports into evidence requires a determination of trustworthiness. CACI Mem. at 18-20. Plaintiffs' suggestion that CACI PT should be required to litigate trustworthiness of the reports without actually seeing portions of the reports bearing on detainee abuse is indefensible. This is particularly true given the United States' acknowledgement that the materials withheld from production include portions of witness statements involving detainee treatment and documents setting forth interrogation policies and procedures at Abu Ghraib prison. Mattis Decl. ¶¶ 7-8; U.S. Opp., Ex. 3 at 6-7.

> **B.    The United States Has Met the Procedural Requirements for Asserting the State Secrets Privilege**

The Fourth Circuit has established procedural requirements for the United States' assertion of the state secrets privilege:

> [I]n order to invoke the privilege protecting evidence of state secrets, "[t]here must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect."

5

*In re Under Seal*, 945 F.2d 1285, 1288 (4th Cir. 1991) (quoting *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953); *see also El-Masri*, 479 F.3d at 304 (identifying same requirements for formal assertion of state secrets privilege by the United States). It appears from the face of Secretary Mattis's declaration that the state secrets privilege has been invoked by an agency head after personal consideration by him. Accordingly, in the event that the Court sustains the United States' assertion of the state secrets privilege, the remaining question is whether sustaining the privilege requires dismissal of this case. *El-Masri*, 479 F.3d at 308.

> **C. Sustaining the United States' Invocation of the State Secrets Privilege Requires Dismissal**
>
> **1. The United States' Assertion of the State Secrets Privilege Makes It Impossible for CACI PT to Develop Evidence Regarding the Merits of Plaintiffs' Claims**

As the Fourth Circuit has recognized, "some matters are so pervaded by state secrets as to be incapable of judicial resolution once the privilege has been invoked." *El-Masri*, 479 F.3d at 306 (citing *Totten v. United States*, 92 U.S. 105, 107 (1875), and *Reynolds*, 345 U.S. at 11 n. 26). If the privileged state secrets are the subject matter of the suit or are so central to its resolution that the case cannot be fairly litigated without disclosing them, dismissal is required. *Id.* at 306, 312. "[F]or purposes of the state secrets analysis, the 'central facts' and 'very subject matter' of an action are those facts that are essential to prosecuting the action or defending against it." *Id.* at 309.

*El-Masri* is particularly instructive in this regard because it was a detainee abuse case by a plaintiff alleging that his was mistreated while in United States custody. El-Masri asserted one *Bivens* claim and two Alien Tort Statute claims against CIA personnel and three government contractors, alleging that he had been subjected to the United States' extraordinary rendition program and "was detained and interrogated in violation of his rights under the Constitution and

6

international law." *Id.* at 299. The United States invoked the state secrets privilege regarding its extraordinary rendition program and El-Masri's treatment pursuant to that program. *Id.* at 301. The United States' invocation of privilege included the "means and methods" of El-Masri's rendition and treatment. *Id.* at 311. El-Masri argued that his case could go forward, notwithstanding the United States' invocation of the state secrets privilege because "CIA rendition operations, including El-Masri's alleged rendition, had been widely discussed in public forums." *Id.* at 301.

The Fourth Circuit rejected El-Masri's arguments. The court held that "central facts" regarding El-Masri's claims were not "his allegations that he was detained and interrogated under abusive conditions, or that the CIA conducted the rendition program that has been acknowledged by United States officials." *Id.* at 309. Rather, the "central facts" were "the roles, if any, that the defendants played in the events he alleges." *Id.* Indeed, to make out his own *prima facie* case, the court held that El-Masri would have to "produce admissible evidence not only that he was detained and interrogated, but that the defendants were involved in his detention and interrogation in a manner that renders them personally liable to him." *Id.* Indeed, the court held that dismissal was required because "El-Masri would need to rely on witnesses whose identities, and evidence the very existence of, must remain confidential in the interest of national security." *Id.*

Beyond El-Masri's inability to make out a *prima facie* case without implicating state secrets, the court also affirmed dismissal because the defendants could not fairly defend themselves without use of privileged state secrets. As the court explained:

> Furthermore, if El-Masri were somehow able to make out a prima facie case despite the unavailability of state secrets, the defendants could not properly defend themselves without using privileged evidence. ***The main avenues of defense available in this matter***

7

> ***are to show that El–Masri was not subject to the treatment that he alleges; that, if he was subject to such treatment, the defendants were not involved in it; or that, if they were involved, the nature of their involvement does not give rise to liability.*** Any of those three showings would require disclosure of information regarding the means and methods by which the CIA gathers intelligence. If, for example, the truth is that El-Masri was detained by the CIA but his description of his treatment is inaccurate, that fact could be established only by disclosure of the actual circumstances of his detention, and its proof would require testimony by the personnel involved.

*Id.* (emphasis added). These principles apply with full force to Plaintiffs' claims against CACI PT and CACI PT's ability to defend against them.

Plaintiffs allege that they were tortured while in United States military custody. Forty-six witnesses have been deposed in this and related actions, and not a single witness provides any corroboration for Plaintiffs' claims. Plaintiffs do not even corroborate each other's claims, as there is no indication that they encountered each other at Abu Ghraib prison. Plaintiffs have no contemporaneous medical records documenting their claims of abuse. Indeed, Plaintiff Rashid testified that he once had contemporaneous medical records, but he failed to produce them in response to CACI PT's discovery requests and claims that he subsequently lost possession of them.[4] Thus, any trial of this action will depend heavily on Plaintiffs' credibility, as their only evidence in support of their claims that *they* were mistreated is their own testimony. The United States' assertion of the state secrets privilege effectively prevents CACI PT from developing and presenting evidence to rebut Plaintiffs' allegations or to challenge Plaintiffs' credibility.

The United States has withheld on state secrets grounds documents showing not only who interacted with Plaintiffs, but also which interrogation approaches were used and authorized by the U.S. military chain of command. According to the United States, Plaintiff Al Shimari was

---

[4] The Court has ruled that it will give a jury instruction that the jury may draw an adverse inference against Rashid based on his spoliation of medical evidence.

interrogated only once while at Abu Ghraib prison, and the participants in the interrogation were CACI Interrogator A and Army Interrogator B.  Ex. 11 at 4-5.  CACI PT deposed CACI Interrogator A and Army Interrogator B and neither remembered their interrogation of Al Shimari although they denied that the types of mistreatment alleged by Al Shimari occurred in *any* interrogation in which they participated.  Ex. 21 at 86-87, 97-106; Ex. 22 at 50, 54-62.

Thus, the *only* available evidence as to what interrogation approaches were approved and used in Al Shimari's single interrogation is contained in the United States' records.  Secretary Mattis's declaration acknowledges that the United States in withholding on state secret grounds specific, detailed documents describing the interrogation approaches actually used in Al Shimari's interrogation:

> Unlike the United States Government's general, unclassified descriptions of authorized interrogation methods, the tailored interrogation plan actually used for a lengthy interrogation of Plaintiff Al Shimari provides a focused assessment of the approach best suited to assist the interrogators in obtaining his cooperation in responding to questions and disclosing information about subjects into which interrogators wished to inquire.  Disclosing the interrogation plan would reveal the subjective judgments made by the interrogation team involved in developing, using, and modifying an interrogation plan in an attempt to obtain this information from Plaintiff Al Shimari.  Likewise, portions of documents titled Summary Interrogation Reports and Interrogator Notes related to interrogations of Plaintiff Al Shimari were redacted for the same reasons as his interrogation plan.  These documents summarize the results of interrogations and were completed close in time to their conclusion.  While these documents were not redacted in full, the portions containing interrogator notes regarding the effectiveness of the approach used, the mood of the detainee, the overall assessment of the detainee during the interrogation and recommended future approaches were redacted.

Mattis Decl. ¶ 19 (footnote and Bates numbers of relevant pages omitted).

Secretary Mattis's declaration further states that the United States is invoking the state secrets privilege with respect to Interrogator Notes for the three interrogations of Al-Zuba'e for

9

the same reasons he articulated with respect to Al Shimari. *Id.* at ¶ 21. In particular, the United States is withholding documents setting forth the interrogation approaches used in interrogations of Al-Zuba'e, assessments of the effectiveness of such approaches, and documents describing interrogation approaches recommended by interrogation personnel for subsequent interrogations. *Id.* Secretary Mattis further advises that the United States is invoking the state secrets privilege with respect to documents setting forth the reasons and circumstances of Al-Zuba'e's capture (*id.*), information crucial to an assessment of Al-Zuba'e's credibility in connection with his deposition testimony on the circumstances of his apprehension and on his persistent claims to have been an innocent person wrongfully apprehended.

Moreover, the United States' redaction of the alphanumeric portion of Plaintiffs' Internment Serial Number prevents the parties from discovering the identity of the country that captured each Plaintiff and information regarding the captured individual's "country of military allegiance." Mattis Decl. ¶ 5. All four Plaintiffs have contended that they were not engaged in military or insurgent actions hostile to the United States, and all have claimed to have been complete innocents wrongly detained by U.S. forces. Evidence regarding the circumstances of their capture and the United States' assessments of their military allegiances is relevant to assessing Plaintiffs' credibility, a particularly key issue given that the only evidence of their alleged mistreatment at Abu Ghraib prison is their own word.

This case is on all fours with *El-Masri*. In *El-Masri*, the court affirmed dismissal because evidence regarding the "means and methods" used in El-Masri's apprehension, transfer to U.S. custody, rendition, and interrogation were privileged state secrets. *Id.* The "very subject matter" of the present case is Plaintiffs' apprehension and subsequent treatment while at Abu Ghraib prison. *El-Masri*, 479 F.3d at 309. The "central facts" to the fair litigation of this case are how

10

Plaintiffs were treated in U.S. custody; if Plaintiffs were mistreated, whether CACI PT personnel were involved; and whether any mistreatment Plaintiffs may have suffered occurred under circumstances that would render CACI PT legally liable. *Id.*

Here, Secretary Mattis's declaration confirms that the United States is withholding, on state secrets grounds, documents setting forth the interrogation approaches and methods used during the interrogations of Al Shimari and Al-Zuba'e, the identities of those approving and recommending specific interrogation approaches, and documents providing information concerning the circumstances of capture and transfer to Abu Ghraib prison for all four Plaintiffs. Mattis Decl. ¶¶ 5, 19-21. These are the most important facts in the case. *El-Masri*, 479 F.3d at 309. CACI PT cannot fairly defend itself against claims alleging mistreatment in connection with interrogations while simultaneously being denied access to documents that are the only available source of information as to how Plaintiffs were treated during their interrogations and who authorized the interrogation methods and approaches that were used. Thus, as in *El-Masri*, a ruling denying CACI PT access, on state secrets grounds, to information regarding Plaintiffs' actual treatment while in U.S. custody requires dismissal of Plaintiffs' claims.

> **2. The United States' Invocation of the State Secrets Privilege Prevents the Court from Complying with the Fourth Circuit's Remand Instructions and Prevents CACI PT from Fairly Litigating the Justiciability of Plaintiffs' Claims**

In *Al Shimari IV*, the Fourth Circuit vacated this Court's ruling that Plaintiffs' claims were barred by the political question doctrine and remanded for further consideration of the issue. In that regard, the Fourth Circuit's remand instructions were clear:

> Accordingly, on remand, the district court will be required to determine which of the alleged acts, or constellations of alleged acts, violated settled international law and criminal law governing CACI's conduct and, therefore, are subject to judicial review. The district court also will be required to identify any "grey area" conduct that **was committed under the actual control of the**

11

> *military* or involved sensitive military judgments and, thus, is protected under the political question doctrine.
>
> This "discriminating analysis" will require the district court to examine *the evidence regarding the specific conduct to which the plaintiffs were subjected and the source of any direction under which the acts took place*. If disputed facts are "inextricably intertwined" with the facts underlying the merits of the plaintiffs' claims, the district court should resolve these disputed jurisdictional facts along with the intertwined merits issues.

*Al Shimari IV*, 840 F.3d at 160-61 (emphasis added) (footnote and citations omitted). On remand, the Court directed the parties to brief the political question doctrine through a motion to dismiss filed before the Court permitted any discovery. The Court then held that Plaintiffs' factual allegations, taken as true, were sufficient to state justiciable claims, but the parties have not yet briefed the evidence-based justiciability challenge that the Fourth Circuit's remand instructions require. That motion will be brought once discovery has been completed.

As noted above, the Fourth Circuit has ruled that the Court's political question analysis will require the Court "to examine the evidence regarding the specific conduct to which the plaintiffs were subjected and the source of any direction under which the acts took place." *Id.* The United States' assertion of the state secrets privilege prevents the Court from examining the evidence regarding Plaintiffs' actual treatment or identifying the sources of any direction relating to Plaintiffs' actual treatment. As Secretary Mattis has confirmed, the United States is withholding crucial documents relating to the interrogation methods and approaches used during the single interrogation of Al Shimari and the three interrogations of Al-Zuba'e. Mattis Decl. ¶¶ 19-21. As the Fourth Circuit made clear in *Al Shimari IV*, the central facts for resolving justiciability are the contents of the very documents the United States refuses to produce – evidence regarding Plaintiffs' actual treatment and the source of any direction regarding such treatment. Because CACI PT cannot fairly challenge justiciability without discovery of this

12

information, and the Court cannot satisfy its independent duty to assure itself that subject-matter jurisdiction exists, dismissal is required.

### 3. The United States' Invocation of the State Secrets Privilege Prevents CACI PT from Fairly Litigating Its Derivative Sovereign Immunity Defense

In moving to compel, CACI PT explained that the documents being withheld by the United States are highly relevant to CACI PT's derivative sovereign immunity defense. CACI PT Mem. at 17-18. Plaintiffs' response ignores this point entirely.[5] However, as Supreme Court and Fourth Circuit make clear, "a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government validly conferred that authorization, meaning it acted within its constitutional power." *Cunningham*, 888 F.3d at 643 (4th Cir. 2018) (internal quotations and citations omitted) (quoting *In re KBR, Inc. Burn Pit Litig.*, 744 F.3d 326, 342 (4th Cir. 2014), *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000), and *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 21-22 (1940)). Indeed, this immunity applies even to conduct that ordinarily is unlawful when committed by a contractor. *See Butters*, 225 F.3d at 466 (government contractor immune from suit for alleged unlawful gender discrimination).

The United States' motion to dismiss based on sovereign immunity remains pending before the Court. If the United States is dismissed on these grounds, CACI PT is entitled to derivative sovereign immunity to the extent its employees engaged in conduct with respect to Plaintiffs that the United States authorized. Here, this defense runs directly into the United

---

[5] The United States' opposition also ignores the effect of withholding documents on CACI PT's derivative sovereign immunity defense. In fairness, though, that issue is not the United States' concern. As the United States correctly states, once the state secrets privilege is upheld, the information "is absolutely protected from disclosure." U.S. Opp. at 18 (quoting *Abilt v. CIA*, 848 F.3d 305, 313 (4th Cir. 2017)).

13

States' invocation of the state secrets privilege, as Secretary Mattis's declaration makes clear that the United States is withholding, at least for Al Shimari and Al-Zuba'e, documents detailing the interrogation approaches and methods that the United States authorized for the interrogations of these Plaintiffs. Mattis Decl. ¶¶ 19-21. That the withheld documents relate to Plaintiffs Al Shimari and Al-Zuba'e is particularly important, as these are the only two of the four Plaintiffs for which CACI PT personnel conducted intelligence interrogations (one each, one by CACI Interrogator A and one by CACI Interrogator G). Ex. 11 at 4-5. CACI PT cannot fairly litigate its derivative sovereign immunity defense while being denied access to documents showing which interrogation methods and approaches were approved for the two interrogations in which its employees participated.[6]

### 4. The United States' Invocation of the State Secrets Privilege Prevents CACI PT from Fairly Challenging the Admissibility and Weight of the Taguba and Fay Reports

Plaintiffs have abandoned any claim that CACI PT personnel directly mistreated them,[7] and the Court properly dismissed Plaintiffs' claims of direct abuse as a result. All that remains are conspiracy and aiding and abetting claims whereby Plaintiffs seek to hold CACI PT liable for mistreatment allegedly inflicted on them by U.S. soldiers. However, Plaintiffs themselves lack any facts implicating CACI PT personnel in their treatment, and none of the forty-six deponents in this and related cases has testified to any role by CACI PT personnel in any mistreatment of these Plaintiffs. As a result, Plaintiffs are seeking to plug this gaping hole in their proof by

---

[6] The interrogation policy documents withheld from the Taguba report similarly bear on the extent to which the United States authorized particular interrogation methods or approaches. Mattis Decl. ¶¶ 23-24.

[7] *See* 9/22/17 Tr. at 15 ("We are not contending that the CACI interrogators laid a hand on the plaintiffs."); *see also* Dkt. #639 at 31 n.30 (the "gravamen of Plaintiffs' complaint is conspiracy and aiding and abetting"); *id.* at 1 ("Plaintiffs sued CACI under well-established theories of accessory liability.").

introducing the Taguba and Jones/Fay reports into evidence and then arguing that those reports somehow will permit an inference of CACI PT involvement in their alleged mistreatment. However, even for government reports that are not admissible on other grounds, CACI PT is permitted to oppose admissibility by showing that "the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B). The United States' invocation of the state secrets privilege prevents CACI PT from marshalling all available evidence bearing on trustworthiness.

As the United States has acknowledged, both the Taguba and Jones/Fay reports rely almost entirely on hearsay statements made by others in the course of a prior Army Criminal Investigation Division investigation or to the Taguba or Jones/Fay investigation teams. Dkt. #285 at 10 n.7 (noting that the Taguba and Jones/Fay reports "rely on information obtained second-and, third-hand, or more remotely, *e.g.*, from reports of investigations previously conducted"). That is, the Taguba and Jones/Fay reports largely derive their findings regarding detainee abuse from simply reading and adopting statements made by others, including statements made by persons who themselves were implicated in detainee abuse. In order to fairly test the reliability of the reports, CACI PT needs access to the unredacted witness statements on which the report authors relied. Even after serial meet-and-confer sessions occurring over several months, in which the parties narrowed the scope of their disputes considerably, the United States has redacted thirteen witness statements, all of which are annexes to, and relied upon by the authors of, the Jones/Fay report. *See* O'Connor Decl., Ex. 18. For each of these statements, there are redactions that appear from their context potentially to relate to CACI PT personnel or to identify persons interacting with detainees who alleged that they were mistreated. Given that the Jones/Fay report relied on the statements of others, being able to

15

see what the statements actually say is important in assessing whether the reports reliably and fairly adopted what the witness statements actually said.

Moreover, the withheld documents bear directly on the weight properly accorded to the Taguba and Jones/Fay reports if they were in fact admitted at trial or considered on dispositive motions. In that regard, having the unredacted witness statements on which the report authors relied is essential in assessing weight for the same reasons that these documents bear on admissibility. Moreover, the information withheld from Plaintiffs' detainee files, even though not relied on by the report authors, is essential in rebutting any inference from the reports that Plaintiffs might suggest. For example, the United States is withholding documents recording what *actually happened* during the interrogations of Al Shimari and Al-Zuba'e. Neither the Taguba report nor the Jones/Fay report makes findings regarding what actually happened during the interrogations of any of the Plaintiffs. To the extent that Plaintiffs try to argue that the reports should support an inference that improper treatment occurred during Plaintiffs' interrogations because other detainees were mistreated, evidence of what actually happened during Plaintiffs' interrogations, and who approved of the approaches used, is essential in arguing to the jury that the inferences Plaintiffs suggest are unwarranted. In essence, it would be unfair to CACI PT if Plaintiffs were allowed to argue that the jury can make inferences about what occurred during Plaintiffs' interrogations while CACI PT is denied the opportunity to discover and present evidence of what actually occurred.

### III.   CONCLUSION

The Court should dismiss Plaintiffs' claims. Plaintiffs' claims cannot be fairly litigated in light of the United States' invocation of the state secrets privilege to shield from production documents relating to Plaintiffs' treatment and documents relied on in government reports on which Plaintiffs intend to rely. The necessity of dismissal can be determined based solely on the

United States' assertion of the state secrets privilege for documents.  Nevertheless, if the Court prefers to address the propriety of dismissal based on a cumulative effect of the United States' three invocations of the state secrets privilege in this case, CACI PT will present a motion seeking relief on that basis.

Respectfully submitted,

*/s/   John F. O'Connor*

| | |
|---|---|
| John F. O'Connor | William D. Dolan, III |
| Virginia Bar No. 93004 | Virginia Bar No. 12455 |
| Linda C. Bailey (admitted *pro hac vice*) | LAW OFFICES OF WILLIAM D. DOLAN, III, PC |
| Molly Bruder Fox (admitted *pro hac vice*) | 8270 Greensboro Drive, Suite 700 |
| STEPTOE & JOHNSON LLP | Tysons Corner, Virginia 22102 |
| 1330 Connecticut Avenue, N.W. | (703) 584-8377 – telephone |
| Washington, D.C. 20036 | wdolan@dolanlaw.net |
| (202) 429-3000 – telephone | |
| (202) 429-3902 – facsimile | |
| joconnor@steptoe.com | |
| lbailey@steptoe.com | |
| mbfox@steptoe.com | |

*Counsel for Defendant CACI Premier Technology, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of November, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following counsel.

>John Kenneth Zwerling
>The Law Offices of John Kenneth Zwerling, P.C.
>114 North Alfred Street
>Alexandria, Virginia 22314
>jz@zwerling.com
>
>Lauren Wetzler
>United States Attorney Office
>2100 Jamieson Avenue
>Alexandria, Virginia 22314
>lauren.wetzler@usdoj.gov
>
>*/s/   John F. O'Connor*
>John F. O'Connor
>Virginia Bar No. 93004
>Attorney for Defendant CACI Premier Technology, Inc.
>STEPTOE & JOHNSON LLP
>1330 Connecticut Avenue, N.W.
>Washington, D.C. 20036
>(202) 429-3000 – telephone
>(202) 429-3902 – facsimile
>joconnor@steptoe.com