1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

SUHAIL NAJIM ABDULLAH          .     Civil Action No. 1:08cv827
AL SHIMARI, TAHA YASEEN ARRAQ .
RASHID, SA'AD HAMZA HANTOOSH   .
AL-ZUBA'E, AND SALAH HASAN     .
NUSAIF JASIM AL-EJAILI,        .
                               .
              Plaintiffs,      .
                               .
     vs.                       .     Alexandria, Virginia
                               .     November 30, 2018
CACI PREMIER TECHNOLOGY, INC.,.      10:02 a.m.
                               .
              Defendant.       .
                               .
. . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JOHN F. ANDERSON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:            TERRA HITTSON, ESQ.
                              Patterson Belknap Webb &
                              Tyler LLP
                              1133 Avenue of the Americas
                              New York, NY 10046

FOR THE DEFENDANT:            JOHN F. O'CONNOR, ESQ.
                              Steptoe & Johnson LLP
                              1330 Connecticut Avenue, N.W.
                              Washington, D.C. 20036

FOR THE THIRD-PARTY           LAUREN A. WETZLER, AUSA
   DEFENDANT:                  Office of the United States
                              Attorney
                              2100 Jamieson Avenue
                              Alexandria, VA 22314

(APPEARANCES CONT'D. ON PAGE 2)

(Pages 1 - 24)

(Proceedings recorded by electronic sound recording, transcript
 produced by computerized transcription.)

2

1    <u>APPEARANCES</u>:   (Cont'd.)

2    FOR THE THIRD-PARTY                ELLIOTT M. DAVIS, ESQ.
         DEFENDANT:                     ERIC J. SOSKIN, ESQ.
3                                       U.S. Department of Justice
                                        Civil Division, Torts Branch
4                                       Benjamin Franklin Station
                                        P.O. Box 888
5                                       Washington, D.C. 20044

6    THE TRANSCRIBER:                   ANNELIESE J. THOMSON, RDR, CRR
                                        U.S. District Court, Third Floor
7                                       401 Courthouse Square
                                        Alexandria, VA 22314
8                                       (703)299-8595

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1              P R O C E E D I N G S

2              THE CLERK:  Suhail Al Shimari, et al. v. CACI Premier

3    Technology, Inc., et al., Civil Action No. 08cv827.

4              MR. DOLAN:  Good morning, Your Honor.  John O'Connor

5    for CACI Premier Technology, Inc.

6              THE COURT:  Thank you, Mr. O'Connor.

7              MS. HITTSON:  Good morning, Your Honor.  Terra

8    Hittson for the plaintiffs.

9              THE COURT:  Thank you.

10             MS. WETZLER:  Good morning, Your Honor.  Lauren

11   Wetzler for the United States.  With me are Eric Soskin and

12   Elliott Davis, and Mr. Soskin will be arguing for the United

13   States.

14             THE COURT:  Okay.  Thank you.

15             Well, go ahead and have a seat.  I'm going to just

16   give you a few little comments and then observations and then

17   hear whatever you-all would like to say to add on to that.

18             First, I really appreciate the parties' continuing

19   efforts to try and get the matter resolved or at least narrowed

20   down, and you-all have made some substantial progress on that.

21   By my count, we're down to about 90 pages, I think, of

22   materials that have, have redactions on them.

23             I have read all the materials that have been

24   submitted and have looked at all of the exhibits, at least the

25   ones that are in, are in dispute.  So, you know, it's -- we'll

4

1    carry forward based on that knowledge.

2           First, I don't really think that there's any dispute

3    that the procedural requirements for the assertion of the state

4    secrets privilege has been asserted, been followed and done

5    properly.  There've been a formal assertion by the United

6    States, live by the Secretary of Defense, after actual personal

7    review, as is basically required by *Reynolds*.

8           The only issue, and I'm going to need to have the

9    United States address this, in my mind -- and I understand I

10   have to provide the utmost deference to the assertion, but it

11   has to do with the assertion of the names of the detainees.  My

12   review of the Mattis declaration, I think it clearly addresses

13   the need to protect the names and the identities of the

14   intelligence interrogators and anyone who's supporting them.

15   We've addressed that issue previously with even his earlier

16   declaration, and this one again does that again, I think,

17   pretty thoroughly, but the issue is not clear to me when I read

18   that declaration as to the detainee names in and of themselves

19   being something of danger.

20          The declaration discusses that if the interrogators'

21   names in conjunction with the detainee names is released, it

22   could cause harm to the interrogators, and I'm, I'm a little

23   concerned and I do want to have that addressed as to where in

24   that declaration or what is the danger in having the detainee

25   names and, obviously, the plaintiffs' names, it's not part of

1    that, disclosed.  So that's one issue that I need to have

2    addressed at the hearing.

3           Looking at the documents -- and I, I may be wrong on

4    this, but this is just sort of my review and the way that I see

5    things coming into here -- and I'll just mention that my review

6    had been limited in two respects, so these comments have to

7    take that into, into context.

8           First, the submission that we got yesterday or the

9    day before about the documents that are still in dispute talk

10   about that they've been redacted -- they've been produced in a

11   less redacted form.  It doesn't tell me what was produced and

12   what still remains redacted.  I kind of have been able to look

13   at the documents that have been taken off the list and have a

14   pretty good idea of, you know, what was produced more recently

15   and what still remains redacted, but, you know, I didn't have

16   the most recent redacted version of the documents like I did

17   have in the initial motion.

18          The other is Exhibit 10, and I know this was probably

19   just, probably a production error.  Exhibit 10 doesn't have the

20   USA Bates numbers on them, at least the version that was

21   provided to me.  It's got other designating numbers on it.

22          What I did was I basically looked at all of those

23   documents, tried to figure out which ones were the ones that I

24   thought were the ones that were really being contested, and,

25   you know, for the most part, they seem to have the same issues

1    as in the Al Shimari ones that are in Exhibit 9, so I don't

2    think that is -- has any real impact, but I just want to let

3    the parties be aware of that.

4           Having looked at the documents, I mean, I think that

5    the largest number of documents that are being withheld relate

6    to the ISN serial numbers or other coding information, such as

7    the capture unit and things like that, just as far as the bulk

8    of the number of documents.  It looks like, at least my review,

9    that all the documents in Exhibit 8 except one that may be the

10   interpreter information, that one is a little bit unclear to

11   me, that half the documents in Exhibit 9 and about half the

12   documents in Exhibit 10 seem to be redactions that were really

13   just having to do with the ISN serial -- or portions of that

14   having to do with not the six-digit detainee number but the

15   other coded information.

16          The next largest group at least by my count are the

17   names of the detainees, the other names of the detainees, and I

18   think all of the documents in Exhibit 15 and possibly most, if

19   not all, of the documents in Exhibit 18 deal with that.  I

20   think Exhibit 18 may have two, unless you're talking about the

21   interpreter names or the interrogator names and not the

22   detainee names, but the statements from the actual detainees.

23   But that's sort of the, the grouping of numbers of documents.

24          And then the final is what really at least in my view

25   appears to be more substantive documents, the ones that -- the

1    documents in Exhibits 9 and 10 that relate to the methods of

2    the interrogating, the effectiveness, the plans, and the

3    assessments, those kinds of things, which certainly to me seem

4    to be the more substantive area in which there is a need to

5    have that information.

6           Again, as an initial matter, I mean, having looked at

7    the document requests, having looked at the information, having

8    considered what -- the generalized description of what is being

9    withheld, I am finding and I do believe that the information

10   that's being withheld is information that is relevant to a

11   claim or defense in the lawsuit, and it is proportional to the

12   needs of the case, that absent the assertion of the state

13   secrets privilege, that that information otherwise would need

14   to be produced.

15          So that is, I think, one element of what I have to

16   deal with today.  So basically, the information that has been

17   redacted, I think, based on my review of the pleadings, my

18   understanding of what is in that information, that it would

19   fall, and some of it may be more relevant than others, but I

20   think all of that information meets the relevance standard for

21   production in discovery.

22          But I also believe that if I find that the state

23   secrets privilege has been properly evoked as to certain

24   information, then I must deny the motion to compel.  So I don't

25   think I have any real discretion in dealing with that issue at

1   this point.

2          And then finally, you know, based on the current

3   status and, you know, obviously, this came about as a motion to

4   compel being filed, which prompted the United States to then

5   formally assert the state secret privilege, the reply coming in

6   and indicating that, you know, now that you've done that, the

7   case ought to be dismissed or, you know, sort of making that

8   overture in there, you know, that isn't the -- the request for

9   dismissal or the assertion that the case should be dismissed at

10  this point in time really wasn't part of the motion to compel.

11  You know, this is kind of a procedural issue, but I think it's

12  a significant one.

13         It really wasn't addressed directly in the motion to

14  compel, which means the parties haven't had an opportunity to

15  brief that, and obviously, I suspect plaintiffs' counsel will

16  want to have an opportunity to address that issue before it

17  gets decided, and that is an issue that's significant, I think

18  requires full briefing by all the parties and should be the

19  subject of a separate motion that is, you know, done on a

20  briefing schedule.

21         So, you know, I, I don't intend for this argument to

22  include the idea that if I grant the state secret or find that

23  the invocation of the state secret privilege has been

24  appropriate and deny the motion to compel based on that, then

25  we then are going to deal with the issue of the next step of

1   dismissal, because I don't think the parties have had an

2   opportunity to fully brief that, and I do think, obviously,

3   that would, that would not be an issue that I would make the

4   ultimate decision on, and it probably makes more sense for it

5   to be fully briefed and noticed for a hearing and more likely

6   than not be heard initially by the district judge, or if she

7   decides she wants me to hear it, I'll hear it and do a report

8   and recommendation, but I think the parties are entitled to

9   full briefing on that issue, and, you know, it's gotten

10  narrowed down to a certain limited area of information, too,

11  that is, is less than what it was when the initial motion got

12  filed.

13          So initially, I'd like to hear from the United States

14  about the detainee name issue.  Then I'll hear from any of the

15  other parties on any of the other issues that, that I've

16  discussed.

17          And I think probably pages 9 through 12 are, at least

18  from my, if I remember this right, were the, probably the pages

19  in the declaration that would deal with the information that I

20  think I am most concerned about.  Okay?  Thank you.

21          MR. SOSKIN:  Yes, Your Honor.  And I have page 9 of

22  the declaration and subsequent pages open before me now.  I

23  appreciate the attention to detail that the Court has provided

24  and the direction in focusing its attention on the particular

25  issues that you're most interested in, and with regard to the

1   Court's question about detainee inmates, I think it would be

2   helpful to take a step back and recognize that what Secretary

3   Mattis is asserting the privilege over and has in the previous

4   two assertions is the relationship between particular

5   interrogators and particular detainees.

6           The Department of Defense has not in general

7   protected the names of personnel in the abstract with

8   classification and state secrets, and it has not protected the

9   names of detainees in the abstract.  It is when those two are

10  joined together in the context of particular intelligence

11  interrogations that the most significant harms identified by

12  Secretary Mattis arise.

13          And, and in the explanation of harms in the

14  declaration, I think the key element to focus on is Secretary

15  Mattis's discussion of possible retribution.  In paragraph 9 on

16  page 9, about a dozen lines down, you will see the phrase "an

17  unacceptable risk of harm through possible retribution by the

18  detainees, groups to which the detainees belong, or other

19  sympathizers," and if you consider the meaning of what

20  "retribution" is, retribution is a very personal-type act.  It

21  is something for which the risk is greatly magnified, where

22  there is a one-to-one relationship, where you know that this is

23  the person who committed an act against me that I was

24  dissatisfied with, even an ordinary, lawful interrogation or an

25  insult on the street.  One does not respond with retribution to

1  a group at large in the same way that one does in a one-to-one

2  manner.

3       And here, where in order to satisfy the Court's

4  request that the United States release as much information as

5  possible during discovery, what the Department of Defense and

6  the United States have done is produce certain witness

7  statements that were created during the course of the

8  government investigations, and on those witness statements, it

9  has identified who the interrogation personnel giving the

10  statement were.

11       So the only element that can be withheld in that

12  context from the relationship between interrogation personnel

13  and particular detainees is the name of that detainee, and so

14  that name remains classified as the element that would

15  establish the connection between particular detainees and

16  particular personnel and make these risks associated with

17  retribution much more live and much more significant.

18       THE COURT:  Well, in each instance in which a

19  detainee has been -- a detainee's name has been redacted from

20  the documents, is that, in fact, in a document that identifies

21  the interrogator, or does the interrogator identify the

22  detainee and say that observed certain activity done maybe by

23  other interrogators?

24       MR. SOSKIN:  If the question is is the -- is it

25  always the statement of the interrogation personnel in

1    question, as opposed to does the document incidentally name an

2    interrogator or other personnel, I think both ways are the

3    case.

4              THE COURT:  Well, help me -- and maybe you can guide

5    me a little bit by looking at one example or one or two

6    examples of the actual -- and I guess these would probably be

7    in either Exhibits 9 or 10 --

8              MR. SOSKIN:  I do --

9              THE COURT:  And may be easier to do Exhibit 9 since

10   we can work with the USA Bates numbers on those --

11             MR. SOSKIN:  Yeah, I have copies of our most recent

12   productions with Bates numbers, but Mr. O'Connor is going to

13   help me out with exhibit numbered copied -- copies.

14             THE COURT:  Okay.

15             MR. SOSKIN:  So in Exhibit 9, is there a

16   particular --

17             THE COURT:  Well, I mean, I'm trying to understand

18   this issue where you say it's, well --

19             MR. SOSKIN:  So, for example, if we were to turn to

20   Bates No. USA52105, I think this is an example of a -- the name

21   of a detainee redacted, and that appears in Exhibit, Exhibit

22   18, okay.  In Exhibit 18.

23             THE COURT:  Exhibit 18, okay.  52- --

24             MR. SOSKIN:  -- -105.

25             So this document is a statement by Teresa Adams, so

1    that person is identified, and if in that document there was

2    discussion of a detainee who Ms. Adams was -- I think that's

3    Sgt. Adams -- was, you know, associated with an intelligence

4    interrogation of, of course we would withhold the detainee's

5    name because that would establish the relationship.  So that's

6    one example.

7            But in a specific example on 52105, it is the other

8    way.  Sgt. Adams is discussing interrogations, intelligence

9    interrogations conducted by another interrogator, and

10   identifies that interrogator by name, and because fewer

11   redactions would be required on this page and more information

12   would thus be producible by providing the interrogator name,

13   what has been redacted about two-thirds of the way down on the

14   right is a name, blank and his four associates, and that would

15   be the name of a detainee who we would be connecting to a

16   specific identified interrogator if we were to release that

17   name.

18           THE COURT:  Okay.  And it's the government's position

19   that each -- in each instance in which the detainee names have

20   been redacted, that the basis for doing that was because the

21   redaction of that detainee's name could be tied back to an

22   individual interrogator or personnel assisting in the

23   interrogation, and that's where the potential for retribution

24   comes into play?

25           MR. SOSKIN:  In an intelligence interrogation, that's

1  right, Your Honor.  And I have made an effort to read through

2  all of these redactions on several occasions, most recently in

3  the last day.  Nothing jumped out at me as an instance where

4  that was not the case, but if Your Honor has a specific concern

5  about one or more redactions, we would certainly take the time

6  to address that.

7          THE COURT:  Okay.  All right.  Well, I think I better

8  understand that issue now that it's in the context of these

9  reports in which you would be able to tie the actual personnel

10 involved in the interrogation with a specific detainee if that

11 specific detainee's name was not redacted.  Is that right?

12         MR. SOSKIN:  Right.  And I can give you an example of

13 the other kind that appears in the statements on Bates No.

14 52147.  It is the statement of Torin Nelson, and so here it is

15 a case where what is withheld is a detainee associated with the

16 specific person giving the statement.

17         THE COURT:  Um-hum.

18         MR. SOSKIN:  52147 is --

19         THE COURT:  Let me --

20         MR. SOSKIN:  Also is, also in Exhibit 18.

21         THE COURT:  Okay.

22         MR. SOSKIN:  And again, about two-thirds of the way

23 down on the right, you will see some blank spots that are --

24 reflect redactions.  There is a sentence that says:  I was

25 working on the special projects team and was handed a

1   high-value detainee, HVD, named, and then it is redacted.

2   On -- and, you know, that would clearly be an example where

3   the "I" is the name of the person giving the statement, and so

4   what has been withheld is the detainee that that person was

5   involved in an intelligence interrogation of.

6           THE COURT:  Okay.  Okay.  Thank you.  I think that

7   clarifies that issue for me.

8           MR. SOSKIN:  Okay.

9           THE COURT:  Thank you.

10          MR. SOSKIN:  Your Honor also raised the question of a

11  desire to review the most recent redacted versions of each of

12  these pages.

13          THE COURT:  Well, it's not a desire.  It was just

14  more of a limitation on what I was able to do.  If you wouldn't

15  mind, just give me an overall analysis of what, I mean, if

16  there was a specific type of information that you decided was

17  no longer necessary to redact or whether it was more of a

18  specific individualized, so, like, was it a certain part of the

19  ISN number that has now been released or, or -- that was at

20  least my sense from looking at the documents, but help me

21  understand what, what prompted the production of additional

22  information.

23          MR. SOSKIN:  I think that that was often the case.

24  What our review was able to do here was because we had a much

25  narrower number of pages for reviewers to focus on thanks to

1  the efforts of CACI counsel to cooperate with us in narrowing

2  the areas of dispute, you know, we were able to look at every

3  individual -- every individually segregable item and assess

4  would there be a national security harm to disclosing this

5  information.

6          As you know, documents are typically classified at

7  the highest level of any information that appears in them, and

8  then within documents, pages are classified in that way, and

9  within pages, paragraphs are classified in that way, and the

10  ability to go through and conduct a review of what needs to

11  remain protected, you know, cannot focus on individual words

12  when you have 50,000 pages at issue.  It can do so when you

13  have several hundred pages at issue.

14          And further, ascertaining whether detainee names, for

15  example, that appeared in some of these documents were

16  associated with an intelligence interrogation, as opposed to

17  just being a name, was also something that was more possible to

18  do in this kind of focus.

19          I think there were also some, you know, there were

20  some areas of -- there were some areas regarding the

21  interrogation, you know, certain details of interrogations or

22  information provided that were in the files that as we have

23  conducted reviews on DoD's reviewing personnel were able to

24  ascertain that this could be disclosed, because as you know,

25  and as I think it's *Abilt* makes clear in footnote 5 and other

1   state secrets cases make clear, it is not enough for the United

2   States to rely on the fact that something has been classified

3   in the past.

4                   THE COURT:  Right.

5                   MR. SOSKIN:  We must look at what the harms are going

6   forward.  So what's being released is the information that

7   would not reasonably be expected to cause a national security

8   harm were we to release it.

9                   THE COURT:  Okay.  Thank you.

10                  I'll hear from Mr. O'Connor first and anything the

11  plaintiffs want to say.

12                  MR. SOSKIN:  Thank you, Your Honor.

13                  THE COURT:  Thank you.

14                  MR. O'CONNOR:  Good morning, Your Honor.

15                  THE COURT:  Good morning.

16                  MR. O'CONNOR:  I want to join in Mr. Soskin's

17  comments about the helpfulness of your introductory comments

18  because it does focus and substantially shorten what I will

19  have to say today, which I think benefits everyone.  Building

20  on Your Honor's questions to Mr. Soskin, the -- he's right that

21  it's, the pairing seems to be the issue, and the things that

22  you've seen in the documents actually has come up a lot in this

23  case.

24                  I'll give you an example.  We take a deposition of an

25  interrogator, pseudonymously, of course, and he says:  I saw an

1    interrogator shove a detainee.

2         At that point, I've got a choice.  I can ask who the

3    interrogator is or I could ask who the detainee is, but I can't

4    ask both.  And so, so that's, I think, what you're seeing in

5    some of the documents is the witnesses making a statement about

6    an interrogator and his or her assigned detainee and they've

7    had to redact one or the other, and -- because that prevents

8    the pairing.  Either by themselves I don't think would be

9    something they would view as classified.

10        Your, Your Honor indicated no -- your sense is that

11   there's no dispute with the procedural requirements.  I think

12   that's right.  You know, facially, Secretary Mattis's

13   declaration meets the *Reynolds* standard, and we don't have any

14   data points to tell you that it doesn't.

15        We also agree that Your Honor's assessment of what

16   happens if the privilege is upheld is right.  I don't -- I

17   think that pretty much just ends the inquiry on the documents.

18   It leaves open an issue of what, what to do next, but, but

19   that, I think, is right.  I don't think there's a balancing at

20   that point.  If Your Honor upholds the privilege, we're done

21   talking about that document at least in terms of production.

22        Your Honor indicated your sense that ISNs and

23   detainee names were the most common issues of redacted

24   material.  Certainly ISNs, that's true.  I'm not sure if the

25   detainee names compared to the things in plaintiffs' detainee

1    files about interrogation plans, interrogation approaches,

2    approved methods, assessments, things like that, but I will say

3    that qualitatively, all those things in the detainee files are

4    much closer to the bull's eye, I would say in the bull's eye of

5    what we would need in this case compared to the others, which I

6    think are all relevant and necessary, but qualitatively, you

7    know, they would be my second and third points to make, not my

8    first.  It's really the detainee files and what happened in the

9    interrogation of these plaintiffs.

10          The --

11          THE COURT:  I was commenting on number and not

12   significance.

13          MR. O'CONNOR:  Right.

14          THE COURT:  I think looking at the number of pages,

15   at least from what I could tell, that of the 87 or 90 pages of

16   documents, the, the larger number or the largest of, if you put

17   it into three categories of ISN numbers and coding information,

18   capture places and, you know, pre-investigation or

19   pre-interrogation information and, you know, getting them

20   located and assigned to Abu Ghraib and those kinds of things,

21   that's one set of -- that I think the larger number of

22   documents relate to that information.

23          MR. O'CONNOR:  For sure.  I don't think there's any

24   doubt about that.

25          THE COURT:  Okay.

1          MR. O'CONNOR:  And the other thing I wanted to talk

2     about briefly is Your Honor's procedural point at the end of

3     your comments about how the request for dismissal was made on

4     reply, and surely that's right because the way to get a -- you

5     know, we don't get the state secrets invocation until we've

6     moved to compel, and so I understand Your Honor's point about

7     procedural posture.

8          The one thing I would say from a practical standpoint

9     is, you know, if Your Honor's thinking is, well, you know,

10    we're already -- we've already with the interrogator identities

11    said, well, you know, you can come back when those are all done

12    and you can raise whatever arguments you've got, we're okay

13    with that, and we're okay with Your Honor's approach here.

14         What I'd like to do is minimize the prospects that we

15    have to file an objection just to make sure no one says we

16    waived.  And so if Your Honor's thought is this motion isn't

17    seeking dismissal because the motion itself did not, then a

18    ruling that deals just with whether state secrets are properly

19    involved is, that's probably something that we don't need to

20    waste Judge Brinkema's time dealing with an objection to

21    something that we're basically okay with.

22         If there were a denial of dismissal in Your Honor's

23    order, then we'd probably start thinking, well, jeez, have we

24    waived something?

25         And so I think the approach that Your Honor is

1    talking about makes sense to us, that we -- it makes little

2    sense to say:  Let me look at these -- this state secrets

3    assertion and see what we should do with the case and then

4    later look at this one and then later look at the third one.

5    It should all be done at once.

6              THE COURT:  All right.

7              MR. O'CONNOR:  We all understand that.

8              THE COURT:  Okay.

9              MR. O'CONNOR:  If Your Honor has any further

10   questions, I'm happy to answer them.

11             THE COURT:  No, I really don't.  I mean, I think

12   I've, you know, considered pretty much everything I had to

13   consider so far coming in, but I'll -- anything that the

14   counsel for the plaintiffs would like to add at this point?

15             MS. HITTSON:  Thank you, Your Honor.  I want to echo

16   CACI and the government's comments that your opening remarks

17   were very helpful, and you already addressed the one point that

18   I planned to raise, which was that in CACI's reply brief, they

19   mentioned that the case should be dismissed, and we agree with

20   Your Honor's comments that this is procedurally improper and

21   should be addressed and it's on separate briefing.

22             Thank you.

23             THE COURT:  Anything else from the United States?

24             MR. SOSKIN:  Your Honor, I left just a little unclear

25   on whether you would like us to submit the newly redacted

1   versions.

2          THE COURT:  Well --

3          MR. SOSKIN:  We could certainly provide them, a

4   courtesy copy of them for you if you would like.

5          THE COURT:  No.  And I, you know, I think what the

6   next step is, the smaller group of documents that are redacted

7   will have to be presented along with the motion to dismiss in

8   that next stage.  I, I don't think I need to see them for the

9   purposes of my ruling on this issue today.

10          I think it's clear enough the way that it is, but I

11   would suggest that when this gets revisited in the follow-on

12   motion, that, you know, the most recent version of the redacted

13   documents and ones with the Bates numbers on them and, and the

14   other exhibit be provided so that Judge Brinkema can look at

15   the most recent versions and, and compare them.  Okay?

16          MR. SOSKIN:  Thank you, Your Honor.

17          THE COURT:  Well -- Mr. O'Connor?

18          MR. O'CONNOR:  Your Honor, could I ask one case

19   management question that's not related to this motion?

20          THE COURT:  Sure.

21          MR. O'CONNOR:  Last Tuesday, we filed a motion in

22   limine, and because it was non-dispositive, we served -- we

23   provided a hard copy only to Your Honor's chambers, but as it

24   turned out, Judge Brinkema didn't refer it.  Do we need to --

25   should we send her a copy, or did you send it over?

1          THE COURT:  We have delivered that copy to Judge

2    Brinkema's chambers, so --

3          MR. O'CONNOR:  That's -- that answered my question.

4          THE COURT:  And while that's -- that sometimes is a

5    gray area on, on a motion in limine, I would say most district

6    judges decide those motions unless it is based on a procedural

7    issue like limiting an expert testimony because the expert

8    didn't provide a report or something like that.

9          MR. O'CONNOR:  Understood.

10          THE COURT:  If, if it's something that is -- we all

11    know that Judge Brinkema is very on top of her document --

12    docket and stays involved in the case, and so she's probably

13    going to hear any kind of motions in limine and those kinds of

14    issues going forward, but you don't need to provide her with a

15    copy because we've given her ours.

16          MR. O'CONNOR:  That's what I wanted to know.  Thank

17    you.

18          THE COURT:  So that's been taken care of.

19          Well, I think the parties understand the basis for my

20    ruling on this, and I, I will try and make sure that the order

21    is clear that I'm not denying the motion to dismiss.  I'm only

22    denying the motion to compel, that I don't believe that there

23    was an appropriate request for further action based on the

24    motion to compel being denied, so that you won't need to appeal

25    this decision to preserve your rights to raise what issues that

24

1   you think need to be raised based on the denial of the motion

2   to compel.

3         Anything else this morning?

4         MR. SOSKIN:  No, Your Honor.  Thank you.

5         THE COURT:  Okay.  Thank you-all very much.  I

6   appreciate very good briefings on these issues, and again, I

7   commend the parties for working together, as you-all have done

8   throughout this case, and this -- this could be my last time

9   that you have to be in front of me.  I don't know.  I'm not --

10   no promises, but thank you very much.

11         MR. O'CONNOR:  I'd be surprised, Your Honor.

12         THE COURT:  Court will be adjourned.

13                 (Which were all the proceedings

14                  had at this time.)

15

16             CERTIFICATE OF THE TRANSCRIBER

17     I certify that the foregoing is a correct transcript from

18   the official electronic sound recording of the proceedings in

19   the above-entitled matter.

20

21                          /s/

                               Anneliese J. Thomson

22

23

24

25