**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

|  |  |  |
|---|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.    1:08-cv-0827 LMB-JFA |
| CACI PREMIER TECHNOLOGY, INC., | ) ) | |
| Defendant, | ) ) | **PUBLIC VERSION** |
| CACI PREMIER TECHNOLOGY, INC., | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| UNITED STATES OF AMERICA, and JOHN DOES 1-60, | ) ) ) | |
| Third-Party Defendants. | ) ) ) | |

**DEFENDANT/THIRD-PARTY PLAINTIFF CACI**
**PREMIER TECHNOLOGY, INC.'S MEMORANDUM IN SUPPORT**
**OF ITS MOTION TO DISMISS BASED ON THE STATE SECRETS PRIVILEGE**

John F. O'Connor (Va. Bar #93004)
Linda C. Bailey (admitted *pro hac vice*)
Molly B. Fox (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
(202) 429-3902 – facsimile
joconnor@steptoe.com
lbailey@steptoe.com
mbfox@steptoe.com

William D. Dolan, III (Va. Bar #12455)
LAW OFFICES OF WILLIAM D.
DOLAN, III, PC
8270 Greensboro Drive, Suite 700
Tysons Corner, Virginia 22102
(703) 584-8377 – telephone
wdolan@dolanlaw.net

*Counsel for Defendant CACI Premier Technology, Inc.*

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    RELEVANT STANDARD .................................................................................... 3

III.   RELEVANT FACTS ............................................................................................ 6

       A.    Discovery Denied to CACI PT Based on the State Secrets Privilege.................... 6

       B.    Facts Developed in Discovery Regarding Plaintiffs' Claims ............................... 8

             1.    Plaintiff Rashid ................................................................................ 9

             2.    Plaintiff Al-Ejaili ........................................................................... 11

             3.    Plaintiff Al Shimari........................................................................ 13

             4.    Plaintiff Al-Zuba'e......................................................................... 14

IV.    ANALYSIS......................................................................................................... 15

       A.    The Court's State Secrets Rulings Prevent CACI PT from Fairly Litigating
             Whether Plaintiffs Were Subjected to the Treatment they Allege...................... 15

             1.    Fair Litigation of the Merits Requires Full Development of Evidence of
                   Plaintiffs' Specific Treatment ................................................................ 15

             2.    Compliance with the Fourth Circuit's Remand Instructions Requires Full
                   Development of Evidence of Plaintiffs' Treatment. .................................. 20

       B.    The Court's State Secrets Rulings Prevent CACI PT from Fairly Litigating
             Whether CACI PT Personnel Were Involved in any Abuses that Plaintiffs Allege
             They Suffered............................................................................................ 21

             1.    The Court's State Secrets Rulings Deprive CACI PT of Access to
                   Interrogation Personnel Who Can Support Plaintiffs' Interrogators'
                   Denials of Conspiratorial Conduct or Having Been Aided in Mistreating
                   Plaintiffs ........................................................................................ 22

             2.    The Court's State Secrets Rulings Prevent CACI PT from Responding to
                   Plaintiffs' Attempted Use of the Taguba and Jones/Fay Reports in Support
                   of Their Conspiracy Claims ................................................................ 23

       C.    The Court's State Secrets Rulings Prevent CACI PT from Fairly Litigating
             Whether the Nature of Any Involvement By CACI PT Personnel in Plaintiffs'
             Treatment Gives Rise to Liability......................................................... 25

1.      The Court's State Secrets Rulings Prevent the Court from Complying with the Fourth Circuit's Remand Instructions and Prevent CACI PT from Fairly Litigating the Justiciability of Plaintiffs' Claims .......................... 25

2.      The Court's State Secrets Rulings Prevent CACI PT from Fairly Litigating Its Derivative Sovereign Immunity Defense............................................. 26

3.      The Court's State Secrets Rulings Prevent CACI PT from Fairly Litigating Whether *Respondeat Superior* Liability Applies ..................................... 27

4.      The Court's State Secrets Rulings Effectively Deny CACI PT the Right to Pursue Its Third-Party Claims Against the John Doe Defendants ............ 29

V.     CONCLUSION ............................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abilt v. CIA,*
  848 F.3d 305 (4th Cir. 2017) ............................................................................1, 4

*Agosto v. INS,*
  436 U.S. 748 (1978) .............................................................................................17

*Al Shimari v. CACI Premier Tech., Inc.,*
  840 F.3d 147 (4th Cir. 2016) ...................................................................... *passim*

*Aziz v. Alcolac, Inc.,*
  658 F.3d 388 (4th Cir. 2011) ...............................................................................21

*Butters v. Vance Int'l, Inc.,*
  225 F.3d 462 (4th Cir. 2000) ...............................................................................27

*Cunningham v. Gen. Dynamics Info. Tech., Inc.,*
  888 F.3d 640 (4th Cir. 2018) ...............................................................................26

*Djondo v. Holder,*
  496 F. App'x 338 (4th Cir. 2012) ........................................................................17

*El-Masri v. United States,*
  479 F.3d 296 (4th Cir. 2007) ...................................................................... *passim*

*Huff v. Marine Tank Testing Corp.,*
  631 F.2d 1140 (4th Cir. 1980) .............................................................................27

*Mathews v. Eldridge,*
  424 U.S. 319 (1978) ...............................................................................................3

*NVR, Inc. v. Just Temps, NC,*
  31 F. App'x 805 (4th Cir. 2002) ..........................................................................27

*Presbyterian Church of Sudan v. Talisman,*
  582 F.3d 244 (2d Cir. 2009) ................................................................................21

*Standard Oil Co. v. Anderson,*
  212 U.S. 215 (1909) .............................................................................................28

*United States v. Moussaoui,*
  382 F.3d 453 (4th Cir. 2004) ...............................................................................17

*United States v. Savage Truck Line, Inc.*,
  209 F.2d 442 (4th Cir. 1953) ................................................................................29

*Uptagrafft v. United States*,
  315 F.2d 200 (4th Cir. 1963) ................................................................................29

*White v. Bethlehem Steel Corp.*,
  222 F.3d 146 (4th Cir. 2000) ..........................................................................27, 28

## I.     INTRODUCTION

In remanding this action, the Fourth Circuit directed this Court to assess justiciability by analyzing "the evidence regarding the specific conduct to which the plaintiffs were subjected and the source of any direction under which the acts took place," *Al Shimari v. CACI Premier Tech., Inc.*, 840 F.3d 147, 160-61 (4th Cir. 2016) ("*Al Shimari IV*").  Unsurprisingly, CACI PT sought to compel the United States to produce information identifying the personnel who participated in Plaintiffs' interrogations, as well as documents detailing authorized interrogation approaches for Plaintiffs' interrogations and contemporaneous reports about events occurring in those interrogations.

In response, the United States – on three occasions – asserted the state secrets privilege with respect to the information and documents sought by CACI PT.  The Fourth Circuit has mandated a three-step analysis for resolution of a state secrets question:

> First, "the court must ascertain that the procedural requirements for invoking the state secrets privilege have been satisfied."  Second, "the court must decide whether the information sought to be protected qualifies as privileged under the state secrets doctrine."  Third, if the "information is determined to be privileged, the ultimate question to be resolved is how the matter should proceed in light of the successful privilege claim."

*Abilt v. CIA,* 848 F.3d 305, 311 (4th Cir. 2017) (quoting *El-Masri v. United States,* 479 F.3d 296, 304 (4th Cir. 2007)).

The Court has previously determined that the procedural requirements for invocation of the state secrets privilege were satisfied and the information sought to be disclosed is properly privileged.  Dkt. #791, 850, 886, 921, 1012.  In the Court's first ruling upholding the state secrets privilege, the Court directed CACI PT to take the permitted discovery and return if, after taking the discovery, CACI PT "believes its ability to defend against plaintiffs' claims has been denied."  Dkt. #791 at 2.  This is CACI PT's return.  This motion calls on the Court to undertake

the third step of the analysis and determine whether the matter should proceed.  Here again, Supreme Court and Fourth Circuit precedent is clear: if the state secrets privilege has been successfully invoked, the information sought is absolutely protected from disclosure.  *El-Masri,* 479 F.3d at 305 (quoting *United States v. Reynolds,* 345 U.S. 1, 9 (1953)).

The Fourth Circuit has recognized three circumstances in which the privileged information is so central to the litigation that dismissal is required.  *El-Masri,* 479 F.3d at 309. One of those circumstances is when the unavailability of the privileged information unfairly cripples a defendant's capability in mounting a defense.  As the Fourth Circuit has held, if "the defendants could not properly defend themselves without resort to privileged evidence," the case should be dismissed.  *Id.*  That standard is satisfied here: CACI PT cannot properly defend itself without using the privileged information.

In a detainee abuse case, no information is more crucial than the identity, credibility and testimony of the personnel who actually participated in the Plaintiffs' interrogations (CACI PT's alleged co-conspirators), and the records of those interrogations.  Those personnel are the *only* witnesses who can rebut Plaintiffs' claims of abuse based on personal knowledge.  Those records are the *only* contemporaneous and official records of the treatment approved by the United States for Plaintiffs' interrogations and the content of those interrogations.  The state secrets privilege, however, prohibits CACI PT from learning the witness identities, corroborating their anonymous testimony, pursuing further discovery based upon their testimony, calling them as witnesses at trial, using the interrogation records to refute Plaintiffs' claims, or impeaching Plaintiffs' testimony.  Equally problematic, the state secrets privilege makes it impossible for this Court to discharge the remand directive of the Fourth Circuit.  Under these circumstances, to allow this case to proceed would make a mockery of CACI PT's due process rights.

Due process requires, among other things, the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333 (1978).  No one could reasonably conclude that CACI PT can, under the circumstances imposed here, defend itself at trial in a *meaningful* manner.  *CACI PT cannot even call any of its own employees who participated in Plaintiffs' interrogations as witnesses to testify at trial.*  The state secrets privilege prevents CACI PT from learning their identities and calling them at trial to contradict Plaintiffs' claims.  That restriction alone is inherently incompatible with a proper defense.

The state secrets privilege also prevents CACI PT from fairly litigating other defenses such as immunity from suit or liability under the *respondeat superior* doctrine.  The privilege effectively precludes CACI PT from pursuing its third-party claims against any John Doe defendants who may have mistreated Plaintiffs.

CACI PT is accused in this action of participating in the heinous abuses at Abu Ghraib prison generally and the abuse of the Plaintiffs specifically.  Believing those allegations are demonstrably false, CACI PT has from Day 1 in this case advocated full, unrestricted and transparent discovery of all relevant information.  Most of that information was in the exclusive possession of the United States.  The state secrets privilege, as asserted here, precludes anything remotely resembling meaningful discovery of highly relevant information.  And CACI PT's ability to use at trial what incomplete and diluted evidence was produced is so degraded as to tie not just one, but both of CACI PT's hands behind its back.  Since the state secrets privilege prevents CACI PT from getting a fair day in court, dismissal is warranted.

## II.    RELEVANT STANDARD

"[S]ome matters are so pervaded by state secrets as to be incapable of judicial resolution once the privilege has been invoked."  *El-Masri*, 479 F.3d at 306 (citing *Totten v. United States,*

92 U.S. 105, 107 (1875), and *Reynolds*, 345 U.S. at 11 n.26).  When protection of state secrets deprives the parties of information central to the litigation of the case, dismissal is required because the plaintiff's "personal interest in pursuing his civil claim is subordinated to the collective interest in national security." *Abilt*, 848 F.3d 305, 318 (4th Cir. 2017); *see also El-Masri*, 479 F.3d at 306, 312 (if the privileged state secrets are the subject matter of the suit or are so central to its resolution that the case cannot be fairly litigated without disclosing them, dismissal is required).  In such cases, "the fundamental principle of access to court must bow to the fact that a nation without sound intelligence is a nation at risk." *Id.* (quoting *Sterling v. Tenet*, 416 F.3d 338, 348 (4th Cir. 2005)).  "[F]or purposes of the state secrets analysis, the 'central facts' and 'very subject matter' of an action are those facts that are essential to prosecuting the action or defending against it." *El-Masri*, 479 F.3d at 309.

*El-Masri* is directly on point: a detainee plaintiff alleging that he was mistreated while in U.S. custody.  El-Masri asserted a *Bivens* claim and two Alien Tort Statute claims against CIA personnel and government contractors, alleging that he had been subjected to the United States' extraordinary rendition program and "was detained and interrogated in violation of his rights under the Constitution and international law." *Id.* at 299.  The United States invoked the state secrets privilege regarding its extraordinary rendition program and El-Masri's treatment pursuant to that program. *Id.* at 301.  The United States' invocation of privilege included the "means and methods" of El-Masri's rendition and treatment. *Id.* at 311.  El-Masri argued that his case could go forward, notwithstanding the United States' invocation because "CIA rendition operations, including El-Masri's alleged rendition, had been widely discussed in public forums." *Id.* at 301.

The Fourth Circuit rejected El-Masri's arguments.  The court held that "central facts" regarding El-Masri's claims were not "his allegations that he was detained and interrogated

under abusive conditions, or that the CIA conducted the rendition program that has been acknowledged by United States officials." *Id.* at 309. Rather, the "central facts" were "the roles, if any, that the defendants played in the events he alleges." *Id.* To make out his own *prima facie* case, the court held that El-Masri would have to "produce admissible evidence not only that he was detained and interrogated, but that the defendants were involved in his detention and interrogation in a manner that renders them personally liable to him." *Id.* The court held that dismissal was required because "El-Masri would need to rely on witnesses whose identities, and evidence the very existence of, must remain confidential in the interest of national security." *Id.*

Beyond El-Masri's inability to make out a *prima facie* case without implicating state secrets, the court also affirmed dismissal because the defendants could not fairly defend themselves without use of privileged state secrets. As the court explained:

> Furthermore, if El-Masri were somehow able to make out a prima facie case despite the unavailability of state secrets, the defendants could not properly defend themselves without using privileged evidence. ***The main avenues of defense available in this matter are to show that El–Masri was not subject to the treatment that he alleges; that, if he was subject to such treatment, the defendants were not involved in it; or that, if they were involved, the nature of their involvement does not give rise to liability.*** Any of those three showings would require disclosure of information regarding the means and methods by which the CIA gathers intelligence. If, for example, the truth is that El-Masri was detained by the CIA but his description of his treatment is inaccurate, that fact could be established only by disclosure of the actual circumstances of his detention, and its proof would require testimony by the personnel involved.

*Id.* (emphasis added). These principles apply with full force to Plaintiffs' claims against CACI PT and CACI PT's ability to defend against them.

III.    **RELEVANT FACTS**

A.    **Discovery Denied to CACI PT Based on the State Secrets Privilege**

CACI PT sought discovery from the United States to identify the persons with whom Plaintiffs interacted at Abu Ghraib, the records of Plaintiffs' interrogations and detention, and any information regarding their experiences at Abu Ghraib prison.   CACI PT sought this discovery for several reasons: (1) to develop facts for its merits defense; (2) to comply with the Fourth Circuit's remand directions that the Court assess justiciability based on a "discriminating analysis" of "the evidence regarding the specific conduct to which the plaintiffs were subjected and the source of any direction under which the acts took place," *Al Shimari IV*, 840 F.3d at 160-61; (3) to develop facts for other defenses such as immunity and preemption; and (4) to develop evidence to pursue third-party claims against the United States and any John Doe defendants who actually mistreated Plaintiffs.

In response to CACI PT's discovery requests, the United States asserted the state secrets privilege to deny CACI PT discovery of documents from Plaintiffs' detainee files that detail plans, reports, and interrogation approaches approved and used for Plaintiffs' interrogations.   In his Declaration asserting the state secrets privilege, Secretary Mattis described the documents being withheld as follows:

> I am asserting the state secrets privilege over (i) counterintelligence (CI) reports, (ii) summary interrogation reports containing analyst and interrogator intelligence focus comments, (iii) interrogation collector comments, (iv) detainee interrogation plans, (v) approaches used during interrogation; (vi) observations related to the mood/attitude of the detainee, (vii) assessments by the interrogator regarding the truthfulness of the detainee, (viii) interrogator recommendations and/or suggested future approaches that may work with the detainee, and (ix) suggestions for when future interrogations should occur, except where such information has been produced in discovery pursuant to a determination by DoD personnel that disclosure would not reasonably be expected to cause serious damage to the national security of the United

> States. . . .  Such discrete information, properly classified and
> protected from disclosure as explained below, is contained within
> the written interrogation plan and interrogation reports for Plaintiff
> Al Shimari, and the interrogator notes for Plaintiffs Al Shimari and
> Al Zubae.  In my judgment and for the reasons explained below,
> unauthorized disclosure of this information reasonably could be
> expected to cause serious damage to the national security of the
> United States.

Ex. 30 at ¶ 6 (Bates numbers omitted).  The withheld documents include the "tailored

interrogation plan actually used for a lengthy interrogation of Plaintiff Al Shimari," the only

interrogation of Al Shimari that the United States has identified (*id.* at ¶ 19).  The Court upheld

the United States' assertion of the state secrets privilege.  Dkt. #1012.

In addition, the United States twice asserted the state secrets privilege to withhold the

identities of all military and civilian interrogation personnel (*i.e.*, interrogators, analysts, and

translators) participating in Plaintiffs' intelligence interrogations.[1]  Sustaining the United States'

state secrets assertions (Dkt. #791, 850, 886, 921), the Court ruled the parties may take

depositions of participants in Plaintiffs' interrogations pseudonymously by telephone, and the

United States has directed the pseudonymous witnesses to withhold information that could

identify themselves or other interrogation personnel.  As a result, CACI PT has been denied the

following discovery:

> ➢ The identities of interrogators, analysts, and translators who participated in
> Plaintiffs' interrogations (Dkt. #791, 886);
>
> ➢ Background information about Plaintiffs' interrogators, analysts, and translators,
> including but not limited to how long the interrogators served in the U.S. Army,
> any military awards or medals they received, the characterization of their military
> discharge, their education level, their employment history, other job duties they
> had at Abu Ghraib prison, and their interrogation experience prior to Abu Ghraib
> (Ex. 1 at 10-14, 16, 131; Ex. 2 at 16-20, 22; Ex. 3 at 11-12, 15-16, 18; Ex. 4 at 14-

---

[1] The United States' first assertion of the state secrets privilege encompassed the identities of interrogators to the extent they could be connected to a specific detainee.  The United States' second assertion encompassed non-interrogators, such as translators, who nonetheless qualified as "interrogation support personnel."

16, 18-19; Ex. 5 at 14-15, 17-22, 147; Ex. 6 at 16-20, 21-22, 120; Ex. 7 at 14-26, 33, 50, 110);

➢ Whether CACI Interrogator A, one of two CACI PT interrogators identified as having participated in an interrogation of a Plaintiff, was among the few CACI PT employees found or suspected to have committed misconduct in the Taguba and/or Jones/Fay reports (Ex. 1 at 14-16, 208);

➢ Whether CACI Interrogator A served on the day shift or the night shift at Abu Ghraib prison; when he stopped going inside the Hard Site; and whether the interrogation rules of engagement changed while he was at Abu Ghraib prison (Ex. 1 at 23-24, 41, 68, 91);

➢ The reasons why CACI Interrogator A is confident that he did not interrogate Al Shimari after Al Shimari's December 15, 2003 interrogation (Ex. 1 at 86-88);

➢ ████████████████████████████████████████████████████

➢ Testimony about when forced nudity occurred at Abu Ghraib prison and who authorized it (Ex. 7 at 36);

➢ ████████████████████████████████████████████████████

➢ The identities of other interrogation personnel with whom the pseudonymous interrogators worked (*See, e.g.*, Ex. 1 at 48-55; Ex. 2 at 32, 34, 39-40; Ex. 3 at 28-29, 48; Ex. 4 at 31, 34-35, 37-39; Ex. 5 at 36-37, 41; Ex. 6 at 38-39, 147-49; Ex. 7 at 44-46; and

➢ The identities of the pseudonymous interrogators' section leaders and supervisors (Ex. 5 at 41; Ex. 6 at 147-49).

**B.    Facts Developed in Discovery Regarding Plaintiffs' Claims**

The facts developed in discovery demonstrate that contemporaneous records regarding Plaintiffs' interrogations and disclosure of the identities and backgrounds of interrogation personnel interacting with Plaintiffs are essential to any fair litigation of this case. The discovery taken in this case shows intractable conflicts between Plaintiffs' testimony and that of their interrogators as to the events occurring during Plaintiffs' interrogations. These conflicts can be resolved only by presenting to the jury contemporaneous records of Plaintiffs' interrogations and

eyewitnesses whose credibility the jury can assess by viewing their demeanor and learning facts about their backgrounds.

Plaintiffs allege they were mistreated at Abu Ghraib prison in violation of international law, and seek to hold CACI PT liable for their alleged injuries. Importantly, Plaintiffs abandoned any allegation that CACI PT personnel directly mistreated them,[2] and the Court dismissed Plaintiffs' direct claims. Only claims seeking to hold CACI PT liable for injuries inflicted by others on theories of co-conspirator and aiding and abetting liability remain.

Plaintiffs cannot identify any interaction they had with a CACI PT employee. Ex. 9 at 7; Ex. 12 at 6; Ex. 16 at 7-8; Ex. 18 at 7. When deposed, Plaintiffs could not testify to any interaction with CACI PT personnel, or to any facts implicating CACI PT personnel directly or indirectly in any abuse they allegedly suffered. Ex. 10 at 148-49; Ex. 13 at 9-10, 66, 73, 194-96, 216; Ex. 19 at 30-31, 33, 36, 44-45, 56-58, 64, 65, 81.

### 1.      Plaintiff Rashid

Rashid knows of no interactions between himself and CACI PT employees nor of any participation by CACI PT employees in the mistreatment he alleges. He has no knowledge of conspiratorial conduct by CACI PT employees or of assistance or encouragement given by CACI PT employees to those he alleges mistreated him. Ex. 10 at 148-49. Rashid testified that he was abused during his first and only interrogation at the Abu Ghraib Hard Site.[3] He claims that his only interrogation at the Hard Site was conducted by two American civilians, a blonde man and a

---

[2] *See* 9/22/17 Tr. at 15 ("We are not contending that the CACI interrogators laid a hand on the plaintiffs."); *see also* Dkt. #639 at 31 n.30 (the "gravamen of Plaintiffs' complaint is conspiracy and aiding and abetting"); *id.* at 1 ("Plaintiffs sued CACI under well-established theories of accessory liability.").

[3] The Hard Site at Abu Ghraib was the brick-and-mortar prison on the site. Other detainees were held at tent camps.

man who wore his hair in a dark braid.  *Id.* at 101.[4]  Rashid testified that one of the interrogators repeatedly put out cigarettes on Rashid's buttocks.  *Id.* at 104-06.  Rashid's interrogatory responses allege that he was beaten during this interrogation.  Ex. 9 at 6.  Rashid further testified that the interrogators hung him from a ceiling fan by a rope tied around his chest for his interrogation.  Ex. 10 at 99-101.  He also testified that while he was hung from the ceiling fan, one of the interrogators brandished a gun that accidentally went off and shot him in the leg.  *Id.* at 97-103.[5]  Rashid further testified that after being shot, two MPs dragged him by the rope around his chest to an isolated room where he was kept for seventeen days.  *Id.* at 103-05.  He testified that after moving to a tent camp he was interrogated a second time by one of the interrogators from his first interrogation, but was not mistreated.  *Id.* at 132-35.

The United States' witnesses and records tell a different story.  According to the United States, Rashid was interrogated only once, not by two civilians but by Army Interrogator H and Army Interrogator I.  Ex. 11 at 6; Dkt. #897 at 2.  Army Interrogator H remembers Rashid's interrogation and testified that it occurred at the Hard Site.  Ex. 6 at 59, 67.  He testified that the interrogation involved simply asking direct questions and recording Rashid's answers, with no mistreatment of Rashid, and that Rashid admitted that the group he had been with tried to kill U.S. solders by detonating an IED as a U.S. Army convoy passed.  *Id.* at 62-72, 74-77.  Army Interrogator H also testified that there was no ceiling fan in the location where he interrogated Rashid and that Rashid was not shot.  *Id.* at 75-76.  Army Interrogator H further testified that he

---

[4] CACI PT repeatedly asked interrogators during pseudonymous depositions whether they were aware of *any* male interrogators at Abu Ghraib prison who wore their hair in a braid or ponytail.  All witnesses testified that they were unaware of any such person.  Ex. 1 at 98-99; Ex. 2 at 58; Ex. 5 at 114; Ex. 6 at 66; Ex. 7 at 72-73.

[5] Rashid did not claim to have been shot in his interrogatory responses, causing the Court to counsel Plaintiffs that alleging a gunshot wound at trial might cause Rashid credibility problems.  8/2/18 Tr. at 6-7.  Rashid's interrogatory responses also do not allege that he was burned with cigarettes.

did not enter into any agreement with CACI PT personnel to abuse detainees, that no one from CACI PT directed him to "assault, abuse or otherwise mistreat Rashid." *Id.* at 92-93.

Army Interrogator I did not remember Rashid's interrogation. Ex. 7 at 64-67. He testified, however, that the types of abuses Rashid alleged never occurred in any interrogation in which he participated. *Id.* at 76-92. Indeed, Army Interrogator I never saw a detainee mistreated during an interrogation. *Id.* at 92. Army Interrogator I testified that, for interrogations in which he participated, CACI PT personnel had no role in dictating the detainees' conditions of confinement or treatment, selecting interrogation approaches, or deciding how interrogation participants would conduct themselves. *Id.* at 60-62. Army Interrogator I also denied conspiring with CACI PT personnel or anyone else to mistreat detainees and denied being aided or assisted by CACI PT personnel in mistreating detainees. *Id.* at 98. ███████████████

████████████████████████████████████████████████████

████████████████████████████████████

## 2.    Plaintiff Al-Ejaili

Plaintiff Al-Ejaili testified that he was interrogated 10-12 times at the Hard Site and that he had a total of 10-14 different interrogators question him. Ex. 13 at 78, 80. He testified that he was beaten, punched, kicked, and slapped during most of these interrogations. *Id.* at 78-79, 82. Al-Ejaili further testified, however, that he could not identify any of his interrogators because he generally was hooded for interrogations. *Id.* at 86. Al-Ejaili acknowledged that he had no basis for concluding that CACI PT personnel were involved in his alleged mistreatment. *Id.* at 9-10, 66, 73, 194-96, 216. When asked whether he had any information about CACI PT personnel giving instructions or recommendations regarding his treatment, Al-Ejaili admitted that he did not. *Id.* at 196 ("No, I don't have any specific information.").

The United States represents that its records do not show a single intelligence interrogation of Al-Ejaili. Ex. 14 at 5, 16. ████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ The U.S. interrogatory response notes that there is some indication in a statement by Sergeant Joseph Beachner, one of the four military intelligence soldiers permitted access to Al-Ejaili, that CACI PT interrogator Steven Stefanowicz may have questioned Al-Ejaili during IP Roundup,[6] but that there was no violation of the interrogation rules of engagement during this interaction. Ex. 14 at 16. Indeed, Sergeant Beachner provided a written statement in which he stated:

> ██████████████████████████ when I found this out, I told him to stop because this was my detainee. He stopped. There was nothing violating the IROE in that particular Interrogation.

Ex. 15 at 2; Ex. 8 at 30-31.

The parties deposed Sergeant Beachner, but the United States forbid him from saying anything ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

---

[6] "IP Roundup" is short for "Iraqi Police Roundup," and arose when a detainee used a pistol smuggled into the Abu Ghraib hard site by an Iraqi police officer to shoot a soldier. After the shooting, military and civilian interrogators questioned Iraqi police officers and detainees to determine whether other deadly weapons had been smuggled into the hard site.

████████████████████████████████████████████████████████

██████████████████████████████████████████████

### 3.     Plaintiff Al Shimari

Plaintiff Al Shimari testified that he was interrogated many times at Abu Ghraib and could remember three of the interrogations.  Ex. 17 at 41-67, 85-86.  He alleges that each interrogation had a different interrogator.  *Id.* at 76.  According to Al Shimari's testimony, he was required to kneel on sharp rocks during the first interrogation and the interrogator pressed his foot against Al Shimari's head and pulled on him.  *Id.* at 46-49.  Al Shimari testified that he was hooded for this interrogation and does not know who the participants were.  *Id.* at 46.  Al Shimari testified that the interrogator for his second interrogation was a male wearing his hair in a ponytail,[7] and that he was required to stand on his toes with his face against the wall and a guard pushed him against the wall.  *Id.* at 54-57.  Al Shimari further testified that during his third interrogation, the interrogator threatened to open a window and let a dog come in and bite Al Shimari, although the dog was never actually allowed in the room.  *Id.* at 63-66.

The United States has a different version of the facts.  According to the United States, Al Shimari was interrogated just once, by CACI Interrogator A and Army Interrogator B.  Ex. 14 at 4-5.  ████████████████████████████████████████████████████████

████████████████████████████████████  but testified that the types of abuse he alleged did not occur during any interrogation in which they participated.  Ex. 1 at 93-106; Ex. 2 at 55-56, 58-62.  CACI Interrogator A further testified that ████████████████████████████████████████

████████████████████████████████  nor in dictating detention conditions for detainees who were

---

[7] Multiple pseudonymous interrogators testified that they do not recall any male interrogators at Abu Ghraib prison who wore their hair in a braid or ponytail.  *See* note 4.

assigned to him for interrogation. Ex. 1 at 74, 88-90. Army Interrogator B testified that he never saw any abuse of a detainee. Ex. 2 at 85.

#### 4.   Plaintiff Al-Zuba'e

Al-Zuba'e testified that he was interrogated five different times at the Abu Ghraib Hard Site. He testified that the first, second, and fourth interrogations were by a group of three civilians, and that he was not mistreated during any of these interrogations. Ex. 19 at 70-73, 85-90, 100-02. Al Zuba'e testified that he does not know who participated in his third interrogation because he was hooded, but that other than the room being cold he was not mistreated. *Id.* at 94-97. Al-Zuba'e testified that his fifth interrogation was by a different team of three civilians and that he was hit by one or more of them during the interrogation. *Id.* at 105-07. Al-Zuba'e testified that he was mistreated by MPs outside of interrogations, but that he is not aware of anyone directing the MPs to mistreat him. *Id.* at 76-81, 91-93, 103. Al-Zuba'e acknowledged in his deposition that he had no basis for concluding that CACI PT personnel had *any* involvement in the mistreatment he alleges. *Id.* at 30-31, 33, 36, 44-45, 56-58, 64, 65, 81. Indeed, Al-Zuba'e summed up his knowledge of matters relating to CACI PT thusly: "I don't know anything about CACI or anything." *Id.* at 30.

While Al-Zuba'e testified that every interrogator he saw was a civilian, the United States' records contradict his testimony. According to the United States, Al-Zuba'e was the subject of three interrogations at Abu Ghraib prison, and that five of the six participants were soldiers: (1) Army Interrogator C and Army Interrogator F on November 7, 2003; (2) Army Interrogator D and Army Interrogator E on November 18, 2003; and (3) CACI Interrogator G and Army Interrogator B on December 23, 2003. Ex. 14 at 5.[8] CACI PT took pseudonymous depositions

---

[8] The United States initially designated Interrogators F and G as "Unidentified," but later confirmed that "F" had been a soldier and "G" had been a CACI PT employee. Dkt. #897 at 2.

of four of the six interrogators.[9]   None of them remembered their specific interrogation of Al-

Zuba'e, but testified that they never saw the types of abuses he alleged inflicted on any detainee,

and that no such abuses occurred in connection with their interrogations.  Ex. 3 at 57-62; Ex. 5 at

54-59; Ex. 4 at 62-66, 184-85; Ex. 2 at 69-71, 85.   The pseudonymous interrogators denied

entering into agreements with CACI PT personnel or receiving assistance from CACI PT

personnel to abuse detainees.  Ex. 3 at 64-67; Ex. 5 at 38, 44-45, 54, 63-65; Ex. 4 at 62, 69, 184-

85; Ex. 2 at 69-71, 85.


IV.     **ANALYSIS**

>    A.     **The Court's State Secrets Rulings Prevent CACI PT from Fairly Litigating
>           Whether Plaintiffs Were Subjected to the Treatment they Allege**

>>    1.     **Fair Litigation of the Merits Requires Full Development of Evidence
>>           of Plaintiffs' Specific Treatment**

The first avenue of defense in a detainee abuse claim involves challenging whether the

plaintiff was subjected to the treatment he alleges.   *El-Masri*, 479 F.3d at 309.   Whether

Plaintiffs were mistreated as they allege is a disputed issue in this case.   For example, Rashid

alleges that at his one interrogation at the Hard Site he was hung from a ceiling fan, beaten,

burned on his buttocks with cigarette butts, and shot with a pistol.   *See* Section III.B.1, *supra*.[10]

Rashid has no corroboration for his allegations, and will be subject to a spoliation instruction

because he failed to retain and produce his medical records.   Dkt. #891; 8/2/18 Tr. at 5-6.

---

[9]   The United States could not locate Army Interrogator D.   Because the Court allowed the
United States to withhold Army Interrogator D's identity, CACI PT cannot even try to locate
him.  The United States located CACI Interrogator G and CACI PT is working with the United
States to procure counsel for him and to schedule his deposition.   Undersigned counsel has not
been advised of his identity and the deposition will proceed pseudonymously.   CACI PT will
supplement this motion to the extent his deposition yields information relevant to this motion.

[10]   Rashid did not list being burned with cigarettes or shot with a gun when responding to
an interrogatory asking him to describe all injuries he suffered while in U.S. custody.

CACI PT took pseudonymous depositions of Army Interrogator H and Army Interrogator I, the interrogators the United States represents conducted the sole interrogation of Rashid. Both soldiers testified that Rashid was not mistreated during his interrogation. Rather, Army Interrogator H testified that Rashid's interrogation involved simple questions and answers, with no physical abuse or other mistreatment, and that Rashid readily admitted that the group he was with tried to blow up a U.S. Army convoy. Army Interrogator I testified that he never participated in an interrogation in which a detainee was abused, and that the conduct alleged by Rashid never occurred in any interrogation in which he participated. *See* Section III.B.1, *supra*. Clearly, somebody is lying. The other Plaintiffs' testimony similarly presents irreconcilable conflicts with the testimony of their interrogators. *See* Sections III.B.2-III.B.4, *supra*.

If this case proceeds to a trial, the jury would have to resolve the conflicts in the witnesses' testimony, but the Court's rulings sustaining the state secrets privilege unfairly and severely prejudice CACI PT's ability to participate in this credibility battle. Most obviously, Plaintiffs presumably will tell their stories live or by video link, allowing the jury to view their demeanor and consider their backgrounds in assessing their credibility. Plaintiffs' interrogators, by contrast, will have their identities concealed from the jury. Thus, the credibility battle begins with CACI PT's ability to present evidence degraded because the jury will not be permitted to know the identities of Plaintiffs' interrogators, and their testimony will proceed either by the serial reading of deposition transcripts to the jury or some sort of testimony-in-disguise to which the United States may well object and which may or may not be logistically feasible.

Moreover, the Court's rulings regarding upholding the state secrets privilege for interrogator identities places CACI PT in the impossible situation of having to defend against liability allegedly based on the conduct of one CACI PT interrogator whose identity is unknown

to CACI PT's litigation counsel, and one CACI PT interrogator who identified himself to CACI PT's litigation counsel but who CACI PT cannot identify in its presentation of evidence due to the privilege.   CACI PT is not aware of a single reported case in which a party has been so forcibly segregated from its own former employees who are both the eyewitnesses to rebut the plaintiffs' claims and the alleged source of the employer's liability.   In addition, the United States has no ability to use compulsory process to require the attendance of pseudonymous CACI PT and Army interrogators unless he or she happens to live, work, or transact business within the subpoena power of the Court.   Even that is highly doubtful if the United States is dismissed as a party.   This is not a criminal case where there is a Sixth Amendment compulsory process right and where a district court can reach beyond the boundaries of its own district to issue a testimonial writ.   *See United States v. Moussaoui,* 382 F.3d 453, 466 (4th Cir. 2004).   Thus, to the extent that the Court may envision mitigating some of the prejudice to CACI PT by directing the United States to bring pseudonymous witnesses to trial in disguise, such a plan faces intractable obstacles.

It is well established that the inability to view witnesses and assess their demeanor severely impairs a factfinder's ability to judge their credibility.   *See Agosto v. INS*, 436 U.S. 748, 755 (1978) ("[I]t is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised."); *Djondo v. Holder*, 496 F. App'x 338, 342 (4th Cir. 2012) ("the factfinder is in a better position to make judgments about . . . the credibility of a live witness" (omission in original) (quoting *Concrete Pipe & Products of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 623 (1993))).   The Court's state secrets rulings have left CACI PT with only a written transcript of Plaintiffs' interrogators' testimony and no way to subpoena them for trial.   Even if the Court

were to direct the United States to produce the witnesses for live testimony with their faces obscured, and the United States were to comply, the very process of concealing the witnesses' appearance would prevent the jury from fairly assessing their demeanor and credibility.

But concealing the interrogators' names and appearances is just the tip of the iceberg. Because the interrogators' identities are state secrets, all facts about them, the types of things juries would weigh in deciding who to believe, are also withheld from the parties and the jury. For example, because the Court has upheld the United States' assertion of the state secrets privilege, the United States has denied CACI PT personal information about Plaintiffs' interrogators that could, alone or with other evidence, reveal their identity. This is precisely the type of evidence a jury reasonably would consider in deciding whose version of events to believe. The information about Plaintiffs' interrogators that has been denied to CACI PT on state secrets grounds includes how long the interrogators served in the U.S. Army, any military award or medals they received, the characterization of their military discharge, their education level, their employment history, other job duties they had at Abu Ghraib prison, and their interrogation experience prior to serving at Abu Ghraib prison. Ex. 6 at 16-20, 21-22, 120; Ex. 2 at 16-20, 22.

Indeed, the United States identified CACI Interrogator A, the only CACI PT interrogator deposed pseudonymously to date, as participating in one interrogation of Al Shimari on December 15, 2003. CACI Interrogator A testified that he was confident that he did not interrogate Al Shimari after this initial interrogation, but the United States instructed CACI Interrogator A not to testify as to the reasons for his confidence. Ex. 1 at 86-88. These facts are exactly the type of information a jury would consider in assessing whether CACI Interrogator A's recollection is reliable, but the state secrets privilege prevents CACI PT from presenting that

evidence.   CACI PT also has been denied the identities of other interrogation personnel with whom the pseudonymous interrogators interacted, witnesses who could bolster or impeach the pseudonymous interrogators' testimony.  *See, e.g.*, Ex. 6 at 38-39, 147-49; Ex. 2 at 32, 34, 39-40.

Moreover, in addition to information about Plaintiffs' interrogations and interrogators, CACI PT has been denied contemporaneous records detailing Plaintiffs' interrogations.  With respect to the interrogations of Al Shimari and Al-Zuba'e, the United States' assertion of the state secrets privilege denies CACI PT access to contemporaneous records showing the expected and approved interrogation approaches for Plaintiffs' interrogations and reports as to how Plaintiffs were actually treated during their interrogations.  As Secretary Mattis explained in asserting the state secrets privilege:

> I am asserting the state secrets privilege over (i) counterintelligence (CI) reports, (ii) summary interrogation reports containing analyst and interrogator intelligence focus comments, (iii) interrogation collector comments, (iv) detainee interrogation plans, (v) approaches used during interrogation; (vi) observations related to the mood/attitude of the detainee, (vii) assessments by the interrogator regarding the truthfulness of the detainee, (viii) interrogator recommendations and/or suggested future approaches that may work with the detainee, and (ix) suggestions for when future interrogations should occur, except where such information has been produced in discovery pursuant to a determination by DoD personnel that disclosure would not reasonably be expected to cause serious damage to the national security of the United States. . . .   Such discrete information, properly classified and protected from disclosure as explained below, ***is contained within the written interrogation plan and interrogation reports for Plaintiff Al Shimari, and the interrogator notes for Plaintiffs Al Shimari and Al Zubae***.   In my judgment and for the reasons explained below, unauthorized disclosure of this information reasonably could be expected to cause serious damage to the national security of the United States.

Ex. 30 at ¶ 6 (Bates numbers omitted) (emphasis added).

Thus, in what is a clear credibility battle as to what occurred during Plaintiffs' interrogations, the United States' assertion of the state secrets privilege has denied CACI PT (1)

the ability to know the identity of Plaintiffs' interrogators and to present them as identified, live witnesses at trial; (2) the ability to discover *any* facts regarding Plaintiffs' interrogators' backgrounds that would be useful to a jury in deciding who to believe; and (3) contemporaneous government records concerning the interrogation approaches planned and used in Plaintiffs' interrogations as well as a report of exactly what occurred during Plaintiffs' interrogations, and which might identify other witnesses with knowledge of Plaintiffs' treatment.  These are the precise facts needed to fairly and effectively rebut Plaintiffs' allegations that they were in fact subjected to treatment in violation of international law in connection with their interrogations at Abu Ghraib prison and to fulfill the Fourth Circuit's mandate of determining the "specific conduct to which the plaintiffs were subjected and the source of any direction under which the acts took place," *Al Shimari IV*, 840 F.3d at 160-61.

Moreover, if a jury were credit Plaintiffs and conclude that the pseudonymous interrogators in fact mistreated Plaintiffs, the Court's state secrets rulings make it impossible for CACI PT to protect its rights through its third-party claims against any interrogators found to have mistreated Plaintiffs.  While the Court has stayed CACI PT's third-party claims against the John Doe defendants, the Court's state secrets ruling essentially extinguishes CACI PT's right to pursue third-party claims because CACI PT cannot serve and litigate against someone it cannot identify.  Thus, the Court's state secrets ruling doubly prejudices CACI PT by preventing CACI PT from defending itself and from seeking recovery from anyone who actually mistreated Plaintiffs if the jury believes Plaintiffs and disbelieves the pseudonymous interrogators.

### 2.      Compliance with the Fourth Circuit's Remand Instructions Requires Full Development of Evidence of Plaintiffs' Treatment.

The Fourth Circuit directed the Court to analyze, among other things, "the evidence regarding the specific conduct to which the plaintiffs were subjected."  *Al Shimari IV*, 840 F.3d

at 160-61.   As CACI PT explained in Section IV.A.1, the Court cannot fairly analyze the evidence regarding the specific treatment to which Plaintiffs were subjected while the eyewitnesses to Plaintiffs' treatment are hidden from the parties and the Court.   Equally important, the Court cannot resolve the clear credibility battle between Plaintiffs and their pseudonymous interrogators without access to the contemporaneous records detailing the interrogation approaches approved by the Army and those actually used for Plaintiffs' interrogations.   As CACI PT explains in Section IV.C.1, the Court's inability to comply with the Fourth Circuit's remand instructions prevents a fair determination of justiciability, but the same is true for the merits question of whether Plaintiffs were in fact mistreated as they allege.

**B.      The Court's State Secrets Rulings Prevent CACI PT from Fairly Litigating Whether CACI PT Personnel Were Involved in any Abuses that Plaintiffs Allege They Suffered**

The second avenue of defense in a detainee abuse case is challenging whether the defendant was involved in any mistreatment the plaintiff alleges.   Plaintiffs have renounced any claim that CACI PT personnel directly mistreated them,[11] leaving only claims for aiding and abetting and co-conspirator liability.   Plaintiffs' aiding and abetting claims require proof that CACI PT "provide[d] practical assistance" to a principal who mistreated Plaintiffs, and did so "with the purpose of facilitating the commission of that crime."   *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 398 (4th Cir. 2011) (quoting *Presbyterian Church of Sudan v. Talisman*, 582 F.3d 244, 258 (2d Cir. 2009)).   Plaintiffs' conspiracy claims require proof that CACI PT personnel entered into an agreement to participate in a common criminal design encompassing international law offenses against these Plaintiffs, and that the CACI PT personnel acted with the *purpose* of committing such offenses.   *Talisman*, 582 F.3d at 260 & n.10.   Thus, all of Plaintiffs' claims

---

[11] *See* note 2.

require proof that CACI PT personnel entered into an unlawful agreement with the persons who injured Plaintiffs or assisted them in injuring Plaintiffs.

The Court should grant CACI PT summary judgment on Plaintiffs' claims because Plaintiffs have no evidence that CACI PT personnel entered into any agreement with or otherwise aided anyone who mistreated these Plaintiffs. The propriety of summary judgment is set forth in the Rule 56 motion filed by CACI PT. In the event, however, that the Court rules that a jury reasonably could find co-conspirator or aiding and abetting liability, the Court's state secrets rulings deprive CACI PT of a fair opportunity to litigate these issues at trial.

1. **The Court's State Secrets Rulings Deprive CACI PT of Access to Interrogation Personnel Who Can Support Plaintiffs' Interrogators' Denials of Conspiratorial Conduct or Having Been Aided in Mistreating Plaintiffs**

As set forth in Section III.B, *supra*, all four Plaintiffs allege that they were mistreated by their interrogators during interrogations.[12] CACI PT can be liable for mistreatment inflicted on them by Army interrogators only if the Army interrogators entered into an unlawful agreement with CACI PT personnel or were aided in their abuse of Plaintiffs by CACI PT personnel. CACI PT cannot reasonably develop evidence whether Plaintiffs' pseudonymous interrogators entered into an unlawful conspiracy without knowing who they are. Without knowing the pseudonymous interrogators' identities, all CACI PT can do is offer those pseudonymous interrogators' unadorned denials of conspiratorial activity without any ability to collect evidence supporting their denials.

---

[12] Plaintiffs also allege mistreatment by MPs that did not occur during their interrogations. Plaintiffs, by their own admission, have no facts tying such alleged mistreatment to CACI PT personnel. *See* Section III.A (citing to Plaintiffs' relevant interrogatory responses and deposition testimony).

Moreover, the Court's ruling prevents disclosure to CACI PT's counsel the identity of CACI Interrogator G, one of only two CACI PT interrogators identified as having conducted an intelligence interrogation of these Plaintiffs.  Thus, CACI PT's counsel has to defend against the possibility that CACI PT could be held liable for CACI Interrogator G's conduct without knowing CACI Interrogator G's identity.

The United States has prevented the pseudonymous interrogators, on state secrets grounds, from identifying or describing the interrogation personnel with whom they interacted at Abu Ghraib prison.  *See, e.g.*, Ex. 6 at 38-39, 147-49; Ex. 2 at 32, 34, 39-40; Ex. 3 at 28; Ex. 4 at 31, 34-35, 37-39.  This makes it impossible to develop evidence to bolster the pseudonymous interrogators' denials of conspiratorial conduct or being aided or abetted by CACI PT personnel in mistreating Plaintiffs.

> **2.    The Court's State Secrets Rulings Prevent CACI PT from Responding to Plaintiffs' Attempted Use of the Taguba and Jones/Fay Reports in Support of Their Conspiracy Claims**

Plaintiffs have made clear that they intend to seek to introduce portions of the Taguba and Jones/Fay reports into evidence and then argue that those reports somehow permit an inference that CACI PT was involved in their alleged mistreatment.  CACI PT filed a motion *in limine* with respect to these reports, and the Court has ruled that it will consider the admissibility of specific portions of the reports on a case-by-case basis once Plaintiffs identify the portions they desire to introduce at trial.  The Court's state secrets rulings, however, irreparably prevent CACI PT from fairly addressing the relevance and weight of the reports with respect to Plaintiffs' claims either in argument before the Court or at trial.

The Taguba report states a *suspicion* that one CACI PT interrogator provided instructions to MPs that involved detainee abuse.  Ex. 32 at 48, ¶ 13.  The Jones/Fay report implicates three CACI PT employees in intentional improper acts at Abu Ghraib prison.  Ex. 34 at 131, 132, 134.

The evidence adduced in discovery is that military and civilian interrogators sometimes gave MPs instructions concerning the treatment of their detainees, but that those instructions pertained to specific detainees the interrogator was interrogating.  Ex. 28 at 208-09, 226-27; Ex. 29 at 55-56.  Therefore, any possible theory of relevance of the Taguba and Jones/Fay reports depends on the few CACI PT personnel identified in those reports having interacted with Plaintiffs.

Only two former CACI PT employees participated in any intelligence interrogations of these Plaintiffs – Interrogator A and Interrogator G.  Ex. 14 at 4-5.  Based on the Court's rulings upholding the state secrets privilege for interrogator identities, the United States directed CACI Interrogator A not to testify as to whether he was identified in the Taguba report or in the Jones/Fay report.  Ex. 1 at 15-16, 208.  The United States presumably will give the same instruction to CACI Interrogator G, who has yet to be deposed.  If the Reports are admitted at trial, the Court's ruling sustaining the assertion of the state secrets privilege places CACI PT in the intolerable position of being unable to either (1) have its employees testify that they are not implicated in the reports, or (2) if they are named in the reports, give their version of the facts and/or deny the truth of the allegations in the reports.

Similarly, for the other eight non-CACI PT interrogation personnel who have been deposed pseudonymously, the concealment of their identities makes it impossible to determine the extent, if any, to which they have been implicated in the reports.  Thus, the state secrets privilege makes it impossible for CACI PT to present evidence at trial that the CACI PT employees who interrogated Plaintiffs are *not* implicated in the reports (so the jury should disregard the reports), or to have any CACI PT employees who interrogated Plaintiffs rebut the reports' stated findings and suspicions if they *are* named in one or both of the reports.  Either

way, the state secrets privilege prevents CACI PT from fairly addressing the import of the reports at trial.

C. **The Court's State Secrets Rulings Prevent CACI PT from Fairly Litigating Whether the Nature of Any Involvement By CACI PT Personnel in Plaintiffs' Treatment Gives Rise to Liability**

Even if Plaintiffs succeeded in convincing a jury that they were in fact abused in violation of international law, and even if Plaintiffs could show some involvement by CACI PT personnel in their treatment (which they have not), there are a number of factual and legal defenses available to CACI PT that cannot fairly be litigated because the Court's state secrets rulings have denied CACI PT access to materials to present in support of such defenses.

1. **The Court's State Secrets Rulings Prevent the Court from Complying with the Fourth Circuit's Remand Instructions and Prevent CACI PT from Fairly Litigating the Justiciability of Plaintiffs' Claims**

In *Al Shimari IV*, the Fourth Circuit vacated this Court's ruling that Plaintiffs' claims were barred by the political question doctrine and remanded for further consideration of the issue. In that regard, the Fourth Circuit's remand instructions were clear:

> Accordingly, on remand, the district court will be required to determine which of the alleged acts, or constellations of alleged acts, violated settled international law and criminal law governing CACI's conduct and, therefore, are subject to judicial review. The district court also will be required to identify any "grey area" conduct that ***was committed under the actual control of the military*** or involved sensitive military judgments and, thus, is protected under the political question doctrine.

> This "discriminating analysis" will require the district court to examine ***the evidence regarding the specific conduct to which the plaintiffs were subjected and the source of any direction under which the acts took place***. If disputed facts are "inextricably intertwined" with the facts underlying the merits of the plaintiffs' claims, the district court should resolve these disputed jurisdictional facts along with the intertwined merits issues.

*Al Shimari IV*, 840 F.3d at 160-61 (emphasis added) (footnote and citations omitted).

As noted above, the Fourth Circuit has ruled that the Court's political question analysis will require the Court "to examine the evidence regarding the specific conduct to which the plaintiffs were subjected and the source of any direction under which the acts took place." *Id.* The United States' assertion of the state secrets privilege prevents the Court from examining the evidence regarding Plaintiffs' actual treatment or identifying the sources of any direction relating to Plaintiffs' actual treatment. As Secretary Mattis has confirmed, the United States is withholding crucial documents detailing the interrogation methods and approaches approved and used during the single interrogation of Al Shimari and the three interrogations of Al-Zuba'e. Ex. 30 at ¶¶ 19-21.

These documents do not involve formal rules and reporting chains that may or may not have been observed in practice; they are specific records concerning the events that took place during the specific interrogations relevant to this action. As the Fourth Circuit emphasized in *Al Shimari IV*, the central facts for resolving justiciability are the contents of the very documents the United States refuses to produce – evidence regarding Plaintiffs' actual treatment and the source of any direction regarding such treatment. Because CACI PT cannot fairly challenge justiciability without discovery of this information, and the Court cannot satisfy its independent duty to assure itself that subject-matter jurisdiction exists, dismissal is required.

## 2. The Court's State Secrets Rulings Prevent CACI PT from Fairly Litigating Its Derivative Sovereign Immunity Defense

The Supreme Court and Fourth Circuit have make clear that "a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government validly conferred that authorization, meaning it acted within its constitutional power." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 643 (4th Cir. 2018) (internal quotations and citations omitted) (quoting *In re KBR, Inc. Burn Pit Litig.*, 744 F.3d 326,

342 (4th Cir. 2014), *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000), and *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 21-22 (1940)).   Indeed, this immunity applies even to conduct that ordinarily is unlawful when committed by a contractor.   *See Butters*, 225 F.3d at 466 (government contractor immune from suit for alleged unlawful gender discrimination).

The United States' motion to dismiss based on sovereign immunity remains pending before the Court.   If the United States is dismissed on these grounds, CACI PT is entitled to derivative sovereign immunity to the extent its employees engaged in conduct with respect to Plaintiffs that the United States authorized.   Here, this defense runs directly into the United States' invocation of the state secrets privilege, as Secretary Mattis's declaration makes clear that the United States is withholding, at least for Al Shimari and Al-Zuba'e, documents detailing the interrogation approaches and methods that the United States authorized for the interrogations of these Plaintiffs.   Ex. 30 at ¶¶ 19-21.   That the withheld documents relate to Plaintiffs Al Shimari and Al-Zuba'e is particularly important, as these are the only two of the four Plaintiffs for which CACI PT personnel conducted intelligence interrogations (one each, one by CACI Interrogator A and one by CACI Interrogator G).   Ex. 14 at 4-5.   CACI PT cannot fairly litigate its derivative sovereign immunity defense while being denied the documents showing the interrogation methods and approaches approved for the two interrogations in which its employees participated.

### 3.     The Court's State Secrets Rulings Prevent CACI PT from Fairly Litigating Whether *Respondeat Superior* Liability Applies

As CACI PT has detailed in its summary judgment motion, the borrowed servant doctrine dictates that when an employer provides its employees for use by another entity that undertakes responsibility for controlling the employees' conduct, the borrowing entity is the entity to which *respondeat superior* liability flows.   *See White v. Bethlehem Steel Corp.*, 222 F.3d 146, 149 (4th Cir. 2000); *Huff v. Marine Tank Testing Corp.*, 631 F.2d 1140, 1144-45 (4th Cir. 1980); *NVR,*

*Inc. v. Just Temps, NC*, 31 F. App'x 805, 807 (4th Cir. 2002) ("The borrowed servant doctrine arose as a means of determining which of two employers, the general employer or the borrowing employer, should be held liable for the tortious acts of an employee whose conduct injured a third party . . . ."). The touchstone of the borrowed servant doctrine is control – "who has the power to control and direct the servants in the performance of their work." *White*, 222 F.3d at 149; *see also Standard Oil Co. v. Anderson*, 212 U.S. 215, 224-25 (1909) (for purposes of *respondeat superior* liability, "[t]he master is the person in whose business he is engaged at the time, and who has the right to control and direct his conduct" (internal quotations omitted)).

The evidence regarding the U.S. military's responsibility for command and control of CACI PT employees at Abu Ghraib prison suffices to grant CACI PT summary judgment on Plaintiffs' claims. If the Court reaches a different conclusion, however, CACI PT is entitled to present evidence at trial in support of its borrowed servant defense, and the Court's state secrets rulings impair CACI PT's ability to do so. As Secretary Mattis's declaration asserting the state secrets privilege makes clear, the United States is withholding on state secrets grounds contemporaneous documents detailing interrogation approaches and methods approved and used during the interrogations of Al Shimari and Al-Zuba'e. Ex. 30 at ¶¶ 19-21. These documents necessarily shed considerable light on who approved which interrogation approaches for the specific interrogations that are the subject matter of this lawsuit. Similarly, the United States' state secrets assertion encompasses witness testimony as to the identity of section leaders overseeing the work of interrogators at Abu Ghraib prison. Ex. 5 at 41; Ex. 6 at 147. The facts withheld from CACI PT on state secrets grounds bear directly on CACI PT's defense to *respondeat superior* liability, and CACI PT cannot fairly defend this case without them.

**4.     The Court's State Secrets Rulings Effectively Deny CACI PT the Right to Pursue Its Third-Party Claims Against the John Doe Defendants**

CACI PT brought third-party claims against John Doe defendants defined as "natural persons who were located at Abu Ghraib while any of the Plaintiffs were detained there and had any role in the mistreatment of Plaintiffs." Third-Party Compl. ¶ 9 (Dkt. #665). If CACI PT is found liable to Plaintiffs, CACI PT's third-party complaint seeks to recover on theories of common-law indemnification, exoneration, and contribution the amount of any judgment against it from the persons found to have actually mistreated Plaintiffs. *Id.* at 32-51. The Court's state secrets rulings make this impossible. If the jury believes Plaintiffs' testimony that they were abused during their interrogations, and disbelieves the testimony of Plaintiffs' pseudonymous interrogators that no such abuse occurred, the abusers are primarily liable for Plaintiffs' injuries and CACI PT is entitled to recover any judgment against it from them. *See, e.g.*, *Uptagrafft v. United States*, 315 F.2d 200, 203 (4th Cir. 1963) (exoneration and indemnification); *United States v. Savage Truck Line, Inc.*, 209 F.2d 442, 447 (4th Cir. 1953) (contribution).

As a technical matter, the Court has thus far only stayed CACI PT's claims against the John Doe defendants. Dkt. #869. As a practical matter, however, the Court's state secrets rulings deny CACI PT the ability to pursue its third-party claims against the personnel participating in Plaintiffs' interrogations, if the jury finds that Plaintiffs were mistreated in those interrogations, because CACI PT cannot serve process on and litigate against a person whose very identity is concealed. Thus, the Court's state secrets rulings severely limit the information available to CACI PT to defend against Plaintiffs' claims and then compound the prejudice by taking away CACI PT's right to recover any adverse judgment against it from those whom the jury finds actually abused Plaintiffs.

## V.     CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claims.

Respectfully submitted,

*/s/   John F. O'Connor*
John F. O'Connor                                    William D. Dolan, III
Virginia Bar No. 93004                              Virginia Bar No. 12455
Linda C. Bailey (admitted *pro hac vice*)           LAW OFFICES OF WILLIAM D.
Molly Bruder Fox (admitted *pro hac vice*)          DOLAN, III, PC
STEPTOE & JOHNSON LLP                               8270 Greensboro Drive, Suite 700
1330 Connecticut Avenue, N.W.                       Tysons Corner, VA 22102
Washington, D.C. 20036                              (703) 584-8377 – telephone
(202) 429-3000 – telephone                          wdolan@dolanlaw.net
(202) 429-3902 – facsimile
joconnor@steptoe.com
lbailey@steptoe.com
mbfox@steptoe.com

*Counsel for Defendant CACI Premier*
*Technology, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of December, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John Kenneth Zwerling
The Law Offices of John Kenneth Zwerling, P.C.
114 North Alfred Street
Alexandria, VA 22314
jz@zwerling.com

Lauren Wetzler
United States Attorney Office
2100 Jamieson Avenue
Alexandria, VA 22314
lauren.wetzler@usdoj.gov

/s/   John F. O'Connor
John F. O'Connor
Virginia Bar No. 93004
Attorney for Defendant CACI Premier Technology,
    Inc.
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
(202) 429-3902 – facsimile
joconnor@steptoe.com