# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

|  |  |
|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CACI PREMIER TECHNOLOGY, INC., <br><br> Defendant, | No.  1:08-cv-0827 LMB-JFA <br><br><br><br> **PUBLIC VERSION** |
| CACI PREMIER TECHNOLOGY, INC., <br><br> Third-Party Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, and JOHN DOES 1-60, <br> Third-Party Defendants. |  |

**DEFENDANT/THIRD-PARTY PLAINTIFF CACI PREMIER TECHNOLOGY, INC.'S MEMORANDUM IN SUPPORT OF ITS SUGGESTION OF LACK OF SUBJECT MATTER JURISDICTION BASED ON DERIVATIVE IMMUNITY**

John F. O'Connor (Va. Bar #93004)
Linda C. Bailey (admitted *pro hac vice*)
Molly B. Fox (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
(202) 429-3902 – facsimile
joconnor@steptoe.com
lbailey@steptoe.com
mbfox@steptoe.com

William D. Dolan, III (Va. Bar #12455)
LAW OFFICES OF WILLIAM D. DOLAN, III, PC
8270 Greensboro Drive, Suite 700
Tysons Corner, Virginia 22102
(703) 584-8377 – telephone
wdolan@dolanlaw.net

*Counsel for Defendant CACI Premier Technology, Inc.*

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................... 1

II.     LEGAL STANDARD ................................................................................................ 3

III.    CACI PT IS ENTITLED TO DERVIATIVE SOVEREIGN IMMUNITY .................... 4

    A.    The United States Would Be Immune From Suit If Plaintiffs Had Asserted Their
        Claims Against the United States .................................................................................. 6

    B.    CACI PT Performed Under a Contract Validly Awarded by the United States ............ 10

    C.    CACI PT Performed the Contract in Accordance with its Terms and Express
        Direction from the U.S. Military .................................................................................. 11

IV.     CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Shimari v. CACI Premier Tech., Inc.*,
    758 F.3d 516 (4th Cir. 2014) ................................................8

*Ameur v. Gates*,
    950 F. Supp. 2d 905 (E.D. Va. 2013), *aff'd on other grounds*, 759 F. 3d 317
    (4th Cir. 2014)................................................................10

*Arbaugh v. Y & H Corp.*,
    546 U.S. 500 (2006)...........................................................3

*Butters v. Vance Int'l, Inc.*,
    225 F.3d 462 (4th Cir. 2000) ................................................5

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016)........................................................4

*United States ex rel. Carter v. Halliburton Co.*,
    710 F.3d 171 (4th Cir. 2013) ................................................9

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
    888 F.3d 640 (4th Cir. 2018) ........................................ *passim*

*Day v. Johns Hopkins Health Sys. Corp.*,
    907 F.3d 766 (4th Cir. 2018) ..............................................15

*Demetres v. E.W. Constr., Inc.*,
    776 F.3d 271 (4th Cir. 2015) ................................................4

*Di Biase v. SPX Corp.*,
    872 F.3d 224 (4th Cir. 2017) ................................................2

*Filarsky v. Delia*,
    566 U.S. 377 (2012)........................................................5, 6

*Gerding v. Repub. of France*,
    943 F.2d 521 (4th Cir. 1991) ..............................................11

*Goldstar (Panama) S.A. v. United States*,
    967 F.2d 965 (4th Cir. 1992) ................................................7

*Gonzalez-Vera v. Kissinger*,
    No. 02-cv-02240, 2004 WL 5584378 (D.D.C. Sept. 17, 2004)................10

*Green v. Sessions*,
No. 1:17-cv-1365-LMB-TCB, 2018 WL 2025299 (E.D. Va. May 1, 2018)............................3

*In re KBR, Inc., Burn Pit Litig.*,
744 F.3d 326 (4th Cir. 2014) ...................................................................... *passim*

*Koohi v. United States*,
976 F.2d 1328 (9th Cir. 1992) ............................................................................8

*Mangold v. Analytic Servs., Inc.*,
77 F.3d 1447-48 (4th Cir. 1996) ........................................................................5

*Perez v. United States*,
No. 13-cv-1417, 2014 WL 4385473 (S.D. Cal. Sept. 3, 2014)...............................10

*Pornomo v. United States*,
814 F.3d 681 (4th Cir. 2016) .............................................................................7

*Ruddell v. Triple Canopy, Inc.*,
No. 1:15-cv-1332, 2016 WL 4529951 (E.D. Va. Aug. 29, 2016) ............................5

*S.J. v. Hamilton County, Ohio*,
374 F.3d 416 (6th Cir. 2004) .............................................................................4

*Saleh v. Titan Corp.*,
580 F.3d 1 (D.C. Cir. 2009)................................................................................8

*Sanchez-Espinoza v. Reagan*,
770 F.2d 202 (D.C. Cir. 1985)............................................................................7

*Smith v. Scalia*,
44 F. Supp. 3d 28 (D.D.C. 2014) ......................................................................10

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)............................................................................................2

*Tobar v. United States*,
639 F.3d 1191 (9th Cir. 2011) ............................................................................7

*United States v. Beasley*,
495 F.3d 142 (4th Cir. 2007) .............................................................................3

*United States v. Passaro*,
777 F.3d 207 (4th Cir. 2009).............................................................................15

*Welch v. United States*,
409 F.3d 646 (4th Cir. 2005) .............................................................................7

*Williams v. United States,*
  50 F.3d 299 (4th Cir. 1995) ..............................................................4

*Yearsley v. W.A. Ross Constr. Co.,*
  309 U.S. 18 (1940)....................................................................4, 5, 6, 10

*Yousuf v. Samantar,*
  699 F.3d 763 (4th Cir. 2012) .............................................................9

**Statutes**

28 U.S.C. § 2680 .................................................................................1, 7, 8, 9

50 U.S.C. § 1431 ..................................................................................10

**Other Authorities**

Fed. R. Civ. P. 12(h)(3)........................................................................3

5B Wright & Miller, *Federal Practice & Procedure* § 1350 (3d ed. 2004)................................3, 6

## I.    INTRODUCTION

It is no accident that Plaintiffs allege that they were abused by U.S. soldiers and yet filed no suit against the United States or the soldiers who allegedly abused them.  The reason why Plaintiffs instead sued CACI PT,[1] even though Plaintiffs "are not contending that the CACI interrogators laid a hand on the plaintiffs,"[2] is because any claim against the United States appears to run headlong into the United States' sovereign immunity.[3]  Derivative sovereign immunity, however, prevents Plaintiffs from making an end-run around the United States' sovereign immunity, and confers immunity from suit on contractors who perform services for the United States for which the United States itself would have immunity.  *See, e.g.*, *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018).

Derivative sovereign immunity protects a government contractor from suit when (1) the United States would be immune from suit if the claims had been brought against it, (2) the contractor performed services for the sovereign under a validly-awarded contract, and (3) the contractor adhered to the terms of its contract.  *Id.*  All of these elements are satisfied here. Plaintiffs' claims against CACI PT, if brought against the United States, would fall squarely within the statutory combatant activities exception to the United States' waiver of sovereign immunity, which retains immunity for "claims arising out of the combatant activities of the military or naval forces . . . during time of war."  28 U.S.C. § 2680(j).

---

[1] "CACI PT" refers to Defendant/Third-Party Plaintiff CACI Premier Technology, Inc.

[2] *See* 9/22/17 Tr. at 15 ("We are not contending that the CACI interrogators laid a hand on the plaintiffs."); *see also* Dkt. #639 at 31 n.30 (the "gravamen of Plaintiffs' complaint is conspiracy and aiding and abetting"); *id.* at 1 ("Plaintiffs sued CACI under well-established theories of accessory liability.").

[3] The United States presumably would have substituted itself through *Westfall* certification for any soldiers sued individually, which effectively would have created a sovereign immunity defense for claims against soldiers as well.

While the Court has expressed some reticence with finding the United States immune from allegations of *jus cogens* conduct, the Court has refrained from ruling on the Government's motion despite repeated statements that a decision was in the works. Indeed, the Court has suggested that it might not decide the United States' immunity challenge in favor of addressing its later-filed summary judgment motion instead. This is not a permissible manner of proceeding. Precedent clearly requires that subject matter jurisdiction be resolved before proceeding to merits challenges. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'"); *Di Biase v. SPX Corp.*, 872 F.3d 224, 232 (4th Cir. 2017) (courts may not "assume subject matter jurisdiction merely to reach a less thorny issue"). The present motion assumes that the United States is entitled to sovereign immunity.

There also is no dispute that CACI PT performed its services at Abu Ghraib prison pursuant to validly-awarded contracts. Finally, the evidence developed in this case shows that CACI PT adhered to the terms of its contracts. Fundamentally, CACI PT's contracts called for it to provide interrogation personnel to the U.S. military in Iraq and that the U.S. military chain of command would be responsible for their operational supervision. CACI PT provided interrogation personnel as contemplated by the contracts. Moreover, there is no evidence that CACI PT personnel acted toward these Plaintiffs other than as required by CACI PT's contracts. Under these circumstances, CACI PT is entitled to immunity to the same extent that the United States would be immune, which required dismissal of Plaintiffs' claims.

CACI PT repeatedly has taken the position in this case that its derivative sovereign immunity for Plaintiffs' claims should mirror the sovereign immunity the United States would

enjoy if Plaintiffs had asserted their claims against the United States.[4]  In a perfect world, CACI

PT would have filed this derivative immunity challenge after the Court had ruled on the United

States' March 14, 2018 sovereign immunity assertion and established the contours of the United

States' immunity.  *See* Dkt. #696.  With the trial date in this case rapidly approaching, CACI PT

has little choice but to assert its immunity challenge now, and to develop the record concerning

the scope of the United States' sovereign immunity in connection with CACI PT's assertion that

it is entitled to derivative sovereign immunity.

## II.     LEGAL STANDARD

A government contractor's assertion of derivative sovereign immunity challenges the

subject matter jurisdiction of the Court.  *Cunningham*, 888 F.3d at 649 (4th Cir. 2018).  A

challenge to the Court's subject matter jurisdiction may be brought at any time, and "[i]f the

court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the

action."  Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006); *United*

*States v. Beasley*, 495 F.3d 142, 147 (4th Cir. 2007); *Green v. Sessions*, No. 1:17-cv-1365-LMB-

TCB, 2018 WL 2025299, at *7 (E.D. Va. May 1, 2018).  While a subject-matter jurisdiction

challenge often is brought under Rule 12(b)(1), the proper vehicle once the defendant has

answered the complaint is a suggestion of lack of subject-matter jurisdiction.  5B Wright &

---

[4]  *See* Dkt. #713 at 2 ("Ordinarily, CACI PT would agree that the United States is immune
from suit for Plaintiffs' claims of battlefield injuries . . . ."); *id.* at 14 ("Because this Court has
already held that CACI PT personnel were acting in the scope of their employment, and the
public benefits of immunity outweigh its costs, the immunity of CACI PT and the United States
is coextensive with respect to the claims at issue in this case.  If the United States is immune
from suit by CACI PT for claims arising out of injuries inflicted by soldiers and resulting from
United States detention policies, CACI PT is equally immune from suit by Plaintiffs seeking to
tag CACI PT with such liability."); *id.* at 19 ("If the United States can clear that hurdle [that
sovereign immunity applies to *jus cogens* violations], CACI PT and the United States should
share the same fate – dismissal or continued participation in this case."); *id.* ("CACI PT agrees,
generally speaking, that the combatant activities exception and the principles underlying that
exception should foreclose Plaintiffs' claims against CACI PT and the United States . . . .").

Miller, *Federal Practice & Procedure* § 1350, at 138 (3d ed. 2004); *see also S.J. v. Hamilton County, Ohio*, 374 F.3d 416, 418 n.1 (6th Cir. 2004).

To determine subject matter jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 333 (4th Cir. 2014) ("*Burn Pit*"). The court acts as factfinder for the motion and resolves any evidentiary disputes. *Id.*; *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). The plaintiff has the burden of proving jurisdiction. *Demetres v. E.W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015).

## III.    CACI PT IS ENTITLED TO DERVIATIVE SOVEREIGN IMMUNITY

Under the concept of derivative sovereign immunity, stemming from the Supreme Court's decision in *Yearsley v. W.A. Ross Constr. Co.,* 309 U.S. 18, 20-21 (1940), private parties are protected from liability for carrying out the sovereign's will. *Cunningham*, 888 F.3d at 643 (citing *Burn Pit*, 744 F.3d at 341-42). In *Cunningham* and *Burn Pit*, the Fourth Circuit interpreted *Yearsley* as recognizing that contractors should receive immunity from suit when they perform the same functions as government employees. *Id.*

"[U]nder *Yearsley,* a government contractor is subject to the same immunity as the United States if (1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization, meaning it acted within its constitutional power." *Burn Pit*, 744 F.3d at 342 (citing *Yearsley,* 309 U.S. at 20-21). The Supreme Court recently reaffirmed this test and stated that as long as the authorization was validly conferred, "there is no liability on the part of the contractor who simply performed as the Government directed." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 673 (2016) (quoting *Yearsley,* 309 U.S. at 20-21). And as this Court has recognized, "[w]hen acting under valid governmental authority, therefore, a contractor is immunized 'to the same extent as the Government' would be if it stood in the contractor's

shoes." *Ruddell v. Triple Canopy, Inc.*, No. 1:15-cv-1332 (LMB/JFA), 2016 WL 4529951, at *5 (E.D. Va. Aug. 29, 2016) (quoting *Federico v. Lincoln Military Housing, LLC*, 127 F. Supp. 3d 623, 637 (E.D. Va. 2015)).

In this case, the government *did* "stand in the contractor's shoes." In fact, government interrogators and CACI PT interrogators wore the same shoes. As detailed below, the United States controlled all interrogations at Abu Ghraib, with government and CACI PT personnel performing the same interrogation function under the same military supervision. Where the same shoe fits both parties, and the United States has sovereign immunity, derivative sovereign immunity for the contractor is warranted.

The reason for providing immunity to contractors is manifest. In *Filarsky v. Delia,* 566 U.S. 377 (2012), the Court recognized that extending immunity to private persons performing Government functions was in "the public interest in ensuring performance of government duties free from the distractions that can accompany even routine lawsuits" even "when individuals other than permanent government employees discharge these duties." *Id.* at 391. Immunity derives from "the government's unquestioned need to delegate governmental functions," and is a recognition that "[i]mposing liability on private agents of the government would directly impede the significant governmental interest in the completion of its work." *Butters v. Vance Int'l, Inc.,* 225 F.3d 462, 466 (4th Cir. 2000); *Mangold v. Analytic Servs., Inc.,* 77 F.3d 1447-48 (4th Cir. 1996) ("If absolute immunity protects a particular governmental function, no matter how many times or to what level that function is delegated, it is a small step to protect that function when delegated to private contractors, particularly in light of the government's unquestioned need to delegate governmental functions."). This is true even when a complaint alleges illegal activity. "The purpose of *Yearsley* immunity is to prevent a government contractor from facing liability

for an alleged violation of law, and thus, it cannot be that an alleged violation of law *per se* precludes *Yearsley* immunity." *Cunningham*, 888 F.3d at 648.

The *Filarsky* Court recognized that denying immunity to contractors while awarding it to government employees performing the same function is not in the public interest: "Because government employees will often be protected from suit by some form of immunity, those working alongside them could be left holding the bag – facing liability for actions taken in conjunction with government employees who enjoy immunity for the same activity." 566 U.S. at 391. Leaving CACI PT "holding the bag" while the United States would be immune from the very same suit would be particularly unjust. The only actual abuse allegedly inflicted on Plaintiffs was at the hands of *government* personnel during interrogations, not CACI PT personnel.

While the Court has not yet ruled on the United States' motion to dismiss based on sovereign immunity, the United States' decision to assert immunity and not waive it appears to make it impossible for CACI PT to pursue third-party claims against the United States or any military interrogators who may have actually mistreated Plaintiffs. This case is exactly the vice the Supreme Court recognized in *Filarsky* as supporting contractor immunity – suits against contractors for injuries allegedly inflicted by soldiers, with the soldier tortfeasors and the government that employed them are protected from liability because of their status. In any event, on the record here CACI PT satisfies all of the requirements for derivative sovereign immunity, which means <u>immunity</u> <u>from</u> <u>suit</u>. *See Cunningham,* 888 F.3d at 649.

A.    The United States Would Be Immune From Suit If Plaintiffs Had Asserted Their Claims Against the United States

The only claims by Plaintiffs remaining in this case are brought pursuant to the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350. Thus, the relevant question for purposes of derivative

sovereign immunity is whether the United States would have sovereign immunity for Plaintiffs' ATS claims if they had been brought against the United States instead of CACI PT. *Burn Pit*, 744 F.3d at 342.

"As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity." *Pornomo v. United States*, 814 F.3d 681, 687 (4th Cir. 2016). "Because the default position is that the federal government is immune to suit, any waiver of that immunity must be strictly construed in favor of the sovereign." *Id.* "For that reason, it is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists." *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005). "If the plaintiff fails to meet this burden, then the claim must be dismissed" for lack of subject-matter jurisdiction. *Id.* at 651, 653.

"[T]he Alien Tort Statute has been interpreted as a jurisdictional statute only – it has not been held to imply any waiver of [the United States'] sovereign immunity." *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 968 (4th Cir. 1992); *see also, e.g.*, *Tobar v. United States*, 639 F.3d 1191, 1196 (9th Cir. 2011) (same); *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 207 (D.C. Cir. 1985) ("The Alien Tort Statute itself is not a waiver of sovereign immunity."). Moreover, while the United States waived its sovereign immunity for certain tort suits through the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680, that statute does not waive the sovereign immunity defense that the United States would have against a claim by Plaintiffs. Indeed, in moving to dismiss CACI PT's third-party claims, the United States laid bare its position on how its sovereign immunity would apply if Plaintiffs had sued the United States instead of CACI PT:

> Had Plaintiffs filed an FTCA suit against the United States, their claims would have been barred for several reasons. The two most-obvious bars are the FTCA's foreign-country exception, and its combatant-activities exception.

Dkt. #697 at 6.

The FTCA preserves the United States' immunity for "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j). Plaintiffs' claims against CACI PT – and the claims Plaintiffs would have brought against the United States had they sued the sovereign instead of CACI PT – clearly arise from the military's combatant activities. The purpose underlying the combatant-activities exception "'is to foreclose state regulation of the military's battlefield conduct and decisions.'" *Burn Pit*, 744 F.3d at 348 (quoting *Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 480 (3d Cir. 2013)); *see also, e.g.*, *Saleh v. Titan Corp.*, 580 F.3d 1, 7 (D.C. Cir. 2009); *Koohi v. United States*, 976 F.2d 1328, 1334 (9th Cir. 1992). Accordingly, the Fourth Circuit rejected the argument that the phrase "combatant activities" is limited only to actual engagement in physical force, and instead recognized that "viewing 'combatant activities' through a broader lens furthers the purpose of the combatant activities exception." *Burn Pit*, 744 F.3d at 351.

Moreover, the combatant-activities exception does not simply preclude claims for combatant activities; rather, it bars all claims against the United States *arising out of* combatant activities. This "arising out of" language is "broad," and in other areas of the law, "arising out of" "'denotes *any* causal connection.'" *Id.* at 348 (quoting *Harris*, 724 F.3d at 479) (emphasis in original).

The conduct alleged by Plaintiffs clearly arises out of the military's combatant activities. As the Fourth Circuit put it, the United States used Abu Ghraib prison "to detain various individuals, including criminals, enemies of the provisional government, and other persons selected for interrogation because they were thought to possess information regarding Iraqi insurgents." *Al Shimari v. CACI Premier Tech., Inc.*, 758 F.3d 516, 521 (4th Cir. 2014) ("*Al*

*Shimari II*"). Plaintiffs allege that they "are among those Iraqis who were caught up in this effort to gain intelligence and to show results, by any means necessary." Pl. Third Am. Compl. at ¶ 11

Plaintiffs' alleged mistreatment also arose during a "time of war" as required by the combatant activities exception, 28 U.S.C. § 2680(j). "On October 11, 2002, Congress authorized the President to use military force to 'defend the national security of the United States against the continuing threat posed by Iraq' and 'enforce all relevant United Nations Security Council resolutions regarding Iraq.'" *United States ex rel. Carter v. Halliburton Co.*, 710 F.3d 171, 179 (4th Cir. 2013) (quoting Authorization for the Use of Military Force Against Iraq, Pub. L. 107–243, 116 Stat. 1498 (2002) ("AUMF")), *aff'd in part and rev'd in part on other grounds sub nom. Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970 (2015). "Although not a formal recognition of war, the AUMF signaled Congress's recognition of the President's power to enter into armed hostilities." *Id.* Accordingly, the Fourth Circuit held "that the United States was 'at war' in Iraq from the date of the AUMF issued by Congress on October 11, 2002." *Id.* For these reasons, if Plaintiffs had sued the United States for money damages based on the conduct they allege against CACI PT, the FTCA's combatant activities exception would have barred their suit.

As CACI PT noted in connection with the United States' motion to dismiss, determining whether sovereign immunity would have barred Plaintiffs' claims if they were brought against the United States also requires the Court to consider whether there is any principle of law that precludes the United States from asserting immunity from suits alleging *jus cogens* violations. Dkt. #713 at 14. *See Yousuf v. Samantar*, 699 F.3d 763, 776 (4th Cir. 2012) (holding that foreign official immunity does not apply to *jus cogens* violations). CACI PT is unaware of any judicial decision holding that the United States lacks sovereign immunity with respect to such suits. In

asserting sovereign immunity, the United States noted that "the Alien Tort Statute does not waive the United States' sovereign immunity," and cited several cases for the proposition that "absent an express and unequivocal statutory waiver of sovereign immunity, allegations of *jus cogens* violations are *not* cognizable against the United States.[5]  Dkt. 744 at 3.

## B.    CACI PT Performed Under a Contract Validly Awarded by the United States

Authorization is "validly conferred" on a contractor if Congress authorized the government agency to perform a task and empowered the agency to delegate that task to the contractor, provided it was within the power of Congress to grant the authorization.  *See Yearsley,* 309 U.S. at 20; *In re KBR,* 744 F.3d at 342, 344 n.7.  This standard is easily satisfied here and the validity of the contract between the United States and CACI PT is not in dispute.

Congress authorized the war in Iraq.  Authorization for Use of Military Force Against Iraq Resolution of 2002, Pub. L. 107-243, 116 Stat. 1498.  That Resolution vested the President with authority "to use the Armed Forces of the United States as he determines to be necessary and appropriate" to "defend the national security of the United States against the continuing threat posed by Iraq."  The Armed Forces, in turn, had authority pursuant to 10 U.S.C. §§ 2301, *et seq.*, to enter into contracts for contractor support.

In addition, 50 U.S.C. § 1431 authorized government agencies to enter into contracts to facilitate the national defense.  CACI PT received two Delivery Orders, in August 2003 and

---

[5] Dkt. #744 at 3 (citing *Goldstar (Panama) S.A.*, 967 F.2d at 965; *Ameur v. Gates*, 950 F. Supp. 2d 905, 917-18 (E.D. Va. 2013) (holding: (i) "Plaintiff's argument [based on Yousuf] that *jus cogens* violations sufficiently rebut the Attorney General's [Westfall] certification is . . . unavailing"; and (ii) "violations of customary law or international law do not trigger the waiver expressed in" the FTCA), *aff'd on other grounds*, 759 F. 317 (4th Cir. 2014); *Smith v. Scalia*, 44 F. Supp. 3d 28, 39-40 (D.D.C. 2014); *Gonzalez-Vera v. Kissinger*, No. 02-cv-02240, 2004 WL 5584378, at *4-5 (D.D.C. Sept. 17, 2004); *Perez v. United States*, No. 13-cv-1417, 2014 WL 4385473, at *6 (S.D. Cal. Sept. 3, 2014).

December 2003, to provide interrogation operations support to CJTF-7 in Iraq. Those Delivery Orders were issued pursuant to a Blanket Purchase Agreement ("BPA") awarded to CACI PT, which was originally administered by the GSA, then the Army, and ultimately the Department of the Interior after the Army closed its contracting facility at Fort Huachuca. Ex. 1 at 28-31. The U.S. Armed Forces in Iraq directed CACI PT to use that BPA in connection with providing interrogation support. Ex. 2 at 18-22; Ex. 1 at 35-36. CACI therefore performed pursuant to a validly-awarded contract.

### C. CACI PT Performed the Contract in Accordance with its Terms and Express Direction from the U.S. Military

The second requirement for derivative sovereign immunity is that the contractor must have adhered to the terms of its contract. *Burn Pit*, 744 F.3d at 345. "When a contractor violates both federal law and the Government's explicit instructions, . . . no 'derivative immunity' shields the contractor from suit by persons adversely affected by the violation." *Cunningham,* 888 F.3d at 647 (citing *Campbell-Ewald*, 136 S. Ct. at 672; *Yearsley*, 309 U.S. at 21; *Burn Pit*, 744 F.3d at 345). To prevent CACI PT from receiving immunity, Plaintiffs must show, with evidence, that CACI PT exceeded its validly-conferred authority in performing its contract *with respect to Plaintiffs. See Cunningham*, 888 F.3d at 647-48; *Gerding v. Repub. of France*, 943 F.2d 521, 525 (4th Cir. 1991). This they cannot do. CACI PT acted precisely as directed – it provided interrogation personnel to the Army chain of command in Iraq so they could operate under the command and control of the U.S. Army.

CACI PT provided interrogators to the U.S. Army under Delivery Orders 35 and 71 ("DO 35" and "DO 71," respectively). DO 35 provided for integration of CACI PT interrogators into the military's interrogation teams in order to accomplish intelligence priorities established by Coalition Joint Task Force-7 ("CJTF-7"). Ex. 3 at ¶ 4. DO 35 also provided that CACI PT

interrogators would conduct interrogations in accordance with "local SOP and higher authority regulations," would conduct other intelligence activities "*as directed*," and "will report findings of interrogation IAW with local reference documents, SOPs, and higher authority regulations *as required/directed*." *Id.* at ¶ 6 (emphasis added).

DO 71 provided that CACI PT interrogators would *perform under the direction and control of the unit's MI chain of command or Brigade S2, as determined by the supported command.* Ex. 4 at ¶ 3 (emphasis added). DO 71 also provided at "[a]ll actions [of the interrogators provided under DO 71] will be managed by the Senior [Counter-Intelligence] Agent," a member of the United States military. *Id.* at ¶ 4.d.

When CACI PT interrogators arrived at Abu Ghraib prison, both military and CACI PT interrogators reported to the military intelligence chain of command for all operational matters. ██████████ The military chain of command controlled all aspects of a CACI PT interrogator's performance of the interrogation mission and treated CACI PT interrogators for operational purposes exactly the same as Army interrogators. Ex. 5 at 26, 28-29, 36 (Holmes); Ex. 6 at ¶¶ 4-5 (Brady); Ex. 7 at ¶ 9 (Pappas); *see also* ████████████████████████

████████████████████████████████████████████

███

Colonel Pappas, who commanded the 205th Military Intelligence Brigade at Abu Ghraib prison, confirmed that "[i]n all respects, CACI PT interrogators were subject to the operational control of the U.S. military," and that "CACI PT interrogators were fully integrated into the Military Intelligence mission and [were] operationally indistinguishable from their military counterparts." Ex. 7 at ¶¶ 8, 9 (Pappas). CACI PT employees testified similarly. Ex. 9 at ¶ 10; Ex. 10 at ██████ 57-61, ██████

27.    The Army had total control over the activities of both Army interrogators and CACI PT interrogators in their dealings with detainees.  As Colonel Pappas stated:

> The military decided where each detainee would be incarcerated within Abu Ghraib prison, which detainees would be interrogated, and who would conduct the interrogations of a given detainee. Both military and CACI PT interrogators were required to prepare an interrogation plan for a detainee, which was reviewed and approved by the U.S. military leadership in the ICE.  At the conclusion of an interrogation, military and civilian interrogators were required to prepare an interrogation report and enter it into a classified military database.  The military then decided what use to make of information obtained during interrogations.

Ex. 7 at ¶ 10 (Pappas); Ex. 9 at ¶ 13 (Porvaznik); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

CACI Interrogators A and G, the only CACI PT interrogators identified as having conducted an intelligence interrogation of a Plaintiff, testified that the U.S. Army chain of command, and not CACI PT managers, controlled their conduct of interrogations and dealing with detainees.  The U.S. Army's total control over operational matters, and CACI PT's complete lack of control over such matters, extended to dictating the conditions of confinement for detainees; assigning detainees to Tiger Teams for interrogations; approving interrogation plans and techniques to be used in each interrogation; establishing the approved interrogation rules of engagement; and approving any interrogation techniques that required authorization from higher headquarters. Ex. 10 at ▮▮▮, 57-61, ▮▮▮; Ex. 11 at 64-72.

CACI PT's contracts called for it to identify interrogation personnel to support the U.S. Army's intelligence-gathering mission, and then to turn them over to the military chain of command for operational supervision.  The record shows that CACI PT did exactly that.

Moreover, many of the alleged abuses of which Plaintiffs complain were interrogation techniques and detention conditions specifically approved for use in interrogations by the U.S. military chain of command.  At a minimum, CACI PT is entitled to immunity with respect to

factual allegations involving interrogation techniques approved by the United States. A contractor enjoys immunity for work done in conformity with the contract's terms. *Cunningham,* 888 F.3d at 647. CACI PT interrogators were required by CACI PT's contract to conduct interrogations in accordance with military rules and directions. Ex. 3 at ¶ 6. Those rules and directions included, but were not limited to, authorized interrogation techniques. Accordingly, CACI PT is entitled to immunity with respect to any Plaintiffs' claims that are based on authorized interrogation techniques.

It is clear that many of Plaintiffs' claims arise directly from approved interrogation techniques, as a side-by-side comparison demonstrates:

| "Conditions" Plaintiffs' Allege Constitute Actionable Offenses (Pl. Third Am. Compl. at ¶¶ 23, 116) | Interrogation Techniques the Government Approved (Exs. 12-14, Ex. 10 at 28-33) |
|---|---|
| 1. Dietary manipulation<br>2. Environmental changes, including subjecting detainees to extreme hot or cold climates and exposing them to cold water<br>3. Nudity<br>4. Stress positions such as being cuffed to the bars of cells<br>5. Sleep management using loud music; "physical training," such as forcing detainees to do push-ups until they were exhausted<br>6. Humiliating detainees, for example by putting them in female underwear<br>7. Use of unmuzzled dogs<br>8. Use of isolation | 1. Dietary manipulation<br>2. Environmental manipulation<br>██████████████<br>4. Stress positions<br>5. Sleep management<br>6. Exploitation of detainee fears (such as fear of dogs)<br>7. Hooding<br>8. Deprivation of light and sound<br>9. Prolonged standing<br>██████████████<br>11. Use of isolation |

Because the government authorized the actions of CACI PT interrogators with respect to these techniques, and that authorization was validly conferred, CACI PT is entitled to derivative sovereign immunity with respect to allegations based on these techniques.

* * *

Immunities "require some clarity of application to serve their intended function." *Day v. Johns Hopkins Health Sys. Corp.*, 907 F.3d 766, 778 (4th Cir. 2018). In *Day*, the court rejected a fact-intensive test for witness immunity because parties claiming immunity should not be left "at sea" about how and whether immunity applies. *Id.* Yet "at sea" is exactly where CACI PT has been with respect to immunity. Perhaps that is a consequence of association with Abu Ghraib.

Make no mistake about it, however. If the United States had evidence to charge any CACI PT personnel with detainee abuse at Abu Ghraib, it would have done so. *See, e.g.*, *United States v. Passaro*, 777 F.3d 207, 216-18 (4th Cir. 2009) (affirming contractor's conviction for beating a detainee at an old fortress in Afghanistan). That the United States took no action speaks volumes. Plaintiffs have had unprecedented opportunities to pursue any discovery they thought might support their claims. After more than 10 years of litigation of this case, and 15 years after the operative events at Abu Ghraib, Plaintiffs remain, as they started, empty-handed.

## IV. CONCLUSION

The Court should dismiss this case for lack of subject matter jurisdiction.

Respectfully submitted,

*/s/   John F. O'Connor*
John F. O'Connor
Virginia Bar No. 93004
Linda C. Bailey (admitted *pro hac vice*)
Molly Bruder Fox (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
(202) 429-3902 – facsimile
joconnor@steptoe.com
lbailey@steptoe.com
mbfox@steptoe.com

William D. Dolan, III
Virginia Bar No. 12455
LAW OFFICES OF WILLIAM D. DOLAN, III, PC
8270 Greensboro Drive, Suite 700
Tysons Corner, VA 22102
(703) 584-8377 – telephone
wdolan@dolanlaw.net

*Counsel for Defendant CACI Premier Technology, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of February, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following. I also will email a copy of the materials filed under seal to the same counsel:

John Kenneth Zwerling
The Law Offices of John Kenneth Zwerling, P.C.
114 North Alfred Street
Alexandria, VA 22314
jz@zwerling.com

Lauren Wetzler
United States Attorney Office
2100 Jamieson Avenue
Alexandria, VA 22314
lauren.wetzler@usdoj.gov


*/s/  John F. O'Connor*
John F. O'Connor
Virginia Bar No. 93004
Attorney for Defendant CACI Premier Technology,
    Inc.
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
(202) 429-3902 – facsimile
joconnor@steptoe.com