**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

SUHAIL NAJIM ABDULLAH AL SHIMARI, *et al.*,

Plaintiffs,

v.

CACI PREMIER TECHNOLOGY, INC.,

Defendant,

No. 1:08-cv-0827 LMB-JFA

**MEMORANDUM IN SUPPORT OF DEFENDANT CACI PREMIER TECHNOLOGY, INC.'S MOTION TO STAY PROCEEDINGS PENDING FILING AND DISPOSITION OF A PETITION FOR A WRIT OF *CERTIORARI***


John F. O'Connor (Va. Bar #93004)
Linda C. Bailey (admitted *pro hac vice*)
Molly B. Fox (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
(202) 429-3902 – facsimile
joconnor@steptoe.com
lbailey@steptoe.com
mbfox@steptoe.com

William D. Dolan, III (Va. Bar #12455)
LAW OFFICES OF WILLIAM D. DOLAN, III, PC
8270 Greensboro Drive, Suite 700
Tysons Corner, Virginia 22102
(703) 584-8377 – telephone
wdolan@dolanlaw.net

*Counsel for Defendant CACI Premier Technology, Inc.*

# TABLE OF CONTENTS

**I. INTRODUCTION** ........ 1

**II. BACKGROUND** ........ 2

**III. ANALYSIS** ........ 7

A. There Is at Least a Reasonable Probability that the Supreme Court Will Grant Review of the Fourth Circuit's Decision ........ 8

B. There Is at Least a Fair Prospect that the Supreme Court Will Reverse the Fourth Circuit ........ 12

1. Effectively Unreviewable ........ 14
2. Conclusively Determined ........ 17
3. Separate from the Merits ........ 17
4. There Is an Overwhelming Likelihood of Irreparable Harm Absent a Stay ........ 18
5. The Balance of Equities Decisively Favors a Stay ........ 20

**IV. CONCLUSION** ........ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Shimari v. CACI Int'l, Inc.*,
658 F.3d 413 (4th Cir. 2011) ....................3, 15, 19

*Al Shimari v. CACI Int'l, Inc.*,
679 F.3d 205 (4th Cir. 2012) (*en banc*) .................... *passim*

*Al Shimari v. CACI Premier Tech., Inc.*,
368 F. Supp. 3d 935 (E.D. Va. 2019) ....................6, 16, 17, 18

*Al Shimari v. CACI Premier Tech., Inc.*,
758 F.3d 516 (4th Cir. 2014) ....................4

*Al Shimari v. CACI Premier Tech., Inc.*,
775 F. App'x 758 (4th Cir. 2019) ....................6, 7, 10

*Al Shimari v. CACI Premier Tech., Inc.*,
840 F.3d 147 (4th Cir. 2016) ....................5

*Alaska v. United States*,
64 F.3d 1352 (9th Cir. 1995) ....................11

*Clinton v. Jones*,
520 U.S. 681 (1997)....................7, 8

*FDIC v. Meyer*,
510 U.S. 471 (1994)....................14

*Feres v. United States*,
340 U.S. 135 (1950)....................9

*Filarsky v. Delia*,
566 U.S. 377 (2012)....................15

*Gilligan v. Morgan*,
413 U.S. 1 (1973)....................19

*Hollingsworth v. Perry*,
558 U.S. 183 (2012) (*per curiam*) ....................8

*Houston Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.*,
481 F.3d 265 (5th Cir. 2007) ....................10

*John Doe Agency v. John Doe Corp.*,
488 U.S. 1306 (1989) ....................................................................................11

*Kiyemba v. Obama*,
561 F.3d 509 (D.C. Cir. 2009) ....................................................................................19

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)....................................................................................7

*Lane v. Pena*,
518 U.S. 187 (1996)....................................................................................16

*Martin v. Halliburton*,
618 F.3d 476 (5th Cir. 2010) ....................................................................................10

*Maryland v. King*,
133 S. Ct. 1 (2012)....................................................................................8, 11, 13

*McMahon v. Presidential Airways, Inc.*,
502 F.3d 1331 (11th Cir. 2007) ....................................................................................9

*Mitchell v. Forsyth*,
472 U.S. 511 (1985).................................................................................... *passim*

*Nero v. Mosby*,
890 F.3d 106 (4th Cir. 2018) ....................................................................................14

*Nixon v. Fitzgerald*,
457 U.S. 731 (1982)....................................................................................13

*Oscarson v. Office of Senate Sergeant at Arms*,
550 F.3d 1 (D.C. Cir. 2008)....................................................................................12

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
506 U.S. 139 (1993)....................................................................................12, 13, 14, 17

*Philip Morris USA Inc. v. Scott*,
561 U.S. 1301 (2010) ....................................................................................20

*Pullman Construction Industries, Inc. v. United States*,
23 F.3d 1166 (7th Cir. 1994) ....................................................................................11

*San Diegans for Mt. Soledad Nat'l War Mem'l v. Paulson*,
548 U.S. 1301 (2006) ....................................................................................21

*In re Sealed Case*,
192 F.3d 995 (D.C. Cir. 1999)....................................................................................12

*Smith v. McDonald*,
737 F.2d 427 (4th Cir. 1984) ....................15

*Sumner v. Mata*,
446 U.S. 1302 (1980) ....................11

*United States v. Mitchell*,
463 U.S. 206 (1983)....................14

*United States v. Stanley*,
483 U.S. 669 (1987)....................16

*Williford v. Armstrong World Indus., Inc.*,
715 F.2d 124 (4th Cir. 1983) ....................8

*In re World Trade Center Disaster Site Litigation*,
521 F.3d 169 (2d Cir. 2008)....................9, 10, 11, 15

*Yearsley v. W.A. Ross Constr. Co.*,
309 U.S. 18 (1940)....................15

**Statutes**

28 U.S.C. § 1350....................3

42 U.S.C. § 5148....................10

## I. INTRODUCTION

CACI Premier Technology, Inc. ("CACI") respectfully requests that the Court stay proceedings pending the filing and disposition of its petition for a writ of *certiorari* in the United States Supreme Court. The Fourth Circuit dismissed CACI's appeal of this Court's order denying derivative sovereign immunity, holding that such orders are not immediately appealable under the collateral order doctrine. The panel further denied CACI's motion to stay issuance of the mandate in a divided vote, with Judge Quattlebaum supporting a stay. CACI filed an application to stay issuance of the mandate with Chief Justice Roberts in his capacity as Circuit Justice for the Fourth Circuit. After CACI filed its application, however, the mandate issued on October 21, 2019, thus returning jurisdiction to this Court. Chief Justice Roberts denied CACI's stay application on October 23, 2019, but did so "without prejudice to applicants filing a new application after seeking relief in the district court." Ex. 1. CACI now seeks that relief.

Good cause exists to enter a stay pending Supreme Court consideration. The Fourth Circuit's decision presents a question of far-reaching legal and practical significance that has divided lower courts: whether orders denying derivative sovereign immunity can be immediately appealed under the collateral order doctrine. The Fourth Circuit's holding deepens that existing circuit split and creates a substantial probability that the Supreme Court will grant review. In addition, there is at least a fair prospect that the Supreme Court will reverse the Fourth Circuit's decision. That ruling squarely conflicts with the high court's collateral order precedent, which establishes that orders denying absolute immunity, qualified immunity, and Eleventh Amendment immunity are all immediately appealable because those immunities are designed to insulate defendants not only from liability but also from the burdens of litigation itself. As the

Second and Eleventh Circuits have recognized in authorizing immediate appeals from denials of derivative sovereign immunity, the same policies are implicated here.

A stay is necessary as, without it, CACI will be compelled to defend itself at trial—a burden from which derivative sovereign immunity is designed to shield contractors. Proceeding to trial in this case would be particularly inappropriate because it would place this Court in a supervisory role over highly sensitive issues of military strategy, operations, and intelligence that are outside of the judicial purview. Because CACI's rights cannot be restored through post-judgment judicial review—and the unwarranted interference with military affairs cannot be remedied after trial—a stay is necessary to preserve the status quo pending the filing and disposition of a petition for a writ of *certiorari*.

CACI will proceed with alacrity with its petition for *certiorari*, and commits to file that petition by November 15, 2019. (The deadline for the petition under the Supreme Court Rules is December 30, 2019). Unless Plaintiffs delay the schedule by seeking an extension for their response, the Supreme Court will consider that petition at the Court's January 17, 2020 conference. If the Court grants the petition, as CACI believes will occur, historical practice indicates that the case will be argued and decided in the Supreme Court's current term. This Court should seize the opportunity to facilitate that review.

## II. BACKGROUND

In 2003, the United States took control of Abu Ghraib, a prison facility located in an active war zone near Baghdad, Iraq. Dkt. #843-1 at 1-2. The United States used the facility to detain criminals, enemies of the provisional government, and others thought to possess information regarding Iraqi insurgents. *Al Shimari v. CACI Int'l, Inc.*, 679 F.3d 205, 209 (4th Cir. 2012) (*en banc*) ("*Al Shimari II*"). Because of a shortage of trained military interrogators,

the United States hired civilian contractors to interrogate detainees. CACI was one of those civilian contractors. Dkt. #843-1 at 2; *see also* Dkt. #1044-1 at 536-606.

Plaintiffs are Iraqi nationals who allege they were detained by the U.S. military in the Abu Ghraib prison. Third Am. Compl. ¶¶ 4–7. They brought claims against CACI (but not the United States) under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, and various common-law theories, seeking damages for injuries they allegedly sustained from abuse during their detention. Plaintiffs initially alleged that CACI employees directly mistreated and abused them and that U.S. military personnel did the same pursuant to a conspiracy with CACI employees. Plaintiffs thereafter dismissed with prejudice a number of their direct liability claims against CACI, Dkt. #574, and this Court dismissed the remaining direct liability claims, Dkt. #680. Accordingly, Plaintiffs' only remaining claims allege that CACI violated the ATS when its employees purportedly conspired with, or aided and abetted, U.S. military personnel who mistreated Plaintiffs. As Plaintiffs confirmed, "this is a conspiracy and aiding and abetting case" now; they "are not contending that the CACI interrogators laid a hand on the plaintiffs." Dkt. #649 at 15.

CACI's first motion to dismiss was premised on multiple grounds, including preemption and derivative absolute official immunity. In 2011, the Fourth Circuit held that federal law preempted Plaintiffs' claims. *Al Shimari v. CACI Int'l, Inc.*, 658 F.3d 413 (4th Cir. 2011) ("*Al Shimari I*"). On rehearing *en banc*, a divided Fourth Circuit rejected the panel's decision, holding that it lacked appellate jurisdiction. *Al Shimari II*, 679 F.3d at 223. As relevant here, the *en banc* court concluded that, although "fully developed rulings denying" other kinds of immunity "are immediately appealable, . . . denials based on sovereign immunity (or derivative claims thereof) may not be." *Id.* at 211 n.3; *see also id.* at 220-23. Judges Wilkinson, Niemeyer, and Shedd dissented.

Judge Wilkinson emphasized that the "jurisdictional ruling is wrong" and that "these are not routine appeals that can be quickly dismissed through some rote application of the collateral order doctrine." *Al Shimari II*, 679 F.3d at 225 (Wilkinson, J., dissenting). The "collateral order doctrine," Judge Wilkinson explained, enables an appellate court to "confront in a timely manner issues presenting grave, far-reaching consequences." *Id.* at 244. Underlying that doctrine is the "eminently reasonable conclusion that immunities from suit should be recognized sooner rather than later." *Id.* According to Judge Wilkinson, the majority's "dismissal of these appeals gives individual district courts the green light to subject military operations to the most serious drawbacks of tort litigation," contrary to "decades of Supreme Court admonitions warning federal courts off interference with international relations." *Id.* at 226. This "extraordinary case presenting issues that touch on the most sensitive aspects of military operations and intelligence," Judge Wilkinson concluded, falls squarely within the collateral order doctrine. *Id.* at 245.

Judge Niemeyer expressed many of the same concerns in his dissent, reasoning that the Fourth Circuit "undoubtedly ha[d] appellate jurisdiction now to consider" the "immunity issues" "under the well-established principles" of this Court's collateral order precedent. *Al Shimari II*, 679 F.3d at 249 (Niemeyer, J., dissenting). "If there ever were important, collateral decisions that would qualify under *Cohen* as reviewable final decisions, the district courts' denials of immunity in these cases are such decisions." *Id.* at 250. In Judge Niemeyer's view, "only the Supreme Court can now fix our wayward course." *Id.* at 248.

On remand, this Court dismissed Plaintiffs' ATS claims because they involved extraterritorial application, but the Fourth Circuit reversed and directed the Court to address the political question doctrine. *Al Shimari v. CACI Premier Tech., Inc.*, 758 F.3d 516, 533–34 (4th

Cir. 2014) ("*Al Shimari III*"). This Court then dismissed based on that doctrine, but the Fourth Circuit vacated the ruling and remanded for further discovery. *Al Shimari v. CACI Premier Tech., Inc.*, 840 F.3d 147, 160 (4th Cir. 2016) ("*Al Shimari IV*").

When the case returned again to this Court, Plaintiffs abandoned a number of their claims of direct abuse by CACI as well as their common-law claims, and this Court dismissed the remaining claims of direct abuse, *see* Dkt. #574, 680, leaving only Plaintiffs' conspiracy and aiding-and-abetting claims against CACI under the ATS. CACI then filed a third-party complaint against the United States, seeking reimbursement from the government for any damages ultimately awarded against it. Dkt. #665 at 52-65. The United States moved to dismiss CACI's claims based on sovereign immunity, invoking both the foreign-country exception and the combatant-activities exception to the Federal Tort Claims Act. *See* Dkt. #697. The United States later moved for summary judgment on separate grounds. Dkt. #1130. CACI, in turn, moved to dismiss Plaintiffs' claims on the basis of derivative sovereign immunity. *See* Dkt. #1150.

This Court permitted limited discovery by CACI, but CACI's efforts to build a record supporting its defenses were repeatedly frustrated. The United States, through Secretary of Defense Mattis, invoked the state secrets privilege to withhold the identities of soldiers and civilians who interrogated Plaintiffs—including CACI's own personnel—and to withhold documents detailing approved interrogation plans and interrogation reports. Dkt. #791 at 1-2, 850, 887, 921, 1021, 1044-1 at 694-96. This Court upheld the United States' assertions of the state secrets privilege. *See* Dkt. #1012. CACI was also restricted to pseudonymous depositions of the interrogators by telephone, where the permissible questions were strictly limited to avoid

revealing the deponents' identities. Dkt. #1044-1, Ex. 1 at 8-16 (Interrogator A); Dkt. #1127-1, Ex. 55 at 11-24 (CACI Interrogator G).

The Court then denied the government's motion to dismiss on the basis of sovereign immunity, concluding that "the United States does not retain sovereign immunity for violations of jus cogens norms of international law," *Al Shimari v. CACI Premier Tech., Inc.*, 368 F. Supp. 3d 935, 968 (E.D. Va. 2019)—*i.e.*, rules of the "highest status" in international law, *id.* at 955. After denying the government's motion to dismiss based on sovereign immunity, the Court also denied CACI's motion to dismiss "based on a claim of 'derivative sovereign immunity.'" 368 F. Supp. 3d at 970. The court concluded that, "[b]ecause this Court has ruled that sovereign immunity does not protect the United States from claims for violations of *jus cogens* norms, the first prong of the derivative sovereign immunity test is not met, and CACI's Motion to Dismiss based on a theory of derivative immunity will be denied." *Id.* The Court also granted the government's motion for summary judgment, concluding that a contract closeout agreement between the government and CACI released CACI's claims against the United States. 368 F. Supp. 3d at 973-74.

CACI appealed this Court's "order denying it derivative sovereign immunity," but the Fourth Circuit "dismiss[ed] because [it] lack[ed] jurisdiction." *Al Shimari v. CACI Premier Tech., Inc.*, 775 F. App'x 758, 759 (4th Cir. 2019) ("*Al Shimari V*"). That conclusion, the Fourth Circuit explained, "follow[ed] from the reasoning of [its] prior *en banc* decision" in *Al Shimari II*, where the court of appeals held that "'fully developed rulings' denying 'sovereign immunity (or derivative claims thereof) may not' be immediately appealable." *Id.* at 759–60 (quoting *Al Shimari II*, 679 F.3d at 217 n.3). The Fourth Circuit went on to reason, in the alternative, that "even if a denial of derivative sovereign immunity may be immediately appealable, our review is

barred here because there remain continuing disputes of material fact with respect to CACI's derivative sovereign immunity defenses." *Id.* at 760.

Judge Quattlebaum "reluctantly" concurred in the judgment. In contrast with the majority's categorical reading of *Al Shimari II*'s jurisdictional holding as foreclosing all collateral order appeals of denials of derivative sovereign immunity, Judge Quattlebaum read the decision as permitting an immediate appeal from the denial of derivative sovereign immunity where "the appeal involves an 'abstract issue of law' or a 'purely legal question.'" *Al Shimari V*, 775 F. App'x at 760 (Quattlebaum, J., concurring in judgment) (quoting *Al Shimari II*, 679 F.3d at 221–22). Judge Quattlebaum emphasized that the Fourth Circuit's "narrow interpretation of the collateral order doctrine in this case has taken us down a dangerous road" by "allow[ing] discovery into sensitive military judgments and wartime activities" and by "open[ing] the door to an order that the United States has no sovereign immunity for claims that our military activities violated international norms—whatever those are." *Id.* at 760–61.

The Fourth Circuit denied CACI's petition for rehearing or rehearing *en banc*. Order, No. 19-1328 (4th Cir. Oct. 1, 2019). A divided panel also denied CACI's motion to stay the mandate. Order, No. 19-1328 (4th Cir. Oct. 11, 2019). Judge Quattlebaum voted to grant the motion. *Id.* The Chief Justice denied CACI's application for a stay pending the filing and disposition of a petition for a writ of *certiorari* "without prejudice to" CACI's "filing a new application after seeking relief in the district court. Ex. 1.

## III. ANALYSIS

The Court "has broad discretion to stay proceedings as an incident to its power to control its own docket," *Clinton v. Jones*, 520 U.S. 681, 706 (1997), and in considering the "economy of time and effort for itself, for counsel and for litigants," *Landis v. N. Am. Co.*, 299 U.S. 248, 254

(1936). This power applies "especially in cases of extraordinary public moment," where "a plaintiff may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Clinton*, 520 U.S. at 707 (citation and internal quotation marks omitted). "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

Although this Court's broad discretion to grant a stay pending the filing and disposition of a petition for a writ of *certiorari* is not constrained by any particular test, the Supreme Court's standard in considering stay applications is instructive. The Supreme Court has found it appropriate to stay lower court proceedings pending filing and resolution of a petition for *certiorari* where there is "(1) a reasonable probability that [the Supreme Court] will grant *certiorari*, (2) a fair prospect that the Court will then reverse the decision below, and (3) a likelihood that irreparable harm will result from the denial of a stay." *Maryland v. King*, 133 S. Ct. 1, 2 (2012) (Roberts, C.J., Circuit Justice) (internal quotation marks and alterations omitted). "In close cases the Circuit Justice or the Court will balance the equities and weigh the relative harms to the applicant and to the respondent." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2012) (*per curiam*). These standards are all met here.

### A. There Is at Least a Reasonable Probability that the Supreme Court Will Grant Review of the Fourth Circuit's Decision

This Court has recognized that this case presents issues worthy of Supreme Court consideration: "There are lots of issues in this case now that are probably Supreme Court eligible." 6/15/18 Tr. at 14. That observation applies with full force to the instant issue. There is at least a reasonable probability that the Supreme Court will grant *certiorari* to resolve the important issue of appellate jurisdiction presented in this case: whether orders denying claims of

derivative sovereign immunity are immediately appealable under the collateral order doctrine. Both that question—and the antecedent question whether orders denying the United States' claims of sovereign immunity are immediately appealable—have divided the circuits. This "extraordinary case presenting issues that touch on the most sensitive aspects of military operations and intelligence" is an ideal opportunity for the Court to bring clarity to this important area. *Al Shimari II*, 679 F.3d at 245 (Wilkinson, J., dissenting).

Both the Second and Eleventh Circuits have held that rulings denying derivative sovereign immunity are immediately appealable under the collateral order doctrine. In *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331 (11th Cir. 2007), the Eleventh Circuit held that a government contractor's "claim to derivative *Feres* immunity qualifies as a collateral order." *Id.* at 1339. The contractor in that case invoked "a theory of derivative sovereign immunity" that allegedly "entitled [the contractor] to the government's *Feres* immunity," which provides that "the government is immune from claims brought by soldiers for their service-related injuries." *Id.* at 1337, 1339; *see also Feres v. United States*, 340 U.S. 135, 146 (1950). The Eleventh Circuit explained that the "government's *Feres* immunity from soldiers' service-related tort claims is justified, in part, by the need to avoid judicial interference with military discipline and sensitive military judgments" and that the contractor therefore had "stated a substantial claim to a true immunity from suit, such that an erroneous denial would be 'effectively unreviewable on appeal from a final judgment.'" *McMahon*, 502 F.3d at 1339-40 (quoting *Sell v. United States*, 539 U.S. 166, 176 (2003)).

Similarly, in *In re World Trade Center Disaster Site Litigation*, 521 F.3d 169 (2d Cir. 2008), the Second Circuit exercised "collateral order jurisdiction to determine" whether sovereign immunity under the Stafford Act—which provides the United States with "immunity

from suit" for certain claims related to disaster relief—"may extend derivatively to non-federal entities working in cooperation with federal agencies." *Id.* at 192-93; *see also* 42 U.S.C. § 5148. "To deny an interlocutory appeal in that circumstance," the court reasoned, "would be contrary to the policy concerns first set forth [in this Court's decision] in *Cohen*" because it "could well result 'in a trial that would imperil a substantial public interest.'" *In re World Trade Ctr.*, 521 F.3d at 192 (quoting *Will v. Hallock*, 546 U.S. 345, 353 (2006)).

The Fourth and Fifth Circuits have reached the exact opposite conclusion about the appealability of rulings denying derivative sovereign immunity. In *Martin v. Halliburton*, 618 F.3d 476 (5th Cir. 2010), the Fifth Circuit held that it "lack[ed] jurisdiction to review the district court's denial of Defendants' claim of derivative sovereign immunity" in a case arising out of government contractors' provision of "logistical support to the United States Army in Iraq." *Id.* at 478, 485; *see also Houston Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.*, 481 F.3d 265, 281 (5th Cir. 2007) (holding that a ruling denying a private insurer's claim of derivative sovereign immunity was not an immediately appealable collateral order).

The Fourth Circuit exacerbated that existing conflict when it dismissed CACI's appeal of this Court's ruling denying CACI's claim of derivative sovereign immunity because, in its view, even "'fully developed rulings' denying 'sovereign immunity (or derivative claims thereof) may not' be immediately appealable." 775 F. App'x at 760 (quoting *Al Shimari II*, 679 F.3d at 217 n.3). If CACI's appeal had been brought in the Second Circuit or Eleventh Circuit, there would have been jurisdiction to review this Court's ruling. But the Fourth Circuit dismissed the appeal because it "ha[s] never held" that "a denial of sovereign immunity or derivative sovereign immunity is immediately reviewable on interlocutory appeal." *Id.*

This circuit split on a frequently recurring and immensely important question of federal appellate jurisdiction is more than sufficient to create a reasonable probability of the Supreme Court's review. *See Maryland*, 133 S. Ct. at 2 (granting stay where the decision below "conflict[ed] with" decisions of other courts); *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309 (1989) (Marshall, J., Circuit Justice) (same); *Sumner v. Mata*, 446 U.S. 1302, 1306 (1980) (Rehnquist, J., Circuit Justice) (same).

Moreover, the likelihood of the Supreme Court's granting review is amplified by a split in the circuits on the antecedent question whether rulings denying the *United States'* invocation of sovereign immunity are immediately appealable. The Seventh and Ninth Circuits have held that denials of the United States' sovereign-immunity claims are not immediately appealable. In *Pullman Construction Industries, Inc. v. United States*, 23 F.3d 1166 (7th Cir. 1994), the Seventh Circuit dismissed the United States' interlocutory appeal because, "[f]ar from asserting a right not to be a litigant, the United States [was] asserting a defense to the payment of money," which is insufficient to give rise to an immediately appealable collateral order. *Id.* at 1169. The Ninth Circuit explicitly endorsed that position in *Alaska v. United States*, 64 F.3d 1352 (9th Cir. 1995), where it dismissed the United States' interlocutory appeal because "federal sovereign immunity is not best characterized as a right not to stand trial altogether." *Id.* at 1355 (internal quotation marks omitted).

The Second Circuit, in contrast, has expressly rejected that reasoning, explaining that it was "not convinced that *Pullman* or its progeny counsel us to disregard the statements of the Supreme Court that sovereign immunity encompasses a right not to be sued." *In re World Trade Ctr.*, 521 F.3d at 191 (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). Similarly, the D.C. Circuit has held that "federal sovereign immunity is an immunity from suit" and that the denial

of federal sovereign immunity in a criminal contempt proceeding was immediately appealable. *In re Sealed Case*, 192 F.3d 995, 999 (D.C. Cir. 1999).

The "apparent split in the circuits over whether denials of claims of federal sovereign immunity may ever qualify for interlocutory review," *Oscarson v. Office of Senate Sergeant at Arms*, 550 F.3d 1, 2-3 (D.C. Cir. 2008), compounds the reasons for granting *certiorari* in this case, which provides the Supreme Court with the opportunity to resolve both whether rulings denying derivative claims of sovereign immunity are immediately appealable collateral orders and the antecedent question whether rulings denying the government's own invocations of immunity are immediately appealable. There is at least a reasonable probability that the high court will grant review to resolve these important questions. *See Mitchell v. Forsyth*, 472 U.S. 511, 519 (1985) (review granted to resolve a circuit split on whether orders denying qualified immunity are appealable collateral orders); *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 141, 147 (1993) (review granted to resolve a circuit split on "whether a district court order denying" a State's claim to "immunity from suit in federal court may be appealed under the collateral order doctrine").

### B. There Is at Least a Fair Prospect that the Supreme Court Will Reverse the Fourth Circuit

The Supreme Court has repeatedly concluded that orders denying various forms of immunity are immediately appealable under the collateral order doctrine. The Fourth Circuit's decision contravened the principles established in the high court's collateral order jurisprudence by relegating claims of derivative sovereign immunity by federal contractors (and sovereign immunity by the United States) to an unwarranted second-class status in which erroneous denials of immunity can only be remedied *after* a final judgment on the merits. At the very least, "given the considered analysis of courts on the other side of the split"—the Second and Eleventh

Circuits' decisions that orders denying derivative sovereign immunity are immediately appealable—"there is a fair prospect that this Court will reverse the decision below." *Maryland*, 133 S. Ct. at 3.

The Supreme Court has held that rulings denying claims of a number of forms of immunity are immediately appealable under the collateral order doctrine. In *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), for example, the Court held that denials of government officials' claims of absolute immunity "are appealable under the *Cohen* criteria." *Id*. at 742. The decision did not break new ground, but instead built upon previous decisions holding that denials of claims of immunity under the Speech and Debate Clause and the Double Jeopardy Clause are immediately appealable. *Id.* (citing *Helstoski v. Meanor*, 442 U.S. 500 (1979); *Abney v. United States*, 431 U.S. 651 (1977)).

The Supreme Court has continued to build on that line of precedent in subsequent cases considering the appealability of orders denying immunity. In *Mitchell v. Forsyth*, the Supreme Court held that a "district court's denial of a claim of qualified immunity, to the extent it turns on an issue of law," is immediately appealable because, absent immediate appeal, the "essential attribute" of qualified immunity—an "entitlement not to stand trial under certain circumstances"—would be lost. 472 U.S. at 525, 530. The "consequences" of an absence of appellate review, the high court emphasized, were "not limited to liability for money damages," but extended to the costs of trial, distraction from duties, inhibition of action, and deterrence from public service—none of which could be remedied by a post-judgment appeal. *Id.* at 526.

The Supreme Court subsequently applied the principles of *Nixon* and *Mitchell* in *Puerto Rico Aqueduct*, where it held that "the same rationale ought to apply to claims of Eleventh Amendment immunity." 506 U.S. at 144. The Court explained that the Constitution's

"withdrawal of jurisdiction effectively confers [on States] an immunity from suit" in federal court and that, "[o]nce it is established that a State and its 'arms' are, in effect, immune from suit, . . . it follows that the elements of the *Cohen* collateral order doctrine are satisfied." *Id.*

There is at least a fair prospect that the Supreme Court will apply these well-established principles to conclude that denials of derivative sovereign immunity are immediately appealable under the collateral order doctrine. Indeed, as explained below, each of the collateral order elements are met in this case. *See Mitchell*, 472 U.S. at 527 (interlocutory orders are immediately appealable if they are "effectively unreviewable on appeal from a final judgment," "conclusively determine the disputed question," and involve a claim "separable from . . . rights asserted in the action").

**1. Effectively Unreviewable**

A denial of derivative sovereign immunity is effectively unreviewable on appeal from a final judgment because derivative sovereign immunity, like other forms of immunity, is an immunity from suit. The Supreme Court has made clear that "sovereign immunity shields the Federal Government and its agencies from suit." *Meyer*, 510 U.S. at 475; *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic" under the principle of sovereign immunity "that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). Thus, like state sovereign immunity (as well as absolute and qualified immunity), federal sovereign immunity is "jurisdictional," *Meyer*, 510 U.S. at 475, not a "mere defense to liability," *Mitchell*, 472 U.S. at 526. "[A]n immunity from suit confers a right not to bear the burdens of litigation and cannot be 'effectively vindicated' after litigation." *Nero v. Mosby*, 890 F.3d 106, 121 (4th Cir. 2018) (quoting *Mitchell*, 472 U.S. at 525-27). Thus, delaying an appeal "would defeat [CACI's] claim that [it] should not be put to

trial, which is the initial protection of absolute privilege." *Smith v. McDonald*, 737 F.2d 427, 428 (4th Cir. 1984), *aff'd*, 472 U.S. 479 (1985). Loss of that privilege, by itself, constitutes irreparable harm. And, as with those other forms of immunity, the only way to vindicate the United States' immunity from suit in the face of an erroneous order denying immunity is to afford the government an immediate right to appeal. *See In re World Trade Ctr.*, 521 F.3d at 191. A post-judgment appellate decision reversing the denial of sovereign immunity comes too late.

Federal contractors possess this same immunity when they perform services pursuant to a contract with the United States. The Supreme Court has repeatedly recognized the importance of "[a]ffording immunity not only to public employees but also to others acting on behalf of the government." *Filarsky v. Delia*, 566 U.S. 377, 390 (2012); *see also Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20–21 (1940) (if the government "validly conferred" authority on a private contractor, "there is no liability on the part of the contractor for executing [the government's] will"). Accordingly, sovereign immunity protects both the United States and private contractors acting on its behalf from the burdens of litigation—a right that would be lost if adverse immunity rulings could not be reviewed until after trial.

The importance of immediate review is elevated here because Plaintiffs' claims directly challenge conduct by the United States military during an ongoing military campaign. "If there ever were important, collateral decisions that would qualify under *Cohen* as reviewable final decisions, the district courts' denials of immunity in these cases are such decisions." *Al Shimari I*, 679 F.3d at 250 (Niemeyer, J., dissenting). Plaintiffs allege that CACI aided and abetted military personnel in committing violations of international norms. Pressing and defending against those claims will require inquiries into sensitive aspects of military operations and

intelligence-gathering. Military personnel and CACI employees will likely be required to discuss the interrogation procedures that existed at Abu Ghraib, who devised them, and how they were implemented. And military documents will need to be introduced to show what written interrogation policies existed and whether they were followed. "Even putting aside the risk of erroneous judicial conclusions (which would becloud military decisionmaking), the *mere process of arriving at* correct conclusions would disrupt the military regime." *United States v. Stanley*, 483 U.S. 669, 683 (1987) (emphasis added).

Yet, under the Fourth Circuit's decision, all of this would occur without any appellate court ever weighing in on whether the United States "impliedly" waived its sovereign immunity for violations of *jus cogens* norms, as this Court ruled. *Al Shimari*, 368 F. Supp. 3d at 965. *But see Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be *unequivocally expressed* in statutory text, and *will not be implied*.") (citations omitted; emphasis added). And all of this would likewise occur without an appellate court weighing in on whether CACI is entitled to share in any immunity possessed by the United States. "These were precisely the sort of concerns that animated the Supreme Court's extension of the collateral order doctrine to appeals pertaining to qualified immunity." *Al Shimari*, 679 F.3d at 246 (Wilkinson, J., dissenting). The immunity is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526–27.

The Fourth Circuit's decision means that denials of derivative sovereign immunity are never appealable before final judgment. Thus, while an officer denied qualified immunity for a wrongful arrest would be entitled to an immediate appeal of that decision, a government contractor denied derivative sovereign immunity for actions taken in a war zone under the

direction of the United States military must wait for the end of trial to appeal. That discrepancy has no basis in common sense or in Supreme Court precedent.

**2. Conclusively Determined**

This Court's decision "conclusively determine[d] the disputed question," whether CACI is entitled to derivative sovereign immunity. *Mitchell*, 472 U.S. at 527. "The denial of a defendant's motion for dismissal or summary judgment on the ground of qualified immunity easily meets th[is] requirement[ ]." *Mitchell*, 472 U.S. at 527. The denial of CACI's motion to dismiss on the ground of derivative sovereign immunity does so just as easily. This Court decided as a matter of law that the United States waived its sovereign immunity for *jus cogens* violations and that CACI therefore could not be derivatively immune from suit. 368 F. Supp. 3d at 970. That ruling "finally and conclusively determine[d] the defendant's claim of right not to stand trial on the plaintiff[s'] allegations." *Id.* (emphasis omitted); *see also P.R. Aqueduct*, 506 U.S. at 145 ("Denials of . . . claims to Eleventh Amendment immunity purport to be conclusive determinations that [States] have no right not to be sued in federal court.").

This Court's holding that the United States lacks immunity for claims of *jus cogens* violations and that, therefore, CACI cannot be derivatively immune conclusively resolves CACI's immunity defense on two levels. First, it conclusively denies CACI a right not to stand trial. Second, it makes CACI *per se* ineligible to develop a factual record on immunity at trial. CACI's very eligibility for immunity has been denied as a matter of law, thus making the promise of a post-trial appeal on immunity illusory.

**3. Separate from the Merits**

CACI's "claim of immunity is conceptually distinct from the merits of the plaintiff[s'] claim that [their] rights have been violated." *Mitchell*, 472 U.S. at 528. In deciding whether the

district court correctly denied CACI's claim of derivative sovereign immunity, the Fourth Circuit "need not consider the correctness of" Plaintiffs' "version of the facts, nor even determine whether" the allegations state a plausible claim for relief. *Id.* at 528. Instead, all the Fourth Circuit would have to address is whether the United States waived its sovereign immunity for *jus cogens* violations. If it did not, then this Court's denial of CACI's claim of derivative sovereign immunity must be vacated because that ruling rested exclusively on the United States' supposed waiver of sovereign immunity. *See* 368 F. Supp. 3d at 970. And, to the extent that the Fourth Circuit rejects this Court's legal reasoning and goes on to address whether CACI meets the requirements for invoking the United States' immunity, that inquiry would still be separate from the merits of the case. *See Mitchell*, 472 U.S. at 528-29 (a "question of immunity is separate from the merits of the underlying action for purposes of the *Cohen* test even though a reviewing court must consider the [plaintiffs'] factual allegations in resolving the immunity issue").

#### 4. There Is an Overwhelming Likelihood of Irreparable Harm Absent a Stay

If this Court does not issue a stay, the resumption of the proceedings in this Court will cause irreparable harm to CACI.

In the absence of a stay, CACI will be compelled to incur the immense burdens of litigating this case through trial—the very type of harm that contractors' derivative sovereign immunity is intended to prevent. In preparing for and defending itself at trial, all of the serious "consequences" that this Court has sought to guard against when recognizing other forms of immunity—the "costs" of trial, "distraction" from duties, and "deterrence of able people from public service"—will be inflicted on CACI. *Mitchell*, 472 U.S. at 526. There is no way to vindicate these interests through a post-judgment appeal reversing the district court's immunity ruling because CACI is entitled to immunity *from suit*, not simply immunity from liability.

Moreover, to determine CACI's liability at trial, this Court and the jury will be required to exercise supervisory powers over the military's intelligence-gathering procedures, interrogation techniques, and covert strategies for identifying terrorists. But the "power of oversight and control of military force" is granted to "elected representatives and officials," not the "Judicial Branch." *Gilligan v. Morgan*, 413 U.S. 1, 11 (1973); *see also Kiyemba v. Obama*, 561 F.3d 509, 520 (D.C. Cir. 2009) (Kavanaugh, J., concurring) (emphasizing that the "detention" of "combatants" is an issue dedicated to the "political branches" and that the "Judiciary is not suited to second-guess" those decisions) (internal quotation marks omitted). Judicial interference with military operations here infringes on two branches of government: First, Congress's right to decide, through express statutory commands, when the federal government (and federal government contractors) will be subject to suit for military actions in a war zone, and second, the Executive's right to control wartime operations. The "danger[s]" posed by this judicial interference with military affairs "is precisely that which the collateral order doctrine is meant to forestall, namely the expenditure of years of litigation involving a succession of national security concerns in cases that plainly should be dismissed at the very outset." *Al Shimari I*, 679 F.3d at 247 (Wilkinson, J., dissenting).

The national-security setting in which this case arises will also significantly impair CACI's ability to defend itself at trial—increasing the likelihood of a substantial damages award and attendant pressure on CACI to settle before it can pursue a post-judgment appeal of this Court's immunity ruling. For example, the United States has not permitted any of the Plaintiffs to enter the country, which means that CACI may not be able to cross-examine its accusers in front of the jury. And the identities of both CACI's own and the United States' interrogation personnel at Abu Ghraib are classified state secrets, which means that the interrogators' identities

were withheld from the parties in discovery and will be unavailable to the jury at trial. The state secrets pervading this litigation will severely hamper the development of CACI's defense and its examination of the individuals who actually participated in Plaintiffs' interrogations.

A stay is warranted to prevent this far-reaching irreparable harm to CACI, the Nation's security interests, and the integrity and fundamental fairness of our judicial system.

### 5. The Balance of Equities Decisively Favors a Stay

The balance of equities also overwhelmingly favors a stay. Denying a stay will "visit an irreversible harm on" CACI, whereas "granting [a stay] will . . . do no permanent injury to" Plaintiffs. *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1305 (2010) (Scalia, J., Circuit Justice). Absent a stay, the district court will move forward with a trial that will impose immense burdens on CACI and permit the judiciary to exercise control over the military operations of the United States—without an appellate court ever considering CACI's claim to derivative sovereign immunity. Both the Fourth Circuit and the Supreme Court would be powerless to remedy those harms in a post-judgment appeal because it would be impossible to restore CACI's immunity from suit or the confidentiality of the military's intelligence-gathering practices and counterterrorism strategies.

In contrast, Plaintiffs would suffer no material harm from a stay. In their October 22, 2019 status report in this case, Plaintiffs' counsel intimated that current conditions in Iraq might jeopardize the ability of Plaintiffs Al Shimari and Al-Zuba'e to even participate in a trial of this case. Dkt. #1313 at 4. Indeed, at most, Plaintiffs' claims would be modestly delayed while the Supreme Court considers CACI's forthcoming petition for a writ of *certiorari*. CACI's deadline to file a petition for a writ of *certiorari* is December 30, 2019. CACI commits to file its *certiorari* petition by November 15, 2019. Under the Supreme Court's usual schedule, assuming

Plaintiffs do not seek an extension for their response, a *certiorari* petition filed November 15, 2019 would be considered at the Court's January 17, 2020 conference. Cases for which *certiorari* has been granted at that point in the Supreme Court's term historically have been set for argument before the end of that same term.

"Compared to the irreparable harm" of proceeding without a stay, "the harm in a brief delay" while this Court considers the case "seems slight"; the equities therefore "support preserving the status quo" as this appeal proceeds. *San Diegans for Mt. Soledad Nat'l War Mem'l v. Paulson*, 548 U.S. 1301, 1303 (2006) (Kennedy, J., Circuit Justice).

## IV. CONCLUSION

The Court should grant CACI's motion and stay proceedings until filing and disposition of CACI's petition for *certiorari* before the United States Supreme Court.

Respectfully submitted,

*/s/ John F. O'Connor*

John F. O'Connor
Virginia Bar No. 93004
Linda C. Bailey (admitted *pro hac vice*)
Molly Bruder Fox (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
(202) 429-3902 – facsimile
joconnor@steptoe.com
lbailey@steptoe.com
mbfox@steptoe.com

William D. Dolan, III
Virginia Bar No. 12455
LAW OFFICES OF WILLIAM D. DOLAN, III, PC
8270 Greensboro Drive, Suite 700
Tysons Corner, VA 22102
(703) 584-8377 – telephone
wdolan@dolanlaw.net

*Counsel for Defendant CACI Premier Technology, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of October, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following counsel:

John Kenneth Zwerling
The Law Offices of John Kenneth Zwerling, P.C.
114 North Alfred Street
Alexandria, VA 22314
jz@zwerling.com

*/s/ John F. O'Connor*

John F. O'Connor
Virginia Bar No. 93004
Attorney for Defendant CACI Premier Technology, Inc.
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
(202) 429-3902 – facsimile
joconnor@steptoe.com