UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 1:08-cv-0827 LMB-JFA ) |
| CACI PREMIER TECHNOLOGY, INC., | ) ) |
| Defendant, | ) ) |

**REPLY IN SUPPORT OF DEFENDANT CACI PREMIER TECHNOLOGY, INC.'S MOTION TO STAY PROCEEDINGS PENDING FILING AND DISPOSITION OF A PETITION FOR A WRIT OF *CERTIORARI***

**I.   INTRODUCTION**

Plaintiffs' opposition argues that CACI's prospects for obtaining *certiorari* review of the Fourth Circuit's decision in this case are "vanishingly remote." Pl. Opp. at 1-2. As this Court is well aware, however, issues bearing on the scope and contours of sovereign immunity are of particular interest to the Supreme Court because of their separation-of-powers implications. *Allen v. Cooper*, 895 F.3d 337, 347 (4th Cir. 2018), *cert. granted*, 139 S. Ct. 2664 (2019).[1] And as CACI explained in moving for a stay, the prospects for Supreme Court review are all the greater because the issue that will be presented by CACI's *certiorari* petition implicates two well-established circuit splits on the question of appellate jurisdiction.

Chief Justice Roberts' order on CACI's original application for a stay made clear that this Court should be given the first opportunity to decide whether to stay its hand pending filing and

---

[1] The Supreme Court is hearing oral argument in the *Allen* case on November 5, 2019.

resolution of a *certiorari* petition, with CACI free to renew its Supreme Court application if a stay is denied. Ex. 1. CACI has reasonable prospects for obtaining *certiorari* review and reversal of the Fourth Circuit's appellate jurisdiction ruling. Indeed, Plaintiffs' opposition concedes one circuit split implicated by CACI's *certiorari* petition, and its efforts to underplay a second circuit split are unavailing. Injury to CACI in the absence of a stay is by definition irreparable, and CACI has gone out of its way to minimize any delay Plaintiffs would suffer if the Supreme Court ultimately denies CACI's *certiorari* petition. Under these circumstances, the Court should stay this case so that the Supreme Court can consider and rule on CACI's *certiorari* petition.

II.     ANALYSIS

   A.   Plaintiffs Understate the Likelihood that the Supreme Court Will Grant CACI's *Certiorari* Petition

The parties agree that one of the issues bearing on CACI's stay motion is the likelihood that the Supreme Court will grant a *certiorari* petition. CACI Mem. at 8; Pl. Opp. at 7. If, as Plaintiffs posit, the circuit split identified by CACI were "non-existent," and the prospects for *certiorari* review were "vanishingly remote," Chief Justice Roberts could have simply denied CACI's stay application. Pl. Opp. at 1, 2. He did not do that. Rather, the Chief Justice denied CACI's application "without prejudice to applicants filing a new application after seeking relief in the district court." Ex. 1. Thus, the only direct data point regarding how CACI's *certiorari* petition might be viewed by the Supreme Court involved the Chief Justice specifically leaving the door open for CACI to renew its application if this Court does not grant a stay.

Indeed, as it has explained, CACI has reasonable prospects for obtaining *certiorari* review because the question of appellate jurisdiction that will be presented in its petition implicates *two* circuit splits: (1) whether denials of derivative sovereign immunity are among the

categories of orders that can be immediately appealed under the collateral order doctrine; and (2) the antecedent question whether denials of *sovereign* immunity are immediately appealable. CACI Mem. at 8-12. Plaintiffs essentially admit that there is an existing circuit split on the second of these issues – whether sovereign immunity involves a right not to be sued such that denials of sovereign immunity are immediately appealable. Pl. Opp. at 10-11; *see also In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 191 (2d Cir. 2008) ("sovereign immunity encompasses a right not to be sued") ("*World Trade Ctr.*"); *In re In re Sealed Case*, 192 F.3d 995, 999 (D.C. Cir. 1999) (per curiam) ("[F]ederal sovereign immunity is an immunity from suit, not simply a defense to liability on the merits."); *Pullman Constr. Indus., Inc. v. United States*, 23 F.3d 1166, 1168 (7th Cir. 1994) (denials of sovereign immunity not immediately appealable because sovereign immunity is a mere liability defense and not an immunity from suit).

With respect to the other circuit split that will be implicated by CACI's *certiorari* petition – whether denials of derivative sovereign immunity can be immediately appealed – Plaintiffs alternate between unconvincing attempts to rewrite the question presented and mischaracterization of the cases establishing this circuit split. Plaintiffs repeatedly misdescribe the Fourth Circuit decision as denying derivative sovereign immunity to CACI based on perceived factual disputes. Pl. Opp. at 12-14. That is how Judge Quattlebaum would have decided the case, but he concurred only in the judgment because his views did not command the support of a majority of the panel. *Al Shimari v. CACI Premier Tech., Inc.*, 775 F. App'x 758, 760 (2019) (Quattlebaum, J., concurring in the judgment) ("*Al Shimari V*"). The panel's majority opinion, however, held that its rejection of appellate jurisdiction "follow[ed] from the reasoning of [its] prior *en banc* decision" in *Al Shimari II*[2] to the effect that "'fully developed

---

[2] *Al Shimari v. CACI Int'l Inc*, 679 F.3d 205 (4th Cir. 2012) ("*Al Shimari II*").

rulings' denying 'sovereign immunity (or derivative claims thereof) may not' be immediately appealable." *Id.* at 759-60 (quoting *Al Shimari II*, 679 F.3d at 217 n.3). Thus, the basis for the Fourth Circuit's decision – its conclusion that orders denying derivative sovereign immunity are not within the categories of orders to which the collateral order doctrine applies – is the relevant question presented for *certiorari* purposes.

Plaintiffs' argument that there is no circuit split as to the appealability of derivative sovereign immunity denials evinces a misunderstanding of sovereign immunity and the relevant case law. As the Fourth Circuit ruled here, Plaintiffs acknowledge that the Fifth Circuit has twice held that orders denying derivative sovereign immunity are not appealable "because [the defendants'] asserted immunity defense was not an immunity from suit." Pl. Opp. at 10 (citing *Martin v. Halliburton*, 618 F.3d 476, 483-85 (5th Cir. 2010), and *Houston Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.*, 481 F.3d 265, 268 (5th Cir. 2007)). However, Plaintiffs mischaracterize the cases on the other side of the split to suggest that they are not in conflict with *Al Shimari V* and the two Fifth Circuit decisions rejecting collateral order appeals for denials of derivative sovereign immunity.

Plaintiffs describe *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331 (11th Cir. 2007), as involving "derivative *Feres* immunity – an immunity *not* raised in either Fifth Circuit case." Pl. Opp. at 10. This argument is too cute by half, as "derivative *Feres* immunity" ***is derivative sovereign immunity***. The Eleventh Circuit made this precise point in *McMahon*:

> Presidential's primary argument on appeal is that it was a common law agent of the federal government at the time of the accident, and is therefore entitled to the sovereign immunity the government might have under the *Feres* doctrine. **Presidential's argument relies on the doctrine of derivative sovereign immunity.** The existence and scope of derivative *Feres* immunity are questions of first impression in this Court.

4

*Id.* at 1341 (emphasis added); *see also id.* at 1343 ("Presidential claims that it is entitled to claim the whole of the government's *Feres* immunity **under the theory of derivative sovereign immunity**." (emphasis added)). Thus, Plaintiffs' argument that *McMahon* involved something other than derivative sovereign immunity, and therefore does not contribute to a circuit split, is willfully blind to how the Eleventh Circuit expressly characterized its decision in *McMahon*.

Plaintiffs similarly mischaracterize *World Trade Center* as involving "derivative Stafford Act immunity – also not an immunity at issue in either Fifth Circuit case." Pl. Opp. at 10. "Derivative Stafford Act immunity" ***is* derivative sovereign immunity**. The discretionary function provision in the Stafford Act, like the discretionary function exception to the FTCA, is a federal retention of sovereign immunity. *World Trade Ctr.*, 521 F.3d at 190-92. In *World Trade Center*, the state defendants argued that they were derivatively entitled to the sovereign immunity retained by the United States in the Stafford Act. *Id.* at 192. While the Second Circuit ultimately rejected this assertion, it did so on the merits in an interlocutory appeal, and expressly rejected the Fifth Circuit's conclusion that appellate jurisdiction was unavailable for claims asserting derivative sovereign immunity. *Id.* at 190-91 (discussing and rejecting Fifth Circuit's appellate jurisdiction analysis in *Houston Cmty. Hosp.*, 481 F.3d at 277). Plaintiffs cannot convincingly argue that there is no conflict between *World Trade Center* and *Houston Community Hospital* when the Second Circuit had to explicitly reject the Fifth Circuit's reasoning in order to reach the merits of the state defendants' immunity assertion.

Plaintiffs' efforts to explain away one of the two circuit conflicts implicated by CACI's *certiorari* petition cannot withstand the plain language of the courts of appeals cases reaching different conclusions on the appealability of denials of derivative sovereign immunity. This clear circuit conflict creates a reasonable probability that the Supreme Court will grant CACI's

*certiorari* petition. *See* S. Ct. R. 10(a) (noting that one common basis for granting a *certiorari* petition is that "a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter").

**B.   CACI Has Reasonable Prospects for Reversal of the Fourth Circuit's Decision if the Supreme Court Grants Its *Certiorari* Petition**

Plaintiffs acknowledge that "[t]o find [derivative sovereign immunity] is immediately appealable the Court would have to consider that it implicates a 'right not to be tried,' *i.e.*, that the order 'involves an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.'" Pl. Opp. at 14. From there, Plaintiffs express doubt that the Supreme Court would find derivative sovereign immunity to encompass a right not to be tried, explaining that the Supreme Court has "[a]dvis[ed] that courts should 'view claims of a right not to be tried with skepticism, if not a jaundiced eye.'" *Id.*

But the law in this Circuit is that derivative sovereign immunity embodies a right not to be sued, and is not a mere defense to liability. *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 343 (4th Cir. 2014) ("[T]he concept of derivative sovereign immunity stems from the Supreme Court's decision in *Yearsley*, and when the *Yearsley* doctrine applies, a government contractor is not subject to suit."); *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) ("This Court's express statements regarding *Yearsley* immunity . . . compel us to conclude, once again, that the *Yearsley* doctrine operates as a jurisdictional bar to suit and not a merits defense to liability."). The Second and Eleventh Circuits have held similarly. *See, e.g.*, *World Trade Ctr.*, 521 F.3d at 190-92; *McMahon*, 502 F.3d at 1339-40 (contractor's derivative sovereign immunity claim "stated a substantial claim to a true immunity from suit"). The existence of well-reasoned courts of appeals decisions – including two from the court of appeals reviewing decisions by this Court – holding that derivative sovereign immunity entails a right not

6

to be sued fatally undermines Plaintiffs' argument that CACI lacks a reasonable prospect that the Supreme Court will reach the same conclusion. *See Maryland v. King*, 133 S. Ct. 1, 3 (2012) (reasonable prospects for reversal existed because of "the considered analysis of courts on the other side of the split").

### C. Plaintiffs' Understate CACI's Irreparable Injury in the Absence of a Stay and Overstate Their Injury from a Stay

Plaintiffs' discussion of the harm to CACI misses the mark. Injury to a defendant denied immunity is not measured in dollars or days. It flows from the fact that immunities "are designed to shield those that they protect from not only the burdens of liability, but also the burdens of litigation." *In re Mills*, 287 F. App'x 273, 279 (4th Cir. 2008) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985)). That bell cannot be unrung if a defendant is required to litigate and try its case before it is permitted to explore all of its avenues for appellate review of a denial of immunity. *See Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1305 (2010) (Scalia, J., Circuit Justice). Thus, when a defendant has a colorable claim to immunity from suit, the harm from being required to litigate is "irreversible." *Id.*

By contrast, Plaintiffs' harm from a stay is slight. Plaintiffs complain that this case has bene pending for eleven years, with five detours to the Fourth Circuit. Only two of the five Fourth Circuit decisions occurred at CACI's request; the other three occurred because Plaintiffs appealed decisions by this Court or sought rehearing of a Fourth Circuit panel decision. But more to the point, the time required to reach this point in the case is water under the bridge. At this point, a stay would result in only a modest delay in proceedings in this Court, and CACI has committed to halving its time to file a *certiorari* petition so that it can be heard by the Supreme Court in January 2020, and the case could be argued this term if *certiorari* is granted.

Moreover, in what appears to be an unintentional play on words, Plaintiffs argue that the Court should deny a stay because "Plaintiffs have waited long enough for their day in court" and that they are "entitled to a full trial." Pl. Opp. at 3, 18. Neither of these things are going to occur if a trial in this case takes place in 2019, or 2020, or even 2030. Plaintiffs have no intention or ability to have a day *in* court. Al-Ejaili, unwelcome in this country, intends to present in his direct testimony by video link from Sweden. Plaintiffs also appear to be slow-playing their eventual acknowledgement that conditions in Iraq are so dire that Al Shimari and Al-Zuba'e, also barred from this country, will not be able to participate in any live capacity at a trial of this action. Pl. Status Rep. at 6 (Dkt. #1313).

Plaintiffs demand for a "full trial" is equally fanciful. This case is about what (if anything) happened to Plaintiffs while in U.S. military custody at Abu Ghraib prison and who (if anyone) was involved in any abuse that may have occurred to them. There will be no "full trial" on these issues. There will not be a single participant in Plaintiffs' interrogations at any trial of this action. Plaintiffs, as noted above, are unwelcome in this country, and two of the three likely will not be able to provide live testimony to a jury by any means. All of the other participants in Plaintiffs' interrogations remain unidentified, their identities withheld from discovery as classified state secrets. Any testimony they provide will be given remotely, with no ability of a jury to view them and assess their demeanor and credibility. Even the records concerning Plaintiffs' treatment and military authorization for that treatment are unavailable for presentation at a trial because they are classified state secrets.

If this case ever proceeds to trial, a jury will just have to listen to testimony from disembodied witnesses they will not be able to see, and will have to simply make a guess as to who they should believe. A modest delay in conducting such a quasi-trial causes virtually no

harm to Plaintiffs whose ability to participate in a trial is limited or non-existent, particularly when compared to the *per se* harm that occurs when a defendant claiming immunity from suit is required to litigate and proceed to trial.

### III. CONCLUSION

For the foregoing reasons, the Court should stay this case pending the filing and resolution of a *certiorari* petition that CACI will file by November 15, 2019.

Respectfully submitted,

*/s/ John F. O'Connor*
John F. O'Connor
Virginia Bar No. 93004
Linda C. Bailey (admitted *pro hac vice*)
Molly Bruder Fox (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
(202) 429-3902 – facsimile
joconnor@steptoe.com
lbailey@steptoe.com
mbfox@steptoe.com

William D. Dolan, III
Virginia Bar No. 12455
LAW OFFICES OF WILLIAM D. DOLAN, III, PC
8270 Greensboro Drive, Suite 700
Tysons Corner, VA 22102
(703) 584-8377 – telephone
wdolan@dolanlaw.net

*Counsel for Defendant CACI Premier Technology, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of October, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following counsel:

> John Kenneth Zwerling
> The Law Offices of John Kenneth Zwerling, P.C.
> 114 North Alfred Street
> Alexandria, VA 22314
> jz@zwerling.com

> /s/   John F. O'Connor
> John F. O'Connor
> Virginia Bar No. 93004
> Attorney for Defendant CACI Premier Technology, Inc.
> STEPTOE & JOHNSON LLP
> 1330 Connecticut Avenue, N.W.
> Washington, D.C. 20036
> (202) 429-3000 – telephone
> (202) 429-3902 – facsimile
> joconnor@steptoe.com