**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No.    1:08-cv-0827 LMB-JFA ) |
| CACI PREMIER TECHNOLOGY, INC., | ) ) |
| Defendant, | ) ) |

**DEFENDANT CACI PREMIER TECHNOLOGY, INC.'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION**

John F. O'Connor (Va. Bar #93004)
Linda C. Bailey (admitted *pro hac vice*)
Molly B. Fox (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
(202) 429-3902 – facsimile
joconnor@steptoe.com
lbailey@steptoe.com
mbfox@steptoe.com

William D. Dolan, III (Va. Bar #12455)
LAW OFFICES OF WILLIAM D.
DOLAN, III, PC
8270 Greensboro Drive, Suite 700
Tysons Corner, Virginia 22102
(703) 584-8377 – telephone
wdolan@dolanlaw.net

*Counsel for Defendant CACI Premier*
*Technology, Inc.*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     LEGAL STANDARD.......................................................................................... 4

III.    ANALYSIS.......................................................................................................... 5

        A.      *Kiobel* and *Al Shimari III* .................................................................... 5

        B.      Intervening Precedent After *Al Shimari III* and this Court's Denial of CACI's
                Post-Discovery Challenge to Subject-Matter Jurisdiction...................................... 7

        C.      *Nestle* Makes Clear that the *RJR Nabisco* Extraterritoriality Test Applies to
                ATS Claims and Holds That "General Corporate Activity" in the United
                States Is Insufficient to Create Subject-Matter Jurisdiction Under the ATS ........ 10

        D.      *Nestle* Requires Dismissal of this Action................................................. 13

                1.      This Court Must Apply the *RJR Nabisco/Nestle* Extraterritoriality
                        Test to CACI's Motion .............................................................. 13

                2.      The *RJR Nabisco* Test, as Applied to ATS in *Nestle*, Requires
                        Dismissal............................................................................... 17

        E.      *Nestle* Casts Doubt on Whether Judges Are Permitted to Create New
                Substantive Causes of Action Under ATS........................................... 26

IV.     CONCLUSION.................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adhikari v. Kellogg, Brown & Root, Inc.*,
    845 F.3d 184 (5th Cir. 2017) ................................................18

*Al Shimari v. CACI Premier Tech., Inc.*,
    324 F. Supp. 3d 668 (E.D. Va. 2018) .........................................2

*Al Shimari v. CACI Premier Tech., Inc.*,
    758 F.3d 516 (4th Cir. 2014) ........................................ *passim*

*Al Shimari v. CACI Premier Tech., Inc.*,
    775 F. App'x 758 (4th Cir. 2019) .........................................10

*Al Shimari v. CACI Premier Tech., Inc.*,
    933 F. Supp. 2d 793 (E.D. Va. 2013) .......................................6

*Arbaugh v. Y & H Corp.*,
    546 U.S. 500 (2006)......................................................4

*Beck v. McDonald*,
    848 F.3d 262 (4th Cir. 2017) .......................................4, 5, 22

*Brown v. Nucor Corp.*,
    785 F.3d 895 (4th Cir. 2015) ............................................13

*Casillas v. Madison Avenue Assocs., Inc.*,
    926 F.3d 329 (7th Cir. 2019) ............................................28

*Copperweld Corp. v. Independence Tube Corp.*,
    467 U.S. 752 (1984)......................................................18

*Demetres v. E.W. Constr., Inc.*,
    776 F.3d 271 (4th Cir. 2015) ..........................................5, 22

*Doe v. Nestle, S.A.*,
    906 F.3d 1120 (9th Cir. 2018) .......................................11, 22

*EEOC v. Arabian Am. Oil Co.*,
    499 U.S. 244 (1991)......................................................17

*Etheridge v. Norfolk & W. Ry. Co.*,
    9 F.3d 1087 (4th Cir. 1993) .............................................13

*Faust v. S.C. State Highway Dep't,*
  721 F.2d 934 (4th Cir. 1983) ..................................................................13

*Glass Egg Digital Media v. Gameloft,*
  No. 17-cv-4165, 2019 WL 5720731 (N.D. Cal. Nov. 5, 2019) ..............19

*Graves v. Lioi,*
  930 F.3d 307 (4th Cir. 2019) ..................................................................14

*Green v. Sessions,*
  No. 1:17-cv-1365-LMB-TCB, 2018 WL 2025299 (E.D. Va. May 1, 2018)............................4

*Guillen v. Esper,*
  No. 1:19-cv-1206-LMB/IDD, 2020 WL 3965007 (E.D. Va. July 13, 2020) ..........................5

*Hernandez v. Mesa,*
  140 S. Ct. 735 (2020)..............................................................................28

*iSocial Media, Inc. v. bwin.party Digital Entertainment PLC,*
  No. 12-cv-81278, 2013 WL 5588238 (S.D. Fla. Oct. 10, 2013) ............19

*Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG,*
  160 F. Supp. 2d 722 (S.D.N.Y. 2001).....................................................18

*Jesner v. Arab Bank PLC,*
  138 S. Ct. 1386 (2018) (plurality opinion) .............................................27

*In re KBR, Inc., Burn Pit Litig.,*
  744 F.3d 326 (4th Cir. 2014) ...............................................................5, 14

*Kerns v. United States,*
  585 F.3d 187 (4th Cir. 2009) ..................................................................14

*Kiobel v. Royal Dutch Petroleum Co.,*
  569 U.S. 108 (2013)......................................................................... *passim*

*Little League Baseball, Inc. v. Welsh Pub. Group, Inc.,*
  874 F. Supp. 648 (M.D. Pa. 1995)..........................................................19

*Mastafa v. Chevron Corp.,*
  770 F.3d 170 (2d Cir. 2014).....................................................................18

*Mohamad v. Palestine Auth.,*
  566 U.S. 449 (2012)................................................................................27

*Morrison v. Nat'l Austrl. Bank, Ltd.,*
  561 U.S. 247 (2010)..............................................................................8, 17

*Nestle USA, Inc. v. Doe*,
  141 S. Ct. 1931 (2021) (Exhibit 1) ................................................................ *passim*

*Oeltjenbrun v. CSA Investors, Inc.*,
  3 F. Supp. 2d 1024 (N.D. Iowa 1998) ........................................................... 19

*RJR Nabisco, Inc. v. European Community*,
  579 U.S. 325 (2016) ...................................................................................... *passim*

*Roe v. Howard*,
  917 F.3d 229 (4th Cir. 2019) ....................................................................... 2, 8

*Sejman v. Warner-Lambert Co.*,
  845 F.2d 66 (4th Cir. 1988) .......................................................................... 14

*Sosa v. Alvarez-Machain*,
  542 U.S. 692 (2004) ..................................................................................... 6, 27, 28

*U.S. Dep't of Health & Human Servs. v. Fed. Labor Rel. Auth.*,
  983 F.2d 578 (4th Cir. 1992) ........................................................................ 13

*United States v. Beasley*,
  495 F.3d 142 (4th Cir. 2007) ........................................................................ 4

*United States v. Bell*,
  5 F.3d 64 (4th Cir. 1993) .............................................................................. 14

*United States v. Harris*,
  991 F.3d 552 (4th Cir. 2021) ........................................................................ 8, 17, 18

*United States v. Pileggi*,
  703 F.3d 675 (4th Cir. 2013) ........................................................................ 14

*United States v. Sutton*,
  No. 5:08-cr-40, 2009 WL 481411 (M.D. Ga. Feb. 25, 2009) ........................ 19

*United States ex rel. Vuyyuru v. Jadhev*,
  555 F.3d 337 (4th Cir. 2009) ........................................................................ 22

*Warfaa v. Ali*,
  811 F.3d 653 (4th Cir. 2016) ........................................................................ 4

*WesternGeco LLC v. ION Geophysical Corp.*,
  138 S. Ct. 2129 (2018) .................................................................................. 8, 17

*Williams v. United States*,
  50 F.3d 299 (4th Cir. 1995) .......................................................................... 5

*U.S. ex rel. Wilson v. Graham Cty. Soil & Water Cons. Dist.*,
    777 F.3d 691 (4th Cir. 2015) ..................................................................17

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017)..........................................................................28

**Statutes**

28 U.S.C. § 1350.....................................................................................5, 18

28 U.S.C. § 1350 note................................................................................27

**Other Authorities**

32 C.F.R. § 117........................................................................................20, 21

Executive Order 12829 (Jan. 6, 1993) ...........................................................20

Executive Order 12968 §3.1(b) (1995) ...........................................................21

Fed. R. Civ. P. 12(h)(3)...............................................................................4

## I.   INTRODUCTION

The Supreme Court's recent decision in *Nestle USA, Inc. v. Doe*, 141 S. Ct. 1931 (2021) (Exhibit 1), requires dismissal of this case for lack of subject-matter jurisdiction.   *Nestle* establishes beyond any doubt that:

➢ The test for extraterritoriality adopted in *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 337 (2016), applies to ATS claims; this Court had previously regarded that as unclear.

➢ The standard for jurisdiction adopted by the Fourth Circuit in *Al Shimari III*[1] is no longer valid; this Court, while recognizing that *RJR Nabisco* might have set a new standard, nonetheless applied *Al Shimari III* as the law of the case in finding jurisdiction.

➢ General corporate activity in the U.S. – such as decisionmaking – is insufficient to establish jurisdiction for claims brought under the Alien Tort Statute ("ATS").

Application of this intervening Supreme Court precedent is dispositive of this action because the domestic conduct in the record, conduct on which this Court and the Fourth Circuit have relied in finding jurisdiction – is nothing but general corporate activity.   Indeed, ***every*** fact reflecting domestic conduct that this Court and the Fourth Circuit used to find jurisdiction constitutes general corporate activity in the U.S.   As a result, there is no legally adequate basis for jurisdiction.  Dismissal is required.

\*        \*        \*

This is an action in which three Iraqis allege that they were abused by U.S. soldiers while in U.S. military custody at Abu Ghraib prison in Iraq.  Plaintiffs have neither sued nor asserted a claim against the United States or any of its soldiers.   Rather, they have sued CACI,[2] which supplied civilian interrogators to the U.S. military during the war in Iraq.  Yet after many years

---

[1] "*Al Shimari III*" refers to *Al Shimari v. CACI Premier Tech., Inc.*, 758 F.3d 516 (4th Cir. 2014)

[2] "CACI" refers to defendant CACI Premier Technology, Inc.

of unfettered discovery by Plaintiffs, Plaintiffs concede that CACI personnel never "laid a hand on them."[3]  Rather, they contend that CACI is liable for their alleged injuries on theories of co-conspirator and aiding-and-abetting liability.

After Plaintiffs received all of the discovery they sought,[4] and the discovery deadline had passed, CACI moved to dismiss for lack of subject-matter jurisdiction.  CACI asserted that *RJR Nabisco* established a new standard for jurisdiction, effectively overruling *Al Shimari III*, and that the Fourth Circuit had acknowledged as much in *Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019).  CACI contended that the presumption against extraterritoriality barred Plaintiffs' claims because the focus of ATS is on violations of international law, and all of the conduct allegedly violating international law occurred outside the United States.  Dkt. #1061.  The Court denied CACI's motion, relying on two propositions:

1. The Court's conclusion that it was not clear that the extraterritoriality test adopted in *RJR Nabisco* applied to claims brought under the ATS; and

2. The Court's conclusion that the following examples of domestic corporate conduct created "enough connection" to permit jurisdiction under ATS: "The contract, for example, that gets CACI involved in this in the first place was issued in the United States.  We have a United States corporation.  We have United States staff over there at Abu Ghraib.  We have people from CACI traveling from the United States to Abu Ghraib.  You've got Northrop doing that, you have others . . . ."

Ex. 2 at 5-6.

---

[3] *See* 9/2/17 Tr. at 15 (Ex. 3); Dkt. #639 at 31 n.30.  As a result, the Court granted CACI's motion to dismiss Plaintiffs' claims alleging direct mistreatment by CACI employees. *Al Shimari v. CACI Premier Tech., Inc.*, 324 F. Supp. 3d 668, 693 (E.D. Va. 2018).

[4] Unlike Plaintiffs, CACI has not been permitted much of the discovery it sought.  As two examples, CACI has not been allowed medical examinations of two of the three remaining Plaintiffs, and has been denied, on state secrets grounds, discovery of the identities of military and civilian interrogation personnel interacting with Plaintiffs, including the identities of the CACI personnel interacting with Plaintiffs.

In so ruling, this Court applied the holistic test for extraterritoriality adopted by the Fourth Circuit in *Al Shimari III*, a test that considers all domestic activity related to Plaintiffs' claims. In applying the *Al Shimari III* test, this Court recognized that intervening Supreme Court decisions in *RJR Nabisco* and other cases called into doubt the viability of *Al Shimari III*, but ultimately stated that "I'm not reversing the Fourth Circuit in this case" though "[t]hey may want to reverse themselves." Ex. 2 at 4-6. The Supreme Court has done that for the Fourth Circuit, first in *RJR Nabisco* and then, dispositively, in *Nestle*. This was the impact of *RJR Nabisco*, as the Fourth Circuit panel acknowledged in CACI's last appeal, and *Nestle* removes any doubt, wiggle-room, or crack-in-the-door. Indisputably, the freewheeling extraterritoriality test applied in *Al Shimari III* is not a correct statement of the law.

To be clear, CACI views torture as abhorrent and condemns it. CACI has never condoned the conduct depicted in photographs of military police personnel abusing Iraqi detainees at Abu Ghraib prison. Similarly, CACI condemns efforts by insurgents in Iraq to kill or injure Coalition forces, including U.S. military personnel, who were seeking to restore and maintain peace in Iraq. But this motion is not about torture, which is reprehensible, or the war in Iraq. It is about the jurisdictional standard that governs ATS actions. After thirteen years, four complaints, and unfettered discovery, Plaintiffs have conceded that no CACI employee laid a hand on Plaintiffs. And even more important for purposes of the present motion, every shred of evidence of domestic conduct by CACI is general corporate activity – such as incorporating in the United States, entering into and administratively supporting contracts, and recruiting and hiring employees in the United States – that *Nestle* holds "cannot alone establish domestic application of the ATS." *Id.* at 1937. Indeed, the alleged domestic activity at issue in *Nestle* was far more extensive than the evidence adduced in the present case, and the Supreme Court *still*

found it insufficient to support an exercise of jurisdiction under ATS. *Id.* For these reasons, the Court should give effect to *Nestle* and dismiss this action for lack of subject-matter jurisdiction.

## II.   LEGAL STANDARD

All of the claims remaining in this case are brought under the ATS. The ATS is a "strictly jurisdictional" statute that creates no substantive causes of action. *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013); *see also Nestle*, 141 S. Ct. at 1935. Accordingly, "[w]hether the ATS bars claims related to extraterritorial conduct presents an issue of subject matter jurisdiction." *Warfaa v. Ali*, 811 F.3d 653, 658 (4th Cir. 2016) (citation omitted). A challenge to the Court's subject matter jurisdiction may be brought at any time, and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006); *United States v. Beasley*, 495 F.3d 142, 147 (4th Cir. 2007); *Green v. Sessions*, No. 1:17-cv-1365-LMB-TCB, 2018 WL 2025299, at *7 (E.D. Va. May 1, 2018).

"A defendant may challenge subject-matter jurisdiction in one of two ways: facially or factually." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). A facial challenge to subject-matter jurisdiction accepts the well-pleaded allegations in the complaint as true, "and the defendant's challenge must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

By contrast, in a factual challenge, the defendant does not accept the plaintiffs' allegations as true and challenges subject-matter jurisdiction based on the evidentiary record. *Id.* "In this posture, the presumption of truthfulness normally accorded a complaint's allegations does not apply." *Id.* (internal quotations and citations omitted). Rather, the Court applies the standard applicable to a motion for summary judgment, under which the plaintiffs must set forth

specific facts beyond the pleadings to show that a genuine issue of material facts exists, except that the Court resolves factual disputes bearing on jurisdiction. *Id.*; *see also In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 333 (4th Cir. 2014) (a court considering a factual challenge to subject-matter jurisdiction "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."); *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). Plaintiffs have the burden of proving jurisdiction. *Demetres v. E.W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Guillen v. Esper*, No. 1:19-cv-1206-LMB/IDD, 2020 WL 3965007, at *8 (E.D. Va. July 13, 2020).

This motion raises a <u>factual</u> challenge to jurisdiction based on the fully-developed evidentiary record. Therefore, the allegations in Plaintiffs' complaint are irrelevant, the Court resolves any disputes in the evidence, and Plaintiffs have the burden of establishing facts involving domestic conduct by CACI that is sufficient to permit the exercise of the limited jurisdiction permitted under the ATS.

## III.   ANALYSIS

The U.S. Supreme Court first held that ATS does not apply extraterritorially in *Kiobel*, 569 U.S. at 124, a decision issued in 2013. In the succeeding eight years, further clarification and refinement of the law regarding the presumption against extraterritoriality, culminating in *Nestle*, has made clear that Plaintiffs' claims represent an impermissible extraterritorial application of ATS.

### A.   *Kiobel* and *Al Shimari III*

The ATS provides that the "district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The statute allows federal courts to "recognize private claims

under federal common law" for a "modest number of international law violations." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 724, 732 (2004). In *Kiobel*, the Supreme Court held that the statute does not apply extraterritorially and therefore courts lack jurisdiction over claims for violations of the law of nations occurring outside the United States. *Id.* at 124 (citing *Morrison v. Nat'l Austrl. Bank, Ltd.*, 561 U.S. 247, 264 (2010)). In *Kiobel*, "all of the relevant conduct took place outside the United States," and thus the plaintiffs' claims were barred. *Id.*

In a cryptic statement at the end of the decision, the Court recognized that claims could be actionable under the ATS where they "touch and concern the territory of the United States . . . with sufficient force to displace the presumption against extraterritorial application." *Id.* at 124-25. The Court did not further explain this observation, other than to state that "[c]orporations are often present in many countries, and it would reach too far to say that mere corporate presence suffices." *Id.* at 125.

Applying *Kiobel*, the Court dismissed this action. *Al Shimari v. CACI Premier Tech., Inc.*, 933 F. Supp. 2d 793 (E.D. Va. 2013). The Fourth Circuit vacated that decision. *Al Shimari III*, 758 F.3d at 527. The Fourth Circuit held that CACI's jurisdictional challenge failed because Plaintiffs' "claims" sufficiently touched and concerned the United States to render those claims a domestic application of the ATS. Under the Fourth Circuit's analysis, "claims covered all the facts relevant to the lawsuit, including the parties' identities and their relationship to the causes of action," not just the particular acts that may have violated international law. *Id.* In other words, the Fourth Circuit distinguished *matters* relevant to a *plaintiff's claim* from *conduct* relevant to a *statute's focus* and adopted a test for ATS jurisdiction centered on the former.

On a limited record, the Fourth Circuit attached significance to numerous factors: (1) CACI was a U.S. corporation; (2) CACI hired U.S. citizens with security clearances granted by

the United States to provide intelligence support services, and who allegedly perpetrated torture in Iraq; (3) CACI received payments in the U.S. based on contracts issued by the U.S. government; (4) Congress intended to provide access to the U.S. courts by adopting statutes such as the Torture Victims Protection Act; (5) important American foreign policy interests were implicated by the nature of the allegations against CACI; and (6) Plaintiffs' complaint alleged that CACI's managers in the United States gave approval to acts of torture, encouraged misconduct in Iraq, and attempted to cover up misconduct when it was discovered.  758 F.3d at 530-31.   The court characterized these facts and allegations, cumulatively, as "extensive 'relevant conduct' in United States territory" sufficient to establish jurisdiction.  *Id.* at 528. Thus, the Fourth Circuit conspicuously did not confine its analysis to the conduct that the ATS seeks to regulate, *i.e.*, the torts committed in violation of international law, but allowed jurisdiction to be based on a holistic assessment of the overall contacts between a case and the United States.  *Id.*  The Fourth Circuit's test did not survive *RJR Nabisco* and *Nestle*, as the Fourth Circuit has acknowledged and we now show.

B.    **Intervening Precedent After *Al Shimari III* and this Court's Denial of CACI's Post-Discovery Challenge to Subject-Matter Jurisdiction**

Subsequent to *Al Shimari III*, the Supreme Court's decision in *RJR Nabisco*, 579 U.S. at 337, established a two-step framework for applying the presumption against extraterritoriality, a framework that does not allow consideration of the mélange of factors on which *Al Shimari III* was based.   Under *RJR Nabisco*, a court first "ask[s] whether the presumption against extraterritoriality has been rebutted – that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially."  *Id.*  If there is no such indication, the court proceeds to the second step, which "determine[s] whether the case involves a *domestic* application of the

statute." *Id.* To do so, it "look[s] to the statute's 'focus'" and determines if there is sufficient conduct relevant to that focus that occurred in the United States. *Id.* As the Court explained:

> If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but *if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory*.

*Id.* (emphasis added).[5]

Shortly before this Court ruled on CACI's post-discovery subject-matter jurisdiction challenge, the Fourth Circuit observed that the second step of the *RJR Nabisco* test "appears to privilege consideration of a statute's 'focus' – the approach set out in *Morrison* – over the inquiry articulated in *Kiobel*, which asked whether the claims at issue 'touch and concern the territory of the United States.'" *Roe*, 917 F.3d at 240. The court concluded, however, that it did not need to resolve that issue because the statute in *Roe* applied extraterritorially.

After the close of discovery in this case, CACI moved to dismiss Plaintiffs' claims for lack of subject-matter jurisdiction. CACI argued that the two-step *RJR Nabisco* test controls the inquiry. Dkt. #1061 at 7-8. The Supreme Court had already resolved the first step of the *RJR Nabisco* test, holding in *Kiobel* that ATS did not apply extraterritorially. *Kiobel*, 561 U.S. at 264. With respect to the second step of the *RJR Nabisco* test, CACI argued that the focus of ATS is "the tort committed in violation of the law of nations or a treaty of the United States." Dkt. #1061 at 10. Accordingly, Plaintiffs' claims are a domestic application of ATS only if CACI engaged in conduct *in the United States* with respect to these Plaintiffs that constituted a

---

[5] The Supreme Court confirmed the application of the focus test in *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129 (2018), applying *RJR Nabisco*'s two-step framework in deciding questions of extraterritoriality to a claim under the Patent Act. The Fourth Circuit has acknowledged that *RJR Nabisco*'s two-part framework is the applicable test for extraterritoriality. *See United States v. Harris*, 991 F.3d 552, 558-59 (4th Cir. 2021).

violation of international law.  Because the evidentiary record does not establish any domestic conduct by CACI relevant to ATS's focus, CACI argued that the Court lacks subject-matter jurisdiction over Plaintiffs' claims.  Dkt. #1061 at 11-14.

The Court denied CACI's motion without argument, stating the following bases for its ruling:

> This is the first that you've raised the *Nabisco* argument.  It is an interesting one; however, I'm satisfied, number one, that the law of this case is the law established by the Fourth Circuit, and I'm not reversing the Fourth Circuit in this case.  They may want to reverse themselves.  I mean, down the road, that's something that may happen because of some of the things that have happened since they issued the remand, but there's no question that *Kiobel* is still good law.
>
> *Jesner*, which again is the most recent of these cases, did not overrule *Kiobel*, and the Fourth Circuit's opinion was based primarily on the *Kiobel* analysis.
>
> Even under the relatively possibly new standard that *Nabisco* has applied, where the Court has to look at two factors, whether the statute gives a clear affirmative indication that it applies extraterritorially and what the law would be for this case if the ATS does not, and then if not, then we have to look at whether the case, and that is the specific case, involves domestic application of the statute, and you look at the statute's focus.
>
> Now, in this case, you know, the conduct here, while some of the conduct occurred at Abu Ghraib, there's clearly significant conduct that occurs in the United States.  The contract, for example, that gets CACI involved in this in the first place was issued in the United States.  We have a United States corporation.  We have United States staff over there at Abu Ghraib.  We have people from CACI traveling from the United States to Abu Ghraib.  You've got Northrop doing that, you have others, and I think there's enough connection.

Ex. 2 at 4-6.[6]

---

[6] CACI appealed the Court's order denying CACI derivative sovereign immunity, and argued in the Fourth Circuit that the Court also could direct dismissal based on a lack of subject-matter jurisdiction.  The Fourth Circuit did not reach the merits of any of CACI's arguments,

The Court's observation that "some of the conduct occurred at Abu Ghraib" is a remarkable understatement.  This case is, after all, about detainee abuse at Abu Ghraib prison in a war zone *in Iraq*, not in the U.S.  All interrogations and related activity, and all of the injuries Plaintiffs claim to have suffered, allegedly took place solely, exclusively, and entirely *in Iraq*. According to Plaintiffs' allegations, CACI personnel *in Iraq* joined in a conspiracy with U.S. soldiers *in Iraq* to abuse detainees held by the U.S. military *in Iraq*.  Plaintiffs further allege that CACI aided and abetted detainee abuse *in Iraq*.  Discovery has proven, by the wholesale absence of any evidence of domestic conduct that could conceivably constitute aiding and abetting or conspiracy, that the only conduct relevant to subject-matter jurisdiction occurred *in Iraq*.  That deprives this Court of jurisdiction, requiring dismissal.

C. ***Nestle* Makes Clear that the *RJR Nabisco* Extraterritoriality Test Applies to ATS Claims and Holds That "General Corporate Activity" in the United States Is Insufficient to Create Subject-Matter Jurisdiction Under the ATS**

On June 17, 2021, the Supreme Court issued its decision in *Nestle*.  *Nestle* involved claims by individuals from Mali who alleged that they were trafficked into the Ivory Coast as child slaves.  141 S. Ct. at 1935.  They sued two U.S. corporations – Nestle and Cargill – under the ATS, alleging that these companies were liable for aiding and abetting slavery.  *Id.*  The Ninth Circuit had upheld the exercise of jurisdiction, and rejected the companies' extraterritoriality challenge, holding that the following allegations of conduct in the United States were sufficient to support ATS jurisdiction:

---

dismissing the appeal based on its conclusion that it lacked appellate jurisdiction to entertain an appeal from this Court's denial of derivative sovereign immunity.  *Al Shimari v. CACI Premier Tech., Inc.*, 775 F. App'x 758, 759 (4th Cir. 2019).  On June 28, 2021, the U.S. Supreme Court denied CACI's petition for a writ of *certiorari*, which sought review of the Fourth Circuit's ruling on the appealability of a denial of derivative sovereign immunity.  Thus, the Court's 2019 extraterritoriality ruling has never been subject to appellate review.

➢ "Every major operational decision regarding Nestle's United States market is made or approved in the United States." *Doe v. Nestle, S.A.*, 906 F.3d 1120, 1123 (9th Cir. 2018).

➢ Cargill's "business is centralized in Minneapolis and decisions about buying and selling commodities are made at its Minneapolis headquarters." *Id.*

➢ "The gravamen of the complaint is that defendants depended on – and orchestrated – a slave-based supply chain." *Id.*

➢ "Defendants operate with the unilateral goal of finding the cheapest source of cocoa in the Ivory Coast. Not content to rely on market forces to keep costs low, defendants have taken steps to perpetuate a system built on child slavery to depress labor costs." *Id.*

➢ The companies provided "personal spending money to maintain the farmers' and/or the cooperatives' loyalty as an exclusive supplier," which was inferred at the motion to dismiss stage to be a kickback to keep cocoa prices at a level unattainable without child slave labor. *Id.* at 1126.

➢ "Defendants also had employees from their United States headquarters regularly inspect operations in the Ivory Coast and report back to the United States offices, where these financing decisions, or 'financing arrangements,' originated." *Id.*

➢ "Defendants also provide tools, equipment, and technical support to farmers, including training in farming techniques and farm maintenance." *Id.* at 1123.

➢ "Defendants were well aware that child slave labor is a pervasive problem in the Ivory Coast. Nonetheless, defendants continued to provide financial support and technical farming aid, even though they knew their acts would assist farmers who were using forced child labor, and knew their assistance would facilitate child slavery." *Id.*

The Supreme Court reversed the Ninth Circuit, holding that the domestic contacts on which the Ninth Circuit relied – assumed as true at the motion-to-dismiss stage – failed to support an exercise of subject-matter jurisdiction under the ATS. In an 8-1 opinion,[7] the Court

_____

[7] Eight of the nine Justices joined the sections of Justice Thomas's opinion addressing and applying the presumption against extraterritoriality. Justice Alito dissented, reasoning that the Supreme Court should not address the extraterritoriality question before resolving other questions the Court had not considered. These include (1) whether judges should recognize new causes of action under ATS, or leave that task to Congress, (2) whether the conduct alleged by the plaintiffs constitutes aiding and abetting, (3) whether the alleged human rights abuses violated a "specific, universal, and obligatory" international law norm, (4) whether aiding and abetting claims are cognizable under ATS, and (5) if aiding and abetting claims are allowed,

began by reaffirming that the *RJR Nabisco* test applied to ATS: "Our precedents 'reflect a two-step framework for analyzing extraterritoriality issues.'"  *Nestle*, 141 S. Ct. at 1936 (quoting *RJR Nabisco*, 579 U.S. at 337).  The Court acknowledged that it had previously decided the first step in the *RJR Nabisco* test, having held in *Kiobel* that ATS does not apply extraterritorially.  *Id.* (citing *Kiobel*, 569 U.S. at 124).

Turning to the second step of the *RJR Nabisco* test, the Court observed that the parties disagreed as to the "focus" of the ATS.  The defendant companies and the United States argued that "aiding and abetting is not even a tort, but merely secondary liability for a tort," so "the conduct relevant to the [ATS's] focus is the conduct that directly caused the injury," all of which indisputably occurred overseas.  *Id.* (internal quotations omitted).  For their part, the plaintiffs argued "that the 'focus' of the ATS is conduct that violates international law, that aiding and abetting forced labor is a violation of international law, and that domestic conduct can aid and abet an injury that occurs overseas."  *Id.*

Ultimately, the Supreme Court did not resolve the parties' dispute over the ATS's focus, holding that any view of the ATS's focus invariably would require dismissal of plaintiffs' claims because it was still up to the plaintiffs to "establish that 'the conduct relevant to the statute's focus occurred in the United States.'"  *Id.* (*quoting RJR Nabisco*, 579 U.S. at 337).  As the Court explained:

> Even if we resolved all these disputes in respondents' favor, their complaint would impermissibly seek extraterritorial application of the ATS.  Nearly all the conduct that they say aided and abetted forced labor – providing training, fertilizer, tools, and cash to overseas farms – occurred in Ivory Coast.  The Ninth Circuit nonetheless let this suit proceed because respondents pleaded as a general matter that "every major operational decision by both

---

whether the plaintiffs had alleged facts showing the requisite *mens rea*.  *Nestle*, 141 S. Ct. at 1950 (Alito, J., dissenting).

companies is made in or approved in the U.S." But allegations of general corporate activity – like decisionmaking – cannot alone establish domestic application of the ATS.

As we made clear in *Kiobel*, a plaintiff does not plead facts sufficient to support domestic application of the ATS simply by alleging "mere corporate presence" of a defendant. Pleading general corporate activity is no better. Because making "operational decisions" is an activity common to most corporations, generic allegations of this sort do not draw a sufficient connection between the cause of action respondents seek – aiding and abetting forced labor overseas – and domestic conduct. "[T]he presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case." To plead facts sufficient to support a domestic application of the ATS, plaintiffs must allege more domestic conduct than general corporate activity.

*Id.* at 1936-37 (citations omitted). Based on this holding, the Supreme Court reversed the Ninth Circuit's conclusion that jurisdiction existed for the plaintiffs' claims.

### D.  *Nestle* Requires Dismissal of this Action

#### 1.   This Court Must Apply the *RJR Nabisco/Nestle* Extraterritoriality Test to CACI's Motion

This Court is required to apply *Nestle*. It is black letter law that if a decision by the Court of Appeals rests on authority that becomes untenable in light of intervening Supreme Court precedent, it is no longer "viable authority and should no longer be followed." *Faust v. S.C. State Highway Dep't*, 721 F.2d 934, 940 (4th Cir. 1983); *see also Etheridge v. Norfolk & W. Ry. Co.*, 9 F.3d 1087, 1090 (4th Cir. 1993); *U.S. Dep't of Health & Human Servs. v. Fed. Labor Rel. Auth.*, 983 F.2d 578, 581-82 (4th Cir. 1992). Indeed, the Fourth Circuit's command to district courts is that a district court must disregard Fourth Circuit precedent, and even a mandate from that court, and apply intervening Supreme Court precedent upon a "showing that controlling legal authority has changed dramatically." *Brown v. Nucor Corp.*, 785 F.3d 895, 901 (4th Cir.

2015); *United States v. Pileggi*, 703 F.3d 675, 681-82 (4th Cir. 2013); *United States v. Bell*, 5 F.3d 64, 67 (4th Cir. 1993); *see also Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988) (law of the case doctrine does not apply when "controlling authority has since made a controlling decision of law applicable to the issue").[8]

Here, the Fourth Circuit decided *Al Shimari III* before the close of discovery on a limited record, and credited mere allegations that are irrelevant to CACI's present post-discovery, fact-based jurisdictional challenge. Accordingly, the law-of-the-case doctrine does not even apply to the present motion. *Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019) ("[N]othing in the law-of-the-case doctrine or our prior decision compelled a particular result in this appeal except to the extent the facts remained the same as the allegations.").[9]

But even if the procedural posture here were the same as in *Al Shimari III*, the analytical framework applied in *Al Shimari III* is no longer viable after *RJR Nabisco* and, particularly, *Nestle*. Neither is this Court's extraterritoriality analysis in denying CACI's post-discovery, fact-based challenge to subject-matter jurisdiction. Indeed, as explained in greater detail below, the Fourth Circuit panel hearing CACI's appeal from this Court's 2019 denial of CACI's extraterritoriality motion was quite aware that the *RJR Nabisco* extraterritoriality test, not the

---

[8] This Court, in one of the first conferences after reassignment of this case, announced that it did not intend the law of the case doctrine to apply to any rulings by the prior District Judge assigned to the case. 4/28/17 Tr. at 9-10 ("The other thing I would ask you-all to do, you're with a new judge now, and with all due respect to my colleague, I mean, I'm treating this case pretty much as it's starting with me, all right? I mean, I'm certainly going to follow what the Fourth Circuit has done, but just because certain things were done or not done previously, don't assume that will be the case with me, all right?").

[9] *Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009) does not prevent dismissal. When the jurisdictional facts are "inextricably intertwined with those central to the merits, the district court should resolve the relevant factual disputes only after appropriate discovery." *In re KBR, Inc. Burn Pit Litig.*, 744 F.3d 326, 334 (4th Cir. 2014). Here, Plaintiffs have had full discovery. As a result, the Court has a full record before it, allowing a conclusive determination of the subject-matter jurisdiction inquiry.

Fourth Circuit's analysis in *Al Shimari III*, controlled the inquiry in this case, and that Plaintiffs' burden was to provide *facts*, not allegations, that would satisfy the requirements of *RJR Nabisco*. *Nestle* adds to the equation by making clear that generic corporate activities in the United States do not transform alleged torts occurring overseas into a domestic application of ATS. Faithful application of *Nestle* requires dismissal of Plaintiffs' claims, as Plaintiffs' claims are fundamentally extraterritorial under the analytical framework dictated by *Nestle*.

In *Al Shimari III*, the Fourth Circuit fashioned a holistic, multi-factor "touch and concern" test, derived from its understanding of *Kiobel*, to hold that Plaintiffs had alleged enough United States contacts to support ATS jurisdiction. In particular, the Fourth Circuit concluded that its extraterritoriality analysis should consider "all the facts relevant to the lawsuit, including the parties' identities and their relationship to the causes of action," and not just the particular acts that may have violated international law. *Al Shimari III*, 758 F.3d at 527.

This Court's 2019 denial of CACI's post-discovery, fact-based extraterritoriality motion expressly held that *Al Shimari III* remained the appropriate extraterritoriality test under ATS and listed the following the corporate activities that, in the Court's view, made Plaintiffs' claims a domestic application of ATS. In the Court's words:

> ➢ "The contract, for example, that gets CACI involved in this in the first place was issued in the United States." Ex. 2 at 5.
>
> ➢ "We have a United States corporation." *Id.*
>
> ➢ "We have United States staff over there at Abu Ghraib." *Id.* at 5-6.
>
> ➢ "We have people from CACI traveling from the United States to Abu Ghraib." *Id.* at 6.
>
> ➢ "You've got Northrop doing that, you have others." *Id.*[10]

---

[10] The Court made reference in its ruling to "Northrop" traveling from the U.S. to Iraq. That reference is demonstrably wrong. Scott Northrop was CACI's country manager *in Iraq*,

*Nestle* specifically rejected the approach taken in *Al Shimari III* and by this Court, holding that the *RJR Nabisco* extraterritoriality test applies, a test that does not consider "all facts relevant to the lawsuit," but looks only to the "focus" of the statute and then determines whether the conduct that is the focus of the statute was principally domestic or extraterritorial.  *Nestle*, 141 S. Ct. at 1936.

Indeed, during the hearing on CACI's appeal of the Court's denial of CACI's 2019 motions to dismiss, the Fourth Circuit panel seemed acutely aware that the intervening *RJR Nabisco* extraterritoriality test applied, not the holistic *Al Shimari III* test, and that Plaintiffs' burden was to provide ***evidence*** of domestic conduct relevant to ATS's focus.  As Judge Floyd stated to CACI's counsel:

> Somewhere in the record, Judge Brinkema said that it's – used the phrase "law of the case."  Does – does she understand that *RJR Nabisco* controls?

Ex. 4 at 12:12-15.  Judge Floyd similarly told Plaintiffs' counsel that Plaintiffs needed record evidence of domestic conduct relevant to ATS's focus to support an exercise of jurisdiction:

> Well, you – you're going to have to answer this question one way or another if we assume pendent – pendent appellate jurisdiction or if we were to send it back.  Assume the *RJR Nabisco* test is – is applicable, and the focus of the statute is to – a domestic nexus to the merits . . . of the ATS claim, not your allegation, but what is your evidence that – that – that there is activity here in the United States.

*Id.* at 33:8-19.  Plaintiffs' counsel did not answer *that* question, prompting Judge Quattlebaum to state: "And we want the evidence of domestic conduct."  *Id.* at 34:20-21.  Judge Quattlebaum

---

and was located in Iraq.  Ex. 5 at 32-33, 43-44.  As Mr. Northrop testified, he never worked for CACI in the United States before deploying to Iraq.  *Id.* at 33.  Thus, as in *Nestle*, activities by Mr. Northrop were purely *extraterritorial*, and cannot support application of ATS.  *Nestle*, 141 S. Ct. at 1936.  Only one CACI employee based in the United States traveled to Iraq, and those visits had nothing to do with treatment of detainees or interrogation operations.  Mudd Decl. ¶ 6 (Ex. 6).

then asked Plaintiffs' counsel for "JA cites about the conduct that happened in the United States, not just theories, evidence with JA cites." *Id.* at 36:6-8.  When Plaintiffs' counsel could not provide JA cites, Judge Floyd asked whether arguing counsel's colleague could assist because "this case rises and falls on that." *Id.* at 37:12-14.  Plaintiffs' counsel still failed to proffer any JA cites.  This was not surprising.  The fact of the matter is there were no JA cites for domestic conduct ***because there was no relevant domestic conduct***.

Thus, the panel presiding over CACI's 2019 appeal clearly expected application of the *RJR Nabisco* test on remand and for Plaintiff to be held to its burden of presenting facts relevant to ATS's focus.  *Nestle* confirms beyond cavil the necessity of this inquiry, one guided by the Court's admonition that facts involving general corporate activity carry no weight in the extraterritoriality analysis.  *Nestle*, 141 S. Ct. at 1936-37.

###   2.   The *RJR Nabisco* Test, as Applied to ATS in *Nestle*, Requires Dismissal

CACI condemns torture.  Unequivocally.  But CACI also condemns the forced child slavery alleged in *Nestle*, and the horrific nature of that alleged conduct did not give rise to an ATS claim against the defendants in that case because none of the conduct relevant to ATS's focus occurred in the United States.  The same is true here.

In *Nestle*, the Court had no need to specify ATS's focus because the plaintiffs' claims failed regardless of whether ATS's focus is on "the conduct that directly caused the injury" or the "conduct that violates international law." *Nestle*, 141 S. Ct. at 1936-37.  The Supreme Court has always identified a statute's "focus" as something explicitly mentioned in the statute's text.[11] Indeed, as the Fourth Circuit held in *Harris*, "[f]or purposes of the extraterritoriality analysis, a

---

[11] *WesternGeco*, 138 S. Ct. at 2137-38; *RJR Nabisco*, 579 U.S. at 337; *Morrison*, 561 U.S. at 266-67; *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991); *see also U.S. ex rel. Wilson v. Graham Cty. Soil & Water Cons. Dist.*, 777 F.3d 691, 698 n.4 (4th Cir. 2015).

statute's 'focus' is 'the object of its solicitude,' including the conduct it seeks to regulate and the parties and interests it seeks to protect." *Harris*, 991 F.3d at 559 (quoting *WesternGeco*, 138 S. Ct. at 2137).

By its terms, the ATS is designed to protect "aliens" from a "tort only, committed in violation of the law of nations or of a treaty of the United States."  28 U.S.C. § 1350. Accordingly, courts have held that ATS's "focus" is the tort committed in violation of international norms, and that tort is what must occur in the United States for ATS to apply.[12] Plaintiffs allege that they were injured in Iraq, by U.S. soldiers deployed to Iraq.  There is no evidence whatsoever of CACI personnel in the United States entering into a conspiracy with anyone who abused detainees in Iraq.  As for Plaintiffs' aiding and abetting claims, the conduct in the United States on which Plaintiffs rely is general corporate activity that cannot support an exercise of jurisdiction under ATS.

*Nestle* makes clear that, no matter what veneer a court might place on ATS's "focus," "corporate presence" and "general corporate activity" in the United States do not transform a case involving injuries occurring outside the United States into a domestic application of ATS. 141 S. Ct. at 1936-37.  *Nestle* also establishes that "general corporate activity" includes the broad category of "decisionmaking."  *Id.*  The Supreme Court and other federal courts similarly have construed the term "general corporate activity" broadly, and consistent with its plain meaning, as encompassing all of a company's authorized business conduct, as opposed to conduct that is by its nature criminal or tortious.[13]

---

[12] *Adhikari v. Kellogg, Brown & Root, Inc.*, 845 F.3d 184, 199-200 (5th Cir. 2017); *Mastafa v. Chevron Corp.*, 770 F.3d 170 (2d Cir. 2014).

[13] *See, e.g.*, *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984) ("general corporate actions" are the business activities in which a corporation engages); *Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG*, 160 F. Supp. 2d 722, 739 (S.D.N.Y.

Under *Nestle*, CACI's status as a U.S. corporation, that the CACI personnel in Iraq were U.S. citizens with U.S. security clearances, that CACI received payments in the U.S. from contracts with the U.S. government, and visits by a U.S.-based employee to Iraq – all relied on by the Fourth Circuit and this Court in finding jurisdiction – are simply irrelevant under the "focus" test required by *RJR Nabisco* and *Nestle*. *Nestle* reinforces that a defendant's status as a domestic corporation is insufficient to create jurisdiction under ATS. *Nestle*, 141 S. Ct. at 1937 ("As we made clear in *Kiobel*, a plaintiff does not plead facts sufficient to support domestic application of the ATS simply by alleging 'mere corporate presence' of a defendant. Pleading general corporate activity is no better."). Every other domestic contact relied on by the Fourth Circuit and this Court is no more than general corporate activity.

CACI's Certificate of Incorporation authorizes it to "engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware." Ex. 7 at 1.[14] Contracting is a typical – indeed, necessary – activity for corporations in general and for government contractors such as CACI in particular. Mudd Decl. ¶ 3. This includes government contracts entered into by U.S.-based corporations that involve supporting

---

2001) (general corporate activity includes acts such as entering into contracts and other conduct within the "corporate function"); *Oeltjenbrun v. CSA Investors, Inc.*, 3 F. Supp. 2d 1024, 1049 (N.D. Iowa 1998) (treating "general corporate activities" as those authorized business activities in which a company has been engaged); *Glass Egg Digital Media v. Gameloft*, No. 17-cv-4165, 2019 WL 5720731, at *1, 3 (N.D. Cal. Nov. 5, 2019) (treating "general corporate activities" as including "corporate activities and . . . contractual and revenue relationships"); *iSocial Media, Inc. v. bwin.party Digital Entertainment PLC*, No. 12-cv-81278, 2013 WL 5588238, at *8 (S.D. Fla. Oct. 10, 2013) (general corporate activity includes "day-to-day operations" of a business); *United States v. Sutton*, No. 5:08-cr-40, 2009 WL 481411, at *4 (M.D. Ga. Feb. 25, 2009) (distinguishing law firm's "general corporate activity" from individual lawyer's alleged participation in honest services fraud). "For all practical purposes, 'operations' and 'activities' will mean the same thing . . . ." *Little League Baseball, Inc. v. Welsh Pub. Group, Inc.*, 874 F. Supp. 648, 653 (M.D. Pa. 1995).

[14] CACI was originally incorporated as "CACI Acquisition Corporation," and changed its name to CACI Premier Technology, Inc., upon the acquisition of assets from Premier Technology Group, Inc. Ex. 8.

United States operations overseas.  *Id.* ¶ 5.  Every government contractor, including CACI, enters into contracts with the United States, and it is very common for such contracts to require the contractor to provide contractor support outside of the United States.  *Id.* ¶¶ 3-5.  Indeed, "[f]rom 2003 to 2007, U.S. agencies awarded $85 billion in contracts for work to be principally performed in the Iraq theater," with "[m]ore than 70 percent of those awards . . . for contracts performed in Iraq itself."  Congressional Budget Office, *Contractors' Support of U.S. Operations in Iraq* at 1 (Aug. 2008) (Ex. 9).  As of early 2008, there were 190,000 contractor employees working on U.S.-funded contracts in Iraq, and about 38,000 of them were U.S. citizens.  *Id.* Clearly, contracting with the United States for work in Iraq constitutes general corporate activity.

That contractor personnel performing work in Iraq were U.S. citizens with security clearances is equally unremarkable.  As the Court is aware, the contracts at issue in this action involved CACI personnel developing and accessing classified information.  Mudd Decl. ¶ 4. This Court has three times upheld invocations of the state secrets privilege by Secretary of Defense Mattis, denying CACI access to information regarding which military and CACI interrogation personnel interacted with Plaintiffs, on the grounds that the requested information is classified and a state secret.  Dkt. #791, 850, 886, 921, 1012.  That CACI would be a domestic corporation, and that the employees supplied as interrogators would be U.S. citizens with U.S.-issued security contracts, is general corporate activity required by any U.S. government contract involving development of or access to classified information.  Mudd Decl. ¶¶ 3-5 (Ex. 6).

The National Security Industrial Program ("NISP"), established by Executive Order 12829 (Jan. 6, 1993), is the principal authority in the United States for managing the needs of private industry to access classified information.  The National Industrial Security Program Operating Manual ("NISPOM"), codified at 32 C.F.R. § 117, establishes requirements for the

protection of classified information disclosed to or developed by contractors.  A facility security clearance ("FCL") is a determination by the federal government that it is in the interests of national security for a company to access classified information.  NISPOM § 117.9(c)(1).  Among other things, to receive an FCL, a company is required to be organized under the laws of a U.S. state, a U.S. territory, the District of Columbia, or an American Indian/Alaska Native tribal entity, and to be physically located in the United States or its territories.  NISPOM § 117.9(c)(2).  For a government contractor, only U.S. citizen employees of a company with an FCL may obtain their own personnel security clearances.  NISPOM § 117.10(c); Executive Order 12968 §3.1(b) (1995).

Thus, government contracts requiring that contractor personnel develop and/or have access to classified information by definition will require that the government contractor is a U.S. corporation located in the United States, and that the employees developing and/or accessing classified information are U.S. citizens with U.S. government issued security clearances.  Mudd Decl. ¶ 4.  CACI's provision of U.S. citizens with security clearances, as required by law, to work on a classified contract is quintessentially general corporate activity that does not convert claims involving alleged injuries occurring overseas into a domestic application of ATS.  *Id.*

The only other domestic contacts relied on by *Al Shimari III* were Plaintiffs' *allegations*, never supported with evidence, that CACI managers in the United States approved acts of torture, encouraged misconduct in Iraq, and covered up misconduct when it was discovered.  *Al Shimari III*, 758 F.3d at 530-31.  While crediting allegations may have been permissible in *Al Shimari III* based on the limited record developed at that point, clear Fourth Circuit precedent holds that Plaintiffs' allegations are irrelevant where, as here, discovery has concluded and CACI

has made a factual challenge to subject-matter jurisdiction. *Beck*, 848 F.3d at 270 (plaintiffs' allegations not taken as true in a fact-based challenge to subject-matter jurisdiction).

Moreover, even if there were evidence of operational decisions made by CACI in the U.S. regarding interrogations and detainee treatment – and the evidentiary record refutes such a proposition – *Nestle* holds that such operational decisionmaking is insufficient to transform a claim involving injuries occurring overseas into a domestic application of the ATS. *Nestle*, 141 S. Ct. at 1937. In *Nestle*, which involved a facial jurisdictional challenge where plaintiffs' allegations were treated as true, the defendant corporations were alleged to have known child slavery was a problem in the Ivory Coast but nevertheless "continued to provide financial support and technical farming aid, even though they knew their acts would assist farmers who were using forced child labor, and knew their assistance would facilitate child slavery." *Doe*, 906 F.3d at 1123. If the allegations of corporate decisionmaking in *Nestle* were insufficient to transform overseas violations of international law into a domestic application of ATS, no actual facts regarding CACI's conduct in the United States could conceivably support an exercise of jurisdiction under the ATS.

Finally, CACI has no burden at all with respect to subject-matter jurisdiction; the burden of proving facts sufficient to establish jurisdiction lies with Plaintiffs. *Demetres*, 776 F.3d at 272; *United States ex rel. Vuyyuru v. Jadhev*, 555 F.3d 337, 347-48 (4th Cir. 2009). The record evidence confirms the wholesale absence of evidence of domestic conduct by CACI with respect to the violations of international law alleged by Plaintiffs. Specifically:

> ➢ There is no evidence that any of the allegedly tortious conduct was ***planned*** in the United States.

> ➢ There is no evidence that any CACI executive or employee in the United States ***conspired*** with anyone in Iraq to abuse detainees.

> ➤ There is no evidence that any CACI executive or employee in the United States ***participated*** in the allegedly tortious conduct.

> ➤ There is no evidence that any CACI PT executive or employee in the United States ever ***encouraged, directed or condoned*** the allegedly tortious conduct.

> ➤ There is no evidence that any CACI executive or employee in the United States ***made any decisions*** to further the allegedly tortious conduct.

> ➤ There is no evidence that any CACI executive or employee in the United States was even ***aware*** of the allegedly tortious conduct at the time it supposedly occurred.

> ➤ And, as Plaintiffs have conceded, the ***CACI personnel in Iraq did not abuse them***, meaning that CACI personnel in the United States could not have participated in something that never occurred, *i.e.*, abuse of Plaintiffs by CACI personnel in Iraq.

Plaintiffs' inability to marshal facts showing domestic conduct by CACI in violation of international law makes this case an impermissible extraterritorial application of the ATS and requires dismissal.  CACI could stop there, as it has no burden on this motion.

But the record is not silent on the question of domestic conduct.  Rather, the record evidence affirmatively *refutes* any notion that CACI personnel in the United States had any involvement with the treatment of detainees in Iraq.  Each CACI employee had to be approved by U.S. military authorities in Iraq before deploying to Iraq.  Mudd Decl. ¶ 7 (Ex. 6).  Colonel Thomas Pappas, who commanded the Army Brigade conducting interrogations at Abu Ghraib prison, has confirmed that military and CACI interrogators were directed and supervised not by CACI personnel in the United States, but by the U.S. Army chain of command in Iraq.  Ex. 10, ¶ 9 ("In all respects, CACI PT interrogators were subject to the operational control of the U.S. military.");  *id.*, ¶ 10 ("The military decided where each detainee would be incarcerated within Abu Ghraib prison, which detainees would be interrogated, and who would conduct the interrogation of a given detainee.  Both military and CACI PT interrogators were required to

prepare an interrogation plan for a detainee, which was reviewed and approved by the U.S. military leadership in the [Interrogation Control Element].").   Colonel William Brady, who oversaw CACI's interrogation contracts, testified similarly.   Ex. 11, ¶ 4 ("During all relevant times, the civilian interrogators provided by CACI PT in support of the United States Army's mission at the theater interrogation site were under the supervision of military personnel from the military unit to which they were assigned to support.").

CACI personnel in the United States had *no role whatsoever* in directing, supervising, or reviewing detainee and interrogation operations in Iraq.   Mudd Decl. ¶ 7.   CACI personnel in the United States were not privy to the rules established by the U.S. military for detainee treatment and the conduct of interrogations.   *Id.* ¶¶ 6-8.   CACI personnel in the United States did not know which detainees were being interrogated in Iraq or even which detainees the U.S. military assigned to CACI interrogators for interrogation.   *Id.* ¶ 8.

Government records confirm that only two CACI employees – CACI Interrogators A and G[15] – were assigned to interrogate any of these Plaintiffs.   Ex. 12.   CACI Interrogator A, who participated in one interrogation of Plaintiff Al Shimari, confirmed the abject lack of involvement of CACI personnel in the United States in issues relating to detainee treatment:

> Q:   During the time that you were working at Abu Ghraib Prison, did you interact with CACI personnel who were working back in the United States?
>
> A:   Yes.

---

[15]   Over CACI's objection, the Court has allowed the United States to identify interrogation personnel interacting with Plaintiffs, even CACI employees, with pseudonyms and has severely limited the questions that CACI was permitted to ask in the depositions.   This has prevented CACI from developing evidence that particular CACI employees did or did not interact with these Plaintiffs, a prejudicial denial of due process.

Q:   Did you interact with CACI personnel who were working in
     the United States for anything other than administrative
     matters?

A:   No.

     . . . .

Q:   What type of administrative issues would you deal with
     people working for CACI back in the United States about?

A:   Pay problems, never being issued a weapon.

     . . . .

Q:   Did you report to CACI personnel working in the United
     States about anything relating to the conduct of interrogations
     at Abu Ghraib Prison?

A:   No.

Q:   Did CACI personnel working in the United States have any
     role in dictating how interrogation operations proceeded at
     Abu Ghraib Prison?

A:   I answered no.

Ex. 13 at 77-79 (objections and colloquy of counsel omitted).   CACI Interrogator G, who

participated in one interrogation of Plaintiff Al-Zuba'e, also testified that he had no interactions

with CACI personnel located in the United States.  Ex. 14 at 71-72.

Another CACI interrogator testified similarly regarding the lack of involvement of CACI

personnel in the United States in detainee operations:

Q:   What about back in the United States; did you know who was
     operationally in the line of – of command at CACI, back in
     the United States?

A:   The operations side, to my knowledge there was nobody at
     home office or stateside that was CACI that was even
     concerned with operational matters, and that their concern
     was administrative matters solely.

25

Ex. 15 at 27.  CACI's contract manager in the United States also testified that the U.S. military "supervise[d] the CACI employees in Iraq," Ex. 16 at 36, and added the following:

> Q:   Did CACI engage in any oversight over what the
>        interrogators were doing in Iraq?
>
> A:   Not that I'm aware of.

*Id.* at 60 (objections of counsel omitted).

As *Nestle* makes clear, the *RJR Nabisco* "focus" test for extraterritoriality applies to claims brought under ATS, not the amorphous "touch and concern" test fashioned by the Fourth Circuit in *Al Shimari III* and applied by this Court in rejecting CACI's post-discovery, fact-based challenge to subject-matter jurisdiction.  As was the case for the defendants in *Nestle*, CACI is entitled to dismissal regardless of whether ATS's focus is viewed as the place where injury occurred or the place where the alleged violations of international norms occurred.   141 S. Ct. at 1936-37.  These Plaintiffs allege injury in Iraq, and there are no facts showing CACI activities in the United States violating international law as it relates to these Plaintiffs.  Indeed, the domestic contacts associated with Plaintiffs' claims are far less extensive than those found wanting in *Nestle*, as the U.S. military's obvious need to control its mission functionally severed CACI employees in Iraq from any operational supervision by CACI personnel in the United States.  With no facts showing a violation of international law by CACI personnel in the United States, Plaintiffs' claims, like those of the plaintiffs in *Nestle*, must be dismissed no matter how the Court views the "focus" of ATS.

### E.   *Nestle* Casts Doubt on Whether Judges Are Permitted to Create New Substantive Causes of Action Under ATS

ATS is a "jurisdictional statute [that] does not create a cause of action."  *Nestle*, 141 S. Ct. at 1935.  Congress has created only one substantive cause of action under ATS's

jurisdictional grant, the Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350 note,[16] a statute that has no application here because, among other reasons, it applies only to torture under color of foreign law and applies only to individuals, not corporations.  *See Mohamad v. Palestine Auth.*, 566 U.S. 449, 453-56 (2012).  All other claims asserted under ATS have been brought because the Supreme Court's "precedents have stated that courts may exercise common-law authority under this statute to create private rights of action in very limited circumstances." *Nestle*, 141 S. Ct. at 1935 (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 724 (2004)).

Although the propriety of judge-made causes of action under ATS was not a question on which the Supreme Court granted *certiorari* in *Nestle*, three Justices stated their view that the plaintiffs' claims should fail because "[w]e cannot create a cause of action that would let them sue petitioners.  That job belongs to Congress, not the Federal Judiciary." *Id.* at 1937 (Thomas, J., joined by Gorsuch and Kavanaugh, J.J.).  Under the view of these Justices, the Court, without having to reexamine *Sosa*, should preclude judicial creation of *any* tort under ATS other than the three considered by Congress at the time of ATS's enactment – violation of safe conducts, infringement of the rights of ambassadors, and piracy.  *Id.* at 1939.[17]

Justice Gorsuch's concurrence in *Nestle* expressed some frustration with lower court treatment of claims brought under ATS.  He noted that the Supreme Court had "never – not once in 230 years – invoked the ATS, to create a new cause of action," but that since *Sosa*, "plaintiffs have presented for this Court's consideration one new potential cause of action after another" that were recognized by a federal district court, only to have the Supreme Court reject the

---

[16] *See Jesner v. Arab Bank PLC*, 138 S. Ct. 1386, 1403 (2018) (plurality opinion) (describing the TVPA as "the only cause of action under the ATS created by Congress rather than the courts").

[17] We note that it is the position of the United States that there is no cognizable claim under ATS for aiding and abetting a violation of international norms, an issue the Supreme Court did not need to reach in order to reject the plaintiffs' claims.  *Nestle*, 141 S. Ct. at 1936.

plaintiffs' claim every single time.  *Id.* at 1942 (Gorsuch, J. concurring, joined by Kavanaugh, J.).  For his part, Justice Alito stated in *Nestle* that the opinions by Justices Thomas and Gorsuch "make strong arguments that federal courts should never recognize new claims under ATS," but concluded the issue should not be addressed in *Nestle* because it was not raised by the petitioners.  *Id.* at 1951 (Alito, J., dissenting).  Chief Justice Roberts similarly has expressed doubts about the propriety of judicial creation of substantive causes of action.[18]  So, too, has Justice Barrett.[19]  As Justices Alito, Roberts and Barrett abstained from addressing this issue, however, the full Court's opinion on this issue remains unsettled.

CACI recognizes that, at this point, the Court must give effect to *Sosa*'s holding that the door for judicial recognition of ATS causes of action is "still ajar subject to vigilant doorkeeping, and thus open to a narrow class of international norms today."  *Sosa*, 542 U.,S. at 729.[20]  But that door is subject to the presumption against extraterritoriality, first applied in *Kiobel*, and to *Nestle*'s holding that general corporate activity does not convert extraterritorial injuries into a domestic application of ATS.  Therefore, for the reasons addressed above, dismissal is required because Plaintiffs' claims are fundamentally extraterritorial in nature.

In addition, however, CACI asserts an entitlement to dismissal on the grounds that judicial creation of a substantive cause of action under ATS is *per se* improper.  The day may

---

[18] *Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020) (majority opinion joined by Roberts, C.J.) (noting that the Court has "expressed doubt about our authority to recognize any causes of action not expressly created by Congress"); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856-57 (2017) (majority opinion joined by Roberts, C.J.) ("If the statute does not itself so provide, a private cause of action will not be created through judicial mandate").

[19] *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019) ("Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions.").

[20] This Court, relying on *Sosa*, has held that claims for torture, cruel, inhumane and degrading treatment, and war crimes are cognizable under ATS, and that claims for conspiracy and aiding and abetting these acts are similarly cognizable under ATS.  Dkt. #615.

come when insufficiently-vigilant doorkeeping by the lower federal courts causes the Supreme

Court to revisit the wisdom of allowing any creation of new causes of action under ATS.

## IV.    CONCLUSION

The Court should dismiss this case for lack of subject matter jurisdiction.

Respectfully submitted,

*/s/   John F. O'Connor*

John F. O'Connor
Virginia Bar No. 93004
Linda C. Bailey (admitted *pro hac vice*)
Molly Bruder Fox (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
(202) 429-3902 – facsimile
joconnor@steptoe.com
lbailey@steptoe.com
mbfox@steptoe.com

William D. Dolan, III
Virginia Bar No. 12455
LAW OFFICES OF WILLIAM D.
DOLAN, III, PC
8270 Greensboro Drive, Suite 700
Tysons Corner, VA 22102
(703) 584-8377 – telephone
wdolan@dolanlaw.net

*Counsel for Defendant CACI Premier*
*Technology, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of July, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following counsel:

John Kenneth Zwerling
The Law Offices of John Kenneth Zwerling, P.C.
114 North Alfred Street
Alexandria, VA 22314
jz@zwerling.com


/s/   John F. O'Connor
John F. O'Connor
Virginia Bar No. 93004
Attorney for Defendant CACI Premier Technology,
   Inc.
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
(202) 429-3902 – facsimile
joconnor@steptoe.com