# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI *et al.*, <br>         Plaintiffs, <br><br>     *v.* <br><br> CACI PREMIER TECHNOLOGY, INC. <br>         Defendant. | Case No. 1:08-cv-827 (LMB/JFA) |

## PLAINTIFFS' OPPOSITION TO DEFENDANT CACI PREMIER TECHNOLOGY, INC.'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**Table of Contents**

Page

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND .............................................................................................................................2

ARGUMENT ...................................................................................................................................4

I. THE LAW OF THE CASE IS THAT THE COURT HAS SUBJECT MATTER JURISDICTION .................................................................................................................5

II. NEITHER *EGBERT*, *TORRES* NOR *BIDEN* MERITS ALTERING THIS COURT'S PRIOR DECISIONS .................................................................................................7

    A.    *Egbert v. Boule*, 142 S. Ct. 1793 (2022) ...................................................................8

    B.    *Torres v. Texas Dep't of Pub. Safety*, 142 S. Ct. 2455 (2022) ...............................11

    C.    *Biden v. Texas,* 142 S. Ct. 2528 (2022) ..................................................................12

CONCLUSION ..............................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al Shimari v. CACI Premier Tech.*,
 263 F. Supp. 3d 595 (E.D. Va. 2017) .................................................................................... 3

*Al Shimari v. CACI Premier Tech.*,
 300 F. Supp. 3d 758 (E.D. Va. 2018) ............................................................................. passim

*Al Shimari v. CACI Premier Tech., Inc.*,
 657 F. Supp. 2d 700 (E.D. Va. 2009) ..................................................................................... 3

*Al Shimari v. CACI Premier Technology, Inc.*,
 840 F.3d 147 (4th Cir. 2016) ........................................................................................ 2, 3, 6

*Biden v. Texas*,
 142 S. Ct. 2528 (2022) .................................................................................................. passim

*Christianson v. Colt Indus. Operating Corp.*,
 486 U.S. 800 (1988) ............................................................................................................... 5

*Egbert v. Boule*,
 142 S. Ct. 1793 (2022) .................................................................................................. passim

*Nestle USA, Inc. v. Doe*,
 141 S. Ct. 1931 (2021) ....................................................................................................... 4, 9

*RJR Nabisco, Inc. v. European Cmty*.
 136 S. Ct. 2090 (2016) ........................................................................................................... 4

*Sosa v. Alvarez-Machain*,
 542 U.S. 692 (2004) ...................................................................................................... passim

*TFWS, Inc. v. Franchot*,
 572 F. 3d 186 (4th Cir. 2009) .................................................................................... 5, 8, 10

*Torres v. Texas Dep't of Pub. Safety*,
 142 S. Ct. 2455 (2022) ............................................................................................. 1, 5, 7, 11

*United States v. Lentz*,
 384 F. Supp. 2d 934 (E.D. Va. 2005) .................................................................................... 5

*Zivotofsky v. Clinton*,
 132 S. Ct. 1421 (2012) ........................................................................................................... 7

**Statutes**

Alien Tort Statute, 28 U.S.C. § 1350 ..................................................................................................1

Administrative Procedure Act, 5 U.S.C. § 701 *et seq*...................................................................12

Foreign Claims Act, 10 U.S.C. § 2734 ...........................................................................................10

Immigration and Nationality Act, 8 U.S.C. § 1225 ......................................................................12

**Other Authorities**

U.S. CONST. amend. I .................................................................................................................8, 9

U.S. CONST. amend. V ....................................................................................................................8

Plaintiffs respectfully submit this opposition to the latest motion to dismiss by Defendant CACI Premier Technology, Inc. ("CACI") for lack of subject matter jurisdiction based on three recent but irrelevant rulings by the Supreme Court—*Egbert v. Boule*, 142 S. Ct. 1793 (2022); *Torres v. Texas Dep't of Pub. Safety*, 142 S. Ct. 2455 (2022); and *Biden v. Texas*, 142 S. Ct. 2528 (2022).

## PRELIMINARY STATEMENT

More than fourteen years after Plaintiffs filed their original complaint and more than nine years after Plaintiffs filed the current complaint (Dkt No. 177)—and with a motion to dismiss already pending before this Court[1] and numerous previous motions to dismiss based on subject matter jurisdiction having been denied—CACI files yet another motion to dismiss for lack of subject matter jurisdiction. There is nothing new in this version of CACI's argument, let alone novel enough to displace this Court's repeated conclusion—as well as binding Fourth Circuit law—that it has subject matter jurisdiction over the claims of torture, war crimes and cruel, inhumane and degrading treatment ("CIDT") under the Alien Tort Statute (codified at 28 U.S.C. § 1350, "ATS"). *See Al Shimari v. CACI Premier Tech.*, 300 F. Supp. 3d 758, 781, 789 (E.D. Va. 2018).

In the instant motion, CACI contends that three non-ATS decisions by the Supreme Court—a *Bivens* case (*Egbert*), a State sovereign immunity case (*Torres*) and a statutory construction case (*Biden*)—merit overturning the law of the case. They do not.

The law of the case, as enunciated by this Court in prior rulings, is that "[P]laintiffs have appropriately stated a claim under the ATS . . . ." *Al Shimari*, 300 F. Supp. 3d at 782. Relevant

---

[1] *See* Dkt. No. 1331.

to CACI's current motion, "applying the ATS [here] represents the constitutional exercise of Congress's inherent powers to regulate the conduct of war." *Id.* at 787. A party seeking to overturn the law of the case based on intervening case law must show that a "controlling authority has made a contrary decision of law applicable to the issue presented . . . ." *Peters v. School Bd. of City of Va. Beach*, 2007 WL 295618, at *4 (E.D. Va. Jan. 26, 2007).

CACI has failed to satisfy that burden. It is time for this long-pending case to go to trial. CACI's increasingly desperate and meritless gambits designed to prevent that inevitable reckoning should be rejected.

## BACKGROUND[2]

If the long history of this case establishes one thing, it is that this Court has ruled repeatedly that it has subject matter jurisdiction over ATS claims stemming from harm suffered as a result of a notorious and widely condemned U.S. contractor-soldier conspiracy to torture Iraqi civilian detainees at the U.S.-run Abu Ghraib prison following the 2003 invasion and ensuing armed conflict in Iraq.

In *Al Shimari v. CACI Premier Technology, Inc.* ("*Al Shimari III*"), the Fourth Circuit reversed a prior ruling of this Court and found that Plaintiffs' ATS claims were a permissible application of the ATS. 758 F.3d 516 (4th Cir. 2014). Two years later, the Fourth Circuit rejected CACI's attempt to have the case dismissed under the political question doctrine, holding contractors' unlawful acts are not shielded from judicial review and that violations of law—such

---

[2] The Court is familiar with the long history of this case. Thus, this section of the brief focuses only on issues that are relevant to the present motion. For a detailed factual background, Plaintiffs refer the Court to their prior submissions. (*See* Dkt. Nos. 1090 at 2-17; 639 at 3-16; 639-1; 639-2; 528; and 527 at 2-15.)

as acts of torture—fell outside protections that might render sensitive military judgments non-justiciable. *Al Shimari v. CACI Premier Technology, Inc.*, 840 F.3d 147, 151 (4th Cir. 2016) ("*Al Shimari IV*").

Subsequently, in 2017, this Court laid out the proper standard under the leading ATS case, *Sosa v. Alvarez-Machain,* 542 U.S. 692, 712 (2004), for evaluating the propriety of ATS claims: whether the claim alleges a violation "of a norm that is specific, universal, and obligatory" and comparable to 18th century paradigms. *See Al Shimari v. CACI Premier Tech.*, 263 F. Supp. 3d 595, 599 (E.D. Va. 2017) (citing *Sosa*, 542 U.S. at 732). Shortly thereafter, CACI filed another motion to dismiss. (Dkt. No. 626.) On February 21, 2018, this Court granted in part, and denied in part, that motion. *See Al Shimari v. CACI Premier Tech*, 300 F. Supp. 3d 758 (E.D. Va. 2018). In denying CACI's motion to dismiss the conspiracy and aiding and abetting claims (which CACI again seeks to dismiss this time around), this Court relied on the *Sosa* standard. First, the Court concluded that "[P]laintiffs have appropriately stated a claim under the ATS [and because they state a violation of settled international law] the political question doctrine is inapplicable." *Id.* at 782. Second, the Court rejected CACI's argument that "the Constitution's allocation of war powers precludes ATS claims arising out of the United States' conduct of war . . . ." *Id.* at 787. Notably, CACI's war powers argument—advanced under a "constitutional preemption" frame—echoed a similar "power to wage war" argument presented and rejected nearly a decade earlier, that time advanced under the political question doctrine. *See Al Shimari v. CACI Premier Tech., Inc.*, 657 F. Supp. 2d 700, 713 (E.D. Va. 2009).

Undeterred, CACI filed another motion to dismiss in 2018. This time, CACI argued that another Supreme Court case, *Jesner v. Arab Bank, plc*, 138 S. Ct. 1386 (2018), which barred

3

ATS claims against foreign corporations, should be extended to bar suits against domestic corporations. (Dkt. No. 812.) The Court denied CACI's motion. (Dkt. No. 860.)

In early 2019, CACI continued its pattern of grasping at unrelated Supreme Court precedent by filing another motion to dismiss. This time, CACI argued that *Al Shimari III* was no longer good law in light of the Supreme Court's decision—three years earlier (and before *Jesner*)—in *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016). CACI also filed a motion for summary judgment. (Dkt. No. 1033.) The Court denied both of these motions. (Dkt. No. 1143.[3])

In the instant motion, CACI recasts arguments already rejected by this Court, contending that intervening, but unrelated, Supreme Court law implies that "the ATS does not permit courts to recognize and authorize claims under the ATS that arise out of the United States' prosecution of war." (*See* Dkt. No. 1368 ("Def.'s Br.") at 1; *compare with* Dkt. No. 627, CACI Brief in Support of 2018 Mot. to Dismiss, at 36 ("[The] Constitution's allocation of war powers precludes ATS claims arising out of the United States' conduct of war.").) As demonstrated below, these arguments are as baseless as the prior arguments raised by CACI and rejected by the Court.

## ARGUMENT

CACI's latest motion to dismiss should be denied for two reasons. First, this Court has already rejected CACI's argument, relying on the applicable Supreme Court precedent in *Sosa*.

---

[3] In July 2021, CACI filed a separate motion to dismiss based on the Supreme Court's decision in *Nestle USA, Inc. v. Doe*, 141 S. Ct. 1931 (2021) (*see* Dkt. No. 1331), which Plaintiffs opposed. (*See* Dkt No. 1340.) That motion is currently pending before this Court. Plaintiffs respectfully incorporate the arguments in their opposition to that motion, which are relevant to the disposition of CACI's most recent motion, here.

*See Al Shimari*, 300 F. Supp. 3d at 782; 787.  Second, the cases cited by CACI—*Egbert*, *Torres*, and *Biden*—do not provide a basis for calling into question either *Sosa* or this Court's prior decisions.

I. **THE LAW OF THE CASE IS THAT THE COURT HAS SUBJECT MATTER JURISDICTION**

The "law of the case" doctrine "provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *United States v. Lentz*, 384 F. Supp. 2d 934, 938 (E.D. Va. 2005) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988)).  One exception to this doctrine is when "controlling authority has since made a contrary decision of law applicable to the issue."  *TFWS, Inc. v. Franchot,* 572 F. 3d 186, 191 (4th Cir. 2009).  Applying the doctrine to the determinations already made by this Court is important, given that the doctrine "promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues."  *Christianson*, 486 U.S. at 816 (citations and quotations omitted).

CACI's motion comes down to a singular contention: that "the ATS does not permit courts to recognize and authorize claims under the ATS that arise out of the United States' prosecution of war."  (Def.'s Br., at 1.)  But CACI has made this argument before.  And it has been rejected by this Court.

CACI previously argued that the "Constitution's allocation of war powers precludes ATS claims arising out of the United States' conduct of war," as "the Constitution expressly commits this Nation's foreign policy and war powers to the federal government."  *Al Shimari*, 300 F. Supp. 3d at 787.  CACI contended that the "Constitution does not allow international law, or the

law of any foreign sovereign, to govern the prosecution of war by the United States . . . [n]or does the Constitution contemplate a judicial role in this area." *Id.*

This Court denied CACI's argument in full. The Court explained that CACI's argument "fundamentally misunderstands the nature of an ATS claim," because "the ATS embodies Congress's considered determination that there should be a cause of action in federal district court for violations of the laws of nations"—claims for which the Court concluded Plaintiffs adequately stated. *Id.* In finding that Plaintiffs adequately stated such claims, the Court relied on its prior recitation of the *Sosa* standard: that "plaintiffs' claims are only cognizable under the ATS to the extent that they represent 'violations of international law' norms that are 'specific, universal, and obligatory.'" *See id.* at 777 (citing *Al Shimari*, 263 F. Supp. 3d at 599 (quoting *Sosa*, 542 U.S. at 732)); *see also id.* at 788 ("[T]he Court has already determined that the international norms prohibiting torture, CIDT, and war crimes were sufficiently specific, universal, and obligatory at the time of the alleged abuse to allow plaintiffs to maintain their ATS claims.") (citation omitted). As a result, "applying the ATS in this context represents the constitutional exercise of Congress's inherent powers to regulate the conduct of war." *Id.* at 787.

And, to the extent that CACI's argument is, yet again, a warmed over version of its political question objection to this case, the Fourth Circuit has conclusively rejected it, finding that the political question doctrine does not apply because "the military cannot lawfully exercise its authority by directing a contractor to engage in unlawful activity," *Al Shimari IV*, 840 F.3d at 157; that "the commission of unlawful acts is not based on 'military expertise and judgment,' and is not a function committed to a coordinate branch of government," *id.* at 158; and that "courts are competent to engage in the traditional juridical exercise of determining whether particular conduct complied with applicable law," be it a statute or treaty. *Id.* at 158, 159 (citing

*Zivotofsky v. Clinton*, 132 S. Ct. 1421, 1430 (2012). Moreover, as this Court previously recognized, "the United States is currently a party in this lawsuit and abstained from filing any brief in support of CACI's suggestion of lack of subject matter jurisdiction, which indicates that the United states does not believe that there are significant foreign-relations problems implicated by allowing plaintiffs' claims to proceed." (Dkt. No. 859 at 10.)

Indeed, in rejecting CACI's identical separation-of-powers arguments in its post-*Jesner* motion to dismiss, this Court already relied on pre-existing law of the case, which continues to govern CACI's *third* attempt to dismiss based on separation of powers arguments. (*See id.* at 8 ("Accordingly, the Court has already determined, and it is the law of the case, that adjudication of plaintiffs' claims does not impermissibly infringe on the political branches.").) Thus, the Fourth Circuit's determination as well as the law of this case demonstrate that the Court has subject matter jurisdiction over ATS claims related to the United States' conduct of war.

## II. *EGBERT, TORRES*, AND *BIDEN* DO NOT REQUIRE ALTERATION OF THIS COURT'S PRIOR DECISIONS

CACI's arguments that *Egbert*, *Torres* and *Biden* strip this Court of its subject matter jurisdiction rely on tenuous inferences that do not merit CACI's proposed dramatic departure from the law of the case. As an initial matter, CACI's framing of the issue demonstrates its reliance on improper inferences. CACI concedes that this Court must find that these three Supreme Court cases (1) "apply beyond their specific contexts" and (2) "adopt principles that bar recognition of the claims in this action under the ATS." (Def.'s Br. at 2.) Plaintiffs do not dispute CACI's assertion that "[i]t is . . . beyond the power of an inferior court to disregard Supreme Court decisions." (*Id.*) However, CACI is asking this Court to do something completely different: to "apply [Supreme Court cases] beyond" the issues presented in those

7

cases and dramatically alter this Court's law of the case, which relied on the Supreme Court's reasoning in *Sosa* and its political question doctrine precedents. The Fourth Circuit has declined such invitations in the past. *See, e.g.*, *TFWS, Inc*, 572 F.3d at 191 (declining to overturn the law of the case and noting that "the Supreme Court did not overrule, or even question, any Supreme Court precedent on which we relied in *TFWS I* . . . The [Supreme] Court has also clarified that it "does not normally overturn, or [] dramatically limit, earlier authority *sub silentio*."). This Court should do the same. But even the cases that CACI cites are inapposite.

### A.   *Egbert v. Boule*, 142 S. Ct. 1793 (2022)

Reprising the argument it made—and this Court rejected—in its post *Jesner* briefing (*see* Dkt No. 859), CACI contends that *Egbert* reinforces the *Ziglar*/*Jesner* test, and therefore requires dismissal of ATS claims if there is "even a single sound reason [for the judiciary] to defer to Congress" in creating a private remedy. (Def.'s Br. at 15-16.) *Egbert* does no such thing.

*Egbert* was a *Bivens*, not an ATS, case. The Court declined to extend *Bivens* to the respondent's First and Fourth Amendment claims. In rejecting judicially implied causes of action under the First and Fourth Amendment, *Egbert,* 142 S. Ct. at 1804, 1807, the Court merely applied the admonition set forth in *Ziglar* that creating *Bivens*-style causes of action is a legislative task. *See id.* at 1805 (explaining that the *Bivens* inquiry comes down to "only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed'") (citing *Ziglar*, 137 S. Ct. at 1858). The Court rejected respondent's Fourth Amendment *Bivens* claim because "Congress is better positioned to create remedies in the border-security context, and the

8

Government has already provided alternative remedies that protect" people like the respondent. *Id.* at 1804.[4]

An ATS claim is a wholly different construct from a *Bivens* claim. *Egbert*—and other *Bivens*-related precedent—presupposes that there is *no* Congressional action guiding the judiciary. Here, there is—and has been since 1789: the ATS, which "embodies Congress's considered determination that there should be a cause of action in federal district court for violations of the law of nations," even as it relates to "the conduct of war." *Al Shimari*, 300 F. Supp. 3d at 787. Consistent with *Sosa*, this Court "has already determined that the international norms prohibiting torture, CIDT, and war crimes were sufficiently specific, universal, and obligatory at the time of the alleged abuse to allow plaintiffs to maintain their ATS claims." *Id.* at 788 (citing *Al Shimari*, 263 F. Supp. 3d 595). Thus, CACI has the separation of powers concerns precisely backward in this case. Unlike a judicially constructed *Bivens* remedy which is unmoored from congressional policy, identifying a cause of action under the ATS in accordance with *Sosa* advances the *congressional* purposes behind the statute's enactment: *i.e.*, "that the failure to provide an adequate remedy to an aggrieved alien could cause significant international tension with that alien's country or even lead that country to attempt to hold the United States or the American citizen responsible." (Dkt. No. 859 at 9); *see also Jesner*, 138 S.Ct. at 1397 (explaining that Congress enacted the ATS to "ensur[e] the availability of a federal forum where the failure to provide one might cause another nation to hold the United States responsible for an injury to a foreign citizen").[5]

---

[4] The Court also denied respondent's First Amendment *Bivens* claim. *See id.* at 1811.

[5] CACI makes much of the what it presents as the Court in *Egbert* elevating a three-Justice observation in *Nestle*—that courts should refrain from creating private damages remedies when

9

*Egbert*, *Jesner* and *Ziglar* do not overturn—or even question—*Sosa*, which this Court relied upon in determining that the proper standard to evaluate ATS claims is whether the claims are "'violations of international law' norms that are 'specific, universal, and obligatory.'" *See Al Shimari,* 300 F. Supp. 3d at 777 (citing *Al Shimari*, 263 F. Supp. 3d at 599 (quoting *Sosa*, 542 U.S. at 732)); *see also Jesner,* 138 S. Ct. at 1409 (describing the *Sosa* standard).

Fourth, CACI reprises another of its age-old arguments that, because there are other damages remedies related to the United States' conduct of war such as the Foreign Claims Act ("FCA"), there can be no ATS claim here. (*See* Def. Br. at 20-21); *Egbert*, at 1806-07. Again, *Egbert* presupposes a situation in which the judiciary is asked to create its own damages remedy without any statutory grounding. *See Egbert*, 142 S. Ct. at 1807 ("[T]he courts cannot second-guess [Congress and the Executive's remedial processes] by superimposing a *Bivens* remedy.") Since "[P]laintiffs' ATS claims are grounded in federal statute . . . the claims cannot be so easily displaced by other federal statutes, which are entitled to no more respect than the ATS." *Al Shimari*, 300 F. Supp. at 791. Because Congress created both the ATS and the FCA, those remedies are intended to operate in parallel, as applicable. Neither displaces the other.

---

there is "even a single sound reason to defer to Congress"— to a holding. (*See* Def.'s Br. at 9; 15 (citing *Egbert*, 142 S. Ct. at 1802-3).) Even if CACI is correct that this observation (which itself relies on a prior Supreme Court *Bivens* case) is now a holding in the *Bivens* context, that statement did not receive enough votes to become controlling law in the ATS context. There could be many reasons why—one of which might be the different contexts of ATS and *Bivens* claims described above. Regardless, it is not up to lower courts to declare that the Supreme Court has, *sub silentio*, overruled one of its prior decisions. *See TFWS Inc.*, 572 F.3d at 192 ("The Supreme Court has repeatedly instructed that only the Supreme Court itself may exercise the prerogative of determining whether any of its own prior holdings have been overturned. The Court has also clarified that it does not normally overturn, or dramatically limit, earlier authority *sub silentio*.") (cleaned up).

### B.     *Torres v. Texas Dep't of Pub. Safety*, 142 S. Ct. 2455 (2022)

Moving farther afield, CACI conjectures that the "upshot of *Torres*" is that the constitutional design requires "the federal government to have sole and exclusive control over the exercise of military power." (Def.'s Br. at 12.) The "upshot" of *Torres*, however, is about federalism, not separation of powers, and, if anything, supports the congressionally-enacted cause of action at issue here. Specifically, *Torres* (1) speaks to the *states'* inability to interfere with Congress's ability to raise and support the armed forces, and (2) is entirely consistent with this Court's jurisdictional findings that, given that "the ATS represents Congress's determination, *in accordance with its war powers*, . . . victims of violations of international law should have a remedy" under the ATS. *Al Shimari*, 300 F. Supp. 3d at 788 (emphasis added).

In *Torres*, the State of Texas argued it had sovereign immunity over a suit brought by an individual claiming that it violated federal reemployment protections for returning veterans. The Court denied Texas's assertion of sovereign immunity, holding that when entering the Union, "the States waived their immunity under Congress' Article I power '[t]o raise and support Armies' and 'provide and maintain a Navy.'" *Torres*, 142 S. Ct. at 2466 (citations omitted). The Court's decision was informed by "[a]n unbroken line of precedents supporting the . . . conclusion [that] Congress may legislate at the expense of traditional state sovereignty to raise and support the Armed Forces." *Id.* at 2465. Unlike concerns regarding federal supremacy over the states, here Congress has specifically authorized the federal judiciary to enforce the ATS, in a manner that "represents the constitutional exercise of Congress's inherent powers to regulate the conduct of war." *Al Shimari*, 300 F. Supp. at 787.

11

### C. *Biden v. Texas*, 142 S. Ct. 2528 (2022)

Lastly, *Biden*—which involves questions related to final agency action under the Administrative Procedure Act and executive discretion under the Immigration and Nationality Act—has nothing to do with the Court's subject matter jurisdiction in this case. CACI's reliance on the run-of-the mill statement about "unwarranted judicial interference in the conduct of foreign policy," (*see* Def.'s Br. at 16 (quoting *Biden*, 142 S. Ct. at 2543)), is misplaced, as this Court and the Fourth Circuit have repeatedly ruled that the tort claims in this case are properly stated under the ATS notwithstanding CACI's broken-record assertions that they would impermissibly interfere with the executive's war-making powers.

CACI fails to point to anything in *Biden* that alters this Court's past reliance on *Sosa* or its prior finding of jurisdiction. And that is because there is none—hardly surprising given that *Biden* is a case of statutory construction.

### CONCLUSION

For all of the foregoing reasons, CACI's motion to dismiss should be denied.

Respectfully submitted,

*/s/ Cary Citronberg*

ZWERLING/CITRONBERG, PLLC
114 North Alfred Street
Alexandria, VA 22314
Tel. 703-684-8000
cary@zwerling.com

Baher Azmy, *Admitted pro hac vice*
Katherine Gallagher, *Admitted pro hac vice*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

Robert P. LoBue, *Admitted pro hac vice*

12

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036

Shereef Hadi Akeel, *Admitted pro hac vice*
AKEEL & VALENTINE, P.C.
888 West Big Beaver Road
Troy, MI 48084-4736

*Attorneys for Plaintiffs*

13

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 10, 2022, I electronically filed Plaintiffs' Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction through the CM/ECF system, which sends notification to counsel for Defendants.

                                  */s/ Cary Citronberg*
                                  Cary Citronberg