IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CACI PREMIER TECHNOLOGY, INC., <br><br> Defendant, | No.   1:08-cv-0827 LMB-JFA |

**DEFENDANT CACI PREMIER TECHNOLOGY, INC.'S
NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF ITS
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**I.      INTRODUCTION**

CACI[1] has pending before the Court two motions to dismiss for lack of subject matter jurisdiction:

1. A motion filed on July 23, 2021, arguing that Plaintiffs' claims, all asserted under the Alien Tort Statute ("ATS"), are impermissibly extraterritorial (ECF 1331); and

2. A motion filed on July 18, 2022, arguing that the separation-of-powers test required for implied causes of action precludes recognition of Plaintiffs' claims (ECF 1367).

This Notice of Supplemental Authority relates to the latter of these motions, as two recent Fourth Circuit decisions reinforce CACI's argument that the same separation-of-powers test applies to both ATS claims and *Bivens* claims, and that this test precludes the judge-made causes of action Plaintiffs pursue in this action.  *See Dyer v. Smith*, 56 F.4th 271, 277-81 (4th Cir. 2022); *Bulger v. Hurwitz*, ___ F.4th ___, 2023 WL 2335958, at *3-9 (4th Cir. Mar. 3, 2023).

---

[1] "CACI" refers to Defendant CACI Premier Technology, Inc.

## II.     ANALYSIS

In moving to dismiss, CACI explained that the U.S. Supreme Court had, in a series of five decisions, adopted and applied the exact same separation-of-powers test for judicial recognition of implied causes of action under ATS and *Bivens*. CACI Mem. at 7-9 (ECF 1368); CACI Reply at 2-6 (ECF 1376). Under that test,

> if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy . . . courts must refrain from creating the remedy in order to respect the role of Congress.

*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857-58 (2017) (*Bivens* case); *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1402 (2018) (same quote in ATS case). Supreme Court precedents in both the *Bivens* and ATS contexts make clear that federal courts "must refrain from creating a cause of action whenever there is even a single sound reason to defer to Congress." *Nestle USA, Inc. v. Doe*, 141 S. Ct. 1931, 1937 (2021) (plurality opinion) (ATS case) (citing *Hernandez v. Mesa*, 140 S. Ct. 735 (2020) (*Bivens* case)); *see also Egbert v. Boule*, 142 S. Ct. 1793 (2022) (*Bivens* case) ("'[E]ven a single sound reason to defer to Congress' is enough to require a court to refrain from creating such a remedy." (quoting *Nestle*, 141 S. Ct. at 1937)).

CACI further explained that Plaintiffs' proposed judge-made claims could not satisfy the required separation-of-powers test because, among other things, implied causes of action are highly disfavored under current Supreme Court precedent; Plaintiffs' claims implicate national security and foreign affairs matters committed to Congress and the Executive; and Congress repeatedly has legislated on the topics raised by Plaintiffs' claims and repeatedly has declined to create a private damages cause of action encompassing Plaintiffs' claims. CACI Mem. at 15-24 (ECF 1368); CACI Reply at 6-8 (ECF 1376).

In opposition, Plaintiffs dispute that the separation-of-powers test is the same for *Bivens* claims and ATS claims, notwithstanding the Supreme Court's use of the exact same language to

describe the required test for both types of claims. Pl. Opp. at 8-10 (ECF 1374). Plaintiffs also argue that their claims satisfy the separation-of-powers test required for ATS claims. Pl. Opp. at 9-10 (ECF 1374). Neither argument was tenable when Plaintiffs made it and they are, if anything, even less tenable in light of *Dyer* and *Bulger*, cases in which the Fourth Circuit took the same view of the law that CACI has espoused in moving to dismiss.

### A. *Dyer v. Smith*, 56 F.4th 271 (4th Cir. 2022)

In *Dyer v. Smith*, the district court denied a motion to dismiss a *Bivens* claim alleging that Transportation Security Administration ("TSA") officials unconstitutionally prohibited a domestic traveler from videotaping his pat-down at a security checkpoint at Richmond International Airport. 56 F.4th at 275. In a decision authored by Judge Thacker and on issued December 28, 2022, the Fourth Circuit reversed, holding that the plaintiff's claim did not satisfy the separation-of-powers test required for recognition of the plaintiff's implied cause of action.

The Fourth Circuit's analysis began by acknowledging that the separation-of-powers test adopted by the Supreme Court for implied causes of action had "all but closed the door on *Bivens* remedies." *Id.* at 277 (citing *Egbert v. Boule*, 142 S. Ct. 1793 (2022) (Gorsuch, J., concurring)). As the court explained, this separation-of-powers test mandates that "[a] single sound reason to defer to Congress is enough to require a court to refrain from creating [a damages] remedy." *Id.* at 278 (alteration in original) (internal quotations omitted). For this proposition, the court quoted from *Egbert*, 142 S. Ct. at 1803, a *Bivens* case, which in turn quoted from *Nestle*, 141 S. Ct. at 1937, an ATS case. Indeed, the *Dyer* court quoted approvingly to Justice Gorsuch's concurring opinion in *Egbert* in which he observed that the Court's separation-of-powers test "left 'a door ajar and [held] out the possibility that someone someday might walk through it even as it devises a rule that ensures no one . . . ever will." *Dyer*, 56 F.4th at 277 (alterations in original) (quoting *Egbert*, 142 S. Ct. at 1793 (Gorsuch, J., concurring)).

Having identified the proper test, and explained what it meant for the future of implied causes of action, *Dyer* identified a nonexclusive list of separation-of-powers concerns, each sufficient to preclude an implied cause of action. These include "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed"; "an alternative remedial structure present in a certain case"; and a connection between the claim and "[n]ational security." *Id.* at 278-80.

With respect to alternative remedial structures, the court explained that the existence of such a structure weighs against allowing a judge-made implied cause of action in the same subject area even if the alternative remedies were unavailable or useless to the plaintiff. *Id.* Thus, as relevant in *Dyer*, Congress had created a grievance program (the "TRIP program") for travelers detained as a threat by TSA agents. Because the plaintiff had not been detained *as a threat*, it was not clear that he could get relief under the TRIP program. *Id.* at 279. Nevertheless, the court held that the *availability* of relief through a grievance procedure was not the test; rather, the mere fact Congress created a grievance procedure for travelers is enough to counsel against creating a supplemental remedy for claims not covered by the procedure Congress created:

> Therefore, the question is not whether TRIP maps neatly onto Appellee's claim. The question is whether Congress has acted or intends to act. And in this context, Congress has acted by establishing TRIP.
>
> While TRIP may not squarely address complaints by an individual similarly situated to Appellee, that silence does not give this court license to usurp Congress's authority in an area where Congress has previously legislated.

*Id.* at 280. The Fourth Circuit punctuated its analysis by citing its decision in *Tun-Cos v. Perrotte*, 922 F.3d 514 (4th Cir. 2019), for the proposition that a "lack of remedy or institutional silence speaks volumes and counsels strongly against judicial usurpation of the legislative function." *Id.* at 527.

4

Finally, the Fourth Circuit turned to the relationship between the plaintiff's claim and "national security." *Dyer*, 56 F.4th at 280. As the court explained, "[m]atters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention." *Id.* (quoting *Haig v. Agee*, 453 U.S. 280, 292 (1981)). That the plaintiff in *Dyer* was not viewed by TSA as a security threat did not, in the court's view, diminish the connection between the plaintiff's claims and foreign affairs and national security. The mere fact that Congress created TSA and charged that agency with safeguarding the airways was connection enough to national security to preclude *Bivens* claims against TSA agents for refusing to allow a non-suspect to videotape his security pat-down. *Id.*

Based on this analysis, the Fourth Circuit held that the plaintiff's claim did not meet the exacting separation-of-powers test for judicial recognition of implied damages claims:

> As "even a single sound reason to defer to Congress" will be enough to require the court refrain from creating a *Bivens* remedy, we decline to extend an implied damages remedy pursuant to *Bivens* against Appellants based on the existence of an alternative remedial structure and/or the interest of national security. **Nestle USA, Inc., 141 S. Ct. at 1937**.

*Dyer*, 56 F.4th at 281 (emphasis added). Of particular relevance here, the Fourth Circuit's lone citation for the applicable separation-of-powers test was to *Nestle*, **an ATS case**, thus reinforcing that *Bivens* claims and ATS claims have an identical separation-of-powers test.

  **B.** ***Bulger v. Hurwitz*, ___ F.4th ___, 2023 WL 2335958 (4th Cir. Mar. 3, 2023)**

*Bulger* concerned a *Bivens* claim brought by the estate of a deceased prisoner alleging that prison officials violated the Eighth Amendment by transferring the prisoner to a "violent" prison where he was promptly murdered. Judge Thacker, writing for the panel, began with a reality check – that "[i]n the last five years alone, the Court has scaled back *Bivens* significantly, delivering a trilogy of opinions expressing opposition toward any expansion of *Bivens* actions."

5

*Id.* at *3 (citing *Ziglar*, *Hernandez*, and *Egbert*). The court further explained that "[t]he Supreme Court has continued to caution lower courts to beware of arrogating legislative power. Because creating a cause of action is a legislative endeavor, the Court warned that the Judiciary's authority to [create causes of action under the Constitution] is, at best, uncertain."  *Id.* at *4 (alteration in original) (internal quotations omitted) (quoting *Egbert*, 142 S. Ct. at 1802-03).

The *Bulger* court further noted that the separation-of-powers test required for judicial recognition of implied causes of action considers "whether judicial intrusion into a given field is appropriate."  *Id.*  From there, the court identified the familiar separation-of-powers test applied in *Bivens* and ATS cases:

> [I]f there are sound reasons to think Congress might doubt the efficacy of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III.

*Id.* (alteration in original) (quoting *Ziglar*, 137 S. Ct. at 1858). As in *Dyer*, the court then identified a list of separation-of-powers concerns that justified rejection of an implied cause of action. These included the "potential effect on foreign relations and national security"; "Congress[] repeatedly declin[ing] to authorize the award of damages in the relevant context"; "that the burden and demand of litigation would prevent Executive Officials from devoting the time and effort required for the proper discharge of their duties"; and the principle that an "alternative remedy weighs against recognizing a new *Bivens* claim even if it is less effective than the damages that would be available under *Bivens*."  *Bulger*, 2023 WL 2335958, at *7 (internal quotations and citations omitted) (alterations in original). The court summarized the state of the law by observing that courts must decline to recognize an implied cause of action if

there is "any reason to think that Congress might be better equipped to create a damages remedy." *Id.* (quoting *Egbert*, 142 S. Ct. at 1803).

Applying these standards, the court held that the plaintiff was not entitled to pursue an implied cause of action because: (1) his claims were against a new category of defendants – Bureau of Prisons ("BOP") officials – that had not previously been subjected to *Bivens* claims; (2) an implied cause of action intersected with statutes giving BOP control over prisoner transfers; and (3) the existence of an alternative remedial structure whereby prisoners could challenge a transfer counseled against judicial creation of additional remedies, even though the decedent was not afforded time to pursue such a grievance,. *Id.* at *8. The court summed up its analysis by explaining that courts are "ill-suited" to predict the systemwide consequences of recognizing an implied cause of action relating to prisoner transfers and housing and that Congress is "better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." *Id.*

### C. *Dyer* and *Bulger* Reinforce the Impropriety of Judicial Recognition of the Implied Causes of Action Asserted in this Case

Together, *Dyer* and *Bulger* make three points highly relevant to CACI's pending motion to dismiss. These points require dismissal of Plaintiffs' claims.

*First*, *Dyer* and *Bulger* make clear that the separation-of-powers test applicable to *Bivens* claims also applies to ATS claims. As CACI explained in moving to dismiss, this was already evident from the Supreme Court's recent quintet of *Bivens* and ATS cases (*Ziglar*, *Jesner*, *Hernandez*, *Nestle*, and *Egbert*) applying the same separation-of-powers test to both types of claims and citing to each other indiscriminately in applying that test. CACI Reply at 5-6 (ECF 1376). *Dyer* follows the same course, explaining that the plaintiff's claims failed because "'even a single sound reason to defer to Congress' will be enough to require the court refrain from

7

creating a *Bivens* remedy," and citing only *Nestle* (an ATS case) as authority for that proposition. *Dyer*, 56 F.4th at 281 (quoting *Nestle*, 141 S. Ct. at 1937). *Dyer* thus refutes Plaintiffs' intimation that *Bivens* claims and ATS claims are siloed doctrines with no connection to each other.

*Second*, *Dyer* and *Bulger* candidly explain what the Supreme Court's recent precedents mean for implied causes of action. As the Fourth Circuit acknowledged in *Bulger*, federal courts are now "long past the heady days" in which they created implied causes of action, as the judiciary has "come to appreciate more fully the tension between judicially created causes of action and the Constitution's separation of legislative and judicial power." 2023 WL 2335958, at *3 (quoting *Egbert*, 142 S. Ct. at 1802-03). Indeed, in addressing the *Bivens* claims that were before it, *Bulger* recognized that the separation-of-powers test adopted and refined over the past five years "has scaled back *Bivens* significantly." *Id.* If anything, the Court was more direct in *Dyer*, openly questioning whether the Supreme Court's separation-of-powers test can ever be met. 56 F.4th at 277 (noting that the Supreme Court's decision in *Egbert*, applying the same separation-of-powers test applicable to ATS claims, "all but closed the door on *Bivens* remedies"). This Court recognized the evolution of the law on implied causes of action during oral argument on this motion, advising that "the legal landscape in which this case is now pending has shifted." 9/16/22 Tr. at 10. *Dyer* and *Bulger* confirm the correctness of this Court's observation.

*Third*, the *application* of the separation-of-powers test in *Dyer* and *Bulger* makes clear that the test is an eye-of-the-needle through which Plaintiffs' claims cannot pass. In *Dyer*, the court held that the plaintiff's claim had a sufficient nexus to "national security" to bar an implied cause of action simply because the defendant was a TSA agent and TSA's mission is to

8

safeguard the airways, even though the plaintiff was never viewed as a threat. *Id.* at 280. *Egbert* dictated this conclusion, as the Supreme Court held in that case that a claim alleging a border patrol agent roughed up an American citizen on U.S. soil sufficiently implicated national security and foreign affairs to preclude an implied cause of action. 142 S. Ct. at 1804-05. In the present case, CACI's employees deployed to Iraq to support the U.S. Army's war effort in a combat-zone detention facility, where they served under the U.S. military's operational chain of command and were charged with interrogating prisoners viewed as having intelligence value. The nature of this case has resulted in the Court three times upholding the United States' assertion of the state secrets privilege to withhold evidence regarding Plaintiffs and their treatment while in U.S. military custody. The connection between this case and national security and foreign affairs dwarfs the connections found sufficient to bar the claims in *Egbert* and *Dyer*.

Moreover, both *Dyer* and *Bulger* rejected implied causes of action based on "alternative remedial structures" even though those structures did not apply to the particular plaintiff (in *Dyer*) or could not be utilized as a practical matter (in *Bulger*). Here, Congress has repeatedly created alternative remedial structures in this field. It created a *statutory* private right of action for torture under the ATS (the Torture Victims Protection Act, 28 U.S.C. § 1350 note) that excludes Plaintiffs' claims from its reach; an administrative claims process (the Foreign Claims Act, 10 U.S.C. § 2734), that Plaintiffs have elected not to pursue; and criminal prohibitions on torture and war crimes (18 U.S.C. §§ 2340A, 2441) that the U.S. Government has seen no basis for pursuing. *See* CACI Mem. at 19-21 (ECF 1368). Plaintiffs argue that this legislation suggests that Congress would welcome judicial augmentation of the remedies Congress created by adding implied causes of action Congress did not create. Pl. Opp. at 10. *Dyer* requires courts

to reach the opposite conclusion. 56 F.4th at 280; *see also Tun-Cos*, 922 F.3d at 527. So does *Bulger*, 2023 WL 2335958, at *7.

Simply put, *Dyer* and *Bulger* recognize and apply the recent judicial wave of precedent to which Plaintiffs turn a blind eye. The "heady days" of judicial recognition of implied causes of action are over, and if a proposed implied cause of action can ever meet the Supreme Court's exacting separation-of-powers test – something the Fourth Circuit openly doubts in *Dyer* – it is certainly not the claims asserted by Plaintiffs in this action.

### III.   CONCLUSION

The Court should dismiss Plaintiffs' claims.

Respectfully submitted,

*/s/   John F. O'Connor*
John F. O'Connor
Virginia Bar No. 93004
Linda C. Bailey (admitted *pro hac vice*)
Molly Bruder Fox (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
(202) 429-3902 – facsimile
joconnor@steptoe.com
lbailey@steptoe.com
mbfox@steptoe.com

William D. Dolan, III
Virginia Bar No. 12455
LAW OFFICES OF WILLIAM D. DOLAN, III, PC
8270 Greensboro Drive, Suite 700
Tysons Corner, VA 22102
(703) 584-8377 – telephone
wdolan@dolanlaw.net

*Counsel for Defendant CACI Premier Technology, Inc.*

CERTIFICATE OF SERVICE

  I hereby certify that on the 23rd day of March, 2023, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following counsel:

      Cary Citronberg, Esq.
      Zwerling/Citronberg, PLLC
      114 North Alfred Street
      Alexandria, VA 22314
      cary@zwerling.com


      /s/   John F. O'Connor
      John F. O'Connor
      Virginia Bar No. 93004
      Attorney for Defendant CACI Premier Technology,
       Inc.
      STEPTOE & JOHNSON LLP
      1330 Connecticut Avenue, N.W.
      Washington, D.C. 20036
      (202) 429-3000 – telephone
      (202) 429-3902 – facsimile
      joconnor@steptoe.com