UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI *et al.*,<br>　　　　　　　　　　Plaintiffs,<br><br>　　　　*v.*<br><br>CACI PREMIER TECHNOLOGY, INC.<br>　　　　　　　　　　Defendant. | )<br>)<br>)<br>)<br>)　Case No. 1:08-cv-827 (LMB/JFA)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
NOTICE OF SUPPLEMENTAL AUTHORITY**

Contrary to what CACI says, the Fourth Circuit's decisions in *Dyer v. Smith*, 56 F.4th 271 (4th Cir. 2022) and *Bulger v. Hurwitz*, 62 F.4th 127 (4th Cir. 2023), do not warrant dismissal of the case. Nor do they impact this Court's analysis of its subject matter jurisdiction over Plaintiffs' Alien Tort Statute ("ATS") claims. Having failed after fifteen years of litigation to have this case dismissed under any of the doctrines or defenses that it alleges implicate separation of powers, CACI once again refers to cases involving irrelevant *Bivens* claims in its persistent and desperate attempt to have this Court overrule its repeated conclusion, and binding Fourth Circuit law, that it has subject matter jurisdiction over Plaintiffs' torture, war crimes and cruel, inhumane and degrading treatment ("CIDT") claims under the ATS.

CACI not only relies on a flawed foundation for its argument in the form of a non-binding, isolated and highly misleading quotation from *Nestle USA, Inc. v. Doe,* 141 S. Ct. 1931 (2021), but it also continues to ignore—or at least misunderstand—the utterly elementary difference between a *Bivens* claim and an ATS claim: that while *Bivens* claims are judicially created

1

constructs unmoored from congressional policy, the ATS represents Congress's considered decision that the federal district courts should provide a forum for claims by non-U.S. citizens asserting violations of clearly established international law.

And perhaps even more obviously, CACI does not and cannot answer how its proposed evisceration of ATS claims, via a *Bivens* "special factors" analysis, is in any way consistent with the Supreme Court's decision in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004). *Sosa* expressly endorses judicial recognition, albeit cautiously, of claims for violations of federal common law grounded in the law of nations under the ATS. This holding has been consistently affirmed—not overturned—in recent Supreme Court ATS jurisprudence. Indeed, Congress itself reaffirmed its acceptance of the ATS in passing the Torture Victim Protection Act ("TVPA"). *See* 28 U.S.C. § 1350, note (1992). As this Court has repeatedly held, the ATS is a creature of congressional will. This Court cannot accept CACI's effort to *sub silentio* overturn *Sosa* and elementary separation of powers principles.

**I. Nothing in *Dyer* or *Bulger* Undermines the Validity of the Principles Underlying this Court's and the Fourth Circuit's Finding of Subject Matter Jurisdiction over Plaintiffs' Claims.**

As CACI acknowledges, *Dyer* and *Bulger* concern *Bivens* claims – judicially implied causes of action under the Constitution against federal officers which lack statutory authorization. In *Dyer,* the Fourth Circuit rejected a *Bivens* claim against TSA officers for asserted violations of the First and Fourth Amendments. *See Dyer*, 56 F.4th at 275. In *Bulger*, the Fourth Circuit determined that the plaintiff's Eighth Amendment claim was an improper extension of *Bivens*. 62 F.4th at 142. CACI's strained attempt to make *Dyer* relevant here derives from a single quote from that case: "[a] single sound reason to defer to Congress is enough to require a court to refrain from creating [a damages] remedy." Dkt. No. 1386 at 3. Attempting to connect the dots to ATS

cases, CACI notes that this quote came "from *Egbert* [*v. Boule*, 142 S. Ct. 1793, 1803 (2022)], a *Bivens* case, which in turn quoted from *Nestle* [*USA, Inc. v. Doe*, 141 S. Ct. 1931, 1937 (2021)], an ATS case." *Id.* According to CACI, this single quote "refutes Plaintiffs' intimation that *Bivens* claims and ATS claims are siloed doctrines with no connection to each other." *Id.* at 8. Notably, *Bulger* does not even quote *Nestle*.

And CACI's reliance on an isolated quotation from *Nestle* is misleading and does not support overturning this Court and the Fourth Circuit's steady conclusion that federal courts have subject matter jurisdiction over Plaintiffs' ATS claims. As Plaintiffs already explained in their Opposition (without any response from CACI), this stray quote from *Nestle* was *never* adopted as precedent in the ATS context, given that the corresponding section of Justice Thomas' *Nestle* opinion was joined by only two other Justices (Justices Gorsuch and Kavanaugh). Moreover, this line from *Nestle* cited to *Hernandez v. Mesa*, 140 S. Ct. 735 (2020), which—like the other cases upon which CACI relies—is another *Bivens* case; the citation was meant merely to be *descriptive* of *Bivens* claims, not *prescriptive* about how to adjudicate ATS claims. Thus, CACI's assertion that "the separation-of-powers test applicable to *Bivens* claims also applies to ATS claims" is a bridge too far that this Court should reject. Dkt. No. 1386 at 7; *see also id.* at 8 (CACI claiming that *Egbert* "appl[ied] the same separation of powers test applicable to ATS claims").[1]

*Dyer* and its *Bivens*-related precedent are irrelevant to ATS claims because, unlike *Bivens*, which is a judicially created cause of action, the ATS is a congressional statute that reflects

---

[1] CACI cites the language from *Ziglar v. Abbasi*, which asks if there is "[a] single sound reason to defer to Congress is enough to require a court to refrain from creating [a damages] remedy" 137 S. Ct. 1843, 1858 (2017), and then baldly divines that this represents "the familiar separation of powers test applied in *Bivens and ATS cases*." Dkt. No. 1386 at 6 (emphasis added). CACI cannot simply smuggle the ATS into a distinct doctrinal category and just declare they are subject to the same "test." This is not law.

3

Congress's endorsement of a specific and particular set of judicially created causes of action. Step two of the *Bivens* "special factors" analysis—which asks whether there is reason to defer to Congress—presumes that Congress has not issued any directive. But *Sosa*—which was explicitly affirmed in *Kiobel v. Royal Dutch Petroleum*, 569 U.S. 108 (2013)—makes clear that, by enacting the ATS, Congress expressly directed federal courts to recognize causes of action based on customary international law that has reached "specific, universal and obligatory" status. *Sosa*, 542 U.S. at 732; *Kiobel*, 569 U.S. at 116 (confirming that the ATS "allows federal courts to recognize certain causes of action based on sufficiently definite norms of international law"). Accordingly, following *Sosa's* undisrupted holding, this Court and the Fourth Circuit have determined that the ATS grants the Court subject matter jurisdiction over Plaintiffs' war crimes, torture and CIDT claims.

      CACI's failure to appreciate distinct doctrinal categories would undo a range of well-settled law. After all, 42 U.S.C. § 1983, like the ATS, represents Congress's decision to grant federal courts jurisdiction to recognize causes of action under statutes that do not specifically define substantive rights. In the case of the ATS, Congress left federal courts to identify which violations of the "law of nations" are actionable; likewise, under Section 1983, Congress left it to federal courts to identify and define what violations of the "Constitution and laws of the United States" are actionable against state actors. *See Brown v. Board of Education*, 347 U.S. 483 (1954); *Monroe v. Pape,* 365 U.S. 167 (1961); *Monell v. N.Y. Dep't Social Services*, 436 U.S. 658 (1978). Each statute authorizes damages as appropriate relief under judicially determined circumstances. *Compare* 42 U.S.C. § 1983 (defendants "shall be liable to the party injured in an action at law"), *with* 28 U.S.C. § 1350 (authorizing a "civil action by an alien for a tort").

Even the *Dyer* case CACI relies upon appreciates the fundamental difference between congressionally-authorized and judicially-constructed claims under Section 1983, and causes of action that are purely judicially implied under the Constitution in *Bivens*. There, the Fourth Circuit explained that "[w]hile Congress created 42 U.S.C. § 1983 to provide a claim for damages when a state official violates an individual's constitutional rights, 'Congress did not create an analogous statute for federal officials.'" 56 F.4th at 276–77 (quoting *Ziglar*, 137 S. Ct. at 1854). Only if an action is "**not expressly authorized by statute**," like *Bivens* claims, does a court need to undergo the second step of the analysis applied in *Dyer* about whether it should defer to Congress. *See id.* at 277 (emphasis added).

Just as 42 U.S.C. § 1983 represented Congress's desire to create a cause of action against state officials who violate an individual's constitutional rights, "the ATS embodies Congress's considered determination that there should be a cause of action in federal district court for violations of the laws of nations." *Al Shimari v. CACI Premier Tech.*, 300 F. Supp. 3d 758, 787 (E.D. Va. 2018); *see also id.* at 791 ("[P]laintiffs' ATS claims are grounded in federal statute."). Thus, CACI again has its separation-of-powers principles backwards: if federal courts *decline* to recognize remedies for express causes of action, they "would harm separation of powers principles . . . by giving judges the power to render inutile causes of action authorized by Congress." *Franklin v. Gwinnett Cty. Pub. Schs.*, 503 U.S. 60, 74 (1992).

CACI appears to have not really thought through the impact of its argument beyond its own interests: its proposal, unmoored from clear doctrinal development and elementary separation of powers principles, risks striking down multiple bedrock civil rights enactments. Additionally, CACI's position would render the Federal Tort Claims Act meaningless. As with the ATS and Section 1983, Congress enacted the FTCA to confer federal jurisdiction over certain claims – in

the FTCA context, claims against the United States for the acts of its employees. And, as with the ATS and Section 1983, Congress left it to federal courts to identify what claims are actionable by referring federal courts to examine and apply open-ended state common law. 28 U.S.C. §1674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances."). Unlike with the Supreme Court's recent application of *Bivens*, the ATS, FTCA, and Section 1983 reflect Congress's recognition of, and approval for, a cause of action whose countries are defined by those courts upon whom Congress conferred jurisdiction.

For all the foregoing reasons, *Bulger* and *Dyer*'s references to alternative remedial structures in declining to extend *Bivens* are irrelevant to ATS claims. *Bulger* pointed to alternative remedial structures as relevant only when determining whether there were factors that cut "against creating a new *Bivens* remedy." *Bulger*, 62 F.4th at 140 (citation omitted). CACI claims that recognizing Plaintiffs' claims "would welcome judicial augmentation of the remedies Congress created by adding implied causes of action Congress did not create." Dkt. No. 1386 at 9. That is just not true – as *Sosa* and this Court repeatedly stressed, Congress authorized non-U.S. citizens to bring claims for violations of clearly established international law violations in federal district courts for damages.

Notably, in *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020), the Supreme Court effectively rejected a similar attempt to limit judicially created remedies – set forth in the Religious Freedom Restoration Act – through an identically framed analogy to *Bivens*. After a panel of the Second Circuit held that RFRA's authorization of "appropriate relief against a government" permitted individual-capacity suits for damages against federal officials, *Tanvir v. Tanzin*, 894 F.3d 449 (2d Cir. 2018), three judges dissented from the denial of *en banc* review and, relying upon *Ziglar* in

6

the precise manner CACI does here, argued that under the principles animating *Bivens*, "courts must refrain from creating the remedy in order to respect the role of Congress." *Tanvir v. Tanzin*, 915 F.3d 898, 905 (2d Cir. 2019) (Cabranes, J., dissenting) (quoting *Abbasi*, 137 S. Ct. at 1856 ). The United States' cert petition likewise contended that "it is typically the role of Congress, not the courts, to 'decide whether to provide for a damages remedy,' against individual federal officers." *Tanzin v. Tanvir*, 2019 U.S. S. Ct. Briefs LEXIS 2550, at *24–25 (quoting *Abbasi*, 137 S Ct. at 1857); *see also id.* at *25 (quoting *Jesner*, 138 S. Ct. at 1403). And, like CACI, the Government argued that Congress is "in the better position" to weigh consequences and policy implications—including national security implications—for the imposition of damages liability. *Compare id.* at *26, *with* Dkt. 1386 at 7–10.

In *Tanzin*, the Supreme Court gave this attempted conflation of statutory grants of authority with fully implied judicial remedies zero credit; it unanimously held that federal courts are authorized to define what relief is "appropriate," which the Court recognized is an "inherently context dependent" inquiry. *Tanzin*, 141 S. Ct. at 491 (quoting *Sossamon* v. *Texas*, 563 U. S. 277, 286 (2011)). Defendant's claim that "Congress might doubt the efficacy of a damages remedy," *see* Dkt. 1386 at 6, is inconsistent with this and the ATS's express language, which authorizes damages as a form of relief by referencing an action in "tort," meaning damages.

## II.     CACI's Position Is Irreconcilable with *Sosa* and Congressional Endorsement of the ATS via the TVPA.

CACI asks this Court to do what the defendant unsuccessfully asked the Supreme Court to do in *Sosa*: declare the ATS a hollow jurisdictional statute frozen in 1789, disallowing any "claim for relief without a further statute expressly authorizing adoption of causes of action." *Sosa*, 542 U.S. at 714. The *Sosa* Court rejected this limited conception of the federal judiciary's role, and has not looked back on this core understanding. Drawing on legal history and practice regarding

7

federal jurisdiction, the *Sosa* Court found that there was a "narrow set of violations of the law of nations, admitting of a judicial remedy" and implicating international affairs and that "Congress intended the ATS to furnish jurisdiction" for this "relatively modest" set of violations. *Sosa*, 542 U.S. at 715, 720; *see also id*. at 725 (explaining how "the statute was intended to have practical effect the moment it became law" with "the common law providing the cause of action for the modest number of international law violations with a potential for personal liability"). This Court has recognized on numerous occasions that *Sosa* provides the standard for whether claims are recognized under the ATS. *See Al Shimari*, 300 F. Supp. 3d at 777 ("[C]laims are only cognizable under the ATS to the extent that they represent 'violations of international law' norms that are 'specific, universal, and obligatory.'") (citing *Al Shimari v. CACI Premier Tech.*, 263 F. Supp. 3d 595, 599 (E.D. Va. 2017) (quoting *Sosa*, 542 U.S. at 732)).

Every subsequent Supreme Court decision issued on the ATS confirmed *Sosa*'s core holding regarding congressional authorization of judicially defined causes of action. *See Kiobel*, 569 U.S. at 116 (confirming that the ATS "allows federal courts to recognize certain causes of action based on sufficiently definite norms of international law"); *Jesner v. Arab Bank*, 138 S. Ct. 1386, 1397 (2018) (quoting *Sosa* and explaining that "Congress drafted the ATS 'to furnish jurisdiction for a relatively modest set of actions alleging violations of the law of nations'); *Nestle*, 141 S. Ct. at 1935 ("[C]ourts may exercise common-law authority under [the ATS] to create private rights of action in very limited circumstances."). *Dyer*, *Bulger* and other *Bivens*-related precedent are irrelevant to this determination.

Furthermore, the Supreme Court's understanding of Congressional intent in enacting the ATS in 1789 was confirmed by modern Congressional action. In 1991, Congress enacted the Torture Victim Protection Act ("TVPA") as an *expanded* grant of jurisdiction to cover U.S. citizen

8

victims of torture and extrajudicial execution, notably placing the TVPA in the same section of the federal code as the ATS, and effectively conferring remedies understood as only available to "aliens" so as also to benefit U.S. citizens.  *See* 28 U.S.C. 1350, note (1992).  In so doing, Congress expressly endorsed the existence of an ATS remedy: the Senate and House Judiciary Committee's reports on the TVPA specifically provide that the ATS "should not be replaced," "should remain intact" and that the TVPA merely "enhance[s] the remedy already available under [the ATS]." 102 H. Rpt. 367 (1991) at *3-4; *see also* S. Rep. No. 249, 102d Cong., 1st Sess., at § II (1991).  Indeed, this was the Supreme Court's considered opinion in *Sosa* of the relationship between the ATS and the TVPA when it described the latter as "supplementing" rather than supplanting or undermining the ATS.  *Sosa*, 542 U.S. at 731.

CACI's proposed evisceration of the ATS by way of *Bivens* is unmoored from elementary doctrinal distinctions and principles of separation of powers and, at bottom, represents a blatant disregard of the Supreme Court's core holding in *Sosa*, repeatedly affirmed by *Kiobel*, *Jesner* and *Nestle*.  *Dyer* and *Bulger* did not overrule *Sosa*, and neither should this Court.

## CONCLUSION

Nothing in *Dyer* nor *Bulger* changes the legal framework for evaluating Plaintiffs' ATS claims or CACI's motion to dismiss.  CACI's motion to dismiss should be denied.

Respectfully submitted,

*/s/ Cary Citronberg*

Cary Citronberg
ZWERLING/CITRONBERG, PLLC
114 North Alfred Street
Alexandria, VA 22314
Tel. 703-684-8000
cary@zwerling.com

Baher Azmy, *Admitted pro hac vice*
Katherine Gallagher, *Admitted pro hac vice*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

Muhammad U. Faridi, *Admitted pro hac vice*
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036

Shereef Hadi Akeel, *Admitted pro hac vice*
AKEEL & VALENTINE, P.C.
888 West Big Beaver Road
Troy, MI 48084-4736

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 6, 2023, I electronically filed Plaintiffs' Response to Defendant's Notice of Supplemental Authority, which sends notification to counsel for Defendants.

                                                  */s/ Cary Citronberg*
                                                  Cary Citronberg