UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI *et al.*, <br><br> Plaintiffs, <br><br> *v.* <br><br> CACI PREMIER TECHNOLOGY, INC. <br><br> Defendant. | ) ) ) ) ) ) Case No. 1:08-cv-827 (LMB/JFA) ) ) ) ) ) ) ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT CACI PREMIER TECHNOLOGY, INC.'S MOTION FOR 28 U.S.C. § 1292(B) CERTIFICATION OF THE COURT'S ORDER OF JULY 31, 2023**

CACI badly misconstrues the Court's July 31, 2023 Memorandum Opinion denying its motions to dismiss (the "Opinion"), and rehashes arguments about extraterritoriality and the viability of claims in a wartime context that this Court and the Fourth Circuit have repeatedly rejected. Far from advancing the resolution of this long-pending litigation, the interlocutory appeal CACI seeks would, like the previous of CACI's frivolous appeals and nearly 20 repetitive dispositive motions it has lost, do nothing but advance its demonstrable effort to delay justice for these Plaintiffs, who brought this case 15 years ago. This effort to avoid trial not only distorts this Court's latest ruling which faithfully applied Supreme Court precedent, it imagines that the Fourth Circuit would now back away from two of its rulings from appeals in this very case as well as the Fourth Circuit's separate rejection of CACI's attempted bright-line cleavage of the "focus" test from the "touch and concern" test. *See Roe v. Howard*, 917 F.3d 229, 240 n.6 (4th Cir. 2019) ("*RJR Nabisco* did not overturn *Kiobel* and—in step two—retains a similar emphasis

1

on the relevant claim's connection to U.S. territory"). CACI's effort does not and cannot overcome the final judgment rule.

CACI simply disagrees with this Court's repeated rejection of its arguments, including the Court's most recent fact-bound resolution of the "focus test." But, any such error correction is not the place for exercising special appellate jurisdiction under 1292(b). Congress and the heavy presumption embedded in the "final judgment rule" dictate that such disputes must await the conclusion of the case; if CACI loses at trial—they can appeal this Court's predicate ruling, along with the myriad other rulings CACI has lost in this case, on a full record and in the ordinary course. *See Johnson v. Jones*, 515 U.S. 304, 313–18 (1995) (describing policies against interlocutory appeals, including judicial efficiency from appellate review on full factual record). And, if CACI prevails at trial: (i) they can cross-appeal these questions in the event Plaintiffs' seek a direct appeal; or (ii) if Plaintiffs do not appeal, it is hard to imagine what harm would pertain to ATS jurisprudence or CACI's interests writ large if this Court's decision were to stand: the decision is tied to the unique factual analysis presented here—including the distinct status of internationally-recognized torts arising out of U.S. government service contract during the U.S. occupation in Iraq—so much so, that the Court's opinion has limited applicability beyond the specific parties and specialized facts of this case.

CACI's persistent efforts to waste time and delay justice must, at long last, come to an end. It is time for a jury to hear Plaintiffs' case.[1]

---

[1] Plaintiffs (and their counsel) take umbrage with CACI's suggestions that they have somehow abandoned their claims or disengaged from their own case. *See* ECF No. 1399, Opening Br. ("Br.") at 3 (querying "the extent [to which] Plaintiffs themselves remain active participants in this litigation"); *id.* at 24 (querying if "counsel of record are in direct contact with their own clients"). Despite fifteen years of litigation, and the cancellation of the 2019 trial date (ECF No. 1296), Plaintiffs continue to press their claims, through the undersigned counsel, and are eager to have their case heard before a jury.

### 1. CACI'S ABUSE OF PROCESS

CACI's seeks not only to evade substantive accountability for its conduct, it has, throughout fifteen years of litigation, proceeded in court as if it had an open-ended exception to basic principles of legal procedure. Before this Court, CACI has filed nearly twenty dispositive motions (and nearly double a total number of motions) in a seriatim matter that this Court has counseled against. And when it does not like the result, it has tried (and tried again) improper routes for appellate review, resulting not only in a delay of trial but even in the cancellation of a trial date. In so doing, CACI has largely advanced the same core arguments under different labels or without intervening precedent justifying that earlier decisions by this Court or the Fourth Circuit be revisited. This petition for 1292(b) certification is no different. Respectfully, Plaintiffs submit that CACI has gone beyond the proper bounds of lodging a vigorous defense.

In one revealing and wasteful example before this Court, in May 2018, CACI sought dismissal under what it claimed was the 2018 "watershed" decision in *Jesner v. Arab Bank*, a case that applied *Morrison* (2010) and *RJR Nabisco*'s (2016) "focus" test to ATS claims against a foreign corporation in a case that raised significant tensions with a foreign government (while affirming the viability of *Kiobel*). *See* ECF No. 812 at 1-2. This Court denied the motion a month later. ECF No. 859. Remarkably, in January 2019, CACI filed yet another nearly-identical motion to dismiss for lack of subject matter jurisdiction, pointing to the 2016 decision in *RJR Nabisco*, which it claimed established a "dramatically different test"—the focus test— than that was applied in *Kiobel*, ECF No. 1058; CACI filed this duplicative motion even though *RJR Nabisco* had been decided *30 months prior* to this additional motion to dismiss and long before the *Jesner* motion; it was also decided long before CACI's 2017 motion to dismiss related to the political question doctrine, ECF No. 626, or its December 2018 motion for summary

3

judgment, ECF No. 1035.  Yet, CACI nowhere mentioned *RJR Nabisco's* purportedly dramatic development in the law, burdening the Court and Plaintiffs with time and effort to respond to substantively identical—and repeatedly rejected arguments.[2]  This Court cautioned CACI about its tactics. ECF No. 978, Oct. 25, 2018 Hr'g Tr., at 17:9–18:16 (Mr. LoBue: "The problem we face is that they tend to dribble these motions out, and we keep coming back here." The Court: "[I]t is true that the Court does not favor motions seriatim . . . .").

CACI's abuse of the appellate process has been equally striking.  For example, in 2009, CACI filed an interlocutory appeal of the district court's denial of its first motion to dismiss, which a divided panel of the Fourth Circuit accepted, suggesting CACI's claim to derivative immunity meets the requirements of the collateral order doctrine; that divided panel proceeded to reverse the district court's decision. *Al Shimari v. CACI Int'l Inc. (Al Shimari I)*, 658 F.3d 413, 417 (4th Cir. 2011).  Then, only *after* Plaintiffs successfully petitioned for *en banc* review on the propriety of that interlocutory appeal did CACI attempt to reverse the appellate jurisdiction it long before invoked and go back to the district court to seek its certification under 18 U.S.C. §1292(b). ECF No. 127.  The district court rightly rejected this hail mary. *See* ECF No. 135 (finding CACI's interlocutory appeal divested the district court of jurisdiction).  The Fourth Circuit then issued its 12-3 *en banc* decision, clearly announcing that interlocutory appeals are heavily disfavored and CACI's claims to immunity were not appropriately appealable under the

---

[2]  And, CACI's briefing gamesmanship sought to either evade page limitations or force Plaintiffs into unnecessary briefing.  On December 20, 2018, CACI filed both a 30-page brief in support of a motion for summary judgment (ECF No. 1034) *and* a separate 30-page brief in support of a motion to dismiss based on state secrets (ECF No. 1041), and again, two weeks later filed the second, post-*Nabisco* motion to dismiss.

collateral order doctrine. *Al Shimari v. CACI Int'l Inc. (Al Shimari II)*, 679 F.3d 205, 212 (4th Cir. 2012) (*en banc*).

Then, after the flurry of CACI's seriatim motions this Court denied between 2018 and 2019, in March 2019, CACI first petitioned to the Fourth Circuit for mandamus review of this Court's prior political question decisions (even as those decisions followed directly and correctly from the Fourth Circuit's ruling in *Al Shimari IV*), *see* 4th Cir. No.19-1238, ECF No. 2-1, then after the Fourth Circuit denied the petition, *see* 4th Cir. No. 19-1238, ECF No. 13, CACI forewent the process contemplated under § 1292(b), and filed a frivolous interlocutory appeal, which was clearly foreclosed by the Fourth Circuit's *en banc* decision seven years before on the *same* question. The Fourth Circuit issued a two-page opinion dismissing CACI's appeal for lack of jurisdiction, *see Al Shimari v. CACI*, 4th Cir. No. 19-1328, ECF No. 75 at 3 ("This conclusion follows from the reasoning of a prior *en banc* decision in which we dismissed CACI's interlocutory appeal from the district court's denial of similar defenses. *Al Shimari v. CACI Int'l, Inc.*, 679 F.3d 205, 213 (4th Cir. 2012) (en banc)."), and denied CACI's motion for rehearing *en banc*, 4th Cir. 19-1328, ECF No. 83, and to stay its ruling. CACI then turned to the Supreme Court, which denied its cert petition.

Plaintiffs do not object to a defendant presenting a vigorous defense. But by repeatedly advancing unsuccessful arguments with no good cause to warrant they be revisited, CACI's actions have now reached a point where it can be characterized as a refusal to accept the Court's rulings—and impede the proper course of litigation. The cycle must stop. CACI has cried wolf many times—repeatedly exclaiming egregious errors by this Court and the Fourth Circuit—such that its continuing certitude displayed in its latest filing should cause CACI's application for certification under 28 U.S.C. § 1292(b) to be read with additional skepticism.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1292(b), the Court may certify appeal of an order that is not otherwise appealable where "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and [where] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "Given the basic policy of postponing appellate review until after the court has entered final judgment in the case, the party moving for certification … has the burden of persuading the court that exceptional circumstances justify departure from that policy." *Crawl Space Door Sys., Inc. v. Smartvent Prods., Inc.*, No. 2:19-cv-320, 2020 WL 13691775, at *1 (E.D. Va. June 12, 2020) (quotation marks and citation omitted).

While a "substantial ground for difference of opinion … may arise when there is a novel and difficult issue of first impression, or if there is a circuit split and the controlling circuit has not commented on the issue," *United States ex rel. A1 Procurement, LLC v. Thermcor, Inc.*, 173 F. Supp. 3d 320, 323 (E.D. Va. 2016) (quotation marks and citation omitted), "the mere fact that an issue is one of first impression or that there is a lack of unanimity is not enough to meet this prong." *Id.* Rather, "to find a substantial ground for a difference of opinion, there must be a genuine doubt as to whether the district court applied the correct legal standard in its order." *Simpson v. Norfolk S. Ry. Co.*, No. 2:19-cv-17, 2020 WL 6047695, at *3 (W.D. Va. Oct. 13, 2020) (quotation marks and citation omitted). Mere error correction or disagreement with how a court applied facts does not merit an interlocutory appeal. *See Meeker v. Belridge Water Storage Dist.*, 1:05-CV-00603 OWW SMS, 2007 U.S. Dist. LEXIS 22673, at *16 (E.D. Cal. Mar. 12, 2007) ("[I]t is generally accepted that '[q]uestions of fact, questions as to how agreed-upon law should be applied to particular facts, or questions regarding the manner in which the trial judge

6

exercised his or her discretion may not be properly certified for interlocutory review.'") (quoting 2. Fed. Proc., L. Ed., § 3:210 (citing cases from within the Second, Third and Fifth Circuits)); *First Owners' Ass'n of Forty Six Hundred Condo. v. Gordon Props., LLC*, No. 1:11cv255, 2011 U.S. Dist. LEXIS 156332, at *5 (E.D. Va. Apr. 15, 2011) ("[I]t is clear, and courts have uniformly so held, that § 1292(b) does not permit interlocutory appeal of factual matters or mixed questions of law and fact." (citations omitted)).

Moreover, even where such a "substantial ground" exists, "[t]he mere fact that the resolution of the question sought to be certified … *may* save pre-trial and trial effort and expense is not determinative." *Glennon v. Anheuser-Busch, LLC*, No. 4:21cv141, 2022 WL 18584800, at *3 (E.D. Va. Nov. 3, 2022) (alterations removed) (emphasis in original) (quoting *Commonwealth of Va. ex rel. Integra Rec LLC v. Countrywide Secs. Corp.*, 3:14cv706, 2015 WL 3540473, at *5 (E.D. Va. June 3, 2015)).  Rather, "[c]ourts use a case-specific analysis to determine whether the time and expense saved on interlocutory appeal would materially advance the ultimate termination of the litigation." *Id.* (quotation marks omitted).  "Even if all requirements are met, … the decision to certify issues for interlocutory appeal rests solely within the district court's discretion." *Crawl Space*, 2020 WL 13691775, at *1 (citing *McDaniel v. Mehfoud*, 708 F. Supp. 754, 756 (E.D. Va. 1989)).

## ARGUMENT

CACI purports to identify four controlling questions of law that satisfy Section 1292(b)'s requirements: two concerning the Court's extraterritoriality analysis, and two concerning its rejection of CACI's contention that Plaintiffs cannot pursue a private right of action under the ATS.  All the questions reflect careful resolution by this Court following both Supreme Court

precedent and Fourth Circuit law in this very case. CACI's brief reads like a merits appeal, not focused, as most 1292(b) petitions are, on a single urgent question of law; yet, basic disagreement with the merits of all of these decisions do not warrant an interlocutory appeal.

I. **CACI'S "QUESTIONS" REGARDING THE COURT'S EXTRA-TERRITORIALITY ANALYSIS DO NOT WARRANT CERTIFICATION**

CACI's first claimed "controlling question" concerns the "correctness of this Court's conclusion that the extraterritoriality analysis applied in *Al Shimari v. CACI [Premier Tech.], Inc.*, 758 F.3d 516 (4th Cir. 2014) ('*Al Shimari III*') … remains viable"—a question whose framing, as described below, itself is a mischaracterization of the Opinion. Br. at 2. By this question, CACI appears to mean two somewhat different things: first, that the Court fails to acknowledge that the "focus" test—rather than the "touch and concern" test employed in *Al Shimari III*, 758 F.3d at 520, consistent with the Supreme Court's decision in *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013)—is the appropriate test for analyzing whether an ATS suit is permissibly domestic, *see* Br. at 7; and, second, that the Court inappropriately relies on the "holistic, multi-factor assessment of extraterritoriality" used in *Al Shimari III*. Br. at 9.

The first point is bewildering. CACI spends pages of its brief emphasizing that the Supreme Court "made clear … that the 'focus test'" applies to the ATS in *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931 (2021), and quoting cases that so held prior to the *Nestlé* decision. *Id.* at 8-12.[3] According to CACI, "there is not a court in the country other than this Court" that applies

---

[3] CACI makes much of the Fifth Circuit noting in 2017 that "*Al Shimari* is not the test… [O]ur approach requires analysis of the conduct relevant to the statute's 'focus,'" *see Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 199 (5th Cir. 2017), and this Court's citation to Judge Graves' dissent. *See* Br. at 8-9. But both the majority and dissenting opinions in the *Adhikari* Court did in fact apply the focus test, while differing about its application to the facts, and, like this Court and the Fourth Circuit in *Roe v. Howard*, Judge Graves found that *Kiobel's* "touch and concern" language fits within the "focus test." *See id.* at 208 (Graves, J., concurring in part, dissenting in part) ("In my view, the defendant's conduct here falls squarely within the focus of the ATS, and the claims, therefore, touch and concern the United States with sufficient force to displace the presumption against extraterritorial application."). Moreover, the facts here, as detailed by the Court's Opinion, possess many more U.S. contacts than the record before the Fifth Circuit in *Adhikari*. Indeed, on a substantially similar record in the

the "touch and concern" test articulated in *Al Shimari III* rather than the 'focus' test. Br. at 12. But this makes no sense: As CACI elsewhere grudgingly acknowledges, the Court in fact "appli[ed] the 'focus' test." *Id.* at 12 (describing a "pivot" from the Court's "broad endorsement of *Al Shimari III*"). Indeed, while the Court (correctly) observed that CACI "overstates *Nestlé*'s impact on [the] 'touch and concern standard,'" ECF No. 1389, Opinion at 12, the Court expressly concluded that "*Nestlé* warrants a reassessment of extraterritoriality," given that "the Supreme Court and the Fourth Circuit's recent extraterritoriality decisions appear to privilege consideration of the statute's 'focus' . . . over the ['touch and concern'] inquiry articulated in *Kiobel*." *Id.* at 13 (quotation marks and alterations omitted). The Court proceeded, over 21 carefully reasoned pages, to conduct that reassessment under the framework CACI claims the Court ignored. *Id.* at 11-32.

Of course, this Court has recognized the interrelatedness of the two fundamental inquiries, *see* Opinion at 12, which has been evident since *Kiobel* was decided,[4] and which the

---

Southern District of Texas, the court, applying the "focus" test, allowed the plaintiffs' claims to proceed on an aiding and abetting theory. *See Adhikari v. KBR Inc.*, No. 4:16-CV-2478, 2017 WL 4237923, at *5–6 (S.D. Tex. Sept. 25, 2017) ("Defendants contend that here, as in *Adhikari I*, the conduct that is the 'focus' of the statute—human trafficking and forced labor—occurred outside the U.S…However, the 'focus' for *aiding and abetting* liability is the substantial assistance that Defendants provided to the trafficking scheme, much of which occurred in the United States." (emphasis in original)).

[4]  The interrelatedness between the "touch and concern" test and the "focus" test has been evident to Plaintiffs since 2014, when Plaintiffs made this very point in its briefing in *Al Shimari III* – an analysis that has carried through today in every brief Plaintiff has filed before this Court. *See* ECF No. 1097 at 4-7; *see also* ECF Nos. 826 and 1340. As Plaintiffs explained in *Al Shimari III*:

> The *Kiobel* decision and the Court's prior ruling in *Morrison v. National Australia Bank Ltd*., 130 S. Ct. 2869 (2010) explain how lower courts should apply the presumption to particular claims that have extraterritorial features. As lower courts have done with *Morrison* in evaluating claims brought under Section 10(b) of the Securities Exchange Act, this Court should consider the "focus" of the statute, *Morrison*, 130 S. Ct. at 2884, and the "principles underlying the presumption," *Kiobel*, 133 S. Ct. 1664. A core focus of the ATS is to ensure accountability for grave international law violations committed by U.S. subjects against aliens, and the "principles underlying the presumption" strive to avoid adjudicating claims that would cause "international discord."

Fourth Circuit—in a passage CACI has studiously ignored—has more recently confirmed. *See Roe v. Howard*, 917 F.3d 229, 240 n.6 (4th Cir. 2019) ("In delineating the two-step framework in RJR Nabisco, the Supreme Court drew on two of its key precedents addressing extraterritoriality: *Morrison* and *Kiobel*."); *id*. ("*RJR Nabisco* did not overturn *Kiobel* and—in step two—retains a similar emphasis on the relevant claim's connection to U.S. territory.")

As to the second point, CACI merely disagrees with the Court's *application* of the focus test to the facts, but that is not a "controlling question of law" meriting interlocutory appeal. *See Al Shimari IV*, 679 F.3d at 221 (distinguishing between the interlocutory appealability of decisions premised on "fact-based" versus "abstract" issues of law, and noting that only the latter provided a proper foundation for immediate appeal). First, CACI apparently takes issue with the Court's discussion of certain factors—like CACI's citizenship, the domestic issuance of CACI's contract to perform interrogation services in Iraq, and Iraq's status as a territory under U.S. control—in conducting its analysis. Br. at 6 (citing Opinion at 20). [5] As Plaintiffs have argued, the Court's analysis was undoubtedly correct insofar as these factors show connections to U.S. territory that make this case an appropriate one to be brought under the ATS, but none of these factors were individually dispositive of the Court's ultimate determination. The Court separately analyzed the "substantial domestic conduct … relevant to the alleged law of nations violations," and its lengthy discussion of the evidence of such conduct did not hinge on—indeed, mentioned

---

ECF No. 28 at 14, Br. for Pls.-Appellants, *Al Shimari v. CACI Premier Technology, Inc. et al*, No. 13-1937 (4th Cir. Oct. 29, 2013); *id*. at 18 ("The claims in this case, in stark contrast, do not run afoul of the principles underlying the *Kiobel* presumption; indeed, they advance the very 'object' of the ATS' 'solicitude'. *Morrison v. National Australia Bank Ltd*., 130 S. Ct. 2869, 2884 (2010). The claims here do "touch and concern the territory of the United States with sufficient force" to displace the application of the presumption in this case."); *id* at 26 (similar).

[5]     CACI recognizes, as it must, that this question is bound up in factual determinations that are not relevant to certification under Section 1292(b). *See* Br. at 13.

hardly any of—the factors that CACI complains about in its instant motion.  *See* Opinion at 25-32.

CACI's next best-effort to find a question of law lies in its contention that at the second step of the "focus" test, which asks whether "conduct relevant to the statute's focus occurred in the United States," *Id.* at 14 (quoting *Nestlé*, 141 S. Ct. at 1936).  CACI contends that, "the conduct relevant" can only be the "primary tortious conduct"—i.e., the "torture, war crimes and cruel, inhuman[e], or degrading treatment" that occurred in Iraq—not the conduct of aiding and abetting and conspiracy for which CACI actually is sued.  Br. at 2, 14.[6]  CACI insists that "[i]f [it] is correct that the only conduct that matters is the primary tort … dismissal would be required."  *Id.* at 6.

There is, however, no "substantial ground for difference of opinion" on this question.  28 U.S.C. § 1292(b).  The *only* purported authority that CACI can muster for its hyper-narrow reading of conduct relevant to the focus of the ATS is *United States v. Elbaz*, 52 F.4th 593 (4th Cir. 2022), *petition for cert. filed, Elbaz v. United States,* No. 22-1055 (2023), which describes what conduct is relevant to the focus of 18 U.S.C. § 1349—an entirely different statute that prohibits conspiracy to commit mail or wire fraud.  *Id.* at 604.  As the Court explained in the Opinion, *Elbaz* cannot be read to "establish a general rule that a conspiracy is domestic only if the underlying substantive offense is domestic."  Opinion at 23 n.15.  Meanwhile, the Opinion cites case after case in which other circuits have "looked to the location of all conduct that

---

[6] CACI has argued this same position, which Justice Alito advanced (joined only by Justice Thomas) in a separate opinion in *Kiobel*, again and again since 2013, and it has been rejected at every turn by the district court and the Court of Appeals.  *Al Shimari III*, 758 F.3d at 527 (rejecting Justice Alito's position that "courts could consider only the domestic tortious conduct of the defendants" because it "is far more circumscribed than the majority opinion's requirement" that "the claims touch and concern" the United States with sufficient force to displace the presumption against extraterritoriality); ECF No. 859 at 9–10 (denying CACI's motion to dismiss and explaining the purpose of the ATS); ECF Nos. 1061 and 1143 (denying CACI's January 3, 2019 motion to dismiss based on lack of jurisdiction under *RJR Nabisco*).

constitutes secondary liability for the international law violation, not just the location of conduct that directly inflicts injury, to determine whether an aiding and abetting or conspiracy claim involves an extraterritorial application of the ATS." *Id.* at 21 (citing *Doe I v. Cisco Systems, Inc.*, No. 15-16909, 2023 WL 4386005, at *26 (9th Cir. 2023); *Jara v. Nunez*, 878 F.3d 1268, 1273 (11th Cir. 2018); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 185 (2d Cir. 2014); *Doe v. Drummond Co. Inc.*, 782 F.3d 576, 592, 597-98 (11th Cir. 2015)). CACI acknowledges none of this authority.

CACI fleetingly offers two other claimed "grounds for a difference of opinion" in the Court's application of the "focus test." Br. at 14. CACI asserts, in conclusory fashion, that "[t]he conduct occurring in the United States" described in the Opinion "is general corporate conduct that cannot convert a claim involving extraterritorial injuries into a domestic application of ATS." *Id.* at 16. The Court addressed this argument at length in the Opinion, *see* Opinion at 23-32, explaining that the "significant domestic conduct … directly related to plaintiffs' claims" differed in kind and specificity from the sort of "generic" and "attenuated" corporate conduct insufficient in itself to establish a domestic application of the ATS. *Id.* at 24-25. CACI offers nothing to suggest that the Court's analysis and resolution of this argument is subject to reasonable debate. To the extent that CACI disputes the evidence in the record, that is a merits issue for the jury to decide. *Id.* at 32; *see also Al Shimari v. CACI Premier Tech.,* 775 Fed. Appx. 758, 760 n* (4th Cir. 2019) (in dismissing an appeal where there exist disputes of material fact for lack of jurisdiction, finding that "we would not, and do not, have jurisdiction over a claim that the plaintiffs have not presented enough evidence to prove their version of events").

CACI also points to the Court's discussion of the United States' control of Abu Ghraib during the relevant time period, and surmises that "the Court presumably" engaged in this

12

discussion "on the theory that supposed U.S. control in Iraq made conduct … less extraterritorial than if it had occurred in a nation not in the midst of a war and occupation." Br. at 14.[7] While the Court noted that the United States' control over the location at which the abuse of Plaintiffs occurred differentiates this case from others where the locations of the injuries at issue lacked any connection to the United States and that this control was "of critical importance to analyzing the focus of the ATS," Opinion at 20 (quotations and citations omitted), the Court's consideration of that control was supplemental to, and not necessary to, its conclusion that the record "shows substantial domestic conduct that is relevant to the alleged law of nations violations," *id.*

In short, CACI identifies no "controlling question of law as to which there is substantial ground for difference of opinion" in the Order's discussion of extraterritoriality. 28 U.S.C. § 1292(b).

## II.  CACI IDENTIFIES NO "QUESTIONS" REGARDING THE AVAILABILITY OF A PRIVATE CAUSE OF ACTION THAT WARRANT CERTIFICATION

CACI asserts that it has identified two controlling questions of law meeting Section 1292(b)'s requirements in connection with the Opinion's rejection of CACI's argument that "the ATS does not permit courts to recognize and authorize claims under the ATS that arise out of the United States' prosecution of war," which allegedly would constitute "uninvited intrusion into matters relating to national security and foreign affairs." ECF No. 1368 at 1. Having been

---

[7]  In a footnote, CACI relies on *Adhikari* in arguing whether Abu Ghraib's status as a "domestic territory" should be considered in an extraterritoriality analysis presents a controlling question of law. *See* Br. at 7 n.2. This is incorrect as the Fifth Circuit merely made a factual finding in *Adhikari* that the military base at issue was not considered a territory of the United States because "a U.S. military base does not constitute de facto territory where the United States has not demonstrated intent to exercise sovereignty over that base permanently." 845 F.3d at 197. By contrast, as the Court explained in the Opinion, following the U.S-led occupation of Iraq, the US-led Coalition Provision Authority asserted sovereignty over Iraq—and more specifically, Abu Ghraib—at that point in time. *See* Opinion at 2-3, 17-19.

squarely foreclosed by *Al Shimari IV*, and correspondingly rejected numerous times by this Court, CACI's argument has no merit.

CACI first argues that "[t]he Court's invocation of the law of the case doctrine" presents the requisite controlling question of law. Br. at 16. That CACI simply disagrees with the Court's original reasoning and decision does not make the Court's routine invocation of that prior decision to foreclose relitigating a "controlling question of law" within the meaning of Section 1292, and CACI cites no cases suggesting that it can be. In any event, CACI forgets that its briefing on the motions to dismiss at issue expressly acknowledged that this Court's two prior decisions constituted the law of the case: *Al Shimari v. CACI Premier Tech., Inc.*, 324 F. Supp. 3d 668 (E.D. Va. 2018),[8] and *Al Shimari v. CACI Premier Tech., Inc.*, 320 F. Supp. 3d 781, 786 (E.D. Va. 2018).[9] *See* ECF No. 1368 at 1 ("This Court has heretofore concluded that it has jurisdiction to … permit tort claims based on alleged violations of international norms even when they occur in the context of the U.S. military's prosecution of war."), and simply maintained the doctrine should not apply now because those prior decisions supposedly "cannot be squared with intervening binding precedent," *see* ECF No. 1376 at 2; *id.* at 8-9. To the extent CACI tries to suggest, through these departures from its prior concessions, that the Court has not previously "decide[d] upon a rule of law" governing the issues presented in CACI's motion to dismiss, *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009), that argument should be rejected.

---

[8] As the Opinion explains, *Al Shimari v. CACI Premier Tech., Inc.*, 324 F. Supp. 3d 668, 698 (E.D. Va. 2018), rejected CACI's argument that the "Constitution's allocation of war powers precludes ATS claims arising out of the United States' conduct of war," holding instead that the ATS "embodies Congress's considered determination that there should be a cause of action in federal district court for violations of the law of nations" and that "applying the ATS in this context represents the constitutional exercise of Congress's inherent powers to regulate the conduct of war." Order at 34-35.

[9] As the Opinion explains, *Al Shimari v. CACI Premier Tech., Inc.*, 320 F. Supp. 3d 781, 786-87 (E.D. Va. 2018) rejected CACI's similar separation-of-powers motion following the Supreme Court's decision in *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386 (2018), holding that "it is the law of the case[] that adjudication of plaintiffs' claims does not impermissibly infringe on the political branches." Order at 34.

CACI has not pointed to any intervening binding precedent that is contrary to the Court's prior rulings, as it at minimum needs to do to raise an issue with the Court's invocation of the law of the case doctrine. In none of its recent decisions adjudicating ATS claims—*Kiobel, Jesner* and *Nestlé*—has the Supreme Court overruled *Sosa v. Alvarez-Machain*, where it held that the ATS was "enacted on the understanding that … the district courts would recognize private causes of action for certain torts in violation of the laws of nations," 542 U.S. 692, 724 (2004). Indeed, none of the cases that CACI relies on concern the ATS, but instead wholly unrelated subjects, like the availability of a *Bivens* claim,[10] sovereign immunity, and the Administrative Procedure Act. *See* Opinion at 36-41; Br. at 19-21. While the Supreme Court indeed has expressed concern about courts "arrogating legislative power," Br. at 20 (quoting *Bulger v. Hurwitz*, 62 F.4th 127, 136 (4th Cir. 2023)), CACI has not offered any meaningful response to this Court's explanation (set forth both in the Opinion and in prior Fourth Circuit and district court decisions) that "the ATS is itself 'an exercise of congressional power' and reflects 'Congress's determination, in accordance with its war powers, that victims of violations of international law should have a remedy in federal district courts,'" Opinion at 38 (quoting *Al Shimari*, 324 F. Supp. 2d at 698-99); *see also Al Shimari III*, 758 F.3d at 525, much less suggested why a substantial ground for difference of opinion about the Court's reasoning exists.

---

[10]   As discussed in Plaintiffs' response to CACI's notice of supplemental authority concerning *Dyer v. Smith*, 56 F.4th 271 (4th Cir. 2022), CACI's reliance on an isolated quotation from *Nestlé* in *Dyer* is misplaced as that quote "was never adopted as precedent in the ATS context, given that the corresponding section of Justice Thomas' *Nestlé* opinion was joined by only two other Justices (Justices Gorsuch and Kavanaugh)." ECF No. 1387 at 3. "Moreover, this line from *Nestlé* cited to *Hernandez v. Mesa*, 140 S. Ct. 735 (2020), which—like the other cases upon which CACI relies—is another *Bivens* case; the citation was meant merely to be descriptive of *Bivens* claims, not prescriptive about how to adjudicate ATS claims." *Id.* Nothing in *Dyer* suggests *Bivens* claims, which are judicially implied causes of action, are analyzed in the same way as ATS claims, which are derived from a congressional statute.

15

Because CACI offers no reason to disturb the Court's law of the case holding, there is no need to reach its last claimed controlling question—whether, the law of the case doctrine notwithstanding, "the Court has the power to imply the causes of action it is allowing Plaintiffs to pursue in this action." Br. at 21. But CACI's reliance on this question is meritless.

As an initial matter, CACI takes the extreme view that "federal courts lack the power to create new claims under the ATS beyond the three paradigmatic torts ... contemplated by the First Congress when it enacted the ATS." *Id.* at 21. No court has accepted that position— including the Supreme Court in any of its decisions, including *Nestlé*, and it there cannot be a substantial difference of opinion insofar as the position is foreclosed by *Sosa*. As the Fourth Circuit and this Court have repeatedly recognized, the Plaintiffs' claims in this case, including torture and cruel and inhuman treatment, are core violations of the law of nations that are cognizable under the ATS. *See Al Shimari v. CACI Premier Tech., Inc.*, 263 F. Supp. 3d 595, 600-06 (E.D. Va. 2017) (holding that torture, CIDT, and war crimes are violations of the law of nations and detailing the authority for this finding). Moreover, *every* Circuit to consider the question—including the Fourth Circuit—has held that secondary liability claims like the ones Plaintiff brings are cognizable under the ATS. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 396 (4th Cir. 2011) ("[W]e conclude that aiding and abetting liability is well established under the ATS." (quotation marks and citation omitted)); *Doe I v. Cisco Sys., Inc.*, 73 F.4th 700, 717-18 (9th Cir. 2023) (citing cases and explaining that "no [c]ircuit to consider [the availability of aiding and abetting claims under the ATS] has held otherwise").[11]

---

[11] CACI's reliance on the unpublished Seventh Circuit's decision in *Kriley v. Nw. Mem'l Healthcare*, No. 22-1606, 2023 WL 371643, at *2 (7th Cir. Jan. 24, 2023) is highly misleading. There, the Seventh Circuit rejected a plaintiff's attempt to sue under the ATS for medical care to remove a blood clot by directly enforcing "the International Covenant on Civil and Political Rights, the International Bill of Human Rights, and other norms unrelated to" the three historical torts set out in *Sosa*. *Id.* Although *Kriley* limited its discussion of cognizable claims under the ATS to those three torts, it could not, and did not purport to, overrule Supreme Court and its own

16

More importantly, for essentially the same reasons that CACI's argument about "intervening binding precedent" is without merit, CACI's contention that there is a substantial ground for difference of opinion on the question of whether the Court has the power to imply the causes of actions being pursued by Plaintiffs also founders. While conveniently ignoring the Fourth Circuit's prior rejection of the political question doctrine, *see Al Shimari v. CACI Premier Tech., Inc.*, 840 F.3d 147 (4th Cir. 2016), —and the line of Supreme Court cases since *Sosa*— CACI has not pointed to a single ATS case disputing the availability of the ATS "in a wartime context," Br. at 22, and its attempt to extrapolate irrelevant cases to the ATS rests on its stubborn refusal to acknowledge that the ATS is not a judicially created doctrine like *Bivens*, but an "exercise of congressional power." Opinion at 38 (citing *Al Shimari v. CACI Premier Tech., Inc.,* 324 F. Supp. 3d 668, 698 (E.D. Va. 2018) .

## III. AN IMMEDIATE APPEAL WOULD NOT MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS LITIGATION

CACI argues that "[a]n immediate appeal may materially advance the ultimate termination of th[is] litigation because these issues are case-dispositive, and resolving them now would avoid" the work the parties must complete prior to and during trial "if CACI is correct on the law." Br. at 23. That's a big "if"—and one the Plaintiffs resoundingly reject. As the Court made clear in its Opinion, the "issues" to which CACI points are ones that "repeat many of the same arguments it has previously made and which have been rejected by the Court" (and by the Fourth Circuit). Opinion at 9. Indeed, even before filing the motion that was adjudicated through the Opinion, CACI had (i) twice moved to dismiss on grounds that Plaintiffs' suit is

---

long-standing precedent holding that "Congress allowed the coverage of the statute to change [from those three historical torts] to change with changes in customary international law," such that "'the door is still ajar [for further independent judicial recognition of actionable international norms].'" *Flomo v. Firestone Natural Rubber Co., LLC*, 643 F.3d 1013, 1016 (7th Cir. 2011) (quoting *Sosa*, 542 U.S. at 729) (second set of brackets in *Flomo*).

17

impermissibly extraterritorial (*see* ECF Nos. 355, 1061) and (ii) thrice moved to dismiss on grounds that the ATS does not apply to claims arising from a wartime context (*see* ECF Nos. 35, 627, 811). CACI's reiteration of these arguments inspires no confidence that CACI "is correct on the law" now, and, if it is not, the trial work that CACI emphasizes (and, respectfully, overstates) will simply be delayed should the Fourth Circuit hear this appeal and affirm based on its own precedent in this very case, and likely made even more expensive and burdensome, given the redundancies that delay introduces.

The law is clear that "[t]he mere fact that the resolution of the question[s] sought to be certified … *may* save pre-trial and trial effort and expense is not determinative." *Glennon*, 2022 WL 18584800, at *3 (E.D. Va. Nov. 3, 2022) (emphasis in original). The "case-specific analysis" that the Court must employ here, *id.*, is telling. This litigation already has spawned four appeals (most stemming from the above-mentioned motions filed by CACI), six appellate decisions and orders, including an *en banc* decision and a Supreme Court denial of certiorari. *See Al Shimari v. CACI Int'l, Inc.*, 658 F.3d 413 (4th Cir. 2011) ("*Al Shimari I*"); *Al Shimari v. CACI Int'l, Inc.*, 679 F.3d 205 (4th Cir. 2012) (en banc) ("*Al Shimari II*"); *Al Shimari v. CACI Premier Tech., Inc.*, 758 F.3d 516 (4th Cir. 2014) ("*Al Shimari III*"); *Al Shimari v. CACI Premier Tech., Inc.*, 840 F.3d 147 (4th Cir. 2016); *Al Shimari v. CACI Premier Tech., Inc.*, 775 F. App'x 758 (4th Cir. 2019); *CACI Premier Tech., Inc. v. Shimari*, 141 S. Ct. 2850 (2021). Any appeal on the issues CACI now raises (again) would prolong this litigation and unduly prejudice Plaintiffs, who have been waiting 15 years, not hasten its resolution.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny CACI's request for certification of the Opinion pursuant to 28 U.S.C. § 1292(b).

Respectfully submitted,

*/s/ Cary Citronberg*

Cary Citronberg
ZWERLING/CITRONBERG, PLLC
114 North Alfred Street
Alexandria, VA 22314
Tel. 703-684-8000
cary@zwerling.com

Muhammad U. Faridi, *Admitted pro hac vice*
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036

Baher Azmy, *Admitted pro hac vice*
Katherine Gallagher, *Admitted pro hac vice*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

Shereef Hadi Akeel, *Admitted pro hac vice*
AKEEL & VALENTINE, P.C.
888 West Big Beaver Road
Troy, MI 48084-4736

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 23, 2023, I electronically filed Plaintiffs' Response to Defendant's Notice of Supplemental Authority, which sends notification to counsel for Defendants.

                                                             */s/ Cary Citronberg*
                                                               Cary Citronberg