```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF VIRGINIA
2                        ALEXANDRIA DIVISION


3    --------------------------x
     SUHAIL NAJIM ABDULLAH AL    :    Civil Action No.:
4    SHIMARI, et al.,            :    1:08-cv-827
                  Plaintiffs,    :
5         versus                 :    Friday, April 5, 2024
                                 :    Alexandria, Virginia
6    CACI PREMIER TECHNOLOGY,    :
     INC., et al.,               :    Pages 1-43
7                  Defendants.   :
     --------------------------x

8

9         The above-entitled motions hearing was heard before
     the Honorable Leonie M. Brinkema, United States District
10   Judge.  This proceeding commenced at 11:06 a.m.

11                     A P P E A R A N C E S:

12   FOR THE PLAINTIFFS:   BAHER AZMY, ESQUIRE
                           THE CENTER FOR CONSTITUTIONAL RIGHTS
13                         666 Broadway
                           7th Floor
14                         New York, New York  10012
                           (212) 614-6464

15                         MICHAEL FISHER, ESQUIRE
                           WILLIAM SCOTT KIM, ESQUIRE
16                         BONITA ROBINSON, ESQUIRE
                           MUHAMMAD FARIDI, ESQUIRE
17                         ALEXANDRA MAHLER-HAUG, ESQUIRE
                           PATTERSON BELKNAP WEBB & TYLER LLP
18                         1133 Avenue of the Americas
                           New York, New York  10036
19                         (212) 336-2000

20

21

22

23

24

25
                                                            1
```

```
 1                          A P P E A R A N C E S:

 2     FOR THE DEFENDANTS:    JOHN O'CONNOR, JR., ESQUIRE
                              LINDA BAILEY, ESQUIRE
 3                            JOSEPH MCCLURE, ESQUIRE
                              STEPTOE & JOHNSON LLP
 4                            1330 Connecticut Avenue, NW
                              7th Floor
 5                            Washington, D.C.  20036
                              (202) 429-3000
 6
                              NINA GINSBERG, ESQUIRE
 7                            DIMUROGINSBERG PC
                              1101 King Street
 8                            Suite 610
                              Alexandria, Virginia  22314
 9                            (703) 684-4333

10                            REBECCA LEVENSON, ESQUIRE
                              OFFICE OF THE UNITED STATES ATTORNEY
11                            2100 Jamieson Avenue
                              Alexandria, Virginia  22314
12                            (703) 299-3700

13                            STEPHEN ELLIOTT, ESQUIRE
                              JASON LYNCH, ESQUIRE
14                            UNITED STATES DEPARTMENT OF JUSTICE
                              CIVIL DIVISION FEDERAL PROGRAMS BRANCH
15                            1100 L Street, NW
                              Washington, D.C.  20044
16                            (202) 598-0905

17     COURT REPORTER:        STEPHANIE M. AUSTIN, RPR, CRR
                              Official Court Reporter
18                            United States District Court
                              401 Courthouse Square
19                            Alexandria, Virginia  22314
                              (571) 298-1649
20                            S.AustinReporting@gmail.com

21           COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

22

23

24

25
                                                                    2
```

```
 1                   P R O C E E D I N G S

 2            THE DEPUTY CLERK:  Civil Action

 3   Number 1:08-cv-827.  Al Shimari v. Dugan, et al.

 4            Counsel, if you'll please note your appearances

 5   for the record.

 6            MR. AZMY:  Good morning, Your Honor.  Baher Azmy

 7   from The Center for Constitutional Rights for plaintiffs

 8   with our legal team, Michael Fisher, Scott Kim, Bonnie

 9   Robinson, Muhammad Faridi and Alex Mahler-Haug.

10            THE COURT:  Good morning.

11            MR. O'CONNOR:  Good morning, Your Honor.  John

12   O'Connor, Linda Bailey, Nina Ginsberg and Joe McClure for

13   CACI.

14            THE COURT:  Good morning.

15            MS. BAILEY:  Good morning, Your Honor.

16            THE COURT:  All right.  Well, we're getting close

17   to the final deadline in this case.

18            Before I address any of the motions -- well, I

19   guess I'll address one right now because it makes sense.

20            I've given careful consideration, Mr. O'Connor,

21   for your motion for reconsideration.  I am denying the

22   motion.  We'll give you a very short order with a little bit

23   more detail in a day or so.  But I will tell you briefly, I

24   do not find that the Supreme Court case upon which you rely

25   is somehow new authority, really constitutes new authority.
```

3

Stephanie Austin, RPR, CRR USDC/EDVA (571) 298-1649

```
1    The Kirtz decision, in my view, did not reverse or change

2    any of the underlying authorities upon which this Court did

3    rely in its earlier decision in which I found that there is

4    no sovereign immunity for these types of allegations.  And

5    that decision, therefore, means that the borrowed servant

6    document would not apply as well.  So the motion is denied.

7    All right.  The case is going to go to trial on the 15th of

8    April.

9              So, I want to talk, first of all, about trial

10   issues.  Because I want to make sure, as I said before, this

11   case go in as efficiently and quickly as possible, and so I

12   have a bunch of questions and things I want to discuss with

13   you.

14             First of all, just for the record -- and I guess

15   plaintiff should be at the podium for this -- are the

16   other -- I am assuming only one of the three plaintiffs will

17   physically be in the courtroom for the trial; is that

18   correct?

19             MR. FARIDI:  Good morning, Your Honor.  Yes.

20   Muhammad Faridi on behalf of the plaintiffs.

21             One of the three plaintiffs will be physically in

22   the courtroom.  The other two plaintiffs will testify from

23   Iraq.

24             THE COURT:  All right.  Now, are you sure that

25   there is no problem with the Iraqi government and/or the
```

4

```
 1    U.S. government with a basically live broadcast from Iraq to

 2    the United States?

 3                MR. FARIDI:  Yes.

 4                THE COURT:  All right.

 5                MR. FARIDI:  We have reached out to three Iraqi

 6    lawyers who have confirmed as much.  We've reached out to

 7    the United States government to make sure that our

 8    understanding of the situation was accurate, and they have

 9    confirmed, Your Honor, that they don't see an issue there as

10    well.

11                THE COURT:  All right.  That's fine.

12                Now, the issue that may arise, however, is

13    technology and delays.  All right.  So I want to put

14    everybody on notice, all right, that that cannot hold up the

15    trial.

16                So, the first thing we're going to have to do --

17    and there's going to have to be a little bit of a test run

18    sometime next week.  And I am in trial in another case, so

19    we'll have to work around my calendar.  And I don't have to

20    be here for it.  But I want to make sure that the court

21    staff and counsel are going to be able to efficiently and

22    smoothly display exhibits to the witnesses who are in Iraq.

23                Now, I'm assuming the only two witnesses who are

24    going to testify from Iraq are the two plaintiffs; is that

25    correct?
```

```
 1                MR. FARIDI:  That is correct, Your Honor.

 2                THE COURT:  All right.  And there are no other

 3   outside-of-the-United-States witnesses; is that correct?

 4                MR. FARIDI:  That is correct.

 5                THE COURT:  Okay.  My understanding is that you

 6   are going to have proposed exhibits in an electronic format

 7   that can be shown, I'm assuming, relatively simultaneously

 8   to the witness as the witness is being questioned; is that

 9   your understanding of how it's going to work?

10                MR. FARIDI:  That is correct, but we also have a

11   backup, Your Honor.

12                THE COURT:  Which is?

13                MR. FARIDI:  Just to inform Your Honor, yesterday

14   we had a dry run in this courtroom with our team in Iraq,

15   and it was successful.  We'll come back here next week, and

16   we'll do another dry run just to make sure that the

17   equipment doesn't malfunction.  And we have a backup there

18   as well.

19                We've actually hired a vendor, FTI, which is known

20   to facilitate testimony from another jurisdiction, and they

21   have sent a significant amount of equipment to Iraq to

22   ensure that everything takes place smoothly in the

23   courtroom.

24                As to the exhibit issue, our backup is, obviously

25   we'll use the Zoom share function to display the exhibits
```

6

```
1    economically to the witnesses in Iraq, but we, as the
2    plaintiffs, we will also send them a binder that will
3    contain the exhibits that we intend to use during our direct
4    examinations, and we will, with Your Honor's permission,
5    make eight copies of the binders for the jurors so that the
6    jury can follow along to the extent that there's a technical
7    glitch with the system and we have to revert to paper copies
8    of the exhibits.
9            THE COURT:  Well, the only problem with that is,
10   normally we wouldn't have exhibits in a book that goes to
11   the jurors if there's any potential objection to any of
12   those exhibits, because a jury can't see the exhibit before
13   it's been admitted.
14           Have you been working with CACI's folks to see
15   whether or not there are objections to any of those
16   exhibits?
17           MR. FARIDI:  Well, we've begun that conversation
18   with them.  We have proposed a stipulation to CACI, and
19   pursuant to that stipulation -- and I have a copy of it,
20   Your Honor, if you would like it.
21           Pursuant to that stipulation, we will disclose the
22   exhibits, I believe, to CACI that we intend to use during
23   direct examination the night before the witness takes the
24   witness stand.  And to the extent that they have any
25   objections, we're supposed to work out those objections with
```

7

```
 1    them, and if we're not able to resolve those objections, we
 2    can raise them before Your Honor.
 3              THE COURT:  I'm not going to have one of those
 4    trials where I have an hour of objections before trial every
 5    day.  That's going to be worked out ahead of time.  I'm not
 6    going to do it during the trial; all right?
 7              MR. FARIDI:  Okay.
 8              THE COURT:  Now, that also means the defense has
 9    to be -- I assume, Mr. O'Connor, your people also are
10    prepared to have -- if you do, you may not have any exhibits
11    you want to show the plaintiffs, I don't know how your case
12    is going in.
13              MR. O'CONNOR:  Your Honor, we received an email
14    last night from plaintiffs' counsel advising -- we had asked
15    that question, and they advised that -- I believe we're
16    bringing -- the exhibits will be here electronically to be
17    provided, and they've said that we could send exhibits in a
18    sealed folder or box if we wanted to have hard copies in
19    Iraq, but we learned that I think last night.
20              THE COURT:  All right.  But do you anticipate
21    having exhibits that you're going to want to show to those
22    witnesses?
23              MR. O'CONNOR:  To be determined, but I think it
24    would be no more than a few.
25              THE COURT:  All right.  So it shouldn't be a
```

8

```
1    problem.
2            MR. O'CONNOR:  You know, as for the binders for
3    jurors, Your Honor, I have no idea what they're intending to
4    show or whether it's been admitted.  I mean, I don't know
5    why the jurors would need a binder because I'm assuming
6    there's not going to be a malfunction here.
7            THE COURT:  Well, the jurors have a screen here
8    that goes up in the front row.  We're only having a small
9    jury, it's only eight, so probably almost all of them can
10   see the small screens.  But they'll be presented here in the
11   courtroom.
12           See, the only trick here is, or the only thing
13   that can be problematic is you can't display an exhibit to
14   the jury until it's been admitted.
15           MR. O'CONNOR:  Understood.
16           THE COURT:  And so I want everybody to understand
17   that.  All right.  Well, it sounds as though that's more or
18   less under control.
19           But is it the plaintiffs' understanding then
20   that -- I had spoken with Mr. Bachman and indicated that the
21   better approach, in my view, was to have the courtroom
22   deputy be the one who actually has the exhibit and displays
23   it to the witness so that we're not getting it out of
24   control.
25           Was that how you rehearsed it?
```

9

1          MR. FARIDI:  Yes.

2          THE COURT:  All right.  So did you have someone

3    here from the clerk's office here for that?

4          MR. FARIDI:  I think Mr. Bachman was here.

5          THE COURT:  He's not a courtroom deputy.  Did you

6    have a courtroom deputy here?  I don't think you did.  So

7    when you -- you need to at least coordinate with us as to

8    when you're going to do this again next week.  I think,

9    frankly, defense counsel should be here at the same time.

10          MR. O'CONNOR:  I was just going to ask that, Your

11    Honor.

12          THE COURT:  And I'm going to have the courtroom

13    deputy who's going to run the trial -- or be one of the

14    courtroom deputies here so that we can make sure there's no

15    misunderstanding as to how it's going to work.  All right.

16          I can tell you right now in terms of the calendar,

17    just so you don't waste your time, I'm in trial all day

18    Monday, the 8th, I'm certainly in trial a good portion of

19    the 9th.  Wednesday, April 10, you could comfortably

20    schedule something for any time after 11:00 and all day

21    April 11th, Thursday, is clear.  Friday, April 12, I have

22    motions in the morning, but the afternoon is also clear, so

23    those are the windows in which you can get access to this

24    courtroom.  All right.

25          MR. FARIDI:  And, Your Honor, just on the

                                                              10

```
 1    exhibits, we don't expect our direct examinations to be
 2    exhibit-heavy.  I think we'll probably show a handful of
 3    photographs --
 4              THE COURT:  All right.
 5              MR. FARIDI:  -- during the examination.
 6              THE COURT:  Good.  So that keeps it relatively
 7    simple.  All right.  Thank you.  All right.
 8              Now, the plaintiffs right now have six lawyers
 9    sitting at counsel table.  Your tech people are then going
10    to sit behind them?
11              MR. FARIDI:  That is correct, Your Honor.
12              THE COURT:  All right.  And you have fewer
13    lawyers, but you'll have a tech person or two as well?
14              MR. O'CONNOR:  We do have a tech person, Your
15    Honor.
16              THE COURT:  All right.  That's fine.  Okay.
17              MR. FARIDI:  I'll just stay up here, Your Honor,
18    so I don't have to go back and forth, if that's okay with
19    you.
20              THE COURT:  All right.  In terms of -- I want to
21    get an overall time estimate from the plaintiff as to how
22    long do you think it's going to take to put your case in
23    chief on?
24              MR. FARIDI:  So we've significantly cut back on
25    our case.  I think we're estimating that we should be able
```

                                                              11

```
 1    to rest our case hopefully on Friday.
 2              THE COURT:  I would be shocked.  Be prepared to --
 3    it's going to move a lot faster.  I sense an incredible
 4    amount of cumulative evidence in this case from what I've
 5    been seeing, and I'm not going to permit it.  Okay.  So be
 6    prepared.
 7              There also may be, unfortunately, a couple of
 8    times when I may have to shorten the trial day because of
 9    other matters that are pending, but I'm going to try to keep
10    that to a minimum.  But, at this point, you need to be
11    prepared that it may be faster.  So don't promise any
12    witness that they can appear on Friday, because you may be
13    ready to put that person on Wednesday afternoon; all right?
14              MR. FARIDI:  Most of our witnesses will be here
15    early in the week, Your Honor.
16              THE COURT:  All right.  That's fine.
17              And how long does the defense anticipate a defense
18    case taking?
19              MR. O'CONNOR:  Your Honor, we're thinking four
20    days.
21              THE COURT:  Again, I can't imagine that being four
22    days, because a lot of your case, I suspect, will come in
23    through cross-examination.
24              MR. O'CONNOR:  Some of that I think is right, Your
25    Honor.  One of the issues that we have is we have to call
```
                                                              12

1   nine witnesses about what happened during plaintiffs'

2   interrogations because we have to call -- because there were

3   multiple witnesses.

4           THE COURT:  I understand that.

5           MR. O'CONNOR:  So we have a rogues' gallery of

6   pseudonymous witnesses that sort of lengthens our time.

7           THE COURT:  Yeah, but from what I've seen, those

8   testimonies are not all that long.

9           MR. O'CONNOR:  The clips right now, I think on

10  average they run between 45 minutes and an hour per witness,

11  though I am working to shorten them.  They run longer for

12  the two CACI pseudonymous witnesses because they're our

13  employees, we have more we need to get out of them.  Right

14  now they're running 45 to an hour per witness.  But I worked

15  on some last night, and I -- and I hacked the heck out of

16  them.

17          THE COURT:  Good.  I'm glad to hear that.

18  Excellent.

19          MR. O'CONNOR:  So I'm getting them shorter.

20          THE COURT:  Okay.  All right.

21          Sometime next Friday afternoon between noon and

22  3:00, each side needs to present three sets of binders of

23  all the exhibits you intend or believe you will be able to

24  introduce.  Okay.  One set is the official set that goes to

25  the witnesses and will be the set that the clerk's office

                                                        13

```
 1   keeps, one set is for my law clerk, and one set is for me.

 2   All right.  And we want all that up here properly labeled.

 3              In terms of binders, I don't want binders thicker

 4   than 3 inches; they're too hard to work with.  So that's

 5   important.  And I'm hoping that everything is well Bates --

 6   you know, when you have multiple-paged exhibits, they need

 7   to have, you know, good Bates stamps on them so that the

 8   witnesses can get to them quickly, so make sure that that's

 9   been done.

10              MR. O'CONNOR:  And, Your Honor, we have worked out

11   protocols.  So we're going to be adding numbers, page

12   numbers, page 1 of blank, to each multi-page exhibit.  We

13   shouldn't be relying on Bates numbers so much as turn to

14   page 48.

15              THE COURT:  Okay.  That's fine.

16              I did find when we were conducting some of the

17   depositions that the way the exhibits were labeled was very

18   confusing.  So I'm hoping this is, you know, very simple,

19   one, two, three, four, five, six.  Subparts get complicated,

20   but, anyway, hopefully that's not going to be an issue.

21   Okay.

22              I'm assuming that -- your deadline is next Monday

23   for filing your proposed jury instructions, which, again,

24   I'm assuming it's going to be a significant agreed set and

25   then whatever separate ones you have to submit.  You should
```

                                                                14

1    also, with that, include proposed verdict forms.  And
2    obviously I will look at proposed voir dire questions.
3    Again, I strongly want to see where you've agreed so that
4    you can send a joint set.  It's a better chance that will be
5    used if agreed to rather than two totally separate sets.
6    Okay.
7            You'll get the jury list sometime early next week,
8    and I'm going to -- I'm going to ask the jury to have 70 to
9    75 names on that list.  I think we need a lot of extra ones
10   just because there's been some pretrial publicity about the
11   case, and some of the jurors may have heard of Abu Ghraib,
12   although it's been so long ago that probably the memories
13   won't be that specific, but I want to make sure we won't
14   have a problem getting a jury.
15           The last thing is I want to make sure that
16   everybody is clear there are no cell phones allowed in this
17   courtroom for any reason whatsoever.  I've only authorized
18   two laptops per side, so that needs to be complied with.
19           We'll allow -- you can work with my court security
20   officer about access to the two jury rooms.  If you have a
21   lot of extra equipment or emergency backup laptops or that
22   sort of thing, we'll figure out a way where you can keep
23   them in that space.
24           Are there any other trial logistics that anybody
25   wants to raise with me at this point?  Mr. O'Connor?

                                                          15

```
1                MR. O'CONNOR:  We have a few, Your Honor.

2                THE COURT:  All right.

3                MR. O'CONNOR:  What does the Court have in mind in

4    terms of start and end time each day?

5                THE COURT:  Ah, okay.  The first day we start at

6    10:00 because that's when the jury will be up here.  You

7    should be prepared to do your opening statements before the

8    lunch break because voir dire won't take that long, and I've

9    given you already your time limit for that.

10               We run normally until about 6:00.  I take -- the

11   normal lunch break is at 1:00, and there's a mid-afternoon

12   and a mid-morning break pretty much in the middle.  On all

13   subsequent days -- and we do hold court on Friday, so all

14   subsequent days start at 9:30 -- obviously it depends on

15   making sure all the jurors are here by then -- and we'll run

16   until 6.  So that's why I'm saying the case isn't going to

17   take as long as you all think.

18               As I said, there may be a couple of things coming

19   up where I may have to actually break a case.  I'm hoping

20   not to do much of that, but there may be one or two things.

21               I do tend to start my other matters at 8:30 in the

22   morning, so there are days when I have to tell you to clear

23   your desks because I'm going to have other matters in the

24   courtroom up until 9:30.  But that's the schedule you can

25   expect.  All right.
```

16

```
 1                    MR. O'CONNOR:  Thank you, Your Honor.

 2                    THE COURT:  And I think we did -- I just want to

 3      make sure.  I don't believe we bump into any -- we do have

 4      Passover on April -- I think we raised that issue before,

 5      and that was not going to be a problem for anybody.  I'll

 6      ask the jurors if that's going to be an issue, and we'll

 7      have to face that if and when it comes up.

 8                    MR. O'CONNOR:  Understood on that, Your Honor.

 9                    MS. GINSBERG:  Your Honor, the first leg of

10      Passover, could we end before -- maybe at 5:00 so if we want

11      to attend a --

12                    THE COURT:  I'm going to -- you're local counsel,

13      and you can leave.  We don't need all the attorneys here.

14      So I think you should leave whenever it's appropriate for

15      you to leave.

16                    MS. GINSBERG:  I will be examining several of the

17      witnesses.

18                    THE COURT:  Well, hopefully you can arrange that

19      you can examine them earlier.  I really want to try to keep

20      this case on track.  All right.

21                    MS. GINSBERG:  Understood, Your Honor.

22                    THE COURT:  So rearrange your order of witnesses

23      that day if Ms. Ginsberg was going to be calling somebody;

24      all right?

25                    MR. O'CONNOR:  We'll do that, Your Honor.
```

                                                                    17

```
 1              A couple of other brief questions.

 2              THE COURT:  Okay.

 3              MR. O'CONNOR:  This case is going to be a little

 4    unusual, not just because the plaintiffs are testifying --

 5    two of the plaintiffs are testifying from Iraq, but they

 6    don't speak any English.  And so normally, you know, when

 7    you're impeaching a witness with their prior deposition, you

 8    hand them their deposition, you say, well, you read and

 9    answered.  I assume, because they don't speak English, we're

10    going to do that through the interpreter, which will -- the

11    witness is not going to be able to read his deposition into

12    the record.  I'm going to have to read it in English and

13    translate.

14              THE COURT:  It's miserable, so you want to keep

15    that to a minimum.

16              MR. O'CONNOR:  Oh, in some ways that's up to them,

17    Your Honor.

18              THE COURT:  Yeah.

19              MR. O'CONNOR:  And then just to alert the Court --

20    and I don't mean anything bad by this -- I note the CCR has

21    advertised for people to come as spectators, which is

22    certainly everyone's right, and we don't want to get in the

23    way of that at all.  I just wanted to raise that because I

24    don't know if that will present logistical issues with, you

25    know, courtroom space and things like that.
```

18

```
 1              THE COURT:  We can handle that.  We can handle it.

 2   But thank you.

 3              All right.  Are there any issues the plaintiffs

 4   want to raise?

 5              MR. FARIDI:  Yes.  Just a few issues, Your Honor.

 6   Just trial logistical issues.

 7              Your Honor sat through the de bene esse

 8   depositions, and you heard, Your Honor, at some of the

 9   depositions, the government made objections -- evidentiary

10   objections that went above and beyond the Touhy issue, as

11   well as the state secret privilege issue, and particularly

12   at General -- Colonel Pappas's deposition, there were some

13   objections that were lodged that bore on foundation issues.

14              Our position is, Your Honor, to the extent that

15   the government has an interest in this case, that interest

16   is limited to lodging objections related to the Touhy

17   authorization issue, as well as the state secret privilege

18   issue.  But above and beyond that, the ordinary objections

19   that the government has been making at these de bene esse

20   depositions are not valid, and they should not be allowed.

21              We've raised this issue with the government via

22   email, and they've taken the position that under 28 U.S.C.,

23   I believe it's 517, which allows the United States

24   government the right to file effectively a statement of

25   interest in civil cases to which it's not a party, they have
```

1   the right to make evidentiary objections at this trial.  We

2   think that exceeds the authority granted to the government,

3   and I think this is an issue that we should work out before

4   trial before the government begins to stand up and lodge

5   those types of objections.

6            THE COURT:  Well, first of all, who's here from

7   the United States?  Come on up here.

8            MS. LEVENSON:  Rebecca Levenson, Your Honor.

9            THE COURT:  Yeah.  Come on up.

10           MS. LEVENSON:  Good morning, Your Honor.  Rebecca

11  Levenson, Assistant United States Attorney for the Eastern

12  District of Virginia.  With me today is Jason Lynch who will

13  be -- from Main Justice who will be arguing on behalf of the

14  government.

15           THE COURT:  All right.  Mr. Lynch, first of all,

16  I've not seen any objections since the depositions were

17  taken.  I remember you all had indicated that there might

18  be, you wanted to review the transcripts with whoever, and

19  we've not heard anything from you.

20           MR. LYNCH:  We have not lodged additional

21  objections -- we have not lodged additional objections since

22  the depositions, no, Your Honor.

23           THE COURT:  And I ruled on those, did I not,

24  during the deposition?  In some cases I said I'm overruling

25  the objection; in other cases I granted it; right?

                                                          20

```
 1            MR. LYNCH:  Yes.  The various objections that

 2   Mr. Faridi is talking about, I think you sustained the vast

 3   majority of them.  You did overrule us on some of them.  But

 4   we absolutely think we have a right to make an evidentiary

 5   objection.

 6            THE COURT:  Right.  But what I'm saying is, the

 7   transcripts have to be properly edited, such that where I

 8   have granted your objection, neither the question nor the

 9   answer is coming in.

10            MR. LYNCH:  I agree with that, Your Honor,

11   completely.

12            THE COURT:  All right.  I assume there's no issue

13   about that?

14            MR. FARIDI:  There's no issue about that, Your

15   Honor.  I'm talking about as to witnesses who will testify

16   live in the courtroom.

17            THE COURT:  All right.  Well, how many live

18   witnesses raise the potential of the government having an

19   objection to the testimony?  Now, Mr. Porvaznik would

20   probably be one; am I correct about that or no?

21            MR. O'CONNOR:  I think it's theoretical that

22   Mr. Porvaznik could be asked questions that the United

23   States would say would implicate state secrets.

24            THE COURT:  All right.  That's number one.

25            Now, how many other witnesses do we think this
```

```
 1   might raise?
 2          MR. LYNCH:  So I think Mr. Faridi -- and of course
 3   I'll let him speak for himself -- but I think he's talking
 4   about evidentiary objections, so non-Touhy,
 5   non-state-secrets, but just sort of you've asked this
 6   witness to -- you tried to admit a document in the Colonel
 7   Pappas example --
 8          THE COURT:  Well, here's my problem, though.  We
 9   should know at this point which witnesses might trigger that
10   problem.
11          MR. LYNCH:  So what I'm coming to, Your Honor, I
12   think there are two witnesses that are going to be
13   testifying at trial pursuant to a Touhy authorization.  In
14   other words, where we would be in the same posture as we
15   were with Colonel Pappas.
16          THE COURT:  And who are those witnesses?
17          MR. LYNCH:  I believe it's General Taguba and
18   Mr. Cathcart.  But the plaintiffs can correct me.  It's just
19   two; right?
20          MR. FARIDI:  And Hydrue Joyner as well.
21   Mr. Joyner as well.
22          MR. LYNCH:  Mr. Joyner as well.  So three.
23          THE COURT:  And then in the defense case?
24          MR. O'CONNOR:  We don't have anyone who is
25   testifying live pursuant to a Touhy authorization.
```
                                                          22

1    Plaintiffs do have on their list a former CACI employee

2    named Torin Nelson who -- if someone was an interrogator

3    there, they theoretically may have information that would be

4    a state secret if they know who they interrogated, et

5    cetera.

6              I think our -- we have some other employees who

7    were in Iraq, but they were not in an interrogation

8    position, so I don't believe that they're going to implicate

9    state secrets or anything like that.

10             THE COURT:  Well, the best way of avoiding this

11   problem -- because it sounds as though it's mostly the

12   plaintiffs' witnesses -- would be for the plaintiff to talk

13   with government counsel, indicate the questions you're

14   planning to ask, and get, ahead of time, some of this issue

15   worked out.

16             If we do have this issue come up during the trial,

17   I'm going to move it quickly.  So I don't want the

18   government to raise borderline issues.  It better be a

19   genuine, you know, state secret or clearly outside the range

20   of *Touhy*.

21             Now, the *Touhy* authorizations, I need to make sure

22   I have all of the appropriate ones ahead of time.

23             MR. LYNCH:  We'll be sure we get those to the

24   Court, Your Honor.  Is emailing it to your law clerk the

25   best way to do that?

                                                          23

```
 1                THE COURT:  Yes.  Yes.  Yes.

 2                MR. LYNCH:  That's fine, Your Honor.

 3                THE COURT:  All right.  And since this is a civil

 4     case, I won't have any deputy marshals in here.  I'm

 5     thinking perhaps you should have a seat inside the well.  I

 6     don't want people coming out from the spectator area coming

 7     up here to file an objection.

 8                MR. LYNCH:  We're amenable to sitting wherever the

 9     Court would like us to.

10                THE COURT:  We'll find a place to put you so that

11     you're inside the well.  I'm not going to align you with

12     either side, obviously.  That wouldn't be appropriate.  So

13     you're going to need to sit sort of back someplace.

14                MR. LYNCH:  Understood, Your Honor.

15                And just to be clear, we've communicated with

16     Mr. Faridi.  Our intent with evidently objections is to keep

17     those to an absolute minimum as we did during the

18     depositions.  There were many questions we did not object to

19     precisely because we're not a party.  So we're trying to

20     stay out of the way as much as we possibly can.

21                THE COURT:  All right.  That's fine.

22                And obviously, you know, lawyers should think

23     about a cautionary or an instruction should it happen so we

24     just have it in our, you know, thinking if the government

25     does lodge an objection at some point during the trial.
```

```
 1              I think also, as you think about jury

 2    instructions -- and hopefully you can come up with a joint

 3    one -- there should be something about anonymity and why we

 4    are having some witnesses testifying anonymously.  If you

 5    haven't already been thinking about that, that certainly is

 6    an appropriate issue.  And I may even -- frankly, I think in

 7    my opening instructions to the jury, I think I'm going to

 8    alert them to that.  So I would be interested in counsel

 9    providing us with some proposed language that you would like

10    in that respect.  All right.

11              I do -- you can have a seat.

12              MR. LYNCH:  Thank you, Your Honor.

13              THE COURT:  It is my practice to give brief

14    preliminary instructions to a jury.  So I normally -- I

15    don't go into the details, but I give them the structure of

16    the trial, who has the burden of proof, some of those

17    things.  And I like to alert a jury if there are particular

18    issues that might come up or problems that might come up.

19    And so the issue of anonymity I thought they should know

20    about ahead of time.  And possibly maybe desensitize them

21    there may be some objections based on, you know, concerns of

22    the federal government.  I don't know.  But I'll be guided,

23    to some degree, by you.  So I'm open to suggestions about

24    opening instructions to the jury, but I keep that relatively

25    short.  All right.  And I do let jurors take notes, by the
```

                                                              25

```
 1   way, so they will be taking notes, but I don't let them ask
 2   questions.
 3            Yeah?
 4            MR. FARIDI:  A few other pretrial or pretrial
 5   logistic issues, Your Honor.
 6            We had a good meet-and-confer with CACI's counsel
 7   a couple of days ago on jury instructions, and we'll be able
 8   to propose some joint instructions, Your Honor, on some of
 9   these issues that you're talking about.
10            THE COURT:  All right.
11            MR. FARIDI:  We've read in the transcripts at one
12   point that you were going to allow three peremptories, and
13   then I read somewhere else that you were going to allow
14   four.
15            THE COURT:  No.  In the old days when I was going
16   to sit ten jurors, but we're going to sit eight, so three
17   and three.
18            MR. FARIDI:  Okay.  The other issue -- and this
19   relates to the government as well, Your Honor.  We've asked
20   the government to allow us to meet with General Taguba
21   before he takes the witness stand.  They've declined our
22   invitation.  And the reason for us doing so is to make sure
23   his testimony is seamless and efficient.  He's not taking
24   time to -- we're not taking time to refresh his
25   recollection.  And we understand it's in their prerogative
```

26

```
 1    to disallow us to -- in terms of meeting with him to prepare

 2    for his testimony.

 3            We did ask them to ask General Taguba to review

 4    his report in advance of his testimony, the Taguba report,

 5    so that our examination is efficient, he's not spending a

 6    lot of time sifting through the pages of the report that are

 7    relevant.  They've told us that they will give him the

 8    excerpts of the report.  We're not sure whether or not

 9    they're going to ask him to view those excerpts.  We think

10    an admonition from Your Honor would be useful just to let

11    the government know it's in everyone's interest for the

12    testimony to proceed smoothly and efficiently, and it would

13    be useful if the General can review, not just those

14    excerpts, but the entirety of the report and the related

15    annexes in case we need to refresh his recollection as to

16    the subjects covered therein.

17            THE COURT:  All right.  Does the government have

18    any objection to doing that?  They're just asking if he

19    would mind just taking a look at it.

20            MR. ELLIOTT:  Good morning, Your Honor.

21    Stephen Elliott on behalf of the government.

22            THE COURT:  Yeah.

23            MR. ELLIOTT:  We've agreed to make the admissible

24    parts of his report available to him during the course --

25    next week.  We don't believe it's necessary for him to see
```

27

1  the entirety of the report since Your Honor has only

2  explicitly said that some parts of the report are admissible

3  at trial.

4          THE COURT:  I agree.  All of the admissible

5  parts -- because if they're not admissible, he's not going

6  to be talking about them.  The ones that we found are

7  admissible, please ask him to review them.

8          MR. ELLIOTT:  Thank you, Your Honor.

9          THE COURT:  Very good.

10         MR. FARIDI:  And just a few more issues, Your

11  Honor, and I'll be quick on these.

12         How long will Your Honor allow for closing

13  statements?

14         THE COURT:  Oh, it's going to depend on how well

15  you've done during the trial.

16         MR. FARIDI:  Okay.

17         THE COURT:  I'm not going to tell you that now.

18         MR. FARIDI:  From having read through some of your

19  prior trial transcripts, our understanding is that you allow

20  plaintiffs to begin the closing and then the defendants

21  close and then the plaintiffs get a rebuttal?

22         THE COURT:  Yes, of course.

23         MR. FARIDI:  Okay.  Fact witnesses are not allowed

24  in the courtroom, but experts are?

25         THE COURT:  Not necessarily.  Is there an

                                                            28

1    objection to experts being in the courtroom?

2              MR. O'CONNOR:  This is the first I've heard of the

3    request.  I mean, I think I would want to know who they want

4    to --

5              THE COURT:  I think, frankly, if I were a trial

6    lawyer, I would never let an expert be in, because I think

7    it undercuts their credibility.  I think they come in much

8    purer, if they can say I haven't heard a bit of the

9    testimony and here's my opinion.  So if there's an

10   objection, I will not let the expert be in the courtroom.

11             So the rule on the witnesses, which we'll impose

12   now so everybody understands it, is that once a witness has

13   testified, that witness cannot be re-called if you haven't

14   reserved that right.  All right.

15             So once they are excused, they're excused.  They

16   can stay in court and watch the proceedings or they can

17   leave.  I always tell them not to discuss their testimony

18   with any witness who has not yet testified.

19             We have had an issue come up in another case with

20   a person not from the regular media, but a stringer, who,

21   during a break while a witness was still on the -- not on

22   the stand, but the witness was coming back for cross or

23   redirect or whatever, started interviewing the witness.

24   That is a problem.  So I want to make sure that you always

25   instruct your witnesses that they are not to be discussing

                                                            29

```
 1    anything about their testimony with anybody outside of the
 2    courtroom until they're finished, all right, so that we
 3    don't have that problem arise.  I don't think -- the regular
 4    media who cover our trials know, they would never do that.
 5    This is somebody who's not a regular media person.
 6              And so I'm going to say that unless there's an
 7    agreement that a particular expert can be in the courtroom
 8    for the trial, my rule would be they're not different from
 9    any other witness; all right?
10              MR. FARIDI:  We will so instruct our witnesses,
11    Your Honor.
12              As to RFAs, request for admissions, we served some
13    requests for admissions on CACI; CACI responded.  Some
14    judges have the practice of requiring that the request for
15    admissions must be presented to the jury through a
16    sponsoring witness.  Most judges, my understanding is, allow
17    the requests and the admissions to be read to the jury
18    without a sponsoring witness.
19              Does Your Honor have a preference?
20              THE COURT:  What's CACI's position on that?
21              MR. O'CONNOR:  We don't care, Your Honor.  I mean,
22    as long as it's -- if it's read by a human, it's good enough
23    for me.
24              THE COURT:  All right.  I will probably -- I might
25    have my law clerk read it in so it's neutral.
```

30

```
1              MR. FARIDI:  Okay.

2              THE COURT:  And I'll explain to the jury what a

3   request for admission is.

4              MR. FARIDI:  And relatedly, we have stipulated to

5   some basic facts with CACI.  I assume Your Honor's law clerk

6   will read that stipulation to the jury as well?

7              THE COURT:  No.  What you can do is put them in

8   writing, and we'll give them to the jury as an exhibit.  And

9   then you can either orally -- you know, I don't mind counsel

10  reading them in, but they go in as an exhibit.  It's a

11  cleaner way of having it in the record.

12             MR. FARIDI:  The stipulation that we have agreed

13  to has about 22 or 23 paragraphs, I think, and it covers

14  five or six different subject areas.  Our preference is,

15  Your Honor, to read parts of the stipulation that are

16  relevant to the testimony of a particular witness.

17             THE COURT:  Yeah, that's fine.  We can do it that

18  way.

19             MR. FARIDI:  Okay.  And there's a few depositions

20  that were not videotaped, and there's no audio recording as

21  well.  And my understanding is, Your Honor, your preference

22  is that the lawyer from the side who was doing the

23  questioning will read the question, and your law clerk will

24  read the answer?

25             THE COURT:  Correct.  Right.
```

31

```
 1              MR. FARIDI:  And we'll work that out with CACI as

 2      to which witnesses that affects.

 3              THE COURT:  Now, you must make sure that you have

 4      a clearly marked copy of that transcript for, obviously, my

 5      law clerk.  I want one for my court reporter, and I want

 6      one.  All right.  So you'll have three still.  Magic

 7      number is three.

 8              MR. FARIDI:  Yes.

 9              THE COURT:  Okay.

10              MR. FARIDI:  And Mr. Azmy has a couple of legal

11      issues to take up.

12              THE COURT:  All right.

13              MR. FARIDI:  And I just want to update Your Honor,

14      during the last conference, Your Honor asked the parties to

15      consider a stipulation on the definitions of torture and

16      cruel, inhumane and degrading treatment.  If Your Honor will

17      remember, we proffered an expert witness on the issue.  We

18      did propose a stipulation to CACI on that subject, but we

19      were not able to reach an agreement on it.

20              THE COURT:  All right.  Then we'll see what we

21      see, how long that goes in.  All right.

22              MR. AZMY:  Briefly, but two substantive issues,

23      Your Honor.

24              First, we, the plaintiffs, would like to have the

25      plaintiffs talk about their occupations, and Your Honor has
```

                                                              32

```
 1    ruled that we're not allowed to go into the reasons for
 2    their detention, but I think it's relevant for just
 3    humanizing the plaintiffs, some basic background knowledge,
 4    and we want to make sure that we'll be able to solicit that
 5    basic information without a suggestion that we've opened the
 6    door to the ultimate reason for their detention.  And then
 7    with -- in particular with Mr. Al-Ejaili, he's the Al
 8    Jazeera reporter.  So we would also like evidence of his
 9    occupation for background information.  It's also
10    relevant -- to some extent it's part and parcel of the abuse
11    he suffered.  For example, he was sort of tormented the
12    first night by people, he says, singing happy birthday Al
13    Jazeera.  And it's somewhat relevant, even the damages,
14    because -- for his injury because he's developed an anxiety
15    that makes it hard for him to appear before camera.  He used
16    to be sort of an on-camera journalist.  So that's one issue
17    we would like to clarify before we, you know, have any
18    problems at trial.
19            THE COURT:  Let me hear the other -- wait.  Let me
20    hear the other issue so I can get a response at one time.
21            MR. AZMY:  Okay.  The other issue is a legal
22    question.
23            We discerned from CACI's proposed voir dire and
24    jury instructions that they would like to put the question
25    of the Court's subject matter jurisdiction, whether or not
```

                                                                    33

     1    there's a permissible domestic application of the ATS to the

     2    jury.

     3            THE COURT:  That's a legal question.  The jury

     4    doesn't resolve legal questions.

     5            MR. AZMY:  Okay.  We just wanted clarification

     6    about that, Your Honor.  Thank you.

     7            THE COURT:  Let me hear defense.

     8            MR. O'CONNOR:  Your Honor, the issue of

     9    plaintiffs' backgrounds came up because the Court granted a

    10    motion in limine that basically requires us not to say

    11    anything that would be -- that could be taken negatively

    12    about the plaintiffs, like that one of them had a cache of

    13    IEDs and rocket launchers and the like.  And the Court's --

    14    the Court's point was, it doesn't matter because it doesn't

    15    make you any more or less deserving of torture, CIDT or war

    16    crimes.

    17            THE COURT:  Right.

    18            MR. O'CONNOR:  And I agree with that.  But being a

    19    math teacher doesn't make you any more or less -- and our

    20    point was, we're going to humanize the plaintiffs with half

    21    a story.

    22            Now, Mr. Al-Ejaili's status as an Al Jazeera

    23    reporter, no issue.  He was called Al Jazeera at the --

    24    there's an independent reason why that's relevant.

    25    Mr. Al Shimari's service in the Iraq Army during the First

                                                                    34

```
1    Gulf War, no problem, because he suffered injuries, and that
2    would explain some of the injuries that he has on his body.
3          But, you know, the fact that Mr. Al Shimari says
4    he's a math teacher, and Mr. Al-Zuba'e says he runs a family
5    business are not -- if we're going to humanize, we should
6    tell the whole story about the plaintiffs, not half of the
7    story.
8          THE COURT:  Well, I don't agree with you on that.
9          I mean, a very brief amount of humanizing the
10   plaintiffs is fine.  You can't dehumanize -- even if they
11   were -- even if they were terrorists, it doesn't excuse the
12   conduct that's alleged here.  So it doesn't help you one bit
13   to get into any of that.  And, in fact, I think it will come
14   back to haunt you.  So, no, I'm going to allow a little bit
15   of background, okay, just a little bit, and I'm not changing
16   my view that you don't go into that area.  Thank you.
17         MR. O'CONNOR:  Understood, Your Honor.  I mean,
18   our view -- we are -- I mean, if they open the door, we will
19   revisit that with the Court.
20         THE COURT:  Well, no you won't, because I ruled on
21   it.  Please don't make me have to say in front of the jury,
22   Mr. O'Connor, you've already raised this issue, and I'm
23   denying it.  All right.  Okay.
24         All right.  So I've taken care of that.  And the
25   jury is not going to be answering any legal questions.
```

35

```
1     Their job is to find the facts, and it's my job to give them
2     the law, and hopefully you all will give me the legal
3     instructions that properly state the law.  All right.
4               All right.  Any other trial-related issues?
5               MR. FARIDI:  No, Your Honor.
6               THE COURT:  All right.
7               MR. O'CONNOR:  Just one, Your Honor.
8               THE COURT:  Yes.
9               MR. O'CONNOR:  Some of plaintiffs' counsel have
10    referred to themselves in court as plaintiffs' pro bono
11    counsel.  I don't think that's --
12              THE COURT:  That's not appropriate.
13              MR. O'CONNOR:  I don't think that's appropriate.
14    Thank you.
15              THE COURT:  Yeah.  And also, I strongly suggest --
16    because I saw this coming up in the depositions that we did
17    in court -- in chambers, there is nothing wrong or unethical
18    about witnesses meeting with counsel before they testify.
19    If that question starts to be asked all the time, I'm going
20    to give the jury an instruction that there's absolutely --
21    you know, it's a very normal practice, in fact, the Court
22    expects lawyers to talk with the witnesses before they
23    testify to make sure the witness, you know, understands how
24    things go.
25              So, I mean, watch out for that, because I saw it,
```

36

```
 1   I think, in every one of the depositions and in some of the
 2   additional designations you want to bring those types of
 3   questions in, and they don't do anything to me, and I think
 4   it sometimes is an attempt to mislead the jury.  Okay.
 5           All right.  Now, we still have a couple of odds
 6   and ends to take care of, because I've taken care of the
 7   motion to reconsider, but there are two other motions that
 8   I've looked at with some care, and I want to give you the
 9   ruling now so it doesn't mess things up.
10           The second motion I have -- so I have denied
11   Motion 1487, which was the motion for reconsideration.
12           CACI has also filed a motion to strike the late
13   designations of -- from the depositions.  And that's Motion
14   1531.  And I'm not going to hear -- I'm not going to hear
15   argument on that because I've looked -- we spent a lot of
16   time going over this case going back to 2018 and looking at
17   the orders that were in place there.
18           Because this case was originally set to go to
19   trial on April 23rd of 2019, and about three weeks before
20   that, an appeal was taken, and I stayed the case.  But you
21   were right on the verge of trial once before, and, at that
22   point, and it's my view right now, that whatever portions of
23   the depositions that had been created up until that point,
24   the designations are in.  Those are the designations.  And
25   to try to now take those same depositions and be adding all
```

 1    sorts of new designations, it's too late.  So I agree with

 2    CACI that those designations are time-barred, and so I'm

 3    granting that motion in its totality.

 4          That leaves, as the third motion, the plaintiffs'

 5    motion to admit limited portions of the Frederick 2013

 6    deposition.  And, again, the whole reason why I spent I

 7    think at least ten hours sitting through four de bene esse

 8    depositions, and I made it as clear as I possibly could, I

 9    thought, to everybody was, because these witnesses would not

10    be available to testify, and in one or two cases they had

11    old depositions that were sort of messy, I was going to give

12    the parties an opportunity to do a de bene esse deposition.

13    That deposition was to be exactly like what would happen if

14    that person were in court.  And that's the whole reason why

15    I said I would take my time and sit and be the judge.  And

16    you made objections, and I ruled on the objections so that

17    that testimony would come in in a nice, clean, efficient

18    fashion.

19          And so that was the opportunity the plaintiffs had

20    to get the record straight.  And we had real problems

21    refreshing memories, and I understand the frustration of

22    counsel.  Nevertheless, I ruled then, and I'm ruling now,

23    that you can't be bringing in extraneous new matters such as

24    the earlier depositions of these -- of Frederick.  He should

25    have been asked specifically during the deposition, the de

                                                            38

```
 1   bene esse deposition, about that.

 2           And in terms of what I did in terms of not

 3   allowing the CID -- and I thought I made the record clear

 4   during his deposition, but I'll say it again.  In order for

 5   an interview with a law enforcement agency -- which is what

 6   the CID interview was -- in order for that to come in, if

 7   that were -- if everybody were live in trial, we would get

 8   all of the background information out first so that the

 9   Court could determine whether that was a voluntary and

10   knowing statement and if it's reliable.  And, yes, it is

11   true that he initialed every page of that 113- -- or

12   whatever it was -- page transcript, and it's of more than

13   one interview, as I recall it.  I think he was over several

14   days.

15           But, as I said before, he was facing court martial

16   charges or potential court martial charges.  I don't know if

17   he had any kind of plea agreement with the government.  I

18   don't know if he had any incentives that had been offered to

19   him.  He began to say something at the end of the deposition

20   about he had been out in the battlefield, I don't know

21   whether he was fatigued.  We don't know any of the -- and

22   then these questions could have been asked, and they were

23   not.  And so I'm not rethinking or revisiting the issues

24   that were raised during that deposition.  So the plaintiffs'

25   motion as to Frederick is denied.  All right.
```

39

```
1              And so we're going to go forward to this case --
2    this trial.  I think it will be, hopefully, well tried.  I
3    have good lawyers on both sides, but I want to make sure
4    everybody knows, we're not going to waste the jury's time,
5    and so we'll move it very efficiently.  All right.
6              So you have the time frames that you need to work
7    on with Mr. Bachman about when to come back to court next
8    week to make sure the technology is all 100 percent ready to
9    go.  And if -- I'm not inviting it, but if there are
10   last-minute issues, we'll hear them on Friday.  So notice
11   them for next Friday if there are any last-minute pretrial
12   matters that have to be resolved.  All right.
13             Anything further on this case?
14             MR. O'CONNOR:  Not from CACI, Your Honor.  Thank
15   you.
16             THE COURT:  All right.  How about from the
17   plaintiff?
18             MR. FARIDI:  Nothing further, Your Honor.
19             THE COURT:  All right.  And, Counsel, there are so
20   many of you -- and this works for both sides -- when you're
21   questioning a witness, until the jury gets used to who you
22   are, it's probably a nice thing to just say your name again
23   just so they can keep track of things.  We'll also probably
24   have two different court reporters here, and it helps the
25   court reporter know who's speaking as well.
```

                                                                  40

```
 1              We'll recess --

 2          MR. AZMY:  I'm so sorry, Your Honor.  One very

 3   small logistical matter.

 4              We understood from -- Mr. Al-Ejaili will be here,

 5   and we're hoping to have contemporaneous translation.  We

 6   understand you don't like whispering.  Should we be getting

 7   ear pieces?  Does the Court --

 8          THE COURT:  Whatever you do, if I can hear

 9   (indicating) like that, it's not going to work.  All right.

10              So where are you going to have him sit?

11          MR. AZMY:  I think just here on the other -- I

12   think for the opening, we'd like him to be at counsel table,

13   but thereafter -- and then thereafter, on the other side of

14   the bar.  Or we could put him maybe in the back, but I did

15   what I thought was a very soft whisper and the court

16   security officer could hear me.

17          THE COURT:  Yeah.  And we can't -- also, it's

18   distracting for counsel.  Frankly, it's distracting for you

19   all as well.

20          MR. AZMY:  Understood.

21          THE COURT:  Our interpreters usually are able to

22   do that with headsets and whatever, but your people need to

23   be able to do that.

24              Do you have -- how many interpreters do you have?

25          MR. AZMY:  We have two.
```
                                                              41

```
 1              THE COURT:  Because they often have to --
 2              MR. AZMY:  Exactly.
 3              THE COURT:  Yeah.
 4              MR. AZMY:  Where would they sit relative to the
 5    witness?
 6              THE COURT:  We'll get them -- well, usually they
 7    stand.  All right.  And we'll have to see how that works.
 8              I thought he spoke English?
 9              MR. AZMY:  He understands, Your Honor; he couldn't
10    really testify in English.
11              THE COURT:  But will he need a translator for the
12    witnesses?  I mean, can't he understand English?
13              MR. AZMY:  Not all that well.  I mean, we're
14    primarily, right now, just sort of most interested in his
15    trial testimony, where the translator would be, and we'll
16    figure out what to do when he's not actually on the stand so
17    as it's not disruptive to the Court.
18              THE COURT:  I hadn't thought that we were going to
19    to have a translator here the whole time.  They have to have
20    the equipment so that they're quiet; all right?
21              MR. AZMY:  Yes.  Understood, Your Honor.  And then
22    we'll -- you'll think about where they'll stand when he's
23    actually testifying?
24              THE COURT:  When he is testifying, normally they
25    would be, I believe, to the far side standing there, yeah.
```
42

```
 1              MR. AZMY:  And would they need equipment for that,
 2    or that's just into the record?
 3              THE COURT:  Well, he's speaking in Arabic, and
 4    we're waiting on the English to come from the interpreter.
 5    So the interpreter has got to have a sufficiently loud voice
 6    that we can hear him or her.  Yeah.
 7              MR. AZMY:  Thank you.
 8              THE COURT:  Anything further?  We'll recess court
 9    for the day.
10              (Proceedings adjourned at 11:54 a.m.)
11              ----------------------------------
12    I certify that the foregoing is a true and accurate
13    transcription of my stenographic notes.
14
15                              _____
16                              Stephanie M. Austin, RPR, CRR
17
18
19
20
21
22
23
24
25
                                                                  43
```