UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI, *et al.*, Plaintiffs, | Case No. 1:08-cv-827 |
| v. | Alexandria, Virginia<br>April 25, 2024<br>4:03 p.m. |
| CACI PREMIER TECHNOLOGY, INC., Defendant. | Volume VIII<br>Pages 1 - 15 |

TRANSCRIPT OF TRIAL

BEFORE THE HONORABLE LEONIE M. BRINKEMA

UNITED STATES DISTRICT COURT JUDGE

AND A JURY

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

APPEARANCES:

FOR THE PLAINTIFFS:

BAHER AZMY, ESQUIRE
THE CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
(212) 614-6464

MUHAMMAD FARIDI, ESQUIRE
MICHAEL BUCHANAN, ESQUIRE
BONITA ROBINSON, ESQUIRE
ANDREW HADDAD, ESQUIRE
MICHAEL FISHER, ESQUIRE
THOMAS KICAK, ESQUIRE
SCOTT KIM, ESQUIRE
ALEXANDRA MAHLER-HAUG, ESQUIRE
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

FOR THE DEFENDANT:

JOHN O'CONNOR, JR., ESQUIRE
LINDA BAILEY, ESQUIRE
JOSEPH MCCLURE, ESQUIRE
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W., 7th Floor
Washington, D.C. 20036-1795
(202) 429-3000

NINA J. GINSBERG, ESQUIRE
DIMUROGINSBERG PC
1101 King Street, Suite 610
Alexandria, Virginia 22314
(703) 684-4333

APPEARANCES CONTINUED:

FOR THE UNITED STATES OF AMERICA:

REBECCA LEVENSON, ESQUIRE
OFFICE OF THE UNITED STATES ATTORNEY
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

STEPHEN ELLIOTT, ESQUIRE
JASON LYNCH, ESQUIRE
UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION FEDERAL PROGRAMS BRANCH
1100 L Street, N.W.
Washington, D.C. 20044
(202) 598-0905

P R O C E E D I N G S

(The jury is not present.)

THE COURT: All right. So we spent some time going over *Alvarez*, and there's an unpublished Fourth Circuit opinion two years before it. Judge Heytens has taken language or thoughts from that as well. I want you to take a minute and look at the proposed Supplementary Instruction No. 1, which I intend to give to the jury orally and in writing.

Are you ready?

MR. AZMY: Your Honor, we're concerned because we think that this supplementary instruction doesn't cure what we have perceived all along as a flaw in the borrowed servant instruction, which we think operates at too high a level of generality and doesn't reflect the principle that an employee can be in service of two employers at the same time.

THE COURT: The first sentence says, "A person can be in the general employ of one company while at the same time being the employee of another company." In other words, an employee can wear two hats at the same time. I mean, I can say that.

MR. AZMY: We're looking in particular at 693 in the *Estate of Alvarez*, "It is possible for the individual to be the agent of two principals at the

same time," which cites the Supreme Court case *Town & Country*: "A person may be the servant of two masters."

THE COURT: Right. You have to read the whole opinion. It goes on to say in terms of determining liability, you have to determine who is actually controlling the work of the employee. I'm adding -- because I think it's clear within the opinion -- "the work of the employee when the misconduct occurs," because that's the only relevant time period.

MR. AZMY: Understood. But I think the flip side of this dual master instruction, which comes from the other instructions as well, is that any relinquishment has to be complete and total. I think that's where they're confused insofar as they're in a binary when there is the possibility of overlapping or, as you said, two hats.

THE COURT: I do get it. You've made your argument. But if it were a complete relinquishment, a complete relinquishment, then effectively they wouldn't be an employee in my view.

MR. AZMY: Yeah.

THE COURT: I mean, I understand your concern. We may be wrong, but as I read *Alvarez*, I don't think it goes as far as you indicate. It still

is a factual determination. The jury has to determine whether or not CACI, in fact, abandoned control over the work that was being performed at Abu Ghraib. That's a factual issue this jury has to decide.

MR. AZMY: Understood. But I think the way that question is framed is in the form of a binary when there can be two levels of control. And in terms of liability, where there is overlapping control but defense does not operate. And I think that's what's critical, and I think that's the source of their confusion.

You know, at some level, the instruction -- the original instruction might capture, you know, almost any government contractor to the borrowed servant defense so far as they're performing work by interrogators and the special employer has the power of control. And so -- and in most situations, there will be overlapping control and the borrowed servant doctrine would not apply. So we think that's, you know, a very important principle and may be the source of their confusion.

THE COURT: All right. Let me --

Was there something else you wanted to add?

MR. AZMY: Put another way, I think CACI does not need to abandon all control to the military.

Thank you, Your Honor.

THE COURT: All right. Mr. O'Connor.

MR. O'CONNOR: Your Honor, first, starting with Mr. Azmy's comments, I believe the Fourth Circuit's decision in *Huff* disposes of that. Because in *Huff*, the loaning company actually had a supervisor on site, and the court said, Well, when the injury occurred here, he wasn't on site and his developer was supervised exactly the same as the borrower and employer's welders were supervised.

So I don't think -- I think the Court is right on that what matters is, for this specific act at issue, who was in control.

We do think that -- on a closer reading of *Estate of Alvarez*, we don't think this is actually a two-part test. As we read *Alvarez*, it says, "When determining whether such a transfer has occurred, we must inquire whose is the work being performed; this question is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work."

So we actually think it's one question that's most usually answered by who has the power to direct and control.

We also think it would be useful if the Court

were to identify some of the *indicia* of a --

THE COURT: No, I'm not going to start getting into specifics. No, I don't think that's appropriate. If there's another question and they still are terribly confused, maybe we'll need to be more concrete.

But you're suggesting then towards the end of the middle paragraph -- in other words, when an employee has been lent by one employer to perform the services of another employer, you have to consider who has the power to control the employee's work at the time?

MR. O'CONNOR: I think power to control is fine. Our point was it's not you have to decide whose was the work and then who was directing and controlling. Those are one question. That's usually answered by who was directing and controlling.

THE COURT: All right. I think it's sufficiently clear.

MR. O'CONNOR: Your Honor, if I could just for the record state the last -- we would take some of the factors that were identified by the Fourth Circuit in *Huff* and add those to the instruction about things that the Court noted are indicative of a loaned employee. I understand the Court's ruling, but I

wanted to make sure we said what we wanted.

THE COURT: All right. Now, the first question: "Are the jury's instructions up to our interpretations?" I'm going to say no. You have to follow the instructions. If they're not clear, then you need to tell me what you don't understand and we'll clarify them for you. All right.

MR. O'CONNOR: CACI completely agrees with that, Your Honor.

THE COURT: I assume the plaintiff agrees with that -- or not?

MR. AZMY: Yes, Your Honor.

THE COURT: Yes.

Okay. Let's bring them in because they want to go to their break.

THE COURT SECURITY OFFICER: Yes, Judge.

MR. AZMY: Your Honor, can we clarify? Are you going to adjust the instructions at all?

THE COURT: I'm sorry?

MR. AZMY: Are you going to adjust the instructions at all based on this colloquy?

THE COURT: I'm going to give them this. I'm going to read this instruction that I gave you a copy of, and I'm going to give them eight copies of it so they've got it to add to their set of instructions.

MR. AZMY: Your Honor, you had mentioned maybe a reference to two hats.

THE COURT: Oh, you wanted me to add that? I will do that verbally. I think it's there in the first sentence. It says, "A person can be in the general employ of one company while at the same time being the employee of another company." In other words, an employee can wear two hats at the same time. That's right, but that's not the issue. The issue is who controls them at the time. I mean, it's very simple language. Who is in control of the employee? Who is directing what they are doing at the time they commit the wrongful act?

MR. O'CONNOR: Your Honor, we object to the proposed addition. We think it creates more confusion than it would solve because the Court has already made the point. You can be in the general employ and specific employ, but the real question -- from there the real question is for the act involved, who was controlling? And I think to say, well, they can wear two hats is -- it's a point the Court has already made in legalistic terms, and I think it is misleading to overemphasize that point as opposed to what the actual test is, which is at the time of the alleged misconduct, who is directing and controlling their

activities.

THE COURT: All right. I'll still say two hats to make the plaintiffs happy. I think, frankly, the next sentence is so clear. I mean, it says "must." All right. You must find who controlled the work of the employee when the alleged misconduct occurred, the work of the employee.

MR. O'CONNOR: We understand the Court's ruling, Your Honor.

THE COURT: All right. Let's go. Let's bring the jury in.

THE COURT SECURITY OFFICER: Yes, Judge.

(The jury enters at 4:12 p.m.)

THE COURT: All right. Ladies and gentlemen, again, you have impressed us with the questions that you proposed. So let me try to answer them for you.

The first question: Are the jury instructions up to your interpretations?

No. I'm giving you the law on the case. So if you're not clear about what an instruction means, then you should do exactly what you've done, and that is ask a question or say, "We don't understand this sentence" or "We don't understand what this means." We will do the best we can to explain it to you. All right.

Now, the second question you asked: We are continuing to interpret the borrowed servant doctrine differently. Can we have more clarification on the doctrine?

So the reason we took a little extra time is I have written an instruction for you. I am going to give you eight sets of this so that you can look at it. This is simply a supplement to the rest of the instructions that you've got.

"A person can be in the general employ of one company while at the same time being the employee of another company."

In other words, an employee can wear two hats. All right.

"In determining the liability of a company for acts performed by one of its employees who is also working for another company, you must consider who controlled the work of the employee when the alleged misconduct occurred."

"In this case, the interrogators, while employees of CACI, were performing work on a government contract with the United States military. Therefore, the issue you must determine is under whose direction and control were the interrogators when they committed the alleged misconduct. In other words, when an

employee has been lent by one employer to perform the services of another employer, you have to consider who was controlling the employee's work at the time of the alleged misconduct."

"Again, CACI has the burden to prove the borrowed servant doctrine by a preponderance of the evidence. If you find that CACI has satisfied both of the elements as described in Jury Instruction No. 19 by a preponderance of the evidence, then CACI is not liable for the conduct of its interrogators. On the other hand, if CACI has not proven both elements by a preponderance of the evidence, this defense does not prevail."

Did that clarify for some of you at least?

(Gesturing affirmatively.)

THE COURT: So I think now it's your break time. I'm sorry we're sort of off schedule, but we're going to have eight copies of this delivered to you. So you will have it with the other instructions.

All right. Again, we appreciate -- don't be shy about asking questions, all right, if you've got them. We want to make sure you understand the case.

We'll await the decision of the jury.

We're in recess.

(Recess from 4:16 p.m. until 5:46 p.m.)

(The jury is not present.)

THE COURT: All right. The jury wants to go home, and they want to work a half a day tomorrow.

So let's bring them in.

THE COURT SECURITY OFFICER: Yes, Judge.

(The jury enters at 5:46 p.m.)

THE COURT: All right. Ladies and gentlemen, I know you want to go home now, and that's fine. The jurors get to control their own schedule to a reasonable degree. That's fine.

I understand you want to work a half a day tomorrow, and that's fine. In case you do not reach a decision tomorrow, I want to make sure: Are you-all available for Monday?

(Gesturing affirmatively.)

THE COURT: All right. Again, folks, I know this is a difficult job. So when you see things in the media about judges, you're judges right now. That is your job. So please be very careful. Again, keep following my instructions, think about the case. Get a good night's sleep, refresh, and come back tomorrow. Just keep following those instructions.

All right. So we'll let you go home for tonight. We'll see you tomorrow.

I have other matters in court at 10:00. We

will break into those to accommodate any questions or issues that you have.

All right. So we'll say good night to the jury and see you-all back here at 9:30 tomorrow morning.

----------------------------------

Time: 5:48 p.m.

I certify that the foregoing is a true and accurate transcription of my stenographic notes.

/s/

Rhonda F. Montgomery, CCR, RPR