```
                        UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF VIRGINIA
                             ALEXANDRIA DIVISION

---------------------------x
SUHAIL NAJIM ABDULLAH AL    :   Civil Action No.:
SHIMARI, et al.,            :   1:08-cv-827
          Plaintiffs,       :
     versus                 :   Monday, April 29, 2024
                            :   Alexandria, Virginia
CACI PREMIER TECHNOLOGY,    :   Volume X
INC.,                       :   Pages 1-16
          Defendant.        :
---------------------------x
```

The above-entitled jury trial was heard before the Honorable Leonie M. Brinkema, United States District Judge. This proceeding commenced at 9:40 a.m.

A P P E A R A N C E S:

FOR THE PLAINTIFFS:   BAHER AZMY, ESQUIRE
                      THE CENTER FOR CONSTITUTIONAL RIGHTS
                      666 Broadway
                      7th Floor
                      New York, New York  10012
                      (212) 614-6464

                      MUHAMMAD FARIDI, ESQUIRE
                      MICHAEL BUCHANAN, ESQUIRE
                      BONITA ROBINSON, ESQUIRE
                      ANDREW HADDAD, ESQUIRE
                      MICHAEL FISHER, ESQUIRE
                      THOMAS KICAK, ESQUIRE
                      SCOTT KIM, ESQUIRE
                      ALEXANDRA MAHLER-HAUG, ESQUIRE
                      PATTERSON BELKNAP WEBB & TYLER LLP
                      1133 Avenue of the Americas
                      New York, New York  10036
                      (212) 336-2000

```
 1                     A P P E A R A N C E S:

 2   FOR THE DEFENDANT:      JOHN O'CONNOR, JR., ESQUIRE
                             LINDA BAILEY, ESQUIRE
 3                           JOSEPH MCCLURE, ESQUIRE
                             STEPTOE & JOHNSON LLP
 4                           1330 Connecticut Avenue, NW
                             7th Floor
 5                           Washington, D.C.  20036
                             (202) 429-3000
 6
                             NINA GINSBERG, ESQUIRE
 7                           DIMUROGINSBERG PC
                             1101 King Street
 8                           Suite 610
                             Alexandria, Virginia  22314
 9                           (703) 684-4333

10   FOR THE UNITED          REBECCA LEVENSON, ESQUIRE
     STATES:                 OFFICE OF THE UNITED STATES ATTORNEY
11                           2100 Jamieson Avenue
                             Alexandria, Virginia  22314
12                           (703) 299-3700

13                           STEPHEN ELLIOTT, ESQUIRE
                             JASON LYNCH, ESQUIRE
14                           ELIZABETH TULIS, ESQUIRE
                             UNITED STATES DEPARTMENT OF JUSTICE
15                           CIVIL DIVISION FEDERAL PROGRAMS BRANCH
                             1100 L Street, NW
16                           Washington, D.C.  20044
                             (202) 598-0905
17
     COURT REPORTER:         STEPHANIE M. AUSTIN, RPR, CRR
18                           Official Court Reporter
                             United States District Court
19                           401 Courthouse Square
                             Alexandria, Virginia  22314
20                           (571) 298-1649
                             S.AustinReporting@gmail.com
21

22         COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

23

24

25
                                                                    2
```

```
1                    P R O C E E D I N G S
2              THE DEPUTY CLERK:  Civil Action
3    Number 1:08-cv-827, Suhail Najim Abdullah Al Shimari, et al.
4    versus CACI Premier Technology, Inc.
5              Will counsel please note their appearance for the
6    record, beginning with the plaintiff.
7              MR. FARIDI:  Good morning, Your Honor.
8    Muhammad Faridi on behalf of the plaintiffs.  I'm joined by
9    my colleagues, Baher Azmy and Alex Mahler-Haug.
10             THE COURT:  Good morning.
11             MR. O'CONNOR:  Good morning, Your Honor.
12   John O'Connor for CACI.  I'm joined by my co-counsel,
13   Linda Bailey, Nina Ginsberg and Joseph McClure.
14             THE COURT:  Good morning.
15             All right.  As you know, at the end of court on
16   Friday just as they were leaving -- so we were actually out
17   of session at that point -- the jury handed us a note:  Is
18   there any way we could get more evidence binders?  And I
19   thought that was unclear whether they meant the binder
20   clips, because they had asked for that previously, whether
21   they're looking for what I would call notebooks, you know,
22   in which they could put -- or whether they want the exhibits
23   themselves.  So we emailed you over the weekend, requested
24   that each side bring back to court one set of just the
25   exhibits that have been entered; however, it occurs to me
```

3

1  that I'm now concerned about the record for the Court of
2  Appeals.  It has to be -- you know, the integrity of that
3  record has to be maintained.
4          And so I think the better approach is -- first of
5  all, I'm going to have the jury come in.  I'm going to ask
6  them what this meant.  If, in fact, they want the
7  evidence -- rather than just giving them two separate sets,
8  because then I can see it getting mixed up, I don't know
9  what they're doing with it -- I'm going to ask them to
10 indicate which exhibits they want to see, we will then get
11 the copies from you, put a big copy stamp on it so that when
12 we go to sort things out so the Court of Appeals gets the
13 record as it was properly entered into evidence.
14         Is there anybody who has an objection to
15 proceeding that way?
16         MR. FARIDI:  None from our side, Your Honor.
17         MR. O'CONNOR:  No, Your Honor.
18         And just for the Court's information, we exchanged
19 this morning and looked at each other's binders, and they're
20 accurate.  The PII is all gone, and so there's no issues
21 with it.
22         THE COURT:  Great.  Okay.  So that will take care
23 of that.
24         Now, the second issue that came up over the
25 weekend -- and, again, I don't know whether you received

1  copies of this or not, but Rhonda Montgomery, who was the
2  court reporter who was covering the case on Friday, got an
3  email from a Jada Clarke, who's a production associate at
4  Nightline ABC News, and she would like to order the court
5  exhibit -- the court exhibit for case -- for this case.  I
6  think she meant exhibits.
7         I don't know what she wants, but we don't have --
8  the exhibits are with the jury right now; I can't make
9  copies available for this reporter at this point.
10        I'm going to direct Ms. Montgomery to write back
11 to her and tell her the exhibits are with the jury so we
12 don't have -- we can't provide -- the Court can't provide
13 them, but you all could.  And when I tried the *Moussaoui*
14 case, because there had been pressure from the media to see
15 the exhibits as they went in, the protocol that I recall we
16 had was that each side was responsible for uploading in a --
17 I can't recall whether they put them on our website or -- in
18 other words, filed them in the case itself or whether they
19 did it on their individual websites, but they made available
20 to the press that way all exhibits that had been entered
21 into evidence the previous day.
22        So I'm going to see whether or not she can wait
23 until the jury finishes its verdict.  If she's pushing hard,
24 then she'll have to get them from you all, so I'm just
25 putting you on notice to that.  All right.

5

1          Now, is there someone here from the United States?

2          MS. TULIS:  Yes, Your Honor.

3          THE COURT:  Is there an issue we have to address?

4          MS. TULIS:  No, Your Honor.  I'm just here to
5   monitor the proceedings.

6          THE COURT:  Oh, all right.  I thought for some
7   reason there was some issue.

8          All right.  Is there anything else from counsel?
9   The jury is here, so I think we'll just bring them in, and
10  I'm going to ask them what the question meant in terms of
11  the folders.

12         MR. AZMY:  Your Honor, we filed papers last night
13  related to the borrowed servant instruction.

14         THE COURT:  First of all, there's no pending
15  question about the borrowed servant, so I'm not going to sua
16  sponte assume that that's what's holding them up.  There are
17  other issues which could very well be holding them up.

18         Number two, even if that were the question, I
19  don't agree with your proposal.  I think it goes beyond what
20  the Fourth Circuit deems to be the proper formulation.  So
21  I've read it, but I already told the jury you can wear two
22  hats.  I put that -- I added that verbally.  The first
23  sentence of that instruction clearly says you can be working
24  for two people at the same time.

25         The issue is clearly from the Fourth Circuit's

1  viewpoint, and I think appropriately under my view from my
2  viewpoint as well, is whether or not the conditions of work
3  that the person is performing are who's controlling it.
4  That's the question.  And I think that's fairly articulated
5  in the instruction plus the supplement that they have.  But
6  you've made your record on that issue.
7             MR. AZMY:  I understand, Your Honor.  I just
8  think -- we understand the first sentence, I just think it
9  doesn't really tell the jury what follows from the fact that
10 you wear two hats.  I don't think they're left guessing.
11 Does that mean there's a borrowed servant doctrine in play
12 or not, and I think that, for us, might be the source of the
13 confusion.
14            THE COURT:  I think the confusion is, frankly, the
15 facts in this case are very difficult, and they cut in both
16 ways.  And so we'll have to see, if the jury does, in fact,
17 hang whether this case goes for another trial or not, we'll
18 take up after that.  Let's wait and see what the jury does
19 today.
20            Let's bring them in, please.
21            THE CSO:  Yes, Judge.
22            Rise for the jury.
23                (Jury present at 9:46 a.m.)
24            THE COURT:  Good morning, ladies and gentlemen.
25            It's a nice bright day.  I hope that the air

7

```
 1   conditioning is working.  Sometimes it over -- it overworks,
 2   so let us know if it gets too cold in there, and if it's not
 3   cold enough, also, obviously, let us know.
 4           When you left on Friday, there was a question that
 5   I actually don't understand, so I'm going to ask the
 6   foreperson to let me know what you meant by this.
 7           What do you mean by "evidence binders"?  Are you
 8   looking for more of those black clips?  Are you looking for
 9   more what I would call three-ring binders, or are you
10   looking for more exhibits?  Can you tell me what you're
11   looking for?
12           THE FOREPERSON:  We were wondering if we could
13   have more exhibits, so a second PTX and a second DTX binder,
14   if possible.
15           THE COURT:  Okay.  All right.  The answer is --
16   it's a qualified answer.  I don't want to give you a
17   complete second set of exhibits, in part because I'm worried
18   about you mixing them up with the originals, because what
19   you have now are the original exhibits, which I hope you've
20   been keeping in order.
21           If there are specific exhibits that you do want
22   another copy of, you need to write them down on a list.
23   Because you've got the index.  All right.  And what we will
24   do is, we will put a big stamp on them that says copy.  And
25   in terms of the copy, if you want to write on the copy, you
```

1  can write on it, but you'll have a second exhibit you can
2  look at, rather than just giving you all of the exhibits
3  again, because that's going to get difficult to then
4  control.  All right.
5          So feel free to then go through the index, and
6  that's a good chance for the eight of you to start talking
7  again collectively about what it is you would like to
8  refresh your memories about.  All right.  Will that help?
9          THE FOREPERSON:  Yeah.
10         THE COURT:  Because I doubt you want all the
11 exhibits back.
12         Okay.  So go ahead and give us the list.  When the
13 list comes in, Counsel, unless there is an objection to the
14 list, I don't need to come back on the bench.  I've got a
15 settlement conference I'm doing across the hall, but I'll
16 come in if there is an issue.
17         The procedure is, we'll put a big copy stamp on
18 each exhibit that goes into the jury room so that the jurors
19 can be looking at that.
20         All right.  Thank you, ladies and gentlemen.  You
21 can go back to your deliberations.  We'll get that to you as
22 soon as you give us the list.
23              (A brief recess was taken.)
24         THE COURT:  All right.  As you know, we've got a
25 question from the jury, and they've asked:  Can we have a

```
 1   definition of "scope of employment" or a bit more
 2   clarification of what that term means in this case/context?
 3           And I've given you a proposed supplementary
 4   instruction.  So let me hear the plaintiffs' sense of that.
 5           MS. MAHLER-HAUG:  Your Honor, Alex Mahler-Haug for
 6   plaintiffs.
 7           Plaintiffs submit that while the supplementary
 8   Instruction Number 2 does provide the jury with some
 9   additional useful information, it's missing some key
10   instruction that will allow the jury to sort through the
11   facts at issue in this case.
12           Plaintiffs submit that the jury should be
13   instructed that an act is within an employee's scope of
14   employment, even if that conduct is unauthorized, as long as
15   it was foreseeable in light of the employee's duties.  And
16   that's consistent with this initial instruction about the
17   conduct being the same general nature.
18           That's also a point from this Court's 2009 opinion
19   in this case, so it does reflect law of the case in that
20   instance.  And that additional instruction would also be
21   consistent with the Fourth Circuit's definition of scope of
22   employment, that an act is within the scope if it concerns a
23   matter generally entrusted to the employee by the company,
24   even if the company did not actually authorize or direct a
25   particular act.
```

10

1           So plaintiffs would submit that this Court provide
2   some additional information to the jury as part of its
3   supplementary instruction to ensure that it is complete and
4   consistent with precedent.
5           THE COURT:  Then I think what I should simply do
6   is reread Instruction 26, because that language is there.
7   That is the last sentence:  Conduct is within the scope of
8   employment if it is of the same general nature as that
9   authorized or incidental to the conduct authorized by the
10  corporation.  That's right from the Fourth Circuit.
11          MS. MAHLER-HAUG:  And plaintiffs would submit that
12  an additional explanation, which the jury has requested, is
13  that conduct that is foreseeable in light of the duties
14  entrusted to the employee by the company falls within the
15  scope of employment.  So that would provide additional
16  elaboration to give the jury a sense of how to apply the law
17  in these situations.
18          THE COURT:  All right.  Let me see from
19  Mr. O'Connor.
20          MR. O'CONNOR:  Thank you, Your Honor.
21          We think the instruction as written is appropriate
22  as far as it goes.  It pulls straight from the *Estate of*
23  *Alvarez*, which is a decision this year which the Fourth
24  Circuit established guidance regarding scope of employment.
25          The one comment that we have is consistent with

11

1  the Court's supplemental instruction on borrowed servant, we
2  think it would be appropriate to remind the jury that the
3  plaintiffs in this case have the burden of proof, as the
4  Court reminded the jury that we have the burden of proof
5  with the supplemental borrowed servant instruction.
6        THE COURT:  Okay.  Let's bring the jury in.
7        THE CSO:  Yes, Judge.
8        (Jury present at 3:55 p.m.)
9        THE COURT:  You all may have a seat.
10       Ladies and gentlemen, you've sent us the following
11 question, and, again, this shows how carefully you're
12 thinking about the case.  And the question is:  Can we have
13 a definition of "scope of employment" or a bit more
14 clarification of what that term means in this case/context?
15       I, first of all, want to remind you about Jury
16 Instruction 26, which is the general corporate
17 responsibility for employee conduct.  That's the instruction
18 that I think you have some questions about.  So just to
19 repeat what that says:  A corporation is liable under the
20 law for the acts of its employees, agents, directors and
21 officers performed within the scope of their employment.
22 Conduct is within the scope of employment if it is of the
23 same general nature as that authorized or incidental to the
24 conduct authorized by the corporation.
25       Now, I'm giving you Supplementary Instruction

12

```
 1  Number 2, which you will have with you.  We'll make some
 2  copies for you for the jury room.  Whether conduct is within
 3  the scope of employment depends upon whether the conduct is
 4  of the same general nature as that authorized or incidental
 5  to the conduct authorized by the corporation.  This is a
 6  fact-bound issue that requires a jury to look at all the
 7  facts and circumstances in evidence to determine whether the
 8  conduct of an employee, which results in injury to another,
 9  is sufficiently related in time, place and causation to the
10  defendant's duties to be attributable to the employer's
11  business.
12          For example, a real estate company hires a real
13  estate agent to show a house that is on the market.  While
14  showing a potential buyer around the house, the agent
15  injures a buyer's foot when closing a bedroom door.  The
16  agent is acting within the scope of his employment as the
17  agent of the real estate company.
18          On the other hand, if the agent showed a potential
19  buyer pornographic pictures during the walk-through causing
20  the buyer emotional distress, the agent would be acting
21  outside the scope of his employment as an agent of the real
22  estate company.  I hope that example helps you.
23          Just as a reminder, the burden is on the plaintiff
24  to establish by a preponderance of the evidence that the
25  CACI employees were acting within the scope of their
```

```
 1  employment for the corporate defendant in order for the
 2  defendant to be liable.  All right.
 3          Anything further counsel want the Court to address
 4  on this?
 5          MR. O'CONNOR:  No, Your Honor.  Thank you.
 6          MR. FARIDI:  Not at the moment, Your Honor.
 7          THE COURT:  All right.  Then, ladies and
 8  gentlemen, we'll have some copies of this additional
 9  instruction made for you, and we'll let you go back to your
10  deliberations.
11          Thank you.  We'll recess court.
12              (Jury not present at 3:58 p.m.)
13                  (A recess was taken.)
14          THE COURT:  All right.  We'll bring the jury back
15  in.  I know they've ordered lunch for tomorrow, so they're
16  planning on being here tomorrow.
17          MR. FARIDI:  Your Honor, before the jury comes
18  in --
19          THE COURT:  Yes.
20          MR. FARIDI:  -- can I just make one note?
21          THE COURT:  Yes.
22          MR. FARIDI:  During the last session, Your Honor,
23  I think you instructed the jury that plaintiffs bear the
24  burden on establishing that the conduct of the CACI
25  interrogators was within the scope of the employment.
```
14

```
 1                I want to lodge a quick objection to that.  I
 2   think our view of the law, Your Honor, is that the only
 3   thing that we need to demonstrate is that the interrogators
 4   were employed by CACI.  The burden then shifts over to CACI
 5   to establish that the acts that they perpetuated were not
 6   within the scope of the employment.  So I just wanted to
 7   make a record of that.
 8                THE COURT:  All right.  That's fine.
 9                Let's bring the jury in.
10                THE CSO:  Yes, Judge.
11                     (Jury present at 6:00 p.m.)
12                THE COURT:  All right.  Ladies and gentlemen, I
13   know it's been another long day for your all, and you've
14   ordered lunch for tomorrow, so you're coming back tomorrow.
15   And I think we're able to accommodate your lunch request.
16                Again, I want to commend you for working so
17   diligently on this case, and, again, you've asked very good
18   questions.  I have a full docket in court tomorrow morning,
19   so there may be a slightly longer delay in answering any of
20   your questions, but we will get them answered as quickly as
21   possible.
22                Please remember my standard cautions to avoid any
23   coverage of this case.  There is definitely some media
24   coverage, so please avoid it.  Don't discuss the case with
25   anyone, don't have any private conversations with each
```

15

```
 1  other.  You've been behaving beautifully as jurors, so just
 2  keep up the good work.  It's warm out there, but at least
 3  bright and sunny, so get yourselves a break, and we'll see
 4  you back here tomorrow morning.  I assume the same schedule
 5  now, the 9:30 start time for tomorrow?
 6          THE FOREPERSON:  Yes.  9:30 start time tomorrow.
 7          THE COURT:  Okay.  And lunch at 1:00 and then sort
 8  of the mid-morning and mid-afternoon breaks that you've been
 9  doing?  Great.
10          All right.  Folks, we'll let you go home for the
11  evening, and we'll recess for the day.  We will be in court
12  tomorrow morning at 9:00 on unrelated matters just for
13  counsels' purposes.
14          (Proceedings adjourned at 6:03 p.m.)
15          ----------------------------------
16  I certify that the foregoing is a true and accurate
17  transcription of my stenographic notes.
18
19                              _____
20                              Stephanie M. Austin, RPR, CRR
```