1                UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF VIRGINIA
2                    ALEXANDRIA DIVISION

3    --------------------------x
     SUHAIL NAJIM ABDULLAH AL    :    Civil Action No.:
4    SHIMARI, et al.,            :    1:08-cv-827
                 Plaintiffs,     :
5         versus                 :    Wednesday, May 1, 2024
                                 :    Alexandria, Virginia
6    CACI PREMIER TECHNOLOGY,    :    Volume XII
     INC.,                       :    Pages 1-21
7                 Defendant.     :
     --------------------------x
8

9         The above-entitled jury trial was heard before the
     Honorable Leonie M. Brinkema, United States District Judge.
     This proceeding commenced at 10:34 a.m.
10

11                  A P P E A R A N C E S:

12   FOR THE PLAINTIFFS:   BAHER AZMY, ESQUIRE
                           THE CENTER FOR CONSTITUTIONAL RIGHTS
13                         666 Broadway
                           7th Floor
14                         New York, New York  10012
                           (212) 614-6464

15                         MUHAMMAD FARIDI, ESQUIRE
                           MICHAEL BUCHANAN, ESQUIRE
16                         BONITA ROBINSON, ESQUIRE
                           ANDREW HADDAD, ESQUIRE
17                         MICHAEL FISHER, ESQUIRE
                           THOMAS KICAK, ESQUIRE
18                         SCOTT KIM, ESQUIRE
                           ALEXANDRA MAHLER-HAUG, ESQUIRE
19                         PATTERSON BELKNAP WEBB & TYLER LLP
                           1133 Avenue of the Americas
20                         New York, New York  10036
                           (212) 336-2000
21

22

23

24

25

                                                            1

```
1                    A P P E A R A N C E S:

2   FOR THE DEFENDANT:    JOHN O'CONNOR, JR., ESQUIRE
                          LINDA BAILEY, ESQUIRE
3                         JOSEPH MCCLURE, ESQUIRE
                          STEPTOE & JOHNSON LLP
4                         1330 Connecticut Avenue, NW
                          7th Floor
5                         Washington, D.C.  20036
                          (202) 429-3000
6
                          NINA GINSBERG, ESQUIRE
7                         DIMUROGINSBERG PC
                          1101 King Street
8                         Suite 610
                          Alexandria, Virginia  22314
9                         (703) 684-4333

10  FOR THE UNITED        REBECCA LEVENSON, ESQUIRE
    STATES:               OFFICE OF THE UNITED STATES ATTORNEY
11                        2100 Jamieson Avenue
                          Alexandria, Virginia  22314
12                        (703) 299-3700

13                        STEPHEN ELLIOTT, ESQUIRE
                          JASON LYNCH, ESQUIRE
14                        ELIZABETH TULIS, ESQUIRE
                          UNITED STATES DEPARTMENT OF JUSTICE
15                        CIVIL DIVISION FEDERAL PROGRAMS BRANCH
                          1100 L Street, NW
16                        Washington, D.C.  20044
                          (202) 598-0905
17
    COURT REPORTER:       STEPHANIE M. AUSTIN, RPR, CRR
18                        Official Court Reporter
                          United States District Court
19                        401 Courthouse Square
                          Alexandria, Virginia  22314
20                        (571) 298-1649
                          S.AustinReporting@gmail.com
21

22        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

23

24

25
                                                        2
```

```
1                        P R O C E E D I N G S

2              THE DEPUTY CLERK:  Civil Action Number

3    1:08-cv-827, Suhail Najim Abdullah Al Shimari versus CACI

4    Premier Technology, Inc.

5              Will counsel please note their appearance for the

6    record, beginning with the plaintiff.

7              MR. FARIDI:  Good morning, Your Honor.

8    Muhammad Faridi on behalf of the plaintiffs.  I'm joined by

9    my colleagues Bonita Robinson, Baher Azmy, as well as Alex

10   Mahler-Haug here, and our paralegal, Kaihan Rahimi.

11             THE COURT:  Good morning.

12             MR. O'CONNOR:  Good morning, Your Honor.

13   John O'Connor for CACI, joined by my co-counsel

14   Linda Bailey, Nina Ginsberg and Joseph McClure.

15             THE COURT:  Good morning.

16             All right.  We have gotten several questions from

17   the jury.  I'm going to take the first simple one.  Question

18   Number 1:  Can we have another copy of the IROE, which is

19   Plaintiffs' Exhibit 42?

20             Is there any objection to that?

21             MR. FARIDI:  None from us, Your Honor.

22             MR. O'CONNOR:  No, Your Honor.

23             THE COURT:  All right.  That's fine.  So we'll

24   send that in to them.

25             The next question:  Can we have two more copies of
                                                              3
```

```
 1    the field manual?  I don't know what exhibit number that is.
 2    I assume one of you knows.
 3                MR. FARIDI:  PTX207, Your Honor.
 4                THE COURT:  All right.  Is there any objection to
 5    that?
 6                MR. FARIDI:  None.
 7                MR. O'CONNOR:  No, Your Honor.
 8                THE COURT:  All right.  So we'll get them two
 9    copies of that.  And I'm assuming you all have some of those
10    with you?  If not, we'll need to get the copy from the jury
11    and make copies in chambers.
12                MR. FARIDI:  We have at least one copy of
13    everything, so we can --
14                THE COURT:  But not two.  We'll have to work that
15    out with you in a second.  All right.
16                And then they wanted -- the next question:  Can we
17    have one more copy of plaintiffs' exhibit descriptions,
18    indexes -- they want each -- they want other copies of your
19    indexes.  And, again, I assume there's no objection to that?
20                MR. O'CONNOR:  No objection, Your Honor.
21                MR. FARIDI:  No objection.
22                THE COURT:  All right.  The last question is
23    substantive:  Who are the parties in DX2?  DX2 is apparently
24    interrogatory answers.
25                MR. O'CONNOR:  That's right, Your Honor.
```

```
1              THE COURT:  All right.  And the question goes on:
2    And who/what is the U.S. government responding to?  Is this
3    exhibit referencing just this case or other cases?  All
4    right.
5              Now, I just quickly looked at the exhibit -- hold
6    on a second -- so I can explain to them again what an
7    interrogatory is.  And this was during the discovery
8    process -- whose was it?  It was --
9              MR. O'CONNOR:  It was CACI's, Your Honor.
10             THE COURT:  All right.
11             -- the defendant proposed certain written
12   questions -- an interrogatory is a question -- to the United
13   States government, and these are the answers that the United
14   States government supplied to the particular questions.
15             Does anybody have an objection to informing the
16   jury of that?
17             MR. FARIDI:  None from us, Your Honor.
18             MR. O'CONNOR:  No, Your Honor.
19             THE COURT:  All right.  Then the next part of that
20   question, though, is:  Is it referencing just this case or
21   other cases?  And they have only the redacted version;
22   correct?  In other words, the version that I have, this is
23   the exhibit that went to the jury?
24             MR. O'CONNOR:  That's right, Your Honor.
25             THE COURT:  Right.
```

```
 1              MR. O'CONNOR:  I suspect some of the question
 2    might be that there's a double caption because at the time
 3    that these interrogatories were served, CACI had a claim
 4    pending against the United States, so that -- I'm wondering
 5    if they may see that and wonder is this a different case,
 6    what's the connection here.  But this was all -- I mean, the
 7    correct answer is these were questions posed with respect
 8    to --
 9              THE COURT:  This case.
10              MR. O'CONNOR:  -- these plaintiffs and this case.
11              THE COURT:  I think that's the right answer.
12              Any objection from the plaintiff?
13              MR. FARIDI:  No objection, Your Honor.
14              Are you going to inform the jury that, at some
15    point, the United States was a party in this case and was
16    dismissed?
17              THE COURT:  Does either side want me to tell them
18    that?
19              MR. FARIDI:  May I just have one moment to confirm
20    with my colleague?
21              THE COURT:  All right.
22                        (Pause.)
23              THE COURT:  I'm also going to tell the jury,
24    because we have a full courtroom, that we have visiting
25    judges from throughout Latin America so that they don't
```

6

```
 1   somehow construe that as related to this case.

 2            MR. FARIDI:  So our position is it would be useful

 3   to tell the jury that the United States was, at one point, a

 4   party in this case and were dismissed.

 5            THE COURT:  And were dismissed.

 6            MR. FARIDI:  Otherwise they would be confused as

 7   to what the United States is doing on the caption.

 8            MR. O'CONNOR:  We don't think it's relevant.  And

 9   we think saying the United States was dismissed from this

10   case is going to lead to speculation as to why the United

11   States is no longer a party to this case.

12            THE COURT:  Well, you know what I suggest is for

13   future -- for the follow-up copies, they really don't need

14   the first page.  Save a few trees.  I mean, there's --

15   there's nothing substantive until we get to page 3.

16            MR. FARIDI:  I think that may be fine for future

17   copies, Your Honor, but I think what's prompting the inquiry

18   that's at hand is what is the United States doing on the

19   first page of defendant's own exhibit?

20            So, you know, frankly, they proposed this exhibit,

21   they are the ones who proposed all the other redactions in

22   Exhibit 2, DX2.  They should have redacted from the caption

23   the reference to United States as a party.

24            THE COURT:  All right.  And it also mentions John

25   Does 1 through 60.
```

7

```
1              I think I do have to tell the jury that originally
2   these were parts of the case; they are not part of the --
3   parties to this case.  Just they are not parties to this
4   case any longer.
5              MR. O'CONNOR:  And, to be clear, we did not
6   propose all the redactions to that exhibit.  The United
7   States did that.
8              THE COURT:  I'm not going to get into that.  All
9   right.
10             Then let's bring the jury in.
11             THE CSO:  Yes, Judge.
12             Rise for the jury.
13                  (Jury present at 10:40 a.m.)
14             THE COURT:  Good morning, ladies and gentlemen.
15  Again, it's good seeing all of you.  You were here promptly
16  on time, and you are continuing to be a very diligent jury,
17  and we all appreciate that.
18             I, first of all, just want to explain to you, you
19  can see we have a full courtroom.  It's unrelated to this
20  case, but we have a visiting delegation of judges from
21  Argentina, Brazil, Chile, Colombia, Costa Rica, Ecuador,
22  Mexico, Peru and Uruguay.  I hope I've covered all the
23  countries.  They're actually visiting the PTO, the Patent
24  and Trademark Office, across the street from us to learn
25  about intellectual property law, and they are visitors here
```
                                                                    8

1    this morning just to watch court proceedings.  So I didn't

2    want you to draw any inference from the large number of

3    people who are in court.  They're not here to watch this

4    case; they just happen to be here.

5             In terms of your questions, we're able to answer

6    all of your questions.  Question Number 1, you want another

7    copy of Plaintiffs' Exhibit 42.  We'll get that to you as

8    quickly as we can.

9             You'd like two or more copies -- two more copies

10   of the field manual.  We may need to get that back from you

11   to make copies of it because I'm not sure we have any

12   additional ones here right now, so we may have to borrow

13   that from you.

14            You would like to have one more -- I guess it's

15   two more copies of the exhibit lists.  We'll get those to

16   you as well.

17            In terms of Defense Exhibit 2, which is the one

18   you had a specific question about, you asked:  Who are the

19   parties in Defense Exhibit 2?  And who or what is the United

20   States government responding to?

21            So Exhibit Number 2 was a request for

22   interrogatories.  An interrogatory is a question.  And

23   during pretrial discovery, the lawyers are allowed to

24   develop the evidence in the case, and one of the ways of

25   doing that is to send written questions, but they're called

                                                              9

```
 1   written interrogatories, that's the word, to parties of

 2   interest.

 3             Now, this case originally was filed -- I'm sorry.

 4   CACI Premier Technology filed, as part of this case, a suit

 5   against the United States of America and 1 through 60 John

 6   Does.

 7             The United States of America and the John Does are

 8   no longer part of this case.  That's not an issue for you to

 9   worry about or give any consideration to.  But while the

10   United States was a party to this case, CACI had a series of

11   questions they wanted the United States to answer about this

12   case.  And so what you have in this exhibit are the

13   questions -- some of the questions that CACI asked of the

14   United States government.  And you have the objections,

15   first, from the United States government, and then you have

16   their response, which is their answer.

17             The blacked-out portions of this have nothing to

18   do with the parties.  Remember, there's a lot of state

19   secrets in this case, and that's why you have significant

20   portions of this redacted.  But these are the answers of the

21   United States government, and they relate to this case.  All

22   right.  I hope that answers your question.

23             Do you need another copy of this exhibit as well?

24   No?

25             THE FOREPERSON:  Yes, please.
```

10

```
 1                THE COURT:  You do.  So we'll make an additional
 2    copy of Defendant's Exhibit Number 2.
 3                Counsel, is there anything we need to -- you need
 4    to approach the bench about with this?
 5                MR. FARIDI:  Nothing from us, Your Honor.
 6                MR. O'CONNOR:  No, Your Honor.  Thank you.
 7                THE COURT:  All right.  Very good.
 8                So, ladies and gentlemen, it will take us a few
 9    minutes to get these copies to you.  We'll do that as
10    quickly as we can, but we'll let you go back to deliberate.
11    All right.  And I'm just going to just stay on the bench for
12    one more minute.
13                THE CSO:  Rise for the jury.
14                    (Jury not present at 10:45 a.m.)
15                THE COURT:  All right.  You all can have a seat.
16                Just because we have our visiting judges, I'm just
17    going to let them have context of what you just saw.  I'm
18    currently trying a case that has been brought by three Iraqi
19    citizens against CACI Premier Technology, which is a
20    government contractor who was -- had employees at the Abu
21    Ghraib facility in Iraq many years ago.  And it's a lawsuit
22    involving claims of -- that the plaintiffs were subjected to
23    torture and other types of misconduct at Abu Ghraib, and the
24    plaintiffs are seeking monetary damages, and their case has
25    taken about -- now it's two and a half weeks.  The jury's
```

11

```
 1    been out for several days.  I was explaining to you
 2    previously how juries make the factual decisions in any
 3    case, and that's what's going on right now.  So you've had a
 4    chance to actually see a little bit of what is involved in a
 5    jury trial.
 6              Our guests don't have jury trials in their
 7    countries, and so I have always found that when we have
 8    visiting jurists, they're quite fascinated by the jury
 9    process.  And these are eight ordinary citizens.  As I
10    recall, we have an engineer, we have a sports analyst, we
11    have one or two people who are not -- who don't seem to have
12    employment.  It's just a cross-section of the community that
13    are going to make the factual decisions in this case.
14              So I'm going to recess court now, so that means
15    I'm going to go off the bench.  And I think now we probably
16    have used up our time for our visitors.  But I want to thank
17    you for coming; hopefully this was of some value to you all.
18              And, Counsel, we're going to be waiting to see
19    what the jury does.  They've not yet put in a lunch request
20    for tomorrow, so maybe they'll decide the case today.  All
21    right.
22              We'll recess court.
23                   (A brief recess was taken.)
24              THE COURT:  All right.  Folks, we've got two
25    questions from the jury.  The first one:  There are clear
```

12

```
1    contradictions in the field manual, mainly regarding core
2    responsibilities.  Should we discount the field manual or
3    those sections in the field manual?
4            MR. FARIDI:  Your Honor, Muhammad Faridi on behalf
5    of the plaintiffs.
6            We read the field manual many times.  We don't
7    think there are any contradictions.
8            THE COURT:  But the jury does, and they're the
9    fact-finders.
10           MR. FARIDI:  I think it will be useful for Your
11   Honor to inquire what the perceived contradictions are.
12           THE COURT:  We can't do that.  That's not
13   appropriate.
14           Look, it's a very difficult case.  I'm not sure
15   we're going to get a verdict from this jury.  All right.
16   And I don't know how much longer -- I mean, they're not
17   asking to -- they're not telling us they're deadlocked, and
18   they're not asking us to quit, and I think they are going to
19   come back tomorrow, but these questions do show again how
20   difficult this case is.
21           MR. FARIDI:  I think they're moving in the right
22   direction, Your Honor, if you look at the second question.
23           On the first one, I assume Your Honor will
24   instruct them that it's for them to decide how much weight
25   to put on the field manual?
```

13

```
 1              THE COURT:  Well, let me hear what CACI has to
 2    say.
 3              MR. O'CONNOR:  We assume functionally the Court
 4    would instruct something along those lines.  The evidence
 5    presented at trial was that the field manual is guidance but
 6    not binding.
 7              THE COURT:  Right.
 8              MR. O'CONNOR:  But that if they perceive
 9    contradictions, they will take the different contradicting
10    guidance and give it whatever weight they think is
11    appropriate.
12              THE COURT:  I mean, they're asking -- how they
13    evaluate the field manual, which is a piece of evidence
14    that's in the case, is up to them.  I can't instruct them on
15    that.  But obviously, you know, if they are not able to find
16    that it's clear, you know --
17              MR. O'CONNOR:  They'll do what they're going to
18    with it.  That's right.
19              THE COURT:  Exactly.
20              Now, the second question is more substantive, in
21    my view.  And it's:  In regards to the Fay-Jones report, who
22    is responsible for interrogation operations if there was no
23    chain of command or direction?  We can't -- I can't answer
24    that question for them.
25              MR. O'CONNOR:  Your Honor, with respect -- we do
```

14

1   think that there is at least one piece of guidance that's

2   appropriate here, and that is if you turn to *Estate of*

3   *Alvarez*, the Court makes clear that the question is usually

4   answered by ascertaining who has the power to control and

5   direct the servants in the performance of their work.

6           So I think that there is a distinction between who

7   has the power to exercise direction and control versus power

8   and -- power to direct and control the exercise

9   inadequately.

10           The question is power, not whether who had the

11   power did a good job of it.  That is the one -- I think that

12   goes to what they're getting at in Question 2.  They're

13   saying, well, what if there's no chain of command or

14   direction?  The question is who had the power to exercise

15   that direction and control from the *Estate of Alvarez* at

16   page 694.

17           THE COURT:  I'll hear the plaintiffs' response.

18           MR. FARIDI:  I think the key issue in *Alvarez* --

19   and we've been arguing this the last several times, Your

20   Honor -- is whether or not the Fourth Circuit case law

21   recognizes the concept of dual control, and *Alvarez*

22   certainly does.

23           There's this one sentence right in the middle of

24   the analysis section of *Alvarez* that talks about the concept

25   of dual control.  And the last paragraph of *Alvarez* also

15

```
 1   recognizes a concept of dual control.  And I'll read the
 2   first sentence.  It says:  It is possible for an individual
 3   to be the agent of two principals at the same time, and
 4   that's exactly what we have here in this case.
 5           I know -- I'm mindful of the fact that Your Honor
 6   has not elaborated on that particular principle of law in
 7   your instructions to the jury, but we would submit that you
 8   adopt the instructions that we had proposed earlier.
 9   Because we get the sense, Your Honor, that the jury is
10   asking for guidance on this precise issue, and this is the
11   core of CACI's defense.  And if there is dual control -- and
12   certainly there was significant evidence at this trial that
13   there was dual control -- then CACI, the general employer,
14   is liable under the Fourth Circuit case law.
15           THE COURT:  Or there was no control.
16           MR. FARIDI:  In that instance, you know, we would
17   argue that CACI's liable.
18           But we agree with Your Honor that this is a
19   substantive question that we don't think the Court should
20   answer other than to remind the jury, as it did, I believe
21   it was yesterday, as to who bears the burden of proof on
22   these types of issues.  And on this issue, it's CACI's
23   burden to prove the borrowed servant defense.
24           And if Your Honor is not inclined to give an
25   instruction -- an elaborated instruction on the dual servant
```

                                                          16

1   principle, then I think the only instruction that's
2   warranted is to remind the jury of the burden of proof on
3   the issue.
4           MR. O'CONNOR:  May I respond, Your Honor?
5           THE COURT:  Yeah.
6           MR. O'CONNOR:  The Court's repeatedly and
7   correctly said that plaintiffs' concept of dual agency is
8   not a correct statement of the law.  Because it is true that
9   a -- an employee can be a servant of more than one master,
10  but what then happens is you look at what is the subject
11  matter at issue here and who are they serving in that area,
12  which here is dealing with detainees and interrogation
13  operations.
14          But, I mean, to us, the question the jury's posed
15  goes directly to, is the right question who actually
16  exercised direction and control or who had the power to
17  exercise direction and control?  And in *Alvarez*, it's pretty
18  clear that the question is who had the power.  If they did a
19  poor job of it, that doesn't change the answer as to who is
20  the employer for purposes of the borrowed servant doctrine.
21          THE COURT:  The problem with this, though, is the
22  question is asking the Court really to comment on the
23  evidence, because they're looking in regards to the
24  Fay-Jones report, which is not necessarily a dispositive
25  piece of evidence in this case to begin with.  Who was

17

```
 1    responsible for interrogations?  I'm not going to give them

 2    that answer.

 3              MR. O'CONNOR:  Oh, we agree that you should not,

 4    Your Honor.  We completely agree with that.  And we're

 5    talking about --

 6              THE COURT:  I'm going to -- I'm sorry.  I'm just

 7    going to tell them go back and -- look, this is a piece of

 8    evidence, it's your job to evaluate the evidence, and I

 9    can't tell you more than that.  I'm not going to tell you

10    how to evaluate it.  I mean, I have my own view, and if the

11    jury doesn't decide the case, I'm going to tell you what my

12    view is, and the result will be whatever the result is of

13    that.

14              But, at this point, that's their job.  I think it

15    would be too close to almost a directed verdict if I give

16    them any kind of response -- substantive response to this

17    question.  So I may tell them to go back -- and maybe they

18    have to read the jury instructions again.  But I think that

19    they won't probably like the answer, but I'm going to tell

20    them, these are two evidentiary questions you're asking the

21    Court.

22              Because they're asking me to respond to what's the

23    result of the Fay report.  All right.  They have to look

24    at -- that's a piece of evidence.  They have to look at that

25    piece of evidence in the context of the other evidence and
```

                                                              18

1    make a decision as to what it means, if anything.  So I'm

2    not going to go any further than what I've just said.

3              MR. O'CONNOR:  Thank you, Your Honor.

4              THE COURT:  All right.  Let's bring them in.

5              THE CSO:  Yes, Judge.

6                   (Jury present at 5:07 p.m.)

7              THE COURT:  All right.  Ladies and gentlemen,

8    you've asked two very significant questions, and I'm not

9    sure I'm going to be able to help you a whole lot on this

10   because there is a separation of roles between what I do as

11   the judge and what you do as the fact-finders.  I cannot

12   find facts for you in that respect, and I think both of

13   these questions are -- you're asking me to help you in that

14   respect, and I can't.  That's the way the system works.

15             So your first question is:  There are clear

16   contradictions in the field manual, mainly regarding core

17   responsibilities.  Should we discount the field manual or

18   these sections of the field manual?

19             It's up to you to evaluate the evidence and to

20   draw from the evidence that you find reliable such

21   inferences as you are comfortable doing in the light of your

22   common sense and your collective intelligence.  And that's

23   really all I can tell you.

24             It's similar in the case of the second question.

25   In regards to the Fay-Jones report -- again, that report is

                                                            19

```
 1    simply a piece of evidence in the case.  All right.  It's
 2    not any dispositive finding.  It is a piece of evidence --
 3    who was responsible for interrogation operations if there
 4    was no chain of command or direction?
 5              Again, I can't give you an answer on that.  All
 6    right.  So, unfortunately, that may or may not assist you in
 7    your job.  All right.
 8              I know you've worked a long day today, and I
 9    know -- I think yesterday you wanted to leave a little bit
10    early.  So are you going to stay until about 5:45 tonight?
11    Is that the plan for tonight?  Yes.  All right.  Then we'll
12    let you go back.
13              Again, don't be shy about asking further questions
14    if you're still having issues.  But to the extent you're
15    trying to ask the Court to evaluate the evidence for you, I
16    cannot do that.  All right.  That is your job.
17              All right.  We'll recess court.
18                  (Jury not present at 5:09 p.m.)
19              THE COURT:  All right.  The jury has ordered lunch
20    for tomorrow, so they're coming back, so we'll bring them in
21    and send them home for the evening.
22              THE CSO:  Yes, Judge.
23              THE COURT:  All right.  Ladies and gentlemen, I
24    understand you've ordered lunch or you're in the process of
25    ordering lunch, so that means you will be back here again
```

20

```
 1   tomorrow.

 2             Again, we know you're working hard on this case.

 3   We appreciate that diligence.  Please continue to watch and

 4   follow my cautions about not discussing the case with each

 5   other.  While you're not together, do not conduct any

 6   investigations, stay off the Internet in terms of chatting

 7   about this case in any respect.

 8             You've not had any problems, right, with anybody

 9   at home or at work?  No.  Okay.

10             All right.  So we'll let you go for tonight.  And

11   I assume 9:30 is your start time tomorrow?  Okay.  Did we

12   get you enough supplies?  I know you needed some more.

13             THE FOREPERSON:  Yeah.  We got the big poster

14   paper.

15             THE COURT:  You've got everything you need?  All

16   right.  Great.  We'll see you back here tomorrow.

17             We'll recess court for the day.

18                  (Jury not present at 5:50 p.m.)

19                  (Proceedings adjourned at 5:50 p.m.)

20             ----------------------------------

21   I certify that the foregoing is a true and accurate

22   transcription of my stenographic notes.

23

24                               _Stephanie Austin_

25                               Stephanie M. Austin, RPR, CRR
                                                              21
```