```
                     UNITED STATES DISTRICT COURT
                   FOR THE EASTERN DISTRICT OF VIRGINIA
                            Alexandria Division


  SUHAIL NAJIM ABDULLAH            :    Civil Case
  AL SHIMARI, et al.,              :    No. 1:08-CV-827
                                   :
            Plaintiffs             :
                                   :
        v.                         :
                                   :
  CACI PREMIER TECHNOLOGY,         :
  INC.,                            :    April 24, 2024
                                   :    9:30 a.m.
            Defendant              :
  ...........................     :    .........................

              TRANSCRIPT OF JURY TRIAL PROCEEDINGS
                            DAY 7
                      JURY DELIBERATIONS
           BEFORE THE HONORABLE LEONIE M. BRINKEMA
                   UNITED STATES DISTRICT JUDGE


  APPEARANCES:

  FOR THE PLAINTIFFS:        MUHAMMAD USMAN FARIDI
                             ALEXANDRA MAHLER-HAUG
                             ANDREW HADDAD
                             BONITA ROBINSON
                             MICHAEL BUCHANAN
                             MICHAEL FISHER
                             THOMAS KICAK
                             W. SCOTT KIM
                             PATTERSON BELKNAP WEBB & TYLER, LLP
                             1133 Avenue of the Americas
                             New York, New York  10036
                             212-336-2000

                             BAHER AZMY
                             KATHERINE GALLAGHER
                             THE CENTER FOR CONSTITUTIONAL RIGHTS
                             666 Broadway
                             7th Floor
                             New York, New York  10012
                             212-614-6464

                             (APPEARANCES CONTINUED ON FOLLOWING
                             PAGE:)
```

```
FOR THE DEFENDANT:      JOHN O'CONNOR, JR.
                        LINDA BAILEY
                        JOSEPH McCLURE
                        STEPTOE & JOHNSON LLP
                        1330 Connecticut Avenue, NW
                        7th Floor
                        Washington, D.C. 20036
                        202-429-3000

                        NINA GINSBERG
                        DIMUROGINSBERG PC
                        1101 King Street
                        Suite 610
                        Alexandria, Virginia 22314
                        703-684-4333

                        STEPHEN ELLIOTT
                        JASON LYNCH
                        UNITED STATES DEPARTMENT OF JUSTICE
                        CIVIL DIVISION
                        FEDERAL PROGRAMS BRANCH
                        1100 L Street, NW
                        Washington, D.C. 20044
                        202-598-0905

                        REBECCA LEVENSON
                        OFFICE OF THE UNITED STATES ATTORNEY
                        2100 Jamieson Avenue
                        Alexandria, Virginia 22314
                        703-299-3700

OFFICIAL COURT REPORTER: REBECCA STONESTREET, RPR, CRR
                         U.S. District Court, 9th Floor
                         401 Courthouse Square
                         Alexandria, Virginia  22314
                         (240) 426-7767


                ( Pages 1 - 12)



        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
```

| | |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | THE COURT:  All right.  We've got a question from the |
| 3 | jury.  The first one, can they have two more copies of jury |
| 4 | instructions.  We're going to do that, no problem there.  The |
| 5 | next two questions are substantive. |
| 6 | The first one is, in reference to the borrowed servant |
| 7 | doctrine, what does, quotation marks, "a borrowing employer with |
| 8 | all the legal consequences of a new relation," unquote, mean. |
| 9 | Is the CACI code of conduct void or irrelevant to CACI |
| 10 | employees? |
| 11 | And then the third question, can the CACI code of |
| 12 | conduct be a basis upon which a violation is determined? |
| 13 | All right.  Let me hear the plaintiffs' response to |
| 14 | that and then the defendants. |
| 15 | MR. AZMY:  Thank you, Your Honor.  With respect to the |
| 16 | borrowed servant doctrine, this harkens back to our position on |
| 17 | the jury instructions, which is, this is, I think, a complex |
| 18 | legal way of referencing the key aspect of borrowed servant, |
| 19 | which is that the relinquishment be complete or total and that |
| 20 | any dual supervision or dual control does not authorize the |
| 21 | defense.  I think that's what "all legal consequences" |
| 22 | represents. |
| 23 | And with respect to the second sentence there, our |
| 24 | position is it is relevant to the parties' understanding of what |
| 25 | they would ultimately relinquish, which is not all legal |

1    authority, because of the joint control.
2              THE COURT: All right. Mr. O'Connor, I'll hear from
3    you.
4              MR. O'CONNOR: Your Honor, the borrowing employer with
5    all the consequences of the new relation, what does that mean?
6    I think what it means, if the test of borrowed employee is
7    satisfied, which the Court has set forth - it's on page 24 of
8    the instructions, the two-part test - then I think the answer
9    is, those employees are treated as subject -- they're treated as
10   if they're employees of the United States Army, and any employer
11   liability for the conduct of those people flows to the Army and
12   not to CACI. That's the legal relation that flows with the test
13   being satisfied.
14             Is the CACI code of conduct void or irrelevant? I
15   think it's irrelevant to the question of whether the test is
16   satisfied. And if the test is satisfied, then they are subject
17   to -- they're treated as if they're an Army employee for
18   purposes of *respondeat superior*.
19             THE COURT: I think what I'm going to tell them is that
20   I recognize that the phrase is complex to understand.
21   "Consequence of the new relation," what does that mean. I think
22   the better thing is to focus their attention on page 24.
23             In other words, to say, I frankly am not positive I
24   understand question number three. I would want them to explain
25   to me what they really mean by that. But I think rather than

1   getting in -- I think I'm going to tell them, I recognize that
2   that phrase, which comes, as I recall, from case law, which
3   means it was written by appellate judges and not trial judges,
4   and is not as clear as it should be with jurors, is to say what
5   they should focus on when thinking about the borrowed employer
6   or borrowed servant doctrine is the two facts for which CACI has
7   the burden of proving by a preponderance of the evidence.  Those
8   are the two things they have to be concerned about.
9          I don't know whether that will answer their question or
10  not, and if it doesn't, they can certainly write us a revised
11  version of the question.  All right?
12         Does plaintiff object to that?  That is the law they
13  have to follow.  It's those two findings they have to make.
14         MR. AZMY:  Yes, Your Honor, I think subject to our
15  prior exception to not having the language about completeness.
16         THE COURT:  That's fine.
17         MR. O'CONNOR:  And we do not object.
18         THE COURT:  Let's bring the jury in.
19         The delay suggests they may have another question.  In
20  my experience, that tends to be what happens.
21         (Jury in at 2:26 p.m.)
22         THE COURT:  Good afternoon, ladies and gentlemen.
23  You've been obviously working very diligently today, and I'm
24  always impressed with the smartness of the questions that we get
25  from our juries.  What you've written are very astute questions,

1    and it shows how carefully you-all are reading the instructions.
2            Sometimes I think it's a mistake, actually, to give
3    jurors the written instructions, because you read them so
4    carefully, and unfortunately some of the instructions are guided
5    by a certain amount of legalese that makes it difficult,
6    frankly, for non-lawyers - as well as sometimes even lawyers -
7    to truly understand what's meant.
8            So I think your question number two, which is in
9    reference to the borrowed servant doctrine, what does, quote, "a
10   borrowing employer with all the legal consequences of a new
11   relation" mean, I agree with you, that's certainly hard to
12   understand.  And so rather than work at that -- because that's
13   just a definition sort of what a borrowed servant is.
14           If you look at page 24 - and we're going to get you two
15   more copies of the jury instructions - that's telling you what
16   the specific standard of proof is.  And remember, CACI has the
17   burden of proving the borrowed servant doctrine.  And if you
18   look at page 24, it says, "To determine if defendant has proven
19   by a preponderance of the evidence that its interrogators were
20   borrowed servants, you must determine," and there are two facts.
21   "One, whose work was being performed by the interrogators, and
22   two, who had the power to control and direct the interrogators
23   in the performance of their work at Abu Ghraib."
24           Those are the two issues you have to decide.  In
25   determining whether the defendant has proven that its

1     interrogators were borrowed servants, you should consider all
2     testimony, facts, and circumstances in evidence.
3               I hope that answers your question.  If it does not,
4     then you go ahead and resubmit the question.  I will be honest
5     with you, I didn't completely understand what was meant in the
6     third question, which was, "Can the CACI code of conduct be a
7     basis upon which a violation is determined."  So I'm not sure
8     whether the way I've explained it to you helps you understand
9     what you need to do to decide the borrowed servant doctrine or
10    not.  But if you still have a question, then just rephrase it
11    for us and we'll do the best we can to answer it.  All right.
12              We'll recess court to await the decision of the jury.
13              (Recess taken at 2:29 p.m.)
14              (Jury out at 2:29 p.m.)
15              THE COURT:  Well, the jury has apparently put in their
16    lunch orders for tomorrow so they're coming back tomorrow.
17    We're going to bring them in in a second.  I have unrelated
18    matters in this courtroom at 10 o'clock tomorrow morning, so if
19    you see activity in here, don't be surprised.
20              I'm also conducting a settlement conference.  I'll be
21    using the chambers across -- or the space across the hall, so it
22    may take me a couple of extra minutes to respond to any
23    questions that come in.  But we'll get the case in to the jury
24    and they'll do their thing when they do it.
25              So let's bring them in.

1    And it's appropriate in a case like this that they take
2    their time so there's no rush to judgment.  Both sides should
3    appreciate the fact that you've got eight citizens giving very
4    careful consideration to the issues in the case, which is how it
5    should be.
6              (Jury in at 5:59 p.m.)
7              THE COURT:  All right.  Ladies and gentlemen, I know
8    you've ordered lunch for tomorrow so that means you're coming
9    back.  And I'm going to assume you're sticking to pretty much --
10   hold on a second.
11             Here's your schedule.  You're going to start at 9:30,
12   take a break at 11:15; lunch from 1:00 to 2:00; second break
13   4:00 to 4:15, and end at 6 p.m.  I find my jurors get into the
14   pattern of the schedule and they seem to like that.  That's
15   fine.  So everybody knows what to expect tomorrow.
16             And again, ladies and gentlemen, this is a very
17   complicated case.  The fact that you're taking time to think
18   about it, we all appreciate it.  Rushes to judgment are not
19   appropriate.  You're doing exactly what good jurors should do.
20             Just please remember my cautions about, do not try to
21   conduct any investigation.  There is definitely media coverage
22   about the case, so you have to be very careful to avoid -- if
23   you see a headline that looks like it's related, get away from
24   it.
25             Do not talk to each other individually, get a good

1  night's sleep.  It really is best.  You'll come back fresh
2  tomorrow morning and you can just start looking at things
3  perhaps with new insights.
4          All right.  So we'll let you go home for the evening
5  and we'll recess court until 9:30 tomorrow morning.
6          (Off the record at 6:01 p.m.)
7          (Recess taken at 6:01 p.m.)

**CERTIFICATE OF OFFICIAL COURT REPORTER**

**I, Rebecca Stonestreet, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.**

23  ___//Rebecca Stonestreet//___                __5/15/24____
24  SIGNATURE OF COURT REPORTER                        DATE

*Rebecca Stonestreet, RPR, CRR, Official Court Reporter*

1

| / | 2:16 | **BEFORE** [1] - 1:11 | 8:21 | **DISTRICT** [3] - 1:1, 1:1, 1:12 |
|---|---|---|---|---|
| **//Rebecca** [1] - 9:23 | **703-684-4333** [1] - 2:8 | **BELKNAP** [1] - 1:18 | **conducting** [1] - 7:20 | **District** [1] - 2:18 |
| | **7th** [2] - 1:23, 2:4 | **best** [2] - 7:11, 9:1 | **conference** [1] - 7:20 | **Division** [1] - 1:2 |
| **1** | | **better** [1] - 4:22 | **Connecticut** [1] - 2:3 | **DIVISION** [1] - 2:11 |
| **1** [1] - 2:21 | **9** | **BONITA** [1] - 1:16 | **consequence** [1] - 4:21 | **doctrine** [6] - 3:7, 3:16, 5:6, 6:9, 6:17, 7:9 |
| **10** [1] - 7:18 | **9:30** [3] - 1:8, 8:11, 9:5 | **borrowed** [12] - 3:6, 3:16, 3:18, 4:6, 5:5, 5:6, 6:9, 6:13, 6:17, 6:20, 7:1, 7:9 | **consequences** [4] - 3:8, 3:21, 4:5, 6:10 | **dual** [2] - 3:20 |
| **10012** [1] - 1:23 | **9th** [1] - 2:18 | | **consider** [1] - 7:1 | |
| **10036** [1] - 1:19 | | | **consideration** [1] - 8:4 | **E** |
| **1100** [1] - 2:12 | **A** | **borrowing** [3] - 3:7, 4:4, 6:10 | **CONSTITUTIONAL** [1] - 1:22 | **EASTERN** [1] - 1:1 |
| **1101** [1] - 2:7 | **a.m** [1] - 1:8 | **BRANCH** [1] - 2:11 | **CONTINUED** [1] - 1:25 | **eight** [1] - 8:3 |
| **1133** [1] - 1:19 | **ABDULLAH** [1] - 1:3 | **break** [2] - 8:12 | **control** [3] - 3:20, 4:1, 6:22 | **ELLIOTT** [1] - 2:9 |
| **11:15** [1] - 8:12 | **above-entitled** [1] - 9:19 | **bring** [3] - 5:18, 7:17, 7:25 | **copies** [2] - 3:3, 6:15 | **employee** [2] - 4:6, 4:17 |
| **1330** [1] - 2:3 | **Abu** [1] - 6:23 | **BRINKEMA** [1] - 1:11 | **correct** [1] - 9:18 | **employees** [3] - 3:10, 4:9, 4:10 |
| **1:00** [1] - 8:12 | **activity** [1] - 7:19 | **Broadway** [1] - 1:22 | **couple** [1] - 7:22 | **employer** [5] - 3:7, 4:4, 4:10, 5:5, 6:10 |
| **1:08-CV-827** [1] - 1:4 | **afternoon** [1] - 5:22 | **BUCHANAN** [1] - 1:16 | **COURT** [12] - 1:1, 2:17, 3:2, 4:2, 4:19, 5:16, 5:18, 5:22, 7:15, 8:7, 9:15, 9:24 | **end** [1] - 8:13 |
| | **agree** [1] - 6:11 | **burden** [2] - 5:7, 6:17 | | **entitled** [1] - 9:19 |
| **2** | **ahead** [1] - 7:4 | | **court** [2] - 7:12, 9:5 | **et** [1] - 1:4 |
| **20036** [1] - 2:4 | **AL** [1] - 1:4 | **C** | **Court** [2] - 2:18, 4:7 | **evening** [1] - 9:4 |
| **20044** [1] - 2:12 | **al** [1] - 1:4 | **CACI** [9] - 1:7, 3:9, 3:11, 4:12, 4:14, 5:6, 6:16, 7:6 | **Courthouse** [1] - 2:18 | **evidence** [3] - 5:7, 6:19, 7:2 |
| **202-429-3000** [1] - 2:5 | **ALEXANDRA** [1] - 1:15 | | **courtroom** [1] - 7:18 | **exactly** [1] - 8:19 |
| **202-598-0905** [1] - 2:13 | **Alexandria** [4] - 1:2, 2:8, 2:15, 2:19 | **careful** [2] - 8:4, 8:22 | **coverage** [1] - 8:21 | **exception** [1] - 5:15 |
| **2024** [1] - 1:7 | **Americas** [1] - 1:19 | **carefully** [2] - 6:1, 6:4 | **CRR** [1] - 2:17 | **expect** [1] - 8:15 |
| **2100** [1] - 2:15 | **amount** [1] - 6:5 | **Case** [1] - 1:3 | | **experience** [1] - 5:20 |
| **212-336-2000** [1] - 1:20 | **ANDREW** [1] - 1:15 | **case** [6] - 5:2, 7:23, 8:1, 8:4, 8:17, 8:22 | **D** | **explain** [1] - 4:24 |
| **212-614-6464** [1] - 1:24 | **answer** [3] - 4:8, 5:9, 7:11 | **cautions** [1] - 8:20 | **D.C** [2] - 2:4, 2:12 | **explained** [1] - 7:8 |
| **22314** [3] - 2:8, 2:15, 2:19 | **answers** [1] - 7:3 | **CENTER** [1] - 1:22 | **DATE** [1] - 9:24 | **extra** [1] - 7:22 |
| **24** [5] - 1:7, 4:7, 4:22, 6:14, 6:18 | **APPEARANCES** [2] - 1:13, 1:25 | **certain** [1] - 6:5 | **DAY** [1] - 1:10 | |
| **240** [1] - 2:19 | **appellate** [1] - 5:3 | **certainly** [2] - 5:10, 6:11 | **decide** [2] - 6:24, 7:9 | **F** |
| **2:00** [1] - 8:12 | **appreciate** [2] - 8:3, 8:18 | **CERTIFICATE** [1] - 9:15 | **decision** [1] - 7:12 | **fact** [2] - 8:3, 8:17 |
| **2:26** [1] - 5:21 | **appropriate** [2] - 8:1, 8:19 | **certify** [1] - 9:17 | **DEFENDANT** [1] - 2:1 | **facts** [3] - 5:6, 6:20, 7:2 |
| **2:29** [2] - 7:13, 7:14 | **April** [1] - 1:7 | **chambers** [1] - 7:21 | **Defendant** [1] - 1:8 | **FARIDI** [1] - 1:14 |
| | **Army** [3] - 4:10, 4:11, 4:17 | **circumstances** [1] - 7:2 | **defendant** [2] - 6:18, 6:25 | **FEDERAL** [1] - 2:11 |
| **4** | **aspect** [1] - 3:18 | **citizens** [1] - 8:3 | **defendants** [1] - 3:14 | **findings** [1] - 5:13 |
| **401** [1] - 2:18 | **assume** [1] - 8:9 | **CIVIL** [1] - 2:11 | **defense** [1] - 3:21 | **fine** [2] - 5:16, 8:15 |
| **426-7767** [1] - 2:19 | **astute** [1] - 5:25 | **Civil** [1] - 1:3 | **definitely** [1] - 8:21 | **first** [2] - 3:3, 3:6 |
| **4:00** [1] - 8:13 | **attention** [1] - 4:22 | **clear** [1] - 5:4 | **definition** [1] - 6:13 | **FISHER** [1] - 1:17 |
| **4:15** [1] - 8:13 | **ATTORNEY** [1] - 2:14 | **code** [4] - 3:9, 3:11, 4:14, 7:6 | **delay** [1] - 5:19 | **Floor** [3] - 1:23, 2:4, 2:18 |
| | **authority** [1] - 4:1 | **coming** [2] - 7:16, 8:8 | **DELIBERATIONS** [1] - 1:11 | **flows** [2] - 4:11, 4:12 |
| **5** | **authorize** [1] - 3:20 | **complete** [1] - 3:19 | **DEPARTMENT** [1] - 2:10 | **focus** [2] - 4:22, 5:5 |
| **5/15/24** [1] - 9:23 | **Avenue** [3] - 1:19, 2:3, 2:15 | **completely** [1] - 7:5 | **determine** [2] - 6:18, 6:20 | **follow** [1] - 5:13 |
| **5:59** [1] - 8:6 | **avoid** [1] - 8:22 | **completeness** [1] - 5:15 | **determined** [2] - 3:12, 7:7 | **FOLLOWING** [1] - 1:25 |
| | **await** [1] - 7:12 | **complex** [2] - 3:17, 4:20 | **determining** [1] - 6:25 | **FOR** [4] - 1:1, 1:14, 1:22, 2:1 |
| **6** | **AZMY** [3] - 1:21, 3:15, 5:14 | **complicated** [1] - 8:17 | **difficult** [1] - 6:5 | **foregoing** [1] - 9:17 |
| **6** [1] - 8:13 | | **COMPUTERIZED** [1] - 2:23 | **diligently** [1] - 5:23 | **forth** [1] - 4:7 |
| **610** [1] - 2:7 | **B** | **concerned** [1] - 5:8 | **DIMUROGINSBERG** [1] - 2:6 | **frankly** [2] - 4:23, 6:6 |
| **666** [1] - 1:22 | **BAHER** [1] - 1:21 | **conduct** [6] - 3:9, 3:12, 4:11, 4:14, 7:6, | **direct** [1] - 6:22 | **fresh** [1] - 9:1 |
| **6:01** [2] - 9:6, 9:7 | **BAILEY** [1] - 2:2 | | | |
| | **basis** [2] - 3:12, 7:7 | | | |
| **7** | | | | |
| **7** [1] - 1:10 | | | | |
| **703-299-3700** [1] - | | | | |

### G

GALLAGHER [1] - 1:21
gentlemen [3] - 5:22, 8:7, 8:16
Ghraib [1] - 6:23
GINSBERG [1] - 2:6
guided [1] - 6:4

### H

HADDAD [1] - 1:15
hall [1] - 7:21
hard [1] - 6:11
harkens [1] - 3:16
HAUG [1] - 1:15
headline [1] - 8:23
hear [2] - 3:13, 4:2
helps [1] - 7:8
hold [1] - 8:10
home [1] - 9:4
honest [1] - 7:4
Honor [3] - 3:15, 4:4, 5:14
HONORABLE [1] - 1:11
hope [1] - 7:3

### I

impressed [1] - 5:24
INC [1] - 1:7
individually [1] - 8:25
insights [1] - 9:3
instructions [7] - 3:4, 3:17, 4:8, 6:1, 6:3, 6:4, 6:15
interrogators [4] - 6:19, 6:21, 6:22, 7:1
investigation [1] - 8:21
irrelevant [3] - 3:9, 4:14, 4:15
issues [2] - 6:24, 8:4

### J

Jamieson [1] - 2:15
JASON [1] - 2:10
JOHN [1] - 2:1
JOHNSON [1] - 2:3
joint [1] - 4:1
JOSEPH [1] - 2:2
JR [1] - 2:1
JUDGE [1] - 1:12
judges [2] - 5:3
judgment [2] - 8:2, 8:18
juries [1] - 5:25
jurors [4] - 5:4, 6:3, 8:13, 8:19

jury [8] - 3:3, 3:17, 5:18, 6:15, 7:12, 7:15, 7:23
JURY [2] - 1:10, 1:11
Jury [3] - 5:21, 7:14, 8:6
JUSTICE [1] - 2:10

### K

KATHERINE [1] - 1:21
key [1] - 3:18
KICAK [1] - 1:17
KIM [1] - 1:18
King [1] - 2:7
knows [1] - 8:15

### L

ladies [3] - 5:22, 8:7, 8:16
language [1] - 5:15
law [2] - 5:2, 5:12
lawyers [2] - 6:6
legal [6] - 3:8, 3:18, 3:21, 3:25, 4:12, 6:10
legalese [1] - 6:5
LEONIE [1] - 1:11
LEVENSON [1] - 2:14
liability [1] - 4:11
LINDA [1] - 2:2
LLP [2] - 1:18, 2:3
look [2] - 6:14, 6:18
looking [1] - 9:2
looks [1] - 8:23
lunch [3] - 7:16, 8:8, 8:12
LYNCH [1] - 2:10

### M

MAHLER [1] - 1:15
MAHLER-HAUG [1] - 1:15
marks [1] - 3:7
matter [1] - 9:19
matters [1] - 7:18
McCLURE [1] - 2:2
mean [5] - 3:8, 4:5, 4:21, 4:25, 6:11
means [3] - 4:6, 5:3, 8:8
meant [2] - 6:7, 7:5
media [1] - 8:21
MICHAEL [2] - 1:16, 1:17
minutes [1] - 7:22
mistake [1] - 6:2
morning [3] - 7:18, 9:2, 9:5

MR [4] - 3:15, 4:4, 5:14, 5:17
MUHAMMAD [1] - 1:14
must [1] - 6:20

### N

NAJIM [1] - 1:3
need [1] - 7:9
new [5] - 3:8, 4:5, 4:21, 6:10, 9:3
New [4] - 1:19, 1:23
next [1] - 3:5
night's [1] - 9:1
NINA [1] - 2:6
non [1] - 6:6
non-lawyers [1] - 6:6
NOTES [1] - 2:23
number [2] - 4:24, 6:8
NW [2] - 2:3, 2:12

### O

o'clock [1] - 7:18
O'Connor [1] - 4:2
O'CONNOR [3] - 2:1, 4:4, 5:17
object [2] - 5:12, 5:17
obviously [1] - 5:23
OF [7] - 1:1, 1:10, 2:10, 2:14, 2:23, 9:15, 9:24
OFFICE [1] - 2:14
OFFICIAL [2] - 2:17, 9:15
ON [1] - 1:25
one [3] - 3:3, 3:6, 6:21
ordered [1] - 8:8
orders [1] - 7:16

### P

p.m [7] - 5:21, 7:13, 7:14, 8:6, 8:13, 9:6, 9:7
PAGE [1] - 1:25
page [4] - 4:7, 4:22, 6:14, 6:18
pages [1] - 2:21
part [1] - 4:8
parties' [1] - 3:24
pattern [1] - 8:14
PATTERSON [1] - 1:18
PC [1] - 2:6
people [1] - 4:11
performance [1] - 6:23
performed [1] - 6:21
perhaps [1] - 9:3

phrase [2] - 4:20, 5:2
plaintiff [1] - 5:12
plaintiffs [1] - 1:5
PLAINTIFFS [1] - 1:14
plaintiffs' [1] - 3:13
position [2] - 3:16, 3:24
positive [1] - 4:23
power [1] - 6:22
PREMIER [1] - 1:7
preponderance [2] - 5:7, 6:19
pretty [1] - 8:9
problem [1] - 3:4
proceedings [1] - 9:18
PROCEEDINGS [1] - 1:10
PROGRAMS [1] - 2:11
proof [1] - 6:16
proven [2] - 6:18, 6:25
proving [2] - 5:7, 6:17
purposes [1] - 4:18
put [1] - 7:15

### Q

questions [4] - 3:5, 5:24, 5:25, 7:23
quotation [1] - 3:7
quote [1] - 6:9

### R

rather [2] - 4:25, 6:12
read [1] - 6:3
reading [1] - 6:1
really [2] - 4:25, 9:1
REBECCA [2] - 2:14, 2:17
Rebecca [1] - 9:17
recess [2] - 7:12, 9:5
Recess [2] - 7:13, 9:7
recognize [2] - 4:20, 5:1
record [2] - 9:6, 9:18
reference [2] - 3:6, 6:9
referencing [1] - 3:18
related [1] - 8:23
relation [5] - 3:8, 4:5, 4:12, 4:21, 6:11
relevant [1] - 3:24
relinquish [1] - 3:25
relinquishment [1] - 3:19
remember [2] - 6:16, 8:20
rephrase [1] - 7:10
REPORTER [3] - 2:17, 9:15, 9:24
represents [1] - 3:22

respect [2] - 3:15, 3:23
respond [1] - 7:22
respondeat [1] - 4:18
response [1] - 3:13
resubmit [1] - 7:4
revised [1] - 5:10
RIGHTS [1] - 1:22
ROBINSON [1] - 1:16
RPR [1] - 2:17
rush [1] - 8:2
rushes [1] - 8:18

### S

satisfied [4] - 4:7, 4:13, 4:16
schedule [2] - 8:11, 8:14
SCOTT [1] - 1:18
second [4] - 3:23, 7:17, 8:10, 8:12
see [2] - 7:19, 8:23
seem [1] - 8:14
sentence [1] - 3:23
servant [8] - 3:6, 3:16, 3:18, 5:6, 6:9, 6:13, 6:17, 7:9
servants [2] - 6:20, 7:1
set [1] - 4:7
settlement [1] - 7:20
SHIMARI [1] - 1:4
shows [1] - 6:1
sides [1] - 8:2
sIGNATURE [1] - 9:24
sleep [1] - 9:1
smartness [1] - 5:24
sometimes [2] - 6:2, 6:6
sort [1] - 6:13
space [1] - 7:21
specific [1] - 6:16
Square [1] - 2:18
standard [1] - 6:16
start [2] - 8:11, 9:2
STATES [4] - 1:1, 1:12, 2:10, 2:14
States [1] - 4:10
STENOGRAPHIC [1] - 2:23
STEPHEN [1] - 2:9
STEPTOE [1] - 2:3
sticking [1] - 8:9
still [1] - 7:10
STONESTREET [1] - 2:17
Stonestreet [2] - 9:17, 9:23
Street [2] - 2:7, 2:12

| | |
|---|---|
| **subject** [3] - 4:9, 4:16, 5:14<br>**substantive** [1] - 3:5<br>**suggests** [1] - 5:19<br>**SUHAIL** [1] - 1:3<br>**Suite** [1] - 2:7<br>**superior** [1] - 4:18<br>**supervision** [1] - 3:20<br>**surprised** [1] - 7:19 | **V**<br>**version** [1] - 5:11<br>**violation** [2] - 3:12, 7:7<br>**Virginia** [3] - 2:8, 2:15, 2:19<br>**VIRGINIA** [1] - 1:1<br>**void** [2] - 3:9, 4:14 |
| **T**<br>**TECHNOLOGY** [1] - 1:7<br>**tends** [1] - 5:20<br>**test** [5] - 4:6, 4:8, 4:12, 4:15, 4:16<br>**testimony** [1] - 7:2<br>**THE** [14] - 1:1, 1:11, 1:14, 1:22, 2:1, 2:14, 3:2, 4:2, 4:19, 5:16, 5:18, 5:22, 7:15, 8:7<br>**thinking** [1] - 5:5<br>**third** [2] - 3:11, 7:6<br>**THOMAS** [1] - 1:17<br>**three** [1] - 4:24<br>**today** [1] - 5:23<br>**tomorrow** [7] - 7:16, 7:18, 8:8, 8:15, 9:2, 9:5<br>**total** [1] - 3:19<br>**transcript** [1] - 9:18<br>**TRANSCRIPT** [1] - 1:10<br>**TRANSCRIPTION** [1] - 2:23<br>**treated** [3] - 4:9, 4:17<br>**trial** [1] - 5:3<br>**TRIAL** [1] - 1:10<br>**truly** [1] - 6:7<br>**try** [1] - 8:20<br>**two** [11] - 3:3, 3:5, 4:8, 5:6, 5:8, 5:13, 6:8, 6:14, 6:20, 6:22, 6:24<br>**two-part** [1] - 4:8<br>**TYLER** [1] - 1:18 | **W**<br>**Washington** [2] - 2:4, 2:12<br>**WEBB** [1] - 1:18<br>**words** [1] - 4:23<br>**write** [1] - 5:10<br>**written** [3] - 5:3, 5:25, 6:3<br><br>**Y**<br>**York** [4] - 1:19, 1:23<br>**you-all** [1] - 6:1 |
| **U**<br>**U.S** [1] - 2:18<br>**ultimately** [1] - 3:25<br>**unfortunately** [1] - 6:4<br>**UNITED** [4] - 1:1, 1:12, 2:10, 2:14<br>**United** [1] - 4:10<br>**unquote** [1] - 3:8<br>**unrelated** [1] - 7:17<br>**USMAN** [1] - 1:14 | |