UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| *v.* | ) Case No. 1:08-cv-827 (LMB/JFA)<br>)<br>) |
| CACI PREMIER TECHNOLOGY, INC., | )<br>) |
| Defendant. | )<br>)<br>) |

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR A NEW TRIAL**

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| ARGUMENT | | 2 |
| I. | A MISTRIAL DUE TO A HUNG JURY ENTITLES THE PLAINTIFFS TO A RETRIAL | 2 |
| II. | THE COURT DENIED CACI'S RULE 50(A) MOTION, AND ANY RENEWED MOTION WOULD BE FUTILE | 3 |
| | A. The Demanding Legal Standard CACI Would Face If It Renews Its Motion for Judgment as a Matter of Law | 4 |
| | B. Substantial Evidence Supports Plaintiffs' Conspiracy Claim | 4 |
| | C. Plaintiffs' Aiding-and-Abetting Claim Is Also Viable | 6 |
| | D. The Evidence Supports a Finding that CACI is Vicariously Liable for Its Interrogators' Role in the Abuse | 10 |
| CONCLUSION | | 14 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abraham v. Cnty. of Greenville, S.C.*,
   237 F.3d 386 (4th Cir. 2001) ........................................................................................2

*Al Shimari v. CACI Premier Tech.*,
   300 F. Supp. 3d 758 (E.D. Va. 2018) ...............................................................9, 11, 12

*Al-Sabah v. World Bus. Lenders, LLC*,
   2024 WL 263579 (D. Md. Jan. 24, 2024) .....................................................................10

*Est. of Rodriquez v. Drummond Co.*,
   02-cv-665 (N.D. Ala.), Dkt. 460-11 .............................................................................7

*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983) ................................................................................9, 10

*Hathaway v. Idaho Pac. Corp.*,
   No. 4:15-cv-00086-DCN, 2019 WL 12528652 (D. Idaho Jan. 16, 2019) ...................2

*Jara, et al. v, Nunez*,
   13-cv-1426 (M.D. Fl.), Dkt. 184....................................................................................7

*Jordan v. Large*,
   27 F.4th 308 (4th Cir. 2022) ..........................................................................................3

*Estate of O'Brien v. City of Livingston*,
   No. CV 18-106-BLG-TJC, 2021 WL 5141074 (D. Mont. Nov. 4, 2021) .................2

*Plummer v. Center Psychiatrists, Ltd.*,
   252 Va. 233, 476 S.E.2d 172 (1996) ...........................................................................10

*Pratt-Miller v. Arthur*,
   701 F. App'x 191 (4th Cir. 2017) ................................................................................10

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000)................................................................................................4, 13

*Richardson v. United States*,
   468 U.S. 317 (1984)......................................................................................................3

*Rivera v. La Porte*,
   896 F.2d 691 (2d Cir. 1990).........................................................................................3

*Taylor v. First Union Corp. of S.C.*,
  857 F.2d 240 (4th Cir. 1988) ...................................................................................2

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023)................................................................................................10

*United States v. Coleman*,
  862 F.2d 455 (3d Cir. 1988)....................................................................................2

*United States v. Perez*,
  22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824)...........................................................2

*United States v. Pond*,
  No. 18-CR-50106 (JLV), 2020 WL 3446677 (D.S.D. June 24, 2020).....................2

*United States v. Wright*,
  913 F.3d 364 (3d Cir. 2019)....................................................................................2

*West v. Nabors Drilling USA, Inc.*,
  330 F.3d 379 (5th Cir. 2003) ..................................................................................2

*Westmoreland v. TWC Admin. LLC*,
  924 F.3d 718 (4th Cir. 2019) ..............................................................................2, 4

**Statutes**

28 U.S.C. § 1350......................................................................................................1

**Other Authorities**

Fed. R. Civ. P. 50(a)(1)............................................................................................4

Restatement (Second) of Torts § 876 (1979)............................................................9

On May 2, 2024, the jury announced that, after eight days of deliberations, it could not reach a unanimous decision on any of Plaintiffs' claims against Defendant CACI Premier Technology, Inc. ("CACI") for conspiring to commit and aiding and abetting torture and cruel, inhuman, and degrading treatment. As a result, the Court declared a mistrial. *See* ECF No. 1617. Plaintiffs are entitled to a retrial of their claims as a matter of law. A mistrial due to a hung jury automatically merits a retrial: a civil plaintiff has no burden to earn one. The only basis on which the Court could possibly deny Plaintiffs a retrial is if the Court grants judgment as a matter of law to CACI. But the Court already denied CACI's Rule 50(a) motion, and any renewed motion by CACI would be futile given the extraordinarily high legal and evidentiary burden CACI would have to satisfy, and cannot satisfy in this case. Plaintiffs have proffered substantial evidence supporting their claims (and countering CACI's defenses), and in reviewing any Rule 50(b) motion by CACI, the Court must draw all reasonable inferences from the evidence in Plaintiffs' favor. When viewing the evidence through that lens, and recalling that the jury did not find for CACI on any claim for any of the three Plaintiffs, there is no question that Plaintiffs' conspiracy and aiding-and-abetting claims are viable.

Plaintiffs thus respectfully request that the Court schedule a new trial on Plaintiffs' claims for conspiracy to commit and aiding and abetting torture and cruel, inhuman, and degrading treatment, brought under the Alien Tort Statute, 28 U.S.C. § 1350.[1]

---

[1] Plaintiffs have always been willing to engage in settlement discussions with CACI. Indeed, before trial, counsel reached out to CACI's counsel to discuss the possibility of settlement. CACI refused to engage. Nonetheless, Plaintiffs heard the Court's recommendation at the May 2, 2024 proceeding that the parties discuss resolving this case without a retrial. Counsel reached out again to CACI. CACI again has rebuffed Plaintiffs' attempt to resolve this case without further involvement of the court.

## ARGUMENT

**I. A MISTRIAL DUE TO A HUNG JURY ENTITLES THE PLAINTIFFS TO A RETRIAL**

Federal courts grant retrials after mistrials as a matter of course. *See, e.g.*, *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 724 (4th Cir. 2019) ("At the first trial … a jury hung on the age discrimination claims, and the district court declared a mistrial. In a re-trial…"); *Abraham v. Cnty. of Greenville, S.C.*, 237 F.3d 386, 389 (4th Cir. 2001) (noting that, after the district court declared a mistrial, it held a second trial one month later).[2] Plaintiffs are unaware of any authority requiring a civil plaintiff to establish its right to a retrial after a mistrial due to a hung jury.

Even in criminal cases, where the Fifth Amendment protects defendants from being prosecuted twice for the same crime, it is a "well-established rule that a hung jury automatically merits a mistrial and a new trial…." *United States v. Pond*, No. 18-CR-50106 (JLV), 2020 WL 3446677, at *2 (D.S.D. June 24, 2020); *accord United States v. Coleman*, 862 F.2d 455, 460 (3d Cir. 1988) (citing *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824)). "[T]here is no statute or procedural rule that permits a court to bar a retrial [after a mistrial] in the absence of misconduct and prejudice." *United States v. Wright*, 913 F.3d 364, 374 (3d Cir. 2019). That is because the parties are "entitled to resolution of the case by verdict from the jury,

---

[2] For more examples of courts granting civil retrials after mistrials as a matter of course, *see West v. Nabors Drilling USA, Inc*., 330 F.3d 379, 383 (5th Cir. 2003) ("The first jury to hear the case deadlocked, resulting in a mistrial. During the second trial…"); *Taylor v. First Union Corp. of S.C.*, 857 F.2d 240, 243 (4th Cir. 1988) ("The action resulted in a mistrial on October 12, 1987, and was retried before a jury on November 16, 1987."); *Estate of O'Brien v. City of Livingston*, No. CV 18-106-BLG-TJC, 2021 WL 5141074, at *1 (D. Mont. Nov. 4, 2021) ("This matter was tried to a jury twice. The first trial ended in a hung jury, and the second resulted in a verdict…"); *Hathaway v. Idaho Pac. Corp.*, No. 4:15-cv-00086-DCN, 2019 WL 12528652, at *2 (D. Idaho Jan. 16, 2019) (noting that, because the first trial ended with a hung jury, the court "declared a mistrial and ordered a new trial on all claims").

and jeopardy does not terminate when the jury is discharged because it is unable to agree." *Richardson v. United States*, 468 U.S. 317, 326 (1984). This logic applies with equal if not greater force in the civil context.

For nearly sixteen years, Plaintiffs have had to navigate all the "hurdles" CACI constructed in an effort to deny them access to federal court to vindicate their rights before a jury. That the first trial, after eight days of jury deliberations, resulted in a hung jury is not grounds to deny Plaintiffs a second trial. "A trial court cannot reach negative inferences from a jury's failure to reach a verdict," and "[t]here is no way to decipher what a hung jury represents." *Jordan v. Large*, 27 F.4th 308, 312 (4th Cir. 2022); *accord Rivera v. La Porte*, 896 F.2d 691, 693 (2d Cir. 1990) ("A jury's inability to reach a verdict cannot be taken as a finding against a plaintiff."). Plaintiffs are entitled to present their case to a jury again.

## II. THE COURT DENIED CACI'S RULE 50(A) MOTION, AND ANY RENEWED MOTION WOULD BE FUTILE

The only possible basis on which the Court could deny Plaintiffs a retrial is if the Court grants judgment as a matter of law to CACI. But the Court already denied CACI's Rule 50(a) motion at the close of Plaintiffs' case. *See* Apr. 17, 2024 Trial Tr. (Afternoon) at 12:24-13:12.[3] In doing so, the Court correctly found that "there's more than enough evidence … to allow this case to go forward." *Id.* at 13:1-2. The Court also rejected CACI's jurisdictional argument, explaining: "Now that I'm getting the actual evidence in a different capacity, I'm even more satisfied now that there's been enough domestic activity … to let this case go forward at this point." *Id.* at 13:6-10.

---

[3] The April 17, 2024 afternoon trial transcript is attached to the Declaration of Muhammad U. Faridi ("Faridi Decl.") as Exhibit 1.

15089629

As explained below, any renewed motion by CACI would be futile because CACI could not meet its burden on a renewed Rule 50(b) motion. If CACI does renew its motion, Plaintiffs will submit an opposition brief that comprehensively addresses CACI's arguments and fully recounts the evidence that supports Plaintiffs' claims.

### A. The Demanding Legal Standard CACI Would Face If It Renews Its Motion for Judgment as a Matter of Law

For the Court to grant judgment in its favor, CACI would have to establish that "a reasonable jury would not have a legally sufficient evidentiary basis to find for" Plaintiffs. Fed. R. Civ. P. 50(a)(1). In assessing any Rule 50(b) motion from CACI, the Court would have to "draw all reasonable inferences in favor of [Plaintiffs], and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). The Court would also have to "assume that the testimony in favor of plaintiffs was credible, unless totally incredible on its face, and ignore evidence to rebut it." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 722 (4th Cir. 2019) (citation omitted). Additionally, the Court would have to "disregard all evidence favorable to [CACI] that the jury is not required to believe," including any evidence proffered by CACI that was contradicted or impeached by other evidence or that came from interested witnesses (like current or former CACI employees). *Reeves*, 530 U.S. at 151. Under that demanding standard, CACI could not meet its burden to show that it is entitled to judgment as a matter of law.

### B. Substantial Evidence Supports Plaintiffs' Conspiracy Claim

As the Court instructed the jury, to prove their conspiracy claim, Plaintiffs had to establish the following elements:

> 1. There was an agreement between two or more persons to inflict torture or cruel, inhuman, or degrading treatment on detainees in the Abu Ghraib hard site.

4

> 2. Defendant knowingly and intentionally joined the conspiracy;
>
> 3. Either the defendant or a co-conspirator committed an overt act in furtherance of the conspiracy; and
>
> 4. The torture and/or cruel, inhuman, or degrading treatment to which plaintiffs were subject resulted from acts in furtherance of the conspiracy.

*See* ECF No. 1617-4 at 31 (listing elements of conspiracy that Plaintiffs had to prove).

Plaintiffs proffered substantial evidence as to each of these elements. Major General Taguba and Major General Fay found in their reports, and testified before the jury, that CACI interrogators instructed military police to abuse detainees as a way to "set the conditions" for interrogations. *See* Faridi Decl., Ex. 2 (PTX-137) at 18; Faridi Decl., Ex. 3 (Apr. 16, 2024 Trial Tr. (Afternoon)) at 11:9-13:1; Faridi Decl., Ex. 4 (PTX-23) at 102-03, 121, 166, 168; Gen. Fay Tr. (ECF No. 1591, Ex. B) at 19:22-20:02, 86:16-19. General Fay even identified numerous instances of CACI interrogators directing abuse in his report. Ex. 4 at 121, 166, 168. Consistent with General Taguba's and General Fay's findings, military police members who abused detainees—e.g., Ivan Frederick, Charles Graner, Megan Ambuhl Graner, and Sabrina Harman— testified that interrogators instructed them to mistreat detainees so as to "soften them up" for interrogations and to "get them to talk." I. Frederick Tr. (ECF No. 1588, Ex. A) at 54:13-16, 57:05-7, 58:05-08, 81:24-82:1, 98:17-98:22, 126:24-127:1; C. Graner Dep. Tr. (ECF No. 1585, Ex. A) at 47:17-19, 48:06-11, 49:7-10; M. Ambuhl Graner Dep. Tr. (ECF No. 1588, Ex. B) at 46:06-08, 46:13-17; S. Harman Dep. Tr. (ECF No. 1588, Ex. C) at 32:05-33:08, 42:23-43:2, 43:7-9. Former CACI interrogator Torin Nelson told the jury that he personally saw and heard evidence of other CACI interrogators directing detainee abuse. *See* Faridi Decl., Ex. 5 (Apr. 15, 2024 Trial Tr. (Afternoon)) at 89:6-90:9, 89:21-90:8, 95:9-96:9, 97:12-97:23. And, of course, Plaintiffs testified that they were horrifically abused before, during, and after interrogations,

5

sometimes in the presence of civilian interrogators who appeared to be directing the abuse. The abuse Plaintiffs endured was consistent with what General Taguba and General Fay described: Plaintiffs were beaten, terrorized with dogs, and forced to remain naked for hours and even days on end. *Id.* at 35:12-51:22; Faridi Decl., Ex. 6 (Apr. 16, 2024 Trial Tr. (Morning)) at 8:15-34:3; Faridi Decl., Ex. 7 (Apr. 17, 2024 Trial Tr. (Morning)) at 14:18-25:3. Plaintiffs' testimony, plus the expert testimony of Dr. Jens Modvig, demonstrated that Plaintiffs suffered physical and mental abuse amounting to torture and cruel, inhuman, and degrading treatment resulting from acts in furtherance of the conspiracy to soften up detainees for interrogations in which CACI employees participated.

Assuming (as the Court must) that this testimony is credible and drawing all reasonable inferences in Plaintiffs' favor, a reasonable jury could find that Plaintiffs proved each element of their conspiracy claim. Indeed, the jury's notes and questions, which focused almost exclusively on CACI's defenses, suggest that it found the existence of a conspiracy and CACI's participation in it.

### C. Plaintiffs' Aiding-and-Abetting Claim Is Also Viable

Plaintiffs heard the Court's skepticism of their aiding-and-abetting claims at the May 2, 2024 proceeding. As the Court is aware, Plaintiffs have heeded the Court's admonitions to streamline their case, and Plaintiffs will try to further streamline their case during the retrial. However, Plaintiffs respectfully submit that the aiding-and-abetting claim is viable under applicable law, and it is not the issue that caused any confusion to the jury. As recounted below, the aiding-and-abetting claim against CACI is amply supported by the evidence.

The Court instructed the jury that, to prevail on this claim, Plaintiffs had to prove the following:

15089629

> 1. That Army military personnel subjected that plaintiff to torture
> or cruel, inhuman or degrading treatment.
>
> 2. That CACI interrogators provided practical assistance to the
> military personnel that had a substantial effect on the military
> personnel torturing or inflicting cruel, inhuman, or degrading
> treatment on that plaintiff; and
>
> 3. That, when CACI interrogators provided the assistance, they
> acted with the purpose of facilitating torture and/or cruel, inhuman,
> or degrading treatment on that plaintiff.

ECF No. 1617-4 at 33.[4]

That Plaintiffs established the first element cannot be credibly disputed—the element is proved by, among other things, Plaintiffs' and Dr. Modvig's testimony as to the abuse and treatment Plaintiffs endured during their detention at the Hard Site and the international community's understanding of torture and cruel, inhuman, or degrading treatment.

To the extent that element two requires a "causal link" between CACI interrogators and the abuse Plaintiffs suffered,[5] that causal link is supplied by, for example, the following six separate pieces of evidence, which the Court would have to credit when reviewing a Rule 50(b)

---

[4] Plaintiffs objected to the Court's instruction and its formulation of the applicable law as to their aiding-and-abetting claim, and maintain their objections. ECF No. 1604 at 7. Nevertheless, for the reasons set forth herein, Plaintiffs are entitled to a retrial on their aiding-and-abetting claims even under the Court's formulation of the applicable law.

[5] To be clear, it is Plaintiffs' position that no such causal link is required by the case law. *See, e.g.*, *Est. of Rodriquez v. Drummond Co.*, 02-cv-665 (N.D. Ala.), Dkt. 460-11, Trial Tr. at 2140:23-2141:7 (jury charge as read) (instructing the jury as to aiding and abetting liability, "Substantial assistance, as used in these instructions, means that the defendants knowingly provided practical assistance that had a substantial [e]ffect on the perpetration of the killings of Locarno, Orcasita and Soler. *The acts of assistance need not have caused the acts of the killers*. Plaintiffs' proof is sufficient if the act or acts of assistance made a significant difference to the perpetration of the killings." (emphasis added)); *Jara, et al. v, Nunez*, 13-cv-1426 (M.D. Fl.), Dkt. 184 at 18-19 (instructing the jury that "Under an aiding and abetting theory of liability*, it is not necessary that Defendant knew specifically which wrongful acts were being committed by the perpetrators, so long as they were a natural and foreseeable result of the activity that Defendant helped to undertake.*" (emphasis added)).

7

motion. First, the parties stipulated that CACI interrogators interrogated Plaintiffs Al-Zuba'e and Al Shimari. Ex. 6 at 65:25-66:2; Ex. 7 at 9:24-10:1. Second, CACI's Dan Porvaznik testified that CACI interrogators wore civilian clothes and could easily be distinguished on that basis from military personnel. Faridi Decl., Ex. 8 (Apr. 19, 2024 Trial Tr.) at 102:11-103:1. Third, Plaintiff Al-Ejaili testified that he was repeatedly interrogated by a tall white man with a goatee wearing civilian clothes, whom the Court should infer is CACI interrogator Steve Stefanowicz. Ex. 5 at 48:12-50:17, 72:16-73:2. Fourth, Plaintiffs Al-Zuba'e and Al Shimari testified that they were also interrogated repeatedly by men in civilian clothing, whom the Court should infer were CACI interrogators. Ex. 6 at 22:9-12, 25:9-20; Ex. 7 15:5-9. Fifth, each Plaintiff testified that they were abused before, during, and after interrogations, and sometimes clearly at the civilian interrogator's direction. Ex. 5 at 35:12-51:22; Ex. 6 at 8:15-34:3; Ex. 7 at 14:18-25:3. And sixth, Plaintiffs Al-Ejaili and Al Shimari testified that Charles Graner, a member of the military police, abused them. *See* Ex. 5 at 42:24-45:3; Ex. 7 at 25:10-17, 60:24-61:8. In turn, Graner testified that civilian interrogators (which the proof at trial established included CACI interrogators) instructed him on how to treat detainees, that he followed those instructions, and that the civilian interrogators told him he was doing a good job. C. Graner Dep. Tr. (ECF No. 1585, Ex. A) at 47:17-19, 49:7-10, 49:22-50:06. This proof of direct causal links between CACI interrogators and the abuse inflicted upon Plaintiffs would more than support a finding for Plaintiffs on element two.

As to element three (the "purpose of facilitating" requirement), the evidence described above in section II.B shows that the reason why CACI interrogators directed the abuse of detainees—and by inference, Plaintiffs—was to "soften them up" for interrogations so that CACI could show results to its U.S.-military customer. So, drawing all reasonable inferences in

8

15089629

Plaintiffs' favor, the Court would have to accept as fact that CACI interrogators instructed military personnel to abuse each Plaintiff with the purpose of "softening them up" for interrogations. That fact establishes CACI's liability for aiding and abetting.

This Court recognized as much in its 2018 motion-to-dismiss decision. There, the Court held that allegations that CACI personnel were "directing [military personnel] on how to set the conditions of confinement" and "ordering them to employ various abusive tactics," with the goal being to "'soften up' the detainees to convince them to cooperate with CACI's interrogators," stated a claim for aiding-and-abetting liability. *Al Shimari v. CACI Premier Tech.*, 300 F. Supp. 3d 758, 786 (E.D. Va. 2018). That holding is the law of the case. It also comports with the well-established principle that "[a]dvice or encouragement to act" can constitute aiding and abetting if it is "a substantial factor in causing the resulting tort." Restatement (Second) of Torts § 876 (1979). On this issue, two illustrations from the Restatement (Second) of Torts (1979) are instructive. First: "A and B participate in a riot in which B, although throwing no rocks himself, encourages A to throw rocks. One of the rocks strikes C, a bystander. B is subject to liability to C." *Id.* § 876. And second: "A, a policeman, advises other policemen to use illegal methods of coercion upon B. A is subject to liability to B for batteries committed in accordance with the advice." *Id.* If these examples constitute aiding and abetting, so too do CACI's directions to military personnel to abuse detainees with the purpose of softening them up—i.e., facilitating torture and or cruel, inhuman, or degrading treatment—for interrogations.

Similarly, in *Halberstam v. Welch*, the D.C. Circuit examined a situation where "a person who had given verbal encouragement ('Kill him!' and 'Hit him more!') to an assailant" was found liable for aiding and abetting even though that person "had not physically assisted in the battery," because "liability did not require a finding of action in concert, nor even that the injury

9

15089629

had directly resulted from the encouragement." 705 F.2d 472, 478 & 481 (D.C. Cir. 1983). The court noted that "the fact of encouragement was enough to create joint liability for the battery." *Id.*; *see also Al-Sabah v. World Bus. Lenders, LLC*, 2024 WL 263579, at *24 (D. Md. Jan. 24, 2024) (explaining that for purposes of aiding-and-abetting tort liability, substantial assistance "can come in many forms, including abetting, inducing, encouraging, soliciting, or advising the commission of the offense, such as through words of encouragement or driving the getaway car." (quoting *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 490 (2023)).

Now that substantial trial evidence supports the allegations that the Court held were viable, there is a legally sufficient evidentiary basis on which a jury can find for Plaintiffs on their aiding-and-abetting claims.

### D. The Evidence Supports a Finding that CACI is Vicariously Liable for Its Interrogators' Role in the Abuse

The evidence supports a finding that CACI is vicariously liable for its interrogators' role in the abuse Plaintiffs suffered. The Court instructed the jury that employee conduct "is within the scope of employment if it is of the same general nature as that authorized or incidental to the conduct authorized by the corporation." ECF No. 1617-4.[6]

---

[6] To the extent that CACI seeks to prove that its employees' actions were outside the scope of employment, CACI bears the burden of so proving because the relationship between CACI and its employees was established. *See, e.g.*, *Pratt-Miller v. Arthur*, 701 F. App'x 191, 194 (4th Cir. 2017) ("After an employer-employee relationship has been established, *the defendant bears the burden of demonstrating that the employee was not acting within the scope of his employment when he committed the act complained of*, and any doubt based on the evidence must be resolved by a jury" (citing *Plummer v. Center Psychiatrists, Ltd*., 252 Va. 233, 476 S.E.2d 172, 174 (1996) (emphasis added)) (affirming Brinkema, J.).

Moreover, Plaintiffs objected to the Court's proposed instruction on scope of employment as incomplete, and proposed that Instruction 25 include an additional sentence: "Moreover, an employer may be liable even for an employee's unauthorized conduct if such wrongful conduct was foreseeable in view of the employee's duties." ECF No. 1604 at 8. As set forth in both their response to the Court's Instructions and in response to a jury question on scope of employment, Plaintiffs' additional sentence reflects the law of the case. *See* ECF No.

15089629

There is law of the case on this issue as well. In its 2018 decision denying CACI's motion to dismiss, the Court held that, as alleged in Plaintiffs' complaint, "the CACI interrogators' actions were undeniably related to and within the scope of their employment." *Al Shimari*, 300 F. Supp. 3d at 785. This is because, among other things, the "entire purpose of their employment was to direct the interrogation of detainees at the Hard Site—and the goal of the conspiracies was to design and implement a program of abuse to facilitate successful interrogations." *Id.* Additionally, "[b]ecause the alleged conspiracies were directly related to the interrogators' employment, CACI had an ability to monitor the interrogators to ensure that they did not enter into the conspiracies—and … to appropriately screen and train interrogators before sending them to Abu Ghraib and to discipline interrogators who committed transgressions." *Id.* "Moreover, CACI stood to benefit directly from its interrogators' actions because the facilitation of successful interrogations would please its most important client, the United States military, and perhaps position it to gain future contracts with the military." *Id.* Overall, the Court found that, taking Plaintiffs' allegations as true, "it is clear that CACI had an ability to head off the entry into these conspiracies and that CACI itself benefitted from its employees' participation in the conspiracies." *Id.* "Therefore," the Court concluded, "*respondeat superior* liability is appropriate." *Id.*

Each one of the allegations that underpinned the Court's reasoning in 2018 have now been substantiated by trial evidence. To give a few examples: CACI's contracts with the military stated that CACI "is responsible for providing supervision for all contractor personnel." Faridi Decl., Ex. 9 (PTX-83) at 7. The Army Field Manual required contractors like CACI to "manage,

---

1604 at 8 n.8 and n.9, and Faridi Decl., Ex. 14 (Apr. 29, 2024 Trial Tr.) at 10:12-11:17. Plaintiffs maintain that objection, even as they submit that the evidence supports a finding in Plaintiffs' favor under the instruction given by the Court.

11

supervise, and give direction to their employees," and to "take direct responsibility and action for [their] employee's conduct," because "[t]he contractor … has the most immediate influence in dealing with infractions involving its employees." Faridi Decl., Ex. 10 (PTX-207) at 15, 68. Dan Porvaznik, CACI's site lead at Abu Ghraib, testified that he had the authority to sit in on interrogations and stop CACI interrogators from giving directions to abuse detainees if he saw it occurring, and that CACI could unilaterally terminate interrogators for violating CACI's ethics code, breaking the law, or any other reason. *See* Ex. 8 at 104:5-8, 106:1-23, 107:9-15, 109:13-110:24. And CACI's contracts with the military also show it stood to earn as much as $32 million for providing interrogators to Abu Ghraib—giving CACI a motive to both facilitate successful interrogations and stay silent about abuse. *See* Ex. 9, Faridi Decl., Ex. 11 (PTX-84). Based on this evidence, a reasonable jury could reach the same conclusion that the Court did when it reviewed Plaintiffs' complaint.[7]

---

[7] In the same decision, the Court also held that Plaintiffs plausibly alleged that "CACI's senior management were aware of the ongoing abuse at the Hard Site, and CACI's decisions not to report this abuse and, in fact, to continue employing and even promoting the individuals involved constitute plausible evidence of an intent from the highest levels of the company to enter into the conspiracies that had developed among CACI's employees and military personnel." *Al Shimari*, 300 F. Supp. 3d at 784. Trial evidence now supports the inference that CACI senior management was aware of detainee abuse at the Hard Site and did not report it.

For example, Dan Porvaznik testified that a CACI employee named Claudius Albury reported to him that another CACI employee named Billy Krieger had abused detainees. *See* Ex. 8 at 111:12-113:25. And CACI's project manager in the United States who managed its contract with the military, Amy Monahan, testified that she received an email from a CACI employee reporting detainee abuses at Abu Ghraib in October 2003, and that she forwarded it to her superior Mark Billings, but that to her knowledge CACI took no steps to prevent its employees from participating in abuse after she received this email. *See* A. Monahan Dep. Tr. (ECF No. 1591, Ex. A) at 144:17-168:19; Faridi Decl., Ex. 12 (PTX-115). This evidence provides another independent basis on which to find CACI liable on Plaintiffs' conspiracy counts.

CACI has also asserted a borrowed-servant defense, for which it bears the burden of proof. *See* ECF No. 1617-4 at 23.[8] CACI cannot possibly meet that burden in a Rule 50(b) motion because the Court must disregard all evidence in CACI's favor that was in any way contradicted, impeached, or came from interested witnesses. *Reeves*, 530 U.S. at 151. That means the Court would have to ignore, for example, the assertions of CACI's witnesses that CACI lacked "operational control" over its interrogators, as these assertions were contradicted by various other trial evidence.

Some examples: CACI's contracts with the military and the Army Field Manual required CACI to manage and supervise its personnel and take responsibility for its interrogators' conduct. Ex. 9 at 7; Ex. 10 at 15, 68. CACI's Code of Conduct stated that it retained all rights "to direct, supervise control, and … discipline the work force." Faridi Decl., Ex. 13 (PTX-85) at 7-8. As noted above, Porvaznik testified that he was authorized to stop CACI interrogators from abusing detainees if he saw it occurring and that CACI could unilaterally fire interrogators for violating CACI's ethics code. Ex. 8 at 106:1-23, 107:9-15, 109:13-110:24. General Fay found that the Army relied on Porvaznik, the site lead, to interview CACI interrogators when they arrived at Abu Ghraib and to assign them to detainees, and Porvaznik admitted that on cross-examination. Ex. 4 at 74; Ex. 8 at 108:13-20, 103:17-104:4. CACI's Amy Monahan admitted that CACI sent interrogators to Abu Ghraib who did not meet the Army's requirements (as set forth in its contracts with CACI) without getting approval from the Army. A. Monahan Dep. Tr.

---

[8] Plaintiffs submitted that the Court should not give an instruction to the jury on borrowed servant, *see* Dkt. 1576 at 2-6, and objected to the Court's instruction as given, *see, e.g.*, Dkt. 1604 at 2-4. Plaintiffs also proposed additional elements to the instruction in response to jury questions. *See, e.g.,* Faridi Decl. Ex. 15 (Apr. 25, 2024 Trial Tr. 4:11-17, 4:23-5:2, 5:11-17) (submitting that borrowed servant doctrine allows for dual masters). Plaintiffs maintain their objections. Nevertheless, the evidence supports a finding that CACI did not meet its burden under the borrowed-servant instruction given by the Court.

15089629

(ECF No. 1601-2) at 80:15-82:02.  CACI's Scott Northrop admitted that CACI refused to fire its interrogator Dan Johnson, who was depicted in a photograph with a detainee in a stress position, even after the Army asked CACI to terminate him.  Ex. 8 at 63:19-69:24.  And CACI's corporate representative Arnold Morse admitted that Dan Porvaznik was CACI's "operational supervisor" at Abu Ghraib and was "charged with supervising all aspects of interrogation activities."  Arnold Morse Dep. Tr. (ECF No. 1591, Ex. C) at 172:14-172:24.  Drawing all reasonable inferences in favor of Plaintiffs, a reasonable jury could find that CACI failed to prove its borrowed-servant defense.

\*     \*     \*

Finally, Plaintiffs note that a jury of eight deliberated about this case for eight days before announcing they were deadlocked.  The jury appeared to take diligent notes during trial and asked many thoughtful questions of the Court while deliberating.  *See* ECF No. 1617-7.  Through their notes to the Court, the jury indicated that, after extensively reviewing and discussing the evidence, they viewed this case as a difficult one to decide.  *See id.* at 12, 22.  Judgment as a matter of law for CACI could not be warranted here: there is far too much evidence supporting Plaintiffs' claims.  Another jury should hear and decide Plaintiffs' claims.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court schedule a new jury trial on Plaintiffs' claims brought under the Alien Tort Statute against CACI for conspiring to commit and aiding and abetting torture and cruel, inhuman, and degrading treatment.

Dated: May 16, 2024

Respectfully submitted,

*/s/ Cary Citronberg*

Cary Citronberg (VA Bar #81363)

JOHNSON/CITRONBERG, PLLC
421 King Street, Suite 505
Alexandria, VA 22314
Tel. 703-684-8000 | cary@jc-attorney.com

Muhammad U. Faridi, *Admitted pro hac vice*
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036

Baher Azmy, *Admitted pro hac vice*
Katherine Gallagher, *Admitted pro hac vice*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor New
York, NY 10012

Shereef Hadi Akeel, *Admitted pro hac vice*
AKEEL & VALENTINE, P.C.
888 West Big Beaver Road
Troy, MI 48084-4736

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

   I hereby certify that on May 16, 2024, I electronically filed the foregoing, which sends notification to counsel for Defendants.

                  */s/ Cary Citronberg*
                  Cary Citronberg

16
15089629