# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

SUHAIL NAJIM
ABDULLAH AL SHIMARI *et al*.,

                Plaintiffs,

                *v*.

CACI PREMIER TECHNOLOGY, INC.,

                Defendant.

Case No. 1:08-cv-827 (LMB/JFA)

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR A NEW TRIAL

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.     CACI MISSTATES THE LAW AND EVIDENCE REGARDING PLAINTIFFS' CONSPIRACY CLAIMS ............................................................................................. 2

     A.    Plaintiffs Must Only Prove There is Sufficient Evidence from Which a Reasonable Jury Could Find in Their Favor ........................................................... 2

     B.    CACI's "Alternative" Conspiracy Theories are Contradicted by the Record and are Irrelevant to Plaintiffs' Claims ........................................................ 3

II.    CACI DISTORTS THE EVIDENCE SUPPORTING PLAINTIFFS' AIDING-AND-ABETTING CLAIMS ........................................................................................ 8

     A.    CACI Ignores and Misstates the Evidence of the Causal Link Between CACI and the Abuse Plaintiffs Suffered .............................................................. 8

         1.    The Court Should Infer that the Civilian Interrogators Who Directed Plaintiffs' Abuse Were CACI Employees ................................... 9

         2.    The Court Should Credit Plaintiffs' Testimony that They Were Abused Before, During, and After Interrogations ..................................... 12

     B.    CACI Does Not Engage with the Overwhelming Evidence that CACI Interrogators' Purpose in Encouraging Abuse Was to Soften Detainees for Interrogation ................................................................................................. 14

III.   THE EVIDENCE SUPPORTS A FINDING THAT CACI'S INTERROGATORS WERE ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT ......................... 16

IV.   A REASONABLE JURY COULD FIND THAT CACI DID NOT MEET ITS BURDEN TO PROVE THE BORROWED SERVANT DEFENSE .............................. 17

V.    THE COURT SHOULD NOT CERTIFY AN INTERLOCUTORY APPEAL .............. 18

CONCLUSION .................................................................................................................. 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Al Shimari v. CACI Int'l, Inc.*,
  679 F.3d 205 (4th Cir. 2012) (en banc) ...............................................19

*Al Shimari v. CACI Premier Tech.*,
  300 F. Supp. 3d 758 (E.D. Va. 2018) ...........................................15, 16

*Al Shimari v. CACI Premier Tech.*,
  657 F. Supp. 2d 700 (E.D. Va. 2009) ..................................................16

*Al Shimari v. CACI Premier Tech., Inc.*,
  324 F. Supp. 3d 668 (E.D. Va. 2018) ..................................................17

*Al Shimari v. CACI Premier Tech. Inc.*,
  758 F.3d 516 (4th Cir. 2014) ...............................................................19

*Al Shimari v. CACI Premier Tech. Inc.*,
  775 F. App'x 758 (4th Cir. 2019) ........................................................19

*CACI Premier Technology v. Al Shimari*,
  No. 19-648, Order (U.S. June 28, 2021) ..............................................19

*Duke v. Uniroyal Inc.*,
  928 F.2d 1413 (4th Cir. 1991) ...............................................................3

*Fontenot v. Taser Int'l, Inc.*,
  736 F.3d 318 (4th Cir. 2013) .................................................................3

*Fry v. Rand Constr. Corp.*,
  964 F.3d 239 (4th Cir. 2020) .................................................................3

*Halberstam v. Welch*,
  705 F.2d 472 (D.C. Cir. 1983) .............................................................14

*Martin v. Cavalier Hotel Corp.*,
  48 F.3d 1343 (4th Cir. 1995) ...............................................................16

*McFarlin v. Conseco Servs., LLC*,
  381 F.3d 1251 (11th Cir. 2004) ...........................................................19

*United States ex rel. Michaels v. Agape Senior Cmty., Inc.*,
  848 F.3d 330 (4th Cir. 2017) .........................................................18, 19

*Myles v. Laffitte*,
 881 F.2d 125 (4th Cir. 1989) ................................................................................18

*Price v. City of Charlotte*,
 93 F.3d 1241 (4th Cir. 1996) ...............................................................................2

*Reeves v. Sanderson Plumbing Prods., Inc.*,
 530 U.S. 133 (2000)..........................................................................................2, 18

*Twitter, Inc. v. Taamneh*,
 598 U.S. 471 (2023)..............................................................................................14

**Statutes**

28 U.S.C. § 1292(b) ...................................................................................................18

**Other Authorities**

Restatement (Second) of Torts § 876 cmt. d................................................................14

Rule 50(b) ...........................................................................................1, 2, 10, 15, 18

U.S. Const. amend. VII...............................................................................................1

## INTRODUCTION

CACI's opposition to Plaintiffs' motion for a new trial is almost entirely a rehash of its separately pending motion for judgment as a matter of law. This is because CACI "generally" agrees that Plaintiffs are entitled to a second trial absent the Court granting judgment as a matter of law for CACI. As discussed in Plaintiffs' opposition to CACI's Rule 50(b) motion, and as the Court repeatedly recognized at trial, this case involves a number of complex factual disputes. That is why a diligent jury grappled with this case for eight days before reporting they could not reach a verdict. Contrary to CACI's apparent expectation, it is not for the Court to evaluate the competing testimony and evidence in this case. The Seventh Amendment mandates a jury trial.

To gloss over the factual disputes, CACI repeatedly misstates the evidence and the law. To prevail on its motion for judgment as a matter of law and prevent a second trial, it is not enough for CACI to repeat its April closing argument and offer alternative legal theories, counter Plaintiffs' proof, challenge the credibility of witness testimony, and altogether weigh the evidence in the case. Such arguments are irrelevant on a motion for judgment as a matter of law. CACI admits as much in its opposition: that a Court "must draw all reasonable inferences in favor" of Plaintiffs and cannot "make credibility determinations or weigh the evidence." Instead, CACI must prove that even when the evidence is viewed in the light most favorable to Plaintiffs, a reasonable jury could not find in favor of Plaintiffs. CACI's closing argument was not enough to prevent a conscientious jury from declining to find for CACI on any of Plaintiffs' claims after deliberating for eight days, and CACI cannot prevent a second jury from hearing this case by baldly asserting that its self-serving evidence was somehow "unrebutted" or "undisputed."

CACI asks the Court to ignore the law and be the entity to weigh the wealth of hotly contested evidence in this case and accept CACI's entirely self-serving version of events, while

1

ignoring the wealth of evidence supporting Plaintiffs' claims. That is not the Court's role. It is only for the jury to decide the evidence. A new jury should be called to retry this case.

Plaintiffs' opposition to CACI's Rule 50(b) motion sets forth in greater detail why CACI's motion must be denied, and those arguments are not repeated here. Instead, this reply brief focuses on correcting CACI's many misstatements in its opposition to Plaintiffs' motion for a new trial.

## ARGUMENT

## I.   CACI MISSTATES THE LAW AND EVIDENCE REGARDING PLAINTIFFS' CONSPIRACY CLAIMS

As discussed in Plaintiffs' moving brief and their opposition to CACI's motion for judgment as a matter of law, there is substantial evidence from which a reasonable jury could find in favor of Plaintiffs on their conspiracy claims. *See* ECF Nos. 1643 ("Pls. Mem.") at 4-6 and 1649 ("Pls. Opp'n") at 8-12. Recognizing this fact, CACI attempts to reformulate the "hefty burden" it must meet to prevail on its motion for judgment as a matter of law.[1] *See Price v. City of Charlotte*, 93 F.3d 1241, 1249 (4th Cir. 1996).

### A.   Plaintiffs Must Only Prove There is Sufficient Evidence from Which a Reasonable Jury Could Find in Their Favor

CACI recognizes that in ruling on CACI's Rule 50 motion, the Court "must draw all reasonable inferences in favor of the [Plaintiffs,] and it may not make credibility determinations or weigh the evidence." ECF No. 1648 ("CACI Opp'n") at 2 (quoting *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 150 (2000)). CACI also agrees the Court must then "determine whether the evidence presented, combined with all permissible inferences, provides a

---

[1] CACI agrees "plaintiffs generally are allowed a retrial after a hung jury absent an intervening decision ending the case." ECF No. 1648 ("CACI Opp'n") at 1. Thus, CACI's opposition to Plaintiffs' motion for a new trial largely argues in support of its separately pending Rule 50 motion.

legally sufficient basis for a reasonable jury to find in favor of the [Plaintiffs]." *See id.* at 2-3

(citing *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 244 (4th Cir. 2020)).

Instead of arguing under these rather basic and uncontroversial principles, CACI invents

an additional hurdle: that Plaintiffs were required to disprove alternative theories of the case that

would not result in liability for CACI.  *See* CACI Opp'n at 4-5.  This is not the standard, which

is, again, whether viewing all the evidence most favorably to Plaintiffs a "reasonable jury *could*

return a verdict in favor of plaintiffs." *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1417 (4th Cir.

1991) (emphasis added).  If the answer to that question is yes, the Court must deny CACI's

motion "even if the [C]ourt's judgment on the evidence differs." *Id.*  It is not incumbent on

Plaintiffs to affirmatively disprove every alternative theory of the case CACI puts forth.

One of the cases CACI cites in its opposition, *Fry v. Rand Constr. Corp.*, is instructive on

this point.  "If the evidence as a whole is susceptible of more than one reasonable inference, a

jury issue is created and a motion for judgment as a matter of law should be denied." *Fry*, 964

F.3d at 244 (quoting *Fontenot v. Taser Int'l, Inc.*, 736 F.3d 318, 332 (4th Cir. 2013)).  Put

differently, if a jury could reasonably find in favor of Plaintiffs on their conspiracy claim,

regardless of how many alternative theories CACI raises, judgment as a matter of law cannot be

granted.

**B.**     **CACI's "Alternative" Conspiracy Theories are Contradicted by the
          Record and are Irrelevant to Plaintiffs' Claims**

In support of its misguided argument, CACI invents two alternative stories: (1) the

military police ("MPs") acted independently in abusing Plaintiffs; or (2) the MPs and CACI

interrogators conspired to abuse only particular detainees, which did not include Plaintiffs.  *See*

CACI Opp'n at 4-5.  To be clear, Plaintiffs need not disprove these theories to obtain a new trial

and instead must only show a reasonable jury could find in favor of Plaintiffs on their conspiracy

claims.  Plaintiffs' opposition to CACI's motion for judgment as a matter of law addresses at length how Plaintiffs' conspiracy claims survive CACI's motion.  *See* Pls' Opp'n at 8-12. Rather than repeating those arguments here, Plaintiffs instead respond to the misstatements in CACI's opposition brief.

In support of its "alternative" conspiracy theories, CACI argues the evidence shows "the most horrific abuse at Abu Ghraib was indisputably conducted by MPs wholly outside the interrogation context" and that "military intelligence had nothing to do with these despicable acts."  CACI Opp'n at 5-6.  This ignores Plaintiffs' theory of the case and the substantial evidence Plaintiffs introduced in support of it that the military police carried out the abuse of detainees at the direction of military intelligence, including CACI, to "soften up" detainees for interrogations.  *See* Pls. Mem. at 5-6; Pls. Opp'n at 4-6.  The "softening up" necessarily involved abuse prior to and after the interrogations.

CACI next argues the Jones-Fay Report supports an argument the MPs acted independently when they abused detainees and that the "types of mistreatment that could sometimes be attributed to abusive military intelligence practices could just as easily have been MPs undertaking independent action in the course of their prison guard duties."  *See* CACI Opp'n at 6.  Again, the Court must view the evidence in the light most favorable to Plaintiffs, so CACI's unsupported hypothesis that the abuse "could just as easily have been MPs undertaking independent action" is a nonstarter.  It is also demonstrably false.

Major General Fay's report and testimony supports Plaintiffs' theory that military intelligence, including CACI, worked with the military police to set the conditions for interrogations.  *See* ECF No. 1644-4 at 3 (finding one of the "primary causes" of the abuses at Abu Ghraib prison is "misconduct (ranging from inhumane to sadistic) by a small group of

morally corrupt soldiers and *civilians*," meaning CACI); *id.* at 41 ("MI solicitation of MP abuse included the use of isolation with sensory deprivation, removal of clothing and humiliation, the use of dogs as an interrogation tool to induce fear, and physical abuse."); *id.* at 102 (finding there was a "seemingly common practice of keeping detainees in a state of undress"); Gen. Fay Tr. (ECF No. 1591, Ex. B) at 19:22–20:02 (testifying CACI interrogators "were involved in the abuse" at Abu Ghraib); *id.* at 85:21-24 ("[I]t was probable that MI personnel were directing MP personnel to create this overall atmosphere that would support their ability to interrogate."); *id.* at 86:16-19 (agreeing "military police and interrogators were working together inside the hard site to set the conditions for interrogations").

CACI then sets up a strawman argument that CACI's presence at the Hard Site is not enough to hold it liable and refers to Plaintiffs' testimony that their abuse occurred before, during, and after interrogations during which civilian interrogators were present as the only evidence Plaintiffs offered of CACI's involvement in the abuses. *See* CACI Opp'n at 7. This ignores the mounds of additional evidence Plaintiffs proffered of CACI entering into a conspiracy with military police and military interrogators to "soften up" detainees for their interrogations. *See* Pls. Mem at 5-6; Pls. Opp'n at 4-12. Thus, CACI's conspiracy with military police and military interrogators to abuse detainees before, during, and after interrogations resulted in Plaintiffs' torture and cruel, inhuman, or degrading treatment.

CACI next asks the Court to find Plaintiffs' conspiracy claims fail because "the evidence at trial still does not exclude the possibility that OGA civilian interrogators independently subjected detainees, including Plaintiffs, to mistreatment." CACI Opp'n at 8. The possibility that OGA civilian interrogators were also involved in detainee abuse does not make Plaintiffs' theory that CACI was part of a conspiracy that resulted in Plaintiffs' abuse any less likely, much

less foreclose it.  Moreover, CACI's argument that "Plaintiffs did not offer the jury any proof that could allow them to determine whether any potentially culpable civilian interrogators who influenced MPs were employed by CACI or other government agencies," *see id.,* is demonstrably false for the reasons already discussed.[2]  CACI's focus on other government agencies also ignores that the Court forbade CACI from even eliciting testimony about non-CACI civilian interrogators because such testimony would be irrelevant, given the lack of evidence that any OGA civilian interrogators interacted with Plaintiffs.  *See* M. Faridi Decl. dated June 5, 2024, Ex. 1 (4/12/24 Hr'g Tr.) (ECF No. 1578) at 22:25-23:15.

CACI next raises its oft-repeated and consistently rejected "parallel conduct" argument that Plaintiffs must connect a specific CACI employee to Plaintiffs' torture and cruel, inhuman, and degrading treatment in order to prevail on its conspiracy claims.  *See* CACI Opp'n at 9-12. Plaintiffs will not again detail here why this argument must once again be rejected as it has been briefed and argued many times before, *see* Pls. Opp'n at 10 n.6, but will address some of the misstatements CACI makes in its support.  First, there is ample evidence of civilian interrogators (which, again, a reasonable jury could infer are CACI interrogators), including "Big" Steve Stefanowicz, Daniel Johnson, and Timothy Dugan, being present for, directing, and engaging in abuses of detainees.  *See* Pls. Mem at 5-6; Pls. Opp'n at 5-6.  Per the Court's instructions, Plaintiffs need not connect any single CACI interrogator to a Plaintiff because "[o]nce a conspiracy is formed, each member of the conspiracy is liable for the actions of other co-conspirators performed during the course and in furtherance of the conspiracy."  ECF No. 1617-4 at 31.  So if military intelligence, including CACI interrogators, were part of a conspiracy with

---

[2] CACI now belatedly claims that the civilian interrogator with a ponytail who Al Shimari described in his testimony must have been from a government agency because Dan Porvaznik does not remember any CACI interrogators wearing ponytails.  Plaintiffs address this below at section II.A.1.

the military police to "soften up" detainees for interrogations, CACI is liable for any abuse of

detainees resulting from that conspiracy.

Regarding Dugan, CACI falsely states the only evidence in the record is he "once pushed

one detainee (not a Plaintiff) down and dragged him to an interrogation booth." *See* CACI

Opp'n at 9.  CACI also falsely claims the only evidence in the record related to Johnson involves

an Iraqi Police Officer.  *See id.*  This ignores not only Plaintiffs' testimony that before, during,

and after interrogations with civilian interrogators they were abused, but Torin Nelson's

testimony that both Dugan and Johnson were involved in other instances of detainee abuse.  *See*

4/15/24 Trial Tr. (PM) (ECF No. 1650-16) at 95:6-21, 97:18-23 (testifying regarding Johnson's

concerning use of harsh interrogation techniques; regarding an interrogation in which Johnson

was "yelling, the walls were being beaten, banging was going on, furniture … was most likely

being thrown around"; and about Johnson's reports that in his interrogations, he made a detainee

"cry[] like a little baby in the corner" and "broke[]" a detainee "into a thousand pieces like

humpty-dumpty"); *id*. 89:6-90:7 (testifying that detainee reassigned from Dugan to Nelson

because of his medical condition came to Nelson with "very intense" bruising across entire

forearm and "bump on his forehead").

CACI's claim that the only evidence introduced at trial regarding Stefanowicz's abuses

all related to one detainee to whom he was assigned, *see* CACI Opp'n at 10-11, is likewise false.

Without reference to any specific detainee, Major General Taguba concluded Stefanowicz

"[a]llowed and/or instructed MPs…to facilitate interrogations by 'setting conditions'" and that

he "clearly knew his instructions equated to physical abuse."  ECF No. 1644-2 at 48.  CACI

claims Major General Fay's report only shows Stefanowicz was accused of using dogs with a

single detainee, but in doing so, CACI only addresses three of the five "incidents" of abuse

Major General Fay found he was involved in, *see* CACI Opp'n at 11 (citing PTX-23 at 120-21), as if the other incidents of abuse do not exist. *See* PTX-23 at 108-09, 120-121, 123, and 168 (finding Civilian-21, meaning Stefanowicz, was involved in Incidents 5, 28, 30, 32, and 33).

CACI fails to explain its assertion that Incidents 28, 30, and 32 involve the same detainee, nor is there evidence of that from the cited passages themselves. CACI also fails to address Major General Fay's findings regarding Big Steve's routine participation in abuse—that it was "common knowledge that [Stefanowicz] used dogs," that Stefanowicz was present while dogs were being used "every other day," and that Stefanowicz directed MPs to use dogs on detainees outside of an interrogation setting as a "softening up" technique. *See* PTX-23 at 121.

At bottom, CACI's arguments against Plaintiffs' conspiracy claims are a series of strawmen that it proceeds to knock down with strings of misleading factual assertions to avoid the inevitable conclusion that there is ample evidence from which a reasonable jury could find in favor of Plaintiffs' actual conspiracy claims.

## II. CACI DISTORTS THE EVIDENCE SUPPORTING PLAINTIFFS' AIDING-AND-ABETTING CLAIMS

CACI insists that heavily disputed factual issues were somehow undisputed and that the self-serving testimony that CACI put forward (like its employees' denials they engaged in abuse) was somehow unrebutted. The Court should not be fooled by CACI's mischaracterizations.

### A. CACI Ignores and Misstates the Evidence of the Causal Link Between CACI and the Abuse Plaintiffs Suffered

In their initial brief, Plaintiffs set forth six pieces of evidence establishing a causal link between CACI interrogators and the abuse Plaintiffs suffered.[3] *See* Pls. Mem. at 7-8; *see also*

---

[3] As noted in Plaintiffs' initial brief, it is Plaintiffs' position that no such causal link is required by the case law. *See* Pls. Mem. at 7 n.5. Nevertheless, Plaintiffs' aiding-and-abetting claims are viable even under the Court's formulation of the applicable law.

Pls. Opp'n at 6-7.  For the following reasons, none of CACI's responses to this evidence are persuasive.

>    1.    The Court Should Infer that the Civilian Interrogators Who Directed
>          Plaintiffs' Abuse Were CACI Employees

CACI first argues that the Court should not assume that the civilian interrogators described in Plaintiffs' testimony were CACI employees and speculates that they could have been from a government agency.[4]  *See* CACI Opp'n at 14.  This argument borders on frivolous.  As noted above, there is *zero evidence* that any civilian from any government agency ever interrogated Plaintiffs.  To the contrary, the United States' interrogatory responses indicate that Al Shimari and Al-Zuba'e were interrogated by Army interrogators and CACI interrogators; the interrogatory responses identify no other civilian as having interrogated Plaintiffs.  *See* DTX-2 (ECF No. 1650-37) at 4-6.  Moreover, it is undisputed that Army interrogators wore military clothes, while CACI interrogators wore civilian clothes like the clothes that Plaintiffs testified their interrogators wore.  4/19/24 Trial Tr. (ECF No. 1650-9) at 44:20-22, 102:11-103:1.  And there is overwhelming evidence from Generals Taguba, General Fay, and the MPs that CACI interrogators directed the abuse of detainees.  So, it would be reasonable for a jury to infer that the civilian interrogators Plaintiffs described in their testimony were CACI employees.

Unable to prove that any non-CACI civilian ever interrogated Plaintiffs, CACI instead challenges whether specific civilian interrogators that Plaintiffs described were CACI employees.  First, CACI questions whether Steve Stefanowicz—a 6'5, white male with a

---

[4] CACI's only support for this statement is a single reference in the Fay report to an unidentified detainee who was in the custody of a non-military government agency somewhere at Abu Ghraib.  *See* CACI Opp'n at 14 (citing PTX-23 at 105).  There is zero indication that that detainee's experience has anything to do with Plaintiffs' experience.  Plaintiffs were not in the custody of a civilian agency: they were in the military's custody.  Indeed, the Fay Report does not even say whether that other detainee was at Tier 1 of the Hard Site, where Plaintiffs were.

goatee—was the tall white civilian male interrogator with a goatee that Salah Al-Ejaili described in his testimony. *See* CACI Opp'n at 14; S. Stefanowicz Dep. (ECF No. 1598-1) at 106:24-107:4. CACI is free to dispute that issue before a jury. But there is no doubt that a reasonable jury could find that the interrogator Al-Ejaili described was Stefanowicz (or, at the very least, another CACI employee given that CACI employees wore civilian clothes). There is overwhelming evidence from General Taguba, General Fay, and the MPs that implicates Stefanowicz in detainee abuse. *See* Pls. Opp'n at 5-6 (recounting some of this evidence). It is undisputed that Stefanowicz questioned Al-Ejaili at least once, despite not being assigned to Al-Ejaili. *See* DTX-2 at 16. And there is no evidence that any non-CACI civilian interrogator ever interrogated Al-Ejaili. *See* DTX-2 at 4-6. Contrary to what CACI argues, Plaintiffs need not prove that Stefanowicz was the only tall white civilian male interrogator with a goatee at the Hard Site in order to defeat a Rule 50(b) motion. *See* CACI Opp'n at 14. That would flip the Rule 50(b) standard on its head.

CACI next asserts that Suhail Al Shimari identified a civilian interrogator wearing a ponytail "that was indisputably *not* a CACI interrogator." CACI Opp'n at 14-15. CACI is wrong: that point *is* disputed. CACI's only support for that point is that Dan Porvaznik did not recall any CACI interrogators who wore a ponytail. *See* 4/19/24 Trial Tr. (ECF No. 1650-9) at 93:2-5. A jury is not required to accept Porvaznik's recollection in 2024 as to the hairstyle of one of the numerous CACI employees present at the Hard Site in 2003 as definitive proof that no CACI interrogator ever had a hairstyle resembling a ponytail. Indeed, Porvaznik did not even try to explain how he could know the hairstyle that each CACI interrogator wore every day they showed up to work over a six-month period. Porvaznik's credibility was also at issue: he was a CACI employee and he falsely claimed at his deposition that CACI interrogator Rich Arant left

Abu Ghraib because he needed a cataracts operation, when in fact Arant left because he had witnessed detainee abuse.  *Compare* 4/19/24 Trial Tr. (ECF No. 1650-9) at 114:22-115:10, *with id.* at 118:7-119:1.  And, as noted above, it is undisputed that CACI interrogators interrogated Al Shimari, and there is no evidence any non-CACI civilian interrogator ever interacted Al Shimari.  A reasonable jury could thus find that the ponytail-wearing interrogator Al Shimari described was from CACI.  In any event, the ponytail-wearing interrogator was just one of the civilian interrogators Al Shimari testified about.  *See* 4/17/24 Trial Tr. (AM) (ECF No. 1650-5) at 14:22-15:8 (Al Shimari was interrogated by a civilian two or three times at Tier 1 of the Hard Site).

Yet another piece of evidence linking CACI to the abuse Al Shimari suffered is that, per the government's interrogatory responses, CACI Interrogator A's notes say that his interrogation of Al Shimari on December 15, 2003 lasted two hours and fifty-five minutes.  DTX-2 at 7.  Al Shimari testified that, while he was interrogated by a civilian, he was forced to stand against a wall at gunpoint for "about three hours."  4/17/24 Trial Tr. (AM) ) (ECF No. 1650-5) at 20:2-4.  The jury could reasonably infer that this overlap in timing is no coincidence: the interrogation CACI Interrogator A reported and the interrogation described by Al Shimari were one and the same.  Even if CACI could prove that one interrogator was not from CACI (which it cannot), that would not defeat Al Shimari's aiding-and-abetting claim.

CACI also disingenuously claims that "Plaintiffs themselves have admitted that they lack facts tying CACI personnel to their alleged mistreatment."  CACI Opp'n at 14 & n.9.  Plaintiffs did not admit that.  In some of the excerpts CACI cites, Plaintiffs said they did not know the identity of some of the persons directing their mistreatment.[5]  This is perfectly understandable:

---

[5] *See* 4/15/24 Trial Tr. (PM) (ECF No. 1650-16) at 62:7-10 ("Q. Are you aware of any CACI employees being present while you were tied up with your hands behind your head overnight? A.  I did not know who they were."); *Id.* at 71:13-17 ("And you're not aware of any specific instance of a CACI employee telling anyone to mistreat you, are you?  A.  If there were known individuals that identified themselves, I

interrogators did not tell detainees, "I work for CACI" or "I told the soldiers to hurt you."  In other excerpts CACI cites, Plaintiffs testified that soldiers laid hands on them directly.[6]  This is consistent with Plaintiffs' theory that CACI interrogators encouraged soldiers to abuse detainees to soften them up for interrogations.  And in the remaining excerpts cited by CACI, Plaintiffs were testifying about events that did not happen at Abu Ghraib and are thus not part of this case.[7]  None of this testimony comes close to the admission that CACI claims Plaintiffs made.

Finally, CACI acknowledges that at least two CACI interrogators interrogated Al-Zuba'e and Al Shimari.  Yet CACI asserts that "unrebutted evidence"—i.e., those two interrogators' denials that they abused detainees—proves that no abuse occurred during those interrogations.  CACI Opp'n at 15.  Not so.  The interrogators' self-serving testimony was very much rebutted by Plaintiffs' testimony that they were abused before, during, and after interrogations conducted by civilians.  Saying evidence is "unrebutted" does not make it so.  It is for a jury, not this Court, to decide which witnesses to believe: Plaintiffs or the CACI interrogators.

    2.    The Court Should Credit Plaintiffs' Testimony that They Were Abused Before, During, and After Interrogations

Next, CACI urges that "there was no actual evidence" to support the proposition that Plaintiffs were abused in temporal proximity to interrogations, sometimes clearly at the civilian interrogator's direction.  CACI Opp'n at 15.  That is absurd.

---

would have known them. *But the individuals were not identifying themselves*." (emphasis added)); 4/16/24 Trial Tr. (AM) (ECF No. 1659-13) at 51:12-15, 56:10-22; 4/17/24 Trial Tr. (AM) (ECF No. 1650-5) at 51:1-7, 51:24-52:4.

[6] *See* 4/17/24 Trial Tr. (AM) (ECF No. 1650-5) at 54:13-25, 55:24-56:5; 4/15/24 Trial Tr. (PM) (ECF No. 1650-16) at 61:20-23.

[7] *See* 4/15/24 Trial Tr. (PM) (ECF No. 1650-16) at 55:11-16; 4/17/24 Trial Tr. (AM) (ECF No. 1650-5) at 39:20-40:6.

Plaintiffs' extensive testimony about the abuse they suffered before, during, and after interrogations supports this proposition. For example, Al-Zuba'e testified that, immediately after he was interrogated by a civilian, the civilian called a guard to take him away. 4/16/24 Trial Tr. (AM) (ECF No. 1644-7) at 22:2-23:6. The guard then beat Al-Zuba'e and shackled his hands to a bed over his head, with Al Zubae's feet barely touching the floor, and left Al-Zuba'e like that for a full day without giving him food, water, or letting him use the bathroom, resulting in Al-Zuba'e defecating on himself. *Id.* at 23:7-25:7. Similarly, Al Shimari testified that he was forced to kneel on sharp stones during an interrogation conducted by a man in a black T-shirt, 4/17/24 Trial Tr. (AM) (ECF No. 1644-7) at 15:5-9, 17:18-19:11, and that he was made to stand against a wall at gunpoint for three hours during another interrogation by that same individual, *id.* at 19:12-20:17. And Al-Ejaili testified that he was shackled in a stress position and beaten right before an interrogation conducted by a tall white civilian with a goatee. 4/15/24 Trial Tr. (PM) (ECF No. 1650-16) at 47:12-48:25. CACI may ask a jury not to believe this testimony, but CACI cannot deny it exists.

It does not matter that Plaintiffs do not speak English and thus could not understand what their civilian interrogators said to the MPs. *See* CACI Opp'n at 15. Plaintiffs saw the interrogators speak to the MPs, and then Plaintiffs were abused. This is consistent with the evidence from General Taguba, General Fay, and the MPs that CACI interrogators instructed MPs to abuse detainees generally. Considering all of that evidence, a jury can reasonably infer that, when Plaintiffs were abused in connection with their interrogations and saw their interrogators speak to the MPs committing the abuse, the interrogators were in fact instructing the MPs to commit the abuse.

13

Finally, CACI tries to minimize its link to Charles Graner, who abused Al-Ejaili and Al Shimari.  Graner testified that civilian interrogators (which the proof at trial established includes CACI interrogators) instructed him on how to treat detainees, that he followed those instructions, and that the civilians told him he was doing a good job.  C. Graner Dep. Tr. (ECF No. 1585) at 47:17-19, 49:7-10, 49:22-50:6.  From that testimony, in addition to the evidence from General Taguba, General Fay, and the other MPs, a jury can reasonably infer that CACI interrogators instructed or encouraged Graner and other MPs to abuse detainees, and that this had a substantial effect on Graner's abuse of Plaintiffs.  The brutality Graner and other MPs inflicted on Plaintiffs were "reasonably foreseeable acts done in connection with" the detainee abuse that CACI encouraged more generally, which satisfies the standard for aiding and abetting.  *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 485, 486–87 (2023) (quoting *Halberstam v. Welch*, 705 F.2d 472, 484 (D.C. Cir. 1983)); *see also* Restatement (Second) of Torts § 876 cmt. d (recognizing that "a person who encourages another to commit a tortious act may be responsible for other acts by the other" when those acts are foreseeable).

**B.     CACI Does Not Engage with the Overwhelming Evidence that CACI Interrogators' Purpose in Encouraging Abuse Was to Soften Detainees for Interrogation**

To prove the "purpose" element of aiding and abetting, Plaintiffs had to demonstrate that CACI interrogators acted with the purpose of facilitating torture and/or CIDT.  ECF No. 1617-4 at 33.  There is overwhelming evidence that, when CACI interrogators instructed military police to abuse detainees, they did so for the purpose of softening them up for interrogations.  *See* Pls. Mem. at 5; Pls. Opp'n at 4-9.  That evidence, by itself, is enough to prove the "purpose" element.

CACI does not bother to engage with that evidence.  Nor does CACI even dispute that a reasonable jury could find that CACI interrogators acted with the purpose of softening up detainees for interrogations.  Instead, CACI focuses its energy on challenging the common-sense

14

inference that CACI wanted to deliver results for its U.S.-military customer.  *See* CACI Opp'n at

16-18.  While it is of course reasonable for a jury to infer that CACI sought to please a customer

with whom it had a contract worth millions of dollars and hoped to get more contracts, *see* PTX-

83 (ECF No. 1644-9), PTX-84 (ECF No. 1644-11)—and CACI's borrowed-servant defense is

premised on the very notion that it sought to do the military's bidding—this question is a red

herring for purposes of CACI's Rule 50(b) motion.  All Plaintiffs needed to show at trial was that

CACI's purpose in encouraging detainee abuse was to soften up detainees for interrogations, and

substantial evidence supports that proposition.

       Next, CACI argues that this Court's 2018 decision is irrelevant.  CACI Opp'n at 18.  Not

so.  The 2018 decision is highly relevant because, in that decision, the Court held Plaintiffs'

allegations that CACI personnel were "directing [military personnel] on how to set the

conditions of confinement" in order to "'soften up' the detainees to convince them to cooperate

with CACI's interrogators" stated a claim for aiding and abetting.  *Al Shimari v. CACI Premier

Tech.*, 300 F. Supp. 3d 758, 786 (E.D. Va. 2018).  Those allegations are now supported by a

wealth of trial evidence.  If the allegations alone sufficed to defeat CACI's motion to dismiss,

then proof of those allegations requires the denial of CACI's Rule 50(b) motion.

       Finally, CACI repeats its myopic contention that "Plaintiffs have no evidence that CACI

interrogators encouraged MPs to abuse them."  CACI Opp'n at 19.  This is factually wrong:

ample evidence supports a finding that CACI investigators encouraged MPs to abuse Plaintiffs.

*See supra* section II.A.1.  But CACI also ignores the law: Plaintiffs need not prove that a CACI

interrogator encouraged the abuse of Plaintiffs *specifically*.  As explained in Plaintiffs' prior

briefing, when CACI interrogators instructed that MPs set conditions for interrogations of certain

detainees by mistreating them, CACI became liable not only for the abuse of those specific

detainees, but also for the foreseeable injuries to Plaintiffs and other detainees who suffered the same forms of brutality. *See* Pls. Opp'n at 13-15. Applying that standard, a reasonable jury could find for Plaintiffs.

## III. THE EVIDENCE SUPPORTS A FINDING THAT CACI'S INTERROGATORS WERE ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT

Relying upon an evidentiary ruling made from the bench regarding party-opponent admissions, CACI makes an extraordinary leap in arguing "if CACI interrogators had directed the abuse of Plaintiffs, such conduct would have been outside the scope of their employment" and thus CACI cannot be liable. *See* CACI Opp'n at 20. If it were true that an employee's actions violating the terms of their employment (or the law) could not result in liability to the employer, the concept of vicarious liability would vanish. All employers would avoid liability by simply following CACI's lead in requiring employees to conduct their actions "in accordance with local and higher-authority regulations" and laws. *See Id.*. Obviously, that is not the law.

Rather, the Court instructed the jury that "[c]onduct is within the scope of employment if it is of the same general nature as that authorized or incidental to the conduct authorized by the corporation."[8] ECF No. 1617-4 at 35. In its 2018 decision, the Court found that "the CACI

---

[8] Plaintiffs maintain their objections to the Court's jury instructions on scope of employment raised in their moving brief. *See* Pls. Mem. at 10 n.6. It is both black-letter law and the law of this case that "an employer may be liable even in tort for an employee's unauthorized use of force if such use was *foreseeable* in view of the employee's duties." *See Al Shimari v. CACI Premier Tech.*, 657 F. Supp. 2d 700, 729 (E.D. Va. 2009) (quoting *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1351 (4th Cir. 1995) (emphasis added)); *see also Al Shimari v. CACI Premier Tech.*, 300 F. Supp. 3d 758, 783-85 (E.D. Va. 2018) (rejecting CACI's argument that it may not be held liable for the acts of its employees and their co-conspirators under a respondeat superior theory because CACI interrogators' jobs included decision-making of pre-interrogation treatment for detainees and the conspiracy "to design and implement a program of abuse to facilitate successful interrogations" was "directly related to the interrogators' employment" with CACI). Even under the instruction given by the Court, though, a reasonable jury could find that CACI interrogators acted within the scope of their employment.

interrogators' actions were undeniably related to and within the scope of their employment." *See Al Shimari v. CACI Premier Tech., Inc*., 324 F. Supp. 3d 668, 696 (E.D. Va. 2018).

In trying to discount the Court's ruling as the law of the case, CACI argues Plaintiffs failed to introduce evidence at trial that the Court relied upon in issuing its decision. The lone example CACI provides to support this argument is that Plaintiffs did not introduce evidence CACI had the "ability to monitor the interrogators to ensure that they did not enter into the conspiracies." CACI Opp'n at 21. CACI then recounts at great length its version of Dan Porvaznik's testimony and how it does not support a finding that CACI had "an ability to monitor the interrogators to ensure that they did not enter into the conspiracies." *Id.* Buried within its chosen excerpts of testimony, CACI admits Porvaznik testified that he had the "ability to sit in on interrogations carried out by CACI employees," and that "if he saw or heard an interrogation where detainee abuse was occurring, he would stop it." *Id.* at 21-22. Despite CACI's spin on it, this is an admission that a CACI employee had the ability and authority to monitor CACI's interrogators during interrogations.

CACI otherwise ignores the evidence cited in Plaintiffs' moving brief showing how the allegations underpinning the Court's decision were borne out at trial. *See* Pls. Mem. at 10-14.

## IV.   A REASONABLE JURY COULD FIND THAT CACI DID NOT MEET ITS BURDEN TO PROVE THE BORROWED SERVANT DEFENSE

CACI devotes five pages to recounting how it interprets the evidence cited in Plaintiffs' moving brief regarding the borrowed servant defense. It argues the Court must look to the testimony in support of its defense and ignore the evidence Plaintiffs cite that contradicts it. *See* CACI Opp'n at 23-27. CACI likewise argues its own employee's testimony that the Army Field Manual Plaintiffs cite in their moving brief "is just guidance; it's not policy" is uncontested evidence, *see id.*, despite the manual itself providing "[t]his manual reflects relevant doctrine,

17

incorporates lessons learned from recent operations, and conforms to Army doctrine and policy." PTX-207 (ECF No. 1644-10) at 5. CACI goes on to list other examples of evidence purportedly contradicting Plaintiffs' evidence that CACI had the ability to control its interrogators but this is not how judgment as a matter of law works. Again, the Court must "draw all reasonable inferences in favor of [Plaintiffs], and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Plaintiffs set forth in their opposition to CACI's Rule 50(b) motion the reasons why CACI is not entitled to judgment as a matter of law on its borrowed-servant defense. *See* Pls. Opp'n at 15-26. Those reasons apply with equal force to the arguments CACI makes now and need not be repeated here.

## V.   THE COURT SHOULD NOT CERTIFY AN INTERLOCUTORY APPEAL

If the Court denies CACI's Rule 50(b) motion, there is no basis to certify this case for interlocutory appeal. In order to certify an interlocutory appeal, "the order being reviewed must involve 'a controlling question of law as to which there is substantial ground for difference of opinion,' and an immediate appeal from that order must promise to 'materially advance the ultimate termination of the litigation.'" *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017) (quoting 28 U.S.C. § 1292(b)). The Fourth Circuit has "cautioned that § 1292(b) *should be used sparingly* and thus that its requirements must be strictly construed." *Id.* (quoting *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989) (emphasis added). Certification is only appropriate where there is an "abstract legal issue that the court of appeals can decide quickly and cleanly," or in other words, "where the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *Id.* at 340-41 (citations omitted). Certification "is not appropriate where, for example, the question presented 'turns on whether there is a genuine issue of fact or

whether the district court properly applied settled law to the facts or evidence of a particular case.'" *Id.* (quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)).

CACI's arguments for dismissal on extraterritoriality or state secrets grounds, or that it is entitled to judgment as a matter of law on its borrowed-servant defense, are not limited to abstract legal issues that an appellate court can decide quickly and cleanly. They invariably require appellate courts to determine the facts. For example, CACI's extraterritoriality arguments would require an appellate court to assess the extent to which U.S. CACI personnel had knowledge that detainee abuse was occurring at Abu Ghraib and U.S. CACI personnel's role in sending unqualified interrogators to Iraq and promoting and supervising them while they worked in Iraq. CACI's state-secrets argument requires an appellate court to assess the trial evidence in its totality to determine the extent to which state-secrets assertions hampered CACI's defense. And similarly, CACI's borrowed-servant defense requires an evaluation of all trial evidence to determine whether CACI exerted control over its interrogators.

Moreover, certifying an interlocutory appeal would not materially advance the termination of the litigation. It would only create further unwarranted delay. This case is ready for retrial now. The first trial lasted only a week. The second trial will likely be more streamlined and shorter. No efficiency will be gained by putting off the trial for an appeal that could take months or even years. And CACI's appeals have been rejected several times already. The Fourth Circuit denied CACI's attempts to have this case dismissed via interlocutory appeal or writ of mandamus *four separate times*. *See* ECF No. 1434; *Al Shimari v. CACI Premier Tech. Inc.*, 775 F. App'x 758 (4th Cir. 2019); *Al Shimari v. CACI Premier Tech. Inc.*, 758 F.3d 516 (4th Cir. 2014); *Al Shimari v. CACI Int'l, Inc.*, 679 F.3d 205 (4th Cir. 2012) (en banc). The Supreme Court denied CACI's petition for a writ of certiorari in 2021. *See CACI Premier*

*Technology v. Al Shimari*, No. 19-648, Order dated June 28, 2021.  Certifying an appeal now, when a trial is ready to begin, would be highly wasteful.

Plaintiffs have been made to wait sixteen years for a jury to decide their claims. They should not be made to wait for yet another quixotic interlocutory appeal.  Plaintiffs respectfully request that the Court set a new trial at the earliest available date.

## CONCLUSION

For the foregoing reasons, the Court should reject CACI's attempt at persuading the Court to displace the jury in this case and grant Plaintiffs' motion for a new trial.

Dated: June 5, 2024

Respectfully submitted,

*/s/ Cary Citronberg*

Cary Citronberg (VA Bar #81363)
JOHNSON/CITRONBERG, PLLC
421 King Street, Suite 505
Alexandria, VA 22314
Tel. 703-684-8000  |  cary@jc-attorney.com

Muhammad U. Faridi, *Admitted pro hac vice*
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036

Baher Azmy, *Admitted pro hac vice*
Katherine Gallagher, *Admitted pro hac vice*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor New
York, NY 10012

Shereef Hadi Akeel, *Admitted pro hac vice*
AKEEL & VALENTINE, P.C.
888 West Big Beaver Road
Troy, MI 48084-4736

*Attorneys for Plaintiffs*

20

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2024, I electronically filed the foregoing, which sends notification to counsel for Defendants.

_/s/ Cary Citronberg_____
Cary Citronberg