UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |
|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| *v.* | ) Case No. 1:08-cv-827 (LMB/JFA) ) ) |
| CACI PREMIER TECHNOLOGY, INC., | ) ) |
| Defendant. | ) ) ) |

**PLAINTIFFS' OBJECTIONS TO DEFENDANT CACI PREMIER TECHNOLOGY, INC.'S REQUEST FOR SUPPLEMENTAL JURY INSTRUCTION**

The Court should deny the request by Defendant CACI Premier Technology, Inc. ("CACI") for a supplemental jury instruction regarding the borrowed servant doctrine because it it is procedurally defective and also lacks substantive merit.[1]

As to procedure, the Court already rejected CACI's proposed instruction this past Friday during argument on how to respond to the jury's question regarding the borrowed servant doctrine.[2] CACI's motion amounts to an improper motion for reconsideration. CACI does not

---

[1] Plaintiffs preserve and do not waive their prior arguments regarding the borrowed servant doctrine. *See, e.g.*, ECF No. 1764-1 at 21-26; ECF No. 1787 at 6-9. If the Court is inclined to give any additional instruction (and it should not), it should be regarding what follows from a conclusion that both CACI and the Army shared the power to control the CACI interrogators during the misconduct—that if there is shared control, then the borrowed servant defense is not available. *See, e.g.*, Nov. 8, 2024 Tr. 17:1-13; ECF No. 1764-1 at 26.

[2] Nov. 8, 2024 Tr. 6:12-14 (counsel for CACI arguing, "And if you look at -- the [R]estatement talks about that liability should go to the entity that is better situated to control the conduct that resulted in injury."); *id*. at 13:18-19 ("And the [R]estatement talks about the employer being the one in the better position to control …"); *id*. at 15:4-6 ("Which, again, [R]estatement frames in terms of who had the better ability or power to control the conduct in question."); *id*. at 16:10-12

1

even attempt to satisfy the requirements for reconsideration. Simply put, since the Court's ruling on Friday, there has been no "intervening change in controlling law," nor has CACI identified any "new evidence not available earlier" or demonstrated a need for correction resulting from "a clear error of law" or to "prevent manifest injustice." *Integrated Direct Mktg., LLC v. May*, 2016 WL 7334278, at *1 (E.D. Va. Aug. 12, 2016) (Brinkema, J.); *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (setting forth the standard for a motion for reconsideration).

Additionally, there is presently no pending question from the jury. It would therefore not be appropriate for the Court to deliver another instruction related to the borrowed servant doctrine, let alone one that adds language that is—as discussed below—contrary to the law and materially inconsistent with the existing supplemental instruction.³ In fact, at the April 2024

---

("The law is who is in a better position to control the work and control the conduct of the employees."); *id*. at 17:24-18:4 ("And, your honor, we continue to believe that the [R]estatement view which formulates the question is who's in the better position to control – to direct and control the employees in the exercise of the conduct that is alleged to have given rise to liability, that's the right formulation.").

³ CACI seeks to add the bold and underlined language below to the Court's Supplemental Instruction No. 1. CACI's new proposed language inserts a binary "or" between the Army and CACI, while the Court's existing Supplemental Instruction No. 1 asks whether "the Army alone or **both** Army and CACI" had the relevant power to control the CACI interrogators as to the misconduct at Abu Ghraib.

> It is a question of fact that the jury must decide whether CACI had the power to control the interrogation work being performed by CACI employees at Abu Ghraib when the alleged torture or cruel, inhuman, or degrading treatment occurred. Whether the Army alone or both the Army and CACI had this power to control is a factual question that you must decide. **<u>This question cannot be answered by measuring the quantity of control the Army or CACI had the power to exercise over matters generally. To decide this question, you must consider whether or not, as to their interrogation work, CACI employees were under the direction of the Army *or* CACI such that either the Army *or* CACI was in</u>**

2

trial, the Court rebuffed Plaintiffs' request for a supplemental instruction related to the borrowed servant doctrine on the ground that the jury had not sought a clarification as to the prior instructions by the Court. *See* Apr. 29, 2024 Tr. 6:14-16 ("THE COURT: First of all, there's no pending question about the borrowed servant, so I'm not going to *sua sponte* assume that that's what's holding them up."). As the Court stated this past Friday after hearing a lengthy argument from both sides following the jury's question regarding the borrowed servant doctrine, "at some point Courts have to make decisions. I'm making a decision in this case because I think this is actually a statement that adequately addresses their question, and if they have further questions, they can come back and ask." Nov. 8, 2024 Tr. 18:14-18. As the Court put it, "If both sides are unhappy [and they are], that probably suggests it's a good decision." Nov. 8, 2024 Tr. 19:2-3.

As to substance, CACI's requested additional jury instruction is wrong under the law. Contrary to CACI's assertion, when two employers share the power to control an employee's misconduct, the original employer cannot escape liability by invoking the borrowed servant doctrine. As Plaintiffs argued to the Court after receiving the jury's question, a general employer remains liable for its employee unless the general employer has completely relinquished control of that employee as to the misconduct in question. *See* Nov. 8, 2024 Tr. 3:23-4:21; *US Methanol, LLC v. CDI Corp.*, 2022 WL 2752365, at *5 n. 4 (4th Cir. July 14, 2022) ("Under the borrowed servant doctrine, a 'general employer' remains liable for the negligent conduct of his employee unless he has "***completely relinquished control***" of the employee's conduct to a third party for whom the employee is performing some service." (emphasis added)); *Bailey v.*

---

**the better position to exercise control in a manner that reduced the risk of detainee abuse**.

ECF No. 1806 at 3 (emphasis added).

*Allegheny Energy Serv. Corp.*, 2009 WL 10688060, at *2 (S.D.W. Va. 2009) ("Under the borrowed servant rule 'a general employer remains liable for the negligent act of his servant unless it affirmatively appears that he has ***completely relinquished control of the servant's conduct from which the alleged negligence arose*** to the person for whom the servant is engaged in performing a special service.'" (emphasis added)); Res. (Second) of Agency § 226 ("A person may be the servant of two masters, not joint employers, ***at one time as to one act***, ***if*** the service to one does ***not involve abandonment*** of the service to the other." (emphases added)); *cf. Estate of Alvarez v. Rockefeller Foundation*, 96 F.4th 686, 695 (4th Cir. 2024) (finding that, where the constitution of the second employer "prohibited" the employee from taking "outside direction," including from the original employer, the employee was a borrowed servant).

As the Supreme Court explained in *Standard Oil v. Anderson*, "[i]n order to relieve the defendant [general employer] from the results of the legal relation of master and servant ***it must appear that that relation, for the time***, ***had been suspended*** and a new like relation between the [employee] and the [special employer] had been created." 212 U.S. 215, 225 (1909).  If not, then the employee is a dual servant and the original employer remains liable.  *See, e.g., Vance Trucking Co. v. Canal Ins. Co.*, 249 F. Supp. 33, 38 (D.S.C. 1966) (ruling that the general employer of a truck driver remained liable where "[the driver] had not abandoned the service of [the special employer] or his [general] employer Forrester in making the trip" and "[o]n the contrary, he continued ***to act for their mutual benefit*** and ***was subject to their joint control***." (emphasis added)), *aff'd*, 395 F.2d 391, 393 (4th Cir. 1968).  Accordingly, the Court's Supplemental Instruction No. 1 correctly recognizes the concept of shared control; that is, "Whether the Army alone or ***both*** the Army ***and*** CACI had this power to control is a factual question that you must decide."  Nov. 8, 2024 Tr. 20:13-14 (emphasis added).

CACI points to a *comment* to the Restatement (Third) of Agency to bolster its position but misconstrues the very purpose of the section that it references. ECF No. 1806 at 2. As an initial matter, the Fourth Circuit's recent decision *Estate of Alvarez* referenced the Restatement (Second) of Agency, not the version that CACI cites. Moreover, the "black-letter" portion of the Restatement (Third), which sets forth the American Law Institute's actual position, does not discuss the borrowed servant doctrine.[4] Rather, the relevant black-letter provision, Section 7.03(2)(a), makes clear that "[a] principal is subject to vicarious liability to a third party harmed by an agent's conduct when … the agent is an employee who commits a tort while acting within the scope of employment[.]" Res. (Third) Of Agency § 7.03 (2006). Thus, the test under Restatement (Third) of Agency turns on whether CACI's employees were acting within the scope of their employment for CACI at the time they committed the misconduct. The answer to that question is a clear yes. CACI has already confirmed that it is not contesting that the CACI interrogators were presumptively acting within the scope of their employment by CACI when they committed the misconduct in question. Nov. 7, 2024 Tr. 40:4-17.

The Restatement (Third) of Agency does address the borrowed servant doctrine, but in a comment to Section 7.03. As the American Law Institute has explained, "[t]he Comments appended to an ALI black-letter provision are mainly explanatory…. Readers consult the Comments in order more fully to understand the background and rationale of the black letter and the details of its application."[5] The other, more relevant part of the comment to Section 7.03—

---

[4] American Law Institute, "Frequently Asked Questions," https://www.ali.org/about-ali/faq/ (last visited Nov. 12, 2024) ("A black-letter provision normally consists of a single rule, principle, or statement of law or of an integrally related series of rules, principles, or statements. Black letter is easily identified in the publications as it appears in bold, black type. Black letter text is approved by ALI's members and the Council and represents the position of the Institute.").

[5] *Id.*

which is conspicuously absent in CACI's submission—explains that some courts "allocate liability to ***both general and special employer*** on the basis that ***both*** exercised control over the employee and ***both*** benefited to some degree from the employee's work." Res. (Third) of Agency § 7.03 cmt. d(2) (emphasis added); *see also id*. ("When an actor negligently injures a third party while performing work for the firm that has contracted for the actor's services, the question is whether ***that firm*** (often termed the 'special employer') ***or the initial employer*** (often termed the 'general employer'), ***or both,*** should be subject to liability to the third party." (emphases added); *id*. ("It is a question of fact whether a general or a special employer, ***or both***, have the right to control an employee's conduct." (emphasis added)). This principle is also recognized by the Restatement (Second) of Agency. Specifically, Section 226 provides: "A person may be the servant of two masters, not joint employers, ***at one time as to one act***, if the service to one does ***not involve abandonment*** of the service to the other." Res. (Second) of Agency § 226 (emphases added)); *see also* Res. (Second) of Agency § 226 cmt. a (explaining that "a single act may be done to effect the purposes of two independent employers" and that a person "may cause ***both employers*** to be responsible for an act which is a breach of duty to one or both of them" if that person is "the servant of two masters…if the act is within the scope of his employment for both") (emphasis added).

      The Court's Supplemental Instruction No. 1 comports with, and reflects, the Fourth Circuit's most recent treatment of the inter-related borrowed servant and the dual servant doctrines. In *Estate of Alvarez*, the Fourth Circuit expressly recognized that "a person may be the servant of two masters ... ***at one time as to one act***, if the service to one does ***not involve abandonment*** of the service to the other." *Est. of Alvarez*, 96 F.4th 686, 693 (4th Cir. 2024) (quoting *N.L.R.B. v. Town & Country Elec., Inc.*, 516 U.S. 85, 94–95 (1995) and Restatement

(Second) of Agency § 226 on the dual servant doctrine) (emphasis added)).  In that case, the Fourth Circuit considered whether Dr. Soper was a dual servant after evaluating whether the doctor was a borrowed servant, so as to ascertain whether the original employer (The Rockefeller Foundation or "TRF") had any control over the doctor's challenged conduct that would warrant holding the original employer liable for it:

> Finally, there is insufficient evidence to support Appellants' argument that **Dr. Soper was a dual agent of TRF [the original employer] and the PASB [the borrowing employer]** because, though TRF did not exercise control over him, it maintained the ability to do so.  As previously stated, *there is no indication that TRF had the ability to exercise control over Dr. Soper while at the PASB*.  Though TRF paid his salary, Dr. Soper appeared at all times to be doing the work of the PASB.  Finally, **the PASB's constitution**, the general terms of which were adopted by the PASB in January 1947, **prohibited Dr. Soper from taking outside direction**.

*Est. of Alvarez*, 96 F.4th at 694-695.  Ultimately, on the particular facts presented, the Fourth Circuit concluded that Dr. Soper's original employer had **no** control over Dr. Soper (let alone any communication with him) and that Dr. Soper was **contractually prohibited** from taking direction from the original employer; thus, lacking any power to control Dr. Soper, the original employer was not liable for Dr. Soper's conduct under the borrowed servant doctrine.  Tellingly, in its latest filing, CACI still does not acknowledge, let alone attempt to address, this part of the Fourth Circuit's opinion.

     Lastly, CACI's "risk management" suggestion that the question for the jury is who is in a marginally "better position" to stop misconduct has no basis.  *See* ECF No. 1806 at 2.  As demonstrated, the borrowed servant doctrine does not operate like a scale, alleviating a party of any responsibility simply because there is a feather's weight of more control left with the other party.  Particularly where there are violations of *jus cogens* prohibitions on torture and CIDT, the

7

question is whether either or both entities had the power to stop such egregious misconduct; and to impose responsibility on *either* party or *both* parties if they neglected to use the power given them to prevent it.

In this case, the evidence was overwhelming that CACI had the power, as well as the responsibility, to prevent CACI interrogators from inflicting torture and CIDT. CACI's power to supervise and control its interrogators and ensure that they did not commit international law violations comes from, among other things, CACI's contracts with the Government, its Codes of Conduct, and its employment agreements with its employees. Indeed, CACI's corporate representative confirmed CACI's responsibility for supervising its personnel at Abu Ghraib. ECF No. 1794 at 82. And CACI's operational supervisor and site-lead at Abu Ghraib, Dan Porvaznik, admitted that he had the tools necessary to supervise CACI interrogators available to him at Abu Ghraib. Nov. 4, 2024 Tr. at 116:21-129:24. CACI executive Charles Mudd also confirmed that CACI interrogators were to take any issue about interrogation techniques to Mr. Porvaznik. ECF No. 1808 at 6. In these circumstances, the law should—and does—impose liability on an employer where it had the power to stop the torture and other mistreatment, even if the Army might have also had the same power.

## CONCLUSION

For the foregoing reasons, Plaintiffs submit that this additional supplemental jury instruction proposed by CACI should be rejected.

Respectfully submitted,

*/s/ Charles B. Molster, III*

Charles B. Molster, III, Va. Bar No. 23613
Law Offices of Charles B. Molster, III PLLC
2141 Wisconsin Avenue, N.W., Suite M
Washington, D.C. 20007

(703) 346-1505
cmolster@molsterlaw.com

Muhammad U. Faridi, *Admitted pro hac vice*
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036

Baher Azmy, *Admitted pro hac vice*
Katherine Gallagher, *Admitted pro hac vice*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor New
York, NY 10012

Shereef Hadi Akeel, *Admitted pro hac vice*
AKEEL & VALENTINE, P.C.
888 West Big Beaver Road
Troy, MI 48084-4736

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 12, 2024, I electronically filed the foregoing, which sends notification to counsel for Defendant.

        */s/ Charles B. Molster, III*
        Charles B. Molster, III