IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SUHAIL NAJIM ABDULLAH AL SHIMARI, et al., ) ) ) Plaintiffs, ) ) v. ) ) CACI PREMIER TECHNOLOGY, INC., ) ) Defendant. ) | 1:08-cv-827 (LMB/JFA) |

MEMORANDUM OPINION

Before the Court is plaintiffs' Bill of Costs [Dkt. No. 1835], which seeks total costs of $169,725.59. CACI Premier Technology, Inc. ("defendant" or "CACI") has filed timely and extensive objections to the Bill of Costs and plaintiffs have filed their Reply. [Dkt. No. 1853]. Accordingly, the issues raised are ripe for decision. Having reviewed the papers, the Court will sustain certain of CACI's objections and grant plaintiffs' Bill of Costs in the reduced amount of $102,291.68.

I. BACKGROUND

Since this litigation began in 2008, there have been multiple rounds of motions to dismiss, appeals, and ensuing remands. Because the procedural history and background of this civil action have been described extensively in prior opinions of this Court and the U.S. Court of Appeals for the Fourth Circuit,[1] it will not be repeated here unless relevant to plaintiffs' Bill of Costs.

---

[1] See, e.g., Al Shimari v. CACI Premier Tech., Inc., 324 F. Supp. 3d 668, 673-87 (E.D. Va. 2018); Al Shimari v. CACI Premier Tech., Inc., 758 F.3d 516, 522-24 (4th Cir. 2014).

Plaintiffs Suhail Najim Abdullah Al Shimari, Asa'ad Hamza Hanfoosh Al-Zuba'e, and Salah Hasan Nusaif Jasim Al-Ejaili ("plaintiffs") brought claims against CACI Premier Technology, Inc. ("defendant" or "CACI"), a military contractor, for aiding and abetting and conspiring with military personnel to inflict torture or cruel, inhuman, or degrading treatment on detainees in the Abu Ghraib hard site in Iraq that resulted in plaintiffs being tortured and subjected to cruel, inhuman, or degrading treatment ("CIDT"), in violation of the Alien Torture Statute, 28 U.S.C. § 1350. On November 12, 2024, after a 12-day trial, the jury reached a verdict and awarded each plaintiff $3,000,000 in compensatory damages and $11,000,000 in punitive damages.[2] [Dkt. No. 1812]. The Court entered judgment in plaintiffs' favor that same day.

On November 26, 2024, plaintiffs filed a Bill of Costs, asking the Clerk to tax a total of $172,841.94 as costs, including $805 for Clerk fees, $66,003.59 for transcript and deposition fees, $29,922.46 for witness fees, $46,792.39 for exemplification and copying costs, and $29,318.50 for interpreter costs. [Dkt. No. 1835]. CACI objected to $123,787.58 of those costs, arguing that plaintiffs are seeking "impermissible, indefensible, and unreasonable costs" not permitted by statute and that plaintiffs should only be allowed to recover a total of $49,054.26. In their reply brief, plaintiffs have agreed to withdraw specific costs for transcripts, copies, and interpreters in the amount of $3,116.35, but maintain that the rest of their costs are properly taxable and largely the result of CACI's efforts to unnecessarily complicate, delay, and prolong the litigation. Plaintiffs are now seeking to recover $169,725.59 in costs. [Dkt. No. 1853].

---

[2] This was the second jury trial in this case. An earlier jury trial that began on April 15, 2024, and lasted for 13 days resulted in a mistrial after the jury could not reach a unanimous decision. On June 14, 2024, the Court granted plaintiffs' Motion for a New Trial.

## II. DISCUSSION

Federal Rule of Civil Procedure 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party." The general taxation of costs statute, 28 U.S.C. § 1920, provides six categories of costs that may be taxed: (1) clerk and marshal fees, (2) transcript fees (3) printing and witness fees, (4) exemplification and copying costs, (5) docket fees under 28 U.S.C. § 1923, and (6) compensation of court appointed experts, interpreters, and special interpretation services. Within those categories, "the court has wide latitude to award costs." Francisco v. Verizon S., Inc., 272 F.R.D. 436, 441 (E.D. Va .2011).

Although there is a presumption that a prevailing party is entitled to costs unless the opposing party can show otherwise, see Cherry v. Champion Int'l Corp., 186 F.3d 442, 446 (4th Cir. 1999), the prevailing party "bears the burden of showing that the requested costs are allowable under § 1920." Francisco, 272 F.R.D. at 441 (citing Cofield v. Crumpler, 179 F.R.D. 510, 514 (E.D.Va.1998)). Once the prevailing party has met this burden, the burden shifts to the non-prevailing party to identify any improprieties. Id.

To overcome "the presumption that costs are to be awarded to the prevailing party . . . a district court must justify its decision [to deny costs] by articulating some good reason for doing so," such as the award being unjust. Cherry, 186 F.3d at 446 (quoting Teague v. Bakker, 35 F.3d 978, 995–96 (4th Cir.1994)) (alteration in original) (internal quotation marks omitted). Specific examples of such circumstances include "misconduct by the prevailing party worthy of a penalty . . . or the losing party's inability to pay," and courts may consider as additional factors "excessiveness [of costs] in a particular case, the limited value of the prevailing party's victory, or the closeness and difficulty of the issues decided." Id.

CACI has lodged numerous objections to each category of plaintiffs' costs, arguing that their recovery is impermissible under § 1920 or that plaintiffs have not substantiated their entitlement to recovery. Although plaintiffs have agreed to a slight reduction in the amount they are seeking to recover, the parties are still extremely far apart on the amount they contend is taxable. Accordingly, the Court makes the following findings regarding the specific costs in dispute.

A. Clerk Fees

Plaintiffs seek to recover $805 in Clerk fees. CACI objects to a $455 filing fee for plaintiffs' cross-appeal in No. 09-2324 because the Fourth Circuit dismissed the appeal as untimely.[3] CACI argues that plaintiffs should not be allowed to recover this cost because it was not a "prevailing party" in that appellate action. Plaintiffs argue that § 1920 does not condition the recovery of appellate docket fees on whether the appeal was successful. The Court finds that this cost is not recoverable—not because plaintiffs were not successful on appeal—but because plaintiffs' notice of appeal was untimely. It would be inequitable to allow them to benefit from their lack of diligence. Accordingly, the Court will sustain CACI's objection and reduce plaintiffs' Bill of Costs by $455.00.

B. Transcripts

1. Deposition Transcripts and Costs

CACI objects to the taxation of costs for deposition transcripts related to former plaintiff Taha Yaseen Arraq Rashid ("Rashid"), whom the Court dismissed from this civil action on February 27, 2019, because his allegations of CIDT occurred either before CACI personnel

---

[3] Over the 17 years of litigation between the parties, there have been multiple appeals to the Fourth Circuit and petitions for writ of certiorari to the U.S. Supreme Court.

4

arrived at Abu Ghraib on September 28, 2003, or during his interrogation on September 28, 2003, in which only military personnel participated. CACI also objects to taxation of the deposition costs for Interrogators H and I because their testimony only concerned Rashid's claims. Plaintiffs argue that the costs associated with these depositions are recoverable because they were necessary "at the time of [their] taking" and that Rashid's later dismissal is not relevant. The Court disagrees. Because the deposition testimony of Rashid was not necessary to determine that Rashid's allegations predated CACI's arrival at the hard site, the Court will sustain CACI's objections and reduce plaintiffs' Bill of Costs by $3,737.41.

CACI objects to the taxation of costs associated with Javal Davis' ("Davis") cancelled deposition on April 12, 2013. Davis did not appear for his deposition because plaintiffs did not ensure that he was properly served.[4] Thereafter, plaintiffs did not reschedule his deposition. Because Davis' failure to appear was due to plaintiffs' error and his testimony was apparently unnecessary, plaintiffs are not entitled to recover the $721.72 in video, reporter, and room cancellation fees, which will be deducted from their Bill of Costs.

CACI objects to all costs associated with video depositions, except for the Court-ordered de bene esse depositions, because plaintiffs have not shown that they were "necessarily obtained for use in the case," as required by § 1920. As this Court has previously held, the "concept of necessity for use in the case connotes something more than convenience or duplication to ensure alternative methods for presenting materials at trial." Amdocs (Israel) Ltd. V. Openet Telecom, Inc., No. 1:10-cv-910, 2013 WL 1192947, at *3 (E.D. Va. Mar. 21, 2013). Also, the Eastern

---

[4] Plaintiffs' counsel admitted that the process server left Davis' subpoena at his mother's residence even though his mother stated that Davis did not live there.

5

District of Virginia's Taxation of Costs Guidelines ("Costs Guidelines")[5] provide that "[t]he costs of a videotaped deposition [are not taxable], unless an authorizing order or stipulation provides for taxing of these costs." Plaintiffs claim that they are entitled to recover all videography fees because it was uncertain whether these witnesses[6] would testify live in court because they were either outside the subpoena power of the court or had to receive approval from the government to testify in court. Presenting testimony by video deposition may be preferable when a witness is unavailable to testify live at trial, but it is not always necessary and, in this case, it was not. Plaintiffs could have presented such testimony by reading the deposition transcripts into the record, which is how the testimony of multiple witnesses was presented at the trial. Accordingly, CACI's objection is sustained and plaintiffs' Bill of Costs will be reduced by $6,351.82.[7]

CACI similarly objects to the taxation of video deposition costs, including synchronization, for the testimony of the pseudonymous interrogators whose identities could not be revealed due to the state secrets privilege. Because it was not necessary to present by video the testimony of persons whose faces could not be shown, CACI's objection will be sustained and plaintiffs' Bill of Costs will be reduced by $1,952.50.

---

[5] Taxation of Costs Guidelines, https://www.vaed.uscourts.gov/sites/vaed/files/BillofCostsGuidelines.pdf (rev. July 10, 2019).

[6] Major Carolyn Holmes, Hydrue Joyner, James Lee Joseph Beachner, Megan Graner, Charles Graner, Warren Hernandez, Ivan Lowell Frederick III, William Cathcart, Major General Anthony Taguba, and Dr. Jason Payne-James.

[7] CACI objects to the entire cost of Mr. Frederick's 2013 deposition because the invoice does not indicate the costs for videography, [Dkt. No. 1835-9] at 14, and plaintiffs did not provide that cost in their reply brief. Accordingly, plaintiffs have not met their burden and $3,036.60 will be deducted from their Bill of Costs.

Although CACI does not object to the taxation of video deposition costs for the de bene esse depositions, it objects to the taxation of costs for synchronized, streaming transcripts of such depositions because they were not necessary for the jury to understand the testimony. CACI points out that, if such witnesses had testified in person, the jury would not have had such an amenity. Plaintiffs do not counter this argument. The Court finds that such costs are not taxable and will reduce the Bill of Costs by $867.50.

CACI objects to being charged for the costs of real-time deposition transcription, describing it as a "luxury . . . for the convenience of counsel." Plaintiffs contend that real-time transcription was necessary and is taxable because it "permitted more than one attorney . . . to participate in each of these last-minute depositions on the eve of trial." The Court granted CACI's motion for de bene esse depositions on January 5, 2024 [Dkt. No. 1475], more than three months before, and not on the eve of, trial. That the parties waited until late March to take such depositions was of their own doing and does not justify real-time transcription. Moreover, the case that plaintiffs cite for the proposition that they should be allowed to recover real-time transcription costs, Dewberry Eng'rs, Inc. v. Dewberry Grp., Inc., No. 1:20-cv-610, 2022 WL 20804194, at *8 (E.D. Va. July 29, 2022), involved virtual depositions taken during the Covid-19 pandemic. Dewberry, 2022 WL 20804194, at *8 ("The Court finds – especially in light of the ongoing COVID-19 pandemic [–] that these costs taken in the course of depositions were reasonably incurred and are appropriate to be included in Plaintiff's Bill of Costs."). The parties conducted the de bene esse depositions in-person. Accordingly, real-time transcription was not necessary but purely a convenience for counsel and, as such, is not taxable. CACI's objection will be sustained and plaintiffs' Bill of Costs will be reduced by $2,428.10.

CACI objects to the taxation of costs for multiple copies of the same deposition transcript—both the rough draft and the final transcript—as well as the expedited delivery of transcripts, arguing that the cost of only one transcript may be recouped under the Costs Guidelines and that plaintiffs failed to justify their need for expedited transcripts. Plaintiffs claim that rough and expedited deposition transcripts were necessary and reasonable "given the constant motion practice, flurry of activity, and timing of these depositions such that they were taken as Plaintiffs were preparing for final pretrial conferences, and trial itself." [Dkt. No. 1853] at 11. Although a court may find such costs to be reasonable under specific facts, see Sierra Club v. Va. Elec. & Power Co., 2:15-cv-112, 2017 WL 8786513, at *4 (E.D. Va. Dec. 12, 2017) (finding that, due to the compressed timeframe for depositions, it was reasonable for the plaintiff to request rough and expedited transcripts), plaintiffs have not adequately explained why both rough drafts and expedited transcripts were necessary. For example, plaintiffs claim that they needed rough and/or expedited transcripts for 15 depositions taken between May 7, 2018, and October 11, 2018, because "CACI had filed a motion to dismiss on May 21, 2018; a final pretrial conference was again approaching on October 25, 2018; and the parties were preparing their Rule 26 disclosures." [Dkt. No. 1853] at 10. Out of the 15 depositions, only 4 were taken before the hearing on CACI's motion to dismiss on June 25, 2018, and the rest were taken over the course of the next four months. Plaintiffs' vague justification that they urgently needed the transcripts due to upcoming deadlines is not sufficient for taxing these costs against CACI. Accordingly, the Court will sustain CACI's objection and reduce plaintiffs' Bill of Costs by $5,260.63.

CACI objects to the "exorbitant costs" associated with the discovery deposition of Dr. Payne-James and the de bene esse deposition of Mr. Frederick. Each deposition cost more than

8

$4,500—far more than the other depositions in this case. Excluding these two depositions, the average cost of a deposition in this case was $848.40.[8] CACI objects to $1,118.40 in costs associated with Dr. Payne-James' deposition that were for a "Virtual Room" ($220), "Expert/Technical Pages" ($98.40), and a "Depo Tech" ($800) because plaintiffs provide no justification for them. Plaintiffs counter that they should be able to recoup such costs because they accommodated CACI's request to conduct the deposition by video conference, thereby saving them the cost of traveling to the United Kingdom. Be that as it may, that is not the standard for determining whether costs are properly taxable. Because plaintiffs do not explain why these costs were necessary, CACI's objection will be sustained and these amounts will be deducted from their Bill of Costs.

Finally, CACI objects to the cost of Mr. Frederick's expedited <u>de bene esse</u> deposition transcript.[9] CACI does not object that plaintiffs ordered an expedited transcript, but that the cost was double the original transcript fee, which amounts to $9.90 per page. CACI claims that the cost should be capped at $7.30 per page, which was the cost for Mr. Stefanowicz's expedited <u>de bene esse</u> deposition transcript. Different court reporting services have different prices. The fact that one service charged $2.60 more per page does not appear unreasonable. CACI's objection will be overruled.

2. Pretrial Hearing and Trial Transcripts

CACI objects to being taxed $15.30 for the June 9, 2017 hearing transcript during which the Court granted CACI's Motion for Summary Judgment as to plaintiff Rashid. The Court will

---

[8] When the cost of these depositions is deducted, the total cost for 38 depositions was $32,239.24, which comes to nearly $850 per deposition.

[9] The Court has already determined that the costs for real-time ($747.30) and video-text synchronization ($427.50) should be deducted from the total amount taxed for this deposition.

9

sustain CACI's objection to this pretrial hearing transcript for the same reason it sustained the objection to Mr. Rashid's deposition transcript above.

Similarly, CACI objects to being taxed $114.95 for the March 15, 2019 transcript of the hearing on the government's motion for summary judgment because plaintiffs did not deem this hearing important enough to appear for it. The Court agrees and will sustain the objection.

CACI objects to being charged for multiple copies of pretrial hearing transcripts because the Costs Guidelines allow reimbursement for only one copy. Plaintiffs have withdrawn $66.15 for the cost of duplicate transcripts for multiple co-counsel for hearings on December 1, 2023 ($25.65) and December 15, 2023 ($40.50), but claim they are otherwise entitled to multiple copies because the court reporter told them that she was authorized to charge them "for a rough draft per three plaintiffs." [Dkt. No. 1853-9] at 3. The court reporter, however, was referring to the price for <u>trial transcripts</u> and did not charge plaintiffs for any rough drafts of pretrial hearing transcripts; rather, she charged them for one .pdf file ("1st Copy") and one .txt file ("Additional Copy") per their request. Because plaintiffs do not explain why they needed a .txt file in addition to the .pdf file, CACI's objection will be sustained and plaintiffs' Bill of Costs will be reduced by $211.10 for the .txt files.

CACI objects to the taxation of five expedited pretrial hearing transcripts, which, under the Costs Guidelines, is not allowed unless there is "an advanced determination by the court or an agreement of the parties to tax" expedited fees. There was no such determination or agreement in this case. Plaintiffs argue that the cost of expedited transcripts is recoverable because "the Court had a practice of ruling on motions from the bench and Plaintiffs needed a written record of those ruling to prepare for trial." Plaintiffs cite <u>Walker v. MOD-U-KRAF Homes, LLC</u>, No. 7:12-cv-470, 2015 WL 4400227, at *3 (W.D. Va. July 17, 2015) in support of

their position.  In Walker, the court found that the cost of an expedited transcript of a pretrial motions hearing was taxable where the transcript was necessary for trial preparation because the judge ruled in open court on the parties' motions in limine and objections to witness and exhibit lists.  Here, plaintiffs fail to explain why it was necessary to have these five transcripts expedited.  Unlike the defendant in Walker, plaintiffs do not tie the immediate need for such transcripts to a specific event or deadline; rather, they merely assert that they were necessary for trial preparation.  Without more, plaintiffs have not met their burden of proof and CACI will not be taxed more than the standard rate for such transcripts.  Accordingly, CACI's objection will be sustained and plaintiffs' Bill of Costs will be reduced by $299.65.

With respect to both the April and October trial transcripts, CACI objects to the taxation of costs for three rough drafts per transcript and real-time transcription.  CACI claims that it is only required to pay for the cost of one transcript and that real-time transcription was not deemed necessary by the Court or agreed to by the parties.  Plaintiffs argue that they needed daily trial transcripts due to the length and complexity of the trial and to prepare for closing arguments.  As explained above, the court reporter was authorized, and did, charge plaintiffs for one rough draft transcript per plaintiff.  A rough draft transcript can only be generated through use of real-time software.  Because the rough draft transcripts were necessary for use during trial to make strategic decisions and prepare for closing arguments (a final, seven-day transcript would provide no value to the parties during trial), the costs of those transcripts are recoverable.  However, the costs of the final, seven-day transcripts and of the .txt files are not.  Accordingly, CACI's objection will be sustained in part and overruled in part and plaintiffs' Bill of Costs will be reduced by $1,951.60.

C. Witness Fees

CACI objects to being taxed for all witness costs associated with Drs. Fadel and Xenakis, whom plaintiffs originally intended to call as witnesses during the April 2024 trial but ultimately did not. Dr. Fadel traveled on April 15 and 19, 2024, and stayed in a hotel in Alexandria from April 15-18, 2024. Plaintiffs notified CACI on April 16, 2024, the second day of trial, that they would not call Dr. Fadel to testify. Because plaintiffs made this decision during trial, they are entitled to recover some, but not all, of the costs associated with Dr. Fadel's accommodations. Plaintiffs have agreed to withdraw $831.90 from their Bill of Costs for Dr. Fadel's accommodations for April 16-18, the days after they decided not to call him as a witness. This moots CACI's objection in part. As for CACI's objection to the remainder of Dr. Fadel's costs, its objection is overruled.

As to Dr. Xenakis, plaintiffs similarly decided not to call him only after the trial had begun. Plaintiffs initially expected to call him on the third day of trial, April 17, 2024, but decided that his testimony during their case-in-chief was unnecessary. They asked Dr. Xenakis to stay during CACI's case in the event they needed him to testify on rebuttal. Plaintiffs have agreed to withdraw $1,109.20 from their Bill of Costs for Dr. Fadel's accommodations for April 19-22, 2024, after they decided not to call him as a witness. But plaintiffs have not explained why it was necessary for Dr. Xenakis to be in Alexandria for the entire weekend before trial began on April 15, 2024. Consequently, the Court will sustain CACI's objection in part as to Dr. Xenakis' costs and deduct two nights of hotel room charges, $554.60, from plaintiffs' Bill of Costs.

CACI objects to the airfare costs for Dr. Fadel, Mr. Nelson, and Dr. Modvig to testify at trial because their roundtrip flights exceeded $176, which is the reimbursement cap under Local

12

Rule 30(E)'s and the Costs Guidelines' 100-mile rule for witnesses who reside outside of the court's subpoena power. Plaintiffs counter that the Court has discretion in taxing the actual costs of airfare, especially when the witness' testimony was relevant and necessary to the defendant's case. The Court agrees with plaintiffs that it has the authority to tax such costs. See Marcoin, Inc. v. Edwin K. Williams & Co., Inc., 88 F.R.D. 588, 591 (E.D. Va. 1980) (finding that court has discretion to allow travel expenses of a witness beyond the 100-mile limit) (citing Farmer v. Arabian American Oil Co., 379 U.S. 227 (1964)). Because Mr. Nelson's and Dr. Modvig's testimony at the April and October trials was relevant and necessary to plaintiffs' claims, and plaintiffs reasonably believed that Dr. Fadel's testimony would be necessary at the April trial, plaintiffs are entitled to travel allowances beyond the 100-mile limit. Accordingly, CACI's objection will be overruled.

CACI objects to the length of Mr. Nelson's hotel stay and the cost of Dr. Modvig's hotel stay for the April trial. Mr. Nelson testified on April 15, 2024, the first day of trial, but stayed in Alexandria through April 17, 2024. Dr. Modvig's room rate was $399.00 per night, but the GSA lodging rate at the time was $258.00. As for the length of Mr. Nelson's stay, plaintiffs claim they are entitled to reimbursement for the entire stay because they were uncertain as to which day Mr. Nelson would testify and therefore scheduled his departure for April 17, 2024. Because this is a reasonable justification, the Court will overrule CACI's objection in part. However, as plaintiffs provide no explanation why they could not secure a hotel room for Dr. Modvig at the GSA rate, the Court will sustain CACI's objection in part and limit reimbursement to $258.00 per night, thereby reducing plaintiffs' Bill of Costs by $651.44.[10]

---

[10] Plaintiffs argue that if the Court applies the GSA rate to Dr. Modvig's April accommodations, then they should be reimbursed at the GSA rate for all their witnesses who attended the April trial, including daily incidental expenses of $59.25 and city and state occupancy taxes of $22.71

13

D. Exemplification and Copies

Plaintiffs seek $46,792.39 for exemplification and copying costs. Such costs are reimbursable under 28 U.S.C. § 1920(4) when they are "necessarily obtained for use in the case." Courts have limited reimbursement for photocopy expenses "to the extent that the copies were used as court exhibits or were furnished to the court or opposing counsel." Bd. of Directors v. Anden Group, 135 F.R.D. 129, 138 (E.D. Va. 1991). Under this category, plaintiffs seek their costs for FTI Consulting's ("FTI") graphics production and consultation ($7,560.00), tech support and equipment shipping for plaintiffs' remote testimony from Iraq ($3,287.92), and two invoices for equipment rental that appear unrelated to this case ($890.54 and $1,762.50).[11] CACI objects to these costs arguing that FTI's graphics production, including closing argument slides, and consultation services are not recoverable under this Court's opinion in Amdocs, which found that payments to a consulting firm to prepare demonstrative exhibits and assist in the presentation of those exhibits at trial were not taxable because they were akin to non-taxable models. Amdocs, 2013 WL 1192947, at *3 ("Although such demonstrative [exhibits] are often extremely useful for explaining the evidence in a complex technical [patent] case, their utility is akin to that of models, which are not taxable under the local guidelines."). Plaintiffs counter with the Dewberry case, which found that costs for a vendor to prepare demonstrative exhibits

---

and $14.34. If plaintiffs had wanted to be reimbursed for daily incidental expenses, they should have requested those amounts in their Bill of Costs. The Court will not consider such a request made in their reply brief. As for city and state occupancy taxes, it appears that plaintiffs did seek reimbursement for such taxes for other witnesses who testified at the April trial. See [Dkt. No. 1835-11] at 70-71 (Torin Nelson's invoice, which is listed in plaintiff's Schedule D, includes $22.71 and $14.34 for city and state occupancy taxes).

[11] Plaintiffs do not dispute that the two invoices were unrelated to this case. Accordingly, CACI's objection will be sustained as to the unrelated invoices and $2,653.04 will be deducted from the Bill of Costs.

and for assisting with their presentation during a trademark trial were taxable "as necessarily obtained for use in the case." Dewberry, 2022 WL 20804194, at *7 ("The efficient presentation undoubtedly cut down on trial time, saving all parties further litigation expenses."). Having found that demonstratives exhibits, while helpful, are not taxable in a highly technical patent case, the Court declines to tax such costs in this case. Accordingly, the Court will sustain CACI's objection to the $7,560.00 for graphics production and consultation; however, plaintiffs may recoup the costs associated with their remote testimony from Iraq as such testimony was necessary to the case and was not the result of any litigation misconduct. CACI's objection to this amount, $3,287.92, will be overruled.

As to nearly all other exemplification and copying costs, CACI objects on the basis that "[i]t is difficult verging on impossible to tell, based on [the invoices], which of the requested copying costs reflect costs for documentary exhibits that were admitted into evidence at hearing or trial or provided to the Court or counsel for CACI." While many invoices indicate that they were for binders of plaintiffs' exhibits, CACI objects that it is unclear whether any of the binders were created for the convenience of counsel, which are not taxable under the Costs Guidelines. Plaintiffs counter that they are entitled to recover all their exemplification and copying costs because they need not explain the purpose of each copy made; rather, they have met their burden to show that all such costs were necessarily obtained for use in the case through Mr. Kim's declaration, the itemized spreadsheet, and the 89 pages of supporting documentation.

The Court finds that plaintiffs' itemized spreadsheet is of no help. The only information listed is vendor names and invoice dates, numbers, and amounts. Conspicuously absent is any information regarding the purpose of the copies underlying each invoice (e.g., trial exhibits, deposition exhibits) or for whom the copies were intended (e.g., the witness, Court, opposing

counsel), which would be useful to the Court's review. The 89 pages of invoices and cryptic emails shed little light on these things. To recover these costs, it is the plaintiffs' burden to show, and not the Court's task to decipher, how the $46,792.30 in exemplification and copying costs were spent in this case. Because plaintiffs have not met this burden, the Court will sustain CACI's objections and reduce the Bill of Costs by $40,742.19.[12]

E. Interpreters

Plaintiffs seek $28,209.40 for the compensation of Iraqi interpreters Rodina Mikhail, Ali Kadim, and Hiyam Hadeed, including the costs of their travel and accommodations. CACI objects to all costs associated with interpreters except for the dates and times they provided interpretation services to testifying witnesses, which amounted to $6,825.00. Plaintiffs argue that they are entitled to recover the interpreters' hotel and airfare costs because "[i[n advance of both trials, Plaintiffs provided CACI with the interpreters' resumes and solicited and received CACI's approval for each interpreter used." [Dkt. No. 1853] at 18. Plaintiffs sought and obtained CACI's approval due to the "unique dialect of Arabic spoken by two of the three Plaintiffs and in light of some of the issues at some of the Plaintiffs' depositions where there were numerous errors of translation due to that unique dialect." Id. Because CACI agreed to the interpreters and was aware that they were not in the local area, they Court will overrule CACI's objection to the costs for interpreter travel and accommodations.

As for the costs of interpreters on the dates they did not provide interpretation services to testifying witnesses, plaintiffs have agreed to withdraw Ms. Hadeed's hotel costs for November 5-8, 2024 ($1,109.10) as they knew they would not need her services beyond November 4, 2024.

---

[12] CACI does not object to $2,762.28 in exemplification and copying costs for jury exhibit binders, trial exhibit binders, and certain witness binders.

16

As for the other dates when the interpreters were not needed in court, the Court finds that, due to the fluid nature and uncertain duration of trials, it was reasonable for plaintiffs to retain the interpreters for the length of time that they did. Accordingly, CACI's objection, except as to Ms. Hadeed's hotel costs, which is moot, will be overruled.

For all these reasons, plaintiffs' Bill of Costs will be granted, but in the reduced amount of $102,291.68 by an Order to be issued with this Memorandum Opinion.

The Clerk is directed to forward copies of this Order to counsel of record.

Entered this 14th day of April, 2025.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge